**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>   -against-<br><br>RICHARD XIA, a/k/a YI XIA; and FLEET NEW YORK METROPOLITAN REGIONAL CENTER, LLC, f/k/a FEDERAL NEW YORK METROPOLITAN REGIONAL CENTER, LLC;<br><br>       Defendants,<br><br>   -and-<br><br>JULIA YUE, a/k/a JIQING YUE,<br><br>       Relief Defendant. | 21 Civ. _____ (    ) |

**[PROPOSED] ORDER APPOINTING MONITOR**

  **WHEREAS** this matter has come before this Court upon the filing of a Complaint by plaintiff U.S. Securities and Exchange Commission ("Plaintiff" or "SEC") on September 27, 2021;

  **WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a monitor in this action (the "Monitor") over defendant Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, LLC ("Fleet"), and over the entities owned and/or controlled by defendant Richard Xia listed in Schedule 1 attached hereto (the "Xia Entities"), is necessary and appropriate for the protection of investors;

1

**WHEREAS** this Court has subject matter jurisdiction over this action, personal jurisdiction over Fleet, Xia and the Xia Entities, and venue properly lies in this District;

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. Until further Order of this Court, _____ is hereby appointed to serve as a Monitor in this action.

2. The Monitor shall remain in place until terminated by Order of the Court.

3. Fleet and the Xia Entities shall grant the Monitor access to all non-privileged books, records, and account statements for the entities and assets listed on Schedule 1; and (2) cooperate fully with requests by the Monitor reasonably calculated to fulfill the Monitor's duties, including, but not limited to, making available any officer, employee, or outside advisor that the Monitor deems relevant to executing his or her duties.

4. Should Fleet or the Xia Entities disagree with any of the Monitor's decisions below, they or the Monitor may first present the dispute to a Court-appointed federal Magistrate Judge sitting in the same district as the federal Judge presiding over this matter (the "Magistrate") for mediation. In the event the dispute cannot be resolved by the Magistrate, or a Magistrate is not appointed, either Fleet or the Xia Entities or the Monitor may petition the Court in a timely manner for resolution.

5. Among the reasons Fleet or the Xia Entities may disagree with the Monitor's decision or recommendation are, if they, in good faith, consider the decision or recommendation unduly burdensome, inconsistent with applicable law or regulation, excessively expensive, or detrimental to investors. In this event, they may propose to the Monitor an alternative procedure or practice designed to comport with the Monitor's decision or recommendation.

**General Powers and Duties of the Monitor**

6. The Monitor will have the authority to approve or disapprove the following actions:

a. any proposed material corporate transactions by Fleet and the Xia Entities, or any other proposed material corporate transactions as the Monitor may, in the Monitor's sole discretion, deem appropriate. The Monitor will negotiate a protocol with Fleet and the Xia Entities for the review of information concerning proposed material transactions;

b. any extension of credit by Fleet or the Xia Entities outside the ordinary course of business, or to a related party, as defined under the federal securities laws. The Monitor will negotiate a protocol with Fleet and the Xia Entities for the review of information concerning such extensions of credit;

c. any material change in business strategy by Fleet or the Xia Entities;

d. any material change to compensation of any executive officer, affiliate, or related party of Fleet or the Xia Entities;

e. any retention by Fleet or the Xia Entities of any management-level professional or person (with the exception of any professional retained in connection with litigation commenced prior to this Order, over which approval shall not be required), subject to an acceptable procedure agreed to with the Monitor;

f. any decision to make distributions to investors in any of the EB-5 Offerings; and

g. any decision to file, or cause to be filed, any bankruptcy or receivership

3

petition for Fleet or the Xia Entities.

7. The Monitor will negotiate a protocol with Fleet and the Xia Entities governing the timing and form of the approval process. The Monitor's approval for any of the aforementioned actions shall not be unreasonably withheld.

8. Fleet and the Xia Entities will provide the Monitor with all documents reasonably requested, in accordance with paragraph 16, below.

