SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION
Legal Center
One Riverfront Plaza
Newark, New Jersey 07102-5400
Tel: 973-643-7000
Fax: 973-643-6500

**Hervé Gouraige**  
**Member of the Firm**  
Direct Dial: (973) 643-5989  
E-mail: hgouraige@sillscummis.com

101 Park Avenue, 28th Floor  
New York, NY 10178  
Tel: 212-643-7000  
Fax: 212-643-6500

November 30, 2021

**VIA ECF MOTION EVENT**
The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East, Chambers N 631
Brooklyn, NY 11201

   Re: *Securities and Exchange Commission v. Richard Xia, a/k/a Yi Xia, et al.*,
     **21-cv-05350-PKC-CLP**

Dear Judge Chen:

  On behalf of defendants Richard Xia ("Xia"), Fleet New York Metropolitan Regional Center, LLC ("Fleet"), and relief defendant Julia Yue ("Yue"), we submit this letter respectfully to request a pre-motion conference for an anticipated Fed. R. Civ. P. 12(b)(6) motion. Defendants seek dismissal for (1) failure to plead facts that establish (a) the EB-5 Unit is a "security," (b) there was a scheme or artifice to defraud, (c) any alleged misrepresentations or omissions were material, and because (2) the claims are barred by the statute of limitations.

  Fleet, a New York LLC, was formed on February 5, 2010. (*Id*. ¶ 28.) Mr. Xia is the managing member of Fleet. (Complaint (Cplt.) ¶ 27.) Mr. Xia is an architectural and civil engineer, and an economics-trained graduate student from the University of Alabama. (*Id*. ¶ 27.) Ms. Yue is Mr. Xia's wife. (*Id*. ¶ 30.)

  The U.S. Citizenship and Immigration Services ("USCIS"), which administers the EB-5 Program, approved Fleet as a regional center. (*Id*.) The Program allows foreign nationals to qualify for permanent residency if they make a qualified investment of $500,000 or more in a project that USCIS determines will create or preserve at least ten jobs in the U.S. (*Id*. ¶ 4.)

  From 2010-17, defendants sold interests in five limited partnerships ("LPs") to over 450 foreign nationals. In five offerings, as part of the EB-5 Program, defendants raised about $229 million. Fleet is the general partner, and the investors are limited partners, of the LPs. (*Id*. ¶¶ 5, 28.). Three LPs made loans to fund a mixed-use real estate project in Queens (Eastern Mirage) and another two LPs made loans to fund another mixed-use project in Queens (Eastern Emerald) ("Projects"). (*Id*. ¶¶ 1, 2, 49.) The Projects are independently appraised at about $310 million (less a mortgage of $15 million on the Mirage Project).

  USCIS reviewed the Projects, as required by regulations, to determine they are on track to complete and maintain the required employment level before granting green cards. (8 CFR 204.6(m)(6).) All but three of the Mirage Project investors received their permanent green cards.

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

The Honorable Pamela K. Chen
November 30, 2021
Page 2

Mr. Xia, who has deferred compensation for his multi-faceted services, made capital contributions of over $9 million from his own funds before any investors' funds were received.[1] As the largest investor in the Projects, Xia stands to lose the most if the Projects fail. In contrast, the grant of a green card after the two-year review (the primary goal of the investors) does not depend on the *ultimate* success of the Projects.

On September 27, 2021, when the Complaint was filed, defendants had nearly completed Eastern Mirage and had bought and fully remediated land for Eastern Emerald that required extensive remediation for environmental damage from previous use. After more than three years of investigation, the SEC obtained an *ex parte* temporary restraining order freezing defendants' and the general contractors' bank accounts with about $77 million of investor and other funds (including Mr. Xia's unrelated personal savings)[2] and imposed an immediate halt to the Projects. (OTSC, at 2.) The SEC never explained why an *ex parte* asset freeze was necessary after such a long investigation and did not provide the Court with the independent third-party appraisals of the Projects showing them worth significantly more than the amount of the LPs' investments.

Alleging violations of Section 17(a) of the 1933 Act (Count I) and Section 10(b) of the Exchange Act of 1934 (Count II), Cplt. ¶ 66, the SEC claims material misrepresentations or omissions in the offering documents and fraudulent misappropriation. The Complaint alleges defendants separately raised funds for each EB-5 Project and then comingled the funds between the two Projects. (*Id.* ¶¶ 78, 79.) The SEC also charges defendants with personal use of the funds to pay off a mortgage on their building, *id.* ¶ 80, buy an apartment for personal use, *id.* ¶ 81, and use a New York State Brownfield Refund tax credit to purchase a private residence. (*Id.* ¶ 82.) Ms. Yue is a relief defendant for unjust enrichment (Count III). (*Id.* ¶ 156.) All claims should be dismissed. Without valid claims, relief against Yue should be dismissed as well.

