UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,                       **MEMORANDUM & ORDER**
                                                           21-CV-5350 (PKC) (CLP)

       - against -

RICHARD XIA, a/k/a YI XIA; and
FLEET NEW YORK METROPOLITAN
REGIONAL CENTER, LLC, f/k/a FEDERAL
NEW YORK METROPOLITAN REGIONAL
CENTER, LLC,

                Defendants,

       -and-

JULIA YUE, a/k/a JIQING YUE,

                Relief Defendant.

-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Before the Court is Plaintiff Security and Exchange Commission's ("SEC") request to compel Defendants Richard Xia, a/k/a Yi Xia, Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, LLC ("Fleet"), and Relief Defendant Julia Yue, a/k/a Jiqing Yue (collectively, "Defendants")[1] to disclose certain communications with third-party investors. (*See* Dkts. 57, 65.) Defendants oppose the SEC's request pursuant to an assertion of work product privilege. (*See* Dkts. 58, 63.) Defendants also request that the SEC provide a supplemental response to an interrogatory regarding the declaration of Sunil Aggrawal,

---

[1] Although Julia Yue is a relief defendant, the Court uses the term "Defendants" throughout this Memorandum and Order for convenience.

1

the managing director of Think Forward Financial Group LLC, which provides financial advisory services on capital projects. (*See* Dkts. 58, 63.) Having reviewed and given due consideration to parties' submissions, the Court (1) grants the SEC's request and orders Defendants to produce all communications with investors for which they assert work product privilege, and (2) grants Defendants' request and orders the SEC to provide a supplemental response to Defendants' interrogatory.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and recites only the background relevant to the pending requests by the parties.

On February 2, 2022, the SEC sought a pre-motion conference regarding its proposed motion to compel Defendants, *inter alia*, to produce their "WeChat" communications with third-party investors.[2] (*See* SEC's PMC Letter, Dkt. 57, at 3.) Defendants opposed the SEC's request and, in turn, raised an issue regarding the SEC's responses to an interrogatory related to the declaration of Sunil Aggrawal, which the SEC submitted on September 27, 2021 in support of its motion for a temporary restraining order and an order appointing a monitor. (*See* Defendants' PMC Response, Dkt. 58, at 2; *see also* Aggrawal Declaration, Dkt. 5.)

Although the Court initially scheduled a status conference to address the parties' disputes, after receiving a letter from Defendants regarding the production of certain discovery materials, the Court canceled the conference and instead directed Defendants to "file a privilege log (1)

---

[2] The SEC's proposed motion to compel also sought to compel (1) depositions of defendants Xia and Yue, as well as non-party witnesses Xi Verfenstein and Edward Chan, and (2) production of "documents relating to the Long Island houses purchased with investor funds." (*See* SEC's PMC Letter, Dkt. 57, at 1–3.) It is the Court's understanding that these issues have been, or will be, resolved prior to the show-cause hearing scheduled for February 14, 2022. To the extent any deposition and document production issues persist, the parties may file supplemental letters and/or a request a pre-hearing conference.

identifying the WeChat messages for which they have asserted privilege, (2) identifying the individuals exchanging the messages and the relationships between these individuals and Defendants and Relief Defendant, and (3) providing a description sufficient to indicate the basis for designating such messages as protected from disclosure pursuant to the work product doctrine." (*See* 2/2/2022 Docket Order.) The Court also directed the parties to file supplemental letters "addressing their legal arguments regarding (1) the application of the work product doctrine to the outstanding WeChat messages and (2) SEC's objections to interrogatories concerning Sunil Aggarwal's [] declaration." (*Id.*) On February 4, 2022, the parties filed supplemental letters addressing these issues. (*See* Defendants' Letter ("Defs.' Ltr."), Dkt. 63; SEC's Letter ("SEC Ltr."), Dkt. 65.)

## DISCUSSION

I. **Defendants' Assertion of Work Product Privilege Regarding Communications with Third-Party Investors**

The Court finds that Defendants' communications with investors are not protected by work product privilege and must therefore be produced to the SEC.

A. **Legal Standard**

The party asserting work product privilege bears the heavy burden of establishing its applicability and lack of waiver. *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 (DRH) (AKT), 2017 WL 1233842, at *8, 10 (E.D.N.Y. March 31, 2017). A party waives work product privilege if it voluntarily discloses the work product to a third party. *See SEC v. Gupta*, 281 F.R.D. 169, 171 (S.D.N.Y. 2012) ("In this Circuit, the privilege is waived where there is 'deliberate, affirmative, and selective use of privileged work-product materials by a party.'" (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000))); *In re Symbol Techs.*, 2017 WL 1233842, at *8 ("[W]hen a party makes a strategic decision, no matter how broad and sweeping or

3

limited, to disclose privilege information, a court can find an implied waiver . . ." (internal quotation marks omitted)).

