UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,            **MEMORANDUM & ORDER**
                                                   21-CV-5350 (PKC) (CLP)

        - against -

RICHARD XIA, a/k/a YI XIA; and
FLEET NEW YORK METROPOLITAN
REGIONAL CENTER, LLC, f/k/a FEDERAL
NEW YORK METROPOLITAN REGIONAL
CENTER, LLC,

                    Defendants,

        -and-

JULIA YUE, a/k/a JIQING YUE,

                    Relief Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

        Before the Court is the motion *in limine* of Defendants Richard Xia, a/k/a Yi Xia, Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, LLC ("Fleet"), and Relief Defendant Julia Yue, a/k/a Jiqing Yue (collectively, "Defendants")[1] to exclude at the February 14, 2022 show-cause hearing (the "Show-Cause Hearing") all evidence that Plaintiff Securities and Exchange Commission ("SEC") obtained after its interview of Defendant Xia on May 21, 2018. (Dkt. 50.) The SEC filed an opposition to Defendants' motion, (Dkt. 56), and Defendants filed a reply, (Dkts. 67, 68). Additionally, the SEC filed a motion *in limine* seeking to exclude the testimony of the SEC examiners who conducted

---

[1] Although Julia Yue is a relief defendant, the Court uses the term "Defendants" throughout this Memorandum and Order for convenience.

1

the May 21, 2018 interview, (Dkt. 75), which Defendants oppose, (Dkt. 77).  For the reasons stated herein, Defendants' motion is denied and the SEC's motion is granted.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this case and recites only the background relevant to Defendants' pending motion *in limine*.  Although the parties dispute certain details of the events that transpired on May 21, 2018, the following facts are undisputed.

**I.     May 21, 2018 Interview**

On May 21, 2018, three SEC Division of Examinations[2] employees John Celio, Edward Janowsky, and Javen Zhong (the "Examiners") visited non-party Fleet Financial Group, Inc.'s ("FFG")[3] office in Flushing, Queens to conduct a "voluntary inquiry." (*See* Defendants' Motion *in Limine* ("Defs.' Mot."), Dkt. 50-1, at 2–3; Celio Decl., Dkt. 56-1, ¶ 5.)  Defendant Xia was not at the office when the Examiners first arrived, but he came to the office approximately two hours later and was interviewed in the FFG's conference room. (Defs.' Mot., Dkt. 50-1, at 3; First Xia Declaration ("Xia Decl. I"), Dkt. 50-2, ¶¶ 3. 5; SEC's Opposition ("SEC Opp."), Dkt. 56, at 3.)

Prior to interviewing Xia, the Examiners asked him to sign, and Defendant Xia did sign, Form 2866, titled "Supplemental Information for Persons Requested to Supply Information Voluntarily to the Commission's Examination Staff." (Xia Decl. I, Dkt. 50-2, ¶¶ 5–6; SEC Opp., Dkt. 56, at 4.)  The introductory paragraph to Form 2866 states that the "form is being provided to [Defendant Xia] because the Commission's examination staff has requested that [Xia] voluntarily

---

[2] Prior to 2020, "the Division of Examinations was known as the Office of Compliance Inspections and Examinations ["OCIE"]." (Celio Declaration ("Celio Decl."), Dkt. 56-1, ¶ 1.)

[3] "FFG, owned and controlled by Xia, was [the] developer of the Eastern Mirage Project." (Defs.' Mot., Dkt. 50-1. at 2.)

