UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

                        Plaintiff,

- against -

RICHARD XIA, a/k/a YI XIA; and FLEET
NEW YORK METROPOLITAN REGIONAL
CENTER, LLC, f/k/a FEDERAL NEW YORK
METROPOLITAN REGIONAL CENTER,
LLC;

                        Defendants.

- against –

JULIA YUE, a/k/a JIQING YUE,

                        Relief Defendant.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-5350 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

Pending before the Court is the Court-appointed Monitor M. Scott Peeler's first interim fee application and request to release funds from Richard Xia and Fleet New York Metropolitan Regional Center LLC's (collectively, "Defendants") accounts to compensate the Monitor and his counsel, Arent Fox LLP ("Arent Fox"). (Monitor's First Interim Fee Application ("First Fee App."), Dkt. 32.)[1] Arent Fox incurred $326,528.63[2] in fees and expenses between September 27,

---

[1] On December 27, 2021, the Monitor filed an amendment to the application, requesting that the funds be released from a different account than the one identified in the original request because the original account lacked sufficient funds. (*See* Dkt. 34, at 2.)

[2] The Monitor states that a 10% holdback, or $36,809.95, would be kept in an Arent Fox escrow account until the Court decides the Monitor's final fee application. (First Fee App., Dkt. 31, at 6.)

2021, when the Monitor was first appointed, and October 31, 2021 ("Application Period"). (*See id.* ¶ 17.) The Securities and Exchange Commission ("SEC") "has indicated it finds the activities and expenses reasonable and agrees with the payment requested herein." (*Id.* ¶ 14.)

Defendants filed comments and objections to the First Interim Fee Application on December 28, 2021, raising the following concerns: (1) "[t]o date, the [Eastern Emerald Project and the Eastern Mirage Project] have benefitted little, if any, from the Monitor's work;" (2) "the hourly public-service discounted rates requested by the Monitor are higher than suggested by recent relevant case law in this District for such work;" (3) "the Application does not make any distinction between billing rates for legal and non-legal services;" (4) "some of the time entries in the Application are vague;" (5) "a substantial amount of billed meeting time among the Monitor and his Team of lawyers is included in the Application;" and (6) "the Court's Order Appointing Monitor suggested a 20% holdback on the fees requested by the Monitor . . . [and] the holdback fees should be put in an escrow interest-bearing account, and not held by the Monitor's firm in a non-interest account." (Defendants' Letter with Comments and Objections ("Defs.' Ltr."), Dkt. 35, at 1–3.)

On January 4, 2022, the Monitor filed a reply addressing several of the concerns raised by Defendants, and, as a courtesy, further reduced the total fees requested by $50,000, bringing the total amount requested to $310,229.58 and the temporary holdback amount to $31,000. (Monitor's Reply, Exhibit A, Dkt. 39-1, at 26.)

For the reasons stated herein, the Court finds the Monitor's first interim request for attorneys' fees and his proposed 10% temporary holdback reasonable. Accordingly, the First Interim Fee Application is GRANTED.

## DISCUSSION

### I. Legal Standards

A court appointed monitorship or receivership is "undertaken in the public interest for the benefit of defrauded investors. The [monitor] and his agents serve the Court." *SEC v. Northshore Asset Mgmt.*, No. 05-CV-2192 (WHP), 2009 WL 3122608, at *4 (S.D.N.Y. Sept. 29, 2009). A court-appointed monitor "who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred." *SEC v. Platinum Mgmt. (NY) LLC*, No. 16-CV-6848 (BMC), 2018 WL 4623012, at *4 (E.D.N.Y. Sept. 26, 2018) (quoting *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008)). It is within the Court's discretion to decide the reasonableness of a monitor's fee application. *SEC v. Amerindo Inv. Advisors Inc.*, No. 05-CV-5231 (RJS), 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015) (citing *Northshore Asset Mgmt.*, 2009 WL 3122608, at *3). Similarly, professionals engaged by the monitor to assist in carrying out the monitor's duties and responsibilities, including legal counsel, are entitled to reasonable compensation at the discretion of the Court. *Platinum Mgmt.*, 2018 WL 4623012, at *4.

In a securities action, when considering the reasonableness of a monitor's requested fee, the "[o]pposition or acquiescence by the SEC to the fee application will be given great weight." *SEC v. Byers*, No. 08-CV-7104 (DC), 2014 WL 7336454, at *6 (S.D.N.Y. Dec. 23, 2014) (quoting *SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973)). The Court also balances "the complexity of problems faced, the benefits to the receivership estate, [and] the quality of the work performed." *Byers*, 590 F. Supp. 2d at 644 (quoting *Fifth Ave. Coach Lines*, 364 F. Supp. at 1222). The actual "benefits to a receivership estate may take more subtle forms than a bare increase in monetary value." *Id.* (internal quotation marks omitted). The quality of the work performed is determined, in part, by "the degree of activity, integrity and dispatch with

which the work is conducted and the result obtained." *Northshore Asset Mgmt.,* 2009 WL 3122608, at *3 (quoting *United States v. Code Prod. Corp.*, 362 F.2d 669, 673 (3d Cir. 1966)).

