# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>RICHARD XIA, a/k/a YI XIA, and FLEET NEW YORK METROPOLITAN REGIONAL CENTER, LLC, f/k/a FEDERAL NEW YORK METROPOLITAN REGIONAL CENTER, LLC,<br><br>Defendants,<br><br>JULIA YUE, a/k/a JIQING YUE,<br><br>Relief Defendant. | Civil Action No. 21-cv-5350-PKC-RER<br><br><br><br>**MOTIONS TO WITHDRAW AS COUNSEL AND FOR RELEASE OF FROZEN ASSETS SUFFICIENT TO PAY ATTORNEY'S FEES** |

Pursuant to Rule 1.16 of the New York Rules of Professional Conduct, which is incorporated into the Rules of this Court (*see* EDNY Local Rule 1.5(b)(5)), and Local Civil Rule 1.4, Sills Cummis & Gross P.C. (the "Firm") hereby files this motion to withdraw as counsel for Defendants Richard Xia ("Xia"), Fleet New York Metropolitan Regional Center, LLC, and Relief Defendant Julia Yue ("Yue," and collectively, the "Defendants") in this action. In addition, the Firm hereby moves for an Order to release sufficient funds from frozen assets, including personal funds and rental property assets and rent unrelated to the EB-5 investor assets frozen by this Court's asset-freeze September 27, 2021 Order (the "September 27 Order") (Dkt. 11), for payment of the attorney's fees incurred in its representation of Defendants in this action. In the alternative, the Firm hereby requests the Court to grant it an equitable lien (junior to

secured debt and investor loan repayments) up to the amount of its fees against all assets frozen by the Court's September 27 Order.

In support of the two motions, the Firm states as follows:

### I.   MOTION TO WITHDRAW

1. On or about March 3, 2022, Defendants consented to the Firm withdrawing as their counsel in this case. (Declaration of Hervé Gouraige, sworn to March 14, 2022, Email between Hervé Gouraige and Defendant Richard Xia, March 3, 2022, Ex. 1, submitted in support of the Firm's motions ("Gouraige Decl.").)

2. I have advised Defendants, if they wish, to seek replacement counsel. (Gouraige Decl., Ex. 1.) Upon information and belief, while Defendants look for replacement counsel, they are represented by another counsel who had already filed a notice of appearance in the case.

3. On February 10, 2022, Defendants had other counsel appear to handle the hearing on February 14–16, 2022 regarding Defendants' response to the Court's order to show cause. (Dkt. 79.)

4. Withdrawal for the Firm is, therefore, permissive under New York Rule of Professional Conduct 1.16(c)(10), which provides that "a lawyer may withdraw from representing a client when . . . the client knowingly and freely assents to termination of the employment[.]"

5. In recent weeks, issues have raised the question of mandatory withdrawal for the Firm pursuant to New York Rule of Professional Conduct 1.16(b). The Firm has concluded that professional considerations would, in the absence of the Firm being replaced as counsel as referenced above, make it necessary for the Firm to move to withdraw as counsel to the Defendants. The specific reasons why such withdrawal would be required are not stated in this

2

motion because disclosure of that information would reveal "confidential information" as that term is defined by Rule 1.6 of the New York Rules of Professional Conduct. In that regard, the Firm is following the guidance of New York State Bar Association unofficial Comment [3] to Rule 1.16, which notes in relevant part:

> Court approval or notice to the court is often required by applicable law, and when so required by applicable law is also required by paragraph (d), before a lawyer withdraws from pending litigation . . . The court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. *The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.* Lawyers should be mindful of their obligations to both clients and the court under Rule 1.6 [the confidentiality Rule] and Rule 3.3 [the candor to the court rule]. (Emphasis added.)

