**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**SECURITIES AND EXCHANGE**
**COMMISSION,**

                    **Plaintiff,**

          **-against-**

**RICHARD XIA, a/k/a YI XIA; and**
**FLEET NEW YORK METROPOLITAN**
**REGIONAL CENTER, LLC, f/k/a FEDERAL**
**NEW YORK METROPOLITAN REGIONAL**
**CENTER, LLC;**

                    **Defendants,**

          **-and-**

**JULIA YUE, a/k/a JIQING YUE,**

                    **Relief Defendant.**

---

**21-cv-05350-PKC-RER**

**PLAINTIFF'S RESPONSE TO MOTION TO WITHDRAW AS COUNSEL AND FOR**
**RELEASE OF FROZEN ASSETS SUFFICIENT TO PAY ATTORNEY'S FEES**

Kevin P. McGrath
David Stoelting
Kim Han
Attorneys for Plaintiff
New York Regional Office
Brookfield Place
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0174 (Stoelting)
stoeltingd@sec.gov

March 28, 2022

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    The Frozen Funds Are Presently Insufficient to Compensate Victims .............................. 3

    II.    The Court Should Not Modify the Freeze on Any of the Accounts ................................... 4

    III.    The Record Does Not Support the Existence of Significant Payments from Xia's Rental Properties, So These Amounts Are Unavailable For Attorney's Fees ................................ 6

    IV.    The Court Should not Impose an Equitable Lien ................................................................ 7

CONCLUSION ....................................................................................................................... 9

## TABLE OF AUTHORITIES

*SEC v. Byers*
    08-cv- 7104-DC, 2009 WL 334343 (S.D.N.Y. Jan. 7, 2009) .....................................................4

*SEC v. Callahan, et al.*
    12-cv-1065-ADS-AYS, 2015 WL 10853927 (E.D.N.Y. Dec. 24, 2015) ...............................3

*SEC v. I-Cubed Domains*, LLC
    664 F. Appx. 53 (2d Cir. 2016) ...........................................................................................5

*SEC v. Musella*
    818 F. Supp. 600 (S.D.N.Y. 1993)......................................................................................7

*SEC v. Natural Diamonds Investment Co.,*
    19-cv-80633-RLR, 2019 WL 2583863 (S.D. Fla. June 11, 2019) .....................................5, 7

*SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*
    296 F.R.D. 241 (S.D.N.Y. 2013) ........................................................................................2

*SEC v. Onyx Capital Advisors, LLC*
    10-cv-11633-DPH, 2011 WL 4528216 (E.D. Mich. Sept. 29, 2011) ..................................4

*SEC v. Rosenthal*
    426 Fed.App'x 1 (2d Cir. 2011)..........................................................................................4

*SEC v. Santillo*
    18-cv-5491-JGK, 2018 WL 3392881 (S.D.N.Y. July 11, 2018) ........................................4

*SEC v. Unifund SAL*
    910 F.2d 1028 (2d Cir.1990)................................................................................................2

*SEC v. Wojeski,*
    10-cv-457-GLS-DRH, 2011 WL 13136029 (N.D.N.Y. Feb. 11, 2011) ..............................4

Pursuant to the Court's Text Order of March 14, 2022, Plaintiff Securities and Exchange Commission (the "Commission") respectfully submits this response to the motion to withdraw as counsel and for the release of frozen funds to pay legal fees ("Mot.") filed by the law firm of Sills Cummis & Gross P.C. ("Sills"), counsel for Defendants Richard Xia ("Xia"), Fleet New York Metropolitan Regional Center and Relief Defendant Julia Yue ("Yue") (collectively, the "Defendants"). While the Commission takes no position on the motion to withdraw, the Court should deny the motions for the release of frozen funds and for an equitable lien.[1]

## PRELIMINARY STATEMENT

Sills—which appeared in this case after it knew that the Court had entered an order freezing Defendants' assets and that Defendants' prior counsel had withdrawn partly due to nonpayment of attorney fees—now seeks to unfreeze $624,534.21 to pay its attorney's fees. And this is after Sills received $440,000 in October 2021 to cover its legal fees in this case. The Court, using its discretionary authority to reject asset freeze modifications, should deny Sills' motion to receive attorney's fees from accounts in the names of Xia and Yue or from any of Defendants' rental properties. There are at present insufficient liquid funds to compensate the victims of Defendants' alleged fraud; as a result, modifying the freeze to pay Xia's counsel as it exits this case is plainly not in the best interests of the victims. The Court should similarly reject Sills' alternative request for an "equitable lien" on all frozen assets because such a lien violates the Order to Show Cause's prohibition on any "pledge, encumbrance, assignment, [or] dissipation" of the frozen assets, and because the state law concepts on which Sills bases its

---

[1] Sills is now the second firm to appear on behalf of Xia and then withdraw for reasons of "professional considerations" under Rule 1.16(b). Last October, Mukasey Frenchman LLP appeared as Xia's counsel and then filed a motion to withdraw eighteen days later (Dkt. 15-17, 21).

