```
                                                                    1

 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - X
 3
     SECURITIES AND EXCHANGE         :
 4   COMMISSION,                                21-CV-5350(PKC)

 5            Plaintiff,             :
                                                United States Courthouse
 6        - against -                :          Brooklyn, New York

 7   RICHARD XIA, et al.,            :          February 14, 2022
                                                10:00 o'clock a.m.
 8            Defendants.            :

 9   - - - - - - - - - - - - - - - X

10                 TRANSCRIPT OF ORDER TO SHOW CAUSE
                 BEFORE THE HONORABLE PAMELA K. CHEN
11                   UNITED STATES DISTRICT JUDGE.

12   APPEARANCES:

13   For the Plaintiff:          US SECURITIES & EXCHANGE
                                        COMMISSION
14                               New York Regional Office
                                 200 Vesey Street, Suite 400
15                               New York, New York 10281-1022

16                               BY: DAVID P. STOELTING, ESQ.
                                     KEVIN P. McGRATH, ESQ.
17                                   KIM HAN, ESQ.

18   For the Defendants:         SILLS CUMMIS & GROSS, P.C.
                                 One Rockefeller Plaza
19                               New York, New York  10020

20                               BY:  HERVE GOURAIGE, ESQ.

21                               TAHER KAMELI, ESQ.
                                 17 N. State Street, Suite 1700
22                               Chicago, Illinois  60602

23   Court Reporter:             Charleane M. Heading
                                 225 Cadman Plaza East
24                               Brooklyn, New York

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription.
```

1   Q    And you prepared it by yourself?
2   A    Yes.
3   Q    So I just want to --
4              MR. STOELTING:  We can mark this as 178.
5              THE COURT:  Is this something else?
6              MR. STOELTING:  This is the affirmation of Mr. Xia
7   that was filed along with the accounting.
8              THE COURT:  All right.
9              MR. KAMELI:  What happened to 177?  You said you
10  were going to call this 178?
11             MR. STOELTING:  177 was the other declaration we
12  just marked.
13             THE COURT:  This is 178.
14             (Plaintiff's Exhibit 178 so marked.)
15  Q    I just want to ask you about paragraph 2.
16             MR. STOELTING:  So I guess we'll mark this as 178?
17             THE COURT:  Yes.  Go ahead.
18             MR. STOELTING:  Okay.
19  Q    Paragraph 3, I'm sorry.  So it says:  The accounting and
20  the information in the accounting has not been prepared,
21  substantiated, authenticated, verified or vetted in whole or
22  in part by any accountant, lawyer or other professional
23  service provider.
24             Do you know why that provision was put in your
25  affirmation?

1  A    That's prepared by my counsel.
2  Q    But so is that true, that your accountant -- no lawyer
3  even looked at it to make sure it was accurate, no accountant
4  looked at it, your tax preparer didn't look at it, none of
5  your work colleagues, nobody looked at it except you?
6  A    It was in a rush.  I was ordered to produce, I think, in
7  three days including weekend.  I was really working hard to
8  get it done, but I believe it's 100 percent true.
9  Q    Did you specifically not want your lawyers or your
10 accountants or anyone else to review it before it was filed?
11 A    No, I sent to my lawyer.  This has actually been filed
12 through lawyer, I guess.
13           THE COURT:  No, but to review it.  Did you ask
14 anyone to review it?
15           THE WITNESS:  Yes.  I think when it's initially
16 being prepared, I share with the SEC attorney and they gave a
17 lot of comments and then I, you know, modified, revised it and
18 then I was told SEC attorney was happy about that, then we
19 filed it.
20           THE COURT:  No, but you signed the affirmation
21 saying no lawyer or accountant reviewed it.  Now you're saying
22 someone did review it and suggest changes to it?
23           THE WITNESS:  That's the same lawyers, the Marc
24 Mukasey firm.
25           THE COURT:  No, my question to you is you signed

1  something saying no lawyer reviewed it.  Is that inaccurate?
2         THE WITNESS:  I didn't pay attention for that part.
3  I was just in a rush to prepare that and they told me to sign
4  this and that's all I can tell you.
5         THE COURT:  Go ahead, Mr. Stoelting.
6  Q    So is it -- it's true, correct, that none of the Mirage
7  or Emerald investors have been paid back their capital
8  contributions?
9  A    Not until now but I did send a letter in May 2021 telling
10 all the EB-5 investor in the EMMCO that we're ready to
11 dissolve the partnership and pay them back because condition
12 met, the last EB-5 investor filed an application for three
13 years already, and I was actually ready to pay them back after
14 August the 26th.
15 Q    Okay.  But you do understand that investors do want their
16 capital contributions back, right?
17 A    Yes, we had, we even have agreement, I think.  They were
18 trying to ask me, you know, but right now, because of the
19 asset freeze, we cannot honor that agreement.
20 Q    I think you mentioned at some point the explosion at the
21 Eastern Emerald site in early 2019.  Can we look at
22 Exhibit 80.
23        Okay.  So Exhibit 80 is the construction safety
24 engineering unit inspection report and I just want to read a
25 couple of portions.

