UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                  Plaintiff,

    -against-

RICHARD XIA, a/k/a YI XIA, and
FLEET NEW YORK METROPOLITAN
REGIONAL CENTER, LLC, f/k/a FEDERAL
NEW YORK METROPOLITAN REGIONAL
CENTER, LLC,

                  Defendants,

    -and-

JULIA YUE, a/k/a JIQING YUE;
XI VERFENSTEIN; and XINMING YU,

                  Relief Defendants.

21-cv-05350-PKC-RER

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION FREEZING ASSETS AND APPOINTING A MONITOR**

    Kevin P. McGrath
    David Stoelting
    Kim Han
    Attorneys for Plaintiff
    SECURITIES AND EXCHANGE COMMISSION
    New York Regional Office
    100 Pearl Street, Suite 20-100
    New York, New York 10004-2616
    (212) 336-0533 (McGrath)
    (212) 336-0174 (Stoelting)
    (212) 336-5677 (Han)
    stoeltingd@sec.gov

May 18, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................................1

ARGUMENT .........................................................................................................................................1

    I.    The Limited Partnership Units are Securities ....................................................................1

    II.    The SEC's Disgorgement Claims are Not Barred by the Statute of Limitations.................4

           A.  The Relevant Ten-Year Statute of Limitations Applies Retroactively....................4

           B.  The Statutory Period Began No Earlier Than March 27, 2011................................7

    III.   The SEC Has Met Its Burden of Proof to Obtain a Continued Asset Freeze .....................8

    IV.   The Asset Freeze and Monitor Have Not Had a "Deleterious Effect" ..............................10

CONCLUSION....................................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987) (Scalia, J., concurring) ...............................................................................................................................6

*Bank Markazi v. Peterson*, 136 S. Ct. 1310 (2016) ......................................................................5

*In re Enterprise Mort. Acceptance Co. Sec. Litig.*, 391 F.3d 401 (2d Cir. 2004) ........................6, 7

*Kokesh v. SEC*, 137 U.S. 1635 (2017) ............................................................................................6

*Landgraf v. USI Film Products*, 511 U.S. 244 (1994) ...................................................................5

*Martin v. Hadix*, 527 U.S. 343 (1999) ............................................................................................5

*Rodeo v. Gilman*, 787 F.2d 1175 (7th Cir. 1986) ...........................................................................4

*SEC v. Ahmed*, 2021 U.S. Dist. LEXIS 112987 (D. Conn. June 16, 2020) ....................................6

*SEC v. Chen*, 2019 WL 652360 (W.D. Wash. Feb. 15, 2019) ........................................................9

*SEC v. Drexel Burnham Lambert, Inc.,* 837 F. Supp. 587 (S.D.N.Y. 1993) ................................6n

*SEC v. Gallison*, -- F. Supp. 3d --, 2022 WL 604258 (S.D.N.Y. Mar. 1, 2022) .............................5

*SEC v. Gentile*, 939 F.3d 549 (3d Cir. 2019) .................................................................................6

*SEC v. Edwards*, 540 U.S. 389 (2004) ...........................................................................................3

*SEC v. Fiore,* 416 F. Supp. 3d 306 (S.D.N.Y. 2019) ......................................................................6

*SEC v. Fowler*, 6 F.4th 255 (2d Cir. 2021) ...............................................................................5, 7n

SEC v. Hui Feng, 2017 WL 6551107, at *6 (C.D. Cal. Aug. 10, 2017) 935 F.3d 721 (9th Cir. 2019) 3

SEC v. Kellen, 2021 WL 4907238, at *4 (C.D. Cal. Sept. 14, 2021) 6

*SEC v. Murphy*, 626 F.2d 633 (9th Cir. 1980) ................................................................................4

*SEC v. Telegram Group, Inc.*, 448 F. Supp. 352 (S.D.N.Y 2020) ..................................................4

*SEC v. Thompson,* 238 F. Supp. 3d 575 (S.D.N.Y. 2017) ............................................................10

```
```

*SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) ............................................................................... 1, 2

*United Housing Foundation v. Forman*, 421 U.S. 837 (1975) ........................................................ 2

*Warfield v. Alaniz*, 589 F.3d 1015 (9th Cir. 2009) ......................................................................... 4

