UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>RICHARD XIA, a/k/a YI XIA, et al.,<br><br>  Defendants,<br><br>  and<br><br>JULIA YUE, a/k/a JIQUING YUE, et al.,<br><br>  Relief Defendants. | Case No. 21-cv-05350-PKC-RER |

**RELIEF DEFENDANTS XI VERFENSTEIN AND XINMING YU'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE**

**I.   INTRODUCTION**

In the SEC's world, the SEC gets to make new arguments and advance new theories for the first time on reply, and relief defendants Verfenstein and Yu don't get to respond. And, if Ms. Verfenstein and Ms. Yu dare to respond anyway, then the SEC files a "motion to strike," requesting that the Court excise, or "strike," from the record what Ms. Verfenstein and Ms. Yu said. Plus, the SEC gets to file another brief—in its words a "sur-sur-reply"—in which it continues to make even more new arguments. Of course, none of this is authorized by the Rules, and on that basis the SEC's motion to strike should be denied.

But the SEC's latest missive is nonetheless instructive. Despite having no fewer than seven SEC attorneys assigned to this matter,[1] despite having engaged in a years' long

---

[1] SEC's Am. Compl. (ECF 98) (attorney listing in caption).

investigation, and despite having been litigating this case for eight months, the SEC has not come remotely close to meeting its burden with respect to Ms. Verfenstein and Ms. Yu, let alone on an "emergency" basis. Indeed, in its motion to strike, the SEC doesn't even try to explain how it's met its burden, instead chiding Ms. Verfenstein and Ms. Yu for not "put[ting] forward evidence."[2] Not only does this ignore the testimonial and documentary evidence they have cited, it also gets the analysis backwards.

## II.   ARGUMENT

### A.   The Federal Rules of Civil Procedure Do Not Authorize the Striking of a Motion or Brief

The SEC asks this Court for the remarkable remedy of striking Ms. Verfenstein and Ms. Yu's motion for leave to file a sur-reply. But for all of the bluster contained in its motion to strike, the SEC never cites to the Rule that authorizes the relief it seeks. And there's good reason for that—no such Rule exists. Although Federal Rule of Civil Procedure 12(f) permits the filing of a motion to strike a "pleading," a motion or brief is not a pleading, see Fed. R. Civ. P. 7(a) (defining "pleadings"). As Professor Moore has said, "Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." 2 James Wm. Moore, Moore's Federal Practice § 12.37(2) (2022) (footnotes and citations omitted).

Not surprisingly, the courts are in accord with the plain language of Rule 12(f). See, e.g., Honig v. Hansen, No. 20 Civ. 5872, 2021 WL 4651475, at *3 (S.D.N.Y. Oct. 6, 2021) ("I hold that Plaintiffs' motions to strike the contents of the motion to dismiss are improper. Under Fed.

---

[2] SEC's Mot. to Strike at 2 (ECF 136).

2

R. Civ. P. 12(f), the Court may 'strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' However, Fed. R. Civ. P. 7 excludes motions from the definition of pleadings, and courts in this district have held that Rule 12(f) does not authorize this court to strike documents other than pleadings."); Dekom v. New York, No. 12-CV-1318, 2013 WL 3095010, at *6 (E.D.N.Y. Jun 18, 2013) ("As Plaintiffs are not seeking to strike pleadings, but rather briefs, Plaintiffs' motions must be DENIED."); Azikiwe v. Nigeria Airways Ltd., No. CV-03-6387, 2006 WL 2224450, at *1 (E.D.N.Y. July 31, 2006) ("With respect to plaintiffs' motion to strike defendants' motions, Rule 12(f) applies only to pleadings and therefore does not provide a basis for striking defendants' motions . . . ."); Latino Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V., No. 03 Civ. 10312, 2005 WL 2207017, at *10 n.6 (S.D.N.Y. Sept. 8, 2005) (denying motion to strike as unauthorized under Fed. R. Civ. P. 12).

There is, moreover, very good reason why the rule is limited as it is. As the U.S. Court of Appeals for the Ninth Circuit explained in Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880 (9th Cir. 1983), by striking a motion or supporting brief, and thereby deleting such materials from the record, a district court could inappropriately shield its decisions from appellate review:

> A movant's right to appeal from an order denying a motion is worth little if the denying judge can strike the motion from the record altogether. Approval of the district court's action [in granting the motion to strike] would establish a procedure that, if abused, could shield erroneous district court orders from review. We hold that F.R. Civ. P. 12(f) should not be construed as allowing this undesirable result.

Sidney-Vinstein, 697 F.2d at 885.

