

# Third Quarterly Status Report to the Court Pursuant to Monitor Order Paragraph 22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Securities and Exchange Commission v. Richard Xia, a/k/a Yi Xia; and Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, LLC, Defendants,

and

Julia Yue, a/k/a Jiqing Yue; Xi Verfenstein; and XinMing Yu, Relief Defendants

21-cv-05350-PKC-LCP

**ArentFox Schiff LLP** | 1301 Avenue of the Americas, New York, NY 10019 | T 212.484.3909 | scott.peeler@arentfox.com

Third Quarterly Status Report to the Court

**Introduction**

The Monitor submits this third quarterly status report in accordance with Paragraph 22 of the Order Appointing Monitor ("Monitor Order")[1] in the above referenced matter (the "Enforcement Action"), for the period ending on June 30, 2022 ("Third Quarter"). The Monitor submitted his first quarterly status report on January 31, 2022, for the period ending on December 31, 2021 and his second quarterly status report on May 3, 2022, for the period ending on March 31, 2022. Since his last report, the Monitor continued to focus on the most significant, time sensitive, and urgent needs of Eastern Emerald and Eastern Mirage (collectively, the "Projects") and investors while working diligently to minimize costs.

**Insurance Coverage**

The Monitor worked diligently to obtain proper insurance coverage from independent, third-party insurance providers that would sufficiently address the current requirements of the Projects.[2] As discussed in the Monitor's Second Quarterly Status Report, this process was time consuming due to several factors, including, but not limited, to: (a) Xia and his former counsel's failure to provide timely information and to meaningfully assist the Monitor's efforts; (b) the continuing large number of violations issued against the Projects by the Department of Buildings ("DOB"); (c) ongoing work on the Projects despite multiple stop work orders from the DOB, the possibility that insurance coverage had lapsed, and known hazardous conditions onsite at Eastern Mirage which have yet to be remediated despite multiple requests by the Monitor; (d) a lack of interested independent insurance companies;[3] and (e) the current volatility of the insurance market.

---

[1] *See* ECF No. 11-1.

[2] As a captive insurance company, Fleet General Insurance Group, Inc. ("FGIG") was not an acceptable option for many reasons, including but not limited to the allegation that its account was used to facilitate the purchase of a mansion. *See* SEC Amended Complaint ¶ 173, ECF No. 98.

[3] Many insurers were unwilling to issue policies on the Projects given the DOB's identification of "hazardous conditions" and Xia's failure to correct them. *See* Transcript of Order to Show Cause Hearing at 534:1-535:14, ECF

Still, on June 8, 2022, by this Court's Order, the Monitor secured Commercial General Liability insurance coverage on both Projects at competitive rates from independent carriers.

Seeking Builder's Risk insurance for Eastern Mirage has been another complicated effort. Builder's Risk insurance is typically secured at the beginning of a project, and it is highly unusual for a policy to be procured at the late stage of construction such as at Eastern Mirage. As a result, insurance carriers needed to conduct time-consuming and extensive due diligence before being willing to provide coverage quotes. The Monitor obtained proposals independent of those the Defendants stated they obtained, but, after careful consideration, the Monitor believes that the premiums and other costs associated with the proposed Builder's Risk policy appear unreasonably high for the coverage offered. The Monitor is continuing his efforts to obtain adequate Builder's Risk insurance for Eastern Mirage at a reasonable price.[4]

**Additional Priority Items**

The Monitor continued to focus on protecting the investors' interests in the Projects and assets. These efforts, as detailed below, included, but were not limited to: (i) paying New York City real estate property taxes; (ii) evaluating site security and maintenance; (iii) vetting third-party financing Xia proposed for the Projects and identifying other potential funding sources to help pay for Project-related needs; and (iv) investigating the impact of certain loans Xia and/or the Xia Entities obtained in exchange for collateralizing investor assets and the Projects.

### Payment of Property Taxes

At the Securities and Exchange Commission's ("SEC") and Defendants' request in December 2021, the Monitor applied to the Court for an Order unfreezing investor funds to the

---

No. 84-3. The Monitor notes that such DOB violations continue – the most recent of which was issued against Eastern Mirage on April 13, 2022.

