UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>     -against-<br><br>RICHARD XIA, a/k/a YI XIA; and FLEET NEW YORK METROPOLITAN REGIONAL CENTER, LLC, f/k/a FEDERAL NEW YORK METROPOLITAN REGIONAL CENTER, LLC;<br><br>         Defendants,<br><br>     -and-<br><br>JULIA YUE, a/k/a JIQING YUE, XI VERFENSTEIN, and XINMING YU,<br><br>         Relief Defendants. | 21 Civ. 5350 (PKC) |

**MOTION FOR APPROVAL OF RELEASE OF**
**<u>NON-INVESTOR, INTEREST RESERVE FUNDS</u>**

    M. Scott Peeler, a partner at ArentFox Schiff LLP f/k/a Arent Fox LLP ("ArentFox") and the duly Court-appointed Monitor in this action (the "Monitor"), hereby submits this Motion, at the request of lender, Emerald Creek Capital 3, LLC ("Emerald Creek"), seeking the Court's authorization to (a) release certain non-investor funds[1] Emerald Creek is holding in reserve ("Interest Reserve") under a certain Loan Agreement ("Loan Agreement"), dated as of August 31,

---

[1] Despite these being non-investor funds, Emerald Creek has expressed the view that the Interest Reserve may be subject to the Restraining Order in this Enforcement Action (*see infra*, ¶ 1). As a result, Emerald Creek, out of an exercise of caution, will not release the Interest Reserve funds from the account without the Court's authorization. The Court may recall that Emerald Creek also expressed this view regarding the funds it held in a separate reserve to pay the Eastern Mirage Project real property taxes, which, like the Interest Reserve, are not investor funds. *See* ECF No. 38 ¶ 21.

1

2021, between Emerald Creek and X&Y Development Group ("X&Y" or "Borrower"), and (b) apply the Interest Reserve to satisfy interest payments due from X&Y under the Loan Agreement.

**A. BACKGROUND REGARDING LOAN AND INTEREST RESERVE**

1. On August 30, 2021, Emerald Creek, as lender and administrative agent, and X&Y, as borrower, entered into the Loan Agreement (attached to the Monitor's Declaration ("Peeler Decl.") as Exhibit A) for a two-year term, in the amount of fifteen million dollars ($15,000,000.00). The Loan is secured by a first mortgage lien on property located at 42-31 Union Street, Queens, New York 10013 (the "Property"). The Property is also referenced in the SEC's underlying action (the "Enforcement Action") as the Eastern Mirage Project.

2. Defendant Richard Xia ("Xia") is the personal guarantor to the Loan Agreement and Promissory Note ("Note") executed at the Loan Closing.

3. The interest rate set forth in section 2(e) of the Note is London Inter-Bank Offered Rate ("LIBOR") plus 5.5% (the "Non-Default Interest Rate"), while the default interest rate is set forth in section 5.4(a) of the Note at 18% (the "Default Interest Rate"). The Note is attached to the Peeler Declaration as Exhibit B (the Loan Agreement and Note are collectively referred to herein as the "Loan Documents").

4. At the closing of the Loan Agreement, and subject to the terms of the Loan Agreement, Emerald Creek deposited the sum of $1,680,000.00 into the Interest Reserve for "disbursements to cover interest payments as same accrue and become due and payable to the Loan." *See* Peeler Decl. Ex. A, at 2.5(a). Calculated at the current Non-Default Interest Rate, the Interest Reserve may be sufficient to cover the interest payments through the end of the loan term in August 2023. If the LIBOR rates increase throughout the remaining term of the Loan Agreement, it is possible, however, that the required interest payments, calculated at the Non-Default Interest Rate, will be higher than the Interest Reserve.

## B. EMERALD CREEK ASSERTS X&Y IS IN DEFAULT

5. The SEC filed this Enforcement Action on September 27, 2021, and obtained the Asset Freezing Order (ECF No. 95-1) on that date.

6. Interest payments on the Loan Agreement have not been paid since the entry of the Asset Freezing Order.

7. On October 4, 2021, Emerald Creek sent its first Notice of Default (attached to the Peeler Declaration as Exhibit C) to X&Y and Mr. Xia, stating that they "*should not have proceeded with the terms of the Loan Documents without disclosing specifically the SEC investigation(s) that must have preceded the SEC Action and/or been pending at the time of the Loan…This was a both material misrepresentation and a material omission under the Loan Documents*[,]" and further, that this constituted an automatic Event of Default pursuant to Section 5.1(c) of the Loan Agreement (Peeler Decl. Ex. A).

8. On November 11, 2021, Emerald Creek sent a second Notice of Default (attached to the Peeler Declaration as Exhibit D) to X&Y and Xia, claiming that (a) it learned that X&Y and/or Xia, in connection with securing the Loan, violated a New York State Court Injunction Order dated April 9, 2021, in the matter of *Koba Mushkadiani v. Racanelli Construction Group, Inc., X&Y Development Group, LLC, et al*, New York State Supreme Court, Kings County, Index No.: 502931/2017, issued by Justice Lillian Wan, (b) X&Y's and Xia's failure to disclose the Injunction Order was a material omission under the Loan Documents, and (c) this constituted an automatic Event of Default pursuant to Section 5.1(c) of the Loan Agreement (Peeler Decl. Ex. A).

