# EXHIBIT B

# NOTE

Up to $15,000,000.00                                                                                  August 30, 2021

THIS NOTE (this "**Note**") is made as of this 30th day of August, 2021 by the undersigned, **X&Y DEVELOPMENT GROUP, LLC**, a New York limited liability company, having an address at c/o 42-31 Union Street, Queens, New York 11355 ("**Maker**"), in favor of **EMERALD CREEK CAPITAL 3, LLC**, a New York limited liability company, having an address of 575 Lexington Avenue, Suite 3120, New York, New York 10022, as administrative agent and collateral agent for the Lenders (as defined in the Loan Agreement (as defined herein)) (in such capacity, and together with its successors and assigns, "**Administrative Agent**").

FOR VALUE RECEIVED, Maker, unconditionally promises to pay to Administrative Agent, at the above address, or at such other place as Administrative Agent may designate in writing, the principal sum of up to FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00) (the "**Principal Sum**"), or so much thereof which shall be advanced by Administrative Agent pursuant to the provisions of that certain Loan Agreement between Maker and Administrative Agent of even date herewith (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), with interest thereon computed from the date of such advance until maturity, whether on the Maturity Date (as defined herein), by acceleration, or otherwise, at the Interest Rate (as defined herein), and thereafter, in accordance with the terms of this Note at the Default Rate (as defined herein), together with any costs, expenses and attorneys' fees incurred by Administrative Agent pursuant to the provisions hereof.

1. **Promissory Note**. This Note is secured by, among other things, the Mortgage, granted by Maker in favor of Administrative Agent pursuant to which Maker has mortgaged to Administrative Agent property located in the County of Queens, State of New York, known by the street address of 42-31 UNION STREET, QUEENS, NEW YORK 10013 (BLOCK 5181, LOT 15), as further described in the Mortgage (the "**Property**"), as well as evidenced and secured by certain other Loan Documents as additional security for the repayment of the sums due under this Note and Mortgage, including without limitation, the Loan Agreement.

2. **Definitions**. For all purposes of this Note, except as otherwise expressly required or unless the context clearly indicates a contrary intent, use of or reference to the following terms herein shall have the following meanings:

(a) "**Alternate Rate**": If Administrative Agent shall reasonably determine (which determination shall be conclusive and binding upon Maker absent manifest error) that (i) the LIBOR Rate is no longer available, or (ii) the charging of interest that is calculated based upon the LIBOR Rate would violate applicable law, the "prime rate" (or "base rate") reported in the Money Rates column or section of *The Wall Street Journal* published on the second (2nd) full Business Day preceding the applicable Payment Date (as defined herein) as having been the rate in effect for corporate loans at large U.S. money center commercial banks (whether or not such rate has actually been charged by any such bank) or, if *The Wall Street Journal* ceases publication of such "prime rate" or "base rate," the annual rate of interest announced by JPMorgan Chase Bank, N.A. (or another nationally recognized financial institution with a main or branch office in New York City, New York, selected, from time to time by Administrative Agent) from time to time as its "prime rate" or "base rate" in effect at its principal office in New York, New York at five o'clock (5:00) p.m., New York City time, for such date. In the event the Alternate Rate is utilized, the Applicable Margin shall be adjusted by Administrative Agent such that the Interest Rate is a reasonable equivalent (as determined

by Administrative Agent) of what the Interest Rate would have been if the LIBOR Rate (whether or not still in effect) was utilized. The Alternate Rate shall not exceed that which Administrative Agent would impose on its other borrowers generally under other similar loans under similar circumstances made by Administrative Agent.

    (b)  "**Applicable Margin**": Five and five tenths percent (5.50%).

    (c)  "**Extended Maturity Date**": August 30, 2024.

    (d)  "**Interest Period**": Each period commencing on the first day of each calendar month and ending on the last day of such calendar month; provided, however, that (a) the first Interest Period shall commence on the date hereof and end on the last day of the calendar month in which such date shall occur, and (b) the final Interest Period shall end on the Maturity Date.

    (e)  "**Interest Rate**": A variable interest rate equal at all times to the sum of (a) the LIBOR Rate (as defined herein) (or the Alternate Rate, as the case may be), plus (b) the Applicable Margin; provided, however, that notwithstanding anything to the contrary, the Interest Rate shall never be less than five and six tenths percent (5.60%) per annum.

