# EXHIBIT C



October 4, 2021

**RESERVATION OF RIGHTS LETTER / NOTICE OF DEFAULT**

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

**Borrower**

**X&Y DEVELOPMENT GROUP, LLC**
42-31 Union Street
Queens, New York 11355

**Guarantor**

**RICHARD XIA**
42-55 Saull Street
Queens, New York 10013

Re:     *That certain loan in the original principal amount of FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00), on August 30, 2021 (the "Closing Date") (the "Loan"), made by EMERALD CREEK CAPITAL 3, LLC, a New York limited liability company, as administrative agent and collateral agent for the Lenders (as defined in the Loan Agreement (as defined herein)) ("Administrative Agent") to X&Y DEVELOPMENT GROUP, LLC, a New York limited liability company, having an address at 42-31 Union Street, Queens, New York 11355 ("Borrower")*

Ladies and Gentlemen:

Reference is made to the following: (i) that certain Note made by Borrower in connection with the Loan (the "Note"); (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated as of the Closing Date, given by Borrower to Administrative Agent (the "Mortgage"), (iii) that certain Loan Agreement dated as of the Closing Date, by and between Borrower and Administrative Agent (the "Loan Agreement"); (iv) (x) that certain Nonrecourse Carve-Out Guaranty dated as of the Closing Date, and executed by RICHARD XIA, an individual ("Guarantor"), in favor of Administrative Agent (the "Nonrecourse Carve-Out Guaranty") and (y) that certain Environmental Indemnity Agreement dated on or about the Closing Date, given by Borrower and Guarantor (together with the Nonrecourse Carve-Out Guaranty, collectively and/or individually as the context so requires, "Guaranty"); and (v) and all other agreements, notes, security agreements, mortgages, financing statements, guaranties, pledges, surety agreements and other documents evidencing, security or amending any "Loan Document" as defined in the Loan Agreement (collectively, with the Note, the Mortgage, the Loan Agreement and the Guaranty, the "Loan Documents").

All capitalized terms used herein without definition shall have the meanings assigned to such terms in the Loan Agreement.

1



Administrative Agent has learned that the U.S. Securities and Exchange Commission (SEC) filed an emergency action and obtained an asset freeze against, *inter alia*, Guarantor (the "SEC Action").  See, *e.g.*, *Richard Xia, a/k/a Yi Xia and Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, and Relief Defendant Julia Yue, a/k/a JiQing Yue (Release No. LR-25230; Sep. 28, 2021) (sec.gov)*.  Administrative Agent discovered the SEC Action on its own, i.e., without any notice from Borrower and/or Guarantor.

Indeed, Borrower and Guarantor should not have proceeded with the terms of the Loan Documents without disclosing specifically the SEC investigation(s) that must have preceded the SEC Action and/or been pending at the time of the Loan (the "SEC Investigation").  This was a both material misrepresentation and a material omission under the Loan Documents.  Specifically, pursuant to Section 3.1(g) of the Loan Agreement (contained in Article III, Representations and Warranties), Borrower represented that: *"[n]o litigation, investigation or administrative proceeding of or before any court, arbitrator or governmental authority is pending or, to Borrower's knowledge, threatened in writing against Borrower, Guarantor or any assets thereof that, (i) might have a material adverse effect on Borrower's ability to perform its obligations under this Agreement in accordance with the terms hereof, or Guarantor's ability to perform Guarantor's obligations under the Guaranty, as applicable, (ii) might materially adversely affect the financial condition of Borrower or Guarantor, (iii) might materially impair the value of the Property, or (iv) might question the validity of this Agreement, in all instances that has not been disclosed to Administrative Agent by Borrower in writing in connection with the closing of the Loan."*  The undisclosed SEC Investigation was clearly a breach of Borrower's representation in this clause.

The Loan Agreement provides in Section 5.1(c) for an automatic Event of Default (with no notice and/or grace period) in the event of material misrepresentations and/or material omissions (i.e., such as with respect to the undisclosed SEC Investigations), specifically: *"(x) if any certificate, statement, representation, warranty or audit heretofore or hereafter furnished by or on behalf of Borrower, pursuant to or in connection with [the Loan Agreement] or any of the other Loan Documents (including, without limitation, representations and warranties contained herein) (i) proves to have been false or misleading in any material respect at the time as of which the facts therein set forth were stated or certified, (ii) proves to have omitted a material fact that would render any certificate, statement, representation, warranty or audit previously furnished by or on behalf of Borrower false or misleading, or (iii) proves to have omitted any substantial contingent or unliquidated liability or claim against either Borrower or any Guarantor, or (y) if on the date of execution of this Agreement there shall have been any materially adverse changes in any of the facts previously disclosed by any such certificate, statement, representation, warranty or audit, which change shall not have been disclosed to Administrative Agent at or prior to the time of such execution, and in all such cases in either (x) or (y) there occurs a material adverse effect on Borrower's ability to perform its obligations under this Agreement"*.  The Mortgage in Section 21(e) contains a similar automatic provision, providing for an Event of Default in the event that: *"any representation or warranty of Mortgagor, or of Guarantor, made herein or in any other Loan Document or in any certificate, report, financial statement or other instrument or document furnished to Administrative Agent is determined by Administrative Agent to have been false or misleading in any material respect as of the date when made"*.



