# EXHIBIT D



November 11, 2021

## SECOND RESERVATION OF RIGHTS LETTER / SECOND NOTICE OF DEFAULT

### VIA FEDERAL EXPRESS AND ELECTRONIC MAIL

**Borrower**

**X&Y DEVELOPMENT GROUP, LLC**
42-31 Union Street
Queens, New York 11355

**Guarantor**

**RICHARD XIA**
42-55 Saull Street
Queens, New York 10013

*Re:   That certain loan in the original principal amount of FIFTEEN MILLION AND NO/100 DOLLARS ($15,000,000.00), on August 30, 2021 (the "Closing Date") (the "Loan"), made by EMERALD CREEK CAPITAL 3, LLC, a New York limited liability company, as administrative agent and collateral agent for the Lenders (as defined in the Loan Agreement (as defined herein)) ("Administrative Agent") to X&Y DEVELOPMENT GROUP, LLC, a New York limited liability company, having an address at 42-31 Union Street, Queens, New York 11355 ("Borrower")*

Ladies and Gentlemen:

Reference is made to the following: (i) that certain Note made by Borrower in connection with the Loan (the "Note"); (ii) that certain Mortgage, Assignment of Leases and Rents and Security Agreement dated as of the Closing Date, given by Borrower to Administrative Agent (the "Mortgage"), (iii) that certain Loan Agreement dated as of the Closing Date, by and between Borrower and Administrative Agent (the "Loan Agreement"); (iv) (x) that certain Nonrecourse Carve-Out Guaranty dated as of the Closing Date, and executed by RICHARD XIA, an individual ("Guarantor"), in favor of Administrative Agent (the "Nonrecourse Carve-Out Guaranty") and (y) that certain Environmental Indemnity Agreement dated on or about the Closing Date, given by Borrower and Guarantor (together with the Nonrecourse Carve-Out Guaranty, collectively and/or individually as the context so requires, "Guaranty"); and (v) and all other agreements, notes, security agreements, mortgages, financing statements, guaranties, pledges, surety agreements and other documents evidencing, security or amending any "Loan Document" as defined in the Loan Agreement (collectively, with the Note, the Mortgage, the Loan Agreement and the Guaranty, the "Loan Documents").

All capitalized terms used herein without definition shall have the meanings assigned to such terms in the Loan Agreement.



Reference is also made to: (x) that certain Reservation of Rights Letter / Notice of Default from Administrative Agent to Borrower dated October 4, 2021 (the "First Notice of Default"); and (y) that certain response on behalf of Borrower from Law Office of Bret L. McCabe dated October 12, 2021 ("Borrower's Response Correspondence"). This Second Reservation of Rights Letter / Second Notice of Default (this "Second Notice of Default") is to restate the contents of the First Notice of Default, reject Borrower's Response Correspondence, and provide additional basis for the occurrence and continuance of an Event of Default pursuant to the Loan Documents.

Without limitation of anything contained the First Notice of Default, Administrative Agent has also learned that Borrower and/or Guarantor, in connection with securing the Loan, violated a New York State Court Injunction Order dated April 9, 2021 (the "Injunction Order"), in the matter of *Koba Mushkadiani v. Racanelli Construction Group, Inc., X & Y Development Group, LLC, et al,* New York State Supreme Court, Kings County, Index No.: 502931/2017, Justice Lillian Wan (the "Mushkadiani Litigation") by which Borrower was *"restrained and enjoined from selling or encumbering or assigning any of ...[its] interests in [the Property]..."* A copy of the Injunction Order is annexed hereto as Exhibit A. Borrower and Guarantor (i) failed to disclose the *Mushkadiani* Litigation which is a litigation which might have a material adverse effect on Borrower's ability to perform its obligations under the Loan Agreement; (ii) failed to disclose the Injunction Order, as required by the Loan Agreement, to the Administrative Agent, which clearly affected Borrower's legal ability to mortgage the Property; and (iii) caused Borrower to encumber the Property with the Mortgage, knowingly in violation of the Injunction Order.

This was, *inter alia*, a both material misrepresentation and a material omission under the Loan Documents. Specifically, pursuant to Section 3.1(b) of the Loan Agreement (contained in Article III, Representations and Warranties), Borrower represented that: *"Borrower has the authority and legal right to execute and deliver this Agreement. No consent, approval, authorization, exemption, notice, report, registration, filing or declaration that has not been obtained or made is required to be obtained or made with respect to the execution and delivery by Borrower of this Agreement."* Moreover, pursuant to Section 3.1(g) of the Loan Agreement, Borrower also represented that: *"[n]o litigation, investigation or administrative proceeding of or before any court, arbitrator or governmental authority is pending or, to Borrower's knowledge, threatened in writing against Borrower, Guarantor or any assets thereof that, (i) might have a material adverse effect on Borrower's ability to perform its obligations under this Agreement in accordance with the terms hereof, or Guarantor's ability to perform Guarantor's obligations under the Guaranty, as applicable, (ii) might materially adversely affect the financial condition of Borrower or Guarantor, (iii) might materially impair the value of the Property, or (iv) might question the validity of this Agreement, in all instances that has not been disclosed to Administrative Agent by Borrower in writing in connection with the closing of the Loan."*

The undisclosed Injunction Order was clearly a breach of Borrower's representations in, *inter alia*, these clauses.

