

# Fourth Quarterly Status Report to the Court Pursuant to Monitor Order Paragraph 22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Securities and Exchange Commission v. Richard Xia, a/k/a Yi Xia; and Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, LLC, Defendants,

and

Julia Yue, a/k/a Jiqing Yue; Xi Verfenstein; and XinMing Yu, Relief Defendants

21-cv-05350-PKC-RER

## Introduction

The Monitor submits this fourth quarterly status report in accordance with Paragraph 22 of the Order Appointing Monitor ("Monitor Order")[1] in the above referenced matter (the "Enforcement Action"), for the period ending on September 30, 2022 ("Fourth Quarter"). The Monitor submitted his first quarterly status report on January 31, 2022, for the period ending on December 31, 2021, his second quarterly status report on May 3, 2022, for the period ending on March 31, 2022, and his third quarterly status report on July 1, 2022, for the period ending on June 30, 2022. Since his last report, the Monitor continued to focus on the most significant, time sensitive, and urgent needs of Eastern Emerald and Eastern Mirage (collectively, the "Projects") and investors while working diligently to minimize costs.

## Priority Items

The Monitor continued to focus on protecting the investors' interests in the Projects and assets. These efforts, as detailed below, included primarily, but were not limited to: (i) evaluating site security; (ii) assessing maintenance needs; (iii) continuing to work with lenders regarding the status of various loans to Mr. Xia and/or Xia Entities; and (iv) evaluating claims for payment by third-party contractors.

---

[1] *See* ECF No. 11-1.

### Site Security

In the third quarter, the Monitor worked collaboratively with Defendants to address security concerns at Eastern Mirage and Eastern Emerald related to a deterioration of fencing and other protective measures designed to keep trespassers out of the properties.[2] This work has primarily consisted of numerous site visits, interviewing and vetting potential contractors, meeting with Mr. Xia and his counsel, and negotiating fair and market appropriate pricing. Currently, the Monitor is working with site safety engineers and contractors to obtain the highest quality work at a reasonable price. We have also worked to identify, screen, and assess reputable companies that provide 24/7 security guard service protection for Eastern Mirage.[3] I believe that this work/these services are necessary and in the best interest of the investors. Based on representations by his counsel, Mr. Xia agrees, and significant progress has been/is being made on these fronts. I expect to file motions soon for the release of funds for the work.

### Berm Maintenance

I was first alerted to an issue with the berm maintenance at Eastern Emerald on February 22, 2022, when Xia's former counsel sent to me a series of emails between Xia, Bret McCabe, and the New York City Department of Buildings ("DOB"). These communications revealed that since October 2021, certain status reports of the berm conditions were late, never completed, and/or not produced in a timely fashion to the DOB. I asked for Xia's plan to resolve this issue. On February 28, 2022, Xia's former counsel forwarded to me communications between Xia and Matthew Millner at the DOB indicating the berm maintenance issue had been satisfied. Xia sent to the DOB

---

[2] It also is important that the Projects are winterized. My team and Xia's counsel are discussing a plan to accomplish this important task as well.

[3] The fencing work would apply to both Eastern Emerald and Eastern Mirage, but the security guard is being discussed only for Eastern Mirage.

the requested berm maintenance report, along with a note from Xia to the DOB that stated that the subcontractor was doing the berm maintenance and that compliance with the DOB request would be maintained. Xia's current counsel recently renewed these berm maintenance concerns. As a result, I began the ongoing process of working with independent vendors to assess the berm, the maintenance that is required/prudent, and the reasonable cost for this work. I expect to file a motion soon for the release of funds to perform this work.

### Interest Reserve Motion

As previously reported, the Monitor has been in and continues to be in cooperative discussions with Emerald Creek Capital LLC ("Emerald Creek") in connection with a certain Loan Agreement ("Loan Agreement"), dated as of August 31, 2021, between Emerald Creek and X&Y Development Group ("X&Y"). Emerald Creek requested to receive certain interest payments to which it is contractually entitled and for which the funds it previously reserved. Importantly, none of these funds are investor funds. After careful consideration, on October 18, 2022, with the consent of the SEC and Defendants, the Monitor made a motion to this Court seeking permission for Emerald Creek to release of the interest reserve funds.

### Defendants' Payment Requests

As previously reported, Relief Defendant, Xi Verfenstein ("Verfenstien"), requested payment of outstanding invoices subcontractors submitted to Perini Group, Inc. ("Perini") for work performed on Eastern Emerald before and after the Restraining Order.[4] The Monitor diligently reviewed the invoices, and asked counsel for Verfenstein to provide supporting documentation,

---

[4] The Monitor informed Verfenstein that he would not consider the payment of invoices for work performed after the implementation of the Restraining Order at this time.

such as the contracts between Perini and each subcontractor and documents substantiating the work performed. The Monitor has not yet received these materials.

In the fourth quarter, Xia requested payment to Verfenstein for berm maintenance work that Perini purportedly performed on Eastern Emerald between September 2021 and August 2022. An invoice was provided for each month of work, with the amounts charged ranging from approximately $125,000 to $491,000. Each month, more than $100,000 of the work is described as "miscellaneous." After conducting a thorough review of the invoices, I was unable to verify that the amounts charged in these invoices are commercially reasonable.

### Project Violations and Safety Issues

The Monitor and his team continue to be in direct communications with the DOB and the City's Law Department for the purpose of resolving a significant number of the violations under favorable financial terms.

