# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

SYMPHONY TOWERS
750 B STREET - SUITE 1820
SAN DIEGO, CA 92101
619-239-4599

**MARK C. RIFKIN**
DIRECT DIAL: 212-545-4762
FACSIMILE: 212-686-0114
rifkin@whafh.com

November 8, 2022

VIA EFC
Hon. Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:     *SEC v. Xia, et al.*, No. 21-cv-05350-PKC-RER

Dear Judge Chen:

We write on behalf of Defendants, Richard Xia and Fleet Financial, regarding 33 subpoenas the SEC recently served upon the following 33 non-party witnesses:

| | |
|---|---|
| 5D Architecture & Engineering, PLLC | ADP Total Source |
| Capalino | Bushwick Metals LLC |
| Cassone Leasing, Inc. | D&A Contracting |
| D-Best Construction Group, Inc. | Ettinger Engineering Associates |
| Flushing Willets Point Corona LDC | Glickman Engineering Associates PLLC |
| HR&A Advisors, Inc. | Great City Plumbing Inc. |
| Impact Environmental | Harman Jablin Architects LLP |
| March Imaging Systems, Inc. | Major Building Safety Consulting |
| Mega Engineering and Land Surveying P.C. | Metal Partners Rebar |
| Muser Rutledge Consulting Engineers | Metro Wide Format, LLC |
| Roux Associates, Inc. | New York Hoist LLC |
| Severud Associates Consulting Engineers, PC | Rizzo Group |
| TerraSure Services, LLC. | Thornton Tomasetti |
| Vidaris, Inc. | Trackvia Inc. |
| Xtreme Concrete | Triboro Plumbing & Heating Corp. |
| | TVS Design |
| | United Rentals |
| | V&P Altitude Corp. |

In response to the first wave of 15 non-party subpoenas sent to us, we wrote to the SEC's counsel on November 3, 2022, to object to the broad discovery on several grounds and to request that the SEC withdraw the subpoenas.  A copy of our November 3, 2022, letter to the SEC is

Hon. Pamela K. Chen
November 8, 2022
Page 2


attached hereto as Exhibit A. The SEC rejected our request and, in fact, doubled down on the discovery, serving a second wave of 18 more non-party subpoenas. A copy of the SEC's November 4, 2022, email is attached hereto as Exhibit B.

These subpoenas followed immediately after the Court granted the parties' joint request to extend the discovery deadline to accommodate *existing* outstanding discovery. At no time did the SEC inform Defendants that it intended to use the extension to commence an onslaught of subpoenas that could not possibly be accommodated before the original discovery cut-off or even within the brief extension granted by the Court.

Contrary to the SEC's argument that Defendants have no standing to challenge the non-party subpoenas, they have a legitimate interest in quashing subpoenas that needlessly prolong discovery or harass witnesses or potential witnesses. *See United States v. Eldridge*, No. 09-CR-329, 2015 U.S. Dist. LEXIS 107304, *6 (W.D.N.Y. Aug. 14, 2015). More importantly, regardless of Defendants standing to object to the SEC's non-party subpoenas, "the Court has an independent duty to review the propriety of the subpoena[s]." *Id*. at *7

The 33 non-party subpoenas are improper. As we explained in our November 3, 2022, letter to the SEC, none of the non-parties to whom the subpoenas were directed were involved in preparing or making *any* statements in connection with the sale of any partnership interest at issue in this case. Nearly all of them had no relationship with any party or with either Project until months or years *after* the statements at issue in this case were made. Therefore, the non-party witnesses to whom the subpoenas are directed have no knowledge or any discoverable documents relevant to whether the statements at issue were materially false or misleading when they were made or whether Defendants had the requisite scienter at that time.

The SEC has not shown a genuine need for the non-party depositions. *First*, the SEC claims it needs the depositions to determine what work was done by which vendor. However, the private placement memoranda did not identify which contractors and sub-contractors would be performing any particular work or how much work they each would perform. The depositions cannot yield any evidence relevant to the SEC's claim that statements in the private placement memoranda were materially false or misleading. Moreover, the work was performed months or years *after* all the funds from the EB-5 visa investors were paid in. The investors might have standing to assert a claim that the money they invested was *later* mis-spent, but *the SEC does not* and, in any event, it has not asserted such a claim in the Amended Complaint. For that same reason, the SEC's argument that it seeks to discover how funds were *subsequently* spent after being paid in by the EB-5 visa investors is irrelevant to whether any statements in the various private placement memoranda were materially false or misleading when they were made.

The SEC's attempt to "follow the money" at this advanced stage of the litigation raises serious concerns about its good faith basis for commencing the action and for obtaining the Asset Freezing Order when it did so. The SEC's three-year pre-suit investigation certainly would have encompassed these issues if, as it now says, they are pertinent to any issue raised by the SEC's Amended Complaint. Surely, the SEC believed it knew enough to bring the weight of the federal

Hon. Pamela K. Chen
November 8, 2022
Page 3

government down upon private citizens when it commenced the action and sought the draconian remedy of a pre-judgment asset freeze. The SEC knows it *must* account for how much of the EB-5 visa investors' funds were appropriately used to develop the two massive projects, including the land acquisition costs as well as the construction costs. *See Liu v. SEC*, 140 S. Ct. 1936 (2020). The SEC should not need to conduct 33 non-party depositions at this late stage of the litigation to do so

Defendants believe the SEC has served these 33 non-party subpoenas to interfere with Defendants' existing business relationships to prevent Defendants from completing either Project. The SEC is abusing the discovery process – to say nothing of the considerable weight of the federal government – to harass the non-party witnesses. Certainly, it is needlessly prolonging the discovery process, and needlessly multiplying Defendants' costs by doing so. The SEC knows that Defendants have little or no ability to pay counsel while the Asset Freezing Order remains in place, particularly because it insists on freezing hundreds of millions of dollars more than the $229 million cap imposed by the Court in the Asset Freezing Order. The SEC trying to overwhelm Defendants and their counsel and make it impossible for Defendants to defend themselves.

Thank you in advance for Your Honor's kind consideration. We are, as always, available to answer any questions Your Honor may have.

Respectfully yours,

Mark C. Rifkin

cc:    All Counsel (via ECF)