

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
100 PEARL STREET, SUITE 20-100
NEW YORK, NY 10004-2616

NEW YORK
REGIONAL OFFICE

November 14, 2022

**VIA ECF**

The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East, Chambers N 631
Brooklyn, NY 11201

     Re: *SEC v. Xia, et al.*, 21-cv-05350-PKC-RER

Dear Judge Chen:

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this letter in response to the Defendants' letter filed November 8, 2022, DE 202 ("Ltr."), regarding certain third-party subpoenas served by the SEC. Defendants make a variety of over-the-top and baseless claims, including that by issuing the subpoenas the SEC is "abusing the discovery process"; "trying to overwhelm Defendants"; "interfere[ing] with Defendants' existing business relationships"; and "harass[ing] witnesses." These accusations have no merit. The subpoenas seek documents relevant to, among other things, how Xia spent the $229 million he raised from investors and which entities actually performed the construction on the Eastern Mirage and Eastern Emerald Projects (the "Projects"). The document subpoenas, moreover, are issued to non-parties—who themselves have not objected —and impose no burden on the Defendants. Their argument that these subpoenas are somehow "improper" should be rejected. [1]

**Procedural Background**

On June 7, 2022, the Court entered a scheduling order setting November 18 as the deadline for fact discovery. Deposition discovery, however, did not go forward because defense counsel, over the course of several months, refused to agree to the SEC's

---

[1] Defendants' letter contains a number of incorrect statements. They repeatedly state that the subpoenas seek "depositions," which is false: the subpoenas only seek documents. Defendants also assert that the vendors and contractors to whom the subpoenas are directed performed their work "months or years *after* all the funds from the EB-5 visa investors were paid in." Ltr. at 2 (emphasis in original). This also is false: the majority of the funds paid to the contractors was paid from 2012 through 2017, when new investor funds were still being solicited and received. The letter also purports to be filed "on behalf of Defendants, Richard Xia and Fleet Financial" Ltr. at 1; however, "Fleet Financial" is not a party.

repeated requests to schedule party and non-party depositions. The SEC then filed a motion to compel depositions (DE 190), which the Court granted on October 25.

On October 28, the parties submitted a stipulation requesting that fact discovery be extended to February 6, 2023 (DE 195). Also on October 28, the SEC sent defense counsel a Notice of Subpoenas regarding its document subpoenas to 15 nonparty vendors and contractors on the Projects. Ex. A. The return date was November 15, three days before the then-discovery cutoff. On November 2, the Court granted the parties' request to extend fact discovery to February 6, 2023. On November 4, the SEC served another Notice of Subpoenas (Ex. B), regarding its document subpoenas to an additional 17 vendors and contractors that had done business with Xia on the Projects. The identical subpoenas to the 32 third-party contractors are narrowly tailored to seek documents concerning the Projects, including invoices, proposals, bids and payments received, as well as communications with Xia and Xi Verfenstein. Ex. C (sample subpoena).[2]

**The Subpoenas Impose No Burden on Defendants and Properly
Seek Relevant Documents Regarding Xia's Expenditures and Costs of the Projects**

As a preliminary matter, Defendants lack standing to object to these third-party subpoenas. "In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir.1975). *See also Toussie v. Allstate Ins. Co.*, 2017 WL 4773374, *3-4 (E.D.N.Y. Oct. 20, 2017 ("A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right."). Defendants here do not claim any privacy interest or privilege in the documents sought by the subpoenas. As a result, Defendants do not have standing and there is no need to even consider Defendants' objections, which, as set forth below, have no merit.

Defendants first argue that the documents sought by the subpoenas are "irrelevant." Ltr. at 2. However, "the scope of discovery under Fed. R. Civ. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Maresco v. Evans Chemetics*, 964 F.2d 106, 114 (2d Cir. 1992). The costs of the Projects and how Xia spent the investors' funds is obviously within the broad scope of discovery, as are the issues of whether the construction was done by Xia-controlled entities or outside contractors, and to what extent Xia-controlled entities actually performed work they invoiced for. Indeed, Defendants implicitly conceded the relevance of these areas by filing a report from a "financial planner" named Michael Amideo in September 2022 which purported to "compute the costs and expenses of both Projects[.]" DE 181 at 2.[3]

---

[2] The subpoena to ADP Total Source differs from the others because it seeks payroll records.

[3] Amideo's report is based largely on charts stating that they were "Prepared by Richard Xia," DE 181-2 at 1-5; DE 181-9 at 1-4; as a result, his key findings—including that Xia contributed $31.6 million in "cash

Defendants also argue that the SEC should have obtained these documents during the pre-Complaint investigation. The SEC did, however, request from the Defendants and the Relief Defendants production of invoices and other documents concerning third-party contractors repeatedly, both before and after filing this action. *See* DE 102-1, 102-3, 102-4, 102-5. In response, counsel produced a small number of third-party invoices, but failed to fully produce all of their communications with third-party contractors, which compelled the SEC to issue these subpoenas. In any event, "no rule of law requires the SEC to request in the investigative stage every document that might turn out to be relevant in the litigation phase on pain that, if it does not seek the document during the investigation, it will not be able to seek it after it has filed a complaint and defendant has answered." *SEC v. Rayat*, 2022 WL 1423300, at *3 (S.D.N.Y. May 5, 2022).

Defendants next claim that these nonparty subpoenas are "needlessly multiplying Defendants' costs" because Defendants have "little or no ability to pay counsel." Ltr. at 3. But Defendants fail to explain how subpoenas to nonparties impose any burden or costs on them. The legal fees argument also should be disregarded: as the SEC has previously stated (DE 190 at 3), Defendants' counsel in 2022 have received substantial payments for their services in this action. And the number of third-party subpoenas does not itself result in any undue burden. *See A&R Body Specialty and Collision Works v. Progressive Cas. Ins. Co.*, 2013 WL 6212159, *4 (D. Conn, Nov. 26, 2013) (rejecting objections to party that served 51 third-party subpoenas; "the Court will not limit defendants' use of third party subpoenas on the present record").

Finally, Defendants' claim that the SEC is seeking to "harass the non-party witnesses," Ltr. at 3, is not supported. In fact, none of the recipients of the subpoenas have so far raised any objections, and several of them have already produced responsive documents.

The SEC respectfully requests that the Court reject Defendants' arguments and not restrict the SEC's right to pursue third-party discovery.

Respectfully submitted,

/s/ *David Stoelting*
David Stoelting
Kevin McGrath
Kim Han
Attorneys for Plaintiff

---

payments" and that the Eastern Emerald land was not purchased with investor funds (DE 181 at 2-3)—are flawed and are contradicted by evidence submitted at the February 2022 hearing by Raymond Dookhie, the SEC's expert witness, who was qualified as a forensic accounting expert in the construction industry. Hrg. Tr. at 516; Hrg. Exs. 91, 92, 92, 93, 94, 95, 96. The subpoenaed third-party records will supplement this analysis and fill in the gaps resulting from Xia's shoddy record-keeping practices.