UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>  v.<br><br>RICHARD XIA, a/k/a YI XIA, <u>et al.</u>,<br><br>      Defendants,<br><br>  and<br><br>JULIA YUE, a/k/a JIQUING YUE, <u>et al.</u>,<br><br>      Relief Defendants. | Case No. 21-cv-05350-PKC-RER |

**MOTIONS TO WITHDRAW AS COUNSEL AND
<u>FOR RELEASE OF FROZEN ASSETS SUFFICIENT TO PAY ATTORNEY'S FEES</u>**

  Duane Morris LLP (the "Firm") hereby files this motion to withdraw as counsel for Relief Defendants Xi Verfenstein ("Verfenstein") and Xinming Yu ("Yu" and, collectively, the "Relief Defendants") pursuant to Rule 1.16 of the New York Rules of Professional Conduct, which is incorporated into the Local Civil Rules (<u>see</u> Local Civil Rule 1.5(b)(5)), and Local Civil Rule 1.4. Additionally, the Firm hereby moves for an Order to release sufficient funds from frozen assets, frozen by this Court's asset-freeze order of September 27, 2021 (the "Asset Freeze") (ECF 11), for payment of the attorney's fees incurred in its representation of Relief Defendants in this action. In the alternative, the Firm hereby requests the Court grant it an equitable lien (junior to secured debt and investor loan repayments) up to the amount of its fees against all assets frozen by the Court's Asset Freeze.

  In support of these motions to withdraw and for release of frozen assets, the Firm avers and states as follows:

I.      **Motion to Withdraw**

1.      On or about November 10, 2022, the Firm notified Relief Defendants of its intent to withdraw as their counsel in this case. (Hansen Decl. ¶ 4.)

2.      Withdraw is permissive under New York Rule of Professional Conduct 1.16(c)(5), because the Firm has an outstanding receivable balance in excess of $375,000 and the Relief Defendants have advised the Firm that they do not have the funds to pay the outstanding balance. "[A] client's inability . . . to pay can constitute a valid ground for withdrawal from representation." Team Obsolete, Ltd. v. A.H.R.M.A. Ltd., 464 F. Supp. 2d 164, 165 (E.D.N.Y. 2006); see also Stair v. Calhoun, 722 F. Supp. 2d 258, 265 (E.D.N.Y. 2010) ("Failure to pay legal fees has been found to be a legitimate ground for granting a motion to withdraw by several courts in this Circuit." (citations omitted)).

3.      Further, under New York Rule of Professional Conduct 1.16(c)(1), the Firm may withdraw from representation when the "withdrawal can be accomplished without material adverse effect on the interest of the client." Here, this litigation is still within the discovery period, and a consent motion was recently filed to extend the pretrial deadlines, including, if granted by the Court, a new proposed fact discovery cutoff of February 6, 2023.  (ECF 195.) Further, no trial date has been set. Thus, the Firm's withdrawal would not disrupt the proceedings nor cause a material adverse effect on the interests of the Relief Defendants.

## II. MOTION FOR RELEASE OF ASSETS

### A. Payment from Frozen Assets

4. Relief Defendants have incurred substantial attorney's fees owed to the Firm in this action. (Hansen Decl. ¶ 3.) As detailed in the monthly invoices submitted to the Court, the legal services provided to Relief Defendants by the Firm have included representation of the Relief Defendants in all stages of this action, including with respect to the SEC's emergency motion to extend the asset freeze.

5. "To unfreeze assets to pay for attorneys' fees in any civil action, including an SEC civil enforcement action, 'the [movant] must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established.'" SEC v. Santillo, No. 18-5491, 2018 WL 3392881, at *4 (S.D.N.Y. July 11, 2018) (quoting SEC v. Stein, No. 07-3125, 2009 WL 1181061, at *1 (S.D.N.Y. April 30, 2009)).

6. Under the Supreme Court's decision in Liu v. SEC, 140 S. Ct. 1936 (2020), the SEC may not seek disgorgement of ill-gotten gains as an equitable remedy in excess of the wrongdoer's net profits. See id. at 1946. The Court's Asset Freeze already has frozen the full amount of what it claims is due in disgorgement, or the $229 million raised in connection with the EB-5 offerings. In any event, the SEC sought to extend the Asset Freeze to Relief Defendants' personal properties. This extension would freeze significantly more assets than needed for a disgorgement award pursuant to Liu.

7. Thus, the Perini Group bank accounts that are currently frozen possess sufficient funds to pay the balance of the overdue legal fees to the Firm in connection with this action. Payment from the Perini Group accounts will not eliminate the SEC's ability to collect the full amount of disgorgement allowable by law.

