# WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

FOUNDED 1888

270 MADISON AVENUE
NEW YORK, NY 10016
212-545-4600

SYMPHONY TOWERS
750 B STREET - SUITE 1820
SAN DIEGO, CA 92101
619-239-4599

**MARK C. RIFKIN**
DIRECT DIAL: 212-545-4762
FACSIMILE: 212-686-0114
rifkin@whafh.com

April 4, 2023

VIA EFC
Hon. Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

     Re:    *SEC v. Xia, et al.*, No. 21-cv-05350-PKC-RER

Dear Judge Chen:

We write on behalf of Defendants, Richard Xia and Fleet, and Relief Defendant Yue in response to the Court's March 23, 2023, Supplemental Scheduling Order.

### A.    The Court's Authority to Grant the Requested Relief Without Modifying the Preliminary Injunction

The Court's *sua sponte* Supplemental Scheduling Order directs the parties to address whether Defendants' and Mrs. Yue's pending motion for relief from the Preliminary Injunction, which the District Court characterized as a "request to modify the Asset Freeze – to petition for bankruptcy and/or use $200,000 to obtain a loan," exceeds the Court's authority because Defendants and Mrs. Yue have appealed the Preliminary Injunction. The motion does not seek to "*modify*" the Preliminary Injunction; rather, it merely seeks ***relief from the injunction*** as permitted by the Preliminary Injunction itself.

If the Court lacks authority to hear Defendants' and Mrs. Yue's narrow motion for relief from the Preliminary Injunction, it certainly lacks authority to hear the SEC's motion for a liquidating receivership, which would obliterate the Preliminary Injunction. As expressly provided for in the Preliminary Injunction, Defendants and Mrs. Yue seek leave to accept the commitment letter and pay $200,000 to the lender to proceed with prerequisites to the proposed financing to repay the EB-5 investors. The motion preserves the *status quo* and merely allows them to ***comply*** with the Preliminary Injunction.

Hon. Pamela K. Chen
April 4, 2023
Page 2

The Court noted in the Supplemental Scheduling Order that it may "modify [an] injunction order[] during the pendency of an appeal . . . to preserve the *status quo* as of the time of the appeal." (Citing *Flatiron Health, Inc. v. Carson*, 602 F. Supp. 3d 482, 485 (S.D.N.Y. 2020).) If it seeks to modify the Preliminary Injunction at all, Defendants' and Mrs. Yue's motion does nothing more than that. Defendants and Mrs. Yue have *express* rights under the Preliminary Injunction to apply to seek permission to: (i) encumber the properties subject to the asset freeze or commence a bankruptcy case and (ii) use funds currently subject to the asset freeze. Their current motion merely seeks to preserve the *status quo* while they appeal from the Preliminary Injunction, including preserving their express right to seek relief from the Preliminary Injunction.

The SEC's argument that the Court lacks jurisdiction to grant the motion for relief from the Preliminary Injunction merely parrots the Court's Supplemental Scheduling Order. Despite the Court's direction, it does ***not*** address "in detail" whether the motion exceeds the Court's authority. *See* Supp. Scheduling Order. Consisting of only two short paragraphs, it provides no meaningful analysis of the issue, and draws a patently flawed distinction between Defendants' and Mrs. Yue's motion for narrow relief from the Preliminary Injunction and the SEC's own pending motion to impose a liquidating receivership over ***all*** the assets currently frozen under the terms of the Preliminary Injunction.

If the Court lacks jurisdiction to consider Defendants' narrow motion – which only seeks permission to sign a commitment letter and to use $200,000 at this time to pursue financing with which to repay all the EB-5 visa investors for whose benefit the assets were frozen – then surely the Court lacks jurisdiction to consider the SEC's motion for a liquidating receivership, which seeks to liquidate ***all*** the business and personal property currently frozen (worth more than $774 million), and distribute the proceeds of the liquidation not only to the investors but to dozens of unidentified creditors and claimants whose interests are ***not*** protected by the asset freeze. Far from preserving the *status quo*, the SEC's liquidating receivership motion would fundamentally disrupt the asset freeze in the Preliminary Injunction and, indeed, would convert it into something else entirely. The receivership motion does not maintain the *status quo*, it permanently reverses it. Conversely, if the Court has jurisdiction to consider the SEC's sweeping liquidating receivership motion, surely it also has jurisdiction to hear Defendants' and Mrs. Yue's narrow motion.

