

# Quarterly Status Report to the Court Pursuant to Monitor Order Paragraph 22

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Securities and Exchange Commission v. Richard Xia, a/k/a Yi Xia; and Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, LLC, Defendants,

and

Julia Yue, a/k/a Jiqing Yue; Xi Verfenstein; and XinMing Yu, Relief Defendants

21-cv-05350-PKC-LCP

### Introduction

The Monitor submits this quarterly status report in accordance with Paragraph 22 of the Order Appointing Monitor ("Monitor Order")[1] in the above referenced matter (the "Enforcement Action") for the period ending on March 31, 2023 (the "Quarter"). Since his last report, the Monitor continued to focus on the most significant, time sensitive, and urgent needs of Eastern Emerald and Eastern Mirage (collectively, the "Projects") and the investors while working diligently to minimize costs.

### Priority Items

The Monitor's efforts, as detailed below, primarily included, but were not limited to: (i) evaluating site security; (ii) assessing maintenance needs; (iii) continuing to work with Mr. Xia and his counsel to satisfy the accounting required under Section IV of the Court's September 27, 2021 Order ("TRO"); and (iv) evaluating, and where appropriate, processing payment claims of various third-party contractors.

### Site Security

The Monitor continued working to address various issues at Eastern Mirage and Eastern Emerald including the deterioration of fencing and other protective measures designed to keep trespassers out of the properties. This work primarily consisted of numerous site visits, interviewing and vetting potential contractors, meeting with Mr. Xia and his counsel, and negotiating fair and market appropriate pricing.

---

[1] *See* ECF No. 11-1.

Kings Security, Inc. ("Kings") continues to provide 24/7 security guard service protection for Eastern Mirage.[2] In addition, the Monitor successfully identified, screened, and negotiated with Site Fence Systems, Inc. ("SFS") to obtain the required work at a reasonable price to replace the fence at Eastern Emerald.[3] Mr. Xia consented to SFS's retention. SFS is in the process of replacing the fence.

## Berm Maintenance

The Monitor worked with independent vendors to assess the berm, the maintenance that is required/prudent, and the reasonable cost for this work. The Monitor successfully identified, screened, and negotiated with SFS to provide berm maintenance services at Eastern Emerald,[4] and Mr. Xia consented to SFS's retention. The Monitor is coordinating with various parties to move Perini's construction equipment off the Eastern Emerald site to allow SFS to begin its berm maintenance work. The Monitor is also in communication with the DOB regarding berm maintenance issues.

## Accounting Materials

The Monitor previously summarized Defendants' status related to the accounting required by Part IV of the TRO ("Accounting").[5] On February 4, 2023, Mr. Xia provided various financial disclosures on behalf of himself and Relief Defendant Julia Yue.[6] On April 14, 2023, the Monitor filed under seal a detailed account of the communications between his team and Mr. Xia related to

---

[2] *See* ECF No. 206.
[3] *See* ECF No. 233.
[4] *See* ECF No. 267.
[5] Section IV of the TRO requires the accounting to be signed under penalty of perjury by Richard Xia on behalf of each Defendant, and by Relief Defendants in their individual capacities. *See also* ECF No. 294-1 ¶¶ 30-41.
[6] See ECF No. 294-1 ¶¶ 36-41.

the accounting provided to date.[7] The Monitor continues to discuss with Mr. Xia and his counsel what is required to satisfy the Court's Order.

### Payment of Utility Bills

The Monitor and his team worked directly with Consolidated Edison Company of New York, Inc. ("Con Ed") to resolve and pay past due energy bills at Eastern Mirage.[8]

### Payment of Property Taxes

The Monitor assured the timely payment of real property taxes for Eastern Emerald and Eastern Mirage to the New York City Department of Finance.[9]

### Project Violations and Safety Issues

The Monitor and his team continue to be in direct communications with the DOB and the City's Law Department for the purpose of resolving a significant number of the violations under favorable financial terms.

### Status Relating to Paragraphs 8 through 14[10]

The Monitor reviewed documents and information – to the extent Defendants made them available – pertaining to Paragraphs 8 through 14 of the Monitor Order.[11]

**Paragraphs 8-10 (Documents)**. The Monitor's efforts to obtain documents and information from Defendants, and the challenges Defendants and their counsel presented, are detailed in the 11(b) Report, the First Quarterly Status Report, the Monitor's testimony at the Order to Show Cause Hearing, in the Second Quarterly Status Report, and more recently in the Monitor's

---

[7] *See* ECF No. 311.
[8] *See* ECF No. 273.
[9] *See* ECF No. 225.
[10] Monitor Order Paragraph 15 describes the timely access to which the Monitor is to be provided documents and information.
[11] *Id.*

Reply Declaration in support of the SEC's Motion for the Appointment of a Receiver.[12] Due to these challenges, the Monitor demanded the completion of the document production, together with an affidavit from Mr. Xia and other Defendants on or before February 28, 2022, that declares, under penalty of perjury, everything in his/their possession, custody, or control has been produced to the Monitor in response to each enumerated request. As discussed in the Second Quarterly Status Report, Mr. Xia provided the declaration, in which he represented that he provided the Monitor with documents from sections I(1)(d), III(D)(2), III(D)(3), and III(D)(5) of Monitor's First Request for the Production of Documents/Information. Upon review, the Monitor determined that Mr. Xia had not provided the necessary documents to satisfy those requests. The Monitor again asked Mr. Xia to review his documents and materials and provide information sufficient to satisfy these requests as soon as possible. Mr. Xia has still failed to provide most of the information requested.

