UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    -against-<br><br>RICHARD XIA, a/k/a YI XIA, and FLEET NEW YORK METROPOLITAN REGIONAL CENTER, LLC, f/k/a FEDERAL NEW YORK METROPOLITAN REGIONAL CENTER, LLC,<br><br>    Defendants,<br>    -and-<br><br>JULIA YUE, a/k/a JIQING YUE, XI VERFENSTEIN, AND XINMING YU,<br><br>    Relief Defendants. | Case No.: 1:21-cv-05350 (PKC) (JAM)<br><br>**[PROPOSED] ORDER** |

**WHEREAS**, this matter comes before this Court upon the filing of a motion by Intervenor CTBC Bank Corp. (USA) ("CTBC") to Modify the Asset Freeze Order and Appoint a Receiver, pursuant to Rule 66 of the Federal Rules of Civil Procedure (the "Motion");

**WHEREAS**, CTBC extended three mortgage loans to Intervenor-Defendants Manekineko Group LLC, Shangri-La 9F Inc., and Shangri-La Green Inc. (the "Mortgage Borrowers"), collectively worth $6,535,750, on August 12, 2021 (the "Mortgage Loans");

**WHEREAS**, the Mortgage Loans were secured by real property located at 140-22 Beech Avenue, Flushing, NY, units SCA, SCB, 1A, 1B, 1C, 1D, 1E, 1F, 9C, 9D, and 9F (the "Secured Units"), and personal guaranties by Intervenor-Defendant Richard Xia;

**WHEREAS**, CTBC also extended two business loans to Intervenor-Defendants Eastern Emerald Group LLC and Fleet General Insurance Group Inc. (the "Business Loan Borrowers")

on April 9, 2021 and August 9, 2021, respectively, totaling $14.5 million (the "Business Loans");

**WHEREAS**, the Business Loans were secured by time certificates of deposit ("TCDs");

**WHEREAS**, the TCDs and the Secured Units are the subject of the Preliminary Injunction Order Freezing Assets in this Action (ECF Nos. 217);

**WHEREAS**, the Mortgage Borrowers have not sought modification of the prevailing Asset Freeze Order to permit the release of funds to satisfy their debt obligations under the Mortgage Loans;

**WHEREAS**, the Mortgage Borrowers are in significant default under their respective Mortgage Loans with CTBC and have not remitted a single payment of principal or interest to CTBC since the Mortgage Loans were extended;

**WHEREAS**, Business Loan Borrowers have not sought modification of the prevailing Asset Freeze Order to permit the release of funds to satisfy their debt obligations under the Business Loans;

**WHEREAS**, the Business Loan Borrowers are in significant default under their respective Business Loans with CTBC, have not remitted interest payments as and when they became due, and have failed to repay the principal amounts of the Business Loans upon the maturity thereof;

**WHEREAS**, the value of the Secured Units has and continues to deteriorate due to the Mortgage Borrowers' mismanagement of the properties;

**WHEREAS**, the Court has jurisdiction over the subject matter of this action and over the Intervenor Defendants, and venue properly lies in this District;

**WHEREAS**, the Court previously granted CTBC's Motion to Intervene, for the limited

purpose of seeking (i) the release of the Secured Units and TCDs from the prevailing asset freeze order; and (ii) the appointment of a receiver (ECF No. 398);

**WHEREAS,** the Court finding that good and sufficient notice of the Motion having been provided; and the Court having considered the moving papers and the opposition thereto, if any, and the arguments of counsel; and the Court having determined that good cause exists for the entry of this Order.

**IT IS** on this ___ day of _____, 2024, hereby

**ORDERED** that the Motion is **GRANTED**;

**IT IS FURTHER ORDERED** that the Temporary Restraining Order and Preliminary Injunction Order Freezing Assets in this Action (ECF Nos. 95-1, 227) are hereby modified to (i) release real property located at the following address: 140-22 Beech Avenue, units SCA, SCB, 1A, 1B, 1C, 1D, 1E, 1F, 9C, 9D, and 9F, Flushing, New York, as further described in **Exhibit 1** annexed hereto (the "Secured Units"); (ii) release the TCD accounts assigned to CTBC by Fleet General Insurance Group, Inc. and Eastern Emerald Group LLC, as further described in **Exhibit 2** annexed hereto (the "TCD Accounts"); and (iii) permit CTBC to exercise its rights with respect to the Secured Units, the TCD Accounts, and the other collateral secured thereby, in accordance with the documents, instruments and agreements evidencing, securing or relating to the Mortgage Loans (the "Mortgage Loan Documents") and in accordance with the documents, instruments and agreements evidencing, securing or relating to the Business Loans (the "Business Loan Documents", and together with the Mortgage Loan Documents, the "Loan Documents").

