

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 Pearl Street, Suite 20-100
New York, NY 10004-2616

New York
Regional Office

May 3, 2024

**VIA ECF**
The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East, Chambers N 631
Brooklyn, NY 11201

Re:   *SEC v. Richard Xia, et al.*, 21-cv-5350 (E.D.N.Y.)

Dear Judge Chen:

    Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this letter opposing the April 29, 2024, letter by Defendant Richard Xia ("Xia") requesting that the Court "consider vacating and or modifying" the Court's December 8, 2022 Preliminary Injunction Freezing Assets ("Preliminary Injunction") and order the transfer of $717,940.40 from the client escrow account of one of Xia's former law firms, Meyer, Suozzi, English & Klein, P.C. ("MSEK"), to Xia's newest counsel, Hantman & Associates LLP ("Hantman"), to pay fees for Hantman to represent Xia and entities owned by Xia in certain private lawsuits brought against them ("Fees Request").  The Fees Request does not meet the requirements for a carve-out from the Preliminary Injunction, either under the terms of the Preliminary Injunction itself or applicable law, and, therefore, the SEC opposes it.

    On September 21, 2021, the Court issued a temporary restraining order "freezing Defendants' assets, up to the amount of $229 million" and, on the parties' consent, the temporary restraining order was continued through the Court's ruling on the SEC's motion for a preliminary injunction.  (*See* ECF No. 11 ("TRO"); 2/23/2022 ECF Text Order.)  On December 8, 2022, the Court issued the Preliminary Injunction imposing an asset freeze "that covers all of Defendants' assets and Relief Defendants' residential properties."  (ECF No. 216 at 1.)  In the Preliminary Injunction, the Court stated that it would consider applications for a carve-out from the asset freeze for "reasonable payments of legal fees, living expenses, and other good reasons" if Defendants met certain pre-conditions for such a carve-out, including providing a full accounting of their assets and liabilities to the Monitor, demonstrating that the funds to be released are "not derived from or associated with any alleged fraud," and providing "appropriate documentation of these expenses" showing that the expenses are "legitimate, proper, and not excessive."  (*See* 2/4/2024 ECF Text Order (quoting Preliminary Injunction).)

    In June and July 2022, Xia, in violation of the TRO, obtained $2.3 million by mortgaging certain properties and transferred $850,000 of those mortgage proceeds to an MSEK client escrow account.  (*See* ECF No. 235-1 at 10-11 (discussing transfers); ECF No. 235-6 at 10, 11 (detailing transfers of funds to law firms).)  On January 6, 2023, MSEK filed a motion requesting

a carve-out from the Preliminary Injunction to allow it to use those funds for legal fees, but MSEK subsequently withdrew that motion. (ECF Nos. 230, 236.) Since then, a majority of the $850,000—which is subject to the Preliminary Injunction—has remained in MSEK's client escrow account. (*See* ECF No. 421 (Letter from MSEK to Hon. P. Chen, dated May 1, 2024), at 1 (stating that MSEK holds Xia funds in an escrow account).)

Xia now seeks an order transferring the funds from the MSEK client escrow account to Hantman to be used for an unspecified amount of legal fees that will be incurred if and when Hantman appears on Xia's behalf in several private litigations. The Fees Request does not satisfy the Preliminary Injunction's requirements for a carve-out. First, as the Court has noted repeatedly, Xia has not provided a full, sworn accounting to the Monitor. (*See* 4/17/2023 ECF Text Order (denying request for release of funds); 2/4/2024 ECF Text Order (same).) The Fees Request fails to show that this issue has been resolved; indeed, SEC counsel understands that it has not. While the Fees Request attaches a previously-unfiled, unsworn declaration from Xia dated February 28, 2022—which omits language required by 28 U.S.C. § 1746 stating that the declaration is made under the penalty of perjury—that purports to describe certain documents provided by Xia to the Monitor on or before February 28, 2022, the Court has already found that, as of that date, Xia had not provided a full accounting to the Monitor. (*See, e.g.*, 4/23/2023 ECF Text Order (finding that, as of April 23, 2023, Defendants and Relief Defendants had not yet given "a full accounting of their assets and liabilities to the Monitor").) The Fees Request says nothing of any accounting provided by Xia to the Monitor after February 2022. Additionally, other than a blanket request that more than $700,000 be transferred to Hantman, the Fees Request includes no detail concerning the amount of the expenses for which a carve-out is sought, or any showing that such expenses are legitimate, proper, and not excessive. Nor does the Fees Request demonstrate that the funds in the MSEK client escrow account are not derived from or associated with any alleged fraud. This information is necessary to evaluate the Fees Request and, without it, the request should be denied.

