UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

- against -

RICHARD XIA, a/k/a YI XIA; and FLEET
NEW YORK METROPOLITAN REGIONAL
CENTER, LLC, f/k/a FEDERAL NEW YORK
METROPOLITAN REGIONAL CENTER,
LLC,
                Defendants,

- and -

JULIA YUE, a/k/a JIQING YUE; XI
VERFENSTEIN; and XINMING YU,

                Relief Defendants.
-------------------------------------------------------x

**ORDER**
21-CV-5350 (PKC) (JAM)

PAMELA K. CHEN, United States District Judge:

        The Court is in receipt of the Notice of Appearance (Dkt. 419) and attorney's fee request (Dkt. 420) filed by Hantman & Associates ("Hantman") on behalf of Defendant Richard Xia ("Xia"), which is not Xia's counsel in this action, but instead represents Xia and his affiliated companies in, *inter alia*, a separate but related case, *Molina v. Xia, et al.*, 22-CV-864 (PKC) (JAM), that also is pending before this Court.

        Hantman—after Xia's counsel in this action refused to file the instant request on behalf of Hantman and without first seeking the Court's permission to appear as counsel in this case— entered a notice of appearance seeking to secure a carve-out from the Court's December 8, 2022 Preliminary Injunction Freezing Assets ("PI Order") for payment of legal fees that accrued and will be incurred in *Molina* and other cases. (*See generally* Dkt. 420.) While Hantman should have

sought such permission before appearing in the instant case, the Court will allow Hantman's entry of appearance in this case for the *sole* and limited purpose of filing Xia's fee request for the *Molina* case. (*Cf.* 1/3/2023 Docket Order (denying limited-appearance request of Relief Defendants' putative counsel where counsel had not yet been retained and was seeking "an *advisory opinion* from the Court about the release of frozen funds to pay attorneys' fees").)

In his *Molina*-related fee request, Xia asks the Court to "consider vacating and[/]or modifying part of [the PI Order], and authorize the transfer of legal fees from the escrow account of [Meyer Suozzi, English & Klein, P.C. ("Meyer Suozzi")][1] to [Hantman] to be used in connection with defending [Xia in *Molina* and other matters.]" (Dkt. 420, at 1.) Both Meyer Suozzi and the SEC oppose Xia's fee request. (*See generally* Dkts. 421, 423.) For the reasons set forth below, as well as for the additional reasons stated in: (1) the Court's July 25, 2022 Docket Order; (2) the Court's December 8, 2022 Memorandum and Order (Dkt. 216); (3) the Court's February 4, 2024 Docket Order; (4) Meyer Suozzi's response letter (Dkt. 421); and (5) the SEC's response letter (Dkt. 423), particularly in light of the fact that SEC counsel is in the process of presenting the parties' settlement in principle to the five-member Commission for its review and consideration and that the parties are likely to know within less than three weeks whether a settlement will be consummated (*see id.* at 3), Xia's fee request is denied. Furthermore, given that the fee request is denied and that Hantman does not represent Xia in this case, the Court terminates Hantman's limited appearance in the instant action.

Initially, to avoid any doubt or confusion in the future, the Court clarifies that any remaining amount of the legal retainer currently being held by Meyer Suozzi in its escrow account

---

[1] Meyer Suozzi is one of Xia's former counsel in the instant case and various state court cases, and is keeping in escrow a portion of the retainer that Xia initially paid the firm. (*See generally* Dkt. 421, at 1.) As discussed below, those funds are frozen assets under the PI Order.

2

is subject to the PI Order. While Xia and Hantman seemingly concede this fact (*see* Dkt. 420, at 2 ("We also understand that the remaining amount of this retainer may be subject to the [PI Order] that freezes all of [Xia's and Fleet New York Metropolitan Regional Center LLC's ("Defendants")] assets and Relief Defendants' residential properties."); *id.* at 1 ("[W]e respectfully request that the Court consider vacating and[/]or modifying part of [the PI Order[.]"])), they appear to contest the scope of the PI Order by suggesting that the legal funds at issue here are "pre-EB-5 assets" and therefore not subject to the PI Order. (*See id.* at 3; Dkt. 424, at 1–2.) In support, Xia cites to, *inter alia*, a declaration of Xia's former counsel Mark Rifkin that recounts this Court's purported representation during the June 28, 2022 Settlement Conference concerning the scope of the Court's *September 27, 2021 Temporary Restraining Order ("TRO")*. (*See* Dkt. 420, at 3 ("[I]n the Declaration of [Xia's] former counsel, Mark Rifkin of Wolf Haldenstein LLP, he points out that, during the Court-supervised mediation on June 28, 2022, 'the Court expressed its own uncertainty about whether the pre-EB-5 investment properties were subject to the [TRO] at all.'" (citations omitted)); Dkt. 424, at 2.) Putting aside the fact that this contention is meritless (*see, e.g.*, Mem. & Order, Dkt. 216, at 64 ("The Court likewise rejects Defendants' and Relief Defendants' argument that rental properties that pre-dated the fraud should be *released* from the [TRO] because the SEC is over-secured." (emphasis added)); 6/30/2022 Docket Order ("[T]he parties shall advise the Court . . . whether they have reached agreement on Defendants' request to *release* the rental properties that [] Xia acquired before soliciting or obtaining EB-5 investor funds from the [TRO]." (emphasis added))), if not self-serving (*contra* SEC's Receivership Mot., Dkt. 235-1, at 10 ("At the settlement conference on June 28, 2022, Xia's counsel asked the Court to *release* the rental units from the scope of the [TRO.]" (emphasis added))), the Court finds Xia's argument simply inapposite. Mark Rifkin's statement that Xia is relying upon was in fact a

