

# Status Report to the Court

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

Securities and Exchange Commission v. Richard Xia, a/k/a Yi Xia; and Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, LLC, Defendants,

and

Julia Yue, a/k/a Jiqing Yue; Xi Verfenstein; and Xinming Yu, Relief Defendants

21-cv-05350-PKC-JAM

**Introduction**

The Monitor submits this status report[1] in the above referenced matter (the "Enforcement Action") for the period ending April 30, 2024. Following the submission of the Monitor's last status report, the parties began lengthy settlement discussions that resulted in a signed, revised Consent to Judgment ("Consent") being executed on April 12, 2024.[2] SEC counsel is in the process of presenting the Consent, containing the detailed proposed settlement terms, to the five Commissioners of the Securities and Exchange Commission for their consideration, and the SEC will file a status report with the Court on or before May 24, 2024.[3]

**Priority Items**

Since his last quarterly report filed May 3, 2023 (ECF No. 317), the Monitor continued to focus on the most significant, time sensitive, and urgent needs of Eastern Emerald and Eastern Mirage (collectively, the "Projects") and the investors while working diligently to minimize costs. The Monitor's efforts, as detailed below, primarily included, but were not limited to: (i) site safety and security; (ii) maintenance needs; (iii) communicating with investors and their counsel; and (iv) evaluating, and where appropriate, processing payment claims of various third parties.

**Site Security**

The Monitor continued working to address various issues at the Projects, including maintaining the newly installed fencing and other protective measures designed to keep trespassers out of the properties. This work primarily consisted of numerous site visits, interviewing and

---

[1] To preserve investor resources, when the parties commenced meaningful settlement discussions, the Monitor paused issuing quarterly reports under Paragraph 22 of the Order Appointing Monitor ("Monitor Order"). *See* ECF No. 11-1.
[2] *See* ECF No. 416.
[3] *See* Minute Entry for Status Conference proceedings held before Judge Pamela K. Chen, held on April 11, 2024.

2

vetting potential contractors, meeting with Mr. Xia and his counsel, negotiating fair and market appropriate pricing, and overseeing the contracted work.

**Eastern Mirage Enclosure/Weatherization Issues.** The Monitor has repeatedly attempted to work with Mr. Xia and his various counsel to find a solution to enclose Eastern Mirage to protect it from trespassers and from the natural elements, which can damage the unfinished structure over time. These issues, however, remain unresolved due to Mr. Xia's conduct, including backtracking and reversing established decisions and firm plans on several occasions.

Initially, Mr. Xia proposed that DGJ Contracting, Inc. ("DGJ") install fencing around the perimeter of Eastern Mirage. According to Mr. Xia, he had previously engaged DGJ to undertake certain work at Eastern Mirage, but the Monitor was unable to verify these assertions.

On August 9, 2022, Mr. Xia's prior counsel, Mark Rifkin, provided the Monitor with DGJ's initial proposal dated May 8, 2022 to enclose the first two levels of Eastern Mirage with temporary fencing for $69,400. Then, on September 8, 2022, without explanation, DGJ increased its scope of work from installing temporary fencing to constructing a permanent enclosure and increased the proposed price to over $300,000. The Monitor was concerned that the proposed scope of work would weaken the structural integrity of the existing structure, especially given that DGJ did not have an engineering license. The Monitor presented his concerns to Mr. Xia who then agreed to engage an engineer, PE and Consultants Inc. ("PEC"), to review the proposed plan. The Monitor's concerns were confirmed by PEC, and Mr. Xia agreed to have PEC provide drawings and a scope of work to safely and properly enclose Eastern Mirage from the elements and secure the building against intruders. Mr. Xia agreed that the drawings created by PEC would be then provided to contractors that would put forward estimates/proposals for the work.

In October 2022, PEC provided the drawings, and the Monitor's team sent them to independent contractors for proposals. Shortly thereafter, Mr. Rifkin informed the Monitor that DGJ was no longer interested in performing the work. On November 28, 2022, the Monitor shared two proposals received for the work. Mr. Xia, his counsel, and the Monitor's team met at the site on November 30, 2022 to discuss the details of these proposals. At that meeting, Mr. Xia introduced an entirely different scope of work that included finishing the exterior glass façade instead of implementing the temporary winterization solutions under review and to which he previously agreed. The Monitor, in turn, requested that Mr. Xia provide a detailed proposal for his review.

