UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                         Plaintiff,<br><br>      -against-<br><br>RICHARD XIA, a/k/a YI XIA; and FLEET NEW YORK METROPOLITAN REGIONAL CENTER, LLC, f/k/a FEDERAL NEW YORK METROPOLITAN REGIONAL CENTER, LLC,<br><br>                         Defendants,<br><br>      -and-<br><br>JULIA YUE, A/K/A JIQING YUE; XI VERFENSTEIN; and XINMING YU,<br><br>                       Relief Defendants. | 21 Civ. 5350 (PKC) (JAM) |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF LAW IN SUPPORT OF ITS UNOPPOSED MOTION REQUESTING APPROVAL OF A PROPOSED SETTLEMENT WITH DEFENDANT RICHARD XIA AND FLEET NEW YORK METROPOLITAN REGIONAL CENTER AND RELIEF DEFENDANT JULIA YUE AND ENTRY OF AN ORDER APPPOINTING A DISTRIBUTION ADMINISTRATOR**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND .......................................................................................................................1

TERMS OF THE SETTLEMENT ............................................................................................3

PROPOSED DISTRIBUTION ADMINISTRATOR ................................................................7

ARGUMENT .............................................................................................................................8

I.   The Settlement Should Be Approved and the Proposed Final Judgment
     Should Be Entered. ..........................................................................................................8

     A.   The Consent and Proposed Final Judgment Are Legal. ..........................................8

     B.   The Consent and Proposed Final Judgment Satisfy
          the Other *Citigroup* Factors. ..................................................................................10

     C.   The Consent and Proposed Final Judgment Are in the Public Interest..................10

II.  Robert Seiden Should Be Appointed as Distribution Administrator ....................................11

CONCLUSION ........................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*SEC v. American Board of Trade, Inc.*,
    830 F.2d 431 (2d Cir. 1987)......................................................................................................11

*SEC v. Arista Power, LLC*,
    No. 17-cv-4598 (GHW), 2021 WL 3774316 (S.D.N.Y. Aug. 25, 2021) .................... 11-12

*SEC v. Contoris*,
    743 F.3d 296 (2d Cir. 2014).........................................................................................................9

*SEC v. Citigroup Global Markets, Inc.*,
    752 F.3d 285 (2d Cir. 2014).....................................................................................................8, 10

*SEC v. Malek*,
    397 Fed. Appx. 711 (2d Cir. 2010)............................................................................................11

*SEC v. Razmiloc*,
    738 F.3d 14 (2d Cir. 2013)...........................................................................................................9

*SEC v. Xia, et al.*,
    No. 21-cv-5350 (PKC) (RER), 2022 WL 17539124 (E.D.N.Y. Dec. 8, 2022) .......... 1-2, 9

*United States v. IBM*,
    No. 14-cv-936 (KMK), 2014 WL 3057960 (S.D.N.Y. July 7, 2014) ..........................8, 11

**Statutes**

15 U.S.C. § 77t ................................................................................................................................8, 9

15 U.S.C. § 78u................................................................................................................................9, 11

Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law in support of its unopposed motion requesting that the Court approve the proposed consent settlement ("Consent") with defendants Richard Xia and Fleet New York Metropolitan Regional Center, LLC ("Fleet," collectively with Xia, "Defendants") and relief defendant Julia Yue ("Yue"), enter the Proposed Final Judgment that reflects the terms of the Consent, and enter the Proposed Order Appointing a Distribution Administrator that appoints Robert Seiden of Seiden Law LLC to serve as a distribution administrator.[1]  Defendants and Yue do not object to Mr. Seiden's appointment.

## BACKGROUND

The SEC filed the Complaint in this action on September 27, 2021, against Defendants and relief defendant Yue.  (ECF No. 1.)  The Complaint alleged that between 2010 and 2017, Defendants raised $228,500,000 from more than 450 Chinese investors ("EB-5 Investors") through five limited partnerships, based on materially false and misleading statements.  The fundraises were purportedly to construct two real estate projects ("Projects") related to the EB-5 program administered by the U.S. Citizenship and Immigration Services ("USCIS").  (*See generally id.*)  On September 27, 2021, the Court also granted the SEC's motion for a temporary restraining order freezing Defendants' and Yue's assets and appointed a Monitor to oversee and approve the use of any frozen assets.  (*See* ECF Nos. 11, 12.)

