UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

      - against -

RICHARD XIA, a/k/a YI XIA; and FLEET
NEW YORK METROPOLITAN REGIONAL
CENTER, LLC, f/k/a FEDERAL NEW YORK
METROPOLITAN REGIONAL CENTER,
LLC,

                Defendants,

      - and -

JULIA YUE, a/k/a JIQING YUE; XI
VERFENSTEIN; and XINMING YU,

            Relief Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-5350 (PKC) (JAM)

PAMELA K. CHEN, United States District Judge:

Plaintiff Securities & Exchange Commission (the "SEC") brings this civil enforcement action against Defendants Richard Xia ("Xia") and Fleet New York Metropolitan Regional Center, LLC ("Fleet") (together, the "Defendants") for violations of various federal securities laws, and against Relief Defendants Julia Yue ("Relief Defendant Yue"), Xi Verfenstein, and Xinming Yu (collectively, the "Relief Defendants") for unjust enrichment as a result of the alleged violations by Defendants.  After more than two years of intense negotiations between the Parties[1] to resolve the matter, they have reached a settlement in principle to resolve the SEC's action and have

---

[1] The Court refers to the SEC, Defendants, and Relief Defendant Yue collectively as the "Parties."

executed a consent to the entry of a final judgment in this matter (the "Consent"). Subsequently, the five-member Commission approved the Parties' settlement in principle.

Presently before the Court is the SEC's unopposed motion, seeking (1) approval of the Consent as to Defendants and Relief Defendant Yue; (2) entry of a proposed final judgment incorporating the Consent (the "Proposed Final Judgment"); and (3) the appointment of a distribution administrator in connection with the settlement and the Proposed Final Judgment. For the reasons set forth below, the Court grants the SEC's motion.

## BACKGROUND

The general background of this case is set forth in the Court's previous opinions.[2] Therefore, the Court assumes the Parties' familiarity with the facts, and recites only the background relevant to the instant motion.

## I.    The SEC's Action

On September 27, 2021, the SEC commenced this action against Defendants and Relief Defendant Yue. (*See* Compl., Dkt. 1, ¶¶ 27–30.) On April 6, 2022, the SEC amended its Complaint to add Relief Defendants Xi Verfenstein and Xinming Yu. (*See* Am. Compl., Dkt. 98, ¶¶ 33–38.) In substance, the SEC alleges that, between early 2010 and late 2017, Defendants fraudulently obtained more than $229 million by offering and selling limited partnership interests

---

[2] The procedural history and factual background of this litigation has been detailed extensively in various opinions by the Court, including the Court's December 8, 2022 Memorandum & Order issuing the asset-freezing preliminary injunction ("Preliminary Injunction"), the Court's March 4, 2024 Memorandum & Order granting Intervenor CTBC Bank Corp. (USA)'s ("CTBC") motion to intervene in this action, and the Court's July 9, 2024 Memorandum & Order granting CTBC's motion to modify the Preliminary Injunction and to appoint a receiver. *See, e.g.*, *SEC v. Xia*, No. 21-CV-5350 (PKC) (RER), 2022 WL 17539124, at *1–10 (E.D.N.Y. Dec. 8, 2022), *appeal filed*, No. 22-3137 (2d Cir.); *SEC v. Xia*, No. 21-CV-5350 (PKC) (JAM), 2024 WL 964676, at *1–5 (E.D.N.Y. Mar. 4, 2024); *SEC v. Xia*, No. 21-CV-5350 (PKC) (JAM), 2024 WL 3447849, at *1–5 (E.D.N.Y. July 9, 2024).

to over 450 Chinese nationals who participated in the EB-5 Immigrant Investor Program (the "EB-5 investors") administered by United States Citizenship and Immigration Services ("USCIS"), and then misappropriated the investor funds for personal expenses.  (*See id.* ¶¶ 1–2, 4, 78–100.)  The SEC alleges that Defendants' actions, which amounted to investor fraud, violated Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77q(a), and Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  (*Id.* ¶¶ 191–96.)  The SEC also alleges that Defendants' unlawful diversion of investor funds unjustly enriched Relief Defendants.  (*See id.* ¶¶ 12, 23–26, 197–99.)

Along with its September 27, 2021 Complaint, the SEC moved for a temporary restraining order ("TRO"), *inter alia*, freezing Defendants' and Relief Defendant Yue's assets and appointing a Monitor, and for a preliminary injunction continuing the same asset freeze throughout the pendency of this action to preserve the status quo and ensure that sufficient assets would be available to compensate the defrauded investors.  (*See* Dkts. 2–8; Dkt. 2, at 2; *see also* Dkt. 103, at 25.)  On the same day, the Court granted the SEC's motion for a TRO and appointed M. Scott Peeler as Monitor (the "Monitor Order").  (*See* Dkt. 11.)  Subsequently, on April 6, 2022, the SEC moved to expand the scope of the existing asset freeze and its requested preliminary injunction as to Relief Defendants.  (*See* Dkts. 99–102.)

On December 8, 2022, after considering the Parties' extensive evidentiary submissions and holding a three-day show-cause hearing (*see* 2/14/2022, 2/15/2022 & 2/16/2022 Min. Entries), the Court issued the Preliminary Injunction that, among other things, instituted a complete asset freeze subject to certain carve-outs that covered all of Defendants' assets and Relief Defendants'

residential properties for the duration of two years.³  *See SEC v. Xia*, No. 21-CV-5350 (PKC) (RER), 2022 WL 17539124, at *31 (E.D.N.Y. Dec. 8, 2022), *appeal filed*, No. 22-3137 (2d Cir.); *see also generally SEC v. Xia*, No. 21-CV-5350 (PKC) (RER), 2022 WL 20543271 (E.D.N.Y. Dec. 8, 2022), *appeal filed*, No. 22-3137 (2d Cir.).

