# HANTMAN & ASSOCIATES
ATTORNEYS AT LAW
1120 Avenue of the Americas
4th Floor
New York, New York 10036
(P) 212-684-3933
(F) 212-465-2192
www.Hantmanlaw.com

**ROBERT J. HANTMAN**
rhantman@hantmanlaw.com
New York, New Jersey, & Florida Bars

**BY ECF**   January 28, 2025

The Honorable Pamela K. Chen
United States District Judge
United States District Court, Eastern District
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Securities and Exchange Commission v. Xia, et al*. U.S. Dist. Ct., Dkt. No. 1:21-cv-05350-PKC-JAM

Dear Judge Chen:

As you are aware, our law firm represents Defendant Richard Xia and Fleet New York Metropolitan Regional Center LLC ("Fleet") in the above-referenced matter. We also represent Mr. Xia and his affiliated companies, Fleet Financial Group, Inc., X & Y Development Group, LLC, and Perini Group, Inc. (collectively, "Moving Defendants[1]"), in *Molina v. Xia et al.*, No. 22-Civ-00864 (PKC) (JAM), over which Your Honor and Judge Marutollo are also presiding. We write respectfully to request the Court's approval of a limited carve-out from the asset freeze to facilitate payment of $45,000 toward the settlement reached in *Molina*. This settlement, discussed with Judge Marutollo by Mr. Nyall Cook from our firm, was agreed upon by both parties with the *Molina* Court's encouragement.

This settlement will end the *Molina* litigation, provide payment to workers in desperate need of funds who are represented by a non-profit legal group. This appears reasonable and moral as the workers contributed to the actual construction of Eastern Mirage, a mix-use commercial building project located at 42-31 Union Street, Flushing, New York (*Molina* Dkt. No. 1).

Notwithstanding the foregoing, we do not expect the Securities and Exchange Commission's ("SEC") to oppose this request. If they do, however, we intend to seek relief from the new SEC administration and the recently appointed SEC Commissioner. This approach aligns with our client's intent to address these issues more comprehensively in the future. We have also consulted with the Court-Appointed Monitor, who has reserved his position on this matter pending further information. While we understand and respect his position, we believe it

---

[1] We do not represent Defendant Gotham Framing, Inc. (Gotham Framing). After the *Molina* Court vacated the Clerk's entry of default against Defendants, Plaintiffs renewed their motion for default judgment against Gotham Framing on October 4, 2024, which remains pending before the *Molina* Court.

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

is important to bring this matter to Your Honor's attention at this time. Our immediate focus remains on fulfilling our commitment to Judge Marutollo, efficiently resolving this matter to clear Your Honor's docket, and avoiding unnecessary legal fees associated with protracted litigation.

For these reasons and those detailed below, we hope to move this Court requesting the relief requested herein.

### 1. Background and Basis for the Carve-Out Request.

The Plaintiffs in *Molina* (hereinafter "Plaintiffs") initiated the *Molina* lawsuit on February 16, 2022, alleging violations of the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL) related to unpaid wages, retaliation, and improper wage statements connected to work performed at the Eastern Mirage project. Eastern Mirage is a critical asset within Fleet's portfolio, owned and managed by Defendants Richard Xia and Fleet Financial Group, Inc., and serves as collateral for EB-5 investors in this case.

Plaintiffs were employed by Defendant Gotham Framing, a subcontractor retained by Defendant Perini Group, Inc., the general contractor for Eastern Mirage. Gotham Framing controlled employment terms, including wage payments and daily supervision of Plaintiffs, while Defendants had no role in hiring, firing, scheduling, or managing payroll records. As of today, Defendant Gotham Framing has failed to appear or otherwise defend against Plaintiffs' claims in this lawsuit.

Over the course of this litigation, the *Molina* Court vacated a default judgment against Defendants on August 5, 2024. Following the exchanges of subsequent responsive pleadings and discovery, including depositions of key ex-Fleet employees, it was revealed that Defendant Gotham Framing, rather than the Moving Defendants, bore primary liability for Plaintiffs' claims. Defendant Gotham Framing submitted fraudulent invoices, overstating its payment obligations. Gotham Framing submitted fraudulent invoices, including a $45,000 claim for an agreed $4,500 obligation (*Molina* Dkt. No. 56-1, at ¶¶ 8-11). Moving Defendants have contested liability, asserting that Gotham Framing alone was responsible for the employment violations.

