**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>v.<br><br>RICHARD XIA, a/k/a YI XIA, et al.,<br>         Defendants,<br>     and<br>JULIA YUE, a/k/a JIQUING YUE, et al.,<br>        Relief Defendants. | No. 21-cv-05350-PKC-JAM |

## DECLARATION OF ROBERT J. HANTMAN, ESQ. IN SUPPORT OF APPROVAL OF FEE APPLICATION FOR PAYMENT OF HANTMAN & ASSOCIATES

I, Robert J. Hantman, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am the founder and a member of Hantman & Associates ("the Firm"), and we respectfully submit this motion on behalf of Defendants Richard Xia ("Xia") and Fleet New York Metropolitan Regional Center LLC ("Fleet") (collectively, "Defendants") to request the release of funds from the frozen accounts to cover attorneys' fees incurred from August 8, 2024, to February 14, 2025 on the above reference case only since we entered an appearance.

2.  The request is limited to services that directly serve the best interests of the EB-5 investors and aim to prevent or mitigate potential liens or judgments that could affect the Projects and the investors' financial interests.

3.  The requested amount is supported by contemporaneous billing records detailing legal and related services that have directly benefited the investors. These services were provided at a discounted hourly rate, which is lower than the rate charged by the Monitor, with whom we communicate as needed.

1

4.     Notably, our filings and court appearances are documented in PACER and publicly available. To our knowledge, there have been no complaints regarding our motions, status reports, or efforts while our firm played a key role in resolving the case with the SEC and this Court, a fact well known to all parties.

5.     We have made every effort to maintain constant coordination with our client, despite challenges posed by the asset freeze and his obligations overseas. Additionally, we have worked cooperatively with the SEC, the Monitor, Mr. Leo, Global Law Group, and others to protect the best interests of the investors.

6.     Finally, funds are readily available, from those that are frozen and the approximately $700,000 held in trust by Mayer Suozzi English & Klein P.C[1]. The individual with the most detailed knowledge of these funds is Paul Millus (pmillus@msek.com)[2].

## BACKGROUND AND EXPERIENCE

7.     With fifty years of legal experience, I previously served as General Counsel for an international architectural engineering firm involved in the original Giants football stadium. I was also an Adjunct Professor of Construction Law at Cardozo Law School and a member of Peckar & Abramson before becoming the managing partner of Hantman & Associates.

8.     I earned a Juris Doctor degree from the University of Miami School of Law in 1975 and a Bachelor of Arts in Political Science with honors from American University in 1972.

9.     I am admitted to the Bars of New York, New Jersey, and Florida, as well as the Federal Courts in New York, Florida, and other jurisdictions.

---

[1] This information was previously raised in the Firm's earlier fee application (ECF No. 420 and related filings).
[2] While the SEC has claimed that these funds were derived from questionable sources, no evidence has been provided to support this assertion.

2

10.     Our firm's experience is detailed on our website, www.hantmanlaw.com. More recently, we successfully defended a Texas bus company that transported migrants from Texas to New York in a case where the plaintiff was the City of New York Commissioner of Social Services, and our adversary was Paul, Weiss, Rifkind, Wharton & Garrison.

11.     Recently, we also successfully litigated a defamation case against the Miami New Times in Miami, Florida, where the opposing counsel was Holland & Knight.

12.     Approximately 20 years ago, after a three-and-a-half-week jury trial in the Southern District of New York, we secured a verdict exceeding $1.2 million against the New York Yankees. Additionally, we successfully managed a significant criminal and civil case involving Steven Seagal in the Eastern District of New York before Judge Block and the U.S. Attorney's Office. Furthermore, for over twelve years, we represented the Colombian Foreign Ministry, assisting the Colombian Consulate in New York.

13.     Over the years, our firm has successfully litigated cases against numerous high-profile entities and individuals, including Amazon, Kevin Porter, Women Model Management, Montel Williams, Don King Productions, Shelly Finkel, Gary Shaw, Danny DeVito, Anna Nicole Smith, Fabio, John Thomas Financial, Trump Model Management, Snooki, Rick Ross, Magic Johnson, OneWest, the Atlantic City Housing Authority (securing an arbitration award of over $2 million), the Los Angeles Times, Pro Elite, Wladimir Klitschko, and others.

