UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————— x

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

v.

RICHARD XIA, a/k/a YI XIA, and
FLEET NEW YORK METROPOLITAN
REGIONAL CENTER, LLC f/k/a
FEDERAL NEW YORK METROPOLITAN
REGIONAL CENTER, LLC,

        Defendants,

  -and-

JULIE YUE a/k/a JIQING YUE: XI
VERFENSTEIN; and XINMING YU,

        Relief Defendants.

————————————————————— x

CASE NO.: 1:21-cv-05350 (PKC)(JAM)

**DEFENDANTS' MOTION TO
MODIFY FINAL JUDGMENT;
CONTINUE MARCH 26, 2025
DEADLINE FOR FINAL PAYMENT OF
DISGORGEMENT, INTEREST, AND
PENALTY AMOUNTS; AND RELEASE
FROZEN FUNDS FOR COMPLETION
AND MAINTENANCE OF "EASTERN
MIRAGE" PROJECT**

## DECLARATION

1.    My name is George Murray Hudson, and I am a member in good standing of The Florida Bar Association.

2.    I have been engaged by US Capital Global Partners, LLC ("USCP"), to assist in the development of a credit or investment facility on behalf of Richard Xia aka Yi Xia, and related entities, for the purpose of satisfying the @$260 Million obligation of Mr. Xia and Fleet New York Metropolitan Regional Center, LLC ("Fleet"), arising from the July 26, 2024, "Consent" agreement between Mr. Xia, et al., and the Securities and Exchange Commission in Case No: 21-CV-05350-PKC-JAM, pending in the U.S. District Court for the Eastern District of New York.

3.    To raise the amount sought, USCP seeks to collateralize the real property located at 42-31 Union Street, Flushing New York, and 112-51 Northen Blvd., Corona, New York, subject to any Court-required approval. The condition of the property at 42-31 Union Street, referred to as the Eastern Mirage Project, is closest, by far, to completion. It is my understanding that the other location, referred to as "Eastern Emerald" does not yet have a physical structure in place.

1

4.  I obtained the attached documents from USCP which establish their original engagement date (July 31, 2023), their efforts originally to obtain a credit facility using the Eastern Mirage Project as collateral; a change in strategy in June 2024, to add the possibility of equity financing for the project *See USCP Engagement Agreements attached*.

5.  I also interviewed USCP representatives responsible for marketing and maintaining  information regarding the prospective  financing  of the project through USCP's sources and methods. I was informed that  through year end-2024, USCP  contacted 295 potential lenders, which resulted in 43 personal engagements and presentations to potential lenders/investors. .However, as completion of the Eastern Mirage building at 42-31 Union Street in Flushing, remains in its final stages, USCP has been unable to secure lenders or investors who are willing to commit the funds necessary to satisfy the Final Payment amount ($229,640,380.00).

*6.*  I also interviewed  Mr. Jeffrey Sweeney, the Managing Member of USCP who informed me, and also memorialized in the attached correspondence, that  USCP believes the Eastern Mirage building can be financed approximately 120 days after its completion. *See USCP correspondence 1/17/2025, attached.*


I DECLARE under penalties of perjury that I have read the foregoing document that the facts stated in it are true.

DONE, this 3rd  day of March, 2025.

G. Murray Hudson, Esquire
Florida Bar No: 768503



**US Capital Global Partners LLC**
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

**Engagement Agreement**

**This Engagement Agreement** (the "Agreement") is made and entered into on July31st 2023 ("Effective Date") by and between: US CAPITAL GLOBAL PARTNERS LLC, a limited liability company registered in Delaware and doing business as "US Capital Global" with office address at 1 Ferry Building, Suite 201, San Francisco, CA 94111 ("**USCGP**") and EASTERN EMERALD GROUP LLC & X&Y DEVELOPMENT GROUP, a LIMITED LIABILITY COMPANY registered in DELAWARE, with a registered address at 42-31 UNION STREET, FLUSHING, NY 11353 ("**Client**"). For Purposes of this Agreement Client shall also include all affiliates, subsidiaries or entities under Client control or under common control with Client (Client's Affiliates), and Client agrees to all obligations herein and in each schedule on behalf of all Client's Affiliates.

**RECITALS**

WHEREAS, USCGP has staff skilled in performing any and all activities outlined in the attached Schedule(s).

WHEREAS, USCGP is willing to provide its skills and services to Client, all upon the terms and conditions set forth in this Agreement and all Schedules thereto.

NOW THEREFORE, in consideration of the mutual promises set forth below and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, all of the parties hereto agree as follows:

**1.    Interpretation**

1.1    Unless indicated otherwise, references to clauses are to clauses of this Agreement and references to schedules are to the Schedules to this Agreement.

1.2    If there are two or more parties entering into this Agreement with USCGP, any reference to "Client" in the singular shall be construed as a reference to every party to this Agreement other than USCGP, and, unless otherwise indicated, shall be construed to apply to all such parties jointly and severally.

**2.    Engagement**

Upon the terms and conditions set forth in this Agreement and all schedules hereto, Client hereby engages USCGP for the Term, as defined in attached Schedule(s), to provide the Services set out in the Schedule(s) (the "Services"). USCGP hereby accepts such engagement upon the terms and conditions of this Agreement and the Schedule(s) thereto.

**3.    Fees**

As remuneration for the Services, Client shall pay USCGP or any affiliate of USCGP as directed fees calculated and paid in the manner set out in attached Schedule(s) hereto.

**4.    Costs and Expenses**

Client agrees to pay all pre-approved costs and expenses incurred by USCGP in connection with the Services rendered to Client. Client further agrees to pay USCGP any administrative charge as set out in Schedule(s) based on third-party costs and expenses paid by USCGP and charged to Client by USCGP (the "Administrative Charge").

**5.    Reasonable Efforts**

USCGP shall devote such time and diligent efforts as may reasonably be necessary to perform the Services outlined in the Schedule(s). Client expressly acknowledges and agrees that USCGP cannot guarantee or ensure any successful outcome relating to the Services, the timing of any closing, or the successful consummation of any transaction contemplated by the parties under this Agreement. Client understands and agrees that USCGP's efforts are dependent on Client's cooperation and Client performing its obligations herein.

**6.    Client's Representations and Warranties**

6.1    Client hereby represents and warrants to USCGP, as follows:

(i)    Client has the full power and authority to enter into this Agreement and to carry out all actions contemplated hereunder.

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3a584e584509f8ec00



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

(ii)    Neither the execution and delivery of this Agreement nor the consummation of any transactions contemplated hereunder will violate any provision of the charter or bylaws of Client, or be in conflict with, or constituted a default under, any third party or other agreement or commitment to which Client is a party or to which its assets are subject, or violate any statute or law or any judgment, decree, order, regulation, or rule of any court or governmental authority.

**7.    Lead Advisor**

7.1    It is understood that the Lead Advisor role is defined in Schedule(s) if applicable.

**8.    Limitation on Liability**

Client agrees that in addition to Client's indemnity obligations set forth in Annex A, USCGP, its officers, directors, employees, agents and contractors shall not have any obligation or liability (whether direct or indirect, in contract or tort or otherwise) to Client for or in connection with or arising out of the following:

(i)    Any actual or potential funding or investment whether by equity, bonds or otherwise by USCGP or any of its affiliates or any third parties directly or indirectly in Client or Client's Affiliates, or any actual or potential debt or loan from USCGP or any of its affiliates or any third parties to Client or Client's Affiliates, or any actual or potential merger, acquisition or similar transaction involving Client or any of Client's Affiliates.

