**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**SECURITIES AND EXCHANGE COMMISSION,**

              **Plaintiff,**

   **-against-**

**RICHARD XIA, a/k/a YI XIA, and
FLEET NEW YORK METROPOLITAN
REGIONAL CENTER, LLC, f/k/a FEDERAL
NEW YORK METROPOLITAN REGIONAL
CENTER, LLC,**

              **Defendants,**

   **-and-**

**JULIA YUE, a/k/a JIQING YUE,
XI VERFENSTEIN, and XINMING YU,**

              **Relief Defendants.**

**21-cv-05350-PKC-JAM**

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF
LAW CONCERNING ITS AUTHORITY TO SEEK APPOINTMENT OF A SALES
AGENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

Christopher M. Colorado
David Stoelting
Kim Han

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

**PRELIMINARY STATEMENT** .......................................................................................1

**BACKGROUND** ...............................................................................................................2

I.    Defendants' Failure to Comply with the Final Judgment ..........................................2

II.   The Mortgages Securing Defendants' Payments Owed Under the Final Judgment ...........3

III.  The SEC's Consideration of Remedies for Defendants' Failures, Defendants' Status Update, and the Court's April 30 Order .....................................................................5

IV.   Defendants' Motion to Stay Enforcement of the Final Judgment...............................6

**ARGUMENT** .....................................................................................................................6

I.    The Court Has Broad Authority to Appoint an Agent to Sell the Properties ...................6

      a.    The SEC May Invoke the Court's Broad Equitable Powers ...................................7

      b.    The SEC May Move for a Contempt Order and Sanctions ...................................10

      c.    The SEC May Seek Relief Under Federal Rule 69(a) ..........................................14

      d.    The SEC May Foreclose on the Mortgages in Federal Court...............................15

II.   The Court Should Deny the Stay Motion .................................................................17

**CONCLUSION** ...............................................................................................................19

# TABLE OF AUTHORITIES

*Cases*

*Blue Citi LLC v. 4Barz International*,
No. 16-cv-9027 (VEC), 2019 WL 6976972 (S.D.N.Y. Dec. 20, 2019) ...................................15

*CBS Broadcasting Inc. v. FilmOn.com, Inc.*,
814 F.3d 91 (2d Cir. 2016) ...................................................................................................10

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
839 F.2d 93 (2d Cir.1988) ....................................................................................................16

*Colfin Bulls Funding B, LLC v. Ampton Investments, Inc.*,
62 Misc.3d 1208(A) (N.Y. Sup. Ct. Nov. 26, 2018) ..............................................................15

*CSX Trans., Inc. v. Island Rail Terminal, Inc., et al.*,
879 F.3d 462 (2d Cir. 2018) ..................................................................................................15

*Dole Fresh Fruit Co. v. United Banana Co.*,
821 F.2d 106 (2d Cir. 1987) ..................................................................................................12

*EEOC v. Local 28*,
247 F. 3d 333 (2d Cir. 2001) .................................................................................................12

*Freeman v. Giuliani*,
No. 24-mc-00353 (LJL), 2024 WL 4546883 (S.D.N.Y. Oct. 22, 2024) ........................... 14-15

*FSLIC v. Sahni*,
868 F.2d 1096 (9th Cir. 1989) .................................................................................................8

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)................................................................................................................8

*Gustavia Home, LLC v. Hoyer*,
362 F. Supp. 3d 71 (E.D.N.Y. 2019) .....................................................................................17

*Hotel 71 Mezz Lender LLC v. Falor*,
14 N.Y.3d 303 (2010)...........................................................................................................15

*Huber v. Marine Midland Bank*,
51 F.3d 5 (2d Cir. 1995) ..................................................................................................11, 12

*Mitchell v. Robert DeMario Jewelry, Inc.*,
361 U.S. 288 (1960)................................................................................................................8

*In re Nassau County Strip Search Cases*,
  783 F.3d 414 (2d Cir. 2015) .................................................................................17, 18

*NBA v. Design Mgmt. Consultants, Inc.*,
  289 F. Supp. 2d 373 (S.D.N.Y. 2003) ..........................................................................12

*Schwarz v. ThinkStrategy Capital Management LLC*,
  No. 11-cv-8094 (PAE), 2015 WL 4040558 (S.D.N.Y. July 15, 2015).............................12, 14

*SEC v. Amerindo Investment Advisors*,
  No. 05-cv-5231 (RJS), 2013 WL 1385013 (S.D.N.Y. Mar. 11, 2013)......................................9

*SEC v. Aragon Capital Advisors, LLC*,
  No. 07-cv-919, 2011 WL 3278907 (S.D.N.Y. July 16, 2011)...................................................12

*SEC v. Barton*,
  No. 17-cv-403 (JS), 2017 WL 11699815 (E.D.N.Y. Oct. 10, 2017)........................................16

*SEC v. Borland*,
  No. 18-cv-4352 (PKC), 2024 WL 4407044 (S.D.N.Y. Aug. 30, 2024) .....................................7

*SEC v. Bremont*,
  No. 96-cv-8771 (LAK), 2003 WL 21398932 (S.D.N.Y. June 18, 2003)..............................12

*SEC v. Bronson*,
  602 F. Supp. 599 (S.D.N.Y. 2022) ................................................................................ 10-11

*SEC v. Byers*,
  No. 08-cv-7104 (DC), 2014 WL 12799633 (S.D.N.Y. Feb. 21, 2024) ...................................7

*SEC v. Cavanagh*,
  445 F.3d 105 (2d Cir. 2006) ............................................................................................8

*SEC v. Durante*,
  2013 WL 6800226 (S.D.N.Y. Dec. 19, 2013) .........................................................................14

*SEC v. Elliot*,
  180 F. Supp. 3d 230 (S.D.N.Y. 2016) ..................................................................................7