9. For the review of any documents reasonably requested by the Monitor, the Monitor shall request those documents from Fleet and the Xia Entities' General Counsel or Chief Financial Officer.

10. If, after review of any requested documents (or any of the matters described in paragraph 11, below), the Monitor has comments or questions thereon, those comments or questions shall be provided promptly to Fleet and the Xia Entities' General Counsel or Chief Financial Officer. Fleet and the Xia Entities shall consider all such comments in good faith and promptly respond to any such questions.

11. The Monitor is authorized and empowered to:

a. Review the finances and operations of Fleet and the Xia Entities. The Monitor will negotiate a protocol with Fleet and the Xia Entities for the review of this information;

b. Review the status of the Eastern Mirage Project on 42-31 Union Street, Queens, NY and the Eastern Emerald Project on 112-51 Northern Blvd., Queens, NY, and make a recommendation to the Court within sixty (60) days of the entry of this Order as to whether these Projects can or should be completed, or whether the Projects should be sold;

c. Review historical corporate transactions by Fleet and the Xia Entities, for

4

the purposes of executing paragraph 6, above, and consistent with paragraph 19, below;

      d.      Review historical compensation of all executive officers or affiliates of Fleet and the Xia Entities;

      e.      Review the retention of all consultants and attorneys currently retained by Fleet and the Xia Entities;

      f.      Review financial statements of Fleet and the Xia Entities;

      g.      Review the minutes of all meetings of all boards of directors of Fleet and the Xia Entities;

      h.      Review the status of all litigation involving Fleet and the Xia Entities, and the status of any litigation outside the ordinary course of business involving any of the Companies;

      i.      Review any commencement or settlement of any litigation involving Fleet and the Xia Entities, and any commencement or settlement of any litigation outside of the ordinary course of business involving Fleet and the Xia Entities;

      j.      Review any material changes to material leases or real estate holdings, including the signing of any new leases, the termination of leases, material changes to lease terms, or the purchase or sale of any property by Fleet or the Xia Entities. If the material change involves Fleet or the Xia Entities, the Monitor shall have the power to approve or disapprove of the material change;

      k.      Review insurance policies covering Fleet and the Xia Entities, as well as affiliates, officers, and directors of such entities;

      l.      Review promptly and approve any investor-wide communications intended to be sent by Fleet and the Xia Entities to investors.

12. Fleet and the Xia Entities will have responsibility to prepare a summary report on internal controls regarding the cash assets of Fleet and the Xia Entities for the Monitor to review within ninety (90) days of this Order. The summary report shall focus primarily on the protection of cash assets and the approval procedures for the movement or transfer of cash. Once the Monitor receives the report, he is authorized, empowered, and directed to make recommendations as to Fleet and the Xia Entities' internal cash controls.

13. Fleet and the Xia Entities will provide any valuation reports of any hired valuation consultant.

14. Commencing within ninety (90) days of this Order, Fleet and the Xia Entities will provide the Monitor with their annual budget. Updates to budget documents will be provided promptly by Fleet and the Xia Entities.

15. Fleet and the Xia Entities shall provide the Monitor with prompt access to all non-privileged books, records, and account statements for all of Fleet and the Xia Entities' assets for purposes of implementing this Order. For all non-privileged books, records and account statements maintained online, Fleet and the Xia Entities shall provide the Monitor with immediate online access; for all other books, records, and account statements, Fleet and the Xia Entities shall provide the Monitor with timely access as the review of privileged information allows.

16. The Monitor may engage and employ persons, including accountants, attorneys and experts, to assist in the carrying out of the Monitor's duties and responsibilities hereunder ("Retained Personnel"), subject to the fee guidelines set forth below. Before any engagement, the Monitor shall request a budget from any Retained Personnel, which shall be presented to Fleet and the Xia Entities' Chief Financial Officer, and must be reasonable in relation to the Monitor's duties and responsibilities.