**The EB-5 Unit is not a Security.** The EB-5 Unit is not a security because the investors here were not promised any *fixed return* and thus did not have an objective expectation of profit. *SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946).[3] Their funds were loaned for five years to the Mirage developers at 0% interest or 2% in the case of the EEGH and EEGH II funds for the Emerald Project. The LPs had no assets or business other than serving as pass-through lenders for the developers. The only source of LP profit (if any) was interest on the loans. Each LP also needed to pay 1.5% annual management fee. The EEGH II investors had their funds frozen before use, which obviates any misapplication. With annual inflation exceeding the 2% interest,[4] an investor seeking profit would not make this investment and forego more profitable, less risky, investments. If one buys an apartment as a residence, the transaction does not create a "security,"

---

[1] An additional $3.5 million Xia capital contribution acknowledged by the SEC was documented from bank records for 2012-19. *See* Cplt. ¶ 105. An expert report, relying on bank records of the kind the SEC relies upon, submitted to the SEC on January 31, 2020 documents Xia's capital contribution as at least $8,868,464 as of July 31, 2010, before receipt of investor funds on August 3, 2010. *See* Report of Paul M. Ribaudo.
[2] The SEC contends the asset freeze applies to rental income Mr. Xia receives from non-EB-5 rental properties.
[3] *Howey* requires (1) an investment of money (2) in a common enterprise (3) with the expectation of profits produced by another. *Id*. at 298–99.
[4] The annual inflation rate in 2011, 2017, and 2018 exceeded 2%. *See* https://fred.stlouisfed.org/series/FPCPITOTLZGUSA.

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

The Honorable Pamela K. Chen
November 30, 2021
Page 3

even though the value may appreciate. *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 853 (1975). Here, the overriding expectation of a green card trumps any residual possibility of profit.

**The Allegations do not Establish a Scheme or Artifice to Defraud.** Alleged misappropriations occurred *after* investor funds were obtained and could not have been "in connection" with a security sale or purchase. *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 341 (S.D.N.Y. 1999) ("An alleged fraud cannot be in connection with the purchase or sale of a security if the transaction occurs prior to the fraud." (quoting *Perez-Rubio v. Wyckoff*, 718 F. Supp. 217, 236 (S.D.N.Y. 1989))).

**The Alleged Misrepresentations are not Material.** "[A] statement or omission [is material if] a reasonable investor would have considered [the statement or omission] significant in making investment decisions." *Marini v. Adamo*, 995 F. Supp. 2d 155, 186 (E.D.N.Y. 2014) (quotation omitted)). Many of the alleged misrepresentations were forward-looking statements made to accredited investors with cautionary language, the commitment letter submitted to USCIS, not disclosed to investors, could not been considered at all by them, and the construction experience and expertise statements were opinions based on accurate facts. Above all, no alleged misrepresentation would have been considered significant by the investors because none would have had an impact on the likelihood of them getting a green card. Precedent in this court involving similar allegations compels dismissal of the material misrepresentation claims. *Muhan Cui v. Xia*, No. 19-615, 2021 U.S. Dist. LEXIS 45815, at *22 (E.D.N.Y. Mar. 2, 2021).

**The Claims are Barred by the Statute of Limitations.** All but the claims based on the offering for EEGH II funds[5] or for disgorgement are barred by the 5-year statute of limitations, even accounting for the 6-month tolling agreement between the SEC and defendants Xia and Fleet. 28 U.S.C. § 2462. As shown below, the tolling period was September 10, 2019 to March 9, 2020. Adding six months to the limitations periods from the dates of investor funds receipts, will not save those claims brought after March 9, 2020.

| Issuer | Date of First Receipt of Investor Funds | Date of Expiration of Limitations Period |
|---|---|---|
| EMMCO | August 3, 2010 | August 3, 2015 |
| EMMCO NQMC | January 26, 2011 | January 26, 2016 |
| EMMCO Tower | December 21, 2011 | December 21, 2016 |
| EEGH | March 31, 2014 | March 31, 2019 |

Even if the National Defense Authorization Act, 15 U.S.C. § 78u(8)(A), effective January 1, 2021, applies a 10-year statute of limitations to the *claims*, as distinguished from disgorgement and other equitable remedies,[6] relief for penalties and non-equitable disgorgement (a form of penalty) are in any event limited to the five-year period to avoid a constitutional retroactivity issue. The Constitution's ex post facto clause "flatly prohibits retroactive application of penal legislation," *Landgraf v. USI Film Prod.*, 511 U.S. 244, 266 (1994), and "[r]etroactivity is not favored in the [civil] law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

---

[5] The freeze on all the EEGH II funds renders any misappropriation claim based on that offering unavailing.
[6] *See Muhan Cui v. Xia*, at *26 n. 10 (distinguishing between a claim and a remedy).

**SILLS CUMMIS & GROSS**
A PROFESSIONAL CORPORATION

The Honorable Pamela K. Chen
November 30, 2021
Page 4

                                            Respectfully submitted,

                                            /s/ Hervé Gouraige
                                            Hervé Gouraige