Privilege is waived where disclosure of protected work product to the third party is "inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information." *In re Terrorist Attacks on September 11, 2001*, 293 F.R.D. 539, 544 (S.D.N.Y. 2013) (quoting *Ricoh Co. v. Aeroflex, Inc.*, 219 F.R.D. 66, 70 (S.D.N.Y. 2003)). Accordingly, "even disclosure to non-adversaries waives work product protection if it materially increases the likelihood that an adversary can gain access to that information." *Id.* (citing *Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 164 (S.D.N.Y. 2008)). This practical approach to waiver of work product privilege prevents a party from "meet[ing] with a non-party witness, show[ing] him documents and ask[ing] him questions, and then mask[ing] the entire preparation session in the cloak of work product protection." *Gupta*, 281 F.R.D. at 173.

### B. Defendants' Waiver of Work Product Privilege

Here, Defendant Xia has communicated with third-party investors using various communication channels, including "email, text, [and] WeChat." (SEC Ltr., Dkt. 65, at 3.) Defendants assert work product privilege with respect to certain WeChat communications Defendant Xia had with investors in preparation for the show-cause hearing scheduled for February 14, 2022 (the "Show-Cause Hearing"). Defendants' privilege log identifies two categories of WeChat communications: (1) messages between Defendant Xia and "[a]ll investors of the Eastern Emerald Project" "regarding signing an investor declaration that may be filed with the Court" and "an opportunity for the investors to testify" at the Show-Cause Hearing and (2) messages between Defendant Xia and a particular "investor regarding signing an investor declaration that may be filed with the Court." (Defendants' Privilege Log ("Priv. Log"), Dkt. 63-

4

1, ECF[3] 1–2.)  The investors to whom Defendant Xia sent the WeChat communications are third parties with respect to this matter, and, as demonstrated by Defendant Xia's communications with them regarding declarations, potential witnesses in this action.

Defendant Xia's decision to contact investors and disclose any information for which Defendants now assert work product privilege was a "deliberate, affirmative, and selective use of privileged work-product materials." *In re Grand Jury Proceedings*, 219 F.3d at 191.  Defendant Xia does not, (*see* SEC Ltr., Dkt. 65, at 2), and likely could not, assert common interest with the investors, who are the alleged victims of the unlawful scheme alleged by the SEC.  Courts in this Circuit "have held that disclosure to a third-party witness in the action waives privilege where the witness does not share a common interest with the disclosing party." *Alexander Interactive, Inc. v. Adorama, Inc.*, 12-cv-6608 (PKC) (JCF), 2014 WL 12776440, *11 (S.D.N.Y. June 17, 2014) (citing, *inter alia*, *Gupta*, 281 F.R.D. at 172).  Notably, certain of the investors have brought a separate action against Defendants Xia and Fleet in two consolidated actions currently pending before the Court.  (*See Li v. Fleet New York Metropolitan Regional Center LLC et al.*, No. 21-cv-05185 (PKC) (RER).)  Defendants therefore have failed to demonstrate that they have a common interest for purposes of asserting work product privilege with the multitude of investors with whom Defendant Xia has communicated.

Moreover, the disclosure in WeChat communications was "inconsistent with maintaining secrecy" and "substantially increase[d] the opportunity for [the SEC] to obtain the protected information." *In re Terrorist Attacks*, 293 F.R.D. at 544.  First, WeChat communications between Defendant Xia and "[a]ll investors of the Eastern Emerald Project" were "within a WeChat group

---

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

5

of 214 individuals," including Defendant Xia, "some investors of the Eastern Emerald Group," and "some family members of the investors." (Priv. Log, Dkt. 63-1, ECF 3, n.1.) As Defendant Xia himself admits, "Defendants are unable to identify the name of every individual in the WeChat group, because an individual can be invited into the group by another individual already in the group without disclosing his or her name." (*Id.*) Any argument that disclosure in such circumstances could be consistent with maintaining secrecy, where Defendant Xia did not even know who the information was being disclosed to (and could be disclosed to, by inclusion of new members in the group chat at any time by any one of the other members), would be patently frivolous. Second, as already stated, Defendant Xia was aware that certain of the investors are also his adversaries in a separate suit pending before the Court. Thus, Defendants should have expected that sharing any information with investors increased the opportunity for Defendants' adversaries to learn of that information. Third, Defendant Xia was well aware that his WeChat communications with investors are susceptible to disclosure to the SEC because the agency had previously obtained, and filed with the Court, 40 "pages of WeChat communications between Xia and investors or their representatives." (SEC Ltr., Dkt. 65, at 1-2; *see also* Xia WeChat Communications, Dkt. 6-73.)