provide information." [4] (Form 2866, Dkt. 50-24, at 1; Dkt. 56-3, at 1.) The Form's "Effect of Not Supplying Information" header advises that "[t]here are no direct sanctions and thus no direct effects for failure to provide all or any part of the information requested to be supplied on a voluntary basis." (*Id.*) Defendant Xia initialed each of the four pages and signed the Form on the last page. (*Id.* at 1–4; Xia Decl. I, Dkt. 50-2, ¶¶ 5–6.) After Defendant Xia initialed and signed Form 2866, the Examiners interviewed him for approximately two hours and, at the end of the interview, gave Defendant Xia a letter with a list of documents they were requesting him to produce and with instructions on how to produce them. (Xia Decl. I, Dkt. 50-2, ¶¶ 5–6, 8; Celio Decl., Dkt. 56-1, ¶¶ 8–10; Voluntary Document Request ("Doc. Request"), Dkt. 56-4.) The letter again explained that the SEC was "conducting an informal inquiry" and requested Defendant Xia to voluntarily produce documents "pertinent to the inquiry." (Doc. Request, Dkt. 56-4, at 1.) At the conclusion of the interview, Defendant Xia invited the Examiners "to visit the construction site of the Eastern Mirage Project." (Second Xia Declaration ("Xia Decl. II"), Dkt. 68, ¶ 8; Celio Decl., Dkt. 56-1, ¶ 13.)

## II. Document Productions Following the Interview

In May 2018, the Examiners contacted Defendant Xia three times, via one e-mail and two phone calls, regarding the document production, until the Examiners were advised that Defendant Xia had retained counsel to represent him with respect to the document requests. (Xia Decl. I, Dkt. 50-2, ¶¶ 9–10; Celio Decl., Dkt. 56-1, ¶ 14.) Subsequently, Defendant Xia made document productions to the SEC's Division of Examinations through his counsel at the time, Elaine

---

[4] Although the Court discusses Defendant Xia's knowledge that he had a right to refuse the interview, "knowledge of a right to refuse is not a prerequisite of a voluntary consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 234 (1973).

Greenberg, and on November 14, 2018, Greenberg received a letter from the SEC stating that the inquiry was closed. (Xia Decl. I, Dkt. 50-2, ¶ 11; Celio Decl., Dkt. 56-1, ¶¶ 15, 18.)

### III. Formal Investigation

In April 2019, Defendant Xia and Greenberg "received a Formal Order of Investigation from the [SEC's Enforcement Division] dated November 27, 2018." (Xia Decl. I, Dkt. 50-2, ¶ 11.) The SEC also served subpoenas on Defendant Xia, Relief Defendant Yue, "FFG's banks, accountants, and contractors," and Defendant Xia's "tax-preparer," among others. (*Id.*) Defendant Xia was deposed by the SEC in May 2019, with Examiners Janowsky and Celio present, although Defendant Xia did not speak to them. (*Id.* at 12.) Following the formal investigation, the SEC commenced the present suit on September 27, 2021. (*See* Complaint, Dkt. 1.)

## DISCUSSION

### I. Legal Standard

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV.[5] The exclusionary rule "is the primary means for deterring violations of the Fourth Amendment." *United States v. Levy*, 217 F. Supp. 3d 643, 660 (E.D.N.Y. 2016) (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)). "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by [government] conduct." *United States v. Leon,* 468 U.S. 897, 906 (1984) (internal quotations marks omitted).

---

[5] The Fourth Amendment applies to government conduct in both criminal and civil matters. *Soldal v. Cook County,* 506 U.S. 56, 67 & n. 11 (1992).

4

When applicable,[6] the rule "excludes from evidence both (i) 'primary evidence' obtained as a direct result of an illegal search or seizure; and (ii) evidence later discovered and found to derive from an unlawful search or seizure, the so-called 'fruit of the poisonous tree.'" *Levy*, 217 F. Supp. at 660. Due to the "substantial social costs" of the exclusionary rule, "which sometimes include setting the guilty free," "[s]uppression of evidence . . . has always been [the courts'] last resort, not [] first impulse." *Hudson v. Michigan,* 547 U.S. 586, 591 (2006)). Accordingly, the Supreme Court has "repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." *Pennsylvania Bd. of Probation and Parole v. Scott,* 524 U.S. 357, 364–65 (1998).