The Court also considers "the time records presented," *Byers*, 590 F. Supp. 2d at 644 (quoting *Fifth Ave. Coach Lines*, 364 F. Supp. at 1222), as well as "the reasonableness of the hourly rate charged and the reasonableness of the number of hours billed," *Amerindo Inv. Advisors*, 2015 WL 13678841, at *1 (citation omitted). The monitor is responsible for "keep[ing] and present[ing] records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required." *SEC v. Goren*, 272 F. Supp. 2d 202, 211–12 (E.D.N.Y. 2003) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1265 (2d Cir. 1987)). Fees are approved where entries for phone calls and meetings "detail those who were present and what was discussed," and research entries "detail the matter being researched." *Id.* at 212. Whether the hourly rate is reasonable "is evaluated in the context of the usual fees for similar services in the community."³ *Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. at 1222 (citation omitted). Non-legal work performed by monitor's counsel or professionals retained by the monitor should not be billed using hourly rates for legal services. *Byers*, 590 F. Supp. 2d at 647.

The number of hours billed must also be reasonable. *Id.* at 644–45. Records that contain billable "[h]ours that are excessive, redundant, or otherwise unnecessary" should be removed from the fee application. *Goren*, 272 F. Supp. 2d at 208–09 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). Billing that reflects internal correspondence between the monitor's counsel and other professionals can be unreasonable if it "resulted in an accretion of hours billed, but not in

---

³ Although there is a presumption against evaluating the hourly rates based on usual fees in other districts, this presumption can be overcome by showing that "a reasonable, paying client would have paid those higher fees." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 191 (2d Cir. 2008).

meaningful progress towards the [monitor's] goals." *Id.* at 209. The monitor "must act as he would under the ethical and market restraints that constrain a private sector attorney's behavior in billing his own clients." *Byers*, 590 F. Supp. 2d at 645 (citing *Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994)).

II.  **The Monitor's First Interim Fee Application is Reasonable**

    A.  **The Monitor Has Taken Actions to Benefit the Estate**

Considering "the complexity of problems faced, the benefits to the" estate, and "the quality of the work performed," *Byers*, 590 F. Supp. 2d at 644 (quotation omitted), the Court finds the Monitor's fees for Arent Fox to be reasonable, notwithstanding Defendants' assertions to the contrary.

Defendants argue that to date, the Eastern Emerald Project and the Eastern Mirage Project (collectively, "Projects"), "have benefitted little, if any, from the Monitor's work." (Defs.' Ltr., Dkt. 35, at 1–2.) For example, Defendants complain that "[t]he Monitor has not yet arranged the payment of a variety of expenses incurred by the Projects," which has resulted in "the investors' financial and immigration interests [being] in jeopardy." (*Id.*) The Court is not convinced that any claimed lack of benefit to Defendants' Projects is not the result of Defendants' own actions spanning over a decade, beginning in 2010, when Defendants started "offer[ing] and [selling] interests in five limited partnerships . . . to 458 foreign nationals," (*see* Defendants' Memorandum in Opposition to the Show-Cause Order, Dkt. 43, at 7), as opposed to the Monitor's management of the estate since late September 2021—less than four months by the time the First Interim Fee Application was fully briefed. As detailed in Monitor's reply, the Monitor "presented a comprehensive document demand to counsel for Defendants on October 7, 2021 that included requests for information related to property taxes, insurance, and other issues raised in"

5

Defendants' letter, and yet Defendants did not raise any issues with the Monitor until mid-December. (Monitor's Reply, Dkt. 39, at 2 n.1, 3 n.4.) Additionally, the Monitor's First Quarterly Status Report indicates that "the Monitor proposed that Defendants prioritize the most time-sensitive requests, i.e., those that related to the status of the Projects," and had "continued (and continues) to press Defendants and counsel to comply with the Monitor's request" to "obtain documents and information from Defendants," despite "the challenges Defendants and their counsel presented." (First Quarterly Report, Dkt. 55, at 2–3.)[4]