6. Lastly, there are irreconcilable differences between the Firm and Defendant Xia on how to handle this case, which makes the Firm's continued representation of Defendants unreasonably difficult. "[W]ithdrawal is warranted when a 'client renders it unreasonably difficult for the lawyer to carry out such employment effectively.'" *United States v. Estate of Wiesner*, 2017 U.S. Dist. LEXIS 38257, at *17 (E.D.N.Y. March 15, 2017). "This difficulty might arise from the client's lack of cooperation or failure to communicate, or by 'the existence of an irreconcilable conflict between attorney and client.'" *Id*. "[I]f the client and counsel have irreconcilable differences, that is a satisfactory reason to allow counsel to withdraw." *Hallmark Capital Corp. v. Red Rose Collection*, 1997 U.S. Dist. LEXIS 16328, at *8–9 (S.D.N.Y. Oct. 21, 1997). The Firm is not stating here such irreconcilable differences on specific issues and case strategy, because the disclosure of that information would reveal "confidential information" as that term is defined by Rule 1.6 of the New York Rules of

3

Professional Conduct. In that regard, the Firm is following the guidance of New York State Bar Association unofficial Comment [3] to Rule 1.16 quoted in paragraph 5 above.

7. Since the filing of its notice of appearance on November 15, 2021 (Dkt. 24), the Firm has not been paid any attorney's fees from Defendants. The only payment received by the Firm has been from applying to its fees the slightly less-than-fifty-percent of the full retainer amount it had requested from Defendants before filing the notice of appearance. (Gouraige Decl., Engagement letter dated October 26, 2021, Ex. 2.) Upon information and belief, Defendants have not been able to pay both the full retainer amount and the Firm's fees they have incurred because of the asset freeze imposed by the Court's September 27 Order. "[A] client's inability . . . to pay can constitute a valid ground for withdrawal from representation." *Team Obsolete, Ltd. v. A.H.R.M.A. Ltd.*, 464 F. Supp. 2d 164, 165 (E.D.N.Y. 2006); *Stair v. Calhoun*, 722 F. Supp. 2d 258, 265 (E.D.N.Y. 2010) ("Failure to pay legal fees has been found to be a legitimate ground for granting a motion to withdraw by several courts in this Circuit." (citations omitted).)

8. Because this litigation is still at an early stage—merits discovery has not begun, and a trial date has not been set—the Firm's withdrawal would not disrupt the proceedings. *See Doe v. Syracuse Univ.*, 2021 U.S. Dist. LEXIS 20104 (N.D.N.Y. Feb. 3, 2021) ("Since the case is in its early stages and not on the eve of trial, the Court finds any delay from [plaintiff counsel's] withdrawal will not adversely affect the Court's trial calendar nor prejudice Plaintiff since she will be provided ample opportunity to find new counsel."). Because the Defendants have consented to the Firm's withdrawal and have other counsel in the case to represent them, "[t]he fact that a new lawyer would have to familiarize himself with the facts of [a] complex securities case, thereby increasing the costs of the litigation to the client, did not create

4

sufficient prejudice to warrant denying the application" to withdraw as legal counsel. *Moolick v. Natwest Bank, N.A.*, 1996 U.S. Dist. LEXIS 10296, at *6 (S.D.N.Y. July 22, 1996).

## II. MOTION FOR PAYMENT OF FEES

### A. Payment from Defendants' Frozen Personal Assets

9. Defendants have incurred substantial attorney's fees owed to the Firm in this action from in or about October 2021 to on or about March 11, 2022. (Gouraige Decl., summary statement of account of fees owed as of March 4, 2022, Ex. 3.) (The invoices sent to Defendants that contain detailed description of services are being submitted separately as exhibits attached to another Gouraige Declaration in connection with a motion to file them under seal with the Court.) As detailed in the monthly invoices submitted to the Court under seal, the legal services provided to Defendants by the Firm have included (a) representation of Defendants in implementation of the Court's Monitor Order dated September 27, 2021 by the Court-appointed Monitor, (b) identifying third party lenders to provide financing to complete the EB-5 projects and repay secured creditors and the loans made by the EB-5 investors to build the EB-5 projects, and (c) representing Defendants against the securities laws violations alleged by the Securities and Exchange Commission ("SEC").

10. "To unfreeze assets to pay for attorneys' fees in any civil action, including an SEC civil enforcement action, 'the [movant] must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established.'" *SEC v. Santillo*, No. 18-5491, 2018 U.S. Dist. LEXIS 116290, at *13 (S.D.N.Y. July 11, 2018) (quoting *SEC v. Stein*, No. 07-3125, 2009 U.S. Dist. LEXIS 134285, at *2 (S.D.N.Y. April 30, 2009)).