1

argument are inapplicable here. The Court should preserve all the frozen funds and assets for distribution to Defendants' victims in the event of a final judgment against Defendants.

## ARGUMENT

The purpose of an asset freeze order is to ensure that "any funds that may become due can be collected. The order functions like an attachment." *S.E.C. v. Unifund SAL,* 910 F.2d 1028, 1041 (2d Cir.1990).  "The decision to ... modify an asset freeze, is committed to the district court's discretion." *SEC v. One or More Unknown Traders in Sec. of Onyx Pharm., Inc.*, 296 F.R.D. 241, 255 (S.D.N.Y. 2013) (citing *Smith v. SEC*, 653 F.3d 121, 127 (2d Cir. 2011)).

**I.      The Frozen Funds Are Presently Insufficient to Compensate Victims.**

"Courts have repeatedly denied requests by defendants to lift asset freezes to obtain funds for attorneys' fees where the frozen assets fall short of the amount necessary to compensate the victims of their fraud schemes."  *SEC v. Callahan*, 12-cv-1065-ADS-AYS, 2015 WL 10853927, at *2 (E.D.N.Y. Dec. 24, 2015); *see also* Mot. at 5 (acknowledging that, in order to obtain attorney fees from frozen funds, Sills must establish that sufficient funds are frozen to satisfy any disgorgement remedy).

2

Relying solely on the Accounting[2] that Xia filed in November 2021 pursuant to the Order to Show Cause,[3] Sills argues that eleven accounts listed in the Accounting contain "untainted assets" and should be used to cover Sills' legal fees. Mot. at 6. Four of these accounts are in Xia's name, five are in Yue's name, and two accounts are in the names of both Xia and Yue.

Sills justifies its argument by claiming that the frozen assets are "more than sufficient to guarantee payments to all creditors and lenders," Mot. at 7. Sills is wrong. The frozen liquid assets are approximately $70 million—far short of the $229 million Defendants obtained from investors. Sills minimizes this significant gap by arguing that *if* both the Eastern Emerald and Eastern Mirage Projects are sold (which Sills' clients strongly oppose) and *if* the sale proceeds reach a certain level, *then* there would be sufficient proceeds to repay the victims. These uncertainties, however, are too speculative to justify reducing the available liquid assets and placing the risk of a subsequent sale of the properties on the investors. *SEC v. Wojeski,* 10-cv-457-GLS-DRH, 2011 WL 13136029, *2 (N.D.N.Y. Feb. 11, 2011) (denying motion to pay attorney fees from frozen assets in part because "investors, on whose behalf the assets were frozen, [] possess a heightened interest in having those assets maintained without further diminution pending the outcome of this action"); *see also SEC v. Onyx Capital Advisors, LLC,*

---

[2] The Accounting contains an unusual disclaimer stating that "[t]he accounting and the information in the accounting has not been prepared, substantiated, authenticated, verified or vetted in whole or in part by any accountant, lawyer or other professional service provider." Decl. Ex. 3. At the hearing, Xia blamed his lawyers for the disclaimer and stated that he was "in a rush to prepare [the Accounting]." Decl. Ex. 4 at 190-192. In any event, Sills refers generally to unidentified "bank accounts" in Schedule A of the Accounting, which lists over 100 accounts. Mot. at 6. In an email to the Commission on March 22, 2022, Sills' counsel stated that the "bank accounts that contain personal funds totaling $460,189.27" are on Schedule A of the Accounting under the column heading "Cash Location and Status of Bank Accounts, starting at top with Yi Xia to Julia Yue just before Richard Xia (IRA) accounts."

[3] Order to Show Cause and Temporary Restraining Order Freezing Assets, Appointing a Monitor and Granting Other Relief entered September 27, 2021 ("Order to Show Cause"). Declaration of David Stoelting dated March 28, 2022 ("Decl."), Ex. 1 at 6-8.