435

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE         :
COMMISSION,                              21-CV-5350(PKC)

          Plaintiff,            :
                                         United States Courthouse
       - against -              :        Brooklyn, New York

RICHARD XIA, et al.,            :        February 16, 2022
                                         12:00 o'clock p.m.
          Defendants.           :

 - - - - - - - - - - - - - - - X

            TRANSCRIPT OF ORDER TO SHOW CAUSE
         BEFORE THE HONORABLE PAMELA K. CHEN
              UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Plaintiff:         US SECURITIES & EXCHANGE
                                 COMMISSION
                           New York Regional Office
                           200 Vesey Street, Suite 400
                           New York, New York 10281-1022

                           BY: DAVID P. STOELTING, ESQ.
                               KEVIN P. McGRATH, ESQ.
                               KIM HAN, ESQ.

For the Defendants:        SILLS CUMMIS & GROSS, P.C.
                           One Rockefeller Plaza
                           New York, New York  10020

                           BY:  HERVE GOURAIGE, ESQ.

                           TAHER KAMELI, ESQ.
                           17 N. State Street, Suite 1700
                           Chicago, Illinois  60602

Court Reporter:            Charleane M. Heading
                           225 Cadman Plaza East
                           Brooklyn, New York

Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

             CMH      OCR      RDR      FCRR
```

Peeler - Direct - McGrath 543

1  A    Yes, they did.
2  Q    Can you give us a brief summary of what you learned
3  happened at the meeting?
4  A    Yes.  There were a series of conversations about, again,
5  primarily documents that we felt we absolutely had to have to
6  do the work.  At that time it was due in approximately three
7  weeks from that moment.  And in the course of that
8  conversation and discussions relating to his -- the workforce
9  doing the work on Mirage and trying to pin down the laborers
10 on site and the cost to complete and, again, some of the
11 numbers that were being used, Mr. Xia made a number of
12 statements relating to those individuals that gave me pause.
13 Q    Let me focus you first on the document end of this.
14        What, if anything, did Mr. Xia say or did your team
15 learn from their meeting there regarding what documents
16 existed and didn't exist?
17 A    Well, the conversation the day before this meeting and in
18 this meeting, Mr. Xia made a number of statements.
19 Specifically, I recall the following:
20        Number one, he indicated that there was no general
21 ledger or accounts payable system whatsoever.
22        Number two, he had said to us that Excel -- that for
23 him to enter numbers onto a spreadsheet was a waste of time,
24 that his entire business model was about efficiencies and
25 avoiding those sorts of things and that those things were a

Peeler - Direct - McGrath 544

1 waste of time and a waste of his energy, that his memory was
2 all we needed, that he had all the things we needed from his
3 memory.
4 　　　　　And he went on to describe again a number of things
5 that I was, quite frankly, stunned at that point. Just
6 hearing those things alone, for any business or concern
7 whatsoever, let alone a business that is receiving investor
8 funds and/or is in a highly regulated industry like the
9 construction industry in New York City, those statements were,
10 quite frankly, deeply troubling to me at that time.
11 　　　　　He then went on to discuss how the workers onsite
12 were paid.
13 Q　　What did he say about that?
14 A　　He indicated that his -- we were aware, he told us, that
15 he owned a number of rental properties outside of the projects
16 we're discussing in this matter, approximately 17; that
17 routinely his wife would go around and collect that rent in
18 cash, that she wouldn't count that cash; and that based upon
19 his assessment of the level of work that was being done at the
20 Mirage site specifically, he would tell her how much cash to
21 pay individual workers, laborers on site, which she would do.
22 Q　　Did you ask whether Mr. Xia had any payroll records to
23 document the payments to the workers for his different, quote,
24 subcontractor affiliates?
25 A　　We did.

Peeler - Direct - McGrath                545

Q    What did he tell you?
A    He indicated that he based his assessments of how much to pay the workers based upon, in essence, a specific job or a floor or a task that would have a certain value to it; that the workers on site would have time cards and that based upon his review of those time cards, that's how he would determine how much his wife should pay those workers in cash.  When we asked for those time cards, none were produced.
Q    Did you ever receive any payroll records from Mr. Xia relating to the work that was done through his affiliate entities?
A    No.  I should say that when Mr. Xia was on the stand the other day, he began to talk about ADP records which relate to his -- what he calls his employees, which are a different group of individuals.
Q    Are you referring to the payroll records for the Fleet company?
A    Yes.
Q    And is it your understanding -- is your understanding those are office workers or pick-and-shovel type workers?
A    No, those are more of the engineers.  They are more -- and again, I think as Mr. Xia testified, I think those are individuals from more the office workers, and they are two different groups of people.  We were focused on the laborers on site because we're focusing on cost to complete and how