**Rules and Regulations**

8 C.F.R. § 204.6(j)(2) ....................................................................................................................... 4n
15 U.S.C. § 78aa ............................................................................................................................... 4
15 U.S.C. § 78j(b) ............................................................................................................................. 5
15 U.S.C. § 77q(a)(1) ....................................................................................................................... 5
15 U.S.C. § 78u(d)(3)(A)(ii) ............................................................................................................. 8
15 U.S.C. § 78u(d)(8)(A)(ii) ............................................................................................................. 5
15 U.S.C. § 78u(d)(8)(B) .................................................................................................................. 5
NDAA § 6501(b) ........................................................................................................................... 5, 6
National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283 ("NDAA") ........ 4
28 U.S.C. § 2462 ............................................................................................................................. 7n

**PRELIMINARY STATEMENT**

At the hearing, the Court heard Defendant Xia testify and found that his testimony was "unbelievable and incredible and proven demonstrably false." Yet Defendants' opposition brief now makes four meritless arguments against the preliminary injunction.

*First*, Defendants claim that the limited partnership units the EB-5 investors purchased are not securities under the Supreme Court's test in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), because the investors had no expectation of profit. The Offering Memoranda investors received, however, entitle investors to a "distribution of profit," which plainly satisfies *Howey*'s requirement of an expectation of profit. Indeed, courts have generally concluded that investments in limited partnerships are investment contracts and thus securities under *Howey*.

*Second*, Defendants argue that a five-year statute of limitations mostly bars the SEC's claims. Yet the SEC's disgorgement and injunctive relief claims are subject to a ten-year statute of limitations, made effective on January 1, 2021, that expressly applies retroactively.

*Third*, Defendants argue that the SEC has failed to show an inference that they violated the federal securities laws. Defendants essentially contend that Xia's hearing testimony should be given greater weight than all the other documentary evidence of his fraud. Xia's incredible testimony should not outweigh the mountain of documentary evidence of his fraud.

*Finally*, Defendants' attempt to blame the Monitor and the SEC for Defendants' own project failures should be rejected. The blame lies squarely at Defendants' feet.

**ARGUMENT**

**I.      The Limited Partnership Units Are Securities.**

Defendants argue that the limited partnership units "are not securities" under *Howey* and that the federal securities laws thus do not apply. Defs. Br. at 7-8. Yet Defendants admit that all

1

elements of the *Howey* test are satisfied except for the expectation-of-profit element.  Defs. Br. at 7.  *See also Howey*, 328 U.S. at 298-99 ("[A]n investment contract for purposes of the Securities Act [and thus a security] means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party.").  Defendants do not deny that investors had an expectation of profit; instead, they argue that the profit expectation was "too speculative and indefinite."  Defs. Br. at 11.

In support, Defendants cite a single case, *United Housing Foundation v. Forman*, 421 U.S. 837 (1975).  The *Forman* plaintiffs had purchased stock in a nonprofit co-op housing corporation via an "Information Bulletin" that entitled them to acquire subsidized apartments.  The Bulletin provided that the plaintiffs would receive "a decent home at a reasonable price," and nothing more.  *Id*. at 853.  The Supreme Court found that where purchasers were "motivated by a desire to use or consume the item purchased[,]…the securities laws do not apply," and found that there could "be no doubt that [these] investors were attracted solely by the prospect of acquiring a place to live, and not by financial returns on their investments."  *Id.* at 852-53.

Unlike the Bulletin in *Forman*, the Offering Memoranda in the Eastern Mirage and Eastern Emerald offerings contained provisions explicitly providing for "distribution of profit" that would accrue to each investor.  The Eastern Mirage and Eastern Emerald Offering Memoranda all provided that a "***distribution of profit*** realized from the Partnership's investments" would be "allocated and distributed" between the Limited Partners and the General Partner.  SEC Ex. 1 at 7; 2 at 7; 3 at 7; Exs. 4 at 7; 5 at 6; 6 at 7 (emphasis added).  The Eastern Emerald Offering Memoranda also provided that the limited partnership's loan to the developer would be required to be repaid "at a rate of 2% per annum."  SEC Ex. 4 at 13; SEC Ex. 6 at 14.

These forms of "profit" in the Offering Memoranda meet the expectation-of-profit

2

requirement in *Howey*. Indeed, the Supreme Court has more recently held that "*Forman* supports the commonsense understanding of 'profits' in the *Howey* test as simply 'financial returns on…investments.'" *SEC v. Edwards*, 540 U.S. 389, 396 (2004).