And, as other courts have recognized, that is only one of the dangers posed by a faux motion of this kind. As the district court in Studio & Partners, s.r.l. v. KI, No. 06-C-628, 2007 WL 3342597 (E.D. Wis. Nov. 7. 2007), noted:

3

> Though this court has repeatedly questioned the parties' resort to endless motion practice, I note that among the most wasteful of such motions are the motions to strike. For example, in one motion S & P asks the court to "strike" certain of KI's responses to S & P's proposed findings of fact and some of KI's own proposed findings. The rationale is that KI failed to adequately cite to facts in the record. For its part, KI filed a motion asking the court to "strike" S & P's "reply" to its own proposed findings of fact on the basis that the local rules do not allow such a reply. The premise apparently shared by both parties is that the answer to improper filings is more filings. Not only do such motions ignore the fact that a district court is able to police its own local rules, they burden the court and the other party with an additional motion (and accompanying declarations, exhibits, etc.) whose essential point could be made in a few paragraphs within a dispositive merits brief. For instance, if one party relies on unsupported assertions made in violation of a rule, that can be easily pointed out in the other's merits brief. It should be well known in this circuit by now that courts will continue to frown on motions to strike.

Id. at *8 (citations omitted).

Or, as the U.S. Court of Appeals for the Seventh Circuit put it:

> Motions to strike words, sentences, or sections out of briefs serve no purpose except to aggravate the opponent—and though that may have been the goal here, this goal is not one the judicial system will help any litigant achieve. Motions to strike disserve the interest of judicial economy. The aggravation comes at an unacceptable cost in judicial time.

Redwood v. Dobson, 476 F.3d 462, 471 (7th Cir. 2007).[3]

The fact is that the overwhelming weight of authority demonstrates that the SEC's "motion to strike" is procedurally inappropriate and not authorized by any court rule. The Court should deny it for that reason alone. Moreover, the concerns expressed by the Studio & Partners

---

[3] Though the court of appeals cited to the Federal Rules of Appellate Procedure, relief defendants Verfenstein and Yu respectfully suggest the sentiment is nonetheless apt. Further, although other provisions of the Federal Rules of Civil Procedure allow a court to strike papers, none of them is relevant here. See, e.g., Fed. R. Civ. P. 11(a) (striking an "unsigned paper"), 12(e) (striking a pleading after a motion for a more definite statement is granted), 14(a)(4) (striking certain third-party claims), 26(g)(2) (striking certain unsigned discovery papers).

and Redwood courts are plainly implicated here. Ms. Verfenstein and Ms. Yu believed that the SEC raised new arguments on reply and moved the Court for leave to file a sur-reply. Notably, the SEC does not even deny that it raised new matter on reply. But, if it nonetheless wished to oppose Ms. Verfenstein and Ms. Yu's motion, it should have filed an opposition.[4] In filing the motion it did, the SEC has accomplished nothing other than multiplying the proceedings.

### B. The SEC Has Failed to Meet Its Burden

In filing its motion to strike, the SEC also puts in its "sur-sur-reply," the effect of which is only to make plainer the fact the SEC has not met its burden for the relief it seeks on its Motion to Extend the Asset Freeze. First, the SEC contends that "there is no writing in which Verfenstein requests payment of $11 million." (SEC's Mot. to Strike at 1 (ECF 136).) But, of course, there is: the written documents are the requisitions produced by Ms. Verfenstein to the SEC pursuant to a subpoena and which were submitted by her and Ms. Yu to the Court in responding to the SEC's arguments.

Second, the SEC claims "there is no written evidence that [Ms. Verfenstein] ever submitted the requisition forms at issue to [Mr.] Xia or that [Mr.] Xia ever received them."

---

[4] E.g., Robertson v. McCloskey, 666 F. Supp. 241, 253–54 (D.D.C. 1987) ("Plaintiff's motion [to strike] is not well taken . . . . [P]laintiff had an adequate remedy for both of the injuries allegedly caused by defendants' motion—namely, the right to file an opposition to that motion. Indeed, oppositions serve just such a purpose, allowing non-moving parties to call into question or challenge a movant's recitation or characterization of the relevant facts and law."). Further, even assuming, arguendo, that Ms. Verfenstein and Ms. Yu's motion for leave to file a sur-reply, as a non-pleading, were susceptible to a motion to strike, the SEC is not even close to showing by clear evidence that that motion contained "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As Professor Moore noted, "[t]o prevail on this motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." 2 Moore's Federal Practice § 12.37(3) (footnote and internal quotation marks omitted). Far from having "no bearing on the subject matter of the litigation," the challenged matter here goes to the heart of the litigation, including the relief the SEC is seeking and the new arguments it presented in reply in support of its position.