[4] On June 22, 2022, counsel for Xia informed the Monitor that he would be providing us competitive quotes for Builder's Risk coverage that week. To date, no such quotes have been provided.

extent necessary to pay past due and current New York City real estate taxes.[5] As stated in that motion, future New York City real estate property tax payments are due every six (6) months.[6] On June 7, 2022, the Monitor applied to the Court for the release of funds for both Projects to pay New York City real estate property tax payments due in July 2022 and timely paid as a result of the Monitor's efforts.[7]

In connection with Eastern Mirage, the loan agreement, dated as of August 31, 2021, between Emerald Creek Capital 3, LLC ("Emerald Creek") and X&Y Development Group, LLC ("X&Y") ("Loan Agreement"), requires Emerald Creek to pay the property taxes from an escrow account Emerald Creek maintains.[8] Under the terms of the Loan Agreement, the sum of $1,170,000.00 ("Tax Escrow") was deposited into an escrow account called the Reserve Account ("Reserve Account"). (*See* Loan Agreement § 1.33 and § 2.5(b)). The Loan Agreement authorizes Emerald Creek to "release [from] the Tax Escrow as needed to cover any such payments as they become due with respect to the Property." (Loan Agreement § 2.5(b)). As part of the Monitor's request to pay the New York City real estate property taxes, the Monitor applied to the Court to grant Emerald Creek permission for the release of funds for New York City real estate property tax payments that were due in July 2022 and timely paid as a result of the Monitor's efforts.[9] The July 2022 real estate property tax payment depleted Emerald Creek's Reserve Account. Going forward, the frozen funds or another source of funds will have to be used to make the New York City real estate property tax payments.

---

[5] *See* ECF No. 36, and 11(b) Report § II.E.(i), ECF No 53.
[6] *See* ECF No. 36 ¶ 20.
[7] *See* ECF No. 148.
[8] *See* ECF No. 36; Declaration of M. Scott Peeler ("Peeler Decl.") Ex. A., ECF No. 36-1.
[9] *See* ECF No. 148.

**Potential Third-Party Financing**

The Monitor previously reported that the Defendants proposed two different third-party sources of potential financing and provided draft documents outlining the proposed draft terms for each option.[10] The Monitor and the SEC raised various questions regarding these proposals and the entities behind them. Those questions remain unanswered. Defendant, through former counsel, then presented the Monitor with a third potential source of financing from a Property Assessed Clean Energy Financing (PACE) lender.[11] To assess the viability of this financing source for the Projects, the Monitor engaged with governmental agencies, including the New York City's Mayor's Office of Climate and Environmental Justice, in partnership with the New York City Energy Efficiency Corporation (NYCEEC), and the New York City Accelerator PACE Financing Program. As a result of these inquiries, the Monitor believes that neither Eastern Emerald nor Eastern Mirage is currently eligible to qualify for a PACE loan. However, New York City may be considering a new rule which, if implemented, might provide a path for one or both projects to obtain at least some future PACE financing. Additionally, shortly after Defendants' current counsel appeared in the Enforcement Action, Defendants furnished a fourth source of potential third-party financing and provided draft documents outlining the proposed draft terms for each option. Communications with Defendants are ongoing, but it is not yet clear whether such financing is viable.

**CTBC Loans**

The Monitor continues to engage in active discussions with CTBC Bank ("CTBC") and the Defendants to resolve issues surrounding the loans CTBC issued to Xia and certain Xia Entities

---

[10] *See* 11(b) Report § II.E.(v), ECF No. 53.
[11] PACE financing is a tool that helps commercial and multifamily building owners fund energy efficiency and renewable energy projects.

that CTBC states are in default.[12] The Monitor is aware of five (5) loans, totaling roughly $20 million, that CTBC issued to Xia/Xia Entities at various points throughout 2021.[13]

Default Letter: CTBC sent to Xia a formal notice of default in or around June 2022 ("Default Letter"), in which it demanded repayment of approximately $11.2 million (comprised of (a) $10.5 million on the Certificate of Deposit ("CD") that matured in April 2022 and which is secured by investor funds in the form of approximately the $10.5 million of the tax credit on Eastern Emerald; (b) $500,000 on the $6 million loan secured by rental income on other properties; and (c) $200,000 on the $4.5 million secured by a CD holding assets of FGIG (the CD matures in August 2022)).[14]

Rent Direction Letter: In connection with the $6 million loan reference above, CTBC also sent a "rent direction letter" to Xia's relevant tenants in or around June 2022. The $6 million loan is secured by rental income, and these letters direct the tenants to pay rent directly to CTBC upon the occurrence and during the continuance of a loan default. CTBC informed the Monitor and the SEC that since this Court's Restraining Order was put in place on September 27, 2021, Xia has not provided a satisfactory accounting of the rents received or due which are pledged to CTBC. After collecting the rents going forward, CTBC has indicated it will hold such funds in escrow until such time as the Court authorizes their application.