9. On November 16, 2021, Emerald Creek sent a third Notice of Default (attached to the Peeler Declaration as Exhibit E) stating that X&Y and Xia "*failed to disclose…that there*

*remain[ed] real estate taxes or assessments imposed by New York City" that were due and/or payable, but unpaid as of the Closing Date (specifically, in the amount of $782,639.57…)"* and that the alleged failure to disclose the unpaid taxes was a material misrepresentation and a material omission under the Loan Documents, which constituted an automatic Event of Default pursuant to Section 5.1(c) of the Loan Agreement (Peeler Decl. Ex. A).[2]

## C. EMERALD CREEK'S REQUESTS FOR THE PAYMENT OF INTEREST

10. Therefore, Emerald Creek contends that X&Y is in default of the Loan Agreement and claims it is entitled to seek Default Interest and Late Charges under section 6.1(b) of the Loan Agreement and section 5.4(a) and 5.4(b) of the Note. *See* Peeler Decl. Exs. A, B. If Emerald Creek charged the Default Interest Rate of 18%, the Interest Reserve would no longer be sufficient to cover the interest payments through the end of the loan term in August 2023.

11. However, following extensive discussions with the Monitor – by which the Monitor sought to mitigate any adverse impacts to the Eastern Mirage Project or investor funds – Emerald Creek has agreed to apply the Non-Default Interest Rate to interest due under the Loan Documents, without prejudice to its claim for Default Interest and Late Charges, and to satisfy the outstanding Non-Default Interest by using the funds in the Interest Reserve.

12. The Non-Default Interest for the eleven-month period of October 1, 2021 through August 31, 2022 is $878,020.83 ("Initial Reserve Payment"). Emerald Creek requests authorization to now release the Initial Reserve Payment from the Reserve Account to pay interest due through August 31, 2022 under the Loan Agreement.

---

[2] On January 3, 2022, upon the Monitor's Motion for Approval of Release of Funds for Payment of Real Property, the Court, among other things, authorized Emerald Creek "to immediately release escrowed funds from its Reserve Account [the Tax Escrow]…in the amount of $557,344.72 to the New York City Department of Finance…for payment of property taxes" on the Eastern Mirage Property. *See* ECF No. 38.

13. Deducting the Initial Reserve Payment from the Interest Reserve will leave a remaining balance of $727,312.49 ("Remaining Balance") in the Interest Reserve to cover monthly interest payments due over the remaining 12 months (i.e., the period of September 1, 2022 through August 30, 2023) of the Loan Agreement ("Remaining Term"). For sake of efficiency and to avoid the repeated need for relief from the Court, Emerald Creek also seeks Court authorization to deduct from the Remaining Balance monthly interest payments over the Remaining Term as these interest payments become due under the Loan Agreement, and until the Interest Reserve is depleted.

14. It is X&Y's and Xia's position that X&Y has not defaulted on the Loan Agreement, but X&Y does not object to Emerald Creek's request to use the Interest Reserve to satisfy the Non-Default Interest.

15. Because Emerald Creek is seeking to use non-investor funds, the Monitor also does not object to Emerald Creek's request.

16. The Monitor, therefore, requests the Court's authorization to allow Emerald Creek to release: (i) the Initial Reserve Payment of $878,020.83 from the Interest Reserve to satisfy the Non-Default Interest for the eleven-month period of October 1, 2021 through August 31, 2022; and (ii) the Remaining Balance of $727,312.49 in 12 monthly installments from the Interest Reserve to satisfy the Non-Default Interest due over the Remaining Term.  Based upon the current LIBOR, each monthly payment will be $101,654.17.

17. Even if current payments are based upon Non-Default Interest Rate, the Interest Reserve will likely be depleted prior to the August 30, 2023 maturity of the loan.

18. Both the SEC and the Defendants consent to Emerald Creek's request herein.

WHEREFORE, the Monitor respectfully requests that the Court grant the Monitor's Motion and issue an Order:

a. Authorizing Emerald Creek to release the Interest Reserve payment of $878,020.83 from the Reserve Account for payment of the interest due to Emerald Creek under the Loan Agreement for the eleven-month period of October 1, 2021 through August 31, 2022.

b. Authorizing Emerald Creek to release the Remaining Balance of $727,312.49 in 12 monthly (from September 1, 2022 through August 30, 2023) installments of $101,654.17 from the Reserve Account to satisfy the Non-Default Interest due over the Remaining Term, or as such monthly amounts are modified by LIBOR changes, until the Interest Reserve is depleted.

c. Emerald Creek shall provide documentary proof of the foregoing payments, as applicable, to the Court, SEC, the Monitor, and Defendants within five (5) days of making such payment(s).

Dated: October 18, 2022

Respectfully submitted,

ARENTFOX SCHIFF LLP

By: s/M. Scott Peeler
M. Scott Peeler
1301 Avenue of the Americas, 42nd Floor
New York, New York 10019
Tel: (212) 484 3900
Fax: (212) 484-3990
scott.peeler@afslaw.com

*Court Appointed Monitor*