    (f)  "**LIBOR Rate**": For each Interest Period, the per annum rate of interest in U.S. Dollars equal to the London Interbank Offered Rate ("**LIOR LIBOR**") for a period of one (1) month as published by Bloomberg (or such other commercially available source providing quotations of LIOR LIBOR as may be designated by Administrative Agent from time to time) at approximately 11:00 A.M. (London time) two (2) London Business Days prior to the Rate Adjustment Date (as defined herein) (or the date hereof with respect to the first (1st) Interest Period hereunder); provided, however, that if more than one (1) LIOR LIBOR is specified, the applicable rate shall be the arithmetic mean of all such rates.

    (g)  "**London Business Day**": Any day on which commercial banks are open for general business (including dealings in foreign exchange and foreign currency deposits) in London, England.

    (h)  "**Maturity Date**": The Stated Maturity Date, the Extended Maturity Date or such earlier date on which the Loan shall become due and payable, whether by acceleration or otherwise, pursuant to this Note and/or the other Loan Documents.

    (i)  "**Rate Adjustment Date**": The day in each month on which any change in the LIBOR Rate takes effect, which shall be the twentieth (20th) day of the calendar month occurring during such Interest Period.

    (j)  "**Stated Maturity Date**": August 30, 2023.

   3.  **Payments**. The Principal Sum and interest thereon is and shall be payable as follows:

Commencing on October 1, 2021, and on the first day of each and every month thereafter (each, a "**Payment Date**") through and including on the Maturity Date, Maker shall pay to Administrative Agent monthly payments, in arrears, of interest only at the Interest Rate, on the unpaid balance of the Principal Sum, continuing monthly through the Maturity Date (it being understood that the terms and conditions of the Loan Agreement shall apply with respect to disbursement of funds from the Interest

Reserve).  On the Maturity Date, whether by acceleration, prepayment, or otherwise, the outstanding balance of the Principal Sum, together with accrued and unpaid interest and any other amounts due and payable to Administrative Agent hereunder, under the Mortgage or the Loan Documents, shall be paid in full.  Interest shall for all purposes hereunder be computed on an actual/360 day basis (i.e., interest for each day during which the Principal Sum, or any part thereof, is outstanding shall be computed at the Interest Rate divided by 360).  Maker shall have one (1) option to extend the Stated Maturity Date for twelve (12) months (the "**Extension Option**"), i.e., from the Stated Maturity Date to the Extended Maturity Date.  The Extension Option shall be granted to Maker only if all of the following conditions have been satisfied as of the applicable Maturity Date (unless an earlier date is specified hereinbelow):

(a) receipt by Administrative Agent of a written request of Maker given to Administrative Agent not less than thirty (30) days prior to the applicable Maturity Date, but not more than ninety (90) days prior to the applicable Maturity Date;

(b) payment to Administrative Agent in cash of an extension fee in the amount equal to one percent (1.00%) multiplied by the maximum Principal Sum, paid by Maker to Administrative Agent in consideration for the Extension Option;

(c) replenish the Reserve Funds for the extension term covered by the Extension Option, so that the Reserve Account contains (x) the amount to cover the interest payments to become due and payable on the Loan during the extension term covered by Extension Option, (y) the amount necessary to cover the Taxes and Other Charges (as such terms are defined in the Mortgage) to become due and payable during the extension term covered by Extension Option, and (z) the amount necessary to cover the Insurance Premiums (as defined in the Mortgage) to become due and payable during the extension term covered by Extension Option;

(d) there shall not have previously occurred more than three (3) (x) Events of Default or (y) defaults under the Loan Documents that can be cured with the payment of money; and

(e) a credit report that is not substantially degraded (from the form conducted by Administrative Agent on or prior to the date hereof) by Administrative Agent, in its sole and absolute discretion, of Maker and Guarantor.

In addition to the rights, powers and remedies granted to it in this Note and in any other instrument or agreement securing, evidencing or relating to any of the Loan Documents, Administrative Agent shall have all of the rights, powers and remedies now or hereafter permitted in law or equity, including, without limitation, those of a secured party under the Uniform Commercial Code, all such rights and remedies being cumulative, not exclusive and enforceable alternatively, successively or concurrently, at such time or times as Administrative Agent thinks expedient, such remedies to be exercised only after the occurrence and during the continuance of an Event of Default.