In addition to the foregoing, there are and/or may be various other existing defaults and Events of Default under the Loan Documents (and not listed above).

In addition to the foregoing, please be advised that pursuant to the terms of the Loan Documents, after an Event of Default, Administrative Agent may, among other remedies, pursue any and all remedies provided for in the Loan Documents, or otherwise available. Any delay or decision by Administrative Agent not to pursue any remedy provided for in the Loan Documents, or not to extend any other financial accommodations to date, shall not constitute and should not be construed as a waiver of any rights or remedies of Administrative Agent. Nothing contained herein shall be deemed to constitute a waiver of the Specified Default or other Event of Default that may currently exist or may hereafter arise under the Loan Documents.

As permitted pursuant to the Loan Documents, Administrative Agent may charge interest at the Default Rate, i.e., the lesser of (i) 18% per annum and (ii) the maximum rate allowable by law. See Note at Section 5.4(a) and Mortgage at Section 22 (providing for Administrative Agent's ability to charge interest at the Default Interest Rate: *"[f]rom and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Administrative Agent unless expressly otherwise required pursuant to the Loan Documents, interest shall accrue on the outstanding Principal Sum at a rate equal to the [Default Rate]"*). You are hereby notified that Administrative Agent has begun charging interest at the Default Rate as of August 30, 2021 (i.e., the Closing Date).

Neither any forbearance by Administrative Agent, nor anything in this letter or other communication or in any ongoing discussions or negotiations which have or may take place between Administrative Agent and Borrower shall directly or indirectly (i) create any obligation to defer any enforcement action or make any further Loan or financial accommodations, (ii) constitute a consent or waiver of the Specified Default or any other past, present or future default, Event of Default or other violation of any provisions of any of the Loan Documents, (iii) amend, modify or operate as a waiver of any provision of any of the Loan Documents or any right, power, privilege or remedy of Administrative Agent thereunder, or (iv) constitute a course of dealing or other basis for altering any obligations of Borrower under any of the Loan Documents or any other contract or instrument. Nothing contained in this letter shall confer on Borrower or any other Person any right to other or further notice or cure periods with respect to the Specified Default or any other Event of Default. Administrative Agent expressly reserves all of its rights, powers, privileges and remedies under the Loan Agreement and the other Loan Documents and/or applicable law, including, without limitation, their right at any time, as applicable, (i) to commence any legal or other action to collect any or all of the indebtedness under the Loan from Borrower and/or Guarantor and/or any Mortgaged Property (as defined in the Mortgage) or any property pledged by any other person or entity as security for any or all of the obligations under the Loan, (iv) to foreclose or otherwise realize on any or all of the Mortgaged Property and/or appropriate, set-off or apply to the payment of any or all of the obligations under the Loan, any or all of the Mortgaged Property, and (vi) to take any other enforcement action or otherwise exercise any or all rights and remedies provided for by any of the Loan Documents or applicable law. No oral representations or course of dealing on the part of Administrative Agent or any of its officers, employees or agents, and no failure or delay by Administrative Agent with respect to the exercise of any right, power, privilege or remedy under any of the Loan Documents or applicable law shall

3



operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege or remedy shall not preclude any later exercise of any other right, power, privilege or remedy. Administrative Agent reserves its right to take such action, at such times, Administrative Agent, in its discretion, deems necessary or appropriate to protect its interests under the Loan Agreement and/or the Loan Documents.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]

4



Very Truly Yours,

**EMERALD CREEK CAPITAL 3, LLC**

By: _____
    Name:  Mark Bahiri
    Title:  Managing Partner

cc:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 6th Ave
New York, NY 10036
Attention: Josh S. Winefsky, Esq.
E-mail: jwinefsky@kramerlevin.com

THE LAW OFFICE OF BRET L. MCCABE
7 Copperfield Lane
Old Brookville, NY 11545
Attention: Bret L. McCabe, Esq.
E-mail: bmccabe@bmccabelaw.com

5