The Loan Agreement provides in Section 5.1(c) for an automatic Event of Default (with no notice and/or grace period) in the event of material misrepresentations and/or material omissions (i.e., such as with respect to the undisclosed Injunction Order), specifically: *"(x) if any certificate, statement, representation, warranty or audit heretofore or hereafter furnished by or on behalf of*



*Borrower, pursuant to or in connection with [the Loan Agreement] or any of the other Loan Documents (including, without limitation, representations and warranties contained herein) (i) proves to have been false or misleading in any material respect at the time as of which the facts therein set forth were stated or certified, (ii) proves to have omitted a material fact that would render any certificate, statement, representation, warranty or audit previously furnished by or on behalf of Borrower false or misleading, or (iii) proves to have omitted any substantial contingent or unliquidated liability or claim against either Borrower or any Guarantor, or (y) if on the date of execution of this Agreement there shall have been any materially adverse changes in any of the facts previously disclosed by any such certificate, statement, representation, warranty or audit, which change shall not have been disclosed to Administrative Agent at or prior to the time of such execution, and in all such cases in either (x) or (y) there occurs a material adverse effect on Borrower's ability to perform its obligations under this Agreement".* The Mortgage in Section 21(e) contains a similar automatic provision, providing for an Event of Default in the event that: *"any representation or warranty of Mortgagor, or of Guarantor, made herein or in any other Loan Document or in any certificate, report, financial statement or other instrument or document furnished to Administrative Agent is determined by Administrative Agent to have been false or misleading in any material respect as of the date when made".*

In addition to the foregoing and/or as set forth in the First Notice of Default, there are and/or may be various other existing defaults and Events of Default under the Loan Documents (and not listed above). These include, *inter alia*, (x) the SEC Investigation (as defined and described in the First Notice of Default) and (y) with respect to Section 3(a)(i) of the Mortgage, Borrower's failure to obtain and maintain Property Insurance (as defined in the Mortgage) on or prior to the date that is sixty (60) days after the Closing Date (i.e., by October 29, 2021).

In addition to the foregoing, please be advised that pursuant to the terms of the Loan Documents, after an Event of Default, Administrative Agent may, among other remedies, pursue any and all remedies provided for in the Loan Documents, or otherwise available. Any delay or decision by Administrative Agent not to pursue any remedy provided for in the Loan Documents, or not to extend any other financial accommodations to date, shall not constitute and should not be construed as a waiver of any rights or remedies of Administrative Agent. Nothing contained herein shall be deemed to constitute a waiver of any Event of Default that may currently exist or may hereafter arise under the Loan Documents.

Neither any forbearance by Administrative Agent, nor anything in this letter or other communication or in any ongoing discussions or negotiations which have or may take place between Administrative Agent and Borrower shall directly or indirectly (i) create any obligation to defer any enforcement action or make any further Loan or financial accommodations, (ii) constitute a consent or waiver of any other past, present or future default, Event of Default or other violation of any provisions of any of the Loan Documents, (iii) amend, modify or operate as a waiver of any provision of any of the Loan Documents or any right, power, privilege or remedy of Administrative Agent thereunder, or (iv) constitute a course of dealing or other basis for altering any obligations of Borrower under any of the Loan Documents or any other contract or instrument. Nothing contained in this letter shall confer on Borrower or any other Person any right to other or further notice or cure periods with respect to any Event of Default. Administrative Agent expressly reserves all of its rights, powers, privileges and remedies under the Loan Agreement and the other



Loan Documents and/or applicable law, including, without limitation, their right at any time, as applicable, (i) to commence any legal or other action to collect any or all of the indebtedness under the Loan from Borrower and/or Guarantor and/or any Mortgaged Property (as defined in the Mortgage) or any property pledged by any other person or entity as security for any or all of the obligations under the Loan, (iv) to foreclose or otherwise realize on any or all of the Mortgaged Property and/or appropriate, set-off or apply to the payment of any or all of the obligations under the Loan, any or all of the Mortgaged Property, and (vi) to take any other enforcement action or otherwise exercise any or all rights and remedies provided for by any of the Loan Documents or applicable law. No oral representations or course of dealing on the part of Administrative Agent or any of its officers, employees or agents, and no failure or delay by Administrative Agent with respect to the exercise of any right, power, privilege or remedy under any of the Loan Documents or applicable law shall operate as a waiver thereof, and the single or partial exercise of any such right, power, privilege or remedy shall not preclude any later exercise of any other right, power, privilege or remedy. Administrative Agent reserves its right to take such action, at such times, Administrative Agent, in its discretion, deems necessary or appropriate to protect its interests under the Loan Agreement and/or the Loan Documents.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]