### Status Relating to Paragraphs 8 through 14[5]

The Monitor reviewed documents and information – to the extent Defendants made them available – pertaining to Paragraphs 8 through 14 of the Monitor Order.[6]

**Paragraphs 8-10 (Documents).** The Monitor's efforts to obtain documents and information from Defendants, and the challenges Defendants and their counsel presented, are detailed in the 11(b) Report, the First Quarterly Status Report, the Monitor's testimony at the Order to Show Cause Hearing, and in the Second Quarterly Status Report. Due to these challenges, the Monitor demanded the completion of the document production, together with an affidavit from Xia and other Defendants on or before February 28, 2022, that declares, under penalty of perjury,

---

[5] Monitor Order Paragraph 15 describes the timely access to which the Monitor is to be provided documents and information.
[6] *Id*.

everything in his/their possession, custody, or control has been produced to the Monitor in response to each enumerated request. As discussed in the Second Quarterly Status Report, Xia provided the declaration, in which he represented that he provided the Monitor with documents from sections I(1)(d), III(D)(2), III(D)(3), and III(D)(5) of Monitor's First Request for the Production of Documents/Information. Upon review, the Monitor determined that Xia had not provided the necessary documents to satisfy those requests. The Monitor again asked Xia to review his documents and materials and provide information sufficient to satisfy these requests as soon as possible. Xia has yet to provide any additional information.

**Paragraph 11(a) (Finances)**. Defendants previously provided the Monitor with documents and information regarding the rental properties Xia and the Xia Entities own (as also referenced above in connection with the CTBC loan), including the revenue they generate, the associated operational costs, the appraised value, and any outstanding debt. In the fourth quarter the Monitor did not receive new materials regarding the finances and operations of Fleet and the Xia Entities.

**Paragraph 11(b) (Report)**. The Monitor reported on the status of the Projects, and made his recommendations regarding same, in Sections II and IV of the 11(b) Report.

**Paragraph 11(c) (Corporate Transactions)**. The Monitor's review of the limited historical corporate transactions by Fleet or the Xia Entities – to the extent Defendants provided relevant information – is summarized in Section II of the 11(b) Report.

**Paragraph 11(d) (Historical Compensation)**. Defendants provided the Monitor with only certain historical compensation of Fleet's former Chief Legal Officer, Bret McCabe.[7] The Monitor

---

[7] On February 10, 2022, the Monitor was informed that Bret McCabe would no longer serve as Fleet's Chief Legal Officer.

was unable to verify this information. Defendants did not provide the Monitor with the historical compensation of any other executive officers or affiliates of Fleet and the Xia Entities.

**Paragraph 11(e) (Numerous Law Firms)**. From the time the Court appointed the Monitor on September 27, 2021, Xia has been represented by *at least* seven (7) law firms: Sullivan & Cromwell LLP, Mukasey Frenchman LLP, WilmerHale, Sills Cummis & Gross P.C., Kameli & Associates, Wolf Haldenstein LLP, and Meyer, Suozzi, English & Klein, P.C.

As identified in the second and third quarterly status reports, the Monitor is aware of unpaid and outstanding invoices from Xia's prior law firms as well as others representing the Xia Entities that now exceed $2.6 million. The Monitor remains deeply concerned that Xia's pattern of replacing counsel without payment is a delay tactic in this Enforcement Action, and which continues to impede and make inefficient use of the work of the Monitor and his team.

**Paragraph 11(f) (Financial Statements)**. The Monitor's review of financial statements of Fleet and the Xia Entities – to the extent Defendants provided relevant information – is detailed in Section II of the 11(b) Report.

**Paragraph 11(g) (Meeting Minutes)**. Defendants have not provided the Monitor with any meeting minutes of the Boards of Directors of Fleet and the Xia Entities.

**Paragraphs 11(h)-(i) (Litigations)**. The Monitor's review of litigation involving Fleet and the Xia Entities is summarized in Exhibit A to the 11(b) Report.[8]  As previously identified, an additional class action suit, *Jin v. Xia*, was filed against Xia, Yue, and multiple Xia Entities in this Court on February 18, 2022.[9]

---

[8] Monitor's Report Ex. A, ECF No 53-1.
[9] *See Jin v. Xia*, Case No. 1:22-cv-00740-WFK-VMS (E.D.N.Y.).

**Paragraph 11(j) (Leases)**. Defendants have not provided the Monitor with any (proposed) material changes to material leases or real estate holdings of Fleet and the Xia Entities. Nonetheless, as previously reported, the Monitor is aware that Xia listed Eastern Mirage for leasing through Compass, a real estate broker. In the fourth quarter, the Monitor learned that Xia listed one of his rental properties located at 133-54 Avery Ave, Queens, NY 11355 for sale for $2,780,000. Upon information and belief, the property was acquired by Xia and Yue in 2004.

**Paragraph 11(k) (Insurance Information)**. After careful review of the insurance information provided by Defendants, the Monitor determined that the Projects were not adequately insured by either Commercial General Liability or Builder's Risk insurance. The details of the Monitor's analysis are discussed in the Second Quarterly Status Report.

**Paragraph 11(l) (Investor Communications)**. Defendants have not provided the Monitor with any investor-wide communications intended to be sent by Fleet and the Xia Entities to investors.

**Paragraph 12 (Internal Controls)**. Defendants have not provided the Monitor with a summary report on the internal controls regarding the cash assets of Fleet and the Xia Entities.

**Paragraph 13 (Valuation Reports)**. As previously identified, Defendants provided five (5) valuation reports regarding the Projects to the Monitor.[10] In the fourth quarter, the Monitor learned of two additional appraisals (one for Eastern Mirage and one for Eastern Emerald) dated August 10, 2022, and prepared by Colliers International Valuation & Advisory Services. These appraisals appear to have been commissioned by HW Funds Group in connection with a potential financing agreement with Xia.

---

[10] *See* 11(b) Report. § II.E.(iv), ECF No. 53.

Fourth Quarterly Status Report to the Court

**Paragraph 14 (Annual Budget)**. Fleet and the Xia Entities have not provided the Monitor with their annual budget(s).