### B.    Equitable Lien on All Assets

8. Alternatively, the Firm respectfully requests that the Court grant the Firm an equitable lien on all of the Perini Group's frozen assets and funds subordinate to payment of secured creditors and repayment of the loans from EB-5 investors to construct the projects.

9. New York law recognizes equitable charging and retaining liens for attorney's fees. "If the attorney is discharged without any misconduct on his or her part, or voluntarily withdraws for just cause, the attorney may invoke two types of liens." In re First City Nat'l Bank & Trust Co., 759 F. Supp. 1048, 1051 (S.D.N.Y. 1991). "The common law gives a general possessory retaining lien allowing an attorney to keep a client's papers or assets until the legal fee is paid." Id.; see also Resolution Trust Corp. v. Elman, 949 F.2d 624, 626 (2d Cir. 1991) ("Under New York law, a retaining lien entitles an attorney to keep, as security against payment of fees, all client papers and property, including money, that come into the attorney's possession in the course of employment, unless the attorney is discharged for good cause."); Stair, 722 F. Supp. 2d at 276 ("A discharged attorney is also entitled to a retaining lien on the former client's papers and property that are in the attorney's possession, under New York common law."). "In addition, there is the charging or special lien, originally also a common law right but then statutorily established, against monies recovered for a client by the attorney's efforts in litigation." First City Nat'l Bank & Trust Co., 759 F. Supp. at 1051; see also Pilitz v. Inc. Vill. of Freeport, 762 F. Supp. 2d 580, 582–83 (E.D.N.Y. 2011) (finding that, to establish a charging lien, "there must be asserted a claim which can eventuate in there being proceeds payable to, or assets recoverable by, the client as a result of the efforts of the attorney"); Stair, 722 F. Supp. 2d at 267 ("New York's statutory charging lien . . . is a device to protect counsel against 'the knavery of his client,' whereby through his effort, the attorney acquires an interest in the client's cause of action.").

10. Indeed, under New York law, when an attorney ceases to represent a client during the course of a proceeding, the attorney may seek to protect his right to fees either by invoking a retaining lien on the files of his client, Louima v. City of New York, 2004 WL 2359943, at *56 (E.D.N.Y. Oct. 5, 2004) (citing Pomerantz v. Schandler, 704 F.2d 681, 683 (2d Cir. 1983)) (noting that "[i]t is settled that an attorney may claim a lien for outstanding unpaid fees and disbursements on a client's papers which came into the lawyer's possession as the result of his professional representation of his client")), or through the assertion of a statutory charging lien on any amounts recovered by the attorney's former client in the proceeding. See id. (citing Casper v. Lew Lieberbaum & Co., Inc., No. 97 CV 3016, 1999 WL 335334, at *5 (S.D.N.Y. May 26, 1999). A court of equity therefore has power to "prevent the unjust enrichment of a defendant . . . by . . . imposing an equitable lien." Tishman Realty & Constr. Co. v. Schmitt, 330 N.Y.S.2d 174, 177 (N.Y. City Civ. Ct. 1972).

11. Without equitable relief from this Court, the Asset Freeze prejudices and harms the Firm by rendering those assets legally unavailable to the Firm during the period of the freeze even if it were a judgment creditor. An equitable lien for legal fees therefore protects both the interests the Court seeks to protect by the asset freeze and that of the Firm that has rendered legal services in good faith and is precluded from getting timely paid because of the Asset Freeze. Additionally, an equitable lien at least remedies part of the harm to the Firm caused by the Asset Freeze.

12. Granting the Firm an equitable remedy of a subordinated equitable lien will not prejudice any other secured or unsecured creditor or lender because the existing frozen EB-5 assets are, in the opinion of the Court-appointed Monitor, substantially more than sufficient to cover all known liabilities.

### III. CONCLUSION

13. For all of the foregoing reasons, the Firm respectfully requests that its motions for withdrawal and for release of frozen assets be granted.

Respectfully submitted,

Dated: November 23, 2022.

s/ Mary P. Hansen
Mary P. Hansen (N.Y. Bar No. 2935385)
Michael J. Rinaldi (admitted pro hac vice)
DUANE MORRIS LLP
30 S. 17th St.
Philadelphia, Pa. 19103
(215) 979-1000 (telephone)
(215) 979-1020 (facsimile)
MPHansen@duanemorris.com
MJRinaldi@duanemorris.com

Attorneys for Relief Defendants Xi Verfenstein and Xinming Yu