The issues raised by Defendants and Mrs. Yue in their appeal concern whether the SEC

Hon. Pamela K. Chen
April 4, 2023
Page 3

made a sufficient showing for the District Court to have entered the Preliminary Injunction at all and, if so, whether the amount of assets frozen by the Preliminary Injunction were proper. Their current motion does not address either of those issues, and the Court need not consider them to resolve the motion. Rather, Defendants' and Mrs. Yue's motion seeks relief from the Preliminary Injunction and the asset freeze that is consistent with the mechanism expressly provided for in the Preliminary Injunction, leaving it ***fully in place and unaffected*** even if their motion is granted. In its brief response, the SEC does not argue otherwise.

Even while an appeal is pending from an interlocutory order that grants an injunction, the Court may suspend the order granting an injunction on terms for bond or on other terms that secure the opposing party's rights. Fed. R. Civ. P. 62(d); *Broker Genius*, 2019 U.S. Dist. LEXIS 18447, at *8. In moving for relief in accordance with the express terms the Preliminary Injunction, that is all Defendants and Mrs. Yue seek here. By rule and by precedent, the Court plainly has the authority to apply the mechanism provided for in the Preliminary Injunction to allow Defendants to secure their rights.[1]

Part IV of the Preliminary Injunction expressly permits any party (including Defendants and the Relief Defendants) to seek leave to take any action (including filing any lawsuits, liens, encumbrances, or bankruptcy cases) that would otherwise interfere with the asset freeze. ECF No. 217 at 5. Similarly, Part V(A) of the Preliminary Injunction expressly permits any Defendant or Relief Defendant to "apply to the Court to use assets, funds, or other property currently subject to" the Preliminary Injunction for "good reason[]." *Id*. Defendants seek leave from the Preliminary Injunction to proceed with the financing (which financing, when concluded, will eventually result in the encumbrance of both business properties) and to pay $200,000 to the lender and still remain in full compliance with the Preliminary Injunction. They have not sought to modify, alter, amend, or change the Preliminary Injunction in any manner. They have done exactly what the Preliminary Injunction authorizes them to do. The Court need not modify, alter, amend, or change the

---

[1] Moreover, an appeal from an interlocutory order granting or denying a preliminary injunction "does not divest the district court of jurisdiction with respect to those matters ***not involved in the appeal*** and the case proceeds on the merits unless otherwise ordered." *Toliver v. Fischer*, No. 12-CV-77 (MAD/ATB), 2016 U.S. Dist. LEXIS 37881, at *34 n.17 (N.D.N.Y. Mar. 22, 2016) (emphasis added) (citing *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989)). The SEC does not argue otherwise.

Hon. Pamela K. Chen
April 4, 2023
Page 4

Preliminary Injunction in any way to grant Defendants leave to accept the proposed commitment letter and to pay $200,000 to the lender, and if Defendants do so after being granted leave, they will not be in contempt of it in any respect. They will have done exactly what the Preliminary Injunction allows them to do, and the Court will have done exactly what the Preliminary Injunction allows it to do. The SEC does not argue otherwise.

Indeed, since Defendants and Mrs. Yue appealed the Preliminary Injunction on December 14, 2022 (ECF No. 219), the Court has entered four separate orders permitting a total of $1,532,940.88 in funds to be withdrawn from the frozen assets:

- Order entered on January 3, 2023 (ECF No. 225) granting Monitor's motion for release of $916,913.16 from frozen funds to pay property taxes for both projects (ECF No. 224);

- Docket Order entered on January 17, 2023, granting Monitor's emergency motion for release of $213,561 from frozen funds to pay for necessary fence replacement at the Northern Boulevard property (ECF No. 233);

- Order entered on March 17, 2023 (ECF No. 272) granting Monitor's motion for release of $314,244.00 from frozen funds to pay for berm maintenance at the Northern Boulevard property (ECF No. 267); and

- Order entered on March 17, 2023 (ECF No. 273) granting Monitor's motion for release of $88,222.72 from frozen funds to pay utility bills for the Union Street property (ECF No. 270).

When the Monitor moved for permission to use frozen funds to make those payments, he did not seek to modify, alter, amend, or change the Preliminary Injunction in any manner. Rather, the Monitor did *exactly* what the Preliminary Injunction authorized him to do, *exactly* as it provides. When the Court granted the Monitor's motions, it did not modify, alter, amend, or change the Preliminary Injunction in any respect. And when Defendants used the frozen assets to make the payments permitted by the Court, they were not in contempt of the Preliminary Injunction in any respect. They will have done ***exactly*** what the Court subsequently authorized them to do, *exactly* as the Preliminary Injunction provides.