**Paragraph 11(a) (Finances)**. Defendants previously provided the Monitor with documents and information regarding the rental properties Xia and the Xia Entities own (as also referenced above in connection with the CTBC loan), including the revenue they generate, the associated operational costs, the appraised value, and any outstanding debt. This quarter, Mr. Xia provided the Monitor with certain, limited information regarding his assets and liabilities pursuant to Section IV of the TRO.[13] The Monitor asked Mr. Xia's counsel to provide additional information and/or clarification regarding the ownership and description of certain assets and liabilities, Mr. Xia's income, and Mr. Xia's bank accounts. Mr. Xia's counsel stated that they are working to provide the Monitor with the requested information.

**Paragraph 11(b) (Report)**. The Monitor reported on the status of the Projects, and made his recommendations regarding same, in Sections II and IV of the 11(b) Report.

---

[12] *See* ECF No. 294-1 ¶¶ 33-35.
[13] Mr. Xia did not sign the accounting under the penalty of perjury.

**Paragraph 11(c) (Corporate Transactions)**. The Monitor's review of the historical corporate transactions by Fleet or the Xia Entities – to the extent Defendants provided relevant information – is summarized in Section II of the 11(b) Report.

**Paragraph 11(d) (Historical Compensation)**. Defendants provided the Monitor with only certain historical compensation of Fleet's former Chief Legal Officer, Bret McCabe.[14] The Monitor was unable to verify this information. Defendants did not provide the Monitor with the historical compensation of any other executive officers or affiliates of Fleet and the Xia Entities.

**Paragraph 11(e) (Numerous Law Firms)**. From the time the Court appointed the Monitor on September 27, 2021, Mr. Xia has been represented by *at least* seven (7) law firms: Sullivan & Cromwell LLP, Mukasey Frenchman LLP, WilmerHale, Sills Cummis & Gross P.C., Kameli & Associates, Wolf Haldenstein LLP, and Meyer, Suozzi, English & Klein, P.C.

**Paragraph 11(f) (Financial Statements)**. The Monitor's review of financial statements of Fleet and the Xia Entities – to the extent Defendants provided relevant information – is detailed in Section II of the 11(b) Report.

**Paragraph 11(g) (Meeting Minutes)**. Defendants have not provided the Monitor with any meeting minutes of the Boards of Directors of Fleet and the Xia Entities.

**Paragraphs 11(h)-(i) (Litigations)**. The Monitor's review of litigation involving Fleet and the Xia Entities is summarized in Exhibit A to the 11(b) Report.[15] As previously identified, an additional class action suit, *Jin v. Xia*, was filed against Xia, Yue, and multiple Xia Entities in this Court on February 18, 2022.[16]

---

[14] On February 10, 2022, the Monitor was informed that Bret McCabe would no longer serve as Fleet's Chief Legal Officer.
[15] Monitor's Report Ex. A, ECF No 53-1.
[16] *See Jin v. Xia*, Case No. 1:22-cv-00740-WFK-VMS (E.D.N.Y.).

**Paragraph 11(j) (Leases)**. Defendants have not provided the Monitor with any (proposed) material changes to material leases or real estate holdings of Fleet and the Xia Entities. Nonetheless, as previously reported, the Monitor is aware that Mr. Xia listed Eastern Mirage for leasing through Compass, a real estate broker. As previously reported, the Monitor learned that Mr. Xia listed one of his rental properties located at 133-54 Avery Ave, Queens, NY 11355 for sale for $2,780,000. Upon information and belief, the property was acquired by Xia and Yue in 2004. In February 2023, in connection with his ongoing efforts to satisfy the requirements of Section IV of the TRO, Mr. Xia identified 16 real properties that he, Ms. Yue, and/or a Xia Entity owns. In the accounting Mr. Xia filed with the Court in October 2021,[17] he identified 18 real properties that he, Ms. Yue, and/or a Xia Entity owns. The Monitor has asked Mr. Xia to explain why two properties are missing from his updated financial disclosures, but has yet to receive an answer.[18]

**Paragraph 11(k) (Insurance Information)**. After careful review of the insurance information provided by Defendants, the Monitor determined that the Projects were not adequately insured by either Commercial General Liability or Builder's Risk insurance. The details of the Monitor's analysis are discussed in the Second Quarterly Status Report. As such, the Monitor obtained adequate insurance coverage for Eastern Emerald and Eastern Mirage, which Mr. Xia consented to.

**Paragraph 11(l) (Investor Communications)**. Defendants have not provided the Monitor with any investor-wide communications intended to be sent by Fleet and the Xia Entities to investors.

---

[17] *See* ECF Nos. 19, 20.
[18] The two properties that appear to be absent from Mr. Xia's updated financial disclosure are: (1) 71-48 161st Street, Flushing NY 11365 and (2) 43-45 Byrd Street, Flushing NY 11355.

**Paragraph 12 (Internal Controls)**. Defendants have not provided the Monitor with a final summary report on the internal controls regarding the cash assets of Fleet and the Xia Entities.

**Paragraph 13 (Valuation Reports)**. As previously identified, Defendants provided seven (7) valuation reports regarding the Projects to the Monitor.[19] Notably, most of these appraisals rely largely on assumptions created using statements and numbers provided by Mr. Xia. Additionally, Defendants have not explained how Eastern Emerald and Eastern Mirage could have increased in value by approximately 75% and more than 100% respectively, while, as Defendants represented to the Court, simultaneously deteriorated by millions of dollars.

**Paragraph 14 (Annual Budget)**. Fleet and the Xia Entities have not provided the Monitor with their final annual budget(s).

---

[19] *See* 11(b) Report. § II.E.(iv), ECF No. 53.