**IT IS FURTHER ORDERED** that Ian V. Lagowitz of Trigild IVL, maintaining an office at 24 Church Street, Montclair, New Jersey 07042, or, alternatively, an individual to be

selected by the Court (the "CTBC Receiver") is hereby appointed as the receiver of the Secured Units.

**IT IS FURTHER ORDERED** that Mortgage Borrowers and their agents charged with operating and/or managing the Secured Units shall immediately surrender possession and control of the Secured Units to the CTBC Receiver, including the originals of all leases and other contracts and agreements relating to the Secured Units.  All such documents shall be submitted to the CTBC Receiver within ten (10) business days of this Order.

**IT IS FURTHER ORDERED** that the CTBC Receiver shall take immediate possession of, hold, secure, take charge of, preserve, protect, use, operate, maintain, and manage, to the exclusion of all others, the following assets and properties of the Mortgage Borrowers (collectively, the "Mortgage Borrowers' Assets"):

a.    The Secured Units and all personal property and fixtures associated therewith.

b.    All non-privileged documents, instruments, agreements and materials in Mortgage Borrowers' and/or their agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, financing, operation, preservation and protection of the Mortgage Borrowers' Assets, including, without limitation, all service agreements, contracts, licenses, permits, floor plans, space plans, specifications, surveys, maps, and drawings of the Secured Units, access codes, combinations, passwords with respect the Secured Units, maintenance and testing records with respect to mechanical systems, fire life safety systems, plumbing systems, or other systems for which Mortgage Borrowers have had maintenance or repair obligations since August 1, 2021.

c.    All checking, savings, depository, payroll, vendor, petty cash or other

accounts relating to the Secured Units except for the ones directly held or actually controlled by CTBC, together with all funds contained therein (collectively, the "Property Accounts").

d.      All rents, payments, revenues, refunds and other income from, relating to or derived from the Secured Units received on or after the date of this Order (the "Property Income").

e.      All security, utility, prepayments and other deposits received by Mortgage Borrowers and/or their agents after the date of this Order and any deposits made by any Mortgage Borrower to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Secured Units (collectively, the "Property Deposits").

f.      All past and/or current leases, subleases, licenses, lease and/or license guarantees, tenant notices, lease amendments, side agreements, and/or easement agreements in Mortgage Borrowers' or their agents' possession or control relating to the use or occupancy of the Secured Units (collectively, the "Leases").

**IT IS FURTHER ORDERED** that Mortgage Borrowers and their agents charged with operating and/or managing the Secured Units shall deliver to the CTBC Receiver and CTBC, within ten (10) business days after the date of this Order the following:

a.      An accounting of all Property Income, all Property Expenses (as defined below), whether paid with Property Income or by any Mortgage Borrower for the benefit of the Secured Units, all Property Accounts and all Property Deposits for the period beginning from and after August 1, 2021, to the date of this Order.

b.      An updated rent roll dated as of the date of this Order identifying for each of the Secured Units, regardless of whether such Secured Unit is vacant or occupied and whether

such Secured Unit is subject to a Lease which is currently in effect; the term, space occupied, rent required to be paid, security deposit paid, any rental concessions, commencement date, expiration date, options to renew/expend/purchase, expense recovery provisions, and identifying any default or payment delinquencies under any Lease currently in effect.  Such updated rent roll shall also detail the status of any Lease, which was in effect as of August 1, 2021 but which is now no longer in effect for any reason, including the reasons why such Lease is no longer in effect;

c.       Monthly operating statements prepared for each calendar month for the months of August 2021 through and including the present month, and year-to-date operating statements, each of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period and each of which shall also be certified true and correct by Mortgage Borrowers or their agents charged with operating the Secured Units.

d.       An accounting for all Property Income generated by the Secured Units from and after August 2021 to the date of this Order which was not applied to the standard and customary expenses of the Secured Unit or delivered to CTBC.

e.       All Property Income generated by the Secured Units from and after the date of this Order which was not applied to the standard and customary expenses of the Secured Unit or delivered to CTBC.