The Fees Request is also contrary to applicable law. "In deciding whether to grant a fee request, the Court considers whether 'the interests of investors in preserving assets for later restitution are outweighed by the interests of Defendant[] in paying legal fees and costs.'" (*See* 2/4/2024 ECF Text Order (quoting *SEC v. Wojeski*, No. 10-cv-457 (GLS/DRH), 2011 WL 13136029, at *2 (N.D.N.Y. Feb. 11, 2021)) (cleaned up).) On February 4, 2024, the Court denied a request for funds to pay legal fees by another of Xia's counsel because that request was not in the best interest of investors. (*Id.*) There, the Court recognized that the value of Defendants' assets currently subject to the asset freeze is uncertain and that, if funds were released to pay legal fees, it is "unclear whether sufficient funds would remain to compensate the investors and cover prejudgment interest." (*Id.*) The Court therefore held that investors' interests were best served by continuing to "maintain the frozen assets currently under the Preliminary Injunction Order without diminution before this action is fully resolved." (*Id.*) That reasoning continues to apply. The Fees Request suggests that if Xia is unrepresented in the private actions, then default judgments in those actions may "threaten[] the completion of the projects" and adversely affect investors. (Fees Request at 2.) The SEC disagrees. If the parties' settlement in principle is authorized by the Commission and submitted to and approved by the Court (events that, if they occur, we anticipate happening within the next three weeks), then the investors' financial and other interests are likely to be protected by the settlement terms. Moreover, it is not clear that the private litigations referred to in the Fees Request will have more

than a minimal impact on the EB-5 projects. For example, in certain of those actions, the plaintiffs seek relief from Xia in his personal capacity or from entities that are not related to the projects; in other actions, the plaintiffs seek damages in amounts that are relatively small in comparison to the total amount Defendants fraudulently raised from investors; and, in at least three of the actions, Xia appears to be currently represented by counsel.[1] Thus, the collective interests of investors here are better served by maintaining the asset freeze, rather than releasing funds for Xia to pay legal fees to litigate these actions.

Finally, SEC counsel is in the process of presenting the parties' settlement in principle to the five-member Commission for its review and consideration. Given the impact that the settlement, if authorized by the Commission and submitted to and approved by the Court, would have on the rights and interests of investors and the fact that the parties are likely to know within three weeks whether a settlement will be consummated, we believe it is prudent to withhold the release of any funds at least until the SEC provides its Court-ordered status update regarding the settlement by May 24.[2]

Respectfully submitted,

/s/ Christopher M. Colorado
Christopher M. Colorado
David Stoelting
Kim Han
Securities and Exchange Commission

*Attorneys for Plaintiff*

---

[1] *See, e.g.*, *Forever 888 LLC, et al. v. Xia, et al.*, No. 702600/2018 (N.Y. Sup. Ct. Queens Cty.), Dkt. No. 1 (Verified Complaint) (seeking an order compelling Xia's and another individual's specific performance of a contract to sell a private residence); *N.Y.S. Energy Res. and Dev. Auth. v. Fleet Financial Grp.*, 900743-18 (N.Y. Sup. Ct. Albany Cty.), Dkt. No. 3 (Status Update) (stating that plaintiff seeks damages of approximately $27,000); *United Rentals (N. Am.), Inc. v. Eastern Emerald Grp., LLC*, et al., No. 705168/2018 (N.Y. Sup. Ct. Queens Cty.), Dkt. No. 1 (Complaint) (seeking damages of approximately $40,000); *ADP Totalsource v. Fleet Fin. Grp., Inc.*, 716704/2022 (N.Y. Sup. Ct. Queens Cty.), Dkt. No. 2 (Complaint) (seeking damages of approximately $71,000); *Decorama Bldg. & Plumbing Supply, Inc. v. X-Treme Concrete, Inc.*, 710436/2016 (N.Y. Sup. Ct. Queens Cty.), Dkt. No. 1 (Verified Complaint) (seeking damages of approximately $233,000).

[2] As the SEC has noted previously, Defendants appear to owe substantial legal fees to a number of law firms and, as the Court recognized previously, a formal and orderly process for those law firms to submit claims for fees may be appropriate, rather than approving one-off requests for legal fees. (*See* 2/4/2024 ECF Text Order.)