3

response to the SEC's receivership motion concerning the appropriate scope of the TRO, *not* the PI Order.  As Meyer Souzzi correctly recognizes, the PI Order is a "complete asset freeze" that "covers all of Defendants' assets and Relief Defendants' residential properties."  (Mem. & Order, Dkt. 216, at 69, 70; *see* PI Order, Dkt. 217, Part I, at 3; *see also* Dkt. 421 at 1 (Meyer Suozzi acknowledging receipt of Xia's request to release escrow funds, noting that the PI Order "clearly indicated the breath of the [PI Order]," and indicating that Meyer Suozzi "ceased accessing the funds to pay [its] fees as of December 1, 2022 to fully comply with the Court's [PI Order.]").)

      Xia further argues that, even if the requested funds are subject to asset freeze, he has satisfied the conditions for a carve-out for payment of Hantman's legal fees.  The Court disagrees.  Regarding the first condition, Xia has failed to sufficiently show that the requested funds "are not derived from or associated with any alleged fraud."  While Xia asserts that certain properties located at 57-35 Lawrence Street, Queens, NY that he used—in violation of the TRO—as collateral to obtain a loan, including the amount of $850,000 at issue here, "were already in [his] possession well before January 2010" (*see* Dkt. 424, at 2; *see also* Dkts. 424-1, Dkt. 424-2), he has made no showing that any funds that were used to pay off the mortgage loans on these properties were "not derived from or associated with any alleged fraud."  (*See* Am. Compl., at 98, ¶ 94 ("In 2012, Xia used approximately $819,809 in [EMMCO, L.P. ("EMMCO")] funds [that were raised from EB-5 Program investors] to pay off a mortgage on a building located at 57-35 Lawrence Street, Queens, NY.  As with the other misappropriations, and apparently in an effort to mask the purpose of the transfers, the funds were transferred from an EMMCO account to and through [Fleet Financial Group, Inc.], Racanelli and [JiQing Development, Inc.] accounts, before being used to satisfy the mortgage.  The memo on the check states 'Loan payoff #18 71-8 57-35 Lawrence.'").)

4

With respect to the second condition, Xia contends that he has "complied with the Monitor's [document] demands since the inception of the [instant lawsuit]." (Dkt. 420, at 3; *see* Dkt. 424, at 2–3.) In support of this assertion, Xia asks the Court to consider, *inter alia*, a cover letter dated February 4, 2023 and the corresponding e-mail record setting forth Mark Rifkin's submission to the Monitor of certain "supplemental and updated disclosures" on behalf of Xia and Relief Defendant Yue pursuant to the TRO. (*See* Dkts. 420-4, 420-5.) However, Xia has failed to explain how this barebone "evidence" is supposed to show that he has given a ***full*** accounting of his assets and liabilities to the Monitor. In fact, Mark Rifkin himself admitted in the cover letter that he or his team "did not assemble or verify any of the information set forth in the [] disclosures[.]" (Dkt. 420-4.) In addition, Xia urges the Court to consider an unsworn declaration of him—that he allegedly prepared back in February 2022 but, inexplicably, was never filed either with the Monitor or the Court—which purportedly "detail[s] [his] full compliance with the Monitor's requests for a comprehensive accounting of all [his] assets and liabilities[.]" (*See* Dkt. 420-1, at ECF 2, ¶ 9; *id.* at ECF 22–29; *see also id.*, at ECF 2, ¶ 9 ("Regrettably, this critical Declaration was never filed by [Xia's] then-counsel, Sills Cummis & Gross P.C.").) That the Court declines to do. Regardless of the reasons that the declaration was never filed, Xia has had ample opportunities since 2022 to submit such a declaration to the Monitor or the Court and take further actions to meet his obligations. Furthermore, Xia—again relying on Mark Rifkin's declarations—asserts that there are "numerous instances where the Monitor's reports have not only been self-serving but misleading[.]" (Dkt. 420, at 3.) To the extent that Xia had intended or intends to challenge the Monitor's decision or recommendation, Xia should have followed the procedures set forth in the Court's September 27, 2021 Order Appointing Monitor and November 23, 2022 Order regarding any disputes. (*See* Order Appointing Monitor, Dkt. 11-1, at 2 ("Should

[Defendants] disagree with any of the Monitor's decisions below, they or the Monitor may first present the dispute to a Court-appointed federal Magistrate Judge sitting in the same district as the federal Judge presiding over this matter (the 'Magistrate') for mediation.  In the event the dispute cannot be resolved by the Magistrate, or a Magistrate is not appointed, either [Defendants] or the Monitor may petition the Court in a timely manner for resolution."); 11/23/2022 Docket Order ("The Parties are further reminded that any disagreement warranting mediation, and allowing any petition to the Court, must be 'in good faith,' which would normally require, among others, giving the other party sufficient notice and opportunity to correct before commencing legal action." (internal citation omitted)); *see also* PI Order, Dkt. 217, at 1 ("[T]he Court has appointed M. Scott Peeler to serve as a Monitor, according to the terms of the Order Appointing Monitor, Docket Entry No. 11-1, whose terms remain in full force[.]").)

Thus, Xia's *Molina*-related attorney's fee request is denied.  In addition, the Clerk of Court is respectfully requested to terminate Hantman & Associates as defense counsel of record in this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 7, 2024
      Brooklyn, New York