Almost a month later, on December 21, 2022, Mr. Xia provided a proposal from Racanelli Construction Group ("Racanelli"), which included a scope of work for the first floor curtain wall enclosure for $458,035.00. In the following months, Mr. Xia also put forward a proposal from Dynamix Energy ("Dynamix")[4] for $472,136, and a proposal from The Lalo Group ("Lalo") for $429,994. The Monitor's team reviewed all the proposals carefully; worked with Mr. Xia and his prior counsel, Mark Rifkin and Ben Kaufman, to clarify the scope of proposed work; and attempted to identify and resolve multiple issues with each proposal, including, but not limited to, the following: (i) despite multiple requests, Racanelli did not provide the proper insurance and is not an independent, third-party contractor;[5] (ii) Dynamix did not provide relevant experience with

---

[4] The Monitor had concerns about the credentials and experience of DynamiX Energy as it markets itself as a "total energy system provider," and based on its website and the information the Monitor's team was able to gather, Dynamix did not have experience with installing a glass curtain wall. Further, it is also the same company that Mr. Xia attempted to engage with to provide security guard services at Eastern Mirage. *See* Letter to the Court dated November 7, 2022 (ECF No. 200) and Peeler Declaration in Support of Cross-Motion (ECF No. 206-2).

[5] Racanelli is a Xia Entity and is owned by Relief Defendant Xi Verfenstein ("Verfenstein"). Considering the allegations against Verfenstein in the SEC's Amended Complaint, the Monitor repeatedly conveyed his concerns that payment of any kind to a Defendant or Relief Defendant could undermine the goals of the Restraining Order and improperly dissipate investor assets. *See* ECF No. 206.

projects of a similar size and scope or proper insurance for this work; and (iii) Lalo's proposal was vague and the costs were not itemized.

Given that Lalo had relevant experience and appeared to be properly insured, the Monitor exchanged correspondence with Lalo for months and visited the project site with them repeatedly in an attempt to help finalize its proposal and safe work plan. Finally, on January 3, 2024, Lalo provided its proposal for the glass vendor. Following Mr. Xia's change of counsel from Wolf Haldenstein Adler Freeman & Herz LLP to Ford O'Brien Landy LLP, the Monitor sought to discuss Lalo's proposal as well as Lalo's requested payment for emergency repairs it performed at the site (*see* infra) with Mr. Xia's new counsel Adam Ford. Those attempts to date have been unsuccessful.

**Eastern Mirage Glass Issues.** On June 14, 2023, Mark Rifkin and Ben Kaufman contacted the Monitor's team regarding a fractured glass panel and glass fin supports at Eastern Mirage and requested the Monitor's support in urgently securing the glass. Immediately, the Monitor's team obtained proposals from PEC and from another independent contractor, CVM Construction Inc. ("CVM"), to perform emergency repairs over the weekend. Mr. Xia, through Mr. Kaufman, affirmatively consented on Mr. Xia's behalf to PEC's preparation of the drawings and CVM's performance of the repairs. The Monitor believed the estimated costs were commercially reasonable and necessary given the risk that the window could shatter completely. PEC provided the drawings, and on June 17, 2023, CVM mobilized to the site with the material to commence repairs.

Upon CVM's arrival to the site, Mr. Xia stopped CVM from commencing the engineered temporary support work. Days later, Mr. Xia proposed Lalo to replace the glass façade. The Monitor's team informed Mr. Xia that replacing the façade glass could take months to complete,

5

and the delay could pose a safety hazard to the public. Mr. Xia again refused to allow CVM to perform the work to repair the fractured glass panel and glass fin supports. At the Monitor's request, PEC provided an engineered solution that would keep the glass in place. However, Mr. Xia ignored the Monitor's suggestions/PEC's recommendations and instead directed Lalo to secure the fractured glass with suction devices. The Monitor informed Messrs. Rifkin and Kaufman, of his concerns and provided them correspondence from the suction cup manufacturer that their products are not designed for/permitted on fractured glass. Eventually, Lalo removed the suction cup machine from the façade. However, despite the Monitor's concerns, Mr. Xia continues to use suction cups on the fractured glass and has not temporarily supported the glass fins which act as structural support to the entire glass façade.