The SEC amended its Complaint on April 6, 2022, adding two relief defendants.  (*See* ECF No. 98 ("AC").)  On December 8, 2022—following a show-cause hearing that occurred on February 14, 15, and 16, 2022—the Court entered an order imposing a preliminary injunction

---

[1] The Consent is filed as Exhibit A ("Ex. A"), the Proposed Final Judgment is filed as Exhibit B ("Ex. B"), and the Proposed Order Appointing a Distribution Administration ("Proposed Distribution Administrator Order") is filed as Exhibit C ("Ex C.").

1

against Defendants and the three relief defendants ("Preliminary Injunction"). *See SEC v. Xia, et al.*, No. 21-cv-5350 (PKC) (RER), 2022 WL 17539124 (E.D.N.Y. Dec. 8, 2022) ("*P.I. Opinion*"). Among other things, the Preliminary Injunction continued the freeze of all assets in Defendants' names, including nearly $80 million in investor funds in bank accounts in the names of Defendants and Defendants' entities, to ensure that, upon resolution of this matter, assets are available to repay the defrauded EB-5 Investors. *See generally P.I. Opinion*, 2022 WL 17539124; *see also* ECF No. 18 ("A Report to the Court Pursuant to Paragraph 11(b) of the Monitor Order") at 14 (detailing funds in bank accounts frozen under the Preliminary Injunction).

The EB-5 Investors' financial interests are not the only interests implicated by Defendants' alleged fraud. In addition to seeking a financial return on their investment, the EB-5 Investors also seek to be approved for permanent residency by USCIS in connection with that investment. *See P.I. Opinion*, 2022 WL 17539124 at *19-20. One of the prerequisites for such approval relevant here is the requirement that an EB-5 Investor's financial investment remain "at risk" until the investor has been approved for permanent residency—*i.e.*, in order for an EB-5 Investor to be eligible for permanent residency, the EB-5 Investor's invested principal generally cannot be returned to the investor before USCIS approves the investor for permanent residency. Certain of the EB-5 Investors have not yet received permanent residency status and wish to pursue that status if possible. Those investors may not want their investment returned at this time so that they can attempt to remain eligible within the EB-5 program. Other EB-5 Investors have already obtained permanent residency and want their investment returned. Still other EB-5 Investors have not yet been approved for permanent residency but no longer wish to pursue that status and also want their investment returned. Accordingly, the terms of the parties' settlement

2

detailed below include a process by which a Court-appointed distribution administrator will determine each EB-5 Investor's preference concerning remaining in the EB-5 program and the return of their invested funds, and the distribution administrator will take steps, to the extent practicable and consistent with the laws governing the EB-5 program, to implement each EB-5 Investor's preference.

## TERMS OF THE SETTLEMENT

The SEC, Defendants, and Yue have agreed to a settlement that, if approved, would resolve all the SEC's claims against Defendants and Yue.

Under the settlement, Defendants have agreed to three injunctions. (Ex. A ¶¶ 2(a), (b); Ex. B at I-III.) First, Defendants have agreed that they shall be permanently enjoined from future violations of the federal securities laws alleged in the Amended Complaint. (Ex. A. ¶ 2(a); Ex. B at I.) Next, Fleet has agreed that it shall be permanently enjoined from participating in any future securities offering. (Ex. A. ¶ 2(b); Ex. B at II.) Finally, Xia has agreed that he shall be permanently enjoined from participating in any future securities offering, except that he shall not be enjoined from either (i) trading for his own account, or (ii) raising money, in offerings unrelated to the EB-5 program, only from persons or entities meeting the definition of "accredited investor" or "qualified purchaser." (Ex. A. ¶ 2(b); Ex. B at III.)