In the Amended Complaint, the SEC seeks (1) injunctive relief that permanently enjoins Defendants from violating federal securities laws; (2) disgorgement of "all ill-gotten and/or unjust enrichment" that Defendants and Relief Defendants received as a result of the alleged violations, plus pre-judgment interest, pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act, 15 U.S.C. §§ 78u(d)(5) and 78u(d)(7); (3) civil monetary penalties from Defendants pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) ("Section 20(d)"), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3) ("Section 21(d)(3)"); and (4) continuing the appointment of the Monitor and continuing the TRO for the duration of the case.  (*See* Am. Compl., Dkt. 98, at 50–51.)

## II.    The Parties' Settlement Negotiations

On January 23, 2024—after more than two years of intense litigation and settlement negotiations—the Parties reached a settlement in principle, and Defendants and Relief Defendant Yue delivered to the SEC "a signed and notarized consent to judgment reflecting the [P]arties' agreement in principle."  (Dkt. 388, at 1.)  On April 12, 2024, Defendants and Relief Defendant Yue delivered to the SEC a signed, revised consent to a final judgment.  (*See* Dkt. 415; 4/12/2024 Docket Order.)  In the ensuing months, the Parties reached resolution on all then-outstanding

---

³ In light of the Parties' settlement in principle, the Court, at the Parties' joint request, extended the expiration date of the Preliminary Injunction to March 20, 2025.  (*See* Dkt. 415, at 1; Dkt. 416, at 2.)

matters surrounding the settlement in principle (*see* Dkt. 435), after which the settlement was submitted to the five-member Commission (the "Commission") for review (*see* Dkt. 440).  On June 21, 2024, the Commission finally approved the terms of the Parties' settlement in principle. (*See* Dkt. 443.)  On July 5, 2024, the SEC filed the instant motion, requesting, *inter alia*, that the Court approve the Consent with Defendants and Relief Defendant Yue and enter the Proposed Final Judgment that incorporates the terms of the Consent.[4]  (*See* Dkt. 450.)  No opposition has been filed.

## III.    The Consent and Proposed Final Judgment

The Consent and Proposed Final Judgment settle all of the SEC's claims against Defendants and Relief Defendant Yue in this action.  (*See* Consent, ¶ 15.)  In exchange, Defendants and Relief Defendant Yue consent to entry of the Proposed Final Judgment "without admitting or denying the allegations" in the Amended Complaint (with certain exceptions), and waive the right, if any, to appeal from the entry of the Proposed Final Judgment.  (Consent, ¶¶ 2, 10; Proposed Final J., at 1.)

Specifically, Defendants and Relief Defendant Yue, in sum and substance, agree to: (1) permanent injunctions that enjoin Defendants from committing future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and Section 17(a) of the Securities Act, bar Fleet from participating in future securities offerings, and enjoin Xia from future securities offerings with certain limited carveouts (*see* Consent, ¶ 2(a)–(b); Proposed Final J., Parts I, II, III); (2) disgorgement of  $228,500,000, representing net profits gained as a result of the conduct alleged

---

[4] The Proposed Final Judgment incorporates the Consent "with the same force and effect as if fully set forth" herein, and orders Defendants to "comply with all of the undertakings and agreements set forth" in the Consent.  (Consent, Dkt. 450-2, Ex. A ("Consent"), ¶ 12; Proposed Final J., Dkt. 450-3, Ex. B ("Proposed Final J."), Parts VIII, IX.)

in the Amended Complaint (*see* Consent, ¶ 2(c); Proposed Final J., Part IV); (3) pre-judgment interest in the amount of $25,000,000 (*see* Consent, ¶ 2(c); Proposed Final J., Part IV); (4) civil monetary penalties of $3,101,745[5] from Xia and of $15,538,635 from Fleet (*see* Consent, ¶ 2(c); Proposed Final J., Part IV); (5) a two-step procedure for effectuating the payment of disgorgement, pre-judgment interest, and civil penalties (*see* Consent, ¶ 2(d); Proposed Final J., Part V); and (6) an order allowing the SEC to establish a "Fair Fund" to hold disgorgement, pre-judgment interest, and civil penalties for distribution (*see* Consent, ¶ 7; Proposed Final J., Part VI).   Further, as part of the settlement, Xia agrees to relinquish any direct and/or indirect control and ownership of Fleet and to certify in writing his compliance.  (*See* Consent, ¶¶ 2(i), 3(c); Proposed Final J., Parts VII, VIII(b)).