After rounds of negotiations, the parties reached a settlement in principle and jointly submitted a letter to the Court (*Molina* Dkt. No. 78) outlining this agreement on December 20, 2024. The settlement resolves wage and retaliation claims arising directly from operations connected to the Eastern Mirage project, a central subject in the SEC's allegations against Moving Defendants.

The settlement agreement in principle provides for a total payment of $60,000 to Plaintiffs, with $45,000 designated as the First Payment. The parties agreed that this First Payment is to be drawn from the SEC-frozen assets and is contingent upon court authorization in the SEC case.

While Moving Defendants maintain that they are not liable for the causes of action alleged by Plaintiffs, Moving Defendants wish to resolve the matter amicably and avoid the risks

2

and costs associated with prolonged litigation and conserve Plaintiffs' resources in pursuing Defendant Gotham Framing, who, as revealed during discovery and based on information, exploited Plaintiffs' wages and failed to engage or respond throughout this matter. The settlement was reached through extensive discussions with Plaintiffs' counsel, allowing all parties to bring this dispute to a close efficiently and without further contention.

### 2. The Proposed Carve-Out Strikes a Balance Between Asset Preservation and Equitable Resolution.

The requested carve-out aligns with the Second Circuit's principles allowing modifications to asset freeze where equitable and appropriate. In the order granting the intervenor's motion for, among other things, the modification of the asset-freeze preliminary injunction, this Court affirmed that "a moving party [seeking to modify a preliminary injunction must] demonstrate that there has been a 'significant change in facts or law' that justifies the modification." *SEC v. Xia*, No. 21-CV-5350 (PKC) (JAM), 2024 U.S. Dist. WL 964676, at *33-34 (citing *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006), aff'd, 246 F. App'x 73 (2d Cir. 2007) (summary order) ("A preliminary injunction may be modified if the moving party demonstrates that a material change in circumstances justifies the alteration.") (other citations omitted)).

Moreover, the Second Circuit courts also assess whether "the interests of investors in preserving assets for possible later restitution [are] outweighed by the interests [of defendants] in facilitating equitable resolutions." *SEC v. Wojeski*, No. 10-CV-457 (GLS/DRH), 2011 WL 13136029, at *2 (N.D.N.Y. Feb. 11, 2011). See also *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972) (noting the need to weigh the deleterious effects of an asset freeze against its necessity). Moreover, the court must "consider whether the requested modification would be 'in the best interests of the defrauded investors.'" *Xia*, 2024 WL 964676 at *35 (quoting *Manor Nursing*, 458 F.2d at 1106; *SEC v. McGinn, Smith & Co., Inc.*, No. 10-CV-457 (GLS) (CFH), 2014 U.S. Dist. 2014 WL 675611, at *3 (N.D.N.Y. Feb. 21, 2014)).

As noted above, equitable modifications to asset freezers are warranted when they serve the interests of justice without undermining the purpose of the freeze. Resolving legitimate claims through settlement is one way to address harm to affected parties. Here, the proposed settlement of $60,000—of which $45,000 is requested to be released immediately from the frozen assets—represents Moving Defendants' good-faith efforts to resolve related claims amicably and avoid prolonged litigation.

To begin with, *Molina* case shares a direct factual nexus with the instant case, as both arise from overlapping allegations tied to the Eastern Mirage project. As we enumerated, Eastern Mirage serves as collateral for EB-5 investors in the SEC action and is currently subject to a proposed sale pursuant to the Final Judgment (Dkt. No. 460). The requested carve-out directly addresses Plaintiffs' unpaid wage claims and retaliatory conduct tied to Eastern Mirage—issues integral to the SEC's allegations regarding Defendants' transfer of Fleet. Resolving these claims mitigates litigation risks for Fleet's prospective new owner by preserving the asset's value and minimizing liabilities. It also advances the interests of Plaintiffs as well as the EB-5 investors in

this case, whose investment-backed expectations and permanent residence status depend on the completion of Fleet's projects including, principally, Eastern Mirage.