14.     Our firm also secured the largest private defamation verdict in the history of New Jersey and has successfully handled cases across multiple jurisdictions, including California, Arizona, Nevada, Georgia, Washington, D.C., Washington State, and New Jersey. Additionally, we defended one of the largest drug conspiracy cases in Las Vegas, Nevada, before Judge Harry R. Claiborne.

15.     Given that many of our cases are handled on a contingency basis, my average hourly rate exceeds $1,200. However, in this case, our retainer was limited to $500 per hour for my services and an even lower rate for associates and other team members. This adjustment was made in light of Defendants' financial constraints.

16.     We did not anticipate entering this case until prior counsel moved to withdraw, leaving Defendants without legal representation or access to funds, as all assets had been frozen.

## PROCEDURAL HISTORY AND CONTEXT

17.     Since our appointment as counsel of record in the SEC case on August 8, 2024, Hantman & Associates has taken on substantial responsibilities to ensure compliance with the Court's orders. Additionally, we have managed various administrative tasks related to the Eastern Mirage and Eastern Emerald projects.

18.     Our efforts have included overseeing daily project operations and ensuring continuity in place of the Court-appointed Monitor, whose hourly rate is significantly higher than ours.

19.     By assuming these responsibilities, we have helped reduce costs to the estate while preserving project value and protecting investor interests.

20.     At the same time, the freezing of Defendants' assets while denying them the ability to retain legal counsel to represent Richard Xia and Fleet Corporation has caused us serious financial problems and lost income from other cases we could have been working on.

21.      Our firm has actively cooperated with the Court, the Monitor, and the SEC to advance this project while charging significantly lower rates than other law firms and far less than the Monitor's average fees of $28,817.55 per month.

22.     Additionally, we only became involved in this case after prior counsel withdrew. Had any firm other than Hantman & Associates taken over at that stage, the costs would have been significantly higher, potentially ten times as much due to higher hourly rates and the need for extensive case review.

23.     Moreover, no firm would have agreed to take on the case without a substantial retainer, which this Court would not have permitted. This should be a key consideration in ruling on this application.

24.     Our decision to take on this case was driven by our commitment to ensuring the success of the Project, which would facilitate payment for prior services rendered.

25.      Additionally, it provided an opportunity to work on a complex and unique case against formidable counsel, including the SEC. Our involvement has also helped minimize the Monitor's costs to Defendants and, ideally, reduce or mitigate conflicts between our client and the Monitor.

26.     Finally, the effort to salvage this Project and present it before Your Honor has been both a professional challenge and a matter of reputational significance—one that we share with Mr. Leo.

27.     During the April 11, 2024, conference, the Court indicated that fee requests would receive more favorable consideration once the settlement agreement was finalized[3].

28.     This request DOES NOT include our Firm's services in defending the claim brought by Sills Cummis & Gross P.C., which, while significant, will be addressed in a separate motion.

---

[3] Conference transcript, pg. 10, line 3: "once [the settlement agreement is signed] we can deal with the outstanding fee requests that I have put off until we resolve the settlement."

## LEGAL SERVICES RENDERED

29.     The Firm has provided substantial legal services to Defendants in a highly complex and challenging matter. Our primary objective has been to protect our clients' interests while also safeguarding the best interests of the EB-5 investors, who share a vested interest in the successful completion and financial viability of the Projects.

30.     To that end, we have been working closely with our client, the Monitor, third parties, and the Court to achieve a resolution that is both professional and cost-effective, ultimately benefiting all parties involved.

31.     The legal services provided at a discounted rate include, but are not limited to the following:

a)  Representing Defendants in court, preparing and submitting legal filings, and providing status reports.

b)  Maintaining ongoing communication with the client and coordinating with the Monitor, the SEC, creditors, adverse parties, the City of New York, immigration counsel, Mr. Leo, and others.

c)  Assisting Fleet in ensuring compliance with court orders and the SEC Settlement Agreement.

d)  Filing motions for the release of funds necessary to sustain Fleet's operations, including property tax payments, insurance obligations, and legal compliance.

e)  Facilitating Fleet's compliance with USCIS, SEC, and real estate regulatory requirements.

f)  Supporting immigration-related filings and advocating for investor rights.

g) Negotiating with vendors and overseeing contractor payments to safeguard the premises.

h) Developing litigation strategy and defense, including vacating default judgments—such as in *Molina v. Xia et al.*—and reducing Fleet's liability exposure.

i) Engaging with Global Law Group, including Linda Wong, Esq., and Mr. John Leo.

j) Addressing matters involving CTBC Bank.

k) Handling issues related to Con Edison.