(ii)    Subject to Clause 5, USCGP makes no representations or warranties, express or implied, in respect of the Services to be provided by USCGP under this Agreement. Client further acknowledges and agrees that USCGP does not and will not have or exercise control over Client's affairs and/or governance, that USCGP is not a fiduciary, and that USCGP will have no liability for the actions of its affiliates in the absence of USCGP's gross negligence or willful misconduct.

(iii)    Each party hereto waives any claims based on assertions that the other party is liable under this Agreement for any punitive, exemplary, indirect, special, incidental, or consequential damages, including lost profits or savings, whether or not such damages are foreseeable.

**9.    Sale or Merger of Client**

Client and USCGP acknowledge and agree that the rights and obligations of the parties under this Agreement shall remain in full force and effect notwithstanding the sale or merger of Client into another corporation or other business. In such event, it is expressly agreed that the surviving corporation or business of such merger shall be bound by and shall comply with the terms and conditions of this Agreement, including, but not limited to any compensation payable to USCGP under the Schedules hereto.

**10.    Further Assistance**

Each party agrees that it shall from time to time take such further actions and execute such additional instruments as may reasonably be necessary to implement and carry out the intent and purpose of this Agreement.

**11.    Term and Extensions**

11.1    This Agreement shall commence on the Effective Date hereof and shall terminate after the term provided in Schedule(s) (the "Term" and "Terms of Engagement").

**12.    Survival**

Upon expiration or termination of this Agreement, all liabilities and obligations hereunder automatically terminate except:

(i)    liability for breaches by any party prior thereto;

(ii)    Client's obligations under Clause 3 (with respect to any fees payable or incurred either prior to or at the termination of the Agreement or following termination);

(iii)    Client's obligations or liabilities under Clauses 4, 7, 8, and Schedule(s) and

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3e584e584509f8ec00



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

(iv)    if applicable, the USCGP Lien (as defined in Schedule(s) to this Agreement) as and to the extent securing Obligations (as defined in Schedule(s) to this Agreement) of the type described in the preceding paragraphs (i), (ii), or (iii), as the case may be.

**13.    Amendment and Modification**

This Agreement may be amended or modified only by mutual agreement of the parties in writing.

**14.    Notices**

All notices, demands, and other communication given or delivered under this Agreement shall be in writing and shall be served personally or delivered by electronic or certified mail, registered mail, or recognized courier service, postage prepaid and return receipt requested, to the addresses first set forth in this Agreement (or to such other address as the parties shall specify in writing). Notices mailed in this way shall be deemed received three (3) business days after being so mailed.

**15.    Assignment**

Client may not assign this Agreement or any of the rights, interests, or obligations hereunder without the prior written consent of USCGP and any such assignment or purported assignment shall be null and void in all respects. USCGP may assign this agreement and any obligations in whole or in part to a subsidiary, affiliate or third party.

**16.    Severability**

This Agreement shall be valid notwithstanding that it may contain some terms that are still to be agreed between the parties. However, if any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable for any reason, that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision, and the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby. If a court is not empowered (or otherwise declines) to so amend the terms herein pursuant to this Clause 16, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original economic and legal intent of the parties as closely as possible in a mutually acceptable manner in order that the terms contemplated hereby are consummated as originally contemplated to the greatest extent possible. Without limiting the generality of the foregoing, the parties hereto agree that the maximum and enforceable fees and damages under such circumstances shall be substituted for the Liquidated Damages set forth in Schedule(s).

**17.    Waiver**

No term or provision hereof shall be considered waived by either party, and no breach excused by either party, unless such waiver or consent is in writing signed by both parties. The waiver by either party of, or consent by either party to, a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of, consent to, or excuse of any other or subsequent breach by the other party.

**18.    Relationship**

The parties acknowledge and agree that USCGP is and shall act as an independent contractor of Client in the performance of its duties hereunder. USCGP is not, and in the performance of its duties will not hold itself out as, an employee, agent, fiduciary, or partner of Client or any of its subsidiaries.

**19.    Governing Law and Jurisdiction**

19.1    This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by, and construed in accordance with, the law of Delaware.

19.2    Subject to section 21, each party irrevocably agrees that the courts of Delaware shall have exclusive jurisdiction over any dispute or claim arising out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims).

**20.    Entire Agreement**

Other than any agreement between the parties specified in the Schedules, this Agreement together with all Schedules hereto constitute the entire understanding between the parties with respect to the subject matter of this Agreement

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3e584e584509f8ac00



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

and supersedes all prior agreements, negotiations, and discussions between the parties relating to it.

**21. Dispute Resolution.**

(a) Disputes. Any dispute, claim, or controversy arising out of or relating to this Agreement, including the negotiation, breach, validity or performance of the Agreement, the rights and obligations contemplated by the Agreement, any claims of fraud or fraud in the inducement, and any claims related to the scope or applicability of this agreement to arbitrate, shall be resolved at the request of any party to this Agreement through a two-step dispute resolution process administered by JAMS or another judicial and mediation service mutually acceptable to the parties involving first mediation, followed if necessary, by final and binding arbitration administered by a single JAMS arbitrator (the "Arbitrator") in San Francisco, California, pursuant to JAMS Comprehensive Arbitration Rules & Procedures.

(b) Governing Law and Procedure. The Arbitrator may grant injunctions and other relief in such disputes. The Arbitrator shall administer and conduct any arbitration in accordance with Delaware law, and the Arbitrator shall apply substantive and procedural Delaware law to any dispute or claim, without reference to any conflict-of-law provisions of any jurisdiction. To the extent that the JAMS Rules conflict with Delaware law, Delaware law shall take precedence.

(c) Final Award. The Arbitrator shall issue a written award. The award shall be binding and final as between the parties, and a judgment may be entered upon the award in any court of competent jurisdiction. The parties agree that the prevailing party in any arbitration shall be entitled to injunctive relief in any court of competent jurisdiction to enforce the arbitration award. Notwithstanding the confidentiality of the arbitration proceedings as set forth below in paragraph 21(g), the final award shall not be confidential.

(d) Costs. The parties shall each pay an equal share of the costs and expenses of such arbitration and each party shall separately pay for its respective counsel fees and expenses; provided, however, that the Arbitrator shall award attorneys' fees and costs to the prevailing party, except as prohibited by law. If the Arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the Arbitrator may award the prevailing party an appropriate percentage of the costs and expenses incurred by the prevailing party.

(e) Waiver of Jury Trial. By entering into this Agreement, each party waives the right to a trial by jury.

(f) Injunctive Relief. Notwithstanding the foregoing, this Agreement will not prevent either party from seeking provisional injunctive relief from any court having jurisdiction over the parties and the subject matter of their dispute relating to this Agreement and any agreements incorporated herein by reference.