*SEC v. GPB Capital Holdings, LLC*,
  No. 23-cv-8010, 2024 WL 4945247 (2d Cir. Dec. 3, 2024) ...................................................8

*SEC v. Illarramendi*,
  No. 11-cv-78 (JBA), 2011 WL 2457734 (D. Conn. June 16, 2011) ........................................8

*SEC v. Manor Nursing Centers, Inc.*,
  458 F.2d 1082 (2d Cir. 1972) ............................................................................................8

*SEC v. Materia*,
    745 F.2d 197 (2d Cir. 1984) ........................................................................8

*SEC v. Mulholland*,
    No. 12-cv-14663, 2017 WL 5507889 (E.D. Mich. Nov. 17, 2017) ........................14

*SEC v. Musella*,
    818 F. Supp. 600 (S.D.N.Y. 1993) ..............................................................12

*SEC v. Posner*,
    16 F.3d 520 (2d Cir. 1994) ........................................................................9

*SEC v. Shiv*,
    379 F. Supp. 2d 609 (S.D.N.Y. 2005) ..........................................................9

*SEC v. Solow*,
    682 F. Supp. 2d 1312 (S.D. Fl. 2010) ..........................................................14

*SEC v. Vuono*,
    No. 13-mc-405 (JFB), 2013 WL 6837568 (E.D.N.Y. Dec. 26, 2013) ....................14

*SEC v. Xia, et al.*,
    No. 21-cv-5350 (PKC), 2022 WL 17539124 (Dec. 8, 2022)...........................9, 18

*SEC v. Xia, et al.*,
    No. 21-cv-5350 (PKC) (JAM), 2025 WL 1332018 (E.D.N.Y. May 7, 2025) ..............3, 18

*Shillitani v. United States*,
    384 U.S. 364 (1966)................................................................................10

*Smith v. SEC*,
    653 F.3d 121 (2d Cir. 2011) ....................................................................8, 9

*United States v. Rylander*,
    460 U.S. 752 (1983)................................................................................11

*U.S. National Bank Association v. 1078 Whillmore LLC, et al.*,
    740 F. Supp. 3d 157 (E.D.N.Y. 2024) ..........................................................16

*U.S. Bank National Association v. Nesbitt Bellevue Prop. LLC*,
    859 F. Supp. 2d 602 (S.D.N.Y. 2012) ..........................................................9

### *Statutes and Rules*

15 U.S.C. § 78u(d)(5) ...................................................................................................8

28 U.S.C. § 1345 .........................................................................................................16

Fed. R. Civ. P. 70.........................................................................................................10

Fed. R. Civ. P. 69.............................................................................................1, 7, 14, 15

N.Y. C.P.L.R. § 5228(a) ..............................................................................................14

Pursuant to the Court's April 30, 2025 ECF Text Order and Local Rule 7.1, Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum of law (1) explaining the SEC's legal authority to request the appointment of a liquidation agent in this case; (2) responding to Defendants' argument that the SEC must proceed with any foreclosure procedures in state court; and (3) opposing the Motion to Stay of Defendants Richard Xia ("Xia") and Fleet New York Metropolitan Regional Center LLC (collectively, "Defendants") ("Stay Motion," ECF No. 586).

## PRELIMINARY STATEMENT

On July 26, 2024, the Court entered a final judgment in this case memorializing the parties' settlement of the SEC's securities fraud claims against Defendants. (ECF No. 460 ("Final Judgment").) Defendants consented to the Final Judgment, which requires them to pay over $270 million in disgorgement, penalties, and interest. The Final Judgment gave Defendants eight months to pay (until March 28, 2025). Defendants have failed to meet this obligation. In accordance with the Final Judgment, the SEC has acquired senior security interests in three properties—Eastern Mirage, Eastern Emerald, and the Kings Point Mansion—as security for Defendants' non-payment. Defendants previously conveyed mortgages to the SEC reflecting these senior security interests, which are now in default.

Defendants assert that the SEC may not ask the Court to appoint a sales agent for the properties, which will help to compensate defrauded investors, because the Final Judgment does not expressly provide for such an agent. Defendants misunderstand the SEC's available remedies for non-payment of the Final Judgment. The SEC has at least four avenues to pursue the appointment of a sales agent: (1) seeking equitable relief under the Court's broad powers; (2) petitioning for contempt and requesting to sell the properties through a sales agent as a remedy; (3) pursuing traditional judgment enforcement under Rule 69 of the Federal Rules of

Civil Procedure ("Federal Rules") and New York law; and (4) foreclosing on the mortgages and seeking a receiver to act as a sales agent.

Defendants also incorrectly claim that the SEC can foreclose on the mortgages only in New York state court.  Congress has authorized the SEC to proceed in federal court and federal courts regularly oversee foreclosure proceedings.  Furthermore, the Final Judgment states that this Court retains jurisdiction to enforce the terms of the Final Judgment, which include the mortgages.

Additionally, Defendants request a stay of the SEC's enforcement of the Final Judgment to allow for post-judgment proceedings.  The Court should deny this request because, under the Final Judgment, Defendants expressly waived any right to appeal the Final Judgment, and no relevant post-judgment proceedings justify a stay.  Defendants also fail to meet the requirements for a stay, including posting a bond and demonstrating adequate security for their payment of the Final Judgment.

## BACKGROUND

I.  <u>**Defendants' Failure to Comply with the Final Judgment.**</u>

On July 26, 2024, the Court approved the parties' settlement agreement and entered the Final Judgment.  (ECF No. 460.)  The Final Judgment requires Defendants to pay monetary relief and take specific actions.  Defendants acknowledge that they have failed to comply with the Final Judgment, including failing to pay the money they owe.  (*See* ECF No. 585-3, ¶ 4.)