17. If the Monitor believes that some further inquiry not authorized in this Order is required, he shall so report to Fleet and the Xia Entities and the SEC and if, after consultation in good faith, the parties cannot agree as to the need for and scope of such proposed inquiry, they shall submit the dispute, first, to the Magistrate, and if the Magistrate cannot resolve the dispute, the dispute shall be submitted to the Court.

18. The Monitor shall have the authority to share any findings, documents, or information with the SEC.

19. If the Monitor believes Fleet or the Xia Entities are in some way not in compliance with the terms of this Order, upon notice of noncompliance to the applicable company, that company shall have 10 business days in which to cure any claimed noncompliance (the "Cure Period").

20. If that company does not comply with the above provisions and does not make requested changes within the Cure Period, upon motion of the SEC resulting in a Court Order, the Monitorship shall convert to a receivership. Fleet and the Xia Entities shall be afforded an opportunity to oppose any such application by the SEC before conversion to a receivership.

21. Substantive amendments to this Order must be made in writing and approved by the Court.

## II.

## Recommendations and Reports

22. Within thirty (30) days after the end of each calendar quarter, the Monitor shall file with the Court under seal or in redacted form to protect sensitive, proprietary information, and serve on the SEC and Fleet and the Xia Entities, a full report reflecting (to the best of the Monitor's knowledge as of the period covered by the report) the status of the reviews contemplated in

paragraphs 8 through 14 (the "Quarterly Report").

23. The Monitor may, within 90 days of the expiration of the Monitor Order, or earlier if for good cause shown, recommend to the Court the contraction, expansion (including expansion into a Receivership), continuation or discontinuation of the Monitorship. Fleet and the Xia Entities shall be afforded the opportunity to respond to the Monitor's recommendation to the Court regarding any proposed expansion or continuation of the Monitorship.

### III.

### Liability of Monitor

24. The Monitor and the Monitor's agents shall not be responsible for the operation of Fleet and the Xia Entities' businesses. The Monitor and the Monitor's agents, acting within scope of such agency, are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Monitor or the Monitor's agents be liable to anyone for their good faith compliance with their duties and responsibilities as Monitor or Monitor's agents, except as provided by law.

25. This Court shall retain jurisdiction over any action filed against the Monitor or the Monitor's agents based upon acts or omissions committed in their representative capacities.

26. In the event the Monitor decides to resign, the Monitor shall first give written notice to the SEC's counsel, the Court, and counsel for Fleet and the Xia Entities of its intention, and the resignation shall not be effective until the Court appoints a successor. The Monitor shall then follow such instructions as the Court may provide. Either the SEC or Fleet and the Xia Entities may request that the Monitor be removed. The Monitor can only be dismissed by Court Order upon good cause shown.

27.     In communicating with the Monitor, Fleet and the Xia Entities do not intend to waive any attorney-client privilege, attorney work product protection, or any other applicable privilege, and the Monitor has no authority to waive such privileges.

## IV.

## Fees, Expenses and Accountings

28.     The terms and conditions of the Monitor's retention, including all aspects of the Monitor's compensation, shall be negotiated and agreed to between the Monitor, the SEC, and Fleet and the Xia Entities.  Any disputes over the terms of the Monitor's retention shall be determined by the Court.  Any modifications of paragraphs 30-34, below, shall be done by Order of the Court.

29.     Subject to the specific provisions of this Order, the Monitor is authorized to solicit persons and entities ("Retained Personnel") to assist the Monitor in carrying out the duties and responsibilities described in this Order.  The Monitor shall not engage any Retained Personnel without first obtaining an Order of the Court authorizing such engagement, and notice provided to Fleet and the Xia Entities and the SEC with an opportunity to be heard.

30.     The Monitor and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Subject Assets in accordance with the "Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission" (available at www.sec.gov/oiea/Article/billinginstructions.pdf) (the "Billing Instructions") agreed to by the Monitor and Retained Personnel.  Such compensation shall require the prior approval of the Court.