Accordingly, because Defendant Xia has waived his claim for work product privilege in connection with third-party communications with investors, Defendants shall produce documents numbered (1) – (17) on the privilege log to the SEC by **7:00 p.m. on February 9, 2022**. Additionally, to the extent Defendants did not produce any other communications between

6

Defendant Xia and third-party investors based on assertions of work product privilege, all such other communications must be produced to the SEC by **7:00 p.m. on February 10, 2022**.[4]

**II.    Defendants' Interrogatory Request Regarding Sunil Aggrawal's Declaration**

The parties' dispute regarding the SEC's response to Defendants' interrogatory number (2), regarding Sunil Aggrawal's September 27, 2021, declaration, is narrow. Defendants have requested the SEC to "[i]dentify the date when the SEC first learned that [the] Aggarwal Declaration contained incorrect or inaccurate information." (SEC's Supplemental Responses to Defendants' First Set of Interrogatories ("SEC Intr. Resp."), Dkt. 63-2, ECF 2.) This request is related, in part, to Defendants' motion *in limine* currently pending before the Court, whereby Defendants seek to exclude the Aggrawal declaration from the Show-Cause Hearing based on (1) Aggrawal's statements in the declaration that he sent a "letter of interest" to Relief Defendant Yue on November 14, 2013, but "never heard from" her "or anyone else from Mr. Xia's office" and (2) Aggrawal's statements during his January 21, 2022 deposition, stating that, as summarized by Defendants, "his Declaration was 'not accurate' and 'not correct,' because 'there was an email from Xia's office after 2013,' and that email asked Mr. Aggarwal 'to revise the original letter which [Aggrawal] did and sent back to [Defendants].'" (Defendants' Motion *in Limine*, Dkt. 51, at 2.) The SEC has responded to the interrogatory stating

---

[4] Defendant Xia also asserts attorney-client and work product privilege with respect to two communications between Defendant Xia and his counsel, where counsel shared "[d]raft investor declaration[s] for Eastern Emerald [and Eastern Mirage] project investors." (Priv. Log, Dkt. 63-1, at 3.) The Court notes that the draft declarations are blank forms. It is unclear whether these communications between counsel and Defendant Xia were conducted via WeChat or some other channel. Regardless, Defendant Xia's letter does not set forth any arguments regarding attorney-client privileged communications and documents, and there is no indication that the SEC has sought privileged communications and documents exchanged between Defendant Xia and his counsel (as opposed to third parties). Accordingly, the Court does not address documents numbered (18) – (19) in Defendant Xia's privilege log.

7

>that, on Tuesday, January 18, 2022, it first gained access to emails between various individuals from Fleet Financial Group and Mr. Aggarwal in November 2014 relating to the New Market Tax Credit. These emails were part of a production of documents that Mr. Aggarwal's counsel made to all parties in response to Defendants' subpoena dated December 7, 2021. SEC attorney Kim Han briefly scanned this production when it first became accessible but did not notice the November 2014 emails. On the afternoon of January 20, 2022, the day before Mr. Aggarwal's deposition, the SEC, through Kevin McGrath, first became aware of the November 2014 emails between individuals from the Fleet Financial Group and Mr. Aggarwal. None of those emails were in the documents produced by Mr. Aggarwal's company, ThinkForward Financial Group, LLC, in August 2021.

(SEC Intr. Resp., Dkt. 63-2, ECF 2.) Accordingly, the SEC provided Defendants with a response regarding when it discovered the November 2014 emails. However, to the extent Defendants' interrogatory request does not seek internal SEC communications, the SEC must provide a supplemental response by **7:00 p.m. on February 9, 2022,** clarifying when "it first learned the Aggarwal Declaration had incorrect information." (Defs.' Ltr., Dkt. 63, at 3.)

## CONCLUSION

The Court grants the SEC's request to compel disclosure and orders Defendants to produce all communications with investors for which they assert work product privilege. The Court also grants Defendants' request and orders the SEC to provide a supplemental response to Defendants' interrogatory regarding Sunil Aggrawal's declaration.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 8, 2022
       Brooklyn, New York

8