Even where the exclusionary rule applies, there are several exceptions to it. One such exception is the attenuation doctrine, which provides that "[e]vidence is admissible when the connection between unconstitutional [government] conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Strieff*, 579 U.S. at 238 (quoting *Hudson*, 547 U.S. at 593). "The attenuation doctrine evaluates

---

[6] "[T]he exclusionary rule is a judicially-created mechanism of safeguarding against unreasonable searches and seizures – violations of the Fourth Amendment – primarily through its deterrent effect." *United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020) (citing *Leon*, 468 U.S. at 906). "[B]ecause the [exclusionary] rule is prudential rather than constitutionally mandated," it "does not apply in a number of contexts." (*Id.* (collecting cases where the exclusionary rule does not apply, *i.e.*, grand jury proceedings, civil tax proceedings, civil deportation proceedings, and federal habeas proceedings)). Although "the Supreme Court has refused . . . to extend the exclusionary rule to non-criminal contexts," *Townes v. City of New York*, 176 F.3d 138, 145–16 (2d Cir. 1999), it has not "ruled out the possibility of applying the exclusionary rule" in civil proceedings, *United States v. Kirsteins*, No. 87-CV-964, 1989 WL 49796, at *8 (N.D.N.Y. May 10, 1989). The Court assumes, without deciding, that the exclusionary rule could apply in this case. Out of abundance of caution, the Court emphasizes that it does not rule on the applicability of the exclusionary rule to the present civil proceeding.

the causal link between the government's unlawful act and the discovery of evidence" and, where the events following the search "break the causal chain," the evidence is not suppressed. *Id.* at 239.

## II. Suppression of the SEC's Evidence is Not Warranted

Defendants argue that Defendant Xia's May 21, 2018 interview was an "illegal and unconstitutional" search; that the SEC obtained, "directly and indirectly," evidence from said interview; that such evidence is tainted; and that "no intervening events could sever such connections" and "trigger the attenuation exception to the exclusionary rule." (Defs.' Mot., Dkt. 50-1, at 20–21.) The Court finds that, even if the exclusionary rule applies here, which is highly unlikely for several reasons,[7] there is no tainted evidence, direct or indirect, at issue here, and the attenuation doctrine severs any link between the May 2018 interview and the evidence the SEC seeks to present at the Show Cause Hearing.

As an initial matter, the Court finds that there is no direct evidence at issue here. It is undisputed that Defendant Xia did not produce any documents to the Examiners on the day of the May 2018 interview. (*See* Defendants' Reply ("Defs.' Reply"), Dkt. 67, at 9 (stating that "Xia did

---

[7] The Court notes that, even accepting Defendant Xia's description of the May 21, 2018 events, Defendant Xia likely would fail to meet his initial burden of establishing that the Examiners' visit of the FFG's office and their interview of him qualify as an unreasonable search under the Fourth Amendment. *See United States v. Herron,* 18 F. Supp. 3d 214, 221 (E.D.N.Y. 2014) (citing *United States v. Arboleda,* 633 F.2d 985, 989 (2d Cir. 1980), *cert. denied,* 450 U.S. 917 (1981)) (finding that the "initial burden of establishing that a government official acting without a warrant subjected him to a search or seizure" rests with the defendant); *see also United States v. Corbett*, No. 20-CR-213 (KAM), 2021 WL 4480626, at *1 (E.D.N.Y. Sept. 30, 2021) ("When a defendant moves to suppress evidence that he contends derives from an illegal search, he 'bears the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.'" (quoting *United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991))). Even assuming, *arguendo*, that a search took place, the Court would be hard-pressed to find that the search was unlawful and involuntary, and that the exclusionary rule would even apply in this case. However, the Court does not reach these issues because the attenuation doctrine alone defeats Defendants' Fourth Amendment challenge.