While the First Interim Fee Application comes at an early point in this securities action, the problems involved are complex. Defendants' alleged scheme involves two multi-million-dollar projects under construction or plans for construction, ninety-eight bank accounts, and seventeen companies. (*See* Order to Show Cause, Schedule A, Dkt. 11; Order Appointing Monitor, Schedule 1, Dkt. 11-1; *see also* Complaint, Dkt. 1.) Since his appointment by the Court in September 27, 2021, the Monitor, with the assistance of his firm, Arent Fox, has taken the following actions, among others, in interests of the estate: (1) "[c]ommunicating with [Defendants and Defendants'] counsel;" (2) "[r]eviewing available construction project-related documents;" (3) "[r]eviewing available financial accounting for the projects;" (4) "[a]rranging project site visits to evaluate status of construction and to document existing site conditions;" (5) "[m]eeting[] with project representatives;" (6) "[e]valuating costs incurred and provid[ing the] cost to complete based upon available documents;" (7) "[e]valuating existing liens and claims based upon available documents;" and (8) "[e]xamining (for adequacy/customary levels) the project insurance

---

[4] The Court is even more convinced of the correctness of these contentions having heard the testimony of both Defendant Xia and the Monitor at the show-cause hearing held in this matter on February 14-16, 2022.

maintained for each project by the general contractor/construction manager based upon available documents." (*See* First Fee App., Dkt. 32, ¶ 5.)

The Monitor also retained, with the Court's permission, J.S. Held, "a firm that provides construction project investigative services, construction cost-estimating, project status investigations, project completion options, construction project financial evaluations and construction claims investigations, to assist him in" reviewing "the status of the [Projects], and to make a recommendation as to whether the Projects can or should be completed, or whether the Project[s] should be sold." (Application for Order Approving the Retention of J.S. Held, Dkt. 22, ¶¶ 1–2.)[5] Moreover, the Monitor has carefully and thoroughly documented the actions that he and Arent Fox have taken since the Monitor's appointment in September 2021. (*See* Dkt. 32-2, at 2–27; Dkt. 39-1, at 2–27.) The Court sees no reason to doubt, and Defendants have pointed to none, the quality of the Monitor's and Arent Fox's work to date.

### B. The Monitor's Requested Fees Are Reasonable

Defendants also object to Arent Fox's hourly billing rates and time entries. (*See* Defs.' Ltr., Dkt. 35, at 2.) However, the cases that Defendants rely on to request a reduction of Arent Fox's hourly rates are not applicable here.[6] The Court notes that the Monitor has further reduced

---

[5] At the show-cause hearing, the Monitor testified in detail about the extensive efforts that he and his team, including professionals from J.S. Held, undertook to achieve their assignment in an extremely compressed time frame, driven by the Court-imposed deadline for the Monitor's report. These efforts included multiple meetings with Defendant Xia and/or his counsel, as well visits to both project sites.

[6] The Defendants argue that courts in the Eastern District of New York "have found reasonable hourly rates to be approximately $300-$450 for partners, $200-$325 for senior associates, and $100-$200 for junior associates." (Defs.' Ltr., Dkt. 35, at 2 (quoting *Pogodin v. Cryptorion Inc*., No. 18-CV-791, 2020 U.S. Dist. LEXIS 173999, *25–26 (E.D.N.Y. Sept. 17, 2020). However, the language from *Pogodin* cited by Defendants stems from a chain of quotes and the first case in the chain is from 2012. Ten years have passed since that rate was deemed reasonable. Furthermore, none of these cases involved complex securities litigation. Defendants also rely on *Agudath Israel of Am. v. Hochul* for "typical rates" in "complex cases," but that is a

7

Arent Fox's requested fees by $50,000. (*See* Monitor's Reply, Dkt. 39, at 1.) Though there is little precedent to guide the Court as to typical hourly rates for monitors and their counsel in the Eastern District of New York, the Court finds the hourly rates appropriate in the instant case for the reasons stated below.[7]

First, the Monitor has already applied a public service discount to the requested fees. (*See* First Fee App., Dkt. 32, ¶ 10 ("The following billing rates reflect a public service discount, demonstrated by reduced rates of the Monitor and all Partners, and have been accepted and deemed reasonable by Richard Xia, Fleet and the Xia Entities, and the SEC.").)

Second, the Court notes the comprehensive records of communication between Defendants and the Monitor regarding Defendants' acceptance of the Monitor's fees. Defendants' assertion that Defendant Xia signed the Monitor's engagement letter, which detailed the requested rates (*see* Monitor's Reply, Dkt. 39, at 2), "based on his understanding that he had no choice in the matter," (Defs.' Ltr., Dkt. 35, at 2), is entirely unconvincing. Defendant Xia is a sophisticated businessman who is well-represented by experienced counsel. The Monitor's papers document multiple instances of providing Defendant Xia and his counsel with ample opportunity to object to the

---

First Amendment action inapplicable to the circumstances of a monitorship. (*Id.* at 2 (quoting *Agudath Israel of Am. v. Hochul*, No. 20-CV-4834 (KAM) (RML), 2021 WL 5771841, at *5 (E.D.N.Y. Dec. 6, 2021)).) To the extent Defendants argue that the Court should look more broadly at cases deciding attorneys' fees, the Court notes that the Second Circuit recently affirmed a fee that "would result in a *de facto* hourly rate of approximately $1,556.98 an hour" in a Social Security Administration benefits case. *Fields v. Kijakazi*, No. 20-3760-CV, 2022 WL 258499, *3 (2d Cir. Jan. 28, 2022).