5

11. The Firm respectfully requests that the Court order its fees be paid from Defendants Xia and Yue's personal assets. There are two sources of such untainted assets among those frozen by the Court's September 27 Order. First, in the sworn accounting required by the Court's September 27 Order to show cause submitted to the SEC by Defendants, Defendants have identified bank accounts that contain personal funds totaling $460,189.27. (Gouraige Decl., Redacted Sworn Accounting, dated October 1, 2021, Dkt. 19-1, Ex. 4, Schedule A; the unredacted version of this Sworn Accounting, submitted to the Court with a motion to file it under seal, contains the amount of funds in each bank account listed in Schedules A and E.) Alone, the personal funds in the frozen accounts are not sufficient to pay the total amount owed the Firm.

12. Second, Defendants have rental properties acquired before they began to raise EB-5 funds for the two projects from which Defendant Xia represents they receive rental income of approximately $112,965 a month. (*Id*., Schedule E.) Both the properties and rental income are available sources of funds and assets to pay legal fees incurred by Defendants. Upon information and belief, before any EB-5 investor funds were raised in 2010, Defendants Xia and Yue owned nine properties. (The Gouraige Declaration in support of the motion to submit certain documents under seal attaches the documents showing ownership of these properties before 2010.) The rental income from and any loan proceeds secured by these properties are unrelated to the EB-5 projects that are the subject of this action, and therefore are "untainted" assets.

13. The SEC maintains that the Court's September 27 Order nevertheless applies to these untainted assets and funds. (Dkt. 43, at ECF 13–14.) Even if that is a correct interpretation of the Court's asset freeze, the Court should clarify the September 27 Order to make clear that

6

those funds and assets, as untainted assets, are at least available sources for the Court to order payment of Defendants' legal fees to the Firm. *See Luis v. United States*, 136 S. Ct. 1083 (2016) (finding that the Sixth Amendment bars application of congressional statutes authorizing pretrial restraint of untainted assets that prevent a criminal defendant from retaining counsel of choice). The rationale of allowing use of *untainted assets* to pay legal fees applies equally to a civil context, like this case, where the untainted assets are unnecessary to satisfy the potential equitable relief for which the Court has ordered the asset freeze.

14. The uncontradicted record before the Court establishes that the frozen EB-5 assets (excluding rental properties and rent income) are more than sufficient to guarantee payments to all creditors and lenders, yielding a substantial net surplus. (Dkt. 53, at ECF 33–34 (Monitor concludes that, if both EB-5 project properties were sold and all secured and unsecured debts and liabilities paid, the "low" scenario could generate surplus funds of $30.1 million).)

   **B. Equitable Lien on all Assets**

15. Alternatively, the Firm respectfully requests that the Court, sitting as a court of equity, grant the Firm an equitable lien on all of Defendants' frozen assets and funds subordinate to payment of secured creditors and repayment of the loans from EB-5 investors to construct the projects.

16. An equitable lien is a remedy traditionally used by courts of equity to prevent inequity or unjust enrichment. It "may be declared by a court of equity out of a general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case." *Crane Co. v. Fine*, 221 So.2d 145, 148 (Fla. 1969) (superseded by statute as stated in *Pilot Elec. Constr. Co. v. Waters,* 384 So.2d 61 (Fla. 1st

Dist. Ct. App. 1980)*)*. An equitable lien based on unjust enrichment requires four elements: (1) the Firm conferred a benefit on defendants; (2) defendants have knowledge of the benefit; (3) defendants accepted the benefit; and (4) it would be inequitable for defendants to retain the benefit without paying for it. All of these elements are present here.