10-cv-11633-DPH, 2011 WL 4528216, *3 (E.D. Mich. Sept. 29, 2011) (denying motion to release frozen funds to pay attorney fees and reasoning that "[p]reserving funds for victims of the fraud weighs heavy where the frozen funds are insufficient to compensate defrauded victims."); *SEC v. Santillo*, 18-cv-5491-JGK, 2018 WL 3392881, *3 (S.D.N.Y. July 11, 2018) ("assets should remain frozen when the defendant has not demonstrated that there are sufficient frozen assets to pay disgorgement").

II.      **The Court Should Not Modify the Freeze on Any of the Accounts**

Sills argues that eleven accounts in the names of Xia and/or Yue contain "personal assets" that should be used to pay Sills' legal fees. Mot. at 5. Yet Sills, which cites no evidence that these accounts contain "personal funds," again misses the mark. As the evidence shows, over $200 million in investor funds circulated among more than 100 accounts, many of them in Yue's name. Declaration of Raymond Dookhie dated September 27, 2021 ("Dookhie Decl."), ¶¶ 16, 17 (Dkt. 7 at 5). There was no evidence that any of these funds contained more than a small amount of non-investor (untainted) funds. *Id*. Ex. 6 (Dkt. 7-6). Indeed, circulating millions of dollars through accounts in the name of Xia and/or Yue was a part of Xia's scheme.

Sills' argument—which cites no evidence—that the subject accounts contain "untainted" funds also incorrectly implies that the Commission must connect the frozen funds to unlawful activity. There is no such requirement. *SEC v. Rosenthal,* 426 Fed. App'x 1, 3 (2d Cir. 2011) (Summary Order) ("Imposing such a tracing requirement would allow a[ ] ... defendant to escape disgorgement by spending down illicit gains while protecting legitimately obtained assets or, as was the case here, by commingling and transferring such profits."); *SEC v. Byers*, No. 08-cv- 7104-DC, 2009 WL 33434, at *3 (S.D.N.Y. Jan. 7, 2009) ("[A] freeze order need not be limited only to funds that can be directly traced to defendant's illegal activity for the reason that

the defendant should not benefit from the fact that he commingled his illegal profits with other assets.")

In any event, Sills presents no evidence that any of the accounts it identifies contain "personal funds."  The CTBC account (Dkt. 19-1, row 11) in Yue's name contains $125,907.45 that can be traced to investor funds. On September 29, 2021—two days after the Court issued the freeze order—Xia transferred $200,000 from an account he controlled to Yue's CTBC account, and Yue then wired approximately $74,000 to an unaffiliated third-party firm. The $125,907.45 that remains originated from Xia's post-freeze transfer of investor funds. Decl. Ex. 6 (bank records showing post-freeze transfers).

As for the other four Yue accounts at Chase and Citibank, Sills offers no evidence—such as bank statements or a declaration from Yue—that would support the conclusion that these accounts contain personal funds. Indeed, in the nearly six months since this action was filed neither Yue nor Xia has made that claim. As the evidence shows, close to 100 accounts in the name of Yue and/or Xia were funded with EB-5 investor funds and there has been extensive commingling of funds among these accounts. Dookhie Decl."), ¶¶ 16, 17 (Dkt. 7 at 5). "Where ill-gotten funds are commingled with a relief defendant's legitimately obtained funds, 'the SEC is not required to trace specific funds[.]'" *SEC v. I-Cubed Domains*, LLC, 664 F. App'x 53, 56 (2d Cir. 2016) (Summary Order) (quoting *SEC v. Rosenthal*, 426 F. Appx. at 3); *SEC v. Natural Diamonds Inv. Co*., No. 19-cv-80633-RLR, 12019 WL 2583863, *7 (S.D. Fla. June 11, 2019) (to continue freeze, Commission "need only demonstrate it is likely to succeed in showing that payments to the Relief Defendants were made from accounts or funds that contained investor funds").

Neither the two Chase accounts nor the two Citibank accounts were known to the Commission before filing this action; as a result, they were not among the more than 150 accounts listed in the attachment to the Order to Show Cause. Decl. Ex.1, Sched. A. These accounts were frozen by Chase and Citibank, however, after the Commission served them with the asset freeze order directing the banks to freeze any accounts in Yue's name.

The fact that Sills—whose clients have access to the records—failed to submit any evidence of the source of funds in the Chase and Citibank accounts supports a strong inference that these four accounts, like the other accounts in Yue's name, have been fully funded or commingled with investor funds. In any event, the Commission intends to obtain the records for Yue's Citibank and Chase accounts, and respectfully requests that it be given an opportunity to do so by obtaining them from Defendants (or by subpoena to the banks) in order to determine the source of the funds in those four accounts. Until the Commission obtains these records and reports back to the Court, all four accounts should remain frozen.