Defendants argue that these "profit" provisions for investors fail to satisfy *Howey*'s expectation-of-profit requirement because "any potential profit would be net of expenses, which included an annual management fee of $7,500."[1] Defs. Br at 9. This argument, however, has been rejected by the courts. In *SEC v. Hui Feng*, the court found "no authority in support of the proposition that there can be no 'expectation of profits' where clients are required to pay fees greater than their actual profits." 2017 WL 6551107, at *6 (C.D. Cal. Aug. 10, 2017) (quoting *Liu* as "persuasive on this point"), *aff'd*, 935 F.3d 721 (9th Cir. 2019). "[T]he issue is not whether investors actually received a profit, but whether there was an expectation of profit based on the objective terms of the offerings." *Id*. As a result, "evidence [d]efendants' clients were required to pay administrative fees for their EB-5 investments is irrelevant in determining whether there was an 'expectation of profits' under the *Howey* test." *Id*.

Defendants also argue that the "SEC did not call any EB-5 applicant to testify that he or she had *any* expectation of profiting." Defs. Br. at 9 (emphasis in original). Courts, however, look to the offering documents to determine the expectation of profits on an objective basis, rather than a particular investor's subjective belief, and Defendants cite no authority to the contrary. *See SEC v. Telegram Group, Inc.*, 448 F. Supp. 3d 352, 371 (S.D.N.Y 2020) (in expectation-of-profit test under *Howey*, "[t]he inquiry is an objective one focusing on the promises and offers made to investors; it is not a search for the precise motivation of each

---

[1] Defendants incorrectly state that the Eastern Mirage and Eastern Emerald investors "agreed to pay" a "$7,500 annual management fee." Defs. Br. at 8. In fact, the Offering Memoranda provide that the $7,500 is paid from "the cash flow of the Partnership." SEC Exs. 1 at 7; 2 at 7-8; 3 at 7; 4 at 7; 6 at 7.

3

individual participant") (citing *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009)).

Finally, Defendants avoid the fact that the Offering Memoranda structure the transactions as "investments" and that "[i]nvestments in limited partnerships generally constitute investment contracts" under *Howey*. *Hui Feng*, 935 F.3d at 729; *see also SEC v. Murphy*, 626 F.2d 633, 640 (9th Cir. 1980); *Rodeo v. Gilman*, 787 F.2d 1175, 1177 (7th Cir. 1986).[2]

## II. The SEC's Disgorgement Claims Are Not Barred by the Statute of Limitations.

Defendants incorrectly argue that all claims except those based on the EEGH II offering are barred by a five-year statute of limitations. Def. Br. at 12-16. In fact, a ten-year statute of limitations applies to disgorgement and injunctive relief. Defendants are thus potentially liable for $229 million of disgorgement, plus prejudgment interest and a civil penalty, and their argument that the SEC is over-secured is incorrect.

### A. The Relevant Ten-Year Statute of Limitations Applies Retroactively.

On January 1, 2021, Congress enacted a ten-year statute of limitations through the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283 ("NDAA"). The NDAA amended Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78aa, by establishing a ten-year statute of limitations for SEC disgorgement claims based on certain securities law violations, including claims under Exchange Act Section 10(b) [15 U.S.C. § 78j(b)], Securities Act Section 17(a)(1) [15 U.S.C. § 77q(a)(1)], and "any other provision of the securities laws for which scienter must be established." NDAA, § 6501(a)(3),

---

[2] In addition, under the EB-5 policies set by the United States Customs and Immigration Service, the investor "'must actually place his or her capital at risk.'" USCIS Policy Manual at Vol. 6, Part G Ch. 2. This means that the investment must be "for the purpose of generating a return on the capital placed at risk." 8 C.F.R. § 204.6(j)(2).

4

codified at 15 U.S.C. § 78u(d)(8)(A)(ii).  The NDAA also established a ten-year statute of limitations for SEC claims for other equitable relief such as injunctions and bars.  *Id.*, codified at 15 U.S.C. § 78u(d)(8)(B).  The NDAA specifically provides that its provisions "shall apply with respect to any action or proceeding that is pending on, or commenced on or after, the date of enactment of this Act."  NDAA, § 6501(b).  Because the Complaint was filed after the enactment of the NDAA, the ten-year statute of limitations applies.