(SEC's Mot. to Strike at 1 (ECF 136).) But this, too, is not true. The "written evidence" are the requisitions. And Ms. Verfenstein testified that she submitted them. There is no transmittal e-mail, because, as she testified, she didn't submit them by e-mail. By the SEC's reasoning, anytime anyone submits anything by hand-delivery or in-person, it didn't happen, because there isn't some collateral evidence of the submission happening.

Third, the SEC takes issue with Ms. Verfenstein and Ms. Yu's submission of "new requisition forms" and makes additional new arguments about what various entries on the requisition forms say. (SEC's Mot. to Strike at 2 (ECF 136).) But the forms aren't "new." They were produced to the SEC, pursuant to subpoena, in February 2022.[5] Further, the SEC now seems to be in the position of arguing, based on documents it once said "appear phony," that Ms. Verfenstein is owned $4.6 million, but not $11 million. But the SEC has not explained why Ms. Verfenstein is not owned the retainage, which is provided for in the contract and to which she testified.

Finally, the SEC complains that Ms. Verfenstein's deposition was delayed. But it was the SEC that sought the delays. (E.g., 10/29/2021 E-Mail from SEC counsel seeking rescheduling (Ex. A); 11/2/2021 E-Mail from SEC counsel again "adjourning the deposition") (Ex. B).) When the SEC finally got around to setting a date of January 31, 2022, Ms. Verfenstein was not able to appear due to a health issue supported by a doctor's note. Ms. Verfenstein's counsel promptly communicated the issue, and Ms. Verfenstein sat for a two-day deposition on alternate dates chosen by the SEC, February 8 and 9, 2022. (1/30/2022 E-Mail from SEC counsel setting dates of February 8 and 9 (Ex. C).) What, exactly, is the issue? In any

---

[5] That the SEC, which has been engaged in a years' long investigation, neglected to ask Ms. Verfenstein for these documents until after her deposition concluded is not Ms. Verfenstein's fault.

event, the SEC still cannot explain why it is entitled to an emergency asset freeze, given the nature of the assets and fact that they were transferred long ago.

## III. CONCLUSION

As the SEC conceded in its Motion to Extend the Asset Freeze, Ms. Verfenstein "is not charged with wrongdoing." (SEC's Mem. at 22 (ECF 100).) Nor is her mother, Ms. Yu. The only reason they have been sucked into this vortex is that Ms. Verfenstein, as the SEC has also conceded, worked on a project for a decade of her life. But, in making the argument that the fruits of her labor should be frozen, the SEC fails to put forth sufficient evidence that it is entitled to that extraordinary relief. In its motion to strike, the SEC doesn't really take issue with that inescapable conclusion, so it instead tries to reverse the burden and complain (and wrongly, as it happens) that it was Ms. Verfenstein and her mother who didn't produce evidence.

So, what remains of the SEC's motion? What started with "Trulia.com" printouts, speculation about different kinds of dirt, and baseless allegations of "phony" documents, has now morphed into a contention that the formerly "phony" documents (but only part of them) merely support a payment of $4.6 million, retrospective complaints about the scheduling of a deposition (which the SEC repeatedly delayed), and an improper motion to strike. Unmentioned in the SEC's latest papers is that the properties at issue were transferred in May and August of last year and that the SEC knew about the transfers for almost as long. That there is no imminent risk of dissipation or concealment is confirmed by the SEC's lackadaisical approach.

At bottom, what is left of the SEC's motion is a government agency—with plenty of attorneys doing years of investigation but lacking actual evidence against Ms. Verfenstein and Ms. Yu—pounding the table and insisting that it wants what it wants when it wants it:

> [The Red Queen asked,] Take a bone from a dog: what remains?
>
> Alice considered. "The bone wouldn't remain, of course, if I took it—and the dog wouldn't remain: it would come to bite me—and I'm sure I wouldn't remain!"
>
> "Then you think nothing would remain?" said the Red Queen.
>
> "I think that's the answer."
>
> "Wrong, as usual," said the Red Queen: "the dog's temper would remain."[6]

And so it does.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 25, 2022. | s/ Michael J. Rinaldi |
|  | Mary P. Hansen (N.Y. Bar No. 2935385) |
|  | Michael J. Rinaldi (admitted pro hac vice) |
|  | DUANE MORRIS LLP |
|  | 30 S. 17th St. |
|  | Philadelphia, Pa. 19103 |
|  | (215) 979-1000 (telephone) |
|  | (215) 979-1020 (facsimile) |
|  | MPHansen@duanemorris.com |
|  | MJRinaldi@duanemorris.com |
|  |  |
|  | Attorneys for Relief Defendants Xi Verfenstein and Xinming Yu |

---

[6] Lewis Carroll, Through the Looking-Glass 220–21 (Rand McNally & Co. 1916).