Separately, the Monitor has been working with CTBC and Xia to ensure that the approximately $3.8 million tax credit issued by New York State to the Grand Eastern Mirage Group, LLC for environmental remediation work done on Eastern Emerald was deposited into one

---

[12] The Monitor is gravely concerned that interest continues to be charged and the investor funds referenced above are at risk.
[13] The loans are detailed in the Monitor's Second Quarterly Status Report. See ECF 115 at 4-6.
[14] The Default Letter stated that its contents are not intended to violate the Enforcement Action.

of Defendants' frozen accounts at CTBC. On August 1, 2022, CTBC notified the Monitor that the checks were deposited by Xia and received by CTBC on July 29, 2022.

### Defendants' Payment Requests

As identified in the two previous Quarterly Status Reports, Defendants forwarded, for the Monitor's review, various requests for payments to employees. Xia, however, has not responded to the Monitor's request for supporting documentation, such as job descriptions, dates of employment, proof of work authorization, credentials and prior experience, benefits provided, employment contracts, and relationship to Xia or Yue.[15]

In addition, Relief Defendant, Xi Verfenstein ("Verfenstien"), requested payment of outstanding invoices from subcontractors to Perini Group, Inc. ("Perini") for work done on Eastern Emerald, before and after the Restraining Order.[16] The Monitor diligently reviewed the invoices, and asked counsel for Ms. Verfenstein to provide supporting documentation, such as the contracts between Perini and each subcontractor, and billing backups to detail the work provided. The Monitor has not yet received these materials.

### Site Security and Maintenance

This quarter, the Monitor became aware of alleged security concerns at Eastern Mirage. Upon learning of these, the Monitor spoke with counsel for Xia who indicated on more than one occasion that he would forward specific proposals related to berm maintenance at Eastern Emerald and site security improvements at Eastern Mirage. To date, none have been provided.[17]

---

[15] *See* First Quarterly Status Report, ECF No. 55; *see also* ECF No. 115.

[16] The Monitor informed Verfenstein that he would not consider the payment of invoices for work done after the implementation of the Restraining Order at this time.

[17] Pursuant to the Commercial General Liability insurance policies, an inspection was recently performed on Eastern Mirage and one may be done on Eastern Emerald as well. After evaluating the current security measures at each site, the insurer may require certain security improvements.

### Project Violations and Safety Issues

The Monitor and his team continue to be in direct communications with the DOB and the City's Law Department for the purpose of resolving a significant number of these violations under favorable financial terms.

### EB-5 Questions

During the Monitor's testimony on February 16, 2022 at the Order to Show Cause Hearing,[18] he expressed concern regarding Xia's proposed changes to the Eastern Emerald Project to the extent they might create various legal issues and/or put the Eastern Emerald investors' visa eligibility at risk.

In this reporting period, the Monitor continued to engage in productive discussions with United States Citizenship and Immigration Services ("USCIS") attorneys to discuss the new legal landscape of the EB-5 Reform and Integrity Act of 2022,[19] and the impact, if any, various courses of action might have on investors' applications for permanent green cards.

## Status Relating to Paragraphs 8 through 14[20]

The Monitor reviewed documents and information – to the extent Defendants made them available – pertaining to Paragraphs 8 through 14 of the Monitor Order.[21]

**Paragraphs 8-10 (Documents)**. The Monitor's efforts to obtain documents and information from Defendants, and the challenges Defendants and their counsel presented, are detailed in the 11(b) Report, the First Quarterly Status Report, the Monitor's testimony at the Order

---

[18] *See* Transcript of Order to Show Cause Hearing at 521-626, ECF No. 84-3.
[19] On March 15, 2022, President Biden signed an omnibus appropriations bill that included reauthorization of the EB-5 Program. Consolidated Appropriations Act of 2022, H.R. 2471, 117th Cong. (2022)
[20] Monitor Order Paragraph 15 describes the timely access to which the Monitor is to be provided documents and information.
[21] *Id*.

to Show Cause Hearing, and in the Second Quarterly Status Report. Due to these challenges, the Monitor demanded the completion of the document production, together with an affidavit from Xia and other Defendants on or before February 28, 2022, that declares, under penalty of perjury, everything in his/their possession, custody, or control has been produced to the Monitor in response to each enumerated request. As discussed in the Second Quarterly Status Report, Xia provided the declaration, in which he represented that he provided the Monitor with documents from sections I(1)(d), III(D)(2), III(D)(3), and III(D)(5) of Monitor's First Request for the Production of Documents/Information. Upon review, the Monitor determined that Xia had not provided the necessary documents to satisfy those requests. The Monitor again asked Xia to review his documents and materials and provide information sufficient to satisfy these requests as soon as possible. Xia has yet to provide any additional information.