4. **Voluntary Prepayments**.  Provided that no Event of Default has occurred and is then continuing, Maker at its option and upon notice not more than sixty (60) days' and not less than ten (10) days' prior notice to Administrative Agent, shall have the right to prepay, at any time and from time to time, without fee, premium or penalty except as described herein, the indebtedness secured by the Mortgage (i) in whole, or (ii) (a) in respect of any of a prepayment of at least $500,000.00 of the Principal Sum and (b) provided that no Event of Default has occurred and is then continuing, in part

3

(it being understood that, notwithstanding anything to the contrary, except as set forth in this clause (ii), in no event whatsoever shall Maker have the right to prepay the Loan in part) on any Business Day, upon payment to Administrative Agent of (x) the outstanding Principal Sum or portion thereof being prepaid (such amount of the Principal Sum being prepaid, "**Prepaid Principal**"), (y) all accrued and unpaid interest on the Prepaid Principal to and including the date of such prepayment (the "**Prepayment Date**"), and if the Prepayment Date is a date other than a Payment Date, all accrued and unpaid interest on the Prepaid Principal which would have accrued on the Prepaid Principal through the next succeeding Payment Date and (z) all other amounts due but unpaid hereunder and under the Loan Agreement, the Mortgage and the other Loan Documents.

Notwithstanding anything to the contrary (but subject to the C-Pace Exception (as defined herein)), if Maker elects to prepay the Loan or any portion thereof prior to the date Administrative Agent has received a minimum of one (1) year of interest payments at the Interest Rate due on the Principal Sum (the "**Make-Whole Date**"), then Maker shall also pay to Administrative Agent an amount equal to (i) the amount of all interest that would have accrued on the Prepaid Principal at the Interest Rate through the Make-Whole Date, less (ii) the sum of the aggregate amount of regular, monthly interest (excluding the portion of interest, if any, accruing at the Default Rate that is in excess of the Interest Rate) that has accrued and been paid under this Note with respect to such Prepaid Principal amount as of the date of prepayment of such Prepaid Principal (such amount of interest, the "**Regular Make-Whole Payment**"; the Regular Make-Whole Payment or the C-Pace Make-Whole Payment (as defined herein), as the case may be, the "**Make-Whole Payment**"), so as to assure Administrative Agent, in the aggregate of all interest payments at the Interest Rate and Regular Make-Whole Payments, as applicable, of a minimum of one (1) year of interest payments at the Interest Rate due on the Principal Sum; provided, that, no Make-Whole Payment shall be applicable with respect to any payment resulting from application of insurance proceeds related to any Casualty or Condemnation as provided in the Mortgage at any time during the term of the Loan. Subject to the foregoing sentence, such Make-Whole Payment shall be paid whether the prepayment is voluntary or involuntary, including any prepayment affected by the acceleration provisions contained in this Note or the Mortgage; provided, however, if such Make-Whole Payment constitutes interest under applicable law, the amount of such Make-Whole Payment will be reduced to an amount which, when added to all other amounts which constitute interest under applicable law, will not exceed the maximum amount of interest which may be contracted for, charged or received with respect to the Loan evidenced hereby under applicable law for the actual period of time such Loan is outstanding. To the extent Maker has prepaid, in accordance with this Section 4, an amount of Prepaid Principal which is less than the outstanding Principal Sum together with the applicable Make-Whole Payment, then provided that no Event of Default has occurred and is then continuing, Administrative Agent shall promptly distribute to Maker the portion of the amount being held in the Interest Reserve with respect to such Prepaid Principal, if any, so as to avoid Maker making debt service payments in excess of what should be due when accounting for the Make-Whole Payment paid to Administrative Agent in respect of such partial Prepaid Principal. "**C-Pace Exception**" shall mean that if Maker elects to prepay the Loan in whole (but not in part) using commercial property-assessed clean energy (**CPACE**) financing prior to the date Administrative Agent has received a minimum of six (6) months of interest payments at the Interest Rate due on the Principal Sum (the "**C-Pace Make-Whole Date**"), then the applicable Make-Whole Payment shall be an amount equal to (i) the amount of all interest that would have accrued on the Principal Sum at a rate equal to six and eighty-five tenths percent (6.85%) per annum through the C-Pace Make-Whole Date (the "**C-Pace Make-Whole Interest Rate**"), less (ii) the sum of the aggregate amount of regular, monthly interest (excluding the portion of interest, if any, accruing at the Default Rate that is in excess of the Interest Rate) that has accrued and been paid under this Note with respect to the Principal Sum as of the date of prepayment of the Principal Sum (such amount of interest,

the "**C-Pace Make-Whole Payment**"), so as to assure Administrative Agent, in the aggregate of all interest payments at the C-Pace Make-Whole Interest Rate and the C-Pace Make-Whole Payment, as applicable, of a minimum of six (6) months of interest payments at the C-Pace Make-Whole Interest Rate due on the Principal Sum.