Very Truly Yours,

**EMERALD CREEK CAPITAL 3, LLC**

By: _____

   Name:  Mark Bahiri
   Title:  Managing Partner

cc:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 6th Ave
New York, NY 10036
Attention: Josh S. Winefsky, Esq.
E-mail: jwinefsky@kramerlevin.com

THE LAW OFFICE OF BRET L. MCCABE
7 Copperfield Lane
Old Brookville, NY 11545
Attention: Bret L. McCabe, Esq.
E-mail: bmccabe@bmccabelaw.com



<u>Exhibit A</u>

see attached

At I.A.S. Part 17 of the Supreme Court of the
State of New York, held in and for the County
of Kings, at the County Courthouse thereof,
located at 360 Adams Street, Brooklyn, New
York 11201 on the 9th day of
April 2021

PRESENT:
THE HONORABLE LILLIAN WAN,
JUSTICE SUPREME COURT,


SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
-------------------------------------------------------------X
KOBA MUSHKADIANI,

                              Plaintiff,

              -against-

RACANELLI CONSTRUCTION GROUP, INC.,
X & Y DEVELOPMENT GROUP, LLC,
CONSTRUCTION AND REALTY SERVICES GROUP,
INC.,
WESTIN HOTEL MANAGEMENT, LP, d/b/a WESTIN
ELEMENT HOTEL,
FLUSHING MEDICAL SERVICES, PLLC d/b/a
NORTH QUEENS MEDICAL CENTER,
FLEET FINANCIAL GROUP, INC., and
JIQING DEVELOPMENT, INC.,

                              Defendants.
-------------------------------------------------------------X

Index No.: 502931/2017

Order to show cause why the
plaintiff should not have an
immediate trial; why the Court
should not move up the return date
of plaintiff' motion to restrain
transfer of, or encumbrance of,
defendants' premises and to
restrain assignment of lease; and
why the Court should not issue a
preliminary injunction or
temporary restraining order
enjoining any transfer of, or
encumbrance of, the accident
premises, the only asset of the
defendants X & Y Development
Group, LLC and Fleet Financial
Group, Inc., pending the hearing
of this motion.


        **UPON** reading and filing the annexed affirmation of attorney for plaintiff,

David M. Schwarz, dated the 1st day of April 2021 together with the exhibits annexed thereto,

in support of plaintiff's application by Order to Show Cause Seeking a Preliminary Injunction

and/or Temporary Restraining Order and upon all the pleadings and proceedings heretofore had

herein; and sufficient cause being alleged therefor,

1

**LET** Defendants X & Y Development Group, LLC and Fleet Financial Group, Inc. show cause at a hearing before this Court, at IAS Part 17, (in Room **541**), of this Court located at virtual/telephonic appearance to be directed by court part 360 Adams Street, Brooklyn, New York on the *12* day of *MAY* 2021 at *11:00* o'clock a.m., or as soon thereafter as counsel can be heard, why an order pursuant to Article 63 of the Civil Practice Law and Rules should not be entered, pending determination of an application made by motion Sequence 13, now returnable June 9, 2021, enjoining the Defendants X & Y Development Group, LLC and Fleet Financial Group, Inc. from selling, assigning, encumbering premises known as 42-31 Union Street, Flushing New York designated Block 5181, lot 15, and it is further

LW
JSC

**ORDERED**, that pending the hearing ~~and determination~~ of Plaintiff's motion for a preliminary injunction, Defendant[s] are restrained and enjoined from selling or encumbering or assigning any of their interests in said property and it is further

**LET**

~~ORDERED~~ that service of a copy of this order on defendants X & Y Development Group, LLC and Fleet Financial Group, Inc. by electronically filing *and by overnight mail* which will result in receipt by their attorneys, Pheterson Spatorico, LLP and Bret L. McCabe, and Michael Stonberg, who have registered on the State's Electronic Filing Site, (NYSCEF), as representing the defendants as co-counsel, together with the papers upon which it is granted, on or before *April 28, 2021*, be deemed good and sufficient service thereof.

Enter

*Lillian Wen*
Hon. Lillian Wan, J.S.C.

HON. LILLIAN WAN

2