It was entirely proper for the Monitor to make those motions and for the Court to grant relief from the Preliminary Injunction under its express terms to pay $1,532,940.88 in frozen funds for those purposes, and ***no one argued otherwise***. Since the Court had jurisdiction to grant those motions, it has the same jurisdiction to grant Defendants' and Mrs. Yue's pending motion for leave to accept the commitment letter and to release $200,000 from the asset freeze to pay the lender to

Hon. Pamela K. Chen
April 4, 2023
Page 5

proceed with the prerequisites to financing. Likewise, if the Court lacked jurisdiction to grant Defendants' and Mrs. Yue's pending motion, it would similarly have lacked jurisdiction to grant the Monitor's four motions to release $1,532,940.88 in frozen funds. The SEC's terse response ignores these four instances when the Court properly exercised its jurisdiction to grant ***exactly the same relief*** from the Preliminary Injunction to permit payments far in excess of the $200,000 sought by Defendants.

      B.      <u>**The Limited Motion for Relief from the Preliminary Injunction**</u>

The SEC disingenuously argues that granting Defendants' and Mrs. Yue's current motion will "giv[e] the ***lender*** control over the funds frozen for the investors' benefit and impair[] the Projects with ***onerous liens and massive costs***." ECF No. 293 at 4 (emphasis added). That is a blatant mischaracterization of the narrow motion, which only seeks permission for Defendants to sign a commitment letter and to use $200,000 so that they may proceed with financing to repay the EB-5 visa investors in full. ***No liens*** (onerous or otherwise) will be imposed on any assets at this time. If the financing is to be put in place, it will require ***another*** motion. As the SEC is well aware, that ***subsequent*** motion will provide that the loan proceeds be placed in an escrow account overseen by a court-appointed claims administrator. The claims administrator will be responsible for assuring that the funds are paid to the EB-5 investors. Defendants have advised the SEC that they will propose JND Legal, on the of the nation's largest and best-known claims administrators, to perform that service. JND Legal currently serves as claims administrator ***for the SEC*** overseeing the distribution of $455,439,194.49 in settlement proceeds in a Fair Fund to over 5,000 Chinese investors in the *In the Matter of GTV Media Group, Inc., Saraca Media Group, Inc. and Voice of Guo Media, Inc.*, Administrative Proceeding File No. 3-20537.[2]

The SEC also questions the "legitimacy" of ability of the lender, Vecta Capital, and its ability to fund the loan. ECF No. 293 at 4. The SEC says, "Vecta has no website and there appears to be no publicly available information about it." *Id*. It also says that Vecta's affiliate, CBRM Realty, Inc., has no functioning website. *Id*. Finally, the SEC says, "Defendants have provided no information or documents regarding Vecta or [its President] Mark Silber, who signed the Proposal." *Id*.

Vecta and Mr. Silber are ***private*** real estate investors who own or control over a billion dollars

---

[2] *See* https://www.sec.gov/litigation/admin/2021/34-93666.pdf.

Hon. Pamela K. Chen
April 4, 2023
Page 6

of real estate investments in New York City and elsewhere. As we explained to the SEC's counsel during a WebEx call on March 21, 2023, the absence of a public profile and the paucity of information available about Vecta and Mr. Silber on the Internet are deliberate. They carefully guard their privacy, which is essential for them to do their business. At the request of Mr. Silber, during the WebEx call, we offered to provide financial information about Vecta and Mr. Silber to the SEC so that the SEC could satisfy itself of their ability to fund the loan on the condition that the SEC would agree keep that information confidential. We repeated that offer in an email to counsel for the SEC on April 1, 2023. The SEC has refused to consent to their request for confidentiality, offering no reason why they would not agree to keep the information confidential. The SEC is simply being obstructionist and acting as if it does not want to receive the information to evaluate the *bona fides* of the offer.

Defendants recognize the need to demonstrate the financial ability of the proposed lender to complete the loan. If the Court would otherwise grant the cross-motion for relief from the Preliminary Injunction to permit Defendants to sign the commitment letter and pay $200,000 to the lender, we have been authorized by Mr. Silber to provide the same financial information about Vecta and Mr. Silber to the Court for an *in camera* inspection on the condition that the information would be kept sealed and not become part of the public record. If the Court requests the information on these conditions, we will provide it to the Court within 24 hours.