f.       An itemization of all unpaid bills, taxes, and other amounts due and payable relating to the Secured Units, together with all bills, invoices and other writings evidencing or relating thereto, which unpaid bills and other amounts due shall remain the sole obligation and responsibility of Mortgage Borrowers.  Unless otherwise provided herein, the CTBC Receiver shall not be responsible for payment of any expenses, utility bills, and any other

unpaid expenses incurred by, or for the benefit of, the Secured Units prior to the CTBC Receiver's taking possession of the Secured Units. The CTBC Receiver shall request that all utilities companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone not discontinue any services being provided to the Secured Units. Mortgage Borrowers and their agents shall cooperate and provide assistance to the CTBC Receiver in furtherance of such requests. The CTBC Receiver is authorized to open new customer accounts with each utility that provides services to the Secured Units, or to require Mortgage Borrowers to name the CTBC Receiver as an authorized user of any of the existing utility accounts for the Secured Units.

**IT IS FURTHER ORDERED** that the CTBC Receiver is authorized and directed to demand, collect and receive from all tenants, lessees, subtenants, sublessees, licensees, occupants or other users of all or any part of the Secured Units (collectively, "Tenants") under any prior or current Leases, and all other person or persons liable therefore, all rents and other amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder. All Tenants are authorized to pay the CTBC Receiver all rents and other amounts and consideration now due and unpaid under any prior or current Leases or hereafter to become fixed or due thereunder.

**IT IS FURTHER ORDERED** that the CTBC Receiver is hereby authorized and directed to lease, rent and license the Secured Units on such terms and conditions as may be approved in writing by CTBC, provided, however, that all proposed leases for a term in excess of one year are to be approved in writing by CTBC and Mortgage Borrowers, or upon further Order of this Court.

**IT IS FURTHER ORDERED** that all funds in any account maintained by the CTBC

Receiver pursuant to this Order shall remain collateral for the Mortgage Loans and/or the Business Loans, as applicable, pursuant to the applicable Loan Documents and shall be paid to CTBC or its assignee or designee upon the earliest to occur of (i) the consummation of the foreclosure and sale (or acceptance of a Deed-in-Lieu of Foreclosure) of the Secured Units or any other realization upon the collateral secured by the Mortgage Loans and/or the Business Loans; or (ii) further Order of this Court.

**IT IS FURTHER ORDERED** that the CTBC Receiver is authorized and directed to: (i) deposit or cause to be deposited all income and other funds and monies received by it pursuant to this Order in a segregated account in the CTBC Receiver's name and referencing the instant case, in a national, FDIC-insured bank; and (ii) make available by electronic means or by means as otherwise determined by the CTBC Receiver and as allowed under this Order copies of the monthly bank statements relating to such accounts for the parties' review and inspection.

**IT IS FURTHER ORDERED** that the CTBC Receiver is authorized and directed to use the Property Income and all other funds and monies coming into the CTBC Receiver's hands pursuant to this Order (other than Property Deposits) as follows:

a.      first, to the CTBC Receiver toward payment of the CTBC Receiver's fees as set forth on **Exhibit 3** attached hereto and incorporated herein;

b.      second, to the reasonable costs and expenses incurred by the CTBC Receiver in the performance of the CTBC Receiver's duties in accordance with this Order;

c.      third, to the payment of all monthly costs, expenses, payments and other monetary obligations and liabilities of the Secured Units, specifically including, without limitation, all real and personal property taxes and assessments and all insurance premiums relating to the Secured Units arising, in each case, from and after the date of this Order and being

reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect Mortgage Borrowers' Assets in accordance with this Order (collectively, "Property Expenses"), provided, however, that the CTBC Receiver shall not expend in excess of $5,000.00 for any single repair, replacement or capital improvement without the prior written approval of CTBC and shall not expend in excess of $100,000.00 without the prior written approval of CTBC or upon Order of this Court, and provided further, however, that the CTBC Receiver may, only upon the prior written approval of CTBC, use Property Income to pay Property Expenses arising prior to the date of this Order; and

      d.     last, all remaining Property Income, funds and monies (collectively, "Excess Funds"), except for a reasonable receiver's reserve if approved in advance and in writing by CTBC, to CTBC for application against the outstanding expenses, interest, principal, and other amounts owed by Mortgage Borrowers under the Mortgage Loan Documents, with such Excess Funds to be applied by CTBC in such order and manner in CTBC's sole discretion.