On June 20, 2023, Mr. Kaufman, provided a proposal from Lalo, dated June 17, 2023, for $150,000 to replace the glass panel and the glass fin supports. Again, this proposal was not sufficiently detailed for the Monitor to properly assess it and determine if it were fairly priced and in the best interests of the investors. The Monitor's team continued to ask for additional information to make these determinations. After six months, in January 2024, Lalo finally provided the requested information. After analyzing the revised proposal and as stated above, the Monitor's team attempted unsuccessfully to engage with Mr. Ford to finalize these proposals and be in a position to move forward with Mr. Xia's plan.

**Fence Replacement.** As detailed in the Monitor's Motion for Release of Funds for Necessary Fence Replacement, the Monitor successfully identified, screened, and negotiated with Site Fence Systems, Inc. ("SFS") to replace the fence at Eastern Emerald at a commercially reasonable price.[6] Mr. Xia consented to SFS's retention.[7] Before the fence could be replaced,

---

[6] *See* ECF No. 233.
[7] *See id.*

however, the Department of Buildings ("DOB") and Department of Transportation ("DOT") required Eastern Emerald to obtain certain permits. To satisfy this requirement, the Monitor's team worked with the DOB to secure the required lift of the Special Status, a DOB designation prohibiting the issuance of a building permit or construction work to proceed at a building, for 2-weeks to allow for filing and permitting of the fence. Then, the Monitor's team helped obtain the DOB permit, and worked with an expeditor to procure the DOT permit. SFS completed most of the fence replacement on October 27, 2023. The replaced fence now meets the DOB requirements. The Monitor does note, however, that one section of the fence has not been changed because Mr. Xia failed to have a meeting at the site to discuss relocating a construction trailer that is in the way of the last section of the new fence.

SFS continues to monitor the condition of the fence enclosing Eastern Mirage, maintains its condition, and makes repairs as needed.[8]

**Security Guard Services.** Kings Security, Inc. ("Kings") continues to provide 24/7 security guard service protection for Eastern Mirage.[9]

Berm Maintenance

As detailed in the Monitor's Motion for Release of Funds and to Enter Into Contracts in Connection With Berm Maintenance Services, the Monitor worked with independent vendors to assess the berm at Eastern Emerald and perform the maintenance that is required/prudent at a commercially reasonable cost.[10] The Monitor successfully identified, screened, and negotiated

---

[8] The NYC Building Code requires the fence to be maintained, painted green, and be free from advertising or pictorial representations of any business. SFS has been performing this required work in order to avoid fines and penalties at the Project.
[9] *See* ECF No. 206.
[10] *See* ECF No. 267.

with SFS to provide berm maintenance services at Eastern Emerald,[11] and Mr. Xia consented to SFS's retention.[12]

In May 2023, the Monitor's team requested that Mr. Xia and the contracted vendors move construction equipment owned by the forklift rental company Chery Hilo[13] off the Eastern Emerald site to allow SFS to begin its berm maintenance work. Typically, when berm maintenance is performed, the only machinery present is the berm equipment. Removing all unnecessary equipment and vehicles is important because SFS needs to take dirt from the bottom of the excavation and redress the berms. This is more difficult, time consuming, and costly with Chery Hilo's machinery on the dirt that needs to be moved. The Monitor's team worked for several months to convince Mr. Xia to move the equipment, and his refusal resulted in unnecessary delay. In August 2023, a DOB inspection revealed that the berms were in poor condition with significant erosion of soil. With the DOB's mounting concerns about the safety and stability of the site, SFS was forced to work around the equipment and redress the berm to the best of its ability.

SFS is performing the maintenance monthly in conjunction with the engineering firm, Mueser Rutledge Consulting Engineers ("MRCE"). In January 2024, DOB requested certain reports and an update regarding berm maintenance, which MRCE provided.