Defendants have also agreed to three forms of monetary relief. (Ex. A ¶ 2(c); Ex. B at IV.) First, Defendants have agreed to pay a total of $228,500,000 in disgorgement, for which they shall be jointly and severally liable. This is equal to the total amount of principal invested by the EB-5 Investors with Defendants. (*Id.*) Second, Defendants have agreed to pay a total of $25,000,000 in pre-judgment interest on the disgorgement amount, for which they shall also be jointly and severally liable. (*Id.*) Relief Defendant Yue has agreed to be jointly and severally

3

liable with Defendants for $14,000,000 of the disgorgement amount and $720,000 of the pre-judgment interest amount (*id.*), which, together, equals the amount of the EB-5 Investor funds that Xia improperly used to purchase the Kings Point mansion in Yue's name.  (*See* AC ¶ 20, 96, 165, 167-175) (alleging that Xia improperly used investor funds—all of which are ill-gotten gains—to purchase mansion in Long Island in Yue's name).)  Third, Defendants have each agreed to civil money penalties—Xia shall pay a civil penalty of $3,101,745 and Fleet shall pay a civil penalty of $15,538,635.  (Ex. A ¶ 2(c); Ex. B at IV.)

       Thus, the total monetary relief under the settlement is $272,140,380 plus any post-judgment interest.  Under the settlement terms, this amount will be paid in two steps.  (Ex. A ¶¶ 2(d)(i)-(ii); Ex. B at V(a)-(b).)  The first payment shall consist of $42,500,000, which will be made using funds currently held in accounts in Defendants' names that remain frozen under the Preliminary Injunction.  (Ex. A ¶ 2(d)(i); Ex. B at V(a).)  On a motion by the SEC, those funds will be unfrozen and paid into the Court Investment Registry System ("CRIS") in partial satisfaction of the $228,500,000 in disgorgement owed.  (*Id.*)

       The second payment—consisting of $229,640,380 plus post-judgment interest—shall be paid by Defendants (and Yue to the extent jointly and severally liable) into the CRIS within 245 days of the Court's entry of the final judgment.  (Ex. A ¶ 2(d)(ii); Ex. B at V(b).)  Defendants and Yue have agreed that the Preliminary Injunction and the Order Appointing Monitor (ECF No.11-1) shall each remain in effect until the total amount owed under the final judgment is paid.[2]  (Ex. A ¶¶ 2(e), (g); Ex. B at V.)  As discussed below, all funds paid into the CRIS will be

---

[2] As protection against Defendants' possible non-payment of the full judgment amount, Xia and Yue have conveyed mortgages to the Projects and the Kings Point mansion to the SEC in an amount equal to any final judgment ordered by the Court.  *See* Ex. A at 3(a).  If Defendants fail to timely pay the full judgment amount, then the SEC may exercise its rights under the mortgages to satisfy the full judgment amount.

distributed pursuant to a Court-approved distribution plan, including potential distributions to the EB-5 Investors, on a pro rata basis, up to the total amount that each EB-5 Investor paid to Defendants.[3]

Finally, the settlement includes, as equitable relief, the appointment of a distribution administrator, intended to preserve the rights of the EB-5 Investors in the EB-5 program. (*See generally* Ex. C.) As set forth in the Proposed Distribution Administrator Order, the distribution administrator will have the following primary responsibilities:

(i) to draft and propose to the Court a distribution plan that includes a process for the EB-5 Investors to elect whether they want to receive a pro rata share of the funds to be distributed to investors or, alternatively, whether they want to attempt to remain in the EB-5 program to continue to pursue permanent residency status (*id.* ¶¶ 5, 8-11);

(ii) to notify the EB-5 Investors of the settlement and of their options to elect to receive a pro rata share of the funds to be distributed to investors or, alternatively, to attempt to remain in the EB-5 program to continue to pursue permanent residency status (*id.* ¶ 12);

(iii) to the extent that EB-5 Investors elect to receive a pro rata share of the funds to be distributed to investors, to distribute those funds to the EB-5 Investors making that election (*id.* ¶ 14);

(iv) to the extent that EB-5 Investors elect to attempt to remain in the EB-5 program, to implement the portion of the distribution plan allowing for such an election (*id.*); and

(v) to answer EB-5 Investor questions regarding the distribution process (*id.* ¶ 13).