## IV.   Appointment of a Distribution Administrator

Importantly, the terms of the Parties' settlement also include a distribution process intended to preserve the rights of the EB-5 investors in the EB-5 program.  (*See* SEC Br., at 2–3, 5–6.) Specifically, a Court-appointed distribution administrator will determine each EB-5 investor's preference concerning their investment in the program and accordingly implement such preference, that is, whether they want to receive a *pro rata* share of the funds to be distributed to

---

[5] While the SEC represents in its brief supporting the instant motion that $3,101,745 in civil penalties that Xia has agreed to pay in the Consent "are equal to the penalty amounts the Court previously calculated" in the December 8, 2022 Memorandum & Order (*see* Pl.'s Mem. of Law in Supp. of Its Unopposed Mot., Dkt. 450-1 ("SEC Br."), at 9), that is incorrect.  In fact, in that decision, the Court held that the amount of civil penalties the SEC could seek from Xia is $3,107,745—a difference of $6,000.  *See Xia*, 2022 WL 17539124, at *30 (finding that "[u]sing the correct time frame, the SEC may only seek penalties for a 15-month period during which Defendants received investor payments, . . . $15,538,635 for Fleet, *$3,107,745* for Xia, and $18,646,380 in total") (emphasis added).  However, notwithstanding the Court's prior calculation, the Parties were free to negotiate the amount of civil penalties to be paid by Xia, and thus the Court does not disturb the civil penalty amount of $3,101,745 provided for as to Xia in the Consent and Proposed Final Judgment.  (*See* Consent, ¶ 2(c); Proposed Final J., Part IV.)

investors or, alternatively, whether they want to attempt to remain in the EB-5 program to continue to pursue permanent residency status. (*See id.*) For the purpose of implementing this distribution process, the SEC's instant motion also seeks the appointment of a distribution administrator to undertake a number of responsibilities, including: (1) drafting and proposing to the Court a distribution plan that includes the above-mentioned distribution process by which the distribution administrator will determine each EB-5 investor's preference concerning the return of their invested funds or remaining in the EB-5 program; (2) notifying the EB-5 investors of the Parties' settlement and the EB-5 investors' options; (3) distributing the funds to the EB-5 investors who elect to receive a *pro rata* share of the funds; (4) implementing the distribution plan as to the EB-5 investors who choose to attempt to remain in the EB-5 program; and (5) answering questions from the EB-5 investors regarding the distribution process. (*See id.* at 5–6.)

Specifically, the SEC recommends the appointment of Robert Seiden, Esq., the Managing Partner of Seiden Law LLP, as the distribution administrator to oversee and implement the distribution process to preserve the EB-5 investors' rights. (*See id.* at 7, 11–12.)

## DISCUSSION

### I.    Motion for Approval of the Consent and Entry of the Proposed Final Judgment

For the reasons discussed below, the Court grants the SEC's motion for approval of the Consent and entry of the Proposed Final Judgment incorporating the Consent.

#### A.    Legal Standard

The Second Circuit upholds a "strong federal policy favoring the approval and enforcement of consent decrees." *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 293 (2d Cir. 2014) (quoting *SEC v. Wang*, 944 F.2d 80, 85 (2d Cir. 1991)) (internal quotation marks omitted). While a district court considering whether to approve a consent decree does not merely operate as a "rubber

stamp," *id.*, "its review of a proposed consent decree is . . . more deferential in the context of a government enforcement action[.]"  *United States v. N.Y.C. Hous. Auth.*, 347 F. Supp. 3d 182, 197–98 (S.D.N.Y. 2018) (citing *SEC v. Caledonian Bank Ltd.*, 317 F.R.D. 358, 374 n.15 (S.D.N.Y. 2016)); *see also Cruz v. JKS Ventures, Inc.*, No. 23-CV-8311 (LJL), 2024 WL 814563, at *5 (S.D.N.Y. Feb. 26, 2024) ("[The Second Circuit's opinion in] *Citigroup* suggests that district court['s] review of a consent decree proposed by a government enforcement agency should be more relaxed than [its] review of a consent decree proposed by two private parties.").  As such, a district court is bound to approve a proposed consent judgment so long as the judgment is "fair and reasonable."  *Citigroup*, 752 F.3d at 294.  In addition, where, as here, a proposed consent judgment contains injunctive relief, the district court must find that the "public interest would not be disserved" by entry of the judgment.  *Id.* (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)).

Although the court should "establish that a factual basis exists for the proposed decree," the parties generally can meet this requirement by "setting out the colorable claims, supported by factual averments by the S.E.C., neither admitted nor denied by the wrongdoer[.]"  *Id.* at 295.  "Absent a 'substantial basis in the record' to conclude that the consent decree is not fair and reasonable or that the public interest would be disserved, 'the district court is *required* to enter the order,' irrespective of the adequacy of the consent decree."  *N.Y.C. Hous. Auth.*, 347 F. Supp. 3d at 198 (quoting *Citigroup*, 752 F.3d at 294) (emphasis added).

**B.    Analysis**

Having reviewed the terms of the Consent and Proposed Final Judgment, in light of the *Citigroup* standard, the Court finds that the Consent and Proposed Final Judgment are fair, reasonable, and in the public interest.  The Court explains those findings in more detail below.

1.     The Consent and Proposed Final Judgment are Fair and Reasonable

In *Citigroup*, a case involving an SEC consent decree, the Second Circuit identified factors that district courts "should, at a minimum, assess" in reviewing a government agency's consent decree for fairness and reasonableness: "(1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind." *Citigroup*, 752 F.3d at 294–95 (internal citations omitted).  When evaluating these factors, "[t]he primary focus of the inquiry . . . should be on ensuring the consent decree is procedurally proper, using objective measures similar to the [four] factors . . . [and] taking care not to infringe on the S.E.C.'s discretionary authority to settle on a particular set of terms." *Id.*  at 295.