The $45,000 carve-out represents a negligible fraction of the frozen assets and disgorgement amount[2] in this case and is justified by significant changes in circumstances, including, most urgently, Fleet's impending sale pursuant to the Final Judgment. Eastern Mirage, a crucial asset within Fleet's portfolio and collateral for the EB-5 investors, remains central to both the SEC case and this litigation.

Indeed, as Your Honor previously recognized, the number of lawsuits pending against Defendants seeking to recover from the same frozen assets creates substantial risks to the asset's value. *Xia*, 2024 WL 964676 at *36. But this case has progressed to a post-settlement phase. To date, the Xia Court has authorized and facilitated the release of $19.5 million (Dkt. Nos. 480, 482) from the frozen assets, demonstrating its ability to balance asset preservation with addressing critical obligations. Resolving the claims in the present case—which represents the least significant financial burden among pending litigations with a settlement of just $45,000— helps reduce litigation risks, preserves Eastern Mirage's value, and facilitates Fleet's sale to new ownership under the Court's supervision without exposing Eastern Mirage to further unnecessary litigation risk.

Also, although the preservation of sufficient funds remains paramount, Your Honor has shown flexibility in addressing specific obligations. As an example, Your Honor granted the Monitor's motion to release funds for property tax payments related to Fleet's projects, including Eastern Mirage (Dkt. No. 532). Similarly, on December 2, 2024, Your Honor approved the release of $118,785 for USCIS filing and attorneys' fees to ensure regulatory compliance for Fleet's transfer (Dkt. No. 529). These examples, including Your Honor's approval of CTBC's motion to modify the asset freeze and preserve the value of deteriorating collateral (Dkt. No. 452), demonstrate a consistent approach to addressing critical obligations that safeguard the value of assets and support ongoing Fleet projects. The requested $45,000 carve-out, aimed at resolving wage claims tied to Eastern Mirage, aligns with these approved modifications, all of which ensure the preservation and effective management of Fleet's assets.

Defendants have no alternative source of funds to satisfy the settlement payment, making the carve-out essential to fulfilling the agreement. *Cf. Wojeski* (preserving the limited assets was critical to restitution when defendants failed to show a lack of alternative sources of payment). At the November 8, 2024, contempt hearing, Qiuxing Xia, Defendant Xia's sister, testified that Defendant Xia has been relying on financial support from his parents and other family members to cover various obligations. These include expenses for necessary living costs as well as the treatment and funeral of his wife's sister, who was battling terminal cancer.

By requesting only this limited amount, the carve-out strikes a careful balance between preserving the primary purpose of the asset freeze—ensuring sufficient funds remain available

---

[2] The final judgment (Dkt. No. 460) requires a total of $272 million in disgorgement, penalties, and interest. To date, the *Xia* Court has already authorized and secured payments of $9.5 million (Dkt. No. 480) and $10 million (Dkt. No. 482) from the frozen assets, following its August 28, 2024, order granting the SEC's motion for a turnover of funds pursuant to the final judgment.

4

for potential restitution—and addressing the immediate and legitimate claims of the Plaintiffs. It furthers the equitable principles established in Second Circuit precedents that heighten timely and fair compensation for harmed parties while safeguarding the value of key assets subject to litigations, like Eastern Mirage, for the benefit of all stakeholders.

      We respectfully request the Court's approval of this limited modification to the asset freeze to facilitate the settlement in *Molina*. We appreciate the Court's attention to this matter and are available for any questions or further submissions as required.

      Respectfully submitted,

/s/ Robert J. Hantman, Esq.
Robert J. Hantman, Esq.
HANTMAN & ASSOCIATES
www.hantmanlaw.com
1120 Avenue of the Americas 4th Floor
New York, NY 10036
Tel: (212) 684-3933
Fax: (646) 380-3299
rhantman@hantmanlaw.com
*Counsel for Defendant Xia and Fleet*

cc: all counsel of record (by ECF)