## LEGAL STANDARD

32.     The Court has the authority to address the Firm's fee application within the broader context of the case. Federal courts may exercise ancillary jurisdiction over fee disputes when such disputes are connected to the primary action (citing *Levitt v. Brooks*, 669 F.3d 100, 103 (2d Cir. 2012)). Courts assess fee applications under the lodestar method, which determines the reasonableness of fees based on the hours worked and the prevailing market rate for comparable services. See *SEC v. Amerindo Inv. Advisors Inc.*, 2015 WL 13678841, at *1 (S.D.N.Y. Sept. 14, 2015). A fee application must demonstrate that the requested funds are not derived from fraudulent activity and that the requested expenses are appropriate, legitimate, and reasonable. See *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983).

33.     Courts weigh the preservation of frozen assets for investors against the defendants' need for legal representation. In doing so, courts prioritize restitution for investors while recognizing that effective legal representation is essential to the resolution of complex

disputes. See *SEC v. Wojeski*, 2011 WL 13136029, at *2 (N.D.N.Y. Feb. 11, 2011) (noting the primacy of restitution interests); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972) (ruling that legal fees should not reduce assets available for victim compensation). Equitable relief, including the release of frozen funds for attorneys' fees, may be granted when it aligns with the protection of investor interests. See *SEC v. Callahan*, 2015 WL 10853927, at *2 (E.D.N.Y. Dec. 24, 2015) (noting the statutory basis for equitable relief under 15 U.S.C. § 78u(d)(5)).

## AMOUNT REQUESTED & JUSTIFICATION

34.     According to contemporaneous billing records, the legal fees incurred from August 8, 2024, through February 14, 2025, total $73,510.00. (See Exhibit 1).

35.     The approximate average monthly fee for Hantman & Associates from August 8, 2024, to February 14, 2025, is $10,510.00—significantly lower than the Monitor's average monthly fee of $28,817.55.

36.     This further demonstrates the cost-effectiveness of our legal services, particularly given that Defendants require legal representation while their funds remain frozen, despite the settlement with the SEC. Additionally, the Court has previously expressed an opinion on considering a future fee application.

37.     The release of these funds is essential for Fleet and Xia to continue receiving legal representation while the firm is owed substantial fees for services rendered prior to its retention in the SEC case, though those fees are not being sought at this time.

38.     As a boutique law firm, our inability to receive compensation thus far has had a negative financial impact. Additionally, the time devoted to this case has limited our capacity to take on other paying clients.

39.    Additionally, I closely reviewed all the work done and collaborated with my associates Nyall Cook, Quinn Casey, as well as my staff including Myrna Whitley and Qitao Wu, a law clerk pending admission in New York and a native Mandarin speaker who facilitates clear and efficient communication between our firm and Mr. Xia.

40.    By ensuring the accurate and timely exchange of information, he has played a vital role in aligning legal strategy with client objectives. Our firm remains committed to seeing this project through to completion for the benefit of all parties, particularly the EB-5 investors.

## CONCLUSION

41.    Hantman & Associates has played a crucial role in protecting the interests of investors, Fleet, and the Court's administration of this case.

42.    Without the immediate release of funds, Fleet will be unable to meet its outstanding legal obligations, jeopardizing investor protections and regulatory compliance.

**WHEREFORE,** Hantman & Associates respectfully requests that the Court:

Direct that the CTBC Bank accounts of LaGuardia Performance Center LLC, ending in 9799, 2777, and 0816, or any other Xia Entity account(s) with sufficient funds, or the trust funds held by Mayer Suozzi English & Klein P.C., be unfrozen to the extent necessary to fund the Hantman & Associates' total fee of $73,510.00; and

Grant such other and further relief as the Court deems just and proper.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: February 27, 2025
       New York, New York

Respectfully submitted,
By: */s/* Robert J. Hantman
Robert J. Hantman, Esq.

9

HANTMAN & ASSOCIATES
www.hantmanlaw.com
1120 Avenue of the Americas 4th Floor
New York, NY 10036
Tel: (212) 684-3933
rhantman@hantmanlaw.com
*Attorney for Defendants Richard Xia and
Fleet New York Metropolitan Regional
Center LLC*