(g) Confidentiality. The parties agree that the arbitration shall be confidential and that no party shall disclose to any person who is not an officer, director, employee or limited partner of a party any document filed at JAMS or exchanged between the parties or testimony presented (or any summaries or quotations thereof) in connection with the arbitration that is designated either on the document or on the testimonial record as "Confidential" (the "Confidential Information"). If, in connection with any judicial proceedings to modify, vacate or confirm any order or award, Confidential Information must be filed with any court, the party submitting such Confidential Information shall file such Confidential Information under seal and shall also file a motion with the court requesting that the Confidential Information remain under seal and no party shall oppose such request. The final award shall not be confidential.

(h) Class Action Waiver. Client agrees that Client will not assert class action or representative action claims against USCGP in arbitration or otherwise, nor will Client join or serve as a member of a class action or representative action, and Client agrees that Client will only submit its own, individual claims in arbitration and Client will not seek to represent the interests of any other person.

(i) Voluntary Nature of Agreement. Client acknowledges that Client has read this Agreement carefully and understands and accepts the obligations which it imposes upon it without reservation. No promises or representations have been made to Client to induce Client to sign this Agreement. Client further acknowledges that Client has been given the opportunity

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3e584e584509f8ec00



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

to discuss this Agreement with Client's private, legal counsel and has taken advantage of that opportunity to the extent Client wanted to do so.

**22.    Counterparts**

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**US CAPITAL GLOBAL PARTNERS LLC**

Signature: _____

Name: Charles Towle
Position: Managing Partner & COO

**EASTERN EMERALD GROUP LLC & X&Y DEVELOPMENT GROUP LLC**

Signature: _____

Name: Richard Xia
Position: Managing Member

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3e584e584509f8ec00

**US CAPITAL**

US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

ANNEX A

Client agrees to indemnify and hold harmless USCGP and its affiliates, and their respective shareholders, members, partners, directors, officers, employees, consultants and agents and each other person, if any, controlling USCGP or any of its affiliates (USCGP and each such other person being an "Indemnified Person") from and against any losses, claims, damages or liabilities related to, or arising out of or in connection with USCGP's Engagement, except to the extent caused by the willful gross misconduct or gross negligence of USCGP and will reimburse each Indemnified Person for all reasonable, documented out-of-pocket expenses (including fees, charges and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement, whether or not pending or threatened and whether or not any Indemnified Person is a party. Client also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to Client for or in connection with the Engagement.

Client will not, without USCGP's prior written consent (it being understood that USCGP's consent will not be unreasonably withheld, conditioned or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification, reimbursement or contribution may be sought hereunder (whether or not any Indemnified Person is a party thereto) unless such settlement, compromise, consent or termination includes a full release of each Indemnified Person from any and all liabilities arising out of such action, claim, suit, investigation or proceeding. No Indemnified Person seeking indemnification, reimbursement or contribution under this Annex A will, without Client's prior written consent (it being understood that Client's consent will not be unreasonably withheld, conditioned or delayed), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to in the preceding paragraph.

If the indemnification provided for in the first paragraph of this Annex A is judicially determined to be unavailable (other than in accordance with the terms hereof) to an Indemnified Person in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Person hereunder, Client shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (and expenses relating thereto) (a) in such proportion as is appropriate to reflect the relative benefits to USCGP, on the one hand, and Client, on the other hand, of the Engagement or (b) if the allocation provided by clause (a) above is not available, in such proportion as is appropriate to reflect not only the relative benefits referred to in such clause (a) but also the relative fault of each of USCGP and Client, as well as any other relevant equitable considerations; provided, however, in no event shall USCGP's aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by USCGP under the Agreement.

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfba9644725f84e3e584e584509f8ec00

**US CAPITAL**

US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

## SCHEDULE 4

### Credit Term Sheet

This Summary of Terms ("Credit Term Sheet") summarizes the principal terms of a proposed financing of the Company. It is for discussion purposes only. As such, it serves merely as a proposal which, if accepted, may be superseded by duly executed documents.

| | |
|---|---|
| **COMPANY:** | EASTERN EMERALD GROUP LLC & X&Y DEVELOPMENT GROUP LLC |
| **LENDER:** | USCGP or any affiliate or assignee. |
| **GUARANTORS:** | Corporate and validity guarantees will be required from the Company and any of its direct or indirect subsidiaries. |
| **SECURITY:** | Senior lien on all the Company's, real estate and all other corporate assets. |
| **PROPOSED CREDIT FACILITY:** | **$260,000,000 TOTAL PROPOSED CREDIT FACILITY, CONSISTING OF THE FOLLOWING FACILITY:**<br>(i) Up to $260,000,000 at any time outstanding as a Term Loan Facility ("Term Loan"). |
| **USE OF FACILITY:** | To payback EB-5 investors and other property and transaction related expenses. |
| **TERM OF FACILITY:** | (i) Term Loan: Twelve (12) months with a potential six (6) months extension from the date of closing. |
| **INTEREST:** | (i) Term Loan: A fluctuating rate per annum (360-day basis) equal to the SOFR *plus* up to eight-and-one-half percent (8.50%). |
| **CREDIT FACILITY FEE:** | A one-time fee of one-half percent (0.50%) of the total credit facility amount secured, payable at closing. |
| **ADDITIONAL CONSIDERATION:** | The Engagement Letter, proposal, and Annex A including all of the terms, conditions, performance, and obligations set forth therein, are subject to and conditioned precedent upon the prior approval of a final, unappealable order or judgment of the United States District Court, in the matter of SEC v. Richard Xia, et al., Case No. 21-cv-05350-PKC-RER (E.D.N.Y.). |

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3e584e584509f8ec00

**US Capital Global Partners LLC**
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

**US**CAPITAL

PREPAYMENT PENALTY:                        One percent (1.00%) of any capital prepaid in year one (1).

REVIEW AND
CREDIT INCREASES:                           USCGP may periodically in its sole and absolute discretion review the credit facility offered to the Company and facilitate increases in the amount of credit and decreases in pricing as the Company grows, improves performance, and executes its business plan. USCGP will also keep the Company apprised of and provide additional term loan facilities that may become available as the Company grows and increases in profitability.

RIGHTS RESERVED
BY USCGP:                                   USCGP reserves the right at any time to bifurcate, pledge, assign, or sell all or a portion of its interest in the contemplated funding at its sole and absolute discretion, whether before or after the closing, to its assignee ("Assignee") and the Company will reasonably cooperate in relation thereto with USCGP and/or its Assignee (USCGP and its Assignee, if applicable, being individually and/or collectively referred to in this term sheet as the "Lender"). Borrower understands that USCGP will invest significant resources into making financial, legal and collateral investigations, reviews, and determinations, and that USCGP will incur opportunity costs in pursuing such investigations, reviews, and determinations for this Facility.

BANKING SUCCESS FEE:                        One percent (1.00%)] of the total credit facility amount secured for the Company, payable at closing, as well as one percent (1.00%) on any increases that may be secured for the Company. The minimum Banking Fee shall be $2,600,000.

DUE DILIGENCE AND
UNDERWRITING FEE:                           If the Company wishes USCGP to commence the due diligence process and other work of investigating and reviewing the Proposed Credit Facility, the Company will need to pay USCGP a non-refundable fee (the "Due Diligence and Underwriting Fee") by wire transfer in the amount $250,000.