The Final Judgment requires Fleet and Xia to pay:  (1) $228.5 million in disgorgement and $25 million in pre-judgment interest, for which they are jointly and severally liable, and (2) civil penalties of $15.3 million and $3.1 million, respectively, plus post-judgment interest.

(Final Judgment at 4-5 (Part IV).)[1]  These amounts were due by March 28, 2025.  (*Id.* at 5-6 (Part V).)  To date, only $42.5 million has been paid toward disgorgement.  Thus, Defendants still owe approximately $236.5 million, consisting of $186 million in disgorgement, $25 million in pre-judgment interest, approximately $18.4 million in civil penalties, and nearly $7 million in post-judgment interest.

Defendants also have failed to take other actions the Final Judgment requires.  For example, the Final Judgment required Xia to transfer ownership of Fleet by September 28, 2024 (*id.* at 9 (Part VII)), but he has not done so, *SEC v. Xia, et al.*, No. 21-cv-5350 (PKC) (JAM), 2025 WL 1332018, at *5 (E.D.N.Y. May 7, 2025).

Under the Final Judgment, the Court expressly retains jurisdiction to enforce the Final Judgment.  (Final Judgment at 12 (Part XII).)

## II.    __The Mortgages Securing Defendants' Payments Due Under the Final Judgment.__

The Final Judgment provides the SEC protection against Defendants' failure to pay by requiring them to convey to the SEC "senior security interests" in three properties—Eastern Mirage, Eastern Emerald, and the Kings Point Mansion (the "Properties").  (ECF No. 459 ("Consent"), ¶ 3(a) & Appx. C; Final Judgment at 10 (Part VIII) (the Final Judgment incorporates by reference the terms of the Consent "with the same force and effect as if fully set forth herein").)  Xia owns Eastern Mirage and Eastern Emerald through his entities X&Y Development Group, LLC ("X&Y") and Eastern Emerald Group, LLC ("EEG").  Xia's wife, relief defendant Julia Yue ("Yue," together with X&Y and EEG, the "Mortgagors"), nominally owns the Kings Point Mansion.

---

[1] Relief defendant Julie Yue is also a party to the settlement and is jointly and severally liable for portions of the monetary relief.  The other two relief defendants, Xi Verfenstein and Xinming Yu, have not settled and the SEC intends to move for summary judgment against them.

The Mortgagors each conveyed senior security interests in the Properties to the SEC in the form of mortgages ("Mortgages"). Each Mortgage says,

> The purpose of this Mortgage is to give [the SEC] continuing security for the payment when due of a debt arising by virtue of the Final Judgment entered in the action styled *Securities and Exchange Commission v. Xia, et al.*, Case No. 21 Civ. 05350 (the "Action") (the "Debt") . . . which Debt shall be owed to [the SEC] by (i) Richard Xia ("Xia"), (ii) Fleet New York Metropolitan Regional Center ("Fleet"); and (iii) Julia Yue ("Yue"). This Mortgage shall secure the Debt, whether now due or that may be due in the future. The total amount of the Debt that is secured herein shall not exceed at any one time $272,140,380, plus applicable post-judgment interest which continues to accrue on the Debt and less any payments that shall be made in full or partial satisfaction of the Debt.

(Ex. 1 ¶ 2 (Mortgage by X&Y to SEC for Eastern Mirage, dated June 11, 2024 ("Eastern Mirage Mortgage")), Ex. 2 ¶ 2 (Mortgage by EEG for Eastern Emerald, dated June 11, 2024 ("Eastern Emerald Mortgage"), Ex. 3 ¶ 2 (Mortgage by Julia Yue to SEC for Kings Point Mansion ("Kings Point Mortgage").)[2] If Defendants fail to pay the amounts owed under the Final Judgment within 15 days of the payment due date, the Mortgages are in default. (Eastern Mirage Mortgage ¶ 22; Eastern Emerald Mortgage ¶ 22; Kings Point Mortgage ¶ 20.) Defendants failed to timely pay what they owe, and the Mortgages are in default.

In the event of default, the SEC has "any rights provided by law or equity to effect [] foreclosure and recover value sufficient to satisfy [amounts owed under the Final Judgment] including, but not limited to, the right to request that the Court appoint a receiver to take control of the Property." (Eastern Mirage Mortgage ¶ 24; Eastern Emerald Mortgage ¶ 24; Kings Point Mortgage ¶ 22.) The Mortgages also say that, after default, Defendants must pay rents to any

---

[2] "Ex __" refers to Exhibits to the Declaration of Kim Han, dated May 23, 2025 ("Han Decl."), filed herewith.

receiver appointed.  (Eastern Mirage Mortgage ¶ 25; Eastern Emerald Mortgage ¶ 25; Kings Point Mortgage ¶ 23.) The Mortgages, however, do not limit the remedies available to the SEC to address Defendants' failures to comply with the Final Judgment.  (Eastern Mirage Mortgage ¶ 30; Eastern Emerald Mortgage ¶ 30.)

Notably, Defendants acknowledge that the value of the Properties is deteriorating or has deteriorated.  (*See, e.g.*, ECF No. 124 at 123 (filing by Defendants asserting that Eastern Mirage and Eastern Emerald have deteriorated); ECF No. 207 ¶ 50 (same); ECF No. 274 at 10, 27 (Defendants arguing that Eastern Emerald and Eastern Mirage are "deteriorating daily").)  Indeed, a real estate developer whom Defendants demanded the SEC consult recently informed the SEC that Eastern Mirage and Eastern Emerald have deteriorated and their current value is less than Defendants still owe under the Final Judgment.  (Han Decl. ¶¶ 2-5 & Ex. 4.)