31.     Within thirty (30) days after the end of each calendar month, the Monitor and Retained Personnel shall apply to the Court for compensation and expense reimbursement from

the Subject Assets (the "Monthly Fee Applications"). At least five (5) days prior to filing each Monthly Fee Application with the Court, the Monitor will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by the SEC.

32. All Monthly Fee Applications will be interim and will be subject to final reviews at the close of the Monitorship. At the close of the Monitorship, the Monitor will file a final fee application, describing in detail the activities pursued by the Monitor during the course of the Monitorship.

33. Monthly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each Application filed with the Court. The total amounts held back during the course of the Monitorship will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the Monitorship.

34. If the parties cannot agree to any of the above regarding fees, the dispute shall be brought before the Magistrate.

35. Each Monthly Fee Application shall: (a) comply with the terms of the Billing Instructions agreed to by the Monitor; and (b) contain representations (in addition to the certification required by the Billing Instructions) that: (i) the fees and expenses included therein were incurred in the best interests of the investors, and; (ii) with the exception of the Billing Instructions, the Monitor has not entered into any agreement, written or oral, express or implied,

with any person or entity concerning the amount of compensation paid or to be paid to the Monitor or any sharing thereof.

**SO ORDERED.**
Dated: New York, New York
_____, 2021

                                                _____
                                                United States District Judge

## SCHEDULE 1

## LIST OF XIA ENTITIES

1. **EMMCO, L.P.** ("EMMCO"), a New York limited partnership formed by Xia on April 9, 2010.

2. **EMMCO NQMC, L.P**. ("EMMCO NQMC"), a New York limited partnership formed by Xia on December 22, 2010.

3. **EMMCO TOWER, L.P.** ("EMMCO TOWER"), a New York limited partnership formed by Xia on June 10, 2011.

4. **EEGH, L.P.** ("EEGH"), a New York limited partnership formed by Xia on December 6, 2013. In June 2018, Xia changed the name of EEG to **The Grand Eastern Mirage Group LLC.**

5. **EEGH II, L.P**. ("EEGH II"), a New York limited partnership formed by Xia on September 10, 2015.

6. **Amazon River, LLC** ("Amazon River"), a Delaware limited liability company formed on June 29, 2015.

7. **Eastern Emerald Group LLC** ("EEG"), a Delaware limited liability company formed by Xia on December 6, 2017, for the development of the Eastern Emerald Project. EEG acquired the Eastern Emerald land on Northern Boulevard in Queens, NY.

8. **Fleet Financial Group Inc.** ("FFG"), a New York corporation, formed on December 14, 2005.

9. **Fleet General Insurance Group Inc.** ("Fleet Insurance"), a Vermont corporation created on October 13, 2017, owned and controlled by Xia.

10. **JiQing Development, Inc.** ("JiQing Development"), a New York corporation formed on July 28, 2005, co-owned by Xia and Yue and controlled by Xia.

11. **LaGuardia Performance Center LLC** ("LaGuardia"), a Delaware limited liability company formed by Xia on September 25, 2015.

12. **Manekineko Group, LLC** ("Manekineko Group"), a New York limited liability company formed by Xia on February 3, 2010.

13. **Perini Group, Inc.** ("Perini"), a New York corporation formed on December 2, 2015, controlled by Xia.

14.  Racanelli Construction Group Inc. ("Racanelli"), a New York corporation formed on June 21, 2011, controlled by Xia.

15.  **Shangri-La 9D, Inc.** ("Shangri-La 9D"), **Shangri-La 9F, Inc.** ("Shangri-La 9F"), and **Shangri-La Green, Inc.** ("Shangri-La Green"), New York corporations formed on March 8, 2010, owned and controlled by Xia.

16.  Samuel Development Group, LLC ("Samuel Development"), a New York limited liability company formed on August 3, 2005, owned and controlled by Xia.

17.  **X & Y Development Group, LLC** ("X&Y"), a New York limited liability company formed on September 20, 2007, owned and controlled by Xia.  In 2007, X&Y acquired the Eastern Mirage Project land on Union Street in Queens, NY.