6

not submit documents to the SEC during the . . . [interview].").) Defendants' only argument regarding direct evidence is that "[t]he evidence gathered by the Examiners directly" during the interview "includes Xia's statements made during the interview." (*Id.* at 3, n.3.) Defendants do not explain what else they allege to be "included" as direct evidence.[8] However, Defendant Xia does not argue that the SEC is attempting to use the statements he specifically made at the May 2018 interview during the Show-Cause Hearing—instead, his arguments are based on the documents Defendant Xia's former counsel Greenberg produced on his behalf and the evidence gathered through SEC's formal investigation.

The Court also finds that there is no indirect evidence at issue here. But-for causality is a necessary condition for suppression. *See Hudson*, 547 U.S. at 592. The *manner* in which the SEC decided to request documents from Defendant Xia—through an in-person interview at FFG's office—is *not* the but-for cause of Defendant Xia's production of documents to the SEC. Prior to visiting FFG's office, the SEC was already in receipt of a tip "related to a number of securities offerings that Fleet was involved in, including real estate development projects called the Eastern Mirage Project and the Eastern Emerald Project." (SEC Opp., Dkt. 56-1, ¶ 5.) Before arriving at

---

[8] Defendants also argue that, because Defendant Xia did not produce certain documents to the SEC (which the SEC submitted to the Court in support of its motion for a temporary restraining order), the SEC "bears the burden to explain how it obtained these letters and exhibits independent of the" May 2018 interview at FFG's office. (Defs.' Mot., Dkt. 50-1, at 24). Defendants appear to be implying that simply because Defendants did not produce these documents to the SEC, the SEC must have obtained them on May 2018 at the FFG office. First, the Court rejects Defendants' argument that the "burden is on the SEC to explain how it obtained these" documents. (*Id.*) As already discussed, the Court is not convinced that burden shifting is appropriate here. *See Herron*, 18 F. Supp. 3d at 221 (explaining that the "initial burden of establishing that a government official acting without a warrant subjected him to a search or seizure" rests with the defendant, and "[o]nce the defendant has met this burden, the burden then shifts to the government to demonstrate by a preponderance of the evidence . . . that the search or seizure did not violate the Fourth Amendment[.]"). Second, the Court rejects Defendants' unsupported insinuation that simply because a document was not obtained directly through Defendants' document productions, it must have been obtained unlawfully.

7

FFG's office, the SEC prepared a letter specifically addressed to Defendant Xia that explained that the SEC was "conducting an informal inquiry" and requested Defendant Xia to voluntarily produce documents "pertinent to the inquiry." (Doc. Request, Dkt. 56-4, at 1.) The letter indicated that, once Defendant Xia "received and reviewed th[e] request," he could call either Ronald Krietzman, assistant regional director of SEC's Examination Program and signatory to the letter, or Celio, with "any further questions." (*Id.*) The letter enclosed Exhibit A, which listed the various documents sought by the SEC related to Fleet, FFG, and other entities. (*Id.* at 2.)

There is no indication that the SEC drafted or enlarged its document request based on the statements that Defendant Xia made at the May 2018 interview. In fact, the contrary is true. The SEC was fully prepared to request the documents in Exhibit A regardless of the interview. In other words, the manner in which the SEC requested Defendant Xia to produce the documents was not determinative of the SEC's desire or intent to obtain these documents, and Defendant Xia voluntarily produced them with the assistance of counsel, nearly a month after the interview had concluded. *See Hudson*, 547 U.S. at 592 ("In this case, of course, the constitutional violation of an illegal *manner* of entry was *not* a but-for cause of obtaining the evidence. Whether that preliminary misstep had occurred *or not,* the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house.").