[7] The Court also finds that the Monitor's fee application and the time records therein are not vague and the 10% holdback, to which the SEC consented, is not unreasonable. While the Order Appointing the Monitor stated that fees *may* be subject to 20% holdback, the Court finds that the complexity of the Monitor's responsibilities in this case, the well-documented and substantiated nature of the Monitor's First Interim Fee Application, and the substantial outlay of attorney and consultant hours and other expenses necessitated by the compressed time frame in this case all justify a lower holdback percentage of 10%.

proposed fees in the engagement letter. (*See* Monitor's Reply, Dkt. 39, at 2–3.) During that time, Defendants raised no issues with the Monitor's engagement letter. *Id.* In fact, on October 22, 2021, Defendant Xia contacted the Monitor by phone, confirmed that he had no concerns with the engagement letter and had had sufficient time to consult his attorneys, and sent the Monitor a fully executed engagement letter later that day. (*Id.* at 3.) The Court thus rejects Defendant Xia's claim that he consented to the terms of the Monitor's engagement "based on his understanding that he had no choice in the matter."[8] (Defs.' Ltr., Dkt. 35, at 2.)

Third, Defendants argue that the Monitor and his counsel are attempting to bill for non-legal services at legal rates.[9] (*See* Dkt. 35, at 2–3.) They argue that the appraisal of assets is not a legal activity, and neither is the selection of a construction consultant. (*Id.*) However, the Court specifically tasked the Monitor with the duty to "review the status of" Defendants' projects and "make a recommendation to the Court within sixty (60) days of the entry of this Order as to whether these Projects can or should be completed, or whether the Projects should be sold." (Order Appointing Monitor, Dkt. 11-1, at 4.) The activities undertaken for such review, including the appraisal of Defendants' numerous assets, and selecting a construction consultant to aid the

---

[8] In this regard, the Court notes that at the conclusion of the show-cause hearing, during which Defendant Xia testified for almost two full days, the Court stated on the record that it found much of Defendant Xia's testimony not credible.

[9] Defendants also argue that a substantial amount of the hours billed are for communication between the Monitor and his counsel, which they argue is unreasonable. (*See* Defs.' Ltr., Dkt. 35, at 3.) The Court sees no indication that these hours have not resulted in meaningful progress towards the Monitor's objectives as described in the Court's September 27, 2021 Order. (*See* Order Appointing Monitor, Dkt. 11-1.) To the contrary, the Monitor and his counsel appear to be diligently and reasonably working in accordance with the Court's directives. (*See id.*) However, out of abundance of caution, the Court advises the Monitor to limit any unnecessary participation by multiple members of Arent Fox's team on the same conferences.

Monitor in investigating Defendants' construction projects, are integral to the Monitor's legal work and ought to be billed at legal rates.[10]

Evaluating the Monitor's application in light of the SEC's approval, the Court finds that Arent Fox's requested fees are reasonable.

## CONCLUSION

The Monitor's amended first interim fee application and motion for the release of funds to compensate the Monitor and Arent Fox LLP for fees and expenses incurred between September 27, 2021, and October 31, 2021, is GRANTED.  Accordingly, $310,229.58 will be released to the Monitor from Defendants' CTBC bank account, the Eastern Emerald Group LLC, ending in 0808, $31,000 of which will be held in Arent Fox LLP's escrow account.  The Court issues the attached Order authorizing the release of funds to the Monitor and Arent Fox LLP.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: February 24, 2022
        Brooklyn, New York

---

[10] Defendants offer little to no support for their argument that the selection of a construction consultant should not be billed at legal rates.  Defendants' reliance on *Favors v. Cuomo*, 39 F. Supp. 3d 276, 284 n.16 (E.D.N.Y. May 20, 2014), a redistricting case, is utterly inaccurate. (Defs.' Ltr., Dkt. 35, at 3.)  The cited footnote concerns the request for intervenor's attorneys' fees where the intervenors' sole contribution to the litigation was to propose three experts, one of which the three-judge panel chose.  *Favors*, 39 F. Supp. 3d at 284 n.16.