17. New York law recognizes equitable charging and retaining liens for attorney's fees. "If the attorney is discharged without any misconduct on his or her part, or voluntarily withdraws for just cause, the attorney may invoke two types of liens." *In re First City Nat'l Bank & Trust Co.*, 759 F. Supp. 1048, 1051 (S.D.N.Y. 1991). "The common law gives a general possessory retaining lien allowing an attorney to keep a client's papers or assets until the legal fee is paid." *Id.*; *see also Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991) ("Under New York law, a retaining lien entitles an attorney to keep, as security against payment of fees, all client papers and property, including money, that come into the attorney's possession in the course of employment, unless the attorney is discharged for good cause."); *Stair v. Calhoun*, 722 F. Supp. 2d 258, 276 (E.DN.Y. 2010) ("A discharged attorney is also entitled to a retaining lien on the former client's papers and property that are in the attorney's possession, under New York common law."). "In addition, there is the charging or special lien, originally also a common law right but then statutorily established, against monies recovered for a client by the attorney's efforts in litigation." *First City Nat'l Bank & Trust Co.*, 759 F. Supp. at 1051; *see also Pilitz v. Inc. Vill. of Freeport*, 762 F. Supp. 2d 580, 582–83 (E.D.N.Y. 2011) (finding that, to establish a charging lien, "there must be asserted a claim which can eventuate in there being proceeds payable to, or assets recoverable by, the client as a result of the efforts of the attorney"); *Stair*, 722 F. Supp. 2d at 267 ("New York's statutory charging lien . . . is a device to protect counsel against 'the

8

knavery of his client,' whereby through his effort, the attorney acquires an interest in the client's cause of action.").

18. A retaining lien applies to client tangible and intangible property in the possession of an attorney. A charging lien applies to a specific property that the attorney and client agreed the lawyer would look to for payment of fees or a fund created by the attorney's services on which a court can impose a constructive trust on behalf of an attorney for legal fees. Where, as here, neither of these circumstances apply, we have not located any decision from the New York Court of Appeals that expressly bars granting the attorney a traditional equitable lien of the kind granted by the Florida Supreme Court in *Crane Co.* Indeed, New York law, which governs the engagement contract between the Firm and Defendants (Gouraige Decl., Ex. 2), is to the contrary. Under New York law, a court of equity has power to "prevent the unjust enrichment of a defendant . . . by . . . imposing an equitable lien." *Tishman Realty & Constr. Co. v. Schmitt*, 330 N.Y.S.2d 174, 177 (N.Y. City Civ. Ct. 1972).

19. Without equitable relief from this Court, the Court Order freezing Defendants' assets prejudices and harms the Firm by rendering those assets legally unavailable to the Firm during the period of the freeze even if it were a judgment creditor. If the asset freeze is continued as a preliminary injunction, an equitable lien for legal fees protects both the interests the Court seeks to protect by the asset freeze and that of the Firm that has rendered legal services in good faith and is precluded from getting timely paid because of the Court asset freeze. An equitable lien at least remedies part of the harm to the Firm caused by the asset freeze while also precluding the Defendants from taking advantage of the asset freeze to delay and frustrate payment of legal fees they have incurred and are obligated to pay on a timely basis.

9

20. Granting the Firm an equitable remedy of a subordinated equitable lien will not prejudice any other secured or unsecured creditor or lender because the existing frozen EB-5 assets are, in the opinion of the Court-appointed Monitor, substantially more than sufficient to cover all known liabilities.

## CONCLUSION

21. In view of this, there is little or no risk of future non-payment to secured and unsecured creditors from a Court order directing payment now of legal fees to the Firm that were incurred for work in this case for the past several months (some of which sought to identify third-party lenders to complete the projects and pay off investors and secured creditors) or, at the very least, granting it an equitable lien on the frozen assets to assure the Firm of payment of its fees in the future.

22. For all of the foregoing reasons, the Firm respectfully requests that the Court grant its motions for withdrawal and for attorney's fees.

Dated: March 14, 2022                                SILLS CUMMIS & GROSS P.C.

                                                 By:   /s/ *Hervé Gouraige*
                                                       Hervé Gouraige

                                                  Sills Cummis & Gross P.C.
                                                  One Riverfront Plaza
                                                  Newark, N.J. 07102
                                                  Tel. No.: (973) 643-5989
                                                  E-Mail: hgouraige@sillscummis.com

                                                  Attorneys for Defendants RICHARD XIA, a/k/a YI XIA, and FLEET NEW YORK METROPOLITAN REGIONAL CENTER, LLC, f/k/a FEDERAL NEW YORK METROPOLITAN REGIONAL CENTER, LLC, and Relief Defendant Julia Yue, a/k/a Yiqing Yue