## III. The Record Does Not Support the Existence of Significant Payments From Xia's Rental Properties, So These Amounts Are Unavailable for Attorney's Fees.

Sills argues that "rental income" from the properties listed on Schedule E of the Accounting could be used to pay its legal fees. Mot. at 6. Although Sills cites to the Accounting to claim that monthly rental income is $112,965 a month, *id*., Sills provides no evidence to support this figure. There is also no evidence of how much rental income has been paid to Xia or his entities in total since the freeze went into effect; how the rental income was utilized; and which accounts the rental income was deposited into. The Commission asked Defendants for this information in November 2021 and in March 2022; it has not been provided.

The current record does not support the conclusion that *any* rental income is available to cover Sills' legal fees, even assuming post-freeze rental income were not subject to the freeze.

Based on testimony from the show-cause hearing, the rent is either collected in cash and disbursed to laborers or deposited in a "company account" and used to pay mortgages. The Monitor testified at the show cause hearing that—based on conversations with Xia—"[Xia] owned a number of rental properties . . . approximately 17; [and] routinely [Xia's] wife would go around and collect that rent in cash, that she wouldn't count that cash." Ex. 4 at 544. And in his 2019 deposition, Xia testified that "when we get the rental money, if it's a check we just . . . deposit [it] into the company account and it pay[s] for the mortgage. . . . [I]f the tenant pays cash we, basically, you know, provide it to the job site. Job site every day needed like petty cash every day." Ex. 5 at 145-146. And rent payments, moreover, were commingled with investor funds in at least six Xia controlled accounts. Dookhie Decl. Ex. 6 (Dkt. 7-6). The rental income was, therefore, either disbursed or commingled with investor funds shortly after receipt.

Sills also provides no evidence (apart from the Accounting) that any of the rental income that has supposedly been received since the freeze remains available. Sills would presumably have obtained this evidence from its clients if it existed; as a result, the only plausible conclusion based on the evidence is that there is no rental income available.

## IV.     The Court Should Not Impose an Equitable Lien.

As an alternative to modifying the freeze, Sills requests that the Court impose "an equitable lien on all Defendants' frozen assets and funds[.]" Mot. at 7-9. This request should be denied. First, an equitable lien would impair assets that have been frozen for the benefit of investors, which is prohibited by the Court's asset freeze order. Ex. 1 at 6 (prohibiting the imposition of any "pledge, encumbrance, assignment, [or] dissipation" of any of the assets subject to the freeze).

Second, Sills grounds its argument for an equitable lien on New York State law. State law, however, cannot be applied to undermine or limit federal court orders entered for the benefit of investors. *See Natural Diamonds* 2019 WL 2583863, at *8 ("Federal district courts have broad equitable powers to reach assets otherwise protected by state law."); *SEC v. Musella,* 818 F. Supp. 600, 602 (S.D.N.Y. 1993) (holding exemptions from attachment under New York law did not alter a person's duty to pay under a disgorgement order) (citing *Badley v. Santacroce*, 800 F.3d 33, 37-38 (2d Cir. 1986)).

Finally, the equities do not favor Sills. The firm came into this case knowing of the asset freeze and that it was replacing a firm that withdrew, in part, because legal fees were unpaid. Sills also received $440,000[4] in October 2021 and chose to devote substantial time and resources to pursuing motions that were without merit and ultimately unsuccessful. *See, e.g.,* Dkt. 50 (unlawful search and seizure motion).

---

[4] On January 6, 2022, the Commission served a document subpoena on Sills seeking documents concerning payments to Sills by or on behalf of Xia. In response, Sills produced a wire transfer record showing that on October 26, 2021, $440,000 was transferred from an account in the name of Ellen Young to Sills. Decl. Ex. 2.

**CONCLUSION**

For the reasons set forth above, the Court should deny Sills' motions to unfreeze assets to pay its legal fees and grant it an equitable lien.

Dated:  New York, New York
        March 28, 2022

                                    Respectfully submitted,

                                    /s/ *David Stoelting*
                                    _____
                                    Kevin P. McGrath
                                    David Stoelting
                                    Kim Han
                                    Attorneys for Plaintiff
                                    SECURITIES AND EXCHANGE COMMISSION
                                    New York Regional Office
                                    100 Pearl Street
                                    New York, New York 10004
                                    (212) 336-0174 (Stoelting)
                                    stoeltingd@sec.gov