Defendants argue that the ten-year statute of limitations does not apply retroactively because Congress did not expressly so prescribe and because doing so would "create presumptively impermissible retroactive effects."  Defs. Br. at 14.  Defendants are incorrect.

*First*, Congress expressly prescribed that the statute applies retroactively.  The NDAA states that it "shall apply with respect to any action or proceeding that is pending on, or commenced on or after, the date of enactment of this Act."  NDAA § 6501(b).  The Supreme Court has stated that such language constitutes an "explicit retroactivity command."  *Landgraf v. USI Film Products*, 511 U.S. 244, 255-56 & n.8 (1994); *see also Martin v. Hadix*, 527 U.S. 343, 354 (1999).  As the Court held in *Bank Markazi v. Peterson*, 578 U.S. 212, 229 (2016), "Congress may indeed direct courts to apply newly enacted, outcome altering legislation in pending civil cases," and thus logically can direct courts to apply newly enacted legislation to cases filed after the law is passed.  *See also, e.g., SEC v. Fowler*, 6 F.4th 255, 260 n.5 (2d Cir. 2021) (NDAA "retroactively imposed a new, ten-year statute of limitations"); *SEC v. Gallison*, -- F. Supp. 3d --, 2022 WL 604258, at *6 (S.D.N.Y. Mar. 1, 2022).

That principle applies with special force here.  Limitations periods are "creatures of statutes, and did not exist at common law," and deciding what period will better advance the competing policy objectives of a statute is "quintessentially the kind of judgment to be made by a

5

legislature." *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 169 (1987) (Scalia, J., concurring). Here, Congress has spoken clearly, and its judgment must be respected.

*Second*, Defendants do not identify any impermissible retroactive effect that would result from application of the NDAA. Section 6501(b) does not revive a "time-barred" cause of action but rather expands the scope of the SEC's disgorgement remedies in actions like this one that are brought after the NDAA's enactment. *See, e.g., SEC v. Fiore,* 416 F. Supp. 3d 306, 332 (S.D.N.Y. 2019) (noting that disgorgement is an equitable remedy rather than a cause of action). Indeed, while Defendants claim that the statute of limitations expired by December 21, 2016, for the first three offerings, at that time, before the Supreme Court's decision in *Kokesh v. SEC*, 137 S. Ct. 1635 (2017), it was well established in this Circuit that no limitations period applied to the disgorgement remedy, so no claim could have expired. And until the NDAA, no statute of limitations applied to the SEC's injunctive claims, so Defendants would not have been immune from liability for the charged conduct. *See SEC v. Gentile*, 939 F.3d 549 (3d Cir. 2019).[3]

Defendants' reliance on *In re Enterprise Mort. Acceptance Co. Sec. Litig.*, 391 F.3d 401, 405-06 (2d Cir. 2004) (cited in Defs. Br. at 14-15), is misplaced. That case concerned the retroactivity of a provision of the Sarbanes-Oxley Act that extended the statute of limitations for private securities fraud cases. Congress provided that that statute of limitations "shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act." The Second Circuit found that language "contains none of the unambiguous language

---

[3] Defendants' reliance on *SEC v. Drexel Burnham Lambert, Inc.,* 837 F. Supp. 587, 613-14 (S.D.N.Y. 1993) (Defs. Br. at 14, n. 6) is also misplaced, as disgorgement is not a "penalty." *Liu* holds that properly measured disgorgement was traditionally available in equity and is not a "punitive sanction." 140 S. Ct. at 1942-46. Thus, disgorgement that conforms to traditional equitable principles is not penal and "remains beyond the constraints of the Ex Post Facto Clause." *SEC v. Kellen*, 2021 WL 4907238, at *4 (C.D. Cal. Sept. 14, 2021); *see also, e.g., SEC v. Ahmed*, 2021 WL 2471526 (D. Conn. June 16, 2020).

6

that the Supreme Court has asserted would amount to an express retroactivity command" in *Landgraf*. *See Enterprise*, 391 F.3d at 407. Thus, *Enterprise* supports the conclusion that the NDAA language—"shall apply with respect to any action or proceeding that is pending on…the date of enactment"—means its statute of limitations applies retroactively.