**Paragraph 11(a) (Finances)**. Defendants previously provided the Monitor with documents and information regarding the rental properties Xia and the Xia Entities own (as also referenced above in connection with the CTBC loan), including the revenue they generate, the associated operational costs, the appraised value, and any outstanding debt. In the third quarter the Monitor did not receive new materials regarding the finances and operations of Fleet and the Xia Entities.

**Paragraph 11(b) (Report)**. The Monitor reported on the status of the Projects, and made his recommendations regarding same, in Sections II and IV of the 11(b) Report.

**Paragraph 11(c) (Corporate Transactions)**. The Monitor's review of the limited historical corporate transactions by Fleet or the Xia Entities – to the extent Defendants provided relevant information – is summarized in Section II of the 11(b) Report.

9

**Paragraph 11(d) (Historical Compensation)**. Defendants provided the Monitor with only certain historical compensation of Fleet's former Chief Legal Officer, Bret McCabe.[22] The Monitor was unable to verify this information. Defendants did not provide the Monitor with the historical compensation of any other executive officers or affiliates of Fleet and the Xia Entities.

**Paragraph 11(e) (Numerous Law Firms)**. From the time the Court appointed the Monitor on September 27, 2021, Xia has been represented by *at least* six (6) law firms: Sullivan & Cromwell LLP, Mukasey Frenchman LLP, WilmerHale, Sills Cummis & Gross P.C., Kameli & Associates, and Wolf Haldenstein LLP. Additionally, over the past few months, the Monitor has been contacted by attorneys from various law firms who represented that Xia wished to retain them in this Enforcement Action.

As identified in the Second Quarterly Status Report, the Monitor is aware of unpaid and outstanding invoices from Xia's prior law firms as well as others representing the Xia Entities that now exceed $2.6 million. The Monitor remains deeply concerned that Xia's pattern of replacing counsel without payment is a delay tactic in this Enforcement Action, and which continues to impede and make inefficient use of the work of the Monitor and his team.

**Paragraph 11(f) (Financial Statements)**. The Monitor's review of financial statements of Fleet and the Xia Entities – to the extent Defendants provided relevant information – is detailed in Section II of the 11(b) Report.

**Paragraph 11(g) (Meeting Minutes)**. Defendants have not provided the Monitor with any meeting minutes of the Boards of Directors of Fleet and the Xia Entities.

---

[22] On February 10, 2022, the Monitor was informed that Bret McCabe would no longer serve as Fleet's Chief Legal Officer.

10

**Paragraphs 11(h)-(i) (Litigations)**. The Monitor's review of litigation involving Fleet and the Xia Entities is summarized in Exhibit A to the 11(b) Report.[23] As identified in the Second Quarterly Status Report, an additional class action suit, *Jin v. Xia*, was filed against Xia, Yue, and multiple Xia Entities in this Court on February 18, 2022.[24]

**Paragraph 11(j) (Leases)**. Defendants have not provided the Monitor with any (proposed) material changes to material leases or real estate holdings of Fleet and the Xia Entities. Nonetheless, the Monitor is aware that Xia has listed Eastern Mirage for leasing through Compass, a real estate broker.

**Paragraph 11(k) (Insurance Information)**. After careful review of the insurance information provided by Defendants, the Monitor determined that the Projects were not adequately insured by either Commercial General Liability or Builder's Risk insurance. The details of the Monitor's analysis are discussed in the Second Quarterly Status Report.

The Monitor's efforts to obtain proper insurance coverage from independent, third-party insurance providers is discussed above as it falls outside the scope of Paragraph 11(k).

**Paragraph 11(l) (Investor Communications)**. Defendants have not provided the Monitor with any investor-wide communications intended to be sent by Fleet and the Xia Entities to investors.

**Paragraph 12 (Internal Controls)**. Defendants have not provided the Monitor with a summary report on the internal controls regarding the cash assets of Fleet and the Xia Entities.

**Paragraph 13 (Valuation Reports)**. Defendants provided five (5) valuation reports regarding the Projects to the Monitor.[25]

---

[23] Peeler Decl. Ex. A, ECF No 53-1.
[24] *See Jin v. Xia*, Case No. 1:22-cv-00740-WFK-VMS (E.D.N.Y.).
[25] *See* 11(b) Report. § II.E.(iv), ECF No. 53.

**Paragraph 14 (Annual Budget)**. Fleet and the Xia Entities have not provided the Monitor with their annual budget(s).

Xia has still not deposited check into CTBC account, and Xia has not confirmed.