5. **Default**.

    5.1 **Events of Default**. The failure to make any payment as and when required under this Note (except to the extent sufficient funds are available in the Interest Reserve on such date and Administrative Agent is then obligated to make a disbursement of funds from the Interest Reserve on account of such payment pursuant to the terms and conditions of the Loan Agreement) or the occurrence of any Event of Default under the Mortgage, the Loan Agreement or any of the Loan Documents shall constitute an "**Event of Default**" under this Note.

    5.2 **Remedies**. Upon the occurrence and continuance of an Event of Default, and until any and all Events of Default shall have been cured: (a) interest shall immediately accrue hereunder at the Default Rate and shall continue to accrue through and after the entry of a judgment of foreclosure and sale pursuant to the Mortgage, (b) Administrative Agent may, at its option, without any written notice given to Maker (such notice being expressly waived), except if expressly required pursuant to the provisions of this Note, the Loan Agreement, the other Loan Documents or required by applicable law, DECLARE AND DEMAND this Note immediately due and payable and (c) Administrative Agent may pursue all rights and remedies available hereunder or under the Loan Documents. Administrative Agent's rights, remedies and powers, as provided in this Note or the Loan Documents, are cumulative and concurrent, and may be pursued singly, successively or together against Maker, any guarantor of the indebtedness evidenced hereby or against any collateral granted or pledged to Maker under any of the Loan Documents or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Administrative Agent. Additionally, Administrative Agent may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Administrative Agent's sole discretion. Failure of Administrative Agent, for any period of time or on more than one occasion, to DECLARE AND DEMAND this Note immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from, after and during the continuance of any Event of Default.

    5.3 **Costs of Collection**. Maker agrees to pay all reasonable costs and expenses of collection actually incurred by Administrative Agent, in addition to principal and interest, if any (including, without limitation, reasonable attorneys' fees and disbursements), and including all reasonable costs and expenses actually incurred in connection with the pursuit by Administrative Agent of any of its rights or remedies hereunder or under the Loan Documents or the protection of or realization of collateral or in connection with any of Administrative Agent's collection efforts, whether or not any action or proceeding on this Note, on the Loan Documents or any foreclosure proceeding is filed in connection with the Mortgage, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Loan Documents.

    5.4 **Default Rate and Late Charge**.

        (a) From and after the occurrence and continuance of an Event of Default, regardless of whether or not there has been a notice of default issued by Administrative Agent unless expressly otherwise required pursuant to the Loan Documents, interest shall accrue on the outstanding Principal Sum at a rate equal to the lesser of (i) eighteen percent (18%) per annum and (ii) the maximum

5

rate allowable by law (the "**Default Rate**"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidenced by this Note. The Default Rate shall be in effect at all times after the maturity of the indebtedness evidenced by this Note (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the Loan Documents shall have been paid in full. Interest shall continue to accrue at the Default Rate (including following the entry of a judgment in favor of Administrative Agent) until payment in full of all sums due under this Note, the Mortgage or any of the Loan Documents. In addition, Maker shall pay to Administrative Agent the sum of fifty dollars ($50.00) for any payment that is returned for any reason by Maker's bank unpaid.

(b)  Maker shall pay a late payment charge ("**Late Charge**") equal to ten cents ($.10) for each dollar ($1.00) of each payment that is made after the due date thereof (other than (i) the payment of principal on the Maturity Date or (ii) as a result of Administrative Agent's failure to make a disbursement of Reserve Funds in accordance with Administrative Agent's obligation to do so pursuant to the Loan Documents after all conditions to such disbursement specified in the Loan Documents have been satisfied) or the maximum amount permitted by applicable law, which Late Charge shall be due and payable with each such late payment.