Regarding Vecta's ability to complete the transaction, the firm has assembled a number of large institutional investors to join with it in partnership to invest in both projects. The partners collectively have over ten billion dollars in capital available to invest and can easily fund the $260,000,000 loan.

The SEC also opposes entrusting "a quarter-billion dollars" to Vecta to oversee during the repayment process. There are at least two serious flaws with the SEC's argument. *First*, the current request is *not* for $260,000,000, but for only ***$200,000***, or just 0.077% of the amount stated in the SEC's brief. To add weight to its doomsday argument, the SEC deliberately ignored the narrow terms of the motion actually before the Court and grossly exaggerated the "risk" to investors if the Court were to grant the narrow motion now before it.

*Second*, and no less important, the SEC failed to disclose to the Court that Defendants already have proposed to use an independent third-party claims administrator, ***not Vecta***, to hold the loan proceeds in escrow and oversee the allocation to the EB-5 investors. During the WebEx call on March 21, 2023, Defendants' counsel informed the SEC's counsel that they propose to use JND Legal Administration ("JND") to hold the loan funds and distribute them to the investors. JND provides

Hon. Pamela K. Chen
April 4, 2023
Page 7

claims administration services to government agencies (including the SEC, DOJ, FTC, CFPB, and state attorneys general across the country) as well as in some of the nation's largest class actions and bankruptcies in the private sector. The firm has won many awards for its integrity in leadership, excellence in service across a wide variety of legal service categories, and ingenuity in proprietary technology offerings. JND has been named the best in class for claims administration every year for seven consecutive years. Of particular note, as mentioned above, JND is currently overseeing the distribution of $455,439,194.49 settlement proceeds in a fair fund to over 5,000 Chinese investors in *Matter of GTV Media Group* matter.

JND's credentials are impeccable and unassailable. It is undeniably qualified to hold the loan proceeds in escrow and to oversee distribution of the proceeds to the EB-5 visa investors. When the SEC sounded a false alarm over entrusting $260 million to Vecta, it should have disclosed this contrary fact to the Court.

Finally, apart from its falsely alarmist argument, the SEC offers no substantive reason why the Court should not grant Defendants' and Mrs. Yue's motion for relief from the Preliminary Injunction so that they may begin the process of obtaining funds to repay the EB-5 visa investors in full. At every turn, the SEC has invoked the "interests of the investors" to justify the asset freeze, the Preliminary Injunction, and the proposed receivership. Yet when Defendants have proposed a means to repay those same investors in full – and to do so quickly and with little administrative cost or burden – the SEC has objected vigorously to their proposal. But it has not offered any reason why Defendants' and Mrs. Yue's plan to repay the investors now, with funds from a sophisticated real estate investor and lender, is either unacceptable or less desirable than the SEC's proposed *ad hoc* bankruptcy through a costly, time-consuming, and unspecified liquidating receivership.

## C. The Alternative Cross-Motion for Leave to File Bankruptcy

Alternatively, Defendants and Mrs. Yue seek leave to file for bankruptcy. Again, Part IV of the Preliminary Injunction expressly permits any party to seek leave to file a bankruptcy case "upon a proper showing." ECF No. 217 at 5. As with their other request for relief, they do not seek to modify, alter, amend, or change the Preliminary Injunction in any manner. Rather, they merely seek relief from the injunction to file for bankruptcy, which is ***exactly*** what the Preliminary Injunction permits them to do. Again, if the Court grants Defendants and Mrs. Yue leave to file for bankruptcy, the Preliminary Injunction will not have been modified, altered, amended, or changed in any way, and if Defendants file for bankruptcy, they will not be in contempt of it in

Hon. Pamela K. Chen
April 4, 2023
Page 8

any respect. They will have done exactly what the Preliminary Injunction authorizes them to do, and they will have done so exactly as it provides. The SEC's short response does not even address whether the Court has jurisdiction to consider this specific part of the pending motion.

The SEC disputes that Defendants and Mrs. Yue have a constitutional right to file for bankruptcy. That argument is a smokescreen. Whether the right to file bankruptcy is constitutional or "merely" statutory is hardly the point. The SEC's argument, and all the cases they cite, simply recognize the Court's authority to issue a bankruptcy bar order. The Court's authority to do so is **not** a question raised by the cross-motion. Defendants and Mrs. Yue have **not asked the Court to withdraw the bankruptcy bar order**. Rather, they ask the Court to exercise its discretion (which it reserved to itself in the Preliminary Injunction) to grant relief from the bar order and permit them to file for bankruptcy. As discussed above, Part IV of the Preliminary Injunction **expressly** permits Defendants and the Relief Defendants to seek leave from the Court to file a bankruptcy case. ECF No. 217 at 5. The Court would not have included a provision in the Preliminary Injunction permitting Defendants and Mrs. Yue the right to seek permission to file a bankruptcy case if it lacked the authority to grant the request. That would have been illogical, to say the least.