**IT IS FURTHER ORDERED** that if the CTBC Receiver determines at any time, and from time to time, that the amount of Property Income then in the possession of the CTBC Receiver, or which the CTBC Receiver anticipates will be in the possession of the CTBC Receiver when required, is insufficient to pay any expenses described in subparagraphs (a) through (c) of the preceding paragraph, then the CTBC Receiver shall promptly notify CTBC thereof and of the amount of such deficit, whereupon CTBC shall have the right, but not the obligation, to advance to the CTBC Receiver funds to pay all or any portion of such deficit subject to the terms of the Mortgage Loan Documents, however no such amount advanced by CTBC shall render or shall be deemed to render CTBC a mortgagee in possession of the Secured Units or otherwise subject CTBC to any liability to Mortgage Borrowers under the Mortgage

Loan Documents or otherwise.

**IT IS FURTHER ORDERED** that the CTBC Receiver is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary for: (a) the proper management, operation, preservation and protection of the Secured Units and the Mortgage Borrowers' Assets or to gain or recover possession of all or any part thereof; (b) the collection of any Property Income now due or hereafter to become due or fixed; and (c) the removal of any Tenant or other person unlawfully possessing, occupying or using any part of the Secured Units.

**IT IS FURTHER ORDERED** that the CTBC Receiver is authorized to use the tax identification number of Mortgage Borrowers with respect to the Secured Units for banking purposes. The CTBC Receiver shall not prepare or file state or federal tax returns on behalf of Mortgage Borrowers, and shall not be responsible for paying any unpaid federal or state taxes on behalf of Mortgage Borrowers.

**IT IS FURTHER ORDERED** that on or before the twenty-fifth (25th) day of each calendar month, the CTBC Receiver shall provide by electronic means or by means otherwise determined by the CTBC Receiver and as allowed under this Order monthly financial reports for the immediately preceding month to CTBC (with a copy to Mortgage Borrowers) concerning the operations, income and expenses of the Secured Units, together with a rent roll for the Secured Units dated as of the end of each such month stating the name of each Tenant and the rent, income and other consideration to be paid by each such Tenant.

**IT IS FURTHER ORDERED** that, to the written consent of CTBC or upon approval of the Court, the CTBC Receiver is authorized to engage accountants and attorneys, as needed in the reasonable discretion of the CTBC Receiver, to advise the CTBC Receiver with regard to financial and legal matters relating to Mortgage Borrowers' Assets, to prepare financial

statements and reports required under this Order, to initiate carry on and maintain such actions, suits and proceedings for and on behalf of the CTBC Receiver as may be necessary for the CTBC Receiver to carry out its duties and responsibilities under this Order and as otherwise may be reasonably required by the CTBC Receiver. Upon the approval of CTBC of the reasonable fees and expenses of such accountants and attorneys, the CTBC Receiver shall be authorized to pay such fees and expenses as Property Expenses.

  **IT IS FURTHER ORDERED** that:

   a. The CTBC Receiver, with Mortgage Borrowers' cooperation, shall cause all insurance policies currently insuring or otherwise relating to the Secured Units and/or to the ownership, maintenance, repair, improvement, management, leasing, use, preservation or protection of the Secured Units to be endorsed to name the CTBC Receiver and the CTBC Receiver's agents, employees and contractors as additional insureds or as a loss payees (as applicable) thereunder, all as their respective interests may appear.

   b. Mortgage Borrowers shall deliver to the CTBC Receiver and CTBC all material communications received by Mortgage Borrowers from the issuer of any such insurance policies, including, without limitation, cancellation notices, default notices, any pending or ongoing insurance claims, potential claims that have not yet been filed, and anything that requires a response, as well as any information, notices or documentation concerning any completed or pending tax appeals related to the Secured Units.

   c. The CTBC Receiver is authorized to obtain from Mortgage Borrowers' insurance carrier the industry standard insurance protections afforded property managers of similarly situated properties, including but not limited to, being named as an additional insured on Mortgage Borrowers' liability policies related to the Secured Units and receiving from

Mortgage Borrowers' liability insurance policies, property insurance policies and business interruption or rent loss insurance policies appropriate waiver of subrogation clauses, pursuant to which Mortgage Borrowers' insurance carriers would waive all rights of subrogation against the CTBC Receiver with respect to losses payable under such policies.

d.      The CTBC Receiver is authorized and directed to maintain in full force and effect all such insurance policies and, if and when necessary upon expiration or termination of such currently existing policies, to procure and pay the premiums for comparable insurance policies relating to the Secured Units with such types of coverages, in such amounts and issued by such companies as are specified in the Mortgage Loan Documents, or otherwise as may be approved by CTBC.

e.      Except as provided herein, Mortgage Borrowers and its agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Secured Units that are in effect as of the date of this Order without the consent of CTBC and/or the CTBC Receiver.