MRCE sought payment to continue its services. The monitor requested MRCE to separate its invoices for the work and payments authorized by this Court's Order.[14] After reviewing the new invoices, the Monitor requested that MRCE reissue the post-order invoices to Eastern Emerald Group LLC to comply with the Court's order. MRCE did so and continues to monitor the work of SFS at Eastern Emerald.

---

[11] *See id*.
[12] *See id*.
[13] Chery Hilo is also known as Chery Forklifts.
[14] *See* ECF No. 267.

8

**Integrity Fund Fee**

In December 2023, Mr. Xia requested the Monitor's assistance with the release of $20,000 for the annual integrity fee (the "Fee") to U.S. Citizenship and Immigration Services ("USCIS") on behalf of Defendant, Fleet New York Metropolitan Regional Center, LLC, ("Fleet").[15] The Monitor promptly evaluated the request and filed a motion requesting the release of funds to pay the Fee.[16] If the Fee is not paid, USCIS may terminate Fleet. To the Monitor's knowledge and despite multiple requests, the Monitor cannot confirm that Mr. Xia has made this payment, despite the Court Order instructing Mr. Xia to do so.

**Form I-956G Fees**

In December 2023, Mr. Xia requested the Monitor's assistance in requesting that the Court release funds to pay Global Law Group $31,595 for the payment of the USCIS filing fee for Form I-956G (Regional Center Annual Statement). The filing fee due to USCIS was $3,035. The legal fee charged by Global Law Group was $28,000, plus $560 in administration costs. The Monitor consented to supporting the payment of the $3,035 USCIS filing fee but requested additional information and support from Global Law Group regarding its legal fee. Despite multiple requests by the Monitor to Global Law Group, Global Law Group has yet to provide the requested information.

**Payment of Property Taxes**

The Monitor assured the timely payment of real property taxes for Eastern Emerald and Eastern Mirage to the New York City Department of Finance.[17]

---

[15] *See* ECF No. 387.
[16] *See id*.
[17] *See* ECF No. 385.

### Status Relating to Paragraphs 8 through 14[18]

The Monitor reviewed documents and information – to the extent Defendants made them available – pertaining to Paragraphs 8 through 14 of the Monitor Order.[19]

**Paragraphs 8-10 (Documents)**. The Monitor's efforts to obtain documents and information from Defendants, and the challenges Defendants and their counsel presented, are detailed in the 11(b) Report, the First Quarterly Status Report, the Monitor's testimony at the Order to Show Cause Hearing, in the Second Quarterly Status Report, and more recently in the Monitor's Reply Declaration in support of the SEC's Motion for the Appointment of a Receiver.[20] Due to these challenges, the Monitor demanded the completion of the document production, together with an affidavit from Mr. Xia and other Defendants on or before February 28, 2022, that declares, under penalty of perjury, everything in his/their possession, custody, or control has been produced to the Monitor in response to each enumerated request. As discussed in the Second Quarterly Status Report, Mr. Xia provided the declaration, in which he represented that he provided the Monitor with documents from sections I(1)(d), III(D)(2), III(D)(3), and III(D)(5) of Monitor's First Request for the Production of Documents/Information. Upon review, the Monitor determined that Mr. Xia had not provided the necessary documents to satisfy those requests. The Monitor again asked Mr. Xia to review his documents and materials and provide information sufficient to satisfy these requests as soon as possible. Mr. Xia has still failed to provide most of the information requested.

---

[18] Monitor Order Paragraph 15 describes the timely access to which the Monitor is to be provided documents and information.
[19] *Id.*
[20] *See* ECF No. 294-1 ¶¶ 33-35.

**Paragraph 11(a) (Finances)**. As provided in the 11(b) Report, there was a total of approximately $79.9 million in frozen funds when the Court issued the TRO.[21] The current remaining balance is approximately $73.2 million.