If an EB-5 Investor seeks to remain in the EB-5 program, then the Proposed Distribution Administrator Order limits where within the EB-5 program that investor may elect to direct a pro rata share of the funds to be distributed to investors. (*See id.* ¶¶ 8-10.) An EB-5 Investor may

---

[3] While this settlement does not include the two other relief defendants, Xi Verfenstein and Xinming Yu, or the SEC's claims against them, if Defendants and Yue timely pay the final judgment in full, then the SEC intends to voluntarily dismiss its claims against those two relief defendants.

only elect to direct a pro rata share of the funds to be distributed to investors to the five limited partnerships associated with Fleet (and the Projects) if Fleet first meets certain conditions. This includes that Xia has relinquished ownership of Fleet, Fleet's new owner has filed an application with USCIS requesting designation of Fleet as a regional center in the EB-5 program, and USCIS has approved that application and has not taken any adverse action as to Fleet, such as termination. (Ex. A ¶¶ 2(i), 3(c); Ex. C ¶ 8.) These terms are intended to ensure that, before any EB-5 Investor money is placed with limited partnerships managed by Fleet, Xia is no longer associated in any way with Fleet, a new fiduciary owns Fleet and is responsible for the limited partnerships, USCIS has reviewed Fleet's plans under its new ownership, and USCIS has determined that Fleet may continue to operate in the EB-5 program under that new ownership in support of investors seeking permanent residency.

The Proposed Distribution Administrator Order also requires that the distribution plan provide EB-5 Investors with an option to elect to direct their pro rata share of disgorgement and pre-judgment interest to an EB-5 project **other than** those associated with Fleet, to the extent that is permissible under the laws governing the EB-5 Program.[4] (Ex. C. ¶¶ 9-10.)

---

[4] Under a March 2022 amendment to the Immigration and Nationality Act, which governs the EB-5 program, investors associated with an EB-5 regional center that is "terminated" by USCIS may have the right, following such termination of the regional center, to move their investment to another regional center. *See* 8 U.S.C. § 1153(b)(5)(M)(ii). Thus, if USCIS terminates Fleet from the EB-5 program, then the EB-5 Investors may have the right to direct that a pro rata share of disgorgement and pre-judgment interest be moved to a regional center other than Fleet and to pursue residency status in connection with that regional center. Since this amendment was enacted in March 2022, USCIS has terminated few, if any, regional centers, and the exercise of investor rights under this amendment may be an issue of first impression. Because the process for exercising these rights is somewhat uncertain, the distribution administrator will need to consider how to navigate that process in devising and implementing the distribution plan and the Proposed Distribution Administrator Order is intended to provide the distribution administrator with the power and flexibility to do so.

## PROPOSED DISTRIBUTION ADMINISTRATOR

The Proposed Distribution Administrator Order proposes that Robert Seiden, the managing partner of Seiden Law LLC, act as distribution administrator. (*Id.* ¶ 2.) Defendants and Yue do not object to Mr. Seiden's appointment. The SEC conducted a diligent search for a person and firm with the skill and experience required to perform the necessary duties of a distribution administrator in this matter, including navigating the distribution process and taking the steps necessary to attempt to preserve the EB-5 Investors' rights in the EB-5 program. Mr. Seiden and his firm have such skills and experience. Among other things, Mr. Seiden has extensive experience acting as a receiver and making distributions both domestically and overseas and in securities matters, and his firm has experience with real estate and EB-5-related issues. Mr. Seiden's firm also maintains an office in China, has experience with matters in that country, and employs multiple attorneys who are fluent in Mandarin, all of which will be valuable in communicating with and answering questions from these particular EB-5 Investors.[5] Should it be necessary for Mr. Seiden to retain third parties—including a firm that handles distribution logistics and counsel to advise on the laws currently governing the EB-5 program— the Proposed Distribution Administrator Order allows for Mr. Seiden to take the steps necessary for such retentions. (*Id.* ¶ 17.) Mr. Seiden and has firm have agreed to charge a discounted government rate in connection with this appointment and all fees and expenses shall be proposed to and approved by the Court. (*Id.* ¶¶ 16, 18-23.)

---

[5] Additional details concerning the experience and qualifications of Mr. Seiden and others at his firm are set forth in Exhibit D, filed herewith.