Here, the Court finds that all four *Citigroup* factors weigh in favor of finding the Consent and Proposed Final Judgment to be fair and reasonable.

a.   Basic Legality of the Consent and Proposed Final Judgment

First, the Court finds that the Consent and Proposed Final Judgment satisfy the "basic legality" factor.  "A proposed consent judgment with the U.S. government is legal as long as the court has authority to enter the judgment and the plaintiff has authority to enforce it."  *Acosta v. Bratcher*, 343 F. Supp. 3d 108, 112 (W.D.N.Y. 2018) (citing *Caledonian Bank*, 317 F.R.D. at 370; *Benjamin v. Jacobson*, 172 F.3d 144, 158 (2d Cir. 1999) (en banc)).  In analyzing this factor, courts in this Circuit have examined "whether the relevant statutes under which the action was brought permit the relief requested in the consent decree."  *N.Y.C. Hous. Auth.*, 347 F. Supp. 3d at 200; *see also e.g.*, *Caledonian Bank*, 317 F.R.D. at 370 (examining whether the proposed decree's injunctive relief and disgorgement provisions fell within the SEC's authority under the federal securities laws); *Untied States v. Int'l Bus. Machs.*, No. 14-CV-936 (KMK), 2014 WL 3057960,

at *2 (S.D.N.Y. July 7, 2014) (determining whether the provisions for the defendant's reimbursement of "response costs" incurred by the Environmental Protection Agency and the defendant's agreement to take future remedial action comported with the Comprehensive Environmental Response, Compensation, and Liability Act).

Here, the terms of the Consent and Proposed Final Judgment boil down to three essential provisions: injunctive relief, disgorgement with pre-judgment interest, and civil penalties. Pursuant to relevant statutes and case law, the Court has authority to enter a judgment in this action for injunctive and monetary relief, and the SEC has authority to enforce that judgment.  First, the Consent and Proposed Final Judgment provide for injunctive relief that, *inter alia*, permanently enjoins Defendants from committing future violations of federal securities laws, "which is plainly within the SEC's authority" to seek and the Court's authority to grant.  *Caledonian Bank*, 317 F.R.D. at 370; *see also* 15 U.S.C. § 77t(b) ("Whenever it shall appear to the [SEC] that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of [the Securities Act], the [SEC] may, in its discretion, bring an action in any district court . . . to enjoin such acts or practices[.]"); 15 U.S.C. § 78u(d)(1) ("Whenever it shall appear to the [SEC] that any person is engaged or is about to engage in acts or practices constituting a violation of [the Exchange Act], it may in its discretion bring an action in the proper district court . . . to enjoin such acts or practices[.]")); *SEC v. Genovese*, 553 F. Supp. 3d 24, 45 (S.D.N.Y. 2021) ("The Securities Act [and the Exchange Act] each authorize the SEC to seek injunctive relief to proscribe future violations of federal securities laws, which a court shall grant upon the proper showing." (citing, *inter alia*, 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1))).

Second, the Consent and Proposed Final Judgment require Defendants and Relief Defendant Yue to disgorge $228,500,000, plus $25,000,000 in pre-judgment interest, pursuant to

Section 20(d) and Section 21(d)(3).  (*See* Consent, ¶ 2(c); Proposed Final J., Part IV.)  Seeking

such disgorgement is plainly with the SEC's authority.  *See Caledonian Bank*, 317 F.R.D. at 370

("The SEC may also seek disgorgement: a 'reasonable approximation of profits causally connected

to the [securities] violation.'" (quoting *SEC v. Contorinis*, 743 F.3d 296, 300 (2d Cir. 2014))).  "As

with the award of disgorgement, the Court has broad discretion whether to grant pre[-]judgment

interest and what rate to use for calculation."  *SEC v. Premier Links, Inc.*, No. 14-CV-7375 (CBA)

(ST), 2022 WL 5422661, at *5 (E.D.N.Y. July 27, 2022), *R&R adopted*, 2022 WL 4118519

(E.D.N.Y. Sept. 9, 2022).  Here, the disgorgement amount of $228,500,000, which is equal to the

total amount that Defendants raised from the EB-5 investors, [6] represents a "reasonable

approximation" of Defendants' profits gained as a result of the fraudulent conduct alleged in the

Amended Complaint.  (Proposed Final J., Part IV.)  Therefore, the terms regarding disgorgement

and pre-judgment interest set forth in the Consent and Proposed Final Judgment meet the "basic

legality" factor.  *See Premier Links*, 2022 WL 5422661, at *4–5, 7 (finding SEC's proposed

consent judgments seeking, *inter alia*, disgorgement of the investor money and pre-judgment

interest were legal pursuant to Section 20(d), Section 21(d)(3), and Section 21(d)(7) of the

Exchange Act).

Lastly, the Consent and Proposed Final Judgment provide for civil monetary penalties of

$18,646,380, which amounts to $3,101,745 for Xia and $15,538,635 for Fleet. [7]  "In an

---

[6] This amount is "less certain administrative fees Defendants obtained from the EB-5 [i]nvestors and that were paid to third-party agents who recruited investors."  (SEC Br., at 9.)

[7] The Court discussed the methodologies for calculating these numbers in its December 8, 2022 Memorandum & Order issuing the Preliminary Injunction.  *See Xia*, 2022 WL 17539124, at *30 & n.43.  There, the Court explained that it had reached these figures by multiplying the number of months—after March 27, 2016—where Defendants received payments from investors (*see* Dkt. 6-48, at ECF 29–31), by the "maximum penalty" available "for third-tier violations occurring after November 2, 2015," namely, "$207,183 per violation [for a person] and $1,035,909 per violation for entities."  (Dkt. 182, at 19.)  The discrepancy between the civil penalty amount calculated in

enforcement action in federal district court, the SEC may seek civil penalties to discourage a defendant from attempting to engage in unlawful action in the future." *Caledonian Bank*, 317 F.R.D. at 370 (citing *SEC v. Razmilovic*, 738 F.3d 14, 38 (2d Cir. 2013)); *see also Premier Links*, 2022 WL 5422661, at *6 ("Both the Securities Act and the Exchange Act authorize three tiers of monetary penalties for violations of the securities laws." (citing Section 20(d); Section 21(d)(3)).