                                            (i)  It is expressly understood that the Due Diligence and Underwriting Fee shall be paid in consideration of USCGP's work of investigating and reviewing the Proposed Credit Facility, which may include gathering and organizing data, setting up an online deal room for the Company, investigating the Company's representations, and other activities that form part of USCGP's diligence efforts. The Company understands and agrees that the Company will be liable for the full amount of such expenses and costs, even in the event that USCGP should decline for whatever

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3e584e584509f8ec00



**US Capital Global Partners LLC**
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

reason to extend the Proposed Credit Facility on the basis of its due diligence findings.

(ii) Should USCGP hereafter extend and the Company hereafter decline a credit facility substantially along the lines of the Proposed Credit Facility described herein or be unable to meet any reasonable conditions and terms thereof, the Company agrees that USCGP shall be entitled to retain the Due Diligence and Underwriting Fee in its entirety. If the Due Diligence and Underwriting Fee is insufficient to cover all of the costs and expenses incurred by the Lender in investigating, reviewing, arranging, or facilitating the Proposed Credit Facility, the Company shall upon USCGP's first demand pay the balance of all such costs and expenses in excess of the amount of the Due Diligence and Underwriting Fee.

(iii) It is also expressly understood that, in consideration of the Proposed Investment Facility, USCGP may be required to engage one or more third parties. It is understood that USCGP will obtain the Company's pre-approval on any related third-party expenses.

EXPIRY OF PROPOSAL:    Please indicate your acceptance of this term sheet by signing below and returning the letter to USCGP together with a payment of the Due Diligence and Underwriting Fee in the amount of $250,000 by wire transfer no later than August 7th, 2023, on which date this proposal will expire.

USCGP WIRING INSTRUCTIONS:

| Account Holder: | US Capital Global Partners LLC |
|---|---|
| Account number: | 263900075 |
| SWIFT: | CHASUS33 |
| Bank Name: | JPMorgan Chase Bank, N.A. |
| Bank Address: | 101 Montgomery St. San Francisco, CA 94104 |
| Routing number: | 021000021 |
| Address of Beneficiary: | 1 Ferry Building, Suite 201 San Francisco, CA 94111 |

The mutual execution of this Schedule amends the Engagement Agreement dated July 31st, 2023. Per paragraph 13.

Very truly yours,

Authorized by:

Signature:

REV C | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3e584e584509f8ec00

**US Capital Global Partners LLC**
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

Name: Charles Towle
Position: COO & Managing Partner

**ACCEPTED AND AGREED TO:**

By: _____

Name: _____

Title: _____

Date: _____

**ACCEPTED AND AGREED TO:**

By: _____

Name: Richard Xia

Title: Managing Member

Date: August 4th, 2023

REV C  |  USCGP  |  © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

Doc ID: b3d5597cfbe9644725f84e3e584e584509f8ec00

**Dropbox** Sign                                                           **Audit trail**

| | |
|---|---|
| **Title** | USCGP Engagement Agreement-EASTERN EMERALD GROUP LLC & X&Y... |
| **File name** | USCGP Engagement ... (client sign.pdf |
| **Document ID** | b3d5597cfbe9644725f84e3e584e584509f8ec00 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| ⟲ **SENT** | **08 / 04 / 2023** 19:38:48 UTC | Sent for signature to Charles Towle (contracts@uscapglobal.com) from jwhiteeagle@uscapglobal.com IP: 72.203.27.51 |
| 👁 **VIEWED** | **08 / 04 / 2023** 20:55:06 UTC | Viewed by Charles Towle (contracts@uscapglobal.com) IP: 50.159.203.55 |
| ✒ **SIGNED** | **08 / 04 / 2023** 20:55:30 UTC | Signed by Charles Towle (contracts@uscapglobal.com) IP: 50.159.203.55 |
| ⊘ **COMPLETED** | **08 / 04 / 2023** 20:55:30 UTC | The document has been completed. |

Powered by **Dropbox** Sign



**US Capital Global Partners LLC**
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

## ENGAGEMENT AGREEMENT

**This Engagement Agreement** (the "Agreement") is made and entered into on June 12, 2024 ("Effective Date") by and between: US CAPITAL GLOBAL PARTNERS LLC, a limited liability company registered in Delaware and doing business as "US Capital" with office address at 1 Ferry Building, Suite 201, San Francisco, CA 94111 ("**USCGP**")

and

EASTERN EMERALD GROUP, LLC& X&Y DEVELOPMENT GROUP, A LIMITED COMPANY, registered in DELAWARE with a registered address at 42-31 UNION STREET, FLUSING, NY 11353 ("**Client**").

For Purposes of this Agreement the term "Client" shall include the above named Client and all of its affiliates, subsidiaries or entities which are under Client's control as well as any business entity that controls Client or is under common ownership or control with Client ("Client's Affiliates"), and Client agrees the obligations of this Agreement and in each of the Schedule(s) incorporated herein shall apply to Client and all of Client's Affiliates, even if not expressly named in current or future Schedule(s) incorporated into this Agreement.

### RECITALS

WHEREAS, USCGP has staff skilled in performing the activities and services outlined in the Schedule(s) attached hereto and incorporated herein ("Services");

WHEREAS, USCGP is willing to provide its Services to Client, upon the terms and conditions set forth in this Agreement and all Schedule(s) incorporated herein.

NOW THEREFORE, in consideration of the mutual promises set forth below and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, all of the parties hereto agree as follows:

**1.    Interpretation**

1.1    Unless indicated otherwise, references to clauses are to clauses of this Agreement and references to Schedule(s) are to the Schedule(s) executed pursuant to this Agreement the terms of which are incorporated into this Agreement.

1.2    If there are two or more named parties entering into this Agreement with USCGP, any reference to "Client" in the singular shall be construed as a reference to all parties to this Agreement other than USCGP, and, unless otherwise indicated, shall be construed to apply to all such parties jointly and severally.

**2.    Engagement**

Upon the terms and conditions set forth in this Agreement and all Schedule(s) incorporated herein, Client hereby engages USCGP to provide the Services set out in the Schedule(s). USCGP hereby accepts such engagement upon the terms and conditions of this Agreement and the Schedule(s) incorporated therein.

**3.    Fees**

As remuneration for the Services provided by USCGP, Client shall pay USCGP or any affiliate of USCGP as directed, the fees calculated and paid in the manner set out in the Schedule(s) incorporated herein.

**4.    Costs and Expenses**

Client agrees to pay all pre-approved costs and expenses, if any, incurred by USCGP in connection with the Services rendered to Client.

**5.    Reasonable Efforts**

USCGP shall make reasonable efforts in its opinion necessary to perform the Services agreed to within this Agreement and the incorporated Schedule(s) ("Reasonable Efforts"). Client expressly acknowledges and agrees that USCGP cannot guarantee or ensure any successful outcome relating to the Services, the timing of any closing, or the successful consummation of any transaction contemplated by the parties under this Agreement or the incorporated Schedule(s). Client understands and agrees that USCGP's efforts are dependent upon Client's communication and cooperation with USCGP and Client must perform its obligations agreed to within this Agreement and the Schedule(s) including, but not limited to its obligations to provide timely information and approvals when requested.

REV B | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

**6.  Client's Representations and Warranties**

6.1  Client hereby represents and warrants to USCGP, as follows:

(i)  Client has the full power and authority to enter into this Agreement and to carry out all actions contemplated hereunder.