**III.    The SEC's Consideration of Remedies for Defendants' Failures, Defendants' Status Update, and the Court's April 30 Order.**

After Defendants' failure to pay the Final Judgment triggered defaults, the SEC notified the Court that it would explore judgment enforcement options.  (ECF No. 582.)  The SEC's options include proposing the appointment of a sales agent to sell one or more of the Properties to satisfy the Final Judgment and, upon a subsequent order of the Court, distributing the sales proceeds to harmed investors.  The SEC informed the Court that it would propose a sales agent through a motion, allowing Defendants to respond.  (*Id.*; Ex. 5 at 54:16-56:25 (Transcript of Apr. 2, 2025 Court Conference).)

On April 25, 2025, Defendants filed a status update, arguing that the Final Judgment did not grant the SEC authority to unilaterally appoint a liquidation agent to sell the Properties. (ECF No. 583 at 1.)  Defendants also claimed that the SEC may foreclose on the Mortgages solely through New York state court proceedings.  (*Id.* at 1-2.)  The Court then ordered the SEC

5

to file a memorandum explaining its legal authority to appoint a liquidation agent and addressing Defendants' argument that foreclosure must occur in state court.  (ECF Text Order, dated Apr. 30, 2025.)

## IV.    Defendants' Motion to Stay Enforcement of the Final Judgment.

On May 5, 2025, Defendants moved to stay the SEC's enforcement of the Final Judgment.  (Stay Motion at 2.)  Defendants argued that they are entitled to a stay "as of right" until both (1) the Court rules on their motion to modify the Final Judgment (ECF No. 585); and (2) the Second Circuit decides their appeal of the December 8, 2022 preliminary injunction order.  (Stay Motion at 2.)  Defendants further request, alternatively, a "discretionary stay."  (*Id.* at 14.)  On May 7, the Court denied Defendants' motion to modify the Final Judgment and indicated it would consider the Stay Motion in conjunction with the SEC's motion to enforce the Final Judgment.  (ECF Text Order, May 7, 2025.)

## ARGUMENT

The Court has the authority to appoint a receiver or liquidation or sales agent to sell the Properties, and the SEC may request such relief.  The SEC also may foreclose on the Properties in this Court.  Notwithstanding the SEC's authority to seek a sales agent without Defendants' consent, in the SEC's status update filed today, the SEC proposed a process that will allow Defendants to provide input concerning such an appointment.  (ECF No. 599.)  Finally, the Court should deny the Stay Motion because, under the express terms of the Final Judgment, Defendants cannot appeal (and have not appealed) the Final Judgment, and they offer no cognizable reason to delay judgment enforcement.

## I.    The Court Has Broad Authority to Appoint an Agent to Sell the Properties.

The SEC has four primary bases to request the Court's appointment of an agent to sell the Properties:  (1) invoke the Court's equitable powers under the federal securities laws to appoint a

6

sales agent; (2) seek contempt proceedings against Defendants for non-payment, with the potential remedy of selling the Properties through a sales agent; (3) move to enforce the Final Judgment under Federal Rule 69(a), which includes the option to appoint a sales agent; or (4) foreclose on the Mortgages in this Court and request that the Court appoint a sales agent.[3]

    a.    ***The SEC May Invoke the Court's Broad Equitable Powers.***

The SEC often seeks the appointment of a receiver or sales agent to sell real property, and federal district courts often grant such relief.[4] *See, e.g.*, *SEC v. Borland*, No. 18-cv-4352 (PKC), 2024 WL 4407044, at *1-2 (S.D.N.Y. Aug. 30, 2024) (noting court's prior appointment of "liquidation agent" to sell defendant's real property and invalidating third-party liens); *SEC v. Ahmed*, No. 2022 WL 122269, at *7 (D. Conn. Jan. 11, 2022) ("[T]he Receiver was duly appointed by the Court to evaluate, liquidate, and if ordered by the Court, sell the Receivership Assets for distribution of the judgment awarded to the SEC."); *SEC v. Byers*, No. 08-cv- 7104 (DC), 2014 WL 12799633, at *3 (S.D.N.Y. Feb. 21, 2024) ("[T]he power of sale is within the scope of a receiver's 'complete control' over receivership assets.") (internal quotations omitted). The same well-established authority permits the Court to appoint a sales agent.

Under the Securities Exchange Act of 1934 ("Exchange Act") and the Sarbanes-Oxley Act of 2002, Federal district courts have broad equitable powers to protect investors. "In any action or proceeding brought or instituted by the Commission under any provision of the

---

[3] As stated in the SEC's status update filed today, the SEC has proposed a process pursuant to which it would move for appointment of a sales agent or receiver and, if the Court granted that motion, then the parties would confer and agree on the sales agent or receiver to be appointed and, if unable to agree, would submit competing proposals to the Court.  (ECF No. 599.) Thereafter, any sales would be pursuant to a Court approved process, with the sales proceeds held by the Court, pending an additional Court order.  (*Id.*)

[4] Liquidation agents and receivers serve similar functions.  *See, e.g.*, *SEC v. Elliot*, 180 F. Supp. 3d 230, 233 n.5 (S.D.N.Y. 2016).

securities law, the Commission may seek, and any Federal court may grant, ***any equitable relief*** that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5) (emphasis added); *see also SEC v. GPB Cap. Holdings, LLC*, No. 23-cv-8010, 2024 WL 4945247, at *3 (2d Cir. Dec. 3, 2024) ("A court can take any reasonable action . . . to secure compliance with a court order, and the scope of a district court's equitable powers to remedy past wrongs is broad.") (cleaned up and quotations omitted).

The Court's equitable powers allow it to fashion any necessary remedies to ensure full relief. When enforcing "regulatory enactment[s]," courts have the authority "to provide complete relief in light of the statutory purposes." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291-92 (1960); *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1103-04 (2d Cir. 1972); *SEC v. Illarramendi*, No. 11-cv-78 (JBA), 2011 WL 2457734, at *6 (D. Conn. June 16, 2011) (citing cases). This includes "the power to order all equitable relief necessary under the circumstances." *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir. 1984); *see also Smith v. SEC*, 653 F.3d 121 (2d Cir. 2011) (affirming district court's carve out from asset freeze and order to sell defendant's real property).