Even if the interview could be characterized as the but-for cause of Defendant Xia's document production to the SEC, that would not be enough. The Supreme Court has "never held that evidence is 'fruit of the poisonous tree' simply because 'it would not have come to light but for the illegal actions of the [government].'" *Id.* (citing *Segura v. United States,* 468 U.S. 796, 815 (1984)). But-for causation can be too attenuated to justify the costly sanction of excluding evidence. The Court "need not hold that all evidence is 'fruit of the poisonous tree' simply because

8

it would not have come to light but for the illegal actions of the [government]. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963). Thus, intervening events can break the causal chain between an unlawful search and the evidence obtained, dissipating the "taint" of the government's conduct.

Courts rely on the following three factors in analyzing the break of the causal chain: (1) "the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search;" (2) "the presence of intervening circumstances;" and (3) "the purpose and flagrancy of the official misconduct." *Strieff*, 579 U.S. at 238 (quoting *Brown v. Illinois,* 422 U.S. 590, 603–04 (1975)). Applying that standard here, the Court finds that Defendant Xia's document productions to the SEC, even if subject to the exclusionary rule, are not tainted.

First, "substantial time" passed between the interview, which took place on May 21, 2018, and the first production to the SEC, made on June 18, 2018—*i.e.*, 28 days later. *Id.* ("Our precedents have declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." (citing *Kaupp v. Texas,* 538 U.S. 626, 633 (2003) (*per curiam*))). This is not a case where the evidence the government seeks to introduce was discovered "only minutes" after the alleged unlawful search.[9] *Id.* at 233; *see also Kaupp v.* 538 U.S. at 633 ("10 or 15 minutes"); *United States v. Walker*, 965 F.3d 180, 188 (2d Cir. 2020) ("[A]pproximately ten minutes"); *Wong Sun*, 371 U.S. at 491 (finding that return of

---

[9] Notably, the formal investigation that forms the basis of this case commenced on November 27, 2018—nearly five months after the May 21, 2018 interview.

9

defendant to speak with the Government days after his release was sufficient period of time to "dissipate the taint").

Second, there is a significant intervening circumstance—Defendant Xia retained experienced counsel, Elaine Greenberg, who voluntarily produced the documents to the SEC on behalf of Defendant Xia beginning June 18, 2018. *See United States v. Drago*, 18-CR-394 (GRB) (AYS), 2021 WL 3518305, at *22 (E.D.N.Y. May 6, 2021), *report and recommendation adopted*, 2021 WL 2980699 (E.D.N.Y. July 15, 2021) ("[W]hile [defendant] declined to speak with the Government on the day of execution of the Warrant, he freely elected to proffer, in the presence of counsel, three weeks later."); *United States v. Gordon*, 954 F.3d 315, 323 (1st Cir. 2020) (finding that defendant's retention of counsel "between the airport encounter and the later interview" was an intervening circumstance). The exclusionary rule is not a tool that a defendant, looking back on his actions and regretting the voluntary choices he made, can use to suppress highly probative evidence.[10] Defendants' reliance on *Strieff* is inapposite. In *Strieff*, the Supreme Court found that the discovery of a valid arrest warrant pre-dating the unlawful search was an intervening circumstance that strongly favored the government. *Strieff*, 579 U.S. at 240. The

---

[10] "In determining whether consent [to search] was voluntarily given, courts look to the following non-exhaustive list of factors, including: 1) the youth, lack of education, or low intelligence of the defendant; 2) the lack of any advice as to the defendant's constitutional rights; 3) the length of detention; 4) the repeated and prolonged nature of the questioning; and 5) the use of physical punishment such as the deprivation of food or sleep." *United States v. Pena*, 547 F. Supp. 2d 323, 331 (S.D.N.Y. 2008) (citing *Schneckloth*, 412 U.S. at 226). "Other relevant factors include whether guns were drawn or whether the 'consenting' adult was threatened." *Id.* (quoting *United States v. Lopez*, No. 97-CR-483 (RPP), 1997 WL 790582, at *6 (S.D.N.Y. Dec. 24, 1997). The application of these factors here demonstrates that Defendant Xia voluntarily consented to the SEC's search for the documents that he produced through his counsel on June 18, 2018. *See Schneckloth*, 412 U.S. at 247 ("In this case, there is no evidence of any inherently coercive tactics—either from the nature of the [government] questioning or the environment in which it took place."); *id.* ("Indeed, since consent searches will normally occur on a person's own familiar territory, the specter of incommunicado police interrogation in some remote station house is simply inapposite.").