### B.   The Statutory Period Began No Earlier Than March 27, 2011.

Defendants are also incorrect about the date the statute of limitations started running on the SEC's disgorgement and injunctive relief, assuming the ten-year period applies. The SEC filed its Complaint on September 27, 2021. Ten years prior to that is September 27, 2011, and Defendants' six-month tolling agreement pushes the period back to March 27, 2011.

Defendants incorrectly argue that the statute of limitations for purposes of disgorgement starts on the date contained in the Offering Memoranda. That argument is contradicted by the plain language of 15 U.S.C. § 78u(8)(A)(ii), which provides: "The Commission may bring a claim for disgorgement under paragraph (7)…(ii) not later than 10 years *after the latest date of the violation* [of scienter-based securities provisions]" (emphasis added). The Amended Complaint charges the Defendants with a scheme to defraud investors in violation of Securities Act Section 17(a)(1) and (3), Exchange Act Section 10(b), and Rule 10b-5. All but eight investors made their investments after March 27, 2011, and the amount invested after that date totals at least $225 million. *See* Dkt. 6-48 at 9, 12-13, 16, 18-22, 29-31 (schedules prepared by Xia's expert Paul Ribaudo showing receipt of capital contributions in each offering by the EB-5 investors, which total $229 million). Because the SEC alleges that Defendants obtained these investors' funds through a scheme to defraud, the "latest date of the violations" for purposes of disgorgement is the date the Defendants received the ill-gotten gains—which was after March 27, 2011, for this amount. This reading is consistent with Congress's description of disgorgement as a remedy against the "recei[pt]" of "unjust enrichment" from a violation. 15

7

U.S.C. § 78u(d)(3)(A)(ii). [4]

Moreover, because Defendants could not have misappropriated investor funds until after Defendants received the funds—after March 27, 2011, for the investors' funds at issue—all the misappropriations fall within the ten-year statute of limitations. Indeed, Defendants continued to misappropriate investor funds as part of their scheme to defraud investors into 2021, and thus the better argument is that the statute of limitations period did not start to run until 2021. Alternatively, at the very least, the statute of limitations did not start to run until the last investor was solicited—after the last offering for the EEGH II project started on October 18, 2015.

### III. The SEC Has Met Its Burden of Proof To Obtain a Continued Asset Freeze.

Defendants dismiss the vast amount of evidence of Xia's fraudulent conduct over a nearly ten-year period as simply a result of Xia's "unconventional accounting and recordkeeping." Defs. Br. at 17, 18. This argument, however, requires turning a blind eye to the documentary evidence of Xia's conduct and instead giving total credence to Xia's testimony at the show-cause hearing. The Court should decline to do so, because Xia's testimony was, as the Court found, "unbelievable and incredible and proven demonstrably false." Hrg. Tr. at 663.

First, Defendants try to minimize Xia's misappropriation of $17 million in Eastern Mirage funds to purchase the Eastern Emerald land, as depicted in SEC Exhibit 96. Notably, Defendants do not dispute that Exhibit 96 accurately depicts the transfers Xia used to divert these funds from one project to the other in violation of the Offering Memoranda. Instead, Defendants credit Xia's testimony that he relied on "advice given by an accountant" and that the transfers were payments for services. Defs. Br. at 17. These claims lack record support. Dkt. 103 at 14-

---

[4] Defendants' reliance on 28 U.S.C. § 2462, Defs. Br. at 12, is misplaced. That statute deals with civil fines, penalties, and forfeitures—not with the SEC's claims for disgorgement, which are covered by Exchange Act Section 21(d). *See, e.g., SEC v. Fowler*, 6 F.4th 255, 260 n.5 (2d Cir. 2021).

8

15 (SEC Br.).[5]

Second, Defendants argue that Xia did not mislead investors about Racanelli Construction Group, based on Xia's hearing testimony that there were multiple firms named Racanelli that worked on the Eastern Mirage project and that he got rid of one of them "when they became too expensive." Defs. Br. at 18. Yet only Xia's hearing testimony supports this argument. Indeed, Xia admitted that he copied the description of the Original Racanelli from its website into the Offering Memoranda to describe Racanelli Construction Group. Dkt. 103 at 4-5.