6.  **Governing Law: Severability**.  This Note shall be construed and enforced in accordance with the internal laws of the State of New York, unless preempted by United States Statute or Federal Law (without giving effect to any principles of conflicts of law). The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

7.  **Waivers**.  Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, to the extent the same shall be enforceable under applicable law, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Loan Documents, and in connection with any suit, action or proceeding brought by Administrative Agent on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Administrative Agent on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Administrative Agent. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, to the extent same shall be enforceable under applicable law, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Administrative Agent with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

8. **Application of Payments**. Each and every payment made by Maker to Administrative Agent in accordance with the terms of the Mortgage and the Loan Documents and all other proceeds received by Administrative Agent with respect to the indebtedness evidenced hereby, shall be applied as follows: (a) first, to fees and other sums due under this Note in accordance with the terms of this Note and the Loan Documents, (b) second, to all interest then outstanding with respect to this Note and (c) third, in reduction of the outstanding balance of the Principal Sum. To the extent that Maker makes a payment or Administrative Agent receives any payment or proceeds for Maker's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under any bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Maker hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Administrative Agent.

9. **Miscellaneous**.

    9.1 **Amendments**. This Note may not be terminated or amended orally, but only by a termination or amendment in writing signed by the party against whom enforcement of any waiver, change or modification is sought.

    9.2 **Usury**. It is the intention of Maker and Administrative Agent to conform strictly to the usury and other laws relating to interest from time to time in force, and all agreements between Maker and Administrative Agent whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by demand hereunder or otherwise, shall the amount paid or agreed to be paid to Administrative Agent, or collected by Administrative Agent for the use, forbearance or detention of the money to be loaned hereunder, or for the payment or performance of any covenant or obligation contained herein or in the Mortgage or in any other agreement given to secure the loan obligations or in any other document evidencing, securing or pertaining to the loan obligations, exceed the maximum amount of interest allowable under applicable law (the "**Maximum Amount**"). If under any circumstances whatsoever fulfillment of any provision hereof or the Mortgage, at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then ipso facto, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Administrative Agent for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If under any circumstances Administrative Agent shall ever receive an amount deemed interest by applicable law, which would exceed the Maximum Amount, such amount that would be excessive interest under applicable usury laws shall be deemed a payment in reduction of the Principal Sum owing under this Note and shall be so applied to principal and not to the payment of interest, or if such excessive interest shall be deemed to have been a payment made by mistake, shall be refunded to Maker or to any other person making such payment on Maker's behalf.

    9.3 **Captions**. The captions of the Sections of this Note are for convenience of reference only and shall not be deemed to modify, explain, enlarge or restrict any of the provisions hereof.

9.4     **Notices**.  Notices shall be given under this Note in conformity with the terms and conditions of the Mortgage and copies shall also be sent by email in addition to other means of delivery.

9.5     **Joint and Several Obligations**.  The obligations of Maker under this Note shall be joint and several obligations of Maker and of each Maker, if more than one, and of each Maker's heirs, personal representatives, successors and assigns.  The filing of a petition (the "**Petition**") under Chapter 11 of the United States Code, whether voluntary or involuntary, shall not stay or in any manner abridge or interfere with the right of Administrative Agent to proceed against any Maker not subject to such Petition.

9.6     **Time of Essence**.  Time is of the essence of this Note and the performance of each of the covenants and agreements to be performed hereunder.

9.7     **No Waiver by Administrative Agent**.  Neither the exercise of any provision hereof nor the delay in asserting any right granted to Administrative Agent (including the acceptance of past due payments) shall be construed as a waiver by Administrative Agent of the right to accelerate the indebtedness evidenced hereby as above provided or to pursue any other remedies available under this Note, the Loan Documents or under any other security document nor shall the exercise of any single or partial exercise of any right, power, privilege or remedy preclude any further exercise thereof. Any waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought, and then only to the extent therein set forth.  The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently.  No executory agreement unless in writing and signed by Administrative Agent, and no course of dealing between Maker, the endorser(s) or guarantor(s) hereof, or any of them, shall be effective to change or modify or discharge, in whole or in part, this Note.

In the event Administrative Agent shall advance or cause to be advanced any amounts to or for the benefit of Administrative Agent, on account of insurance premiums, real estate or other taxes, assessments or governmental charges or on account of any other matter which, in the sole discretion of Administrative Agent is reasonably necessary to sustain the lien of the Loan Documents or protect any collateral security held by Administrative Agent or Maker's assets, including, but not limited to, payments to avoid the filing of any lien on any of Maker's assets and/or payments to discharge any such lien, the same shall be deemed a part of the Principal Sum and shall bear interest at the Default Rate until paid in full.