The SEC has not cited any case – and Defendants and Mrs. Yue are unaware of any – holding that the Court lacks the authority to grant relief from its own bankruptcy bar order. Nor has the SEC cited a single case – and, again, Defendants and Mrs. Yue are unaware of any – in which any court has denied a motion for relief from a bankruptcy bar order to permit a defendant to file for bankruptcy. If the Court denies the request to do so here, apparently it will be the first court ever to do so.

Finally, the SEC argues that "a bankruptcy process, where a trustee would perform a role similar to a receiver, could be time-consuming and costly." ECF No. 293 at 6. Yet again using the handiest tool in its toolbox, the SEC argues that the "appropriate tool in these situations" is to appoint a receiver. *Id*. *First*, the SEC does not dispute that the liquidating receivership will be costly and time-consuming. That is a certainty. It merely speculates that a bankruptcy may take time. But it never speculates that a formal bankruptcy will take more time than the *ad hoc* bankruptcy it seeks under the guise of a liquidating receivership. Surely, a formal bankruptcy conducted under well settled rules and procedures, will be more efficient than an ill-conceived and undefined liquidating receivership. The SEC does not argue otherwise.

Hon. Pamela K. Chen
April 4, 2023
Page 9

*Second*, the SEC does not dispute that the Second Circuit strongly disfavors liquidating receiverships. *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431 (2d Cir. 1987) ("receiverships ***should not be used to effect the liquidation of defendants*** in actions brought under the securities laws") (emphasis added); *see also SEC v. Malek*, 397 F. App'x. 711, *714 (2d Cir. 2010) ("this Court has consistently expressed a preference against the liquidation of defendant corporations through the mechanism of federal securities receiverships, as opposed to through the bankruptcy courts"); *Eberhard v. Marcu*, 530 F.3d 122, 132 (2d Cir. 2008) (expressing "***strong reservations***" against using a receivership to liquidate a defendant's estate) (emphasis added). And *third*, the Bankruptcy Code expressly authorizes the Court to assume jurisdiction over claims not presently before it – including the dozens of claims referenced in the SEC's liquidating receivership motion that are pending in ***other*** court and are completely ***unrelated*** to the SEC's civil enforcement action. The SEC's *ad hoc* bankruptcy via liquidating receivership, however, invites the Court to exercise jurisdiction it lacks.

But more importantly, the SEC has made no response – ***none*** – to Defendants' and Mrs. Yue's argument that a formal proceeding conducted under the authority of the Bankruptcy Code is immeasurably better than a liquidating receivership because the formal bankruptcy is subject to well-established rules and procedures that do not exist under the SEC's proposed *ad hoc* bankruptcy. Those rules and procedures are widely known and exist to protect debtors and creditors alike. The SEC does not dispute this. It will be unnecessary for a liquidating receiver to invent the rules on the fly – as the SEC proposes – and equally unnecessary for the Court to vet and approve them ***before*** the proposed *ad hoc* bankruptcy can occur. Again, the SEC does not dispute this. It merely notes that the Bankruptcy Code authorizes the Court to appoint a bankruptcy trustee upon an appropriate showing. ECF No. 293 at 6. itself an additional justification for a formal bankruptcy over the SEC's *ad hoc* version.

The Second Circuit itself sees "no reason why violation of the Securities Act should result in the liquidation of an insolvent corporation via an equity receivership instead of the normal bankruptcy procedures, ***which are much better designed to protect the rights of interested parties***." *Esbitt v. Dutch-American Mercantile Corp.*, 335 F.2d 141, 143 (2d Cir. 1964) (emphasis added). Certainly, the SEC offers no reason why a liquidating receivership should be preferred over a bankruptcy here. The SEC offers no reason for the Court to disregard Second Circuit

Hon. Pamela K. Chen
April 4, 2023
Page 10

authority and find otherwise here.

   Thank you in advance for Your Honor's continuing consideration.  We look forward to answering any questions Your Honor may have at the virtual hearing on April 6, 2023.

        Respectfully yours,

        Mark C. Rifkin
        For the Firm

cc:  All Counsel (via ECF)
   Ms. Xinming Yu (via email and overnight delivery)