**IT IS FURTHER ORDERED** that, subject to the restrictions of this Order, the CTBC Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the CTBC Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Mortgage Borrowers' Assets, including, without limitation, the Secured Units and otherwise to carry out the CTBC Receiver's obligations under this Order.

**IT IS FURTHER ORDERED** that in holding, retaining, managing, operating, preserving and protecting the Mortgage Borrowers' Assets, the CTBC Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing,

brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Mortgage Borrowers' Assets, including, without limitation, the Secured Units.

**IT IS FURTHER ORDERED** that notwithstanding anything in this Order to the contrary, the CTBC Receiver shall, with prior written approval from CTBC, have the authority to (i) sell all or part of the Secured Units in accordance with 28 U.S.C. §§ 2001, 2002; and (ii) engage broker(s) and related professionals to market the Secured Units for sale.  The final sale of any Secured Unit must be approved by CTBC.

**IT IS FURTHER ORDERED** that nothing stated herein shall preclude CTBC from proceeding with and exercising any and all available rights and remedies under the Loan Documents, including, without limitation, exercising its rights as holder of security title to the Mortgage Borrowers' Assets and Business Loan Borrowers' TCD Accounts and as a secured creditor under the Loan Documents under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should CTBC so elect. CTBC shall notify the CTBC Receiver of any such sale or other exercise of CTBC's rights and/or remedies under the Mortgage Loan Documents, and the CTBC Receiver shall cooperate with CTBC in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements provided that none of such documents, instruments or agreements subject the CTBC Receiver to any personal liability.

**IT IS FURTHER ORDERED** that any proceeds generated by any sale as described in

the preceding two paragraphs shall be used to pay off all sums due and payable to CTBC under the Mortgage Loan Documents.  Any surplus monies remaining after the foreclosure, i.e., proceeds of the foreclosure which are in excess of the amounts necessary to pay off all sums due and payable to CTBC under the Mortgage Loan Documents, shall be deposited into separate, segregated, accounts in each Mortgage Borrower's name, for the amount generated by the sale of each Secured Unit, and shall reference the instant case.  These surplus funds, together with any interest and income earned thereon, shall be subject to the Freeze Order until further order of the Court.

**IT IS FURTHER ORDERED** that if and when foreclosure proceedings against the Secured Units shall have been consummated, or upon execution and delivery by Mortgage Borrowers and acceptance by CTBC of a deed in lieu of foreclosure for the Secured Units, or upon payment of all sums due and payable to CTBC under the Loan Documents in full, and without further order of this Court, the CTBC Receiver shall within 30 days of such occurrence move the Court to be discharged and relieved from this Order and shall render a final report to the Court, to CTBC and to Defendants concerning the operations of Mortgage Borrowers' Assets. The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents. This Court expressly retains continuing jurisdiction over this receivership until after the rendition of the final report by the CTBC Receiver and the entry of an order discharging the CTBC Receiver.

**IT IS FURTHER ORDERED** that the CTBC Receiver is required to submit proof of a receiver's bond with the Clerk of this Court in the amount of $50,000.00 within ten (10) business days of this Order. Upon the CTBC Receiver's submission of proof of a receiver's bond, the CTBC Receiver shall be authorized and empowered to perform its duties under this Order,

including taking control of Mortgage Borrowers' Assets.

**IT IS FURTHER ORDERED** that in addition to the powers and instructions expressly set forth in this Order, the CTBC Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Secured Units and the Mortgage Borrowers' Assets and otherwise to comply with the terms of this Order.

**IT IS FURTHER ORDERED** that in the event that a bankruptcy case is filed by any Mortgage Borrower during the pendency of the receivership created by this Order, the Mortgage Borrower must give notice of same to this Court, to all parties, and to the CTBC Receiver, within 24 hours of the bankruptcy filing.

**IT IS FURTHER ORDERED** that upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the CTBC Receiver shall do the following:

a. Immediately contact CTBC, and determine whether that party intends to move in the Bankruptcy Court for an order for both: (i) relief from the automatic stay or motion to dismiss and (ii) relief from the CTBC Receiver's obligation to turn over the Mortgage Borrowers' Assets (11 U.S.C. § 543). If CTBC indicates no intention to file such a motion within 10 days, then the CTBC Receiver shall immediately turn over the Mortgage Borrowers' Assets (to the trustee in bankruptcy, or if one has not been appointed, then to Mortgage Borrowers), and otherwise comply with 11 U.S.C. § 543.