Defendants previously provided the Monitor with documents and information regarding the rental properties Xia and the Xia Entities own (as also referenced above in connection with the CTBC loan), including the revenue they generate, the associated operational costs, the appraised value, and any outstanding debt. Mr. Xia has not provided the Monitor with any new information or materials regarding his assets and liabilities pursuant to Section IV of the TRO.[22] The Monitor's outstanding questions and concerns include, but are not limited to, whether: (i) Mr. Xia is prepared to deliver a sworn accounting with backup documentation to the Monitor; (ii) there are (or were) any off-shore bank accounts or any other place where money is held; and (iii) Mr. Xia can represent that no other loans, mortgages, or debt are (or were) incurred by any of the Defendants.

**Paragraph 11(b) (Report)**. The Monitor reported on the status of the Projects, and made his recommendations regarding same, in Sections II and IV of the 11(b) Report.[23]

**Paragraph 11(c) (Corporate Transactions)**. The Monitor's review of the historical corporate transactions by Fleet or the Xia Entities – to the extent Defendants provided relevant information – is summarized in Section II of the 11(b) Report. The Monitor found that Defendants failed to maintain standard construction project records and financial records.

**Paragraph 11(d) (Historical Compensation)**. Defendants provided the Monitor with only certain historical compensation of Fleet's former Chief Legal Officer, Bret McCabe.[24] The

---

[21] *See* ECF No. 53.
[22] Mr. Xia did not sign the accounting under the penalty of perjury.
[23] *See* ECF No. 53.
[24] On February 10, 2022, the Monitor was informed that Bret McCabe would no longer serve as Fleet's Chief Legal Officer.

11

Monitor was unable to verify this information. Defendants did not provide the Monitor with the historical compensation of any other executive officers or affiliates of Fleet and the Xia Entities.

**Paragraph 11(e) (Numerous Law Firms)**. From the time the Court appointed the Monitor on September 27, 2021, Mr. Xia has been represented by *at least* nine (9) law firms: Sullivan & Cromwell LLP, Mukasey Frenchman LLP, WilmerHale, Sills Cummis & Gross P.C., Kameli & Associates, Wolf Haldenstein LLP, Meyer, Suozzi, English & Klein, P.C., Ford O'Brien Landy LLP, and Hantman & Associates.

**Paragraph 11(f) (Financial Statements)**. The Monitor's review of financial statements of Fleet and the Xia Entities – to the extent Defendants provided relevant information – is detailed in Section II of the 11(b) Report.

**Paragraph 11(g) (Meeting Minutes)**. Defendants have not provided the Monitor with any meeting minutes of the Boards of Directors of Fleet and the Xia Entities.

**Paragraphs 11(h)-(i) (Litigations)**. The Monitor's review of litigation involving Fleet and the Xia Entities is summarized in Exhibit A to the 11(b) Report.[25] The majority of these cases remain active. As previously identified, an additional class action suit, *Jin v. Xia*, was filed against Xia, Yue, and multiple Xia Entities in this Court on February 18, 2022.[26] Moreover, the Monitor identified five (5) recently filed cases: (i) *New York State Energy Research & Development Authority v. Fleet Financial Group, Inc.*, Index No. 900743-18 (Sup. Ct. Albany Cnty. 2022); (ii) *ADP Totalsource v. Fleet Financial Group, Inc.,* Index No. 716704/2022 (Sup. Ct. Queens Cnty. 2022); (iii) *U.S. Bank Trust, N.A., As Trustee For LSF9 Master Participation Trust v. Yi Xia,* Index No. 725749/2022 (Sup. Ct. Queens Cnty. 2022); (iv) *X & Y Development Group, LLC v. The Tax Commission of The City of New York*, Index No. 804220/2023 (Sup. Ct. Queens Cnty. 2023); and

---

[25] Monitor's Report Ex. A, ECF No. 53-1.
[26] *See Jin v. Xia*, Case No. 1:22-cv-00740-WFK-VMS (E.D.N.Y.).

(v) *Woodmont Horn, LLC v. Shangri-La 9D Inc.*, Index No. 721074/2023 (Sup. Ct. Queens Cnty. 2023). Most notably, and directly relevant to Mr. Xia, *Woodmont Horn, LLC v. Shangri-La 9D Inc.* arises out of the $1,750,000 mortgage Mr. Xia obtained on or around June 3, 2022. The SEC states that Mr. Xia transferred $850,000 of these mortgage proceeds to an escrow account held by one of his former law firms, Meyer, Suozzi, English & Klein, P.C.[27] In the *Woodmont* Complaint, the lenders allege that Mr. Xia defaulted by failing to make any payments on or before the maturity date of July 1, 2023 and seek the principal balance of $1,750,000, plus all accrued interest, fees and costs prior to the date of default and all interest, fees and costs that have accrued since the date of default, as well as to foreclose on the mortgage.