# ARGUMENT

I. **The Settlement Should Be Approved and the Proposed Final Judgment Entered.**

The Second Circuit recognizes a "strong federal policy favoring the approval and enforcement of consent decrees." *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 293-94 (2d Cir. 2014). A district court should approve a proposed consent judgment involving the SEC if the terms are fair and reasonable and, to the extent the proposed judgment includes injunctive relief, the public interest would not be disserved. *Id.* at 294. In evaluating whether a proposed consent judgment is fair and reasonable, a district court should consider four non-exclusive factors: (1) the proposed judgment's basic legality; (2) whether the proposed judgment's terms and enforcement mechanisms are clear; (3) whether the proposed judgment resolves the claims in the complaint; and (4) whether the parties have improperly colluded. *Id.* at 294-95. Finally, where, as here, the proposed judgment includes injunctive relief, a district court should consider whether the public interest would be disserved by an injunction. *Id*. at 296-97. All factors weigh in favor of the Proposed Final Judgment.

    A. **The Consent and Proposed Final Judgment are Legal.**

The Consent and Proposed Final Judgment are legal in that they are "within the Court's authority to enter [] and within the Plaintiff's authority to enforce []." *United States v. IBM*, No. 14-cv-936 (KMK), 2014 WL 3057960, at *2 (S.D.N.Y. July 7, 2014) (citing *Benjamin v. Jacobson*, 172 F.3d 144, 158 (2d Cir. 1999)). The Consent and Proposed Final Judgment provide for injunctive relief, disgorgement and pre-judgment interest, civil money penalties, and other equitable relief—all of which are allowed by law.

The SEC is authorized by statute to seek and obtain injunctive relief. *See* 15 U.S.C. § 77t(b) (authorizing the SEC to bring an action in the district court to enjoin violations of the

8

Securities Act of 1933 ("Securities Act")); 15 U.S.C. § 77t(e) (authorizing the SEC to bring an action in the district court to enjoin violations of the Securities Exchange Act of 1934 ("Exchange Act")).  In an enforcement action, the SEC may also seek disgorgement in an amount equal to a "reasonable approximation of profits causally connected to the [securities] violation."  *SEC v. Contoris*, 743 F.3d 296, 305 (2d Cir. 2014).  Further, the SEC may seek civil penalties to discourage a defendant and others from attempting to engage in unlawful action in the future.  *SEC v. Razmiloc*, 738 F.3d 14, 38 (2d Cir. 2013) (citing Securities Act Section 20, 15 U.S.C. § 77t(d) and Exchange Act Section 21, 15 U.S.C. § 78u(d)(3)).  Finally, Exchange Act Section 21(d)(5) permits the Court to grant "any equitable relief that may be appropriate or necessary for the benefit of investors."  *See* 15 U.S.C. § 78u(d)(5).

      The $228,500,000 in disgorgement that Defendants have agreed to pay and that is set forth in the Consent and Proposed Final Judgment is equal to the amount Defendants obtained from the EB-5 Investors (less certain administrative fees Defendants obtained from the EB-5 Investors and that were paid to third-party agents who recruited investors).  This amount is a "reasonable approximation" of Defendants' profits.  *See Contoris*, 743 F.3d at 305.  The civil money penalties that Xia and Fleet have agreed to pay—$3,101,745 and $15,538,635, respectively—are equal to the penalty amounts the Court previously calculated in the *P.I. Opinion* by multiplying the maximum statutory penalty available for third-tier securities law violations after November 2, 2015 by the number of months where Defendants received payment from investors.  *See* 2022 WL 17539124 at 30 & n.43 (discussing methodologies for calculating statutory civil penalties in this matter).  All other relief contemplated by the Consent and Proposed Final Judgment falls within the Court's broad power to grant equitable relief.

9

### B. The Consent and Proposed Final Judgment Satisfy the Other *Citigroup* Factors.

The three remaining *Citigroup* factors for evaluating fairness and reasonableness of a proposed settlement also weigh in favor of approving the Consent and entering the Proposed Final Judgment. First, the terms of the Consent and Proposed Final Judgment, including the enforcement mechanisms, are clear. Second the Consent and Proposed Final Judgment resolve the claims against Fleet, Xia, and Yue. Finally, as the Court is aware, the Consent and Proposed Final Judgment were the product of extensive, arms-length negotiation and the Court's guidance. No collusion between the parties, improper or otherwise, has occurred.