Based on the foregoing, the Court finds that the Consent and Proposed Final Judgment satisfy the basic legality requirement.[8]

### b. Clarity of the Consent and Proposed Final Judgment

The Court also finds that the terms of the Consent and Proposed Final Judgment, including the enforcement mechanisms, are clear. "A consent decree is clear when it properly defines its key provisions." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 20-CV-8924 (CM) (GWG), 2024 WL 476367, at *15 (S.D.N.Y. Feb. 7, 2024) (quoting *Int'l Bus. Machs.*, 2014 WL 3057960, at *3) (internal quotation marks omitted); *see also King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) ("A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed . . . who must be able to ascertain from the four corners of the order precisely what acts are forbidden[.]" (internal quotation marks and citations omitted)). Specifically, courts in this Circuit have found consent judgments to be sufficiently clear where the judgment details, *inter alia*, the parties' agreement, the defendant's responsibilities, and

---

the December 8, 2022 Memorandum & Order as to Xia and the civil penalty amount assessed against him in the Consent and Proposed Final Judgment is discussed *supra* at footnote 5.

[8] As to other equitable relief set forth in the Consent and Proposed Final Judgment, the "basic legality" requirement is also met. *See* 15 U.S.C. § 78u(d)(5) ("In any action or proceeding brought or instituted by the [SEC] under any provision of the securities laws, the [SEC] may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors.").

enforcement mechanisms under the judgment. *See Acosta*, 343 F. Supp. 3d at 113 (explaining that a proposed consent judgment was clear because it "specifically state[d] exactly what injunctive relief [was] proposed, how much [d]efendants [were] ordered to pay, the form of payment, the time schedule for doing so, [and] how [d]efendants [would] distribute the payments"); *Int'l Bus. Machs.*, 2014 WL 3057960, at *3 (holding that a consent decree was "sufficiently specific" as it "defin[ed] key terms," detailed "specific enforcement mechanisms," and specified "Defendant's responsibilities under the decree"); *United States v. Chestnut Petroleum Dist., Inc.*, No. 19-CV-3904 (PMH), 2020 WL 5505298, at *2 (S.D.N.Y. Sept. 11, 2020) (holding that the clarity factor met because the proposed consent decree outlined the defendants' agreement to pay civil penalties and the process associated therewith, "the injunctive relief and reporting requirements," and "the parties' agreement for stipulated penalties for violating the agreement"); *Su v. Cmty. Health Ctr. of Richmond, Inc.*, No. 21-CV-3094 (ARR) (TAM), 2024 WL 333625, at *2 (E.D.N.Y. Jan. 8, 2024) (finding that the proposed consent judgment was "exceedingly clear" because it laid out, among other things, to whom the judgment applied, under which provision the plaintiff filed her complaint, the injunctive relief proposed, the amount that the defendants must pay, and the procedures for effectuating the payment).

Here, the Consent and Proposed Final Judgment are sufficiently clear. First, they lay out to whom the Consent and Proposed Final Judgment apply, i.e., Defendants and Relief Defendant Yue, and what the alleged violations are. (*See* Consent, ¶¶ 1, 2(a); Proposed Final J., at 1, Parts I–II.) In addition, the Consent and Proposed Final Judgment outline the injunctive relief that was agreed to by the Parties, including specific, limited carveouts applicable to Xia. (*See* Consent, ¶¶ 2(a)–(b); Proposed Final J., Parts. I–III.) Furthermore, the Consent and Proposed Final Judgment identify the obligations of Defendants and Relief Defendant Yue in terms that are

specific and clear.  Specifically, Defendants and Relief Defendant Yue are required to pay disgorgement, pre-judgment interest, and, as to Defendants, civil monetary penalties (*see* Consent, ¶ 2 (c); Proposed Final J., Part IV); Xia is required to relinquish any direct and/or indirect control and ownership of Fleet and to certify in writing his compliance (*see* Consent, ¶¶ 2(i), 3(c); Proposed Final J., Parts VII, VIII(b)); and Defendants are required to provide "reasonable cooperation" to the EB-5 investors to assist them in obtaining benefits under the EB-5 program (*see* Consent, ¶ 2(f); Proposed Final J., Part X).  Moreover, the Consent and Proposed Final Judgment specifically state "the form of payment, the time schedule for doing so, where the payments should be sent, and what [the SEC] will do with them once received."  *Acosta v. Agave Elmwood Inc.*, No. 17-CV-605 (EAW), 2018 WL 5519540, at *3 (W.D.N.Y. Oct. 29, 2018); (*see* Consent, ¶ 2(d); Proposed Final J., Part V).  What is more, the enforcement mechanisms are clear. The Consent and Proposed Final Judgment set forth the procedures in the event that Defendants and Relief Defendant Yue fail to fulfill their obligations.  (*See, e.g.*, Proposed Final J., Part IV ("The [SEC] may enforce the Court's judgment for disgorgement and pre[-]judgment interest by using all collection procedures authorized by law, including, but not limited to, moving for civil contempt at any time after the Second Payment Date. . . . The [SEC] may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.*, and moving for civil contempt for the violation of any Court orders issued in this action.  Defendants and Relief Defendant [Yue] shall pay post judgment interest on any amounts due after 30 days from the entry of this Final Judgment pursuant to 28 U.S.C. § 1961."); *id.*, Part V(b) ("If Defendants and/or Relief Defendant fail to make any payment by the date agreed and/or in the amount agreed according to the schedule set forth above, all outstanding payments under this Final Judgment, including post-judgment

14

interest, minus any payments made, shall become due and payable immediately at the discretion of the staff of the Commission without further application to the Court.").)