(ii)  Neither the execution and delivery of this Agreement nor the consummation of any transactions contemplated hereunder will violate any provision of the charter, articles, bylaws, or operating agreement of Client, or be in conflict with, or constitute a default under, any third party or other agreement or commitment to which Client is a party or to which its assets are subject, or violate any statute or law or any judgment, decree, order, regulation, or rule of any court or governmental authority.

**7.  Lead Advisor**

7.1  USCGP shall perform the Lead Advisor role as defined in the Schedule(s) incorporated herein.

**8.  Limitation on Liability and Reliance**

Client agrees, that USCGP, and its affiliates and their officers, directors, employees, agents and contractors (the "USCGP Parties") make no warranties express or implied and shall not have any explicit or implicit obligation or liability (whether direct or indirect, in contract or tort or otherwise) to Client for or in connection with or arising out of any of the following:

(i)  Any actual or potential funding or investment whether by equity, bonds, convertible notes, SAFE or otherwise by the USCGP Parties or any of their affiliates or any third parties directly or indirectly into or for the benefit of Client or Client's Affiliates, or any actual or potential debt or loan from USCGP Parties or any third parties to or for the benefit of Client or Client's Affiliates, or any actual or potential merger, acquisition sale or similar transaction involving Client or any of Client's Affiliates.

(ii)  Client hereby specifically disclaims any reliance on any representation, statement or promise, whether verbal, written or otherwise documented, made by any person associated with the USCGP Parties in negotiation of the Agreement or any of the Schedule(s) or otherwise at any time and Client explicitly understands that Client may not reasonably believe, even by implication, that the USCGP Parties shave made a promise, representation, agreement, or guarantee that USCGP will directly or indirectly provide funding or close any specific direct or indirect third party financing facility or otherwise raise capital for Client, in any specific amount, including without limitation any investment, bond, loan, convertible note, SAFE, equity or other financial transaction

(iii)  Subject only to Reasonable Efforts as set forth in Clause 5 above, USCGP makes no commitments, representations or warranties, express or implied, with respect to the Services agreed to be provided by USCGP under this Agreement or any of the incorporated Schedule(s). Client further acknowledges and agrees that USCGP does not and will not have or exercise control over Client's affairs and/or governance, that USCGP is not a fiduciary to or with Client, and that the USCGP Parties will have no liability to Client in the absence of USCGP's gross negligence or willful misconduct.

(iv)  Each party hereto waives any and all claims based upon assertions that the other party is liable under this Agreement for any punitive, exemplary, indirect, special, incidental, or consequential damages, including lost profits or savings, whether or not such damage is foreseeable and in no event shall the liability of the USCGP Parties exceed the aggregate amount of fees actually received by USCGP under the Agreement and any incorporated Schedule(s).

**9.  Indemnity and No Individual Liability.**

To the greatest extent allowed by applicable law, Client agrees to indemnify, defend, and hold harmless the USCGP Parties and their respective shareholders, members, partners, consultants and each other person or individual, if any, controlling the USCGP Parties (each such person being an "Indemnified Person") from:

(i)  Any direct or indirect loss, expense, claim, damage or liability related to, or arising out of or in connection with this Agreement and the Schedule(s) incorporated herein ("Claims"), made by Client, Client's Affiliates or any third party except to the extent such Claims have been judicially determined to have been

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

caused by the willful misconduct or gross negligence of USCGP, and

(ii)    As part of the duty to defend, Client will reimburse the USCGP Parties and each Indemnified Person for all reasonable out-of-pocket expenses (including attorneys' fees, charges, mediation/arbitration fees and disbursements relating to dispute resolution, mediation/arbitration and representation by counsel) as they are incurred in connection with and during the investigating, preparing, pursuing or defending any action, claim, suit, investigation or proceeding related to, arising out of or in connection with a claim arising from or relating to this Agreement and the Schedule(s), whether or not pending or threatened and whether or not any USCGP Parties or an Indemnified Person is a party, unless and until a final judicial determination is made as to what extent USCGP may be responsible for Claims that were caused by its gross negligence or willful misconduct and after which time USCGP shall pay a portion of such fees attributable to its gross negligence or willful misconduct as judicially determined. The USCGP Parties and any Indemnified Person shall possess and maintain the right to defend themselves and participate directly in any dispute resolution process for any action, claim, suit, investigation or proceeding for which they may be entitled to indemnification.

(iii)   Client also agrees that no Indemnified Person shall have any liability (whether direct or indirect, in contract or tort or otherwise) to Client, directly or indirectly, for or in connection with any act or omission relating to the negotiation or performance of this Agreement or its incorporated Schedules, including any claim of fraudulent or negligence inducement into this Agreement or into any Schedule(s).

**10.    Sale or Merger of Client**

Client and USCGP acknowledge and agree that the rights and obligations of the parties under this Agreement and its incorporated Schedule(s) shall remain in full force and effect notwithstanding the sale or merger of Client into another corporation or other business. In such event, it is expressly agreed that the surviving corporation or business of such merger shall be bound by and shall comply with the terms and conditions of this Agreement and its incorporated Schedule(s), including, but not limited to any compensation payable to USCGP under the Schedule(s) hereto.

**11.    Further Assistance**

Each party agrees that it shall from time to time take such further actions and execute such additional instruments as may reasonably be necessary to implement and carry out the intent and purpose of this Agreement and the Schedule(s) incorporated herein.

**12.    Term and Extensions**

This Agreement shall commence on the Effective Date hereof and shall continue for the longer of, 12 consecutive months or the longest term of any of the Schedule(s) incorporated herein, unless terminated beforehand for the reasons stated herein and/or in the Schedule(s), or the term of this Agreement or the Schedule(s) are amended by the parties. Notwithstanding termination, expiration or any extended term, all obligations and liabilities agreed to within Clause 13 "Survival", shall survive and continue to bind the parties.

**13.    Survival**

Upon expiration or termination of this Agreement, all liabilities and obligations hereunder and within the incorporated Schedule(s), automatically terminate except:

(i)     liability for breaches by any party prior thereto;

(ii)    Client's payment and other obligations under any Schedule(s) (including with respect to any fees payable or incurred either prior to or at the termination of the Agreement or following termination);

(iii)   USCGP's rights or obligations that are expressly agreed in any incorporated Schedule(s), to continue beyond the termination of this Agreement, if any;

(iv)    Client's obligations or liabilities under Clauses 3, 4, 6, 8, and 9 of this Agreement, and,

(v)     Client's obligations or liabilities under the Schedule(s), if any.

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

**14.    Amendment and Modification**

This Agreement and any incorporated Schedule(s) may be amended or modified only by mutual agreement of the parties executed in writing. Note that an e-mail, text message or similar communication is not, and will not be, considered an amendment to the Agreement or any of the Schedule(s).

**15.    Notices**

All notices, demands, and other communications given or delivered under this Agreement shall be in writing and shall be served personally or delivered by electronic or certified, or registered mail with postage prepaid and return receipt requested, or recognized courier or commercial delivery service, delivery confirmed by the commercial courier or delivery service, to the addresses first set forth in this Agreement (or to such other address as the parties shall specify in writing). Notices mailed in this way shall be deemed received three (3) business days after being so mailed.