When the government is the plaintiff and a broader public interest is at stake, the district court's equitable powers become even broader and more flexible. *See SEC v. Cavanagh*, 445 F.3d 105, 118 n.29 (2d Cir. 2006); *FSLIC v. Sahni*, 868 F.2d 1096, 1097 (9th Cir. 1989); *see also Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 326 (1999) (noting that "courts of equity will go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved") (internal quotations omitted). This is particularly true where the SEC seeks to protect investors. *See Cavanagh*, 445 F.3d at 118 n.29.

Thus, in SEC enforcement actions, federal district courts have the authority to impose remedies for the benefit of harmed investors and the public interest, including ordering disgorgement of ill-gotten gains, requiring assets to be repatriated, imposing constructive trusts, barring defendants from taking specific actions, and appointing receivers or sales agents for real property. *See GBP Cap. Holdings*, 2024 WL 4945247, at *3 (affirming district court's appointment of receiver); *Smith*, 653 F.3d at 128 (affirming magistrate judge's order to sell property to avoid diminishment in value); *SEC v. Posner*, 16 F.3d 520, 521-22 (2d Cir. 1994) (affirming district court bar on defendants acting as a director or officer of a public company); *SEC v. Xia, et al.*, No. 21-cv-5350 (PKC), 2022 WL 17539124, at *12 (Dec. 8, 2022) (freezing defendants' assets) (collecting cases); *SEC v. Shiv*, 379 F. Supp. 2d 609, 617 (S.D.N.Y. 2005) (compelling repatriation of ill-gotten funds for harmed investors).

When determining to exercise its equitable powers and appoint a receiver or sales agent to sell real property, district courts generally consider several factors, including:  a defendant's fraudulent conduct; imminent danger of property devaluation; adequacy of legal remedies; potential harm to the plaintiff absent such an appointment; and the plaintiff's likelihood of success on the merits versus the likelihood of irreparable harm to the defendant.  *SEC v. Amerindo Inv. Advisors*, No. 05-cv-5231 (RJS), 2013 WL 1385013, at *13 (S.D.N.Y. Mar. 11, 2013) (citing *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC,* 859 F. Supp. 2d 602, 610 (S.D.N.Y. 2012)).  These factors all support appointing a sales agent for the Properties.[5]

The SEC has alleged fraudulent conduct by Defendants, supported by the Court's preliminary findings after a multi-day hearing, *see Xia*, 2022 WL 17539124, at *1, 4-8, and

---

[5] The SEC is entitled to invoke the Court's equitable powers only to satisfy disgorgement and prejudgment interest, but not the civil penalty.  Collection of the civil penalty is governed by the Federal Debt Collections Act.

Defendants' subsequent agreement not to deny the SEC's allegations (Final Judgment at 1; Consent ¶ 16).

Furthermore, as Defendants acknowledge, the value of the Properties—which secure Defendants' payments—is deteriorating. *See supra* page 5. If a sales agent is not appointed, the SEC and defrauded investors will be further harmed by both the diminution in the Properties' value and the SEC's inability to collect the Final Judgment. Conversely, Defendants would not be injured by the appointment because a sales agent would only monetize the Properties for fair market value, with the proceeds of that sale to be held pending a further Court order directing, if appropriate, that the proceeds be applied to what Defendants owe under the Final Judgment. Indeed, the Mortgagors' conveyance of the Mortgages to the SEC as security for Defendants' non-payment—which contemplate that the Properties will be sold to satisfy Defendants' payment obligations—further supports the proposed appointment. In sum, the SEC has obtained a Final Judgment and the appointment of a sales agent has become a necessary step to enforce it.

The SEC may thus file a motion and supporting papers requesting that the Court exercise its equitable powers to appoint an agent or receiver to market and sell one or more of the Properties, with the proceeds to be held by the Court pending a further order, and the established precedent permits the SEC to do so without having to foreclose on the Mortgages.

**b.** ***The SEC May Move for a Contempt Order and Sanctions.***

The SEC may also petition the Court to hold Defendants in contempt of the Final Judgment for failing to pay disgorgement and request the appointment of a receiver or agent to sell real property as a remedy.

Courts have the inherent power to enforce compliance with their orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also* Fed. R. Civ. P. 70 (where a judgment requires a specific act, courts may hold a disobedient party in contempt); *SEC*

*v. Bronson*, 602 F. Supp. 599, 615 (S.D.N.Y. 2022) (collecting cases addressing contempt powers in SEC enforcement actions).  The contempt power is used to maintain the "authority and dignity of the court" and ensure "orderly administration of justice."  *CBS Broad. Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016) (internal citation omitted).  In the Second Circuit, a court may impose civil contempt if (1) the order with which the contemnor has failed to comply is "clear," (2) proof of that noncompliance is "clear and convincing," and (3) the contemnor has not "diligently attempted to comply in a reasonable manner."  *Id.* (internal citations omitted).  The party seeking contempt need only show a failure to comply to meet its initial burden.  *United States v. Rylander*, 460 U.S. 752, 755 (1983).[6]

Defendants' failure to abide by the terms of the Final Judgment satisfies the elements for contempt.  The Final Judgment plainly required Defendants to pay $272,140,380 plus post-judgment interest by March 28, 2025, but they have not paid that amount.  Defendants' conduct thus satisfies the first two elements for contempt.  Defendants also have failed to attempt to comply with the Final Judgment in a reasonable manner.  Although $42.5 million has been paid towards the Final Judgment, this payment occurred only because the SEC took action to obtain turnover of certain frozen assets (ECF No. 469; ECF Text Order, Aug. 28, 2024)—not because Defendants did anything other than consent.  Additionally, despite having access to significant assets—including over $15 million in frozen funds, plus properties Xia says are worth more than $600 million—Defendants have made no attempts to pay the remaining amounts owed.