unrelatedness of the pre-existing arrest warrant to the defendant's interactions with the government prompted the Supreme Court to observe that "[t]he attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence, which often has nothing to do with a defendant's actions." *Id.* That observation, however, is completely irrelevant here, where it is precisely Defendant Xia's actions—*i.e.*, his retention of counsel and his production of documents to the SEC through that counsel—that break the causal link.[11]

Finally, the Court finds that, to the extent that Defendant Xia alleges misconduct by the Examiners, his allegation is not supported. The Examiners, acting on a tip, arrived at the FFG office on May 21, 2018 and presented Defendant Xia with Form 2866, which explained that they were conducting a voluntary inquiry. At the conclusion of the interview, the Examiners left Defendant Xia with a letter that once again explained that the inquiry and request for production of documents was voluntary. As soon as the Examiners learned that Defendant Xia had retained counsel, they ceased any direct communication with Defendant Xia. Even accepting Defendants' allegations regarding the Examiner's conduct on May 21, 2018 as true, the Court finds no misconduct in the Examiners' actions. (Defs.' Mot., Dkt. 50-1, at 2-4 (alleging, *inter alia*, that: (1) "[t]he Examiners urged the office clerk, a young Chinese lady who could not speak English fluently, to call Xia and tell him to either come to the Office immediately or submit to an interview by phone;" (2) "[w]hile Xia was on the way, the Examiners explored the Office and interviewed several employees;" (3) "[a]fter Xia arrived and met the Examiners in the Office's conference

---

[11] Defendants' reliance on *United States v. Molt*, 589 F.2d 1247, 1248 (3d Cir. 1978), is similarly misplaced. (Defs.' Reply, Dkt. 67, at 10–11). In *Molt*, the Third Circuit only decided "whether Molt's consent to the search was invalidated by the agents' innocent misrepresentation of their authority under ss 1509-11 to search his premises." *Molt*, 589 F.2d at 1249. The court there did not consider whether retention of counsel acts as an intervening circumstance in applying the attenuation doctrine.

room, the Examiners asked Xia several leading questions;" and (4) "[i]n response to Xia's question whether he should hire legal counsel, the Examiners told Xia that a majority of the examination subjects simply agreed to OCIE's document requests, that Xia could produce documents himself via the SEC portal, and that hiring legal counsel would be costly.").)  At most, Defendants paint a picture of negligence.  "Conduct that is at most negligent weighs in favor of attenuation, as does the absence of any indication that this unlawful [search] was part of any systemic or recurrent [government] misconduct, a suspicionless fishing expedition, or a dragnet search for outstanding arrest warrants." *Walker*, 965 F.3d at 188 (internal quotation marks and citation omitted); *see also Strieff*, 579 U.S. at 233 ("Officer Fackrell was at most negligent, but his errors in judgment hardly rise to a purposeful or flagrant violation of Strieff's Fourth Amendment rights. After the unlawful stop, his conduct was lawful, and there is no indication that the stop was part of any systemic or recurrent police misconduct.").

Accordingly, the Court finds that suppression of the SEC's evidence in this case is not proper.  Moreover, in light of the Court's findings that the evidence the SEC relies on is not tainted, the Court finds that the Examiners' testimony is irrelevant.  The Court thus grants the SEC's motion to exclude the Examiners' testimony at the Show Cause Hearing.

## CONCLUSION

For the reasons stated herein, Defendants' motion *in limine* is denied and the SEC's motion *in limine* is granted.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 11, 2022
       Brooklyn, New York