Third, Defendants claim that the false representations about Racanelli were immaterial to the EB-5 investors. Defs. Br. at 20. A reasonable EB-5 investor, however, would expect that Xia would use investor funds consistent with the Offering Memoranda and find it material that he failed to do so because compliance with the terms of the offering is required by the EB-5 program. *See SEC v. Chen*, 2019 WL 652360, at *13 (W.D. Wash. Feb. 15, 2019).[6]

Finally, Defendants argue that Xia's numerous misrepresentations and omissions in the Offering Memoranda about sources of funding were forward-looking statements under the bespeaks caution doctrine, citing *SEC v. Thompson,* 238 F. Supp. 3d 575, 602 (S.D.N.Y. 2017). Defs. Br. at 21-22. In *Thompson*, the court held that the bespeaks caution doctrine did *not* apply

---

[5] Defendants do not dispute the evidence that Xia's wife, Relief Defendant Yue, was an authorized signatory on numerous Racanelli bank accounts and approved transfers on behalf of Racanelli through 2018. SEC Br. at 5. Defendants claim that Yue was an "additional account signatory" by citing the testimony of Mei Yen Wei, the East West Bank employee. Ms. Wei, however, testified that Yue was the only authorized signer for all the Racanelli accounts through 2018. SEC Ex. 171 at 81-84. *See also* SEC Ex. 8 (signature card).

[6] Defendants seek to buttress their materiality argument by citing a letter, by counsel to certain Eastern Emerald investors, that refers to the investors' interest in obtaining a green card. Defs. Br. at 20-21. Yet the letter states that the investors are "distraught by the SEC's allegations of misappropriation and misuse of investor funds, misrepresentations, and material omissions by… Defendants, and believe that a continued asset freeze is necessary to preserve the status quo." Dkt. 78 at 3.

9

because the defendant knew his statements regarding price projections were "untenable." 238 F. Supp. 3d at 603 n.15.  Similarly, the evidence here shows that Xia had no factual basis for the statements in the Offering Memoranda regarding third-party funding.  Dkt. 103 at 5-13.

### IV. The Asset Freeze and Monitor Have Not Had a "Deleterious Effect."

Defendants' effort to blame the Monitor for the current state of the projects is refuted by the attached Declaration of M. Scott Peeler.  The Monitor repeatedly asked Defendants for sufficient documentation to support requested payments, and Defendants have not provided that information.  Peeler Decl. ¶¶ 5-17.  The Monitor initially made it a priority to obtain adequate insurance, but Xia did not obtain adequate insurance and has continued to permit dangerous activities at the work sites.  *Id.* at ¶¶ 18-25.  Among other things, the Monitor also was not alerted to safety concerns of the New York City Department of Buildings ("DOB") about "berm maintenance" issues at the Eastern Emerald site until February 22, 2022, when he learned that Xia had failed to comply with DOB requests for reports on this issue.  Finally, notwithstanding Defendants' claim that construction has not proceeded on Eastern Mirage because of a "petty and inconsequential disagreement" with the Monitor over the cost to complete that Project, Defs. Br. at 23-24, Defendants in fact have never presented the Monitor with a budget to complete Eastern Mirage or a realistic means of financing it.  Peeler Decl. ¶¶ 30-31.[7]

---

[7] Defendants' attempt to blame the SEC for not agreeing to the release of investor funds for payroll, construction, and insurance, among other things, Def. Br. at 25-26, should similarly be rejected. The SEC has engaged in many conversations with Defendants' serial defense counsel on these issues; and has been unable to reasonably evaluate their proposals given Defendants' failure to respond to the Monitor's requests for information, as described above.  In any event, the Order Appointing Monitor grants Defendants the right to appeal any adverse decision by the Monitor to the Magistrate Judge and then to this Court, Order Appointing Monitor at ¶¶ 4-5 (Dkt. 11), and Defendants never availed themselves of this right.

## CONCLUSION

For these reasons, the Court should enter the SEC's requested preliminary injunction.

Dated: New York, New York
May 18, 2022

                    Respectfully submitted,

                    /s/ David Stoelting
                    _____
                    Kevin P. McGrath
                    David Stoelting
                    Kim Han
                    Attorneys for Plaintiff
                    SECURITIES AND EXCHANGE COMMISSION
                    New York Regional Office
                    100 Pearl Street, Suite 20-100
                    New York, New York 10004
                    (212) 336-0174 (Stoelting)
                    stoeltingd@sec.gov