9.8     **Obligations**.  Maker acknowledges that this Note and Maker's obligations hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker hereunder or the obligations of any other person or party relating to this Note or the obligations of Maker hereunder.  This Note sets forth the entire agreement and understanding of Administrative Agent and Maker, and Maker absolutely, unconditionally and irrevocably waives (subject to the provisions of Section 7 hereof) any and all right to (i) assert any defense, setoff, counterclaim or cross-claim of any nature whatsoever with respect hereto or to the obligations of Maker hereunder or the obligations of any other person or party relating hereto in any action or proceeding brought by Administrative Agent to collect the outstanding balance of the Principal Sum, accrued and unpaid interest (as applicable) and other amounts owing, or (ii) any portion thereof, or to enforce, foreclose and realize upon the liens and security interests created by the Loan Documents and any other security document.

9.9     **Defined Terms**.  Capitalized terms not otherwise defined herein shall have the meanings set forth in the Loan Agreement.

10.     **Participations**.  Administrative Agent, at any time and without the consent of Maker, may grant participations in or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the loan obligations, this Note and the Mortgage, any guaranties given in connection with the loan obligations and any collateral given to secure the loan obligations, provided that such transferee shall assume the loan in a commercially reasonable manner, and such assumption shall in no way increase the obligations of Maker under this Note.

11.     **Venue; Service of Process**.  All actions or proceedings arising in connection with this Note shall be tried and litigated in state or federal courts located in the County of New York, State of New York, unless such actions or proceedings are required to be brought in another court to obtain subject matter jurisdiction over the matter in controversy.  MAKER, AND ADMINISTRATIVE AGENT BY ITS ACCEPTANCE OF THIS NOTE, WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE HEREWITH.  IN ANY ACTION, SERVICE OF PROCESS MAY BE MADE UPON MAKER (X) BY ANY MEANS PERMITTED UNDER APPLICABLE LAW AND/OR (Y) BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ITS ADDRESS ABOVE SET FORTH, WHICH SERVICE SHALL BE DEEMED SUFFICIENT FOR PERSONAL JURISDICTION AND SHALL BE DEEMED EFFECTIVE THREE (3) DAYS AFTER MAILING.

12.     **Jury Trial Waiver**.  MAKER, AND ADMINISTRATIVE AGENT BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED.  THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MAKER AND BY ADMINISTRATIVE AGENT, AND MAKER ACKNOWLEDGES THAT NEITHER ADMINISTRATIVE AGENT NOR ANY PERSON ACTING ON BEHALF OF ADMINISTRATIVE AGENT HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.  MAKER AND ADMINISTRATIVE AGENT ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MAKER AND ADMINISTRATIVE AGENT HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS.  MAKER AND ADMINISTRATIVE AGENT FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

13.     **Prevailing Party**.  If any party hereto commences any action against any other party hereto with respect to the enforcement or interpretation of this Note, then the prevailing party in such action shall be entitled to an award of its costs of litigation, including reasonable attorneys' fees.

14.     **Register**.  Administrative Agent, acting solely for this purpose as an agent of Maker, shall maintain at its address a register (the "**Register**") for the recordation of the names and addresses

of each holder of this Note, and the Principal Sum of the Loan owing to, and interest accrued with respect to each holder of this Note from time to time.  The entries in the Register shall be conclusive in the absence of manifest error, and the parties hereto may treat each Person whose name is recorded in the Register as a holder of this Note hereunder for all purposes of this Note.  The Register shall be available for inspection by any holder of this Note, at any time and from time to time.  No transfer or assignment of this Note shall be valid unless and until such transfer or assignment has been properly entered into the Register (it being understood that, notwithstanding anything to the contrary, in no event whatsoever shall the foregoing provide Maker with any right to consent to any transfer or assignment of the Note).

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]**

IN WITNESS WHEREOF, the undersigned has caused this Note to be executed as of the day and year first above written.

MAKER:

X&Y DEVELOPMENT GROUP, LLC,
a New York limited liability company

By: _____
Name: Richard Xia
Title:   Member Manager

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF Queens    )

On the 30 day of August, 2021 before me, the undersigned, personally appeared Richard Xia, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature of individual taking acknowledgment

MICHAEL P. SASSO
Notary Public, State of New York
No. 4954329
Qualified in Nassau County
Commission Expires July 22, 2025

*[Emerald Creek Capital – 42-31 Union Street – Signature Page to Note]*