b. If CTBC notifies the CTBC Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the CTBC Receiver is authorized to remain in possession and preserve the Mortgage Borrowers' Assets pending the outcome of those motions pursuant 11 U.S.C. § 543(a). During this period, the CTBC Receiver's authority to

preserve the Mortgage Borrowers' Assets is limited as follows: The CTBC Receiver may continue to collect rents, issues, and profits. The CTBC Receiver may make disbursements, but only those which are necessary to preserve and protect the Mortgage Borrowers' Assets. The CTBC Receiver shall not execute any new leases or other long-term contracts. The CTBC Receiver shall do nothing that would effect a material change in circumstances of the Mortgage Borrowers' Assets.

   c.  The CTBC Receiver is authorized to retain legal counsel to assist the CTBC Receiver with the bankruptcy proceedings.

  **IT IS FURTHER ORDERED** that this Order shall be, and is, binding upon each of the Mortgage Borrowers and Business Loan Borrowers, and each of their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise.

  **SO ORDERED.**

            _____
            Honorable Pamela K. Chen U.S.D.J.

# **<u>EXHIBIT 1</u>**

Property Description for 140-22 Beech Avenue, Units 1A & 1C, Queens, NY 11355:

COMPOSITE DESCRIPTION:

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN BOROUGH AND COUNTY OF QUEENS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF BEECH AVENUE, DISTANT 149.03 FEET NORTHEASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHEASTERLY SIDE OF BEECH AVENUE WITH THE NORTHEASTERLY SIDE OF KISSENA BOULEVARD;

RUNNING THENCE SOUTHEASTERLY AT RIGHT ANGLES TO THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 95 FEET;

THENCE NORTHEASTERLY PARALLEL WITH THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 100 FEET;

THENCE NORTHWESTERLY AGAIN AT RIGHT ANGLES TO THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 95 FEET;

THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 100 FEET TO THE POINT OR PLACE OF BEGINNING.

FOR INFORMATION ONLY:   Said premises also known as 140-22 Beech Avenue, Unit 1A & 1C, Queens, NY 11355.

Property Description for 140-22 Beech Avenue, Units 9C, 9D, & 9F, Queens, NY 11355:

COMPOSITE DESCRIPTION - ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH AND COUNTY OF QUEENS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF BEECH AVENUE, DISTANT 149.03 FEET NORTHEASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHEASTERLY SIDE OF BEECH AVENUE WITH THE NORTHEASTERLY SIDE OF KISSENA BOULEVARD;

RUNNING THENCE SOUTHEASTERLY AT RIGHT ANGLES TO THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 95 FEET;

THENCE NORTHEASTERLY PARALLEL WITH THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 100 FEET;

THENCE NORTHWESTERLY AGAIN AT RIGHT ANGLES TO THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 95 FEET;

THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 100 FEET TO THE POINT OR PLACE OF BEGINNING.

FOR INFORMATION ONLY:   Said premises also known as 140-22 Beech Avenue, Unit 9C, 9D & 9F, Queens, NY 11355.

Property Description for 140-22 Beech Avenue, Units SCA, SCB, 1B, 1D, 1E, & 1F, Queens, NY 11355:

COMPOSITE DESCRIPTION: ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN BOROUGH AND COUNTY OF QUEENS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY SIDE OF BEECH AVENUE, DISTANT 149.03 FEET NORTHEASTERLY FROM THE CORNER FORMED BY THE INTERSECTION OF THE SOUTHEASTERLY SIDE OF BEECH AVENUE WITH THE NORTHEASTERLY SIDE OF KISSENA BOULEVARD;

RUNNING THENCE SOUTHEASTERLY AT RIGHT ANGLES TO THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 95 FEET;

THENCE NORTHEASTERLY PARALLEL WITH THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 100 FEET;

THENCE NORTHWESTERLY AGAIN AT RIGHT ANGLES TO THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 95 FEET;

THENCE SOUTHWESTERLY ALONG THE SOUTHEASTERLY SIDE OF BEECH AVENUE, 100 FEET TO THE POINT OR PLACE OF BEGINNING.

FOR INFORMATION ONLY:   Said premises also known as 140-22 Beech Avenue, Units SCA, SCB, 1B, 1D, 1E and 1F, Queens, NY 11355.

# EXHIBIT 2

# TO BE FILED UNDER SEAL

# EXHIBIT 3

## RECEIVERSHIP FEE SCHEDULE

**Receivership Fee**: $350/hour (minimum $2,500/month), as well as reimbursements for all out of pocket expenses, accounting fees, and court costs.