**Paragraph 11(j) (Leases)**. Defendants have not provided the Monitor with any (proposed) material changes to material leases or real estate holdings of Fleet and the Xia Entities. Nonetheless, the Monitor previously reported findings related to (proposed) material changes to material leases or real estate holdings of the Xia Entities.[28] Additionally, Mr. Xia leased part of the Eastern Emerald land to the owner of Chery Hilo, Jeffrey Zhang, to use as storage for some of Chery Hilo's equipment. Neither Mr. Zhang nor Mr. Xia would disclose the lease terms to the Monitor.

**Paragraph 11(k) (Insurance Information)**. After careful review of the insurance information provided by Defendants, the Monitor determined that the Projects were not adequately insured by either Commercial General Liability or Builder's Risk insurance. The details of the Monitor's analysis are discussed in the Second Quarterly Status Report dated May 3, 2022.[29] As such, the Monitor obtained adequate insurance coverage for Eastern Emerald and Eastern Mirage,

---

[27] *See* ECF No. 423. The SEC filed this letter in response to Mr. Xia's request to remaining escrow funds to his new law firm. *See* ECF No 420.
[28] *See* ECF No. 317.
[29] *See* ECF No. 115.

which Mr. Xia consented to, and the Court approved. In June 2023, the Monitor effectuated the renewal of the insurance policies for both Eastern Emerald and Eastern Mirage.

**Paragraph 11(l) (Investor Communications)**. Although it is the Monitor's understanding that Mr. Xia has communicated with investors, Defendants have not provided the Monitor with any investor-wide communications intended to be sent by Fleet and the Xia Entities to investors as required by the Court. However, investors and their counsel have contacted the Monitor on various occasions requesting tax documents related to Eastern Emerald and Eastern Mirage. To date, Mr. Xia has not provided the documents requested by investors.

**Paragraph 12 (Internal Controls)**. Defendants have not provided the Monitor with a final summary report on the internal controls regarding the cash assets of Fleet and the Xia Entities.

**Paragraph 13 (Valuation Reports)**. As previously identified, Defendants provided seven (7) valuation reports regarding the Projects to the Monitor.[30] Notably, most of these appraisals rely largely on assumptions created using statements and numbers provided by Mr. Xia and were prepared several years ago.

**Paragraph 14 (Annual Budget)**. Fleet and the Xia Entities have not provided the Monitor with their final annual budget(s).

## Conclusion

Mr. Xia's conduct continues to place the primary assets available for compensating investors, the Projects, at unnecessary risk. Mr. Xia's pattern of frequently changing counsel; stalling and reversing decisions; and attempting to blame the Monitor and his team for his delays continues unabated. To date, with minor exceptions, Mr. Xia has failed to provide the Monitor with relevant information and materials relating to Defendants' finances and corporate

---

[30] *See* Status Report. § II.E.(iv), ECF No. 53.

transactions. Of even greater concern, this conduct likely continues to cause avoidable diminution of the Projects' values.[31] While the terms of the proposed settlement are under review, the Monitor believes the following conduct would be in the best interests of the investors: (i) Mr. Xia and his counsel should meet with the Monitor to (a) review and resolve the unaddressed safety concerns and other recommendations of the licensed engineer including the shattered glass at Eastern Mirage; (b) review and resolve the pending issues related to enclosing Eastern Mirage; (c) take necessary steps to complete the fencing and allow berm maintenance to occur unimpeded at Eastern Emerald; and (ii) review and cooperate with the Monitor to pay outstanding invoices for services provided at the Projects to avoid additional unnecessary and costly liens and lawsuits.

---

[31] To the extent the Court would like the Monitor to specifically determine the diminution of the Projects' values to date, he is prepared to obtain independent, qualified, up-to-date valuations.