### C. The Consent and Proposed Final Judgment Are in the Public Interest.

"[T]he job of determining whether the proposed SEC consent decree best serves the public interest . . . rests squarely with the SEC, and its decision merits significant deference." *Citigroup*, 752 F.3d at 296. The Consent and Proposed Final Judgment, including the injunctions imposed on Defendants, are in the public interest. Together with the appointment of the distribution administrator discussed below, the settlement terms set forth in the Consent and Proposed Final Judgment obtain substantial relief for the EB-5 Investors and offer those investors the opportunity to be returned the entirety of the money that was fraudulently obtained from them and also to attempt to remain in the EB-5 program to continue to pursue permanent residency status, if permissible under applicable laws. Additionally, the total monetary relief of $272,140,380, plus post-judgment interest, is significant and may deter both Defendants and others from engaging in conduct like that alleged here. The Consent and Proposed Final Judgment also promote the SEC's goals of imposing liability on the persons and entities whom the SEC believes are responsible for securities law violations, reduce the continued expenditure on public funds on lengthy litigation, and provides a prompt and effective response to alleged

10

securities violations that offers a degree of certainty to the EB-5 Investors. These factors, too, weigh in favor of the public interest. *See IBM*, 2014 WL 3057960 at *4. Moreover, nothing in the injunctions that bar Fleet from participating in future securities offerings, and that bar Xia from future securities offerings with certain limited carveouts, is contrary to the public interest.

For these reasons, the terms of the Consent should be approved and the Proposed Final Judgment entered.

## II.     Robert Seiden Should Be Appointed as Distribution Administrator.

A distribution administrator is necessary here to implement the distribution process negotiated and agreed to by the SEC, Defendants, and Yue. This includes, among other things, drafting and proposing a distribution plan permitting the EB-5 Investors to elect to receive a pro rata share of funds to be distributed to investors or to attempt to remain in the EB-5 program, notifying the EB-5 Investors of their rights under the distribution plan and determining which rights under that plan each EB-5 Investor elects to pursue, and taking the steps to effect the EB-5 Investors' elections.

Exchange Act Section 21(d)(5) gives the Court broad powers to grant "any equitable relief that may be appropriate or necessary for the benefit of investors," 15 U.S.C. § 78u(d)(5), including the appointment of a distribution administrator to implement the distribution process here, *see SEC v. American Board of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) (district court's appointment of a trustee or receiver in an SEC action "may be disturbed on appeal only if the district court has abused its discretion"); *see also SEC v. Malek*, 397 Fed. Appx. 711, 713 (2d Cir. 2010) (noting that the district court's equitable powers in an SEC enforcement action include the ability to appoint a receiver "to restore to . . . defrauded persons that which was fraudulently diverted from . . . their custody and control"); *SEC v. Arista Power, LLC*, No. 17-cv-4598 (GHW), 2021 WL 3774316 (S.D.N.Y. Aug. 25, 2021) (appointing firm to develop

distribution plan, identify harmed investors, respond to investor inquiries, and make distributions to harmed investors).

For the reasons stated above, *supra* page 7 and note 5, concerning the expertise and experience of Mr. Seiden and his firm with receiverships, distributions, EB-5 and real estate issues, and matters in China and involving Chinese persons, he is an appropriate person to implement the distribution process here. This includes communicating with the EB-5 Investors, informing them of the settlement and their options vis-à-vis the settlement, making distributions to EB-5 Investors who choose to receive a pro rata share of the funds to be distributed to investors, and taking steps, if possible, to allow for other EB-5 Investors to remain in the EB-5 Program and to continue to pursue permanent residency status.

Mr. Seiden is available to appear before the Court to address any questions the Court might have regarding his qualifications. If the Court wishes to consider other candidates, the SEC will present them upon the Court's request.

## **CONCLUSION**

For the foregoing reasons, the SEC respectfully requests that the Court approve the terms of the settlement set forth in the Consent, enter the Proposed Final Judgment in the form filed herewith as Exhibit B, and enter the Order Appointing a Distribution Administrator in the form filed herewith as Exhibit C.

Dated:  New York, NY
July 5, 2024

                                             Respectfully submitted,

                                             /s/  Christopher M. Colorado
Christopher M. Colorado
David Stoelting
Kim Han
*Attorneys for Plaintiff*
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
212-336-9143 (Colorado)