The Court therefore finds that the Consent and Proposed Final Judgment "will leave no uncertainty in the minds of Defendants [and Relief Defendant Yue], and consequently its terms meet the clearness standard."  *Acosta*, 343 F. Supp. 3d at 113.

c.  Resolution of Actual Claims

Third, the Court finds that the Consent and Proposed Final Judgment reflect a resolution of the actual claims in the Amended Complaint relating to Defendants and Relief Defendant Yue. "Where a proposed decree resolved 'the actual claims in the complaint' by establishing 'a remedial plan aimed to address and update the allegedly unlawful' conduct outlined in the complaint, courts have found that this factor from *Citigroup* has been satisfied."  *Cruz v. JKS Ventures, Inc.*, No. 23-CV-8311 (LJL), 2024 WL 3209398, at *7 (S.D.N.Y. June 25, 2024) (quoting *In re NYC Policing During Summer 2020 Demonstrations*, 2024 WL 476367, at *17).  In particular, "[i]t should be uncontroversial . . . that a proposed consent decree in an SEC enforcement case that grants disgorgement and enjoins a defendant from violating the federal securities laws clearly reflects a resolution of claims brought under the anti-fraud provisions of those statutes."  *N.Y.C. Hous. Auth.*, 347 F. Supp. 3d at 205.

Here, the Consent and Proposed Final Judgment expressly resolve the claims alleged by the SEC against Defendants and Relief Defendant Yue, and provide the SEC with the relief sought in the Amended Complaint.  As discussed, the Amended Complaint alleges that, between early 2010 and late 2017, Defendants fraudulently raised more than $229 million by offering and selling limited partnership interests to over 450 Chinese nationals who participated in the EB-5 Immigrant Investor Program administered by the USCIS, and then misappropriated those funds for their

15

personal purposes, in violation of Section 17(a) of the Securities Act, 15 U.S.C. §§ 77q(a), and Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  (*See* Am. Compl., Dkt. 98, ¶¶ 1–2, 4, 78–100, 191–96.)  The SEC also alleges that Defendants' conduct unjustly enriched Relief Defendants.  (*See id.* ¶¶ 12, 23–26, 197–99.)  Accordingly, the SEC makes four prayers for relief: (1) injunctive relief permanently enjoining Defendants from violating federal securities laws; (2) disgorgement of "all ill-gotten and/or unjust enrichment" from Defendants and Relief Defendants as a result of Defendants' alleged violations, plus pre-judgment interest, pursuant to Sections 21(d)(5) and 21(d)(7) of the Exchange Act, 15 U.S.C. §§ 78u(d)(5) and 78u(d)(7); (3) civil monetary penalties from Defendants pursuant to Section 20(d) and Section 21(d)(3); and (4) continued appointment of the Monitor and execution of the TRO for the duration of this case.  (*See* Am. Compl., Dkt. 98, at 50–51.)  The Consent and Proposed Final Judgment directly resolve all four requests, as they demand that Defendants refrain from committing future violations of federal securities laws; that Defendants and Relief Defendant Yue disgorge all ill-gotten gains and pay pre-judgment interest; that Defendants pay civil monetary penalties; and that the Monitor Order and the Preliminary Injunction remain in full force and effect until the monetary obligation of Defendants and Relief Defendant Yue have been satisfied.  (*See* Consent, ¶ (2) (a)–(c), (g); Proposed Final J., Parts I–V.)  As such, the relief provided in the Consent and Proposed Final Judgment dispenses with the entirety of the SEC's claims alleged against Defendants and Relief Defendant Yue in the Amended Complaint.  The Court therefore finds that the Consent and Proposed Final Judgment satisfy the third *Citigroup* factor.

### d.  Improper Collusion or Corruption

There is no indication in the record to suggest that the Consent and Proposed Final Judgment are the result of improper collusion or corruption.  In examining whether a proposed

consent decree satisfies this factor, courts "have considered whether the settlement resulted from arm's-length negotiation, the sophistication of the parties and competence of counsel, and the extent to which the proposed decree reflects adversarial negotiations." *NYC Housing Auth.*, 347 F. Supp. 3d at 207.

Here, this factor must be viewed in the context of the extensive litigation history of this case. On January 23, 2024—more than two years after this lawsuit was initiated—the Parties reached a settlement in principle, and Defendants and Relief Defendant Yue delivered to the SEC "a signed and notarized consent to judgment reflecting the [P]arties' agreement in principle." (Dkt. 388, at 1.)[9]  Subsequently, after the Parties had reached resolution on all then-outstanding matters surrounding the settlement in principle (*see* Dkt. 435), the settlement was submitted to the Commission for review (*see* Dkt. 440).  On June 21, 2024, the Commission finally approved the terms of the settlement in principle.  (*See* Dkt. 443.)