**16.    Assignment**

Client may not assign this Agreement or any of the rights, interests, or obligations hereunder without the prior written consent of USCGP. USCGP may assign all or part of this agreement only to an affiliate or subsidiary without consent.

**17.    Severability**

If any provision of this Agreement is held by a court of law to be illegal, invalid or unenforceable for any reason, that provision shall be deemed amended to achieve as nearly as possible the same economic effect as the original provision. Regardless, the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby. If a court is not empowered (or otherwise declines) to so amend the terms herein pursuant to this Clause 17, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original economic and legal intent of the parties as closely as possible in a mutually acceptable manner in order that the terms contemplated herein are consummated as originally contemplated to the greatest extent possible. Without limiting the generality of the foregoing, the parties hereto agree that the maximum and enforceable fees and damages under such circumstances shall be substituted for the Liquidated Damages set forth in the incorporated Schedule(s).

**18.    Waiver**

No term or provision hereof shall be considered waived by either party, and no breach is excused by either party, unless such waiver or consent is in writing signed by both parties. The waiver by either party of, or consent by either party to or failure to seek enforcement, any breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver, consent, or excuse of any other or subsequent breach by the other party.

**19.    Relationship**

The parties acknowledge and agree that USCGP is only and shall act solely as an independent contractor of Client in the performance of its duties hereunder. USCGP is not, and in the performance of its duties will not hold itself out as, an employee, agent, fiduciary, member, or partner of Client or any of its affiliates. Client shall not consider USCGP as a partner, member, fiduciary, agent or employee of Client, nor shall Client represent to any person or entity that USCGP is a partner, member, fiduciary, agent or employee of Client or Client Affiliates.

**20.    Governing Law and Jurisdiction**

20.1    This Agreement and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by, and construed in accordance with, the law of California and subject to the dispute resolution provisions in section 22 below.

20.2    Subject to section 22, each party irrevocably agrees that the courts of California shall have exclusive jurisdiction over any dispute or claim arising out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims).

REV B  |  USCGP  |  © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

21.  **Entire Agreement**

Other than any agreement between the parties specified in the Schedules, this Agreement together with all Schedule(s) incorporated herein constitute the entire understanding between the parties with respect to the subject matter of this Agreement and Schedule(s), and supersedes all prior agreements, negotiations, and discussions between the parties relating to it.

22.  **Dispute Resolution.**

(a) <u>Disputes</u>. Any dispute, claim, or controversy arising out of or relating to this Agreement, including the negotiation, breach, validity or performance of the Agreement, the rights and obligations contemplated by the Agreement, any claims of fraud or fraud in the inducement, and any claims related to the scope or applicability of this agreement to arbitrate, shall be resolved at the request of any party to this Agreement, by the USCGP Parties or any Indemnified Person  through a two-step dispute resolution process administered by JAMS or another commercial judicial and mediation service mutually acceptable to the parties. Mediation is a pre-requite to the initiation of any arbitration proceeding, followed, if necessary, by final and binding arbitration administered by a single JAMS arbitrator (the "Arbitrator") in San Francisco, California, pursuant to JAMS Comprehensive Arbitration Rules & Procedures.

(b) <u>Governing Law and Procedure</u>. The Arbitrator may grant injunctions and other relief in such disputes. The Arbitrator shall administer and conduct any arbitration in accordance with California law, and the Arbitrator shall apply substantive and procedural California law to any dispute or claim, without reference to any conflict-of-law provisions of any jurisdiction. To the extent that the JAMS Rules conflict with California law, California law shall take precedence.

ℭ <u>Final Award</u>. The Arbitrator shall issue a written Final Arbitration Award. The award shall be binding and final as between the parties, and a judgment may be entered upon the award in any court of competent jurisdiction. The parties agree that the prevailing party in any arbitration shall be entitled to injunctive relief in any court of competent jurisdiction to enforce the Final Arbitration Award. Notwithstanding the confidentiality of the arbitration proceedings as set forth below in Clause 22(g), the Final Arbitration Award shall not be confidential.

(d) <u>Costs</u>. The parties shall each pay an equal share of the costs and expenses of such arbitration and each party shall separately pay for its respective counsel fees and expenses; provided, however, that the Arbitrator shall award attorneys' fees and costs to the prevailing party, except as prohibited by law. If the Arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the Arbitrator may award the prevailing party an appropriate percentage of the costs and expenses incurred by the prevailing party.

(e) <u>Waiver of Jury Trial</u>. By entering into this Agreement, each party waives the right to a trial by jury.

(f) <u>Injunctive Relief</u>. Notwithstanding the foregoing, this Agreement will not prevent either party from seeking provisional injunctive relief from any court having jurisdiction over the parties and the subject matter of their dispute relating to this Agreement and any agreements incorporated herein by reference, including the Schedule(s).

(g) <u>Confidentiality</u>. The parties agree that the mediation and arbitration shall be confidential and that no party shall disclose to any person who is not an officer, director, employee, member, or limited partner of a party  to this Agreement or any incorporated Schedule(s) any document filed in the  mediation or arbitration proceeding, by any party, by the arbitration  service such as JAMS, or by an arbitrator, and any document or testimony that is exchanged between the parties (voluntarily, upon Order, or through a formal discovery request),  as well as any argument or testimony presented (and any summaries or quotations thereof) in connection with the mediation and/or arbitration. That parties agree that in addition to the above all non-public information provided in the mediation and arbitration is "Confidential" (the "Confidential Information"). If, in connection with any judicial proceedings to modify, vacate or confirm any order or award, Confidential Information must be filed with any court, the party submitting such Confidential Information must first inform the other party of its intent to file such Confidential Information at least 3 business before doing so, and then shall file such Confidential Information only under seal with a motion

REV B | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

requesting that the Confidential Information remain under seal and no party shall oppose such request. The Final Arbitration Award shall not be confidential.

(h) <u>Class Action Waiver</u>. Client agrees that Client will not assert class action or representative action claims against USCGP in arbitration or otherwise, nor will Client join or serve as a member of a class action or representative action, and Client agrees that Client will only submit its own, individual claims in arbitration and Client will not seek to represent the interests of any other person.

(i) <u>Voluntary Nature of Agreement</u>. Client acknowledges that Client has read this Agreement carefully and understands and accepts the obligations which it imposes upon it without reservation. No promises or representations have been made to Client to induce Client to sign this Agreement, except those explicit representations that are contained within this Agreement and any applicable incorporated Schedules. Client further acknowledges that Client has been given the opportunity to discuss this Agreement with Client's private, legal counsel and has taken advantage of that opportunity to the extent Client wanted to do so.

**23. Counterparts**

This Agreement may be executed electronically and in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.

**US CAPITAL GLOBAL PARTNERS LLC**

**EASTERN EMERALD GROUP, LLC& X&Y DEVELOPMENT GROUP, A LIMITED COMPANY**

Signature:_____

Signature: _____

Name: Charles Towle
Position: Managing Partner & COO

Name: Richard Xia
Position: Managing Member

Date:_____

Date:_____

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

## SCHEDULE 2

### Fee Agreement Terms

**1. TERM AND EXTENSIONS**

1.1 This Schedule 2 begins on the date it is executed by Client and terminates 12 months thereafter provided thirty (30) days prior written notice is received by one party from the other party, if no notice is received this Schedule will continue on a month to month basis thereafter until thirty (30) days' notice is received (the "Term"). Upon execution, this Schedule 2 is incorporated into and becomes a part of the parties' Engagement Agreement. If there is any conflict between the Engagement Agreement and this Schedule 2, the terms and conditions of this Schedule 2 take precedence and are controlling.