---

[6] The Final Judgment contemplates that the SEC may use contempt proceedings to address Defendants' non-payment of disgorgement and prejudgment interest:  "The [SEC] may enforce the Court's judgment for disgorgement and prejudgment interest by using all collection procedures authorized by law, including, but not limited to, moving for civil contempt at any time after the Second Payment Date [*i.e.*, March 28, 2025]."  (Final Judgment at 5 (Part VI).)

To avoid a finding of contempt, a defendant must demonstrate an inability to comply

with the Court's order "clearly, plainly, and unmistakably." *Huber v. Marine Midland Bank*, 51

F.3d 5, 10 (2d Cir. 1995).  A mere inability to pay the full amount is insufficient; the defendant

must show that it is impossible to pay *any portion* of the ordered amount.  *See Schwarz v.*

*ThinkStrategy Cap. Mgmt. LLC*, No. 11-cv-8094 (PAE), 2015 WL 4040558, at *10 (S.D.N.Y.

July 15, 2015) ("Inability to pay is a defense only when it is impossible for the contemnor to pay

*any portion* of the ordered disgorgement.") (emphasis in original); *SEC v. Aragon Cap. Advs.,*

*LLC*, No. 07-cv-919, 2011 WL 3278907, at *5 (S.D.N.Y. July 16, 2011) ("[A] mere showing that

the party was unable to pay the entire amount by the date specified is insufficient to avoid a

finding of contempt.").  Instead, a defendant must pay what he can, even if it reduces his income

or standard of living.  *Schwarz*, 2015 WL 4040558, at *10; *SEC v. Musella*, 818 F. Supp. 600,

602 (S.D.N.Y. 1993).  The only valid defense to civil contempt is a complete inability to pay due

to poverty or insolvency.  *See Huber*, 51 F.3d at 10; *NBA v. Design Mgmt. Consultants, Inc.*, 289

F. Supp. 2d 373, 377 (S.D.N.Y. 2003) ("[C]ompliance must be beyond the realm of possibility,

not just difficult to achieve, before a party will be exonerated in a contempt proceeding.")

(quotations and citations omitted).

Once contempt is established, the court has broad discretion to fashion a coercive remedy

based on the nature of the harm and the probable effect of alternative sanctions.  *See EEOC v.*

*Local 28*, 247 F. 3d 333, 336 (2d Cir. 2001).  In determining the appropriate sanction, a court

must consider:  (1) "the harm threatened by the continued contumacy"; (2) the probable effect of

alternative sanctions; and (3) the "contemnor's financial resources." *SEC v. Bremont*, No. 96-cv-

8771 (LAK), 2003 WL 21398932, at *7 (S.D.N.Y. June 18, 2003) (quoting *Dole Fresh Fruit Co.*

*v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)).

In this case, Defendants are clearly in contempt, and an appropriate remedy is the sale of the properties subject to the Mortgages. In similar cases, the SEC has proposed this remedy, and district courts have ordered it. (*See, e.g.*, Ex. 6 (Consent Order, *SEC v. Schantz*, No. 1:17-cv-3115 (D.N.J. Sept. 23, 2019, ECF No. 45) (appointing liquidation agent to sell defendant's property as sanctions for contempt where defendant had failed to pay monetary relief required by final judgment and had provided SEC with mortgage to secure money owed)).)

The harm caused by Defendants' failures to pay the Final Judgment is serious. Among other things, it puts at risk the ability of the SEC to make defrauded investors whole or to enable them to continue in the EB-5 program. Furthermore, no sanction short of contempt is likely to ensure Defendants' compliance with the Final Judgment. Indeed, Defendants have repeatedly ignored this Court's orders. (*See, e.g.*, ECF Text Order, Apr. 17, 2023 (addressing Defendants' failure to comply with obligations to Court-appointed monitor); ECF Text Order, Nov. 8, 2024 (addressing Defendants' failure to comply with obligations to CTBC receiver); ECF Text Order, Nov. 23, 2024 (addressing Xia's failure to comply with Final Judgment provision requiring transfer of Fleet); ECF Text Order, May 19, 2025 (addressing Defendants' failure to comply with obligations to Court-appointed distribution agent). They also have substantial resources—including properties that, Defendants claim, are worth over $600 million, and which they have mortgaged to the SEC specifically to secure against non-payment of the Final Judgment.

Accordingly, the SEC may also seek to appoint a liquidation agent to sell one or more of the Properties, with the proceeds to be held by the Court pending a further order, based on Defendants' contempt for failing to comply with the Final Judgment. Similar to the Court's equitable powers described above, the SEC may seek contempt sanctions without foreclosing on

the Mortgages. This approach is consistent with the Court's authority to enforce its orders and protect the interests of investors.[7]

### c. *The SEC May Seek Relief Under Federal Rule 69(a).*

The SEC may also use traditional judgment enforcement procedures to seek the appointment of a receiver or other agent to sell the Properties. *See SEC v. Mulholland*, No. 12-cv-14663, 2017 WL 5507889, at *12 (E.D. Mich. Nov. 17, 2017) ("The SEC may utilize all authorized judgment enforcement procedures to collect the judgment."). Under Federal Rule 69(a), the Court may enforce a money judgment through a writ of execution under New York law, or through some other process that the Court approves. *See* Fed. R. Civ. P. 69(a). The Court thus may direct the sale of real property to satisfy a judgment, including by appointing a receiver. *See* N.Y. C.P.L.R. § 5228(a); *see also SEC v. Vuono*, No. 13-mc-405 (JFB), 2013 WL 6837568, at *7 (E.D.N.Y. Dec. 26, 2013) (confirming the SEC's lien on real property and its standing to enforce the judgment against that property).