The Parties' settlement agreement was the product of over two years of intense negotiations at arms' length.  (*See, e.g.*, 5/27/2022 Letter (the Parties' joint request for a settlement conference); 6/30/2022 Docket Order; 7/22/2022 Letter (the Parties' joint request to adjourn the settlement conference scheduled for 7/25/2022 *sine die*); 7/25/2022 Docket Order; 4/17/2023 Docket Order; 6/5/2023 Docket Order; Dkt. 337 (the Parties' joint status update regarding settlement negotiations); 8/10/2023 Docket Order; Dkt. 338 (noting the impasse in the Parties' settlement negotiations); 8/30/2023 Docket Order; 10/3/2023 Docket Order; 10/12/2023 Docket Order; 10/20/2023 Docket Order (granting the Parties' extension request to accommodate their additional settlement negotiations); 11/3/2023 Docket Order; 12/1/2023 Docket Order (noting impasse in the

---

[9] Subsequently, on April 12, 2024, Defendants and Relief Defendant Yue delivered to the SEC a signed, revised Consent to a final judgment.  (*See* Dkt. 415; 4/12/2024 Docket Order.)

Parties' settlement negotiations); Dkt. 388 (informing the Court that the Parties have reached a settlement in principle); 1/24/2024 Docket Order; 4/4/2024 Docket Order; 4/12/2024 Docket Order; 6/3/2024 Docket Order; 6/16/2024 Docket Order; 6/22/2024.)  In particular, the settlement resulted from several settlement conferences conducted by this Court over the course of approximately two years (*see* 6/28/2022 Min. Entry; 5/12/2023 Min. Entry; 9/8/2023 Min. Entry; 4/11/2024 Min. Entry), following about 22 months of discovery overseen by three different Magistrate Judges assigned to this case over the course of this action[10] (*see, e.g.*, 1/5/2022 Docket Order; 1/10/2022 Docket Order; 6/7/2022 Docket Order; 10/25/2022 Docket Order; 11/2/2022 Docket Order; 11/15/2022 Docket Order; 11/25/2022 Docket Order; 12/2/2022 Docket Order; 3/17/2023 Docket Order; 4/7/2023 Docket Order; 4/20/2023 Docket Order; 5/8/2023 Docket Order; 5/22/2023 Docket Order; 11/16/2023 Docket Order; 11/26/2023 Docket Order; 11/29/2023 Docket Order; 12/1/2023 Min. Entry & Order).  The Parties had ample opportunity to take testimony, review documents, and assess the strengths and weaknesses of their cases.  Furthermore, the record provides no basis for finding that the SEC counsel and counsel for Defendants and Relief Defendant Yue are not highly competent and experienced.  In light of this record, the Court finds that the Consent and Proposed Final Judgment are not tainted by any improper collusion or corruption and therefore satisfy the fourth factor.  *Cf. Cruz*, 2024 WL 3209398, at *8 (finding evidence of improper collusion in connection with the first proposed consent decree because it was "reached in a hurried fashion within days of Defendant having been served with the Complaint").

*     *     *

---

[10] The three Magistrate Judges are the Honorable Cheryl L. Pollak, the Honorable Ramon E. Reyes, and the Honorable Joseph A. Marutollo.

Accordingly, because the Court finds that the Consent and Proposed Final Judgment satisfy all four *Citigroup* factors, it concludes that the Consent and Proposed Final Judgment are fair and reasonable.

2.  <u>The Injunctive Relief Does Not Disserve the Public Interest</u>

Because the Consent and Proposed Final Judgment include injunctive relief, the Court "must also consider the public interest in deciding whether to grant the injunction." *Citigroup*, 752 F.3d at 296 (citing *eBay*, 547 U.S. at 391; *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)). Courts in this Circuit have approved consent judgments when the judgments do not "bar[] private litigants from pursuing their own claims independent of the relief obtained under the consent decree," *id.* at 297, or when "no participants in [the] proceeding have set forth a legitimate basis for concluding that the consent decree would harm the public[.]" *Caledonian Bank*, 317 F.R.D. at 374.

Here, the Court finds that there is no evidence that the public interest would be disserved if the Consent and Proposed Final Judgment, including the injunctive relief, were approved. On the contrary, based on the Court's knowledge of the case, it is clear that the Consent and Proposed Final Judgment serve the public interest, especially the EB-5 investors' interests, both financially and in terms of their immigration status. As the SEC represents, "the settlement terms set forth in the Consent and Proposed Final Judgment obtain substantial relief for the EB-5 [i]nvestors and offer those investors the opportunity to be returned the entirety of the money that was fraudulently obtained from them and also to attempt to remain in the EB-5 program to continue to pursue permanent residency status, if permissible under applicable laws." (SEC Br., at 10.) The Court also finds that the monetary relief provided for in the Consent and Proposed Final Judgment "is significant and may deter both Defendants and others from engaging in conduct like that alleged" in this case. (*Id.*) Moreover, the Consent and Proposed Final Judgment will promote the SEC's

19

"goals of imposing liability on the persons and entities whom the SEC believes are responsible for securities law violations, reduce the continued expenditure on public funds on lengthy litigation, and provide[] a prompt and effective response to alleged securities violations that offers a degree of certainty to the EB-5 [i]nvestors." (*Id.* at 10–11.)  Additionally, as the SEC notes, the entry of the injunctions enjoining Fleet from participating in future securities offerings and largely barring Xia from future securities offerings is appropriate and would not disserve the public interest.  (*Id.* at 11.)