1.2 The Tail Period after termination referred to in Clause 2 of this Schedule 2 shall be 24 months.

**2. LEAD ADVISOR**

2.1 Client understands and agrees that USCGP is the Lead Advisor to Client concerning the contemplated transactions or providing advisory services and as such USCGP will invest significant resources into making financial, legal and collateral investigations, introductions, and determinations, and that USCGP will incur lost opportunity costs in pursuing such investigations, introductions, and determinations in order to provide the Services under this Schedule 2.

2.2 Accordingly, Client agrees that, during the Term of this Schedule, Client and its affiliates and any of its or their principals, officer, directors, members, managers, employees, and agents ("Client Parties") will:

    (i) Not provide false or misleading information;

    (ii) Cooperate fully and in a timely manner when requested by USCGP or any of its affiliates to:

        (a) provide data in the due diligence and review process of data gathering;

        (b) provide updates in capitalization tables and financial statements;

        (c) engage, in a reasonable time frame, with investors or capital sources presented,

    (iii) Notify USCGP prior to, and promptly pay the required Banking Fees if any funding is received from:

        (a) USCGP, a USCGP affiliate or a USCGP introduced capital source;

        (b) a source other than USCGP, a USCGP's affiliate or a USCGP introduced capital source; or,

        (c) n increase to an existing investment facility or other financing arrangement that Client may have.

    Client and Client Parties must also

    (iv) accept funding or capital provided or arranged by USCGP if materially similar to agreed terms;

    (v) honor the requirements of Clause 2.3 for the Tail Period; and

    (vi) execute Escrow instructions and/or a Direction of Payment per Clause 4 for applicable Banking Fees per Clause 3;

    (vii) send to USCGP copies of all relevant closing documents in respect of any financing facility, source of funding including equity, SAFE, convertible note or loan that involves Client, or Client's Affiliates and shall promptly notify USCGP of any increases in any investment or funding amount, or any new investment or funding, provided by an investor or a lender to Client.

    (viii) Not terminate this Schedule 2 prior to the termination date.

REV B | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



**US Capital Global Partners LLC**
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

2.3    Client agrees that, during the Tail Period of this Schedule 2 as set out in Clause 1.2 of this Schedule, , the Client and Client Parties will:

    (i)    Notify USCGP prior to, and promptly pay the required Banking Fees from: USCGP, USCGP affiliates or USCGP introduced capital sources;

    (ii)    Provide updates in capitalization tables and financial statements for the purpose of verifying compliance with the terms of the Tail Period;

    (iii)    Not circumvent, or attempt to circumvent, USCGP or enter into any agreement or arrangement with any investor, or source of any capital, whether equity, SAFE, convertible note or loan, introduced to client by USCGP without USCGP's prior written approval, without payment to USCGP of the agreed upon fees as agreed in Clause 2.4; and;

    (iv)    Not enter into any agreement or arrangement for debt, equity, convertible note, SAFE, loan, or other capital or funding with any party USCGP introduced to Client or that USCGP interacted with on behalf of Client prior to termination of the agreement without payment to USCGP of the agreed upon fees as greed in Clause 2.4.

2.4    If any Client or any of the Client Parties fail to comply with the requirements of the preceding Clause 2.2 or Clause 2.3, then the Client agrees to pay and shall pay to USCGP on demand, the following Liquidated Damages:

    (i)    Liquidated Damages are the greater eight percent (8.00%) of the requested financing amount set out in the Engagement Agreement and its Schedule(s), or the calculated unpaid Banking Fees owed equal to those set out in this Schedule 2, in addition to any deposit(s) paid to USCGP, and any other reimbursement obligations of the Client or Client Parties to USCGP.

    (ii)    Client hereby acknowledges and agrees that it has carefully reviewed this entire Clause 2.4; that it has been afforded the opportunity to consult with legal counsel regarding the principle and purpose of Liquidated Damages; and, that it understands the concept of Liquidated Damages. Accordingly, Client also acknowledges and agrees that the Liquidated Damages set forth in Clause 2.4(i) of this Schedule 2 are not a penalty, and in fact are a reasonable approximation of the damages USCGP will sustain by reason of Client's breach of the aforementioned provisions if such were to occur.

## 3.    BANKING FEES

Client shall pay a Banking Fee (the "Banking Fee") based upon the successful consummation of any of the following types of transactions during the Term of this Schedule 2 and during the relevant tail period,

### 3.1 Equity, Preferred Equity, and Convertible Note Funding:

    3.1.1    **Cash Fees:** Six percent (6.00%) cash due to USCGP of the amount of any Equity, Preferred Equity, SAFE or Convertible Note Funding received by the Client as well as Eight percent (8.00%) on any increases of such received by the Client;

    3.1.2    **Warrants:** Six percent (6.00%) zero cost, five-year, equity warrants of the amount of Equity, Preferred Equity, or Convertible Note funding received by the Client exercisable at any time for $.0001 per unit/share.

### 3.2 Debt, Subordinated Debt, and Bond Debt:

    3.2.1    **Cash Fees:** Two percent (2.00%) cash due to USCGP of the principal amount of any loan or debt facility commitment as well as Two percent (2.00%) on any increases received by the Client by any lender, including any lender now providing a debt facility or transaction to Client, plus,

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



**US Capital Global Partners LLC**
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

**3.3 Merger or Acquisition, Client Sale, or Joint Venture:**

    3.3.1   **Cash Fees:** Six percent (6.00%) of the total transaction amount paid to or payable by Client with respect to any merger or acquisition, Client Sale, joint venture, from a source introduced by USCGP,

    3.3.2   **Non-Cash Fees:** In the case of an Acquisition Transaction, the purchase price shall include all consideration payable in the form of cash, assets, equity, receivables, promissory notes, any loans assumed or incurred constituting an integral part of the transaction, earn outs, investments, license or royalty agreements, assumed liabilities, covenant not to compete, consulting agreements or employee agreements with owners/shareholders, leases or rents payable to owners/shareholders, and any other economic benefits, rights, property, or interests, including payments contingent upon future events or conditions.

**3.4 Commercial Agreements and/or Commercial Sales:**

    3.4.1   **Cash Fees:** Ten percent (10.00%) of all gross revenue generated from sales to customers or other commercial relationships introduced by USCGP to Client for as long as they remain customers of Client or the relationships remain in place. Fees are due and payable within 10 business days post-customer or relationship payment.

**4.      PAYMENT OF SUCCESS FEES, OTHER FEES, AND EXPENSES**

    4.1   **Closing Documents and Disclosures**

        4.1.1   **Escrow and/or Direction of Payment:** Before closing any funding for Client, USCGP may set up an Escrow Account and/or mutually execute a Direction of Payment in a form to be agreed, as USCGP may provide Client, for the purpose of fulfilling Client's obligations under this Schedule 2 and any other agreements by and between the parties.

        4.1.2   **Banking Fees:** Client agrees to execute a "Direction of Payment" for all applicable Banking Fees or warrants which shall be payable, via escrow or from the funding agent, at and proportional to the first closing, and at and proportional to any successive closing of subsequent funding tranches, if applicable.