In considering whether to appoint a receiver, the Court should evaluate three factors: (1) whether the appointment will increase the likelihood of satisfying the judgment; (2) whether alternative remedies are available; and (3) whether a risk of fraud exists absent a receiver. *See Freeman v. Giuliani*, No. 24-mc-00353 (LJL), 2024 WL 4546883, at *3 (S.D.N.Y. Oct. 22,

---

[7] Sale of real property is not the most onerous sanction available. In some SEC enforcement actions, defendants' failures to pay the final judgment have resulted in incarceration. *See Schwarz*, 2015 WL 4040558, at *21 (ordering defendant incarcerated where he was in contempt for failure to pay final judgment); *SEC v. Durante*, No. 01-cv-9056 (DAB), 2013 WL 6800226 (S.D.N.Y. Dec. 19, 2013) ("Because Durante has failed to comply, despite being given every opportunity to do so, he should be ordered incarcerated until he makes meaningful payments towards the disgorgement amount and provides a current and accurate accounting of his income and assets."); *SEC v. Solow*, 682 F. Supp. 2d 1312, 1334 (S.D. Fl. 2010) (ordering defendant to "surrender to the custody of the U.S. Marshal's Office" where he refused to pay disgorgement and prejudgment interest).

2024) (citing *Hotel 71 Mezz Lender LLC v. Falor*, 14 N.Y.3d 303, 317 (2010)).[8]  These factors strongly support appointing a receiver in this case.  Xia's net worth is largely tied up in the Properties, and he has a history of ignoring court orders, suggesting that it is unlikely he will satisfy the Final Judgment absent a receiver.  Additionally, the unique characteristics of Eastern Mirage and Eastern Emerald suggest that their value would be maximized by the appointment of a specialized agent to market and sell them.  Courts have appointed receivers under New York law in similar circumstances.  *See, e.g.*, *Blue Citi LLC v. 4Barz Int'l*, No. 16-cv-9027 (VEC), 2019 WL 6976972, at *2-3 (S.D.N.Y. Dec. 20, 2019) (granting motion to appoint a receiver to "administer, collect, or sell any real personal property in which Defendant has an interest"); *Colfin Bulls Funding B, LLC v. Ampton Invs., Inc.*, 62 Misc.3d 1208(A) (N.Y. Sup. Ct. Nov. 26, 2018) (appointing a receiver to sell judgment debtor's property "until they can be distributed to the creditors in a fair and reasonable manner").

For the foregoing reasons, the SEC may also seek the appointment of a receiver or agent to sell the Properties under Federal Rule 69(a) and New York law with the proceeds to be held by the Court pending a further order.

### d.  *The SEC May Foreclose on the Mortgages in Federal Court.*

Finally, the SEC may first foreclose on the Mortgages and then seek appointment of a receiver or other agent to market and sell the Properties in this Court.

As an initial matter, Defendants' claim that a Mortgage foreclosure action must be brought in state court is incorrect.  The Final Judgment (through the Consent that was incorporated into the Final Judgment) expressly requires the Mortgages to address potential non-

---

[8] The Second Circuit has held that "a party seeking a money judgment against a non-party garnishee may proceed by motion" and need not commence a new action.  *CSX Trans., Inc. v. Island Rail Terminal, Inc., et al.*, 879 F.3d 462, 469 (2d Cir. 2018).

payment of Defendants' monetary obligations, and the Court retained jurisdiction to enforce the Final Judgment.  Thus, the Court may enforce the Mortgages.  In any event, even if the SEC sought to foreclose on the Mortgages in a plenary action, federal courts have jurisdiction over such actions by the U.S. government and its agencies, including the SEC. [9]  *See* 28 U.S.C. § 1345; *SEC v. Barton*, No. 17-cv-403 (JS), 2017 WL 11699815, at *3 (E.D.N.Y. Oct. 10, 2017).  Furthermore, the Mortgages themselves state that the SEC may bring a foreclosure action in the courts of "any" jurisdiction.  (Eastern Mirage Mortgage ¶ 41; Eastern Emerald Mortgage ¶ 41.)

In a mortgage foreclosure proceeding, the plaintiff may seek (and the Court may appoint) a receiver prior to foreclosure if the plaintiff establishes that such a receiver is "necessary to protect plaintiff's interest in the property," *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir.1988), as this Court did in *Gustavia Home, LLC v. Hoyer*, Order Appointing Receiver, No. 16-cv-4015 (PKC) (VMS) (ECF No. 71).  Indeed, pre-foreclosure receiver appointments  are routine where the mortgage contemplates the appointment of a receiver.  *See U.S. Nat'l Bank Ass'n v. 1078 Whillmore LLC, et al.*, 740 F. Supp. 3d 157, 176-77 (E.D.N.Y. 2024).

Even if a mortgage does not expressly mention a receiver, a court may consider whether to appoint one before foreclosure if (1) doing so will avoid the properties suffering waste and diminishment in value; (2) the legal remedies are inadequate without a receiver; (3) the plaintiff is likely to succeed on the merits; and (4) harm to the plaintiff by not appointing a receiver is greater than harm to the mortgagor.  *Id.* at 178.  These factors also support appointing a receiver.  First, the Mortgages each contemplate the appointment of a receiver.  (Eastern Mirage Mortgage ¶¶ 24, 25; Eastern Emerald Mortgage ¶¶ 24, 25; Kings Point Mansion ¶¶ 22, 23.)  Second, as

---

[9] A plenary action by the SEC to foreclose on the Mortgages would be related to this matter under Rule 3(a) of the Division of Business Rules for the Eastern District of New York.

shown above, the value of the Properties has diminished and will continue to diminish.  Third, no other remedies are likely to be adequate, as the SEC is unlikely to collect the Final Judgment unless a receiver is appointed.  Fourth, neither Defendants nor the Mortgagors will suffer undue or irreparable harm, as sales of the properties will only ensure that the Properties are monetized, with the proceeds held by the Court pending a further order, which may ultimately ensure Defendants pay what they owe.  Finally, the SEC is highly likely to succeed in seeking mortgage foreclosure because no dispute exists that the Mortgages are valid and in default.  *See Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71 (E.D.N.Y. 2019) (Chen, J.) (stating that the elements of a mortgage foreclosure action include proof of a mortgage obligation, a default on that obligation, and notice of default to the debtor).