In addition, the Consent and Proposed Final Judgment do not prevent private litigants, e.g., the EB-5 investors, from bringing a damages action against Defendants based on substantially the same facts as alleged in the Amended Complaint in this case.  (*See* Consent, ¶ 7; Proposed Final J., Part VI.)  Finally, neither Defendants and Relief Defendant Yue nor any other parties in this action have opposed the Consent and Proposed Final Judgment or otherwise argued that they would harm the public interest.

Thus, the Court concludes that the Consent and Proposed Final Judgment serve the public interest.

\*     \*     \*

Giving due deference to the Circuit's strong policy favoring the approval and enforcement of consent decrees and the desires of the Parties seeking to approve the Consent and enter the Proposed Final Judgment, the Court finds that the Consent and Proposed Final Judgment are fair and reasonable and that they comport with the public interest.  In light of the foregoing, the Court approves the Consent and enters the Proposed Final Judgment.

## II.    The Appointment of a Distribution Administrator is Warranted

The SEC also requests that the Court appoint a distribution administrator and specifically recommends the appointment of Robert Seiden as the distribution administrator for the purposes

20

of implementing the distribution process agreed to by the Parties in order to preserve the rights of the EB-5 investors.  (*See* SEC Br., at 7, 11–12.)  For the reasons explained below, the Court finds that the circumstances warrant the appointment of Mr. Seiden to oversee the administration of the distribution process in accordance with the terms of the settlement.

### A.  Legal Standard

The Second Circuit has recognized the equity powers of district courts to appoint distribution administrators, trustees, or receivers "to effectuate the purposes of the federal securities laws."  *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1105 (2d Cir. 1972), *abrogated on other grounds by SEC v. Ahmed*, 72 F.4th 379 (2d Cir. 2023); *see also id.* (finding appointment of trustee "to receive [] funds, to distribute them to defrauded public investors[,] and to report to the court on the true state of affairs" was "an appropriate exercise by the district court of its equity powers"); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436 (2d Cir. 1987) ("Although neither the [Securities Act] nor the [Exchange Act] explicitly vests district courts with the power to appoint trustees or receivers, courts have consistently held that such power exists[.]"); 15 U.S.C. § 78u(d)(5) ("In any action or proceeding brought or instituted by the [SEC] under any provision of the securities laws, the [SEC] may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors.").  Courts in this Circuit have used such equity powers to appoint distribution administrators to oversee the administration and distribution of fair funds.  *See, e.g.*, *SEC v. Arista Power, Inc.*, No.17-CV-4598 (GHW), 2021 WL 3774316, at *2 (S.D.N.Y. Aug. 25, 2021) (appointing a distribution agent for the Fair Fund "to oversee the administration and distribution of the Fair Fund in coordination with the SEC's counsel of record pursuant to the terms of a distribution plan" that was to be approved by the court); *SEC v. Bear, Stearns & Co.*, No. 3-CV-2937(WHP), 2004 WL 434190, at *1 (S.D.N.Y. Feb. 6, 2004) (appointing a distribution fund administrator in an SEC enforcement action to be "charged with

21

developing and administering the Distribution Fund Plans for each Distribution Fund . . . , distributing monies to eligible recipients, and dealing with the general administration and financial reporting duties of the various Distribution Funds").

### B.    Analysis

After careful consideration of the experience and qualifications of Mr. Seiden and his law firm, as well as the unique circumstances of this case, the Court finds that the appointment of Mr. Seiden as the distribution administrator is warranted.  Mr. Seiden is qualified for the tasks required to implement the distribution process here.  Mr. Seiden, the Managing Partner of Seiden Law LLP, has specialized experience serving as a court-appointed receiver to assist the court and parties in administering and distributing funds for shareholders, creditors, and litigants, both domestically and overseas.  (*See* Seiden Curriculum Vitae, Dkt. 450-5, Ex. 3, at ECF 2.)  As such, Mr. Seiden is familiar with the duties and responsibilities of a receiver/distribution administrator in a situation such as this.  Importantly, Mr. Seiden has substantial experience with China-related investment frauds, and his law firm has experience with securities matters, EB-5-related issues, and real estate.  (*See id.* at ECF 4–5.)  In particular, Mr. Seiden's firm maintains an office in China and employs attorneys who are fluent in Mandarin and who have experience in China-related matters, which will be helpful in carrying out the distribution administrator's duties in this case, including communicating with and answering questions from the EB-5 investors.  (*See id.* at ECF 4; SEC Br., at 7.)  Furthermore, Defendants and Relief Defendant Yue do not oppose Mr. Seiden's appointment.  (*See* SEC Br., at 1.)

Therefore, the Court finds it appropriate to exercise its equity powers to appoint Mr. Seiden as the distribution administrator to implement the distribution process set forth in the Parties' settlement agreement.

**CONCLUSION**

Based upon the foregoing, the SEC's Motion for Approval of Consent Settlement, Entry of Final Judgment, and Entry of Order Appointing a Distribution Administrator is granted. The Court will enter the Proposed Final Judgment and the Proposed Order Appointing Distribution Administrator. The Consent will also be separately docketed.[11]

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 26, 2024
       Brooklyn, New York

---

[11] The Court will issue the Consent and Proposed Final Judgment with one correction: Paragraph 2(e) of the Consent and Part V(b) of the Proposed Final Judgment erroneously identify the date on which the Court issued the Monitor Order as September 27, 2022; that order was issued on September 27, *2021*, in conjunction with the Court granting the SEC's TRO motion. (*See* Dkt. 11.)