        4.1.3   **Costs, Expenses, and Advances:** All Client written pre-approved costs, expenses, and advances paid by USCGP on behalf of Client under this Schedule 2 must be reimbursed by Client promptly, via escrow, upon request. In any event, all such outstanding costs, expenses, and advances must be reimbursed in full before or at closing.

**5.      Intentionally Omitted.**

The mutual execution of this Schedule 2 amends and is incorporated into the Engagement Agreement dated June 12, 2024 Per paragraph 14 of the Engagement Agreement.

**US CAPITAL GLOBAL PARTNERS LLC**

**EASTERN EMERALD GROUP, LLC& X&Y DEVELOPMENT GROUP, A LIMITED COMPANY**

Signature:_____

Signature: _____

Name: Charles Towle
Position: Managing Partner & COO

Name: Richard Xia
Position: Managing Member

Date:_____

Date:_____

REV B | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

## SCHEDULE 6

## ADVISORY SERVICES AGREEMENT

### 1. BACKGROUND

US CAPITAL GLOBAL PARTNERS LLC ("**USCGP**") has staff skilled in strategy development, strategic planning, finance, corporate development, general management and other management skills and services. The Company will require USCGP's special skills and advisory service in connection with its general business operation, the structuring and financing of the Company's long term capital needs, the development of the Company's strategic plan and USCGP is willing to provide such skills and services to the Company, all upon the terms and conditions set forth in this Agreement (the "Agreement"). Specifically, USCGP will provide the following services set out in this Schedule to the Client (the "Services").

### 2. ENGAGEMENT

Upon the terms and conditions herein set forth, the Client hereby engages USCGP to provide all or some of the Management Services to the Client as outlined below and requested from time to time by the Client.

3. ADVISORY SERVICES

   3.1  Advise on Debt, Equity, Mergers and Acquisitions, and Joint Ventures.

   3.2  Advise on entity formations

   3.3  Advise on Banking and account set up

   3.4  Source and provide Senior or Junior Debt

   3.5  Source and provide Convertible Notes or Equity, preferred, or common

   3.4  Assist in the development and analysis of immediate and long-term capital sources and uses plans for the Company.

   3.6  Valuation analysis.

   3.7  Preparation of offering memorandum.

   3.8  Preparation of targeted list of strategics and/or financial investors

   3.9  Setup of data room for disclosures all due diligence reports, third party reports included.

   3.10 Finalization, setup of escrow, transaction closing docs and funding.

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).



US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

4. **TERM**

4.1 <u>Term of Services</u>: 12 months

5. **ADVISORY SERVICES FEES**

5.1 In consideration of USCGP's undertaking the Services hereunder, the Client shall pay USCGP an Advisory Services Fee (the "Advisory Fee") equal to:

5.2 Two Hundred Fifty Thousand Dollars ($250,0000) annual, payable quarterly and in advance on the first day of every applicable quarter;

5.3 Sixty-Two Thousand and Five Hundred US Dollars (USD $62,500), of Advisory Fee shall be payable in advance upon execution of this Engagement Agreement.

6. **ADDITIONAL RIGHTS AND OBLIGATIONS OF THE PARTIES**

6.1 During the Term, USCGP shall have available to it personnel in its judgment sufficient in number and adequate in ability to perform all services that USCGP is required under this Agreement.

6.2 The Client shall at all times cooperate with USCGP and keep USCGP fully informed with regard to the business and significant activities of the Client and its subsidiaries.

6.3 USCGP shall diligently and faithfully perform its obligations under this Agreement, but USCGP shall not be responsible for any loss incurred by the Client or any of the subsidiaries as a result of any advice or recommendations of USCGP as Client understands all investments contain risk.

7. **MUTUAL NON-DISCLOSURE AGREEMENT**

The terms and conditions of the Mutual Non-disclosure Agreement dated <u>TBA</u> (the "Mutual NDA"), and duly executed by USCGP and the Client, shall continue to bind the parties. However, if there is any conflict between the terms and conditions of the Mutual NDA and of this Agreement, the terms and conditions of this Agreement shall take precedence.

8. **EXPIRY PROPOSAL**

Please indicate your acceptance of this Advisory Services Agreement by signing below and returning the Agreement to USCGP together with an initial payment of USD $62,500 Advisory Services Fee in the amount by wire transfer no later than June 18, 2024 on which date this proposal will expire. The remaining amount fir services shall be due and payable as stated in Clause 5 "Advisory Services Fees" above.

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

**US CAPITAL**

US Capital Global Partners LLC
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

## 9. USCGP PAYMENT INSTRUCTIONS

Directions for payment by bank transfer:

| Name of beneficiary: | US Capital Global Partners LLC |
|---|---|
| Account number: | 580272683 |
| SWIFT: | CHASUS33 |
| Name of bank: | JPMorgan Chase Bank, N.A. |
| Address of bank: | 101 Montgomery St. San Francisco, CA 94104 |
| Routing number: | 021000021 (For Wire Payments) |
| Address of beneficiary: | 1 Ferry Building, Suite 201 San Francisco, CA 94111 |

**This Agreement amends the Engagement Agreement dated June 12, 2024 (the "Engagement Agreement") in accordance with paragraph 14 thereto and shall be a Schedule to the Engagement Agreement.**

**US CAPITAL GLOBAL PARTNERS LLC**

Signature:_____

Name: Charles Towle
Position: Managing Partner & COO

Date:_____

**EASTERN EMERALD GROUP, LLC& X&Y DEVELOPMENT GROUP, A LIMITED COMPANY**

Signature: _____

Name: Richard Xia
Position: Managing Member

Date:_____

REV B | USCGP | © US Capital IP 2022

Any and all sales commissions, M&A advisory fees, private placement fees, and any other fees paid in relation to securities shall be paid to a member firm of FINRA/SIPC. Securities offered through US Capital Global Securities, LLC (member FINRA/SIPC).

# US CAPITAL

**US Capital Global Partners LLC**
1 Ferry Building, Suite 201
San Francisco, CA 94111
Tel +1 415 889 1010
www.uscapital.com

January 17, 2025

Richard Xia
Eastern Emerald Group, LLC,
and X&Y Development Group
42-31 Union Street, Flushing, NY 11353

Re: Engagement Agreement for Advisory Services, related to refinancing your building for the SEC settlement

Dear Richard:

We have been diligently working on this since engagement but are finding it difficult because the Eastern Mirage building is not yet finished. We know the building is very close to completion, but lenders/investors are reluctant to step forward until it is complete.

I highly recommend that you complete the final stages of the building, and we go back to the market after it is finished. I don't believe there is much work left to complete the project. After the building is complete, we should be able to finance it after about 120 Days. I understand that you have a deadline of March 26, 2025, to satisfy the remaining payment obligation in the case involving the S.E.C., and that you will need Court approval before closing.  Without the building completed, I do not foresee the funds from a loan with the building as collateral being available at that time.

Kindly let me know if completing the building and getting an extension to pay the SEC is possible for you. In the meantime we will continue to seek lenders to refinance the building as it sits but I caution you it is slow and difficult to get it done without the building being complete.

Kind Regards

Jeffrey Sweeney
Managing Member
US Capital Global Partners LLC