For these reasons, if the SEC sought to foreclose on the Mortgages, it would be entitled to seek the appointment of a receiver or sales agent to sell the Properties with the proceeds to be held by the Court pending a further order.

## II.    **The Court Should Deny the Stay Motion.**

Defendants also have moved to stay any enforcement of the Final Judgment pending "post-judgment proceedings."  The Final Judgment, however, expressly waives Defendants' right to appeal that judgment, and they are not otherwise entitled to delay this case.

Defendants rely on Federal Rule 62, which allows a stay of judgment enforcement during an appeal or post-trial motions.  *See In re Nassau Cnty. Strip Search Cases*, 783 F.3d 414, 417 (2d Cir. 2015) ("The purpose of the rule is to ensure that the prevailing party will recover in full, ***if the decision should be affirmed***, while protecting the other side against the risk that payment cannot be recouped ***if the decision should be reversed***.") (emphasis added and internal quotations omitted).  The Final Judgment, however, expressly waives Defendants' appeal rights. (Consent ¶ 10; Final Judgment at 1.)  Thus, no basis exists to stay the Final Judgment to allow an

17

appeal that Defendants cannot (and have not) filed.  Nor is the continued pendency of Defendants' appeal of the Court's December 8, 2022, a basis to stay judgment enforcement.  As set forth in the SEC's status update filed today, Defendants' have waived their rights in that appeal, that appeal is moot, and the SEC has moved to dismiss it.  (ECF No. 599.)[10]

Moreover, Defendants have posted no bond, which Federal Rule 62 requires.  Instead, they argue that a bond should be waived.  To invoke such a waiver, however, Defendants must provide an "alternative means of securing the judgment."  *Id.*  Defendants claim that the Final Judgment is secured by the Mortgages and rely on a declaration from Xia asserting that (1) the properties are worth more than $600 million; and (2) many lenders have offered to loan him hundreds of millions of dollars, with the properties as collateral.  (Stay Motion at 13.)  Both assertions are unsupported.

First, Xia relies on valuations that this Court previously rejected, *see* 2022 WL 17539124, at *31, and that are now outdated.  Indeed, the SEC recently talked to a real estate developer whom Xia identified as a potential lender, and who suggested that the Properties are worth significantly less than Xia has claimed.  (Han Decl. ¶¶ 2-5 & Ex. 4.)  Furthermore, as the Court recently recognized, Defendants have repeatedly made unsubstantiated claims about lender interest.  *See Xia*, 2025 WL 1332018, at *5.  Still further, contrary to their current claim, Defendants' argued in their recent motion to modify the Final Judgment that they could not secure financing using the Properties as collateral.[11]  (ECF No. 562 (stating that Defendants'

---

[10] On May 22, 2025, Defendants informed the Second Circuit that they intend to oppose the SEC's motion to dismiss.  *SEC v. Xia*, No. 22-3137 (2d Cir.), Dkt No. 168.

[11] Even if Defendants had appealed the Final Judgment, no *Nassau* factor supports waiving the bond requirement.  *Nassau Cnty.*, 783 F.3d at 417.  Defendants' recent filings suggest they will challenge the SEC's enforcement of the Mortgages, complicating the collection process and undermining any confidence in Defendants' willingness and ability to pay the Final Judgment.

agent "has been unable to secure lenders or investors who are willing to commit the funds necessary to satisfy the Final Payment amount").)

Finally, Defendants argue that, even if a Rule 62 stay is inappropriate, the Court should exercise its discretion to stay judgment enforcement. (Stay Motion at 12-16.) Defendants apparently assert that a discretionary stay somehow will simplify the "issues" in the case. (*Id.* at 13.) Defendants do not explain, however, what issues will be simplified, or how. Indeed, there is nothing to simplify. Defendants owe more than $230 million, approximately 90 percent of which has been earmarked for defrauded investors. Defendants cannot appeal the Final Judgment and have failed to timely pay what they owe. Defendants' properties, acquired with funds from their defrauded investors, are security for the money they still owe, and several mechanisms exist to monetize those properties to repay the harmed investors. Defendants' appeal from the preliminary injunction asset freeze—to which they subsequently consented—has been waived and is moot. Defendants cannot dispute any of this, and no issues will be simplified by staying enforcement of the Final Judgment.

## CONCLUSION

For the foregoing reasons, (1) the SEC has authority to seek the appointment of an agent to market and sell Eastern Mirage, Eastern Emerald, and the Kings Point Mansion; (2) the SEC may seek foreclosure of the Mortgages in this Court; and (3) the Court should deny Defendants' Motion to Stay.

Dated: New York, NY
         May 23, 2025

/s/ Christopher M. Colorado
David Stoelting
Christopher M. Colorado
Kim Han
*Attorneys for Plaintiff*
Securities and Exchange Commission
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
212-336-9143 (Colorado)

## <u>Local Civil Rule 7.1(c) Certification</u>

Pursuant to Local Civil Rule 7.1(c), I certify that this memorandum of law contains 6,246 words, excluding the caption, table of contents, table of authorities, signature block, and any certificates of service or compliance.

/s/ Christopher M. Colorado
*Attorney for Plaintiff*