*** Filed ***
04:59 PM, 21 Jan, 2026
U.S.D.C., Eastern District of New York

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>      -against-<br><br>RICHARD XIA, a/k/a/ YI XIA, and FLEET NEW YORK METROPOLITAN REGIONAL CENTER, LLC, f/k/a FEDERAL NEW YORK METROPOLITAN REGIONAL CENTER, LLC.<br><br>           Defendants,<br><br>JULIA YUE, a/k/a JIQING YUE; XI VERFENSTEIN, and XINMING YU,<br><br>          Relief Defendants. | No. 21-cv-05350-PKC-JAM |

## Rebuttal to Investor Chen Li's Complaint and Emergency Motion for Relief from Judgment, Reconsideration of Settlement Orders, Unfreezing of Assets, and Refund of Commingled EB-5 Investor Funds

Dear Judge Chen,

Defendant Richard Xia, appearing pro se, in the above-captioned matter, respectfully submits this rebuttal to Investor Chen Li's letter dated December 18, 2025 (filed January 13, 2026) (the "Complaint"), which seeks judicial intervention to compel production of documents necessary for his Form I-829 petition without remitting a reasonable processing fee. This rebuttal and emergency motion is brought pursuant to Federal Rules of Civil Procedure 60(b)(1), (3), and (6) (providing relief from a judgment or order based on mistake, inadvertence, excusable neglect, fraud, misrepresentation, misconduct, or any other reason justifying relief); 59(e) (authorizing alteration or amendment of a judgment to correct manifest errors of law or fact or to prevent manifest injustice); and the Court's inherent equitable powers under Article III to preserve the integrity of judicial proceedings and protect third-party interests.

Chen Li's Complaint misrepresents the factual record, omits critical context regarding the involvement of his unregistered immigration broker, Wayne (Yawei) Sun (Exhibit A), and attempts to circumvent a uniformly applied basic processing fee of USD 5,000 to local Chinese counsel—a fee that other investors have paid for analogous services. This fee is neither extortionate nor arbitrary but covers essential processing costs for compiling, verifying, authenticating, and providing customized backup material for I-829 template documentation of

Global Law Group, consistent with previous successful standards and below prevailing rates for EB-5 legal services. Granting Chen Li's request without condition would contravene fundamental principles of equity, unjustly enrich him at the expense of the project and other investors, and violate the EB-5 program's requirement for sustained, at-risk capital investment under 8 C.F.R. §204.6(j).

Furthermore, this seemingly isolated demand underscores the pervasive inequities embedded in the SEC-coerced settlement (ECF No. 458, 459). Chen Li's request for I-829 documentation exemplifies the settlement's flaws, as it demonstrates his (and others (ECF No. 625 Attachment - 87 investor letter)) continued confidence in the project's viability for materializing permanent green cards—yet the prolonged asset freeze, extending beyond the existing sufficient mortgage collateral, is harming investors like Chen Li (and others) by depriving resources needed to process even a modest USD 5,000 fee. With many more EB-5 investors facing similar needs (Exhibit I), immediate remediation is warranted to protect all such investors equitably. Pursuant to the Court's inherent power to enforce settlements equitably, as recognized in Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994), reconsideration is warranted to address these interconnected harms.

The United States Citizenship and Immigration Services (USCIS), which maintained close communication with the SEC throughout the entire matter, has to date approved all EB-5 petitions based on the project's pre-case and settlement fund distribution protocols, reaffirmation of existing Regional Center designation (Exhibit M) and accepting super-late integrity fee payments caused by the Monitor's negligence (ECF No. 451). These consistent approvals directly contradict—and factually undermine—the SEC's allegations of misconduct. The settlement, entered into without meaningful legal representation (ECF No. 626) for the EB-5 projects, Defendants (including the Regional Center), and in opposition from the affected investors, has increasingly harmed both the project and its investors.

More than USD 80 million in EB-5 capital—funds that, by statutory and regulatory mandate, require strict, penny-to-penny tracing for job-creation purposes—only remains partially frozen by Court order and still subject to oversight by the Court-appointed Monitor and Distribution Administrator under SEC supervision. Rather than benefiting the investors for whom these funds were exclusively intended, substantial portions of this capital (USD 70 million plus) are now being diverted to various third parties, including CTBC Bank, the Securities and Exchange Commission itself, the Monitor, and the Distribution Administrator, and others, in violation of EB-5 traceability requirements (8 U.S.C. §1153(b)(5); 8 C.F.R. §204.6(j)). This diversion has depleted investor funds without commensurate benefit, exacerbating the harm to third-party investors and undermining the equitable purpose of the Court's orders.

It is particularly unreasonable for the settlement to force these funds into the Court Registry Investment System (CRIS) or to third parties when a significant number of investors, like Chen Li, prefer to remain invested in the project. Such forced diversions would either destroy their green card eligibility by disrupting the required at-risk capital and job-creation tracing under 8

U.S.C. § 1153(b)(5) and 8 C.F.R. § 204.6, or delay it into complete uncertainty, despite the existing project structure already providing certainty for both their immigration status and investment returns, even during the litigation and stalled construction caused by asset freeze, after over a decade of waiting. This contravenes the EB-5 program's core objectives of job creation and family reunification, as courts have recognized the need to preserve investor pathways in similar cases (e.g., SEC v. Jay Peak (Quiros), No. 1:16-cv-21301 (S.D. Fla. 2016), balancing asset management to mitigate harm to immigration equities).

For more than four years of litigation and seven years of investigation, the EB-5 projects and their investors have endured a prolonged pattern of institutional misconduct and breaches of fiduciary duty. Capital specifically and exclusively committed under the EB-5 program to create jobs and promote family reunification—pursuant to 8 U.S.C. § 1153(b)(5) and 8 C.F.R. § 204.6—has been improperly redirected, even under the freeze from day one of this case, by the very entities charged with its protection: the SEC, CTBC Bank, the Court-appointed Monitor, and the Court-appointed Distribution Administrator. In excess of USD 70 million has been disbursed to these parties without any demonstrable benefit to the program's intended beneficiaries, thereby seriously jeopardizing the investors' ability to obtain permanent residency and causing actual or imminent family separations.

No funds have been allocated to defend the Regional Center itself or to vindicate the investors' rights, leaving them without meaningful recourse and increasingly exposed to irreparable harm (ECF No. 616 and Exhibit J). Absent prompt judicial intervention, the remaining investors face the forced forfeiture of their hard-earned prospects for permanent residency—prospects that, for some, have required up to fifteen years of sustained investment and compliance. This will compel them to pursue uncertain, protracted, and costly alternative immigration pathways, resulting in prolonged family separations and the perpetuation of manifest injustice.

This entrenched coalition of institutional actors continues to flagrantly disregard applicable statutes, regulations, and fiduciary obligations. Without immediate corrective action by the Court, this profound and ongoing inequity will remain unremedied.

**I. Factual Background and Chen Li's Misrepresentations, Integrated with Broader Project Inequities, Plus Chen Li's Broker as "Pusher": Dishonest Tactics and Post-Complaint Threats.**

Chen Li represents that he invested in EEGH, L.P. in or about 2015 and intends to file his Form I-829 petition on or before February 8, 2026. He asserts that Fleet New York Metropolitan Regional Center, LLC ("Fleet") has withheld necessary I-829 documentation notwithstanding his communications in November and December 2025.

Notably absent from Mr. Chen's submission, however, is the material fact that all communications regarding the I-829 documentation were conducted exclusively through his **unregistered** immigration broker, Wayne (Yawei) Sun (Exhibit A). Mr. Sun, together with his father, Baozhong Sun, previously attempted—on two separate occasions and using fabricated

evidence—to initiate litigation against Fleet New York Metropolitan Regional Center, LLC, seeking additional, unsubstantiated broker commissions. Both efforts were unsuccessful, dismissed and predated the SEC action (Exhibit K).

Since that time, Mr. Sun has engaged in calculated demands for uncompensated services and, following the filing of Mr. Chen's complaint on December 18, 2025, issued post-complaint threats of further litigation. These threats were directed to local Chinese counsel in the People's Republic of China on December 30, 2025 (Exhibit A). This material omission materially distorts the record presented to the Court and fails to acknowledge the equitable, uniform fee structure that has been imposed consistently upon all investors in the project.

Chen Li's Complaint is vitiated by Wayne Sun's coercive methodology—a "pusher" stratagem entailing initial gratis service demands under investor entitlement pretexts, followed by post-filing litigation threats. This diverges markedly from the collaborative paradigm extended to fee-compliant investors and exposes Chen Li's disingenuity:

**Pre-Complaint Push for Free Services**: Sun, as Chen Li's proxy, recurrently importuned Fleet for I-829 documents without a fee proffer for many years. His communiques (Exhibit A - WeChat captures appended) accentuate exigency while minimizing costs, fallaciously asserting entitlement per Court decrees. This disregards ECF No. 657's "reasonable cooperation" edict, eschewing gratuitous provision.

**Post-Complaint Threats to Chinese Counsel:** Post-Complaint on December 18, 2025, Sun dispatched intimidatory missives to project Chinese counsel on December 30, 2025 (Exhibit A), menacing escalated proceedings absent immediate, uncompensated delivery. Such maneuvers infringe ethical norms and diverge from bona fide investors' upfront compliance. Contrasting Chen Li/Sun, adherent investors affirm the fee's propriety and paid immediately to get their coordinated I-829 package submitted and approved without any issue.

Chen Li's motion mirrors the situation of another EEGH, L.P. investor, Yongxiang Pan (Exhibit B), whose June 30, 2025 letter (ECF No. 616) complained of Fleet's alleged non-responsiveness in providing I-829 documentation despite repeated requests. Like Chen Li, Pan claimed urgency due to an impending USCIS deadline (RFE response due July 18, 2025) and lack of access to project records controlled by Fleet. Pan's letter details identical efforts: multiple emails, involvement of the Monitor, and no response until resolution.

Both Chen Li and Pan have opposed payment of the standard USD 5,000 processing fee required by the Regional Center (Fleet) to compile, verify, authenticate, and customize the I-829 support package using Global Law Group templates. Despite their refusal to pay this modest administrative fee, both investors continue to insist on receiving full project documentation and support from the Regional Center while simultaneously choosing to retain their capital in the project—just like the majority of other EEGH investors who have complied with the fee requirement.

This conduct highlights a fundamental inconsistency: Chen Li and Pan demand the benefits of the project (documentation necessary for I-829 approval and preservation of their permanent green-card status) without contributing to the reasonable administrative costs required to produce those materials under the severe constraints of the prolonged asset freeze. Yet they, like other investors, have elected to keep their investment capital committed to the original NCEs (EEGH L.P. and EEGH II, L.P.), demonstrating confidence that the project remains viable and capable of achieving their core EB-5 objectives—lawful permanent residency through job creation, with eventual investment repayment upon project completion and refinancing.

This fee covered actual administrative costs under the freeze's constraints—costs that are reasonable, uniformly applied, and essential for preparing and producing USCIS-compliant materials (including K-1 forms, economic analyses, job-creation evidence, and site-progress documentation).

All these investors' compliance and success establishes precedent that:

- Fleet is not willfully non-responsive; delays stem from resource constraints imposed by the prolonged asset freeze and the need to cover actual administrative costs.
- The USD 5,000 fee is necessary for producing USCIS-compliant materials.
- Investors who oppose the fee face delays, while those who pay promptly receive complete packages and advance their petitions.

Chen Li's refusal to pay—channeled through unregistered broker Wayne (Yawei) Sun (Exhibit A)—seeks preferential treatment denied to Pan and other compliant investors. Sun's history of two dismissed actions against Fleet for additional commissions (Exhibit K) and post-motion coercive communications (threatening litigation if documents are not provided gratis) further underscore the inequity. Unregistered representatives may not practice before USCIS (8 C.F.R. §§ 292.1, 1001.1(j)), and courts routinely condition relief on direct petitioner coordination while denying aid to those acting inequitably (SEC v. Jay Peak, Inc., No. 1:16-cv-21301 (S.D. Fla.) (rebuffing non-cooperative investors)).

Granting Chen Li unconditional relief would unjustly enrich him at the expense of the project and compliant investors, violating equity principles (Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (2012) (unjust enrichment unavailable where benefit conferred pursuant to uniform, reasonable charge for services)). Fleet, relying on these Global Law Group templates, has consistently provided and secured approval by USCIS (ECF No. 616) for such comprehensive materials to numerous investors upon receipt of the USD 5,000 administrative fee. This fee is intended to cover the costs of actual expenses-documents review, document compiling and submittal, and necessary inter-party coordination, and is substantially below prevailing market rates for comparable EB-5 petition preparation services.

The Court's January 13, 2026 Order compelling production—issued, once again, without affording Defendants an opportunity to respond or be heard, consistent with the pattern observed

in multiple fee applications submitted by the Monitor, the Distribution Administrator, and CTBC Bank—exemplifies a continuing and apparent pattern of procedural inconsistencies.

By failing to inquire into critical material facts—such as the involvement of unregistered immigration brokers like Mr. Wayne (Yawei) Sun or the existence of a uniform and reasonable administrative fee structure after prolonged asset freeze—the Order perpetuates a cycle that is profoundly detrimental to all EB-5 investors and to the projects themselves, projects that have been verified through the USCIS adjudication process as capable of creating thousands of qualifying U.S. jobs.

This approach depletes limited, exclusively designated EB-5 project resources without any corresponding compensation, undermines ongoing job-creation efforts, and diverts substantial funds to unrelated third parties. These developments have already resulted in significant stalled progress on the EB-5 projects that has been supposed to be fully completed by now (ECF No. 179 Collier Appraisal report), the improper freezing of assets (including personal non-EB-5 assets accumulated over 15 years before EB-5), and the unauthorized transfer of EB-5-restricted capital to entities that provide no benefit to the program's intended beneficiaries. Most critically, these actions have caused—and continue to cause—the inability of investors to timely secure permanent resident status, with direct and severe consequences that include prolonged family separations and, in some cases, the imminent risk of removal proceedings.

**II. Systemic Pattern of Procedural Unfairness and Substantial Harm to EB-5 Investors and Projects**

This action exemplifies a troubling and recurring pattern of coordinated institutional misconduct that has disproportionately harmed EB-5 investors and undermined the very projects intended to create qualifying U.S. jobs. The following specific practices illustrate this systemic unfairness;

1) **Refusal to Release Funds for Defense, Resulting in Unopposed Default Judgments in EB-5 Projects' Construction Related Cases:** The SEC and its recommended, heavily-interest conflicted Monitor have consistently denied motions to release even modest funds for the defense of claims (Monitor even try to oppose counsel selection) against the EB-5 projects, including construction-related litigation (see Exhibit G and H). At the same time, it has permitted numerous third-party claims—such as mechanic's liens and personal injury actions—to proceed entirely unopposed to their own hand selected parties. This approach has led to default judgments in New York State court totaling at least USD 39 million recently. By prioritizing the interests of non-investor claimants unopposed over those of the EB-5 investors (see Exhibit E), these rulings have materially diminished project value, reduced prospective job creation, and directly prejudiced the ability of EB-5 families to obtain permanent residency.

2) **Unopposed Intervention and Depletion of Funds by CTBC Bank:** The CTBC Bank's motion to intervene was granted without opposition from Defendants (Docket No. 238), thereby permitting the withdrawal of substantial EB-5-restricted funds despite the stated

purpose of the asset freeze—to preserve investor capital (see, e.g., ECF Nos. 78 (Feb. 10, 2022) and 86 (Feb. 15, 2022)). As confirmed by a CTBC representative in contemporaneous email correspondence (Exhibit C), the relevant accounts now reflect a zero balance.

Prior to the September 2021 asset freeze, these CTBC accounts held approximately USD 48 million in EB-5 proceeds. Those funds have since been fully depleted and disbursed as follows: to the Distribution Administrator for operational costs and distributions unrelated to EB-5 objectives; to the Monitor through repeated interim fee approvals totaling millions of dollars (e.g., ECF Nos. 88, 649, 663), including overlapping billings and non-essential tasks; to various third parties for legal and consulting fees unrelated to project advancement; to CTBC itself as an intervening lender (Exhibit D); and to the Court Registry Investment System ("CRIS") in the amount of USD 42.5 million, despite objections from the prospective transferee of the Regional Center, John Leo and Defendants (Exhibit F).

None of these disbursements directly benefits EB-5 investors, preserves their at-risk investment status in accordance with 8 C.F.R. § 204.6(j), or advances the job-creation requirements necessary for timely I-829 adjudication and permanent residency (Exhibit F).

3) **Routine Preferential Approval of Third-Party Fees While Denying Defendants' Requests:** While numerous Defendants' requests for limited fund releases have been denied until today, the Court has routinely approved Monitor fee applications despite documented inefficiencies, overlapping charges, and billings for tasks unrelated to investor protection (e.g., Docket No. 649, granted September 11, 2025; reconsideration denied Docket No. 665, September 25, 2025). Such approvals raise serious concerns regarding breaches of fiduciary duty (see SEC v. Byers, 590 F. Supp. 2d 637 (S.D.N.Y. 2008)) and EB-5 requirement (Exhibit E and F). These practices are compounded by additional allegations of SEC misconduct, including the submission of allegedly falsified declarations by Sunil Aggarwal and David Stoelting (Exhibit L), consistent with patterns observed in other matters (e.g., the Caledonian Bank litigation).

4) **Unlawful Transfer of USD 42.5 Million to CRIS Over Explicit Objections:** Notwithstanding express objections from John Leo (Exhibit F), the prospective transferee of the Regional Center, and others, as detailed in the August 8, 2025 letter, the SEC effected the transfer of USD 42.5 million to CRIS as purported penalties and post-judgment interest. This transfer directly depletes the very invested capital from EB-5 investors for job creation and severs their ties required for remaining investors to maintain capital "at risk" condition to satisfy USCIS requirements for investors' green-card petitions..

5) **Exclusive Access by the Distribution Administrator for Self-Payment, Resulting in Ongoing Depletion Without Investor Benefit**:

The CRIS account remains accessible solely by Distribution Administrator Robert Seiden for the purpose of compensating himself. Fee applications totaling approximately USD

746,862.65 have been requested and approved for withdrawal from the CRIS account, yet no distributions have been made to investors.

Moreover, as the second extended Statement of Claim deadline approaches, the Distribution Administrator has recently revised transfer instructions on questionable grounds (ECF Nos. 642, 643 Distributor's nine-month delayed update regarding the addition of EB-5 option). This pattern of administrative self-enrichment, without corresponding benefit to investors, violates principles of equity, fiduciary responsibility, and proper oversight (Fed. R. Civ. P. 53(g); Distribution Plan, ECF No. 510). It necessitates an immediate freeze on further fee approvals, a comprehensive audit of all disbursements, and, where appropriate, reversion of remaining funds to protect investor interests.

6) **Prolonged and Overbroad Asset Freeze Extending to Non-EB-5 Assets:** The temporary restraining order and asset freeze have continued post-settlement and have been applied to assets wholly unrelated to the EB-5 program (ECF No. 458), notwithstanding the existence of sufficient, the SEC agreed mortgage collateral. Prolonged delays, attributed in part to inadequate or misinformed representations by never sufficiently funded counsels, have stalled project development and caused investor losses values every day in estimated to exceed USD 580 million in mismanaged real estate value. Collectively, these practices reflect a systemic prioritization of third-party and administrative interests over the statutory objectives of the EB-5 program—job creation and family-based permanent residency— resulting in profound and ongoing harm to hundreds of EB-5 investors and their family members.

## III. Legal Basis for Requiring Fee Payment, Denying Relief, and Granting Emergency Motion

This motion is anchored in EB-5 jurisprudence, securities regulations, and equity precepts. Courts routinely intervene in analogous EB-5 disputes to shield investors from fund malfeasance, mandating unfreezes, refunds, and disgorgement where overseers breach duties, deplete assets via exorbitant fees, and inflict irreparable injury.

**Violations of EB-5 Laws and Regulations:**

EB-5 funds must remain "at risk" and dedicated exclusively to job-creating activities to qualify for immigration benefits, with strict, penny-to-penny traceability required to demonstrate sustainment and fulfillment of the program's mandates (8 U.S.C. § 1153(b)(5); 8 C.F.R. § 204.6(j)(2)–(4); Matter of Izummi, 22 I&N Dec. 169, 188 (AAO 1998) (holding that any redirection or commingling destroys the required nexus, rendering investments non-qualifying and jeopardizing I-829 approvals)).

Commingling, misuse, or diversion of these funds constitutes a direct violation of these statutory and regulatory imperatives, as courts have consistently enforced in SEC enforcement actions

involving EB-5 programs (Exhibit F) —such as SEC v. EB5 Asset Manager, LLC, No. 15-cv-62323 (S.D. Fla. 2015), where assets were frozen to prevent further misuse, yet targeted partial releases were permitted to safeguard investors' immigration pathways and restore compliance with "at-risk" requirements.

In this case, the Monitor has compelled with consent of the SEC—under the duress of the prolonged asset freeze and resultant fund depletion—to deploy Eastern Emerald funds for non-qualifying purposes, including Eastern Mirage taxes, Monitor fees, and rectifying the Monitor's noncompliance (e.g., failure to enforce the 20% fee holdback, leading to an immediate and unwarranted USD 134,638.37 payout, as detailed in prior fee applications like ECF No. 649).

The SEC coerced Eastern Emerald USD 42.5 million EB-5 fund transfer further exemplifies this egregious breach, irrevocably tainting the capital's traceability and eligibility for EB-5 purposes, thereby exposing all investors to USCIS denials of their permanent residency petitions. To rectify these violations and prevent irreparable harm to hundreds of families, the diverted funds must be immediately refunded to their original new commercial enterprises (NCEs)—such as EEGH L.P. and EEGH II, L.P., and the assets unfrozen in full, thereby enabling project resumption, restoration of at-risk capital status, and fulfillment of the job-creation obligations essential for I-829 approvals.

This equitable remedy aligns with judicial precedents balancing freezes with releases to prioritize investor interests (SEC v. Quiros, No. 1:16-cv-21301, at 12 (S.D. Fla. Apr. 12, 2016) (authorizing releases to mitigate immigration harm)), and directly counters Chen Li's self-serving evasion of the modest USD 5,000 processing fee—funneled through his unregistered broker Wayne (Yawei) Sun's coercive tactics (Exhibit A)—which itself underscores the freeze's broader inequities by forcing compliant investors to bear disproportionate burdens while rewarding non-cooperation.

**Securities Law Violations and Fiduciary Breaches:** EB-5 offerings were ordered as "securities", even with zero interest loans to the project; thus, actions transgress antifraud provisions (15 U.S.C. §§ 77q, 78j). The SEC's duplicity—indicting prior commingling while replicating its patent in amended pleadings and correspondence. Monitor fees flout "reasonableness" under the Monitor Order and SEC guidelines, meriting reduction or denial per SEC v. Byers, 590 F. Supp. 2d 637 (S.D.N.Y. 2008) (curtailing duplicative/clerical overbilling); Baliga v. Link Motion Inc., No. 1:18-cv-11642 (S.D.N.Y. Sept. 30, 2021) (mandating unauthorized billing audits). These infractions compel unfreezing to halt further erosion.

**Grounds for Reconsideration and Emergency Relief:** Under FRCP 60(b)(3) (fraud/misconduct) and 59(e) (manifest injustice), reconsideration is warranted. Newly discovered evidence (e.g., nearly full depletion post-settlement, $39 million default judgments newly issued by state court, EB-5 investors' almost daily requests，Monitor's unfiled reports,

and meter seizure orders) and ongoing violations (e.g., unauthorized personnel and rate hikes) justify relief.

Courts in proved EB-5 fraud cases have granted such motions to unfreeze assets for investor benefit. Equitable disgorgement is appropriate where, as here, monitors knowingly misuse funds (see GAO-23-106452 Report on EB-5 fraud monitoring). The post settlement asset freeze's continuation violates due process by causing undue hardship without benefit, as in SEC v. Jay Peak (Quiros), No. 1:16-cv-21301 (S.D. Fla. 2016), where courts balanced freezes with releases to mitigate harm.

**Irreparable Harm to Investors:** The continued asset freeze harms investors more than any other party, violating due process and immigration equities. Critically, the EB-5 investors—including Chen Li and Pan—are fully aware of all SEC allegations, Defendant's rebuttals, the Settlement Agreement in the form of Court's decisions (including the 2024 final judgment), and USCIS's consistent approvals of I-829 petitions based on the project's documentation and job-creation evidence. With this full knowledge, investors continue to choose to retain their funding in the project because it is clear the project is a winning project that achieves their fundamental EB-5 goal: obtaining their green-card dream through lawful permanent residency, with eventual investment repayment upon project completion and refinancing.

This voluntary retention of capital in the original NCEs—despite the SEC's claims and the freeze—demonstrates investor confidence in the project's viability and underscores that the prolonged freeze is unnecessary and counterproductive. Here, the freeze—stemming from inadequate representation and overbroad enforcement—must be lifted to allow refinancing, project completion, direct remittances to original NCEs, and refunds where appropriate, especially given the SEC, Monitor, and Distribution Administrator's overreach and lack of benefit (e.g., services exceeding scope per Monitor Order ¶¶ 6, 11). Continued maintenance of the freeze beyond settlement deprives investors of the ability to realize their immigration and economic objectives, constituting manifest injustice warranting immediate equitable relief.

Under EB-5 tenets, petitioners shoulder sustainment and job creation proofs (8 C.F.R. § 204.6(m)(7)), inclusive of costs. Chen Li's bid to transfer this without recompense defies equity and the Monitor Order (ECF No. 11). Gratis access would yield unjust enrichment, proscribed by New York law (Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511 (2012)). Sun's unregistered advocacy nullifies his intercession, potentially voiding

The Court should predicate assistance on Chen Li's USD 5,000 payment, mandating direct coordination without Sun. Noncompliance merits denial, as courts withhold aid from inequitable actors (e.g., SEC v. Jay Peak, supra, rebuffing uncooperative investors).

This pattern of procedural unfairness—exemplified by repeated ex parte orders and preferential treatment of third-party interests—creates an objective appearance of partiality under 28 U.S.C. § 455(a) and (b)(1), warranting recusal to preserve judicial integrity (see Liteky v. United States, 510 U.S. 540 (1994); Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988)). Should

this motion be denied, it will form the basis for an urgent appeal to the Second Circuit, highlighting these due process violations and the irreparable harm to investors.

## IV. Relief Sought

1. Reconsider and vacate the January 13, 2026 Order directing assistance to Chen Li;
2. In the alternative, modify the Order to condition any required document reconciliation or access assistance upon Chen's prompt payment of the standard USD 5,000 processing fee;
3. Order the release and refund of all residual EB-5 funds from CRIS and bank accounts to original accounts.
4. Dissolve all asset freezes to facilitate project resumption, refinancing, and completion for investor benefit.
5. Compel the SEC, Monitor, CTBC Bank and Distribution Administrator to disgorge misappropriated sums (including excessive fees), halt violations, and undergo independent audit of all expenditures.

This motion is indispensable to rectify a profound injustice: the SEC and Monitor's illicit actions, encompassing noncompliant fee exactions, have plundered not merely capital but destinies. The Court must intervene forthwith to reinstate equity.

## V. Conclusion

This motion fully details systemic violations and seeks emergent relief: (1) immediate release and refund of EB-5 investor funds held in the Court Registry Investment System (CRIS) account and/or controlled by CTBC Bank; (2) dissolution of all asset freezes encompassing non-EB-5 assets and/or EB-5 project-related; and (3) an order directing the Securities and Exchange Commission ("SEC"), Monitor Matthew. Scott Peeler of ArentFox Schiff LLP, and Distribution Administrator Robert Seiden of Seiden Law Group to refund and cease further misuse of funds, provide a full accounting of all expenditures, and disgorge improperly disbursed amounts.

This relief is necessary to prevent irreparable harm to hundreds of EB-5 investors, whose immigration pathways are jeopardized by breaches of EB-5 statutes (8 U.S.C. § 1153(b)(5)), federal securities laws (15 U.S.C. §§ 77a et seq., 78a et seq.), fiduciary duties, and the Court's Monitor Order (ECF No. 11).

Chen Li's Complaint seeks preferential treatment through omissions and reliance on an unregistered broker. Other investors have paid the reasonable fee; no exemption is warranted. The settlement's flaws—repudiating USCIS approvals, diverting funds, and maintaining freezes—require immediate remediation to safeguard investors.

I respectfully implore the Court to deny unconditional relief, conditioning document release on fee payment. The settlement's disparities—repudiating USCIS validations, channeling funds to mendacious third parties, and sustaining non-EB-5 freezes—necessitate immediate remediation to safeguard stay-electing investors' residency prospects.

Respectfully submitted,

/s/ Richard Xia

Richard Xia, Pro Se Defendant

Fleet New York Metropolitan Regional Center, LLC

Email: richard.xia@fleetfinancialgroup.com

Phone: (718) 288-5797

Date: Jan. 21, 2026

**Exhibits:**

Exhibit A: WeChat and email communications sent by Yawei (Wayne) Sun of the Henan Chengxin office to the Regional Center, with messages addressed to Chinese counsel, together with the corresponding English translations.

Exhibit B: Investor Yongxiang Pan's Letter (ECF 616, June 30, 2025)

Exhibit C: CTBC representative email correspondence regarding zero balance

Exhibit D: List of transactions to third parties 2022/1-2024/12

Exhibit E: Docket history denying Defendant motion and approving SEC motion

Exhibit F: John Leo Letter objection to transfer of fund and Xia email on objection of commingled use of Project fund

Exhibit G: Cases (unrelated to SEC) resulting in default following Court's Denial of Legal Fees release motion

Exhibit H:  Judge Chen's decision for allowing for civil litigation moving forward

Exhibit I: Attorney Carleen Lee letter

Exhibit J: Xia's affidavit

Exhibit K: Two dismissal orders were issued by the State, in matters involving Yawei (Wayne) Sun of Henan Chengxin, a named party to the proceedings.

Exhibit L: Sunil Aggarwal False Declaration

Exhibit M: USCIS Decision Letter (Dated Jan 13, 2026) – Reaffirmation of Regional Center Designation for Fleet New York Metropolitan Regional Center

# Exhibit A

**Wechat message between Wayne Sun and Chinese Counsel**



Dec 30, 2025 22:58

Chen Li GC.pdf
468KB

WeChat for Windows

曾律师您好，

虽然我与您直接接触的时间并不算长，但从过往沟通中可以感受到，您是一位愿意认真做事、也真心希望协助客户解决问题的律师。此前我们已将您与我们沟通的相关情况如实向投资人作了反馈，以下内容是投资人在综合考虑后，请我们整理并转达的最新意见。

关于项目方向投资人收取 USD 5,000 的 I-829 项目材料费一事，投资人目前面临的核心顾虑在于：
该笔费用 无法通过项目方名下的公司账户收取，同时该收费安排 亦未被法院公开认可，在合规层面存在不确定性。基于上述原因，投资人在反复权衡后，担心在不明晰的收款结构下继续付款，可能被动卷入存在合规争议、甚至潜在洗钱嫌疑的操作。

但与此同时，投资人又迫切需要推进 I-829 的递交，当前处境确实十分焦急。我们理解您的为难，也同样感到无能为力。目前我们亦无法直接联系到项目方，公司因此希望我再次就此问题与您沟通，探讨是否存在一个更

合规、可行的解决路径。

此外，我们目前并不清楚您与项目方之间究竟属于雇佣关系，还是合作 / 合伙关系。但无论具体关系为何，在美国法律框架下，有一点是相对明确的：

项目方已与美国证券交易委员会 (SEC) 达成和解，并已进入 Final Judgment 阶段。相关和解文件及法院判决中，已明确要求项目方放弃对项目的控制权，其中包括对项目资料及项目文件的控制权。目前从客观情况看，该等和解义务可能已存在未被完全履行的风险。

在此背景下，项目资料 (包括 I-829 相关项目文件) 原则上不应再由任何个人或第三方单独控制，更不应被作为向投资人收费的前置条件。

同时，也请允许我非常诚恳地提醒您：在美国法律环境下，在法院资产监管及和解执行期间，如由个人或第三方代项目方向投资人 代收代付费用，尤其是通过第三方或境外渠道进行收款，可能会给相关参与方带来较为严重的合规风险，甚至潜在的刑事风险。我们相信，您也并不希望因继续执行存在争议的收费安排，而使自身承担本不应由个人承担的法律风险。

基于以上考虑，我们谨此正式且善意地建议并请求您协助与项目方沟通，探讨以下处理方式：
·  项目方停止向投资人 Chen Li 收取与 I-829 项目材料相关的费用：

 

- 项目方停止向投资人 Chen Li 收取与 I-829 项目材料相关的费用；
- 将已经完成、且可以提供的全部 I-829 项目材料，立即发送至投资人指定的移民律师邮箱；
- 如项目方确实存在资金不足或运营压力，应当通过法院或其他正式、受监管的合规渠道予以解决，而不宜继续由个人或第三方代为收费。

同时，也需要特别强调 投资人 Chen Li 的个案情况。其 I-829 递交具有明显的时间敏感性，自今年 10 月起即已无法直接联系项目方，相关进度已被实质性延误。为避免其移民身份因文件迟延而遭受不必要且可能不可逆的影响，我们亟需尽快确保其获得完成递交所必需的项目文件。

我们真诚希望，该问题能够在一个合规、可控、低风险的框架下，尽快、务实地得到解决，避免对任何一方造成不必要的法律风险或后果。

感谢您的理解与专业协助，也烦请您在方便时尽快给予书面回复。



 



〈　　Wayne Sun-河…差-夏总I829　　⋯

11:53

曾律师您好，

虽然我与您直接接触的时间并不算长，但从过往沟通中可以感受到，您是一位愿意认真做事、也真心希望协助客户解决问题的律师。此前我们已将您与我们沟通的相关情况如实向投资人作了反馈，以下内容是投资人在综合考虑后，请我们整理并转达的最新意见。

关于项目方向投资人收取 USD 5,000 的 I-829 项目材料费一事，投资人目前面临的核心顾虑在于：该笔费用 无法通过项目方名下的公司账户收取，同时该收费安排 亦未被法院

　　　　按住 说话　　　　

**Translation of Wechat message between Wayne Sun and Chinese Counsel**

Hello Attorney Zeng,

Although the time I have directly interacted with you is not very long, from our previous communications I can feel that you are an attorney who is willing to do things seriously and genuinely hopes to help clients solve problems. Previously, we have already provided feedback to the actual investors regarding the relevant circumstances communicated with you. The following content represents the latest opinions after comprehensive consideration by the investors, which we have organized and forwarded on their behalf.

Regarding the matter of the project party collecting USD 5,000 from the investor as the I-829 project material preparation fee, the core concerns currently faced by the investors are as follows:

- This fee cannot be collected through the company account under the project party's name.
- At the same time, this fee arrangement has not been publicly recognized/approved by the court, and there exists uncertainty at the compliance level.

Based on the above reasons, after repeated weighing, the investors are worried that continuing to make payments under an unclear payment structure may passively involve them in compliance disputes, or even potential money laundering suspicions/operations.

At the same time, the investors are extremely eager to advance the submission of the I-829. The current situation is indeed extremely anxious and urgent. We understand your difficulties and also feel the same sense of helplessness. At present, we also cannot directly contact the project party. The company therefore hopes that I will communicate with you again regarding this issue and explore whether there exists a more feasible, compliant solution.

In addition, we currently do not know clearly whether the relationship between you and the project party is an employer-employee relationship, or a cooperation/partnership relationship. However, regardless of the specific nature of the relationship, there is one point that is relatively clear under the U.S. legal framework:

The project party has reached a settlement with the U.S. Securities and Exchange Commission (SEC) and has entered the Final Judgment stage. The relevant settlement documents and court judgment have clearly required the project party to relinquish control over the project, which includes control over project materials and project files. From the current objective situation, there is a risk that these settlement obligations may not have been fully performed.

Under this background, the project materials (including I-829 related project files) should in principle no longer be controlled solely by any individual or third party, and even less should they be used as a precondition for charging fees to investors.

At the same time, allow me to very sincerely remind you: In the U.S. legal environment, during the period of court asset supervision and settlement enforcement, if an individual or third party collects/substitutes payment of fees on behalf of the project party from investors — especially through third-party or overseas channels — it may bring relatively serious compliance risks, and even potential criminal risks, to the relevant participating parties. We believe that you also do not wish to bear legal risks that should not be borne by any individual due to continuing to implement a disputed fee arrangement.

Based on the above considerations, we hereby formally and in good faith suggest and request your assistance in communicating with the project party to discuss the following handling methods:

- The project party shall cease collecting from investor Chen Li any fees related to the I-829 project materials;
- Immediately send all I-829 project materials that have already been completed and can be provided to the immigration attorney's email address designated by the investor;
- If the project party is indeed facing capital shortage or operational pressure, it should resolve the issue through the court or other formal, regulated, and compliant channels, rather than continuing to have individuals or third parties collect fees on its behalf.

At the same time, we also need to particularly emphasize the individual case situation of investor Chen Li. His I-829 submission is highly time-sensitive. Since October of this year, he has been unable to directly contact the project party, and the relevant progress has already suffered substantial delay. In order to avoid unnecessary and potentially irreversible negative impact on his immigration status due to delayed filing documents, we urgently need to ensure that he obtains the project documents necessary for completing the submission as soon as possible.

We sincerely hope that this issue can be resolved quickly, pragmatically, and substantively within a compliant, controllable, and low-risk framework, so as to avoid causing unnecessary legal risks or consequences to any party.

Thank you for your understanding and professional assistance. We also kindly request that you provide a written reply at your earliest convenience when it is convenient for you.

 Gmail

**FNYM RC <infofnymrc@gmail.com>**

## Re: EEGH I-829 Chen Li , WAC# 15-905-96976, expires 2/11/2026

4 messages

**Wayne Sun <wayne.syw@hotmail.com>**                                    Fri, Dec 5, 2025 at 4:53 PM
To: Sandy <sandy@globallawgroup.net>
Cc: FNYM RC <infofnymrc@gmail.com>, "office@fleetfinancialgroup.com" <office@fleetfinancialgroup.com>, Helyn Lau <helyn.lau@globallawgroup.net>, Linda Wong <linda@globallawgroup.net>, Jim Guan <hjg@paclaw.com>

Hi Sandy,

Good afternoon, kindly follow up when can we expect to receive the I-829 documents for Mr. Chen Li.

Best regards,

Wayne


On Dec 2, 2025, at 14:32, Wayne Sun <wayne.syw@hotmail.com> wrote:

Good afternoon, Sandy

Hope everyone has a great Thanksgiving break.

Kindly following up to see if your office were able to provide updated economic analysis to the regional center at this moment.

If so, will you be able to share the same document which could be needed for I-829 petition to investor's immigration legal team for filing purpose?

Best regards,

Wayne


On Nov 18, 2025, at 17:49, Wayne Sun <wayne.syw@hotmail.com> wrote:

Hi May,

Its been so many years, this is Wayne, one of the agency for project EEGH, we were in contact back in 2017. I hope you are doing well.

I am reaching out for I-829 supporting project documents as well as the all old K-1s for this EEGH LP investor Mr. Chen Li, DOB (12/1/1982).

Mr. Chen I-829 filling window opens on 11/11/2025, status expires on 2/11/2026.

Mr. Chen immigration attorney and GLG team are copied in this email.

Please let me know if you need anything from us, we will provide promptly.

Looking forward to hearing from you.

Thanks

Wayne

**Wayne Sun** <wayne.syw@hotmail.com>                    Thu, Dec 11, 2025 at 2:05 PM
To: FNYM RC <infofnymrc@gmail.com>
Cc: Sandy <sandy@globallawgroup.net>, "office@fleetfinancialgroup.com" <office@fleetfinancialgroup.com>, Helyn Lau <helyn.lau@globallawgroup.net>, Linda Wong <linda@globallawgroup.net>, Jim Guan <hjg@paclaw.com>

Good afternoon, Fleet team,

Kindly following up on K1 forms and I-829 document for EEGH Investor Chen Li.

Due to the holiday season is coming up as the investor wants to submit the I-829 petition as early as possible to avoid potential delay.

Please let us know when can we expect the K1 forms from your office.

Thanks

Wayne
[Quoted text hidden]

**Wayne Sun** <wayne.syw@hotmail.com>                    Tue, Dec 16, 2025 at 5:00 PM
To: FNYM RC <infofnymrc@gmail.com>, "legal@fleetfinancialgroup.com" <legal@fleetfinancialgroup.com>
Cc: Sandy <sandy@globallawgroup.net>, "office@fleetfinancialgroup.com" <office@fleetfinancialgroup.com>, Helyn Lau <helyn.lau@globallawgroup.net>, Linda Wong <linda@globallawgroup.net>, Jim Guan <hjg@paclaw.com>

Good afternoon Fleet team,

This is to follow up on recent request for EEGH Chen Li's K1 forms and other document required for I-829 USCIS filling.

On September 22, Mr. Xia filed a letter with the Court representing that he would continue to assist EB-5 investors. (See ECF Dkt. No. 671 at 2 ("I have diligently complied with prior Court orders (ECF Dkt. Nos. 217, 657) by supporting Global Law Group's efforts to assist investors effectively. . . .  I believe the current approach, supported by Global Law Group's services, is sufficient to meet investor needs……..I will continue to support Global Law Group's services to assist investors, as permitted by the Text Order, to ensure their needs are met promptly and effectively. )

However, there were no response has been received from Fleet since initial request of documents on 10/29. With holidays coming up next week and to avoid the expiration date of 2/11/2026, Mr. Chen's immigration attorney Mr. Guan is copied here eager to know the timeline that the required project document can be provided by Fleet.

If the required document is not being generated yet or unable to be generated within foreseeable future.

Please let us know now so we can seek for alternative solution on assist investor's needs.

Best regards,

Wayne

> Begin forwarded message:
> [Quoted text hidden]

[Quoted text hidden]

> Begin forwarded message:
>
> **From:** WAYNE SUN <wayne.syw@hotmail.com>
> **Subject: Re: I-829 Chen Li , WAC# 15-905-96976**
> **Date:** November 10, 2025 at 10:37:15 GMT-5
> **To:** FNYM RC <infofnymrc@gmail.com>
>
> Good morning,

Hope all is well. Would like following up on the last enqurie for Mr. Chen Li's K1 and other I 829 documents.

Best

Wayne

On Oct 29, 2025, at 15:41, Wayne Sun <wayne.syw@hotmail.com> wrote:

Hello FNYMRC:

Mr. Chen Li,  one of the investor of EEGH, LP is looking to submit his I-829 soon in November.

Can you please provide his K-1 Forms since 2015 up to 2024?

Also please adivce how to obtain the I-829 Project package for filling?

Thank you in advance.

Wayne

Chengxin Office

---

**FNYM RC** <infofnymrc@gmail.com>                                    Tue, Jan 13, 2026 at 7:20 PM
To: Richard Xia <richard.xia@fleetfinancialgroup.com>

[Quoted text hidden]

# Exhibit B

RECEIVED IN PRO SE OFFICE

JUL 0 1 2025

Recv'd 7/1/25

The Honorable Pamela K. Chen
United States District Judge
United States District Court, Eastern District
225 Cadman Plaza East
Brooklyn, New York 11201

June 30, 2025

Re: *SEC v. Xia, et al.*. 21- Civ-5350 (PKC) (JAM)

Dear Judge Chen,

My name is Yongxiang Pan. I became an EB-5 investor in EEGH, L.P. on June 1, 2015. On May 26, 2021, I was granted conditional lawful permanent resident status, valid for two years until May 26, 2023. As required by USCIS, I filed Form I-829 to remove conditions on my status before the expiration date.

The approval of my I-829 petition depends on two criteria: (1) that my capital has remained "at risk" (sustained), and (2) that my investment has created 10 qualifying U.S. jobs. I believe I meet both requirements. My capital is still at risk as of today, and the project has completed significant site work, including demolition, large-scale environmental remediation, site work and land grading.

Unfortunately, I have been unable to obtain the documentation necessary to prove these facts to USCIS because the Regional Center, Fleet, controls these records and has shown no indication it will provide them to me.

I respectfully summarize my efforts to obtain the necessary I-829 documents:

1. Beginning February 27, 2023, I contacted Fleet and its then-legal counsel with assistance from the court-appointed Monitor. I was able to obtain only my 2020 and 2021 K-1 forms through Fleet's counsel at that time.
2. Starting February 2025, I resumed efforts via email to reach Fleet and its current counsel to request the documents, but I received no response. I also contacted other parties associated with Fleet, all of whom stated that only Fleet had access to the needed files.
3. On April 22, 2025, I received a *Request for Evidence (RFE)* from USCIS regarding my I-829 application, with a deadline of July 18, 2025 to respond. I promptly sent a copy of the RFE to Fleet and related parties. On May 12, 2025, Fleet acknowledged receipt of my request via email and told me they will look into it but has not responded since.
4. In June 2025, I again sought help from the Monitor team to contact Fleet's counsel Hantman & Associates. Despite almost a month of efforts by the Monitor team, no reply has been received.

It is with great disappointment that I now turn to the Court. It has become clear to me that Fleet no longer considers the immigration needs of its investors a priority. I am increasingly concerned that this disregard may be intentional.


SCANNED

I understand that, pursuant to the Final Judgment (ECF 460), Defendants Fleet and Xia are obligated to assist EB-5 investors with their immigration petitions, including by providing all necessary documentation for the EB-5 investors to apply for and obtain such benifits.

According to ECF 545-1, page 4, Fleet previously assisted 105 investors in the Eastern Mirage project in successfully obtaining I-829 approval. This demonstrates Fleet's understanding of the documentation required and the severe consequences that can arise if investors are left unsupported.

Currently, there are approximately 40 EEGH L.P. investors with pending I-829 petitions, and at least 292 more will require similar documentation in the future. Without an effective system for document access, all of these investors face the same risk of harm that I do now.

Therefore, I respectfully request the Court to:

> Order Fleet and its staff to immediately communicate with my immigration attorney and provide all documentation that my attorney deems necessary for the USCIS I-829 response, no later than July 8, 2025.

The documents I am requesting include, but are not limited to: historical K-1 forms, tax returns, commercial invoices, business licenses, economic impact analyses, and evidence of job creation. These are existing records that should be straightforward to retrieve and share. It is deeply frustrating that, after years of waiting and numerous attempts to follow up, I still have not received them.

I know I am not alone — many other investors may be facing the same challenges I am. However, I am not part of any of Fleet's communication channels, including the WeChat group referenced in prior filings, and I have no way of knowing whether others have received the necessary documents through alternative means. What I do know is this: if my attorney cannot respond to the USCIS's Request for Evidence by the July 18 deadline, it could result in devastating consequences for me and my family — including the potential loss of my legal status in the United States after 16 years of building a life here.

I appreciate the Court for its urgent attention to this matter. I will enclose a copy of the USCIS RFE letter for reference.

Should the Court or Monitor wish to contact me or my immigration counsel:

- Email (Yongxiang Pan): bestpx@gmail.com
- Email (Immgration Counsel): hjg@paclaw.com

Respectfully submitted,

Yongxiang Pan

EEGH, L.P. Investor



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Immigrant Investor Program*
131 M Street, NE, MS 2235
Washington, DC 20529

## U.S. Citizenship and Immigration Services

**TO:**

Yongxiang Pan
2013 N. Kenneth Road
Burbank, CA 91504

**DATE:**          April 22, 2025

**Application:**  Form I-829
**A-Number:**    A216172894
**File:**             WAC2390074444

## REQUEST FOR EVIDENCE

Based upon a review of your petition and supporting documentation, U.S. Citizenship and Immigration Services (USCIS) has found that you have not established that you are eligible for the benefit you are seeking. To determine whether you are eligible for the benefit, USCIS requests that you submit additional evidence. The deficiencies in your petition and the evidence that USCIS is requesting are explained in the attached document.

### (SEE ATTACHED)

If you reside within the United States, you must submit the requested evidence no later than 87 days from the date of this notice. If you reside outside of the United States, you must submit the requested evidence no later than 98 days from the date of this notice. USCIS is unable to grant additional time for responding to this request for evidence. *See* 8 C.F.R. § 103.2(b)(8)(iv).

You must submit all the requested materials at one time. Submission of only some of the requested evidence will be considered a request for a decision on the record. *See* 8 CFR § 103.2(b)(11). If you do not respond by the deadline, USCIS may deny your petition as abandoned, may deny your petition based on the record, or may deny your petition for both reasons. *See* 8 CFR § 103.2(b)(13)(i).

<u>If you reside inside the United States</u>, your deadline for submitting a response is: <u>**July 18, 2025.**</u>

<u>If you reside outside of United States</u>, your deadline for submitting a response is: <u>**July 29, 2025.**</u>

Keep a photocopy of this notice for your records. If you otherwise write to us about your case, please provide a copy of this notice.

You will be notified separately about any other applications or petitions you have filed.

Please send your response to this address:

    U.S. Citizenship and Immigration Services
    Immigrant Investor Program Office
    131 M Street, NE
    Mailstop 2235
    Washington, DC 20529

Form I-797 (revised 5/4/2015)                                        www.uscis.gov

WAC2390074444
Page 2

**IMPORTANT: RETURN THIS ORIGINAL NOTICE ON TOP OF THE REQUESTED INFORMATION AND/OR EVIDENCE LISTED ON THE ATTACHED SHEET(S).**

cc:    Hong-Jin Guan
        Pacific Law Group, LLP
        2025 Gateway Place
        Suite 335
        San Jose, CA 95112

WAC2390074444
Page 3

## REQUEST FOR EVIDENCE

### Form I-829, Petition by Investor to Remove Conditions
### EEGH, LP

#### I. Procedural History

Mr. Yongxiang Pan (Petitioner) filed a Petition by Investor to Remove Conditions (Form I-829) with the U.S. Citizenship and Immigration Services (USCIS) under section 216A of the Immigration and Nationality Act (INA). Petitioner seeks the removal of the conditions on his lawful permanent resident status granted under INA § 203(b)(5).

Petitioner's Immigrant Petition by Alien Entrepreneur (Form I-526), was approved on September 14, 2017. Petitioner was subsequently granted conditional lawful permanent resident status on May 26, 2021. The instant petition was filed on May 3, 2023.

Petitioner asserts eligibility based on an investment in Fleet New York Metropolitan Regional Center, LLC (Regional Center) pursuant to the Immigrant Investor Program.[1] The Form I-829 and the evidence presented assert that Petitioner invested $500,000 into EEGH, LP – the new commercial enterprise (NCE), on March 18, 2015. The NCE proposed to pool $110,000,000 from 220 immigrant investors. According to the Form I-829 and supporting evidence, the NCE will lend the entire amount to The Grand Eastern Mirage Group, LLC, the job-creating entity (JCE). The JCE intends to construct and operate a mixed-use commercial project consisting of a 498-room 5-star luxury hotel, convention center, parking garage, retail space, and a restaurant and is in City of Corona, New York. The NCE and JCE are principally doing business within a targeted employment area (TEA).

The petition has been reviewed for eligibility in accordance with INA §§ 216A and 203(b)(5), and Title 8, Code of Federal Regulations (8 C.F.R.) §§ 204.6 and 216. Based upon a review of the initial record of evidence, U. S. Citizenship and Immigration Services (USCIS) concludes that Petitioner has not established eligibility for the benefit sought. To assist Petitioner in addressing the deficiencies in the record, USCIS is issuing this Request for Evidence. The deficiencies of the current record are outlined below.

#### II. Analysis of the Evidence

##### A. Invested or Was Actively in the Process of Investing the Required Amount of Capital

The petition for removal of conditions must be accompanied by evidence that the petitioner invested or was actively in the process of investing the requisite capital. 8 C.F.R. § 216.6(a)(4)(ii). In this case, the required capital is $500,000 because the job-creating entity[2] into which the immigrant investor invested is principally doing business

---

[1] Section 610 of the Departments of Commerce. Justice. and State. the Judiciary. and Related Agencies Appropriations Act, 1993. Pub. L. No. 102-395. 106 Stat. 1828 (1992), as amended.

[2] For investments made through regional centers, the term "principally doing business" applies to the job-creating entity. *See* 8 C.F.R. § 204.6(j)(6): *Matter of Izummi*. 22 I&N Dec. 169. 171-73 (Assoc. Comm'r 1998).

WAC2390074444
Page 4

in, and creating jobs in, a "targeted employment area." 8 U.S.C. §§ 1153(b)(5)(A)(i), (B)(i), (C)(; 8 C.F.R. §§ 204.6(f), (j)(2), (j)(6).

"Capital" means cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the immigrant investor, provided that the immigrant investor is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness. 8 C.F.R. § 204.6(e). Further, a petitioner must show that he or she has placed his or her own capital at risk, i.e., that he or she was the legal owner of the invested capital. *Matter of Ho*, 22 I&N Dec. 206 (Assoc. Comm'r 1998); *see also Matter of Soffici*, 22 I&N Dec. 158, 165 n.3 (Assoc. Comm'r 1998) (interpreting 8 C.F.R. § 204.6(e) as requiring that a petitioner establish the funds invested are his or her own).

At this stage, Petitioner need not have invested all the required capital but must have substantially met that requirement. *See* 8 C.F.R. § 216.6(a)(4)(iii). Petitioner did not submit evidence to demonstrate his compliance with the capital investment requirement.

To establish that the required capital has been invested or that the petitioner is actively in the process of investing the required amount of capital, evidence is requested. Such evidence may include, but is not limited to:

- Audited financial statements;

- Further probative evidence, including (but not limited to) wire transfers, bank records, and/or receipts showing that the petitioner has indeed placed the requisite amount of capital at risk within the NCE; and/or

- Any other evidence deemed appropriate by the petitioner to overcome the deficiencies noted above.

### B. Sustainment of Investment into the New Commercial Enterprise

The petitioner must also provide evidence that the investment into the NCE has been sustained.[3] In order to demonstrate that an investment has been sustained, a petitioner must provide evidence demonstrating that they have, in good faith, substantially met the requirement of investing or being actively in the process of investing the requisite capital, as well as evidence to demonstrate that they have continuously maintained the capital investment requirement over the two years of conditional residence. 8 C.F.R. § 216.6(a)(4)(iii).

To show that the petitioner sustained the action of investing or being actively in the process of investing the required amount of capital, the petitioner must demonstrate that he or she has placed the required amount of capital at risk for the purpose of generating a return on the capital placed at risk. Evidence of mere intent to invest, or of prospective investment arrangements entailing no present commitment, will not suffice to show that the petitioner is actively in the process of investing. The alien must show actual commitment of the required amount of capital. 8 C.F.R. §§ 216.6(a)(4)(ii), (iii); 8 C.F.R. § 204.6(j)(2). For the capital to be "at risk" there must be a risk of loss and a chance for gain. In addition, as explained in *Matter of Izummi*, the "full amount of money must be made

---

[3] 8 C.F.R. § 216.6(a)(4)(iii).

WAC2390074444
Page 5

available to the business(es) most closely responsible for creating the employment upon which the petition is based." 22 I&N Dec. at 179 (emphasis omitted).

The petition and supporting evidence fail to demonstrate that the requisite amount of capital has been sustained. Petitioner provided Schedule K-1's in Exhibit A for the years 2020[4] and 2021. These documents alone, without other probative and corroborative evidence are insufficient to demonstrate Petitioner's investment was sustained during his period of conditional residence.

To establish that both the NCE and the investment into the NCE have indeed been sustained, the petitioner must demonstrate that he has, in good faith, substantially met the capital investment requirement of the statute and continuously maintained his capital investment over the two years of conditional residence. Such evidence may include, but is not limited to:

- Bank statements for the NCE covering the petitioner's conditional period of residency;

- Invoices and/or receipts demonstrating the genuine actions of the NCE during the petitioner's conditional period of residency;

- Current business license(s) held by the NCE;

- Federal or State income tax returns for the NCE covering the petitioner's conditional period of residency;

- Federal or State quarterly tax statements for the NCE covering the petitioner's conditional period of residency; and/or,

- Any other evidence deemed appropriate by the petitioner to overcome the deficiencies noted above.

### III. Conclusion

USCIS has determined that the record does not establish eligibility for the benefit sought. Accordingly, USCIS has requested evidence to address the issues outlined above. Petitioner is not precluded, however, from submitting evidence in addition to the evidence requested by USCIS that Petitioner deems relevant to address such issues. Petitioner must prove by a preponderance of the evidence – in other words, that it is more likely than not – that Petitioner is fully qualified for the benefit sought.

If Petitioner submits updated or revised documents, please note that "[a] petitioner must establish eligibility at the time of filing; a petition cannot be approved at a future date after the petitioner becomes eligible under a new set of facts. *See Matter of Katigbak*, 14 I&N Dec. 45, 49 (Comm. 1971). Therefore, a petitioner may not make material changes to a petition that has already been filed to make an apparently deficient petition conform to [USCIS] requirements." *Matter of Izummi*, 22 I&N Dec. 169, 175 (Assoc. Comm'r 1998); *see also* 8 C.F.R. § 103.2(b)(1).

**NOTES:**
*Any document submitted to the USCIS containing a foreign language, must be accompanied by a full English*

---

[4] Prior to the start of Petitioner's conditional residence (May 26, 2021 – May 26, 2023).

WAC2390074444
**Page** 6

_language translation_ that has been certified by the translator as complete and accurate, and that the translator is competent to translate from the foreign language into English. Submit clear and legible copies of all requested evidence. If clear and legible copies are not possible, submit the original documents. These originals will be returned, if requested.

_Please provide an index of any submitted evidence and include corresponding tabs for each section of evidence._

**Extremely Urgent**

Express

YONGXIANG PAN
5168297447

0.2 LBS LTR   1 OF 1

16 MIDDLE NECK ROAD
GREAT NECK  NY 11021

SHIP TO:
JUDGE PAMELA K. CHEN
6266243282
UNITED STATES DISTRICT COURT, EASTE
225 CADMAN PLZ E
BROOKLYN  NY  11201-1832

NY 111 9-50

UPS NEXT DAY AIR   1
TRACKING #: 1Z 80E 3E9 01 9807 8623

BILLING: P/P

Trx Ref No.: PM PKG ID 522362
Trx Ref No.: FROM  YONGXIANG PAN
XOL 26.08.27    NY46 27.0A 06/2025*

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
RRD K 0425



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,
v.
RICHARD XIA, a/k/a YI XIA, and FLEET NEW YORK METROPOLITAN REGIONAL CENTER,
LLC,
Defendants.

Case No. 21-CV-5350 (PKC-JAM)

DEFENDANT RICHARD XIA'S RESPONSE TO DOCKET 616 – INVESTOR LETTER
Exhibit A: Letter from Steven W. Fogg on Behalf of 87 EB-5 Investors (ECF No. 78, filed Feb. 10, 2022)
Exhibit B: Letter from Michael S. O'Reilly on Behalf of Investors (ECF No. 86, filed Feb. 15, 2022)
Exhibit C: Fleet Investor Letter (May 21, 2021)

Dear Hon. Pamela K. Chen:

Defendant Richard Xia respectfully submits this response to the pro se letter filed by EB-5 investor Mr. Yongxiang Pan (ECF No. 616). Mr. Pan's letter details the dire immigration consequences faced by approximately 400 EB-5 investor families, including 87 represented by attorney Steven W. Fogg (Exhibit A, ECF No. 78) and 40 EEGH, L.P. investors with pending I-829 petitions, due to the Securities and Exchange Commission's (SEC) ex parte asset freeze, subsequent release of funds, and related misconduct. These actions, compounded by conflicts of interest by the SEC-appointed Monitor, have prevented Defendant from providing critical documentation for Mr. Pan's I-829 petition, creating a fundamental conflict with U.S. Citizenship and Immigration Services (USCIS) requirements. Supported by the attached exhibits, Defendant urges the Court to intervene to address this misconduct, resolve conflicts, and mitigate irreparable harm to innocent investors.

## I. Background and Investor Concerns

Mr. Pan's letter articulates a crisis affecting hundreds of EB-5 investors, including himself, whose lawful permanent residency depends on demonstrating that their capital remains "at risk" and has created 10 qualifying U.S. jobs (ECF No. 616, p. 1). Mr. Pan, an EEGH, L.P. investor since June 1, 2015, states: "Unfortunately, I have been unable to obtain the documentation necessary to prove these facts to USCIS because the Regional Center, Fleet, controls these records and has shown no indication it will provide them to me" (ECF No. 616, p. 1). Facing a July 16, 2025 USCIS deadline to respond to a Request for Evidence (RFE), Mr. Pan has only received 2021 and 2022 K-1 forms despite requests since February 27, 2023, leaving him unable to provide bank statements, tax returns, or job creation evidence (ECF No. 616, pp. 1–2). This concern aligns with 87 investors who warned: "Put simply, any disposition of the Emerald project exclusively focused on liquidating the project and 'cashing out' our clients for a pro rata share of the recovered assets…will not further our clients' primary goal in investing in the Emerald project" (Exhibit A, ECF No. 78, p. 4).

This crisis stems from the SEC's ex parte asset freeze in 2021, imposed despite Defendant's cooperation during a three-year investigation, and the subsequent release of funds from the Court's CRIS account. These actions halted Fleet's repayment efforts, evidenced by a May 21, 2021 letter requesting investor information for dissolution and distribution (Exhibit C). Additional investors opposed the freeze in 2022, urging its modification to enable a settlement (Exhibit B, ECF No. 86).

The record also establishes that Fleet's Eastern Mirage project was completed approximately 95% without the benefit of a bank loan, achieved a market valuation exceeding $310 million, and secured permanent residency for 105 investors. (See ECF No. 545-1, p. 4.) In 2022, 87 investor families formally opposed the asset freeze (Exhibit A), and others supported vacating it (Exhibit B), but their objections were ultimately disregarded. As of the present, approximately 40 investors in EEGH, L.P.—including Mr. Pan—have pending I-829 petitions, and an additional 329 investors are expected to require similar documentation in the near future. (See ECF No. 616, p. 2.).

## II. Legal Tension and SEC Misconduct

The asset freeze and release of CRIS funds create a structural conflict with EB-5 requirements, as outlined in the Lundy Memorandum (ECF No. 543). USCIS mandates that investor capital remain "at risk" in a job-creating enterprise throughout the two-year conditional residency period (ECF No. 616, p. 5; 8 C.F.R. § 216.6(a)(4)(i)). The RFE requires Mr. Pan to provide "bank statements for the NCE covering the petitioner's conditional period of residency," "Federal or State income tax returns," and other evidence to prove the investment was sustained (ECF No. 616, p. 7). Today, Defendant cannot give Mr. Pan what he needs—the evidence isn't simply there, because the Commission and its agents have taken almost all remaining investor funds away from the project. Defendant cannot provide K-1s. Defendant cannot hire accountants. Even if Defendant provided K-1s and bank statements, they would not prove the investor funds are still at risk. Everything is drained or redirected—except for the Monitor's invoices, the Distributors' fees, and CTBC's recovery. As explained in the Lundy Memorandum, even a partial return of capital, or diversion of funds away from the project—including for court-ordered distributions or disgorgement—may render an investor ineligible for permanent residency (ECF No. 543). This concern was also raised in Defendant's February 2025 submission, which warned that such reallocations "could substantially jeopardize [investors'] ability to secure permanent residency" (ECF No. 543).

The risk is particularly acute for investors in the Eastern Emerald project. Unlike Fleet's earlier Eastern Mirage offerings—where 105 investors have already received permanent green cards (ECF No. 545-1)—the majority of the 345 Eastern Emerald investors have not done so. Most have not yet filed their I-829 petitions, and their success depends on continued deployment of their capital in a qualifying, job-creating capacity. The asset freeze and investor fund redirection, along with over $270 million in pending enforcement obligations, complicates this requirement and puts the at-risk status of investor funds in doubt—regardless of intent. What should have been a landmark immigration success has been transformed into an untenable legal and humanitarian dilemma. The SEC's ex parte application, which omitted over 200 exculpatory emails and ignored Fleet's cooperation and repayment efforts (Exhibit C), constitutes misconduct that has exacerbated this crisis.

### III. Monitor's Conflicts of Interest

The SEC-appointed Monitor's conflicts of interest have worsened the harm. The Monitor blocked Defendant's efforts to support investors, including hiring counsel or preparing I-829 packages, and threatened contempt when Defendant attempted to assist directly. Notably, the Monitor pushed a sale of a $300 million project for $100 million to a buyer brokered by his former mentor, with SEC approval, prioritizing third-party interests over investors' immigration goals. This conflicted conduct has prevented Defendant from providing Mr. Pan with the RFE-required documents, further jeopardizing his residency prospects.

### IV. Procedural Constraints on Defendant

Defendant is committed to supporting investors but is immobilized by the Final Judgment (ECF No. 460), which mandates "reasonable cooperation" while prohibiting access to funds, staff, or legal support. The release of CRIS funds to third parties (e.g., CTBC Bank, Monitor, Distributors) has eliminated resources to generate K-1s, bank statements, or tax returns, as requested by Mr. Pan and USCIS (ECF No. 616, pp. 2, 7).

Additional barriers have further impaired Defendants' ability to support EB-5 compliance. Financial restrictions following the release of funds have left no available resources to retain accountants or legal counsel. Actions taken by the Court-appointed Monitor—some of which appear to conflict with EB-5 program objectives—have also obstructed the compliance process. More broadly, the absence of operational funds has made it practically impossible for Defendants to generate or access the evidentiary materials needed to demonstrate that investor funds remain "at risk."

Defendant has complied in good faith, providing all available records, including Mr. Pan's 2021 and 2022 K-1s (ECF No. 616, p. 1). No further documents in Defendant's possession have been withheld, and no additional production is warranted under the Final Judgment.

### V. Request for Judicial Intervention

The Court has the authority—and Defendant respectfully submits, the duty—to address this crisis, rectify SEC misconduct, and resolve the Monitor's conflicts. Marc Silber's 2023 testimony, "But for the Commission's freeze, Richard Xia could repay all investors the very next day," combined with Exhibit C, confirms the freeze disrupted a functioning repayment process. Mr. Pan's plea, the 87 investors' concerns (Exhibit A), and earlier objections (Exhibit B) contradict the SEC's claim of investor protection.

**Defendant respectfully requests:**
1. Restoration of Resources: Order the allocation of resources to enable Defendant to hire accountants and counsel to produce I-829 documentation, given the release of CRIS funds.
2. Halt Liquidation: Pause any liquidation of the Eastern Emerald project until immigration consequences are evaluated, ensuring funds remain "at risk" per USCIS.

3. Investigate Misconduct and Conflicts: Convene a hearing to examine SEC misconduct in the ex parte freeze and the Monitor's conflicts, with immigration expert input.
4. Equitable Relief: Recognize the due process violations caused by the SEC's actions, the release of funds, and the Monitor's conduct, which threaten 475 families.

## VI. Conclusion

Mr. Pan's letter, stating, "if my attorney cannot respond to the USCIS's Request for Evidence by the July 16 deadline, that I do now [sic]" (ECF No. 616, p. 2), reflects the urgency faced by 400 families, including 87 investors (Exhibit A) and 40 EEGH, L.P. investors. The release of CRIS funds, SEC misconduct, and Monitor conflicts have prevented Defendant from providing critical documentation, jeopardizing their residency. Fleet's pre-freeze efforts (Exhibit C) demonstrate good faith, disrupted by an overreaching freeze. The Court's intervention is the only path to preserve these families' lawful residency.

Respectfully submitted,

/s/ Richard Xia
Richard Xia
Defendant
July 10, 2025

# CORR CRONIN | LLP

**STEVEN W. FOGG**
*Attorney at Law*

(206) 274-8669
sfogg@corrcronin.com

February 10, 2022

**VIA ECF**

The Honorable Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East, Chambers N 631
Brooklyn, NY 11201

> **Re:** *SEC v. Xia et al.*, No. 21-cv-05350-PKC-CLP
> **Emerald Investors' Position on the Monitor's January 28, 2022 Report to the Court and February 14, 2022 Show Cause Hearing**

Dear Judge Chen:

This law firm represents more than eighty individual investors in the Eastern Emerald project ("Emerald") at issue in this litigation. We have significant experience representing investors in distressed EB-5 projects, including projects where the Securities and Exchange Commission ("SEC") has asserted claims of securities fraud against the project developer that threaten to put innocent investors' EB-5 immigration petitions in jeopardy. I am writing to convey to the Court our clients' position in advance of the upcoming show cause hearing currently set for February 14, 2022, and to respectfully request that the Court continue to consider our clients' goals and objectives when making rulings that impact the Emerald project.

## I.     Our Clients' Identities and EB-5 Immigration Status.

Our law firm represents 87 Chinese nationals who each invested the requisite $500,000 in the Emerald project. In exchange our clients received ownership interests in the Limited Partnership and certain representations by Emerald and Mr. Xia regarding the project's EB-5 qualification. A complete list of our clients is enclosed as **Attachment A**.

While our clients are frequently referred to as "investors," that clinical term does not do emotional justice to who they are and the intangible benefits they hope to achieve via their investment. Our clients are ordinary people from China who are devoted to hard work and

The Honorable Pamela K. Chen
February 10, 2022
Page 2

education.  By and large, they invested their life savings in Emerald in the hope of immigrating to this country and attaining continued prosperity and success here.

Due to the importance of the immigration benefit that was at the center of this transaction, our clients (some of whom are now in the United States, but many of whom remain in China) differ from the typical investor/victim in a SEC fraud case.  It is true that, like the typical financial fraud victim, our clients are concerned about their status of their financial investment--but unlike the typical victim, our clients are even more concerned about the impact these proceedings may have on their immigration petitions.

As of the date of this letter, all of our clients' EB-5 immigration petitions are in progress.  Specifically, of our 87 clients, at least 79 have already had their initial I-526 petitions approved and have been recognized by USCIS as making investments in a new commercial enterprise within a qualified Regional Center supported by appropriate source-of-funds documentation.  Of those 79 investors, roughly 50 have submitted formal change-of-status petitions seeking two-year conditional permanent resident status in the United States, either (1) through I-485 petitions submitted to USCIS (for investors already in the United States), or (2) through DS-260 petitions to the State Department (for investors located outside the United States).  Roughly five of those petitions have been granted, and at least one of our clients has already filed their I-829 petition with USCIS to remove their "conditional" status and obtain a permanent "green card."

Prior to the SEC's allegations, all of our clients had good reason to believe their EB-5 petitions would be successful and would ultimately result in their obtaining lawful permanent resident status in the United States.  The SEC's allegations notwithstanding, our clients remain cautiously optimistic that they will have the opportunity to see their investments create jobs in the United States and obtain the resulting lawful permanent resident status.[1]

The objective evidence supports our client's optimism.  To date, none of our clients have requested or received a return of their capital contributions or any other cash distributions from

---

[1] While the EB-5 Regional Center Pilot Program technically lapsed on June 30, 2021, several pieces of federal legislation that would re-authorize and reform the program have been introduced in the House and Senate.  *See* EB-5 REFORM AND INTEGRITY ACT OF 2021, H.R. 2901, 117th Cong. (April 28, 2020) (available at https://www.congress.gov/bill/117th-congress/house-bill/2901); EB-5 REFORM AND INTEGRITY ACT OF 2021, S.831, 117th Cong. (introduced March 13, 2021) (companion legislation to H.R. 2901) (available at https://www.congress.gov/bill/117th-congress/senate-bill/831); A BILL TO REFORM THE EB-5 IMMIGRANT INVESTOR PROGRAM, AND FOR OTHER PURPOSES, S.12778, 116th Cong. (introduced Nov. 5, 2019) (available at https://www.congress.gov/bill/116th-congress/senate-bill/2778).  As of the date of this letter, USCIS has not revoked Fleet's Regional Center designation.  Moreover, another piece of proposed legislation that would "grandfather" all EB-5 petitions filed before the statute lapsed in mid-2021, the Foreign Investor Fairness Protection Act ("FIFPA"), has been endorsed by many EB-5 industry supporters and is expected to be introduced in Congress this year.  *See* American Immigrant Investor Alliance, *AIIA will push for the Foreign Investor Fairness Protection Act* (July 14, 2021) (available at https://goaiia.org/blog/f/aiia-will-push-for-the-foreign-investor-fairness-protection-act).

The Honorable Pamela K. Chen
February 10, 2022
Page 3


the Emerald project. In EB-5 parlance, all of our clients' qualifying investments remain "at risk," and our clients have met all other applicable requirements of the EB-5 program.

**II.      Our Clients' Position on the Monitor's Report and the Show Cause Hearing.**

We have reviewed the parties' and the Court-appointed Monitor's recent filings in detail with our clients, including the Monitor's January 28, 2022 report (Dkt. No. 53). Our clients have reached a consensus position on the Monitor's recommendations and the show cause hearing, which they have asked us to convey to the Court:

First, our clients recognize that the SEC's allegations in this case are extremely serious. Our clients are distraught by the SEC's allegations of misappropriation and misuse of investor funds, misrepresentations, and material omissions by Mr. Xia and the Defendants, and believe that a continued asset freeze is necessary to preserve the *status quo*.

Second, our clients appreciate the Monitor's work, and have closely reviewed his January 28 report. In particular, the investors are grateful for the Monitor's receptivity to their input, and his consideration of their goals, including our clients' predominant interest in a solution that permits those who wish to continue to pursue the immigration benefit at the center of this transaction to be able to do so. I have met with the Monitor in person and talked to him on several occasions. The Monitor's willingness to hear directly from me and my clients has been a great source of comfort to the investors, many of whom are understandably afraid and confused by a process which is taking place in a language and legal system they don't readily understand.

Third, and most importantly, our clients wish to convey to the Court their ultimate goal in investing in the Emerald project, and their hope for the outcome of this litigation. Specifically, our clients' ultimate objective in investing in the Emerald project was to obtain permanent resident status in the United States through the EB-5 program. While each of our clients made their $500,000 initial investments in the Emerald project based in part on their desire to have an ownership interest in the project and their expectation of a financial return from such investment, their overarching priority was to obtain "green cards." Like all investors, our clients had a broad range of investment opportunities available to them both domestically (in China) and abroad (including in the United States). They chose to invest in the Emerald project specifically because it was associated with a USCIS-approved Regional Center and promised the opportunity to obtain immigration benefits in the United States provided all other requirements of the EB-5 program were satisfied. All of our clients have already taken material steps to advance their EB-5 petitions with USCIS, and as indicated above, a number of them have already succeeded in obtaining conditional permanent resident status.

While our clients appreciate the Monitor and the Court's examination of the SEC's claims, one unfortunate and unintended consequence of any interim equitable relief imposed by the Court is that it risks placing our clients' immigration petitions in jeopardy through no fault of their own. Accordingly, our clients humbly request that the Court take these potential unintended effects of the SEC's claims into account, and take all reasonable efforts to avoid or mitigate the collateral

The Honorable Pamela K. Chen
February 10, 2022
Page 4

damage to them as the Court addresses the merits of the SEC's claims and requested relief.  Put simply, any disposition of the Emerald project exclusively focused on liquidating the project and "cashing out" our clients for a pro rata share of the recovered assets—no matter what percentage of our clients' initial investments are returned—will not further our clients' primary goal in investing in the Emerald project.

Our clients have reviewed the four "scenarios" set forth in the Monitor's January 28 report, and we wish to stress that the Monitor's contemplated dispositions of "selling" and "completing" the Emerald project are not mutually exclusive.  Specifically, our clients are hopeful that the Monitor (or receiver, if the monitorship is expanded) and the Court will consider dispositions of the Emerald project that will preserve our clients' ability to maintain any vested EB-5 immigration benefits they possess and continue to prosecute their EB-5 petitions (should they wish to do so) in the hope of obtaining permanent resident status.  Examples of such options include: (1) permitting the Emerald project to move forward under the Fleet Regional Center, with or without Mr. Xia's involvement; (2) transferring management of the Emerald Project to another qualified Regional Center that could complete the development in substantial compliance with the original Business Plan and Job Creation Report approved by USCIS; and (3) transferring the entire project to another developer for completion, subject to prior approval by USCIS of the transfer of any existing immigrant investor petitions submitted under the Fleet Regional Center.

Notably, there is existing precedent for situations in which EB-5 projects faced with allegations of fraud and mismanagement have been dispositioned in a manner that afforded individual investors an option to maintain existing EB-5 benefits and prosecute EB-5 petitions toward the ultimate goal of obtaining permanent resident status.  For example, our firm previously represented a group of investors in two distressed EB-5 projects in Seattle, "Potala Tower" and "Potala Market Place."  In August of 2015, the SEC brought securities fraud claims against the primary developer of those projects, Path America LLC, its principal, Lobsang Dargey, as well as a number of related entities and relief defendants.  *See SEC v. Path America, LLC et al.*, W.D. Wash. No. 2:15-cv-0135900-JLR.  On the SEC's motion, U.S. District Judge James Robart appointed a receiver, imposed an asset freeze, and further imposed a litigation bar against the defendant entities and Mr. Dargey.[2]  After roughly two years of litigation, the receiver formally recommended, and the Court granted, dispositions of the Potala Tower and Potala Market Place projects whereby each project was sold to an unrelated third-party developer in a "restructuring transaction" that included specified conditions designed to preserve the investors' ability to maintain their EB-5 petitions.[3]  Following the restructuring and disposition of the Potala Tower and Potala Market Place projects, our clients were able to successfully prosecute their EB-5 petitions and obtain permanent resident status in the United States—a win-win outcome for both

---

[2] *See* W.D. Wash. No. 2:15-cv-0135900-JLR, Dkt. No. 9 (August 24, 2015 Temporary Restraining Order and Order Granting Other Ancillary Relief), Dkt. No. 88 (October 22, 2015 Order Appointing Receiver).

[3] Copies of the Western District of Washington's relevant orders approving the restructuring and disposition of the Potala Tower and Potala Market Place projects are enclosed as **Attachments B** and **C** respectively.

The Honorable Pamela K. Chen
February 10, 2022
Page 5


the SEC's enforcement prerogative and the individual investors who were victims of the alleged fraud.

Our clients are hopeful that the Monitor and the Court will consider a similar restructuring outcome for the Emerald project here that allow those who wish to maintain their EB-5 petitions to continue to do so. We believe this outcome is merited under the circumstances here, where our clients have done nothing wrong, and may not obtain justice or be made whole by financial relief alone.

We sincerely thank you for taking our clients' concerns and goals into account both at the upcoming February 14 show cause hearing and in future rulings in this matter. I plan to attend the February 14 hearing as an observer and will be prepared to address any questions the Court may have if you would find it helpful to hear directly from us.


Very truly yours,

CORR CRONIN LLP

*s/ Steven W. Fogg*

Steven W. Fogg


Enclosures

 cc:    Counsel of Record (via ECF)
        Clients

Case 1:21-cv-05350-PKC-CLP   Document 628-2   Filed 01/02/2025   Page 43 of 148 PageID #: 28967

# Attachment A

**ATTACHMENT A**

| CCLLP Clients | |
|---|---|
| **Name** | |
| 1. | Baoping Wang |
| 2. | Baozhen Fan |
| 3. | Bin Yan |
| 4. | Bo Zhang |
| 5. | Bohan Zhang |
| 6. | Bohao Yu |
| 7. | Bowen Ya |
| 8. | Changmei Song |
| 9. | Chen Sun |
| 10. | Chunguang Wang |
| 11. | Chunxia Zhang |
| 12. | Cong Cong |
| 13. | Cuiyun Song |
| 14. | Da Li |
| 15. | Debing Zhang |
| 16. | Dongjuan Jin |
| 17. | Dongmei Lv |
| 18. | Fang Ma |
| 19. | Feifan Wang |
| 20. | Fuzhe Zhang |
| 21. | Gang Ding |
| 22. | Guangli Jiao |
| 23. | Guocai Wu |
| 24. | Haibo Yu |
| 25. | Hanbo Wang |
| 26. | Haoran Wang |
| 27. | Haosong Rao |
| 28. | Hongying Zhang |
| 29. | Hongzhong Wang |
| 30. | Huiping Li |
| 31. | Hvi Li |
| 32. | Jia Li |
| 33. | Jiacheng Wei |
| 34. | Jian Li |
| 35. | Jing Liu |
| 36. | Jing Xu |

**ATTACHMENT A**

| | **CCLLP Clients** |
|---|---|
| 37. | Jingjing Dong |
| 38. | Jiping Yang |
| 39. | Jun Cao |
| 40. | Kai Xu |
| 41. | Lei Gao |
| 42. | Lili Fan |
| 43. | Lili Qian |
| 44. | Lin Jia |
| 45. | Liqin Wu |
| 46. | Luoxin Liu |
| 47. | Maochao Cheng |
| 48. | Mingzhan Li |
| 49. | Peiwen Zhou |
| 50. | Qiang Chen |
| 51. | Qin Jian |
| 52. | Qing Qin |
| 53. | Qingyu Meng |
| 54. | Ruohan Zhao |
| 55. | Shan Bai |
| 56. | Shifeng Cao |
| 57. | Shujin Mu |
| 58. | Shuo Yang |
| 59. | Tan Wang |
| 60. | Wei Ni |
| 61. | Weiqin Wang |
| 62. | Wenjun Huang |
| 63. | Wenlong Li |
| 64. | Xian Yu |
| 65. | Xiaoan Wei |
| 66. | Xiaolin Wu |
| 67. | Xiaomei Zhang |
| 68. | Xinrui Wang |
| 69. | Xinyu Liu |
| 70. | Yang Yang |
| 71. | Yao Zheng |
| 72. | Yi Liu |
| 73. | Yi Qin |

**ATTACHMENT A**

| CCLLP Clients | |
|---|---|
| 74. | Yi Zhou |
| 75. | Yincong Yang |
| 76. | Ying Bai |
| 77. | Ying Chang |
| 78. | Ying Wang |
| 79. | Yue Yu |
| 80. | Yunrong Zhang |
| 81. | Yusi Zhou |
| 82. | Zheng Zhou |
| 83. | Zhigang Li |
| 84. | Zhihong Guan |
| 85. | Zhiqing Yu |
| 86. | Zhiyun Wang |
| 87. | Zhongxin Duan |

**Attachment B**

The Honorable James L. Robart

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:15-cv-01350-JLR |
| Plaintiff, | [PROPOSED] ORDER GRANTING FINAL APPROVAL OF DISPOSITION OF POTALA TOWER RELATED ASSETS |
| v. | |
| PATH AMERICA, LLC; PATH AMERICA SNOCO LLC; PATH AMERICA FARMER'S MARKET, LP; PATH AMERICA KINGCO LLC; PATH AMERICA TOWER, LP; PATH TOWER SEATTLE, LP; POTALA TOWER SEATTLE, LLC; and LOBSANG DARGEY, | NOTE ON MOTION CALENDAR: July 8, 2016 |
| Defendants, and, | |
| POTALA SHORELINE, LLC; POTALA VILLAGE KIRKLAND, LLC; DARGEY DEVELOPMENT, LLC; DARGEY ENTERPRISES, LLC; and PATH OTHELLO, LLC, | |
| Relief Defendants. | |

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF
DISPOSITION OF POTALA TOWER RELATED ASSETS

1047005.02/LA

Allen Matkins Leck Gamble Mallory & Natsis LLP
515 S. Figueroa Street, 9th Floor
Los Angeles, CA  90071-3309
213.622.5555 P | 213.620.8816 F

## [PROPOSED] ORDER

This matter came before the Court on the Motion for Final Approval of Disposition of Potala Tower Related Assets ("Motion"), filed by Michael A. Grassmueck (the "Receiver"), the Court-appointed receiver for Path America, LLC, et al. ("Receivership Entity" or "Receivership Entities"); pursuant to which the Receiver seeks final approval of the terms of a restructuring transaction ("Restructuring Transaction") for the commercial development project located at 2116 Fourth Avenue, Seattle, Washington ("Tower Project") submitted by Binjiang Tower Corp., PH Seattle Tower I, LLC ("Molasky"), and Lobsang Dargey and certain affiliated companies. Appearances are as set forth on the record. The Court, having considered the Receiver's Motion, all submissions filed in support of and in response thereto, and other pleadings filed in this action, and finding that good cause exists to grant the Receiver's Motion, hereby **ORDERS, ADJUDGES AND DECREES** as follows:

1. The Receiver's Motion is hereby GRANTED;

2. The final agreements memorializing the terms of the Restructuring Transaction ("Final Agreements"), submitted as Exhibit B to the Receiver's Declaration and as sealed exhibits to the Stipulated Motion filed in support of the Receiver's Motion, are hereby APPROVED;

3. Upon the closing of the transactions contemplated by the Final Agreements:

   a. The complete redemption of membership interest in Potala Tower Seattle, LLC ("Tower LLC") currently held by Dargey Holdings LLC as specified in the Final Agreements is APPROVED, and the redeemed interests shall be delivered to Tower LLC free and clear of all security interests, liens, claims, pledges, encumbrances or other rights or claims of any other person or any preemptive or similar rights ("Encumbrances");

   b. Molasky, or its designee, shall be issued 100% of the ownership interest in the Receivership Entity Path America KingCo LLC ("KingCo LLC"), free and clear of any Encumbrances; and

   "If and to the extent the Receiver, Binjiang, Molasky, and the Dargey Parties agree in writing to revise the Notice to Investors (defined below) to narrow the scope of the release attached thereto as Exhibit E, such revised Disclosure Document is hereby APPROVED."

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF
DISPOSITION OF POTALA TOWER RELATED ASSETS

1047005.02/LA                                         -1-

Allen Matkins Leck Gamble Mallory & Natsis LLP
515 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3309
213.622.5555 P | 213.620.8816 F

c. The Receivership Entities Tower LLC, KingCo LLC, Path America Tower, LP, and Path Tower Seattle, LP shall be free and clear of all liabilities other than those liabilities and obligations they retain as specified in the Final Agreements.

4. The distribution of $1.8 million to the trust account of counsel for Lobsang Dargey and certain affiliated entities is deemed to be outside the scope of the Court's Order Granting Motion for Preliminary Injunction (Dkt. 68) and outside the scope of the asset freeze. Such funds shall be used solely to pay legal fees and related expenses.

5. The Court's Order Granting Motion for Preliminary Injunction (Dkt. 68) is hereby modified to lift the freeze imposed thereby over monies in financial accounts to the extent necessary to permit the payments from Path Othello, LLC contemplated by the Final Agreements.

6. Central Escrow, Inc., which currently holds funds in escrow on behalf of EB-5 investors of the Tower Project, is hereby ORDERED to promptly transfer all such funds in its possession, custody or control to Tower LLC;

7. The form of notice to the Tower Project's EB-5 investors ("Notice to Investors"), a copy of which is attached as Exhibit A to the Receiver's Declaration filed in support of his Motion, is hereby APPROVED;

8. The methods and process for providing the Notice to Investors to the Tower Project's EB-5 investors, as proposed and detailed in the Receiver's Motion and the Final Agreements, is hereby APPROVED;

9. The following deadlines for the Receiver's delivery of, and EB-5 investors' responses to the Notice to Investors, previously established by order of this Court, are hereby REAFFIRMED:

a. The Receiver shall send the Notice to Investors by no later than July 25, 2016;

b. EB-5 investors shall deliver to the Receiver no later than August 24, 2016 their responses to the Notice to Investors; and

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF
DISPOSITION OF POTALA TOWER RELATED ASSETS

1047005.02/LA

-2-

Allen Matkins Leck Gamble Mallory & Natsis LLP
515 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3309
213.622.5555 P | 213.620.8816 F

c.   EB-5 investors who fail to deliver a response to the Receiver by August 24, 2016 shall be deemed to have opted-in to the Restructuring Transaction, and shall be bound by the terms, conditions, and releases specified in the Receiver's Motion, the Final Agreements and the Notice to Investors; and

10.   The Receiver is further AUTHORIZED and EMPOWERED to take any and all action to effectuate the terms and provisions of the Restructuring Transaction as described and specified in the Motion, the Final Agreements, and this Order;

**IT IS SO ORDERED.**

Dated: July __15__, 2016

Hon. James L. Robart
Judge, United States District Court

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF
DISPOSITION OF POTALA TOWER RELATED ASSETS

1047005.02/LA                                                  -3-

Allen Matkins Leck Gamble Mallory & Natsis LLP
515 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3309
213.622.5555 P | 213.620.8816 F

Case 2:15-cv-01350-JLR   Document 463   Filed 08/26/16   Page 1 of 10

The Honorable James L. Robart

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PATH AMERICA, LLC; PATH AMERICA SNOCO LLC; PATH AMERICA FARMER'S MARKET, LP; PATH AMERICA KINGCO LLC; PATH AMERICA TOWER, LP; PATH TOWER SEATTLE, LP; POTALA TOWER SEATTLE, LLC; and LOBSANG DARGEY,<br><br>Defendants, and,<br><br>POTALA SHORELINE, LLC; POTALA VILLAGE KIRKLAND, LLC; DARGEY DEVELOPMENT, LLC; DARGEY ENTERPRISES, LLC; PATH OTHELLO, LLC; PATH FARMER'S MARKET, LLC; and DARGEY HOLDINGS, LLC,<br><br>Relief Defendants. | Case No. 2:15-cv-01350-JLR<br><br>STIPULATED MOTION AND ~~PROPOSED~~ ORDER MODIFYING PREVIOUS ORDERS APPROVING FINAL DISPOSITION OF POTALA TOWER RELATED ASSETS AND EXTENDING DEADLINE FOR CLOSING OF RESTRUCTURING TRANSACTION<br><br>NOTE ON MOTION CALENDAR: Date of Filing per [Local Civil Rules 10(g), 7(d)1] |

Stipulated Motion and Proposed Order Modifying Previous Orders
Approving Final Disposition of Potala Tower Related Assets and
Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
865 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3309
213.622.5555 P | 213.620.8816 F

## STIPULATED MOTION

**PLEASE TAKE NOTICE** that Michael A. Grassmueck (the "Receiver"), the Court-appointed receiver for Path America, LLC; Path America SnoCo, LLC; Path America Farmer's Market, LP; Path America KingCo, LLC; Path America Tower, LP; Path Tower Seattle, LP; Potala Tower Seattle, LLC; Potala Shoreline, LLC; Potala Village Kirkland, LLC; Dargey Development, LLC; Dargey Enterprises, LLC; Path Farmer's Market, LLC; and Dargey Holdings, LLC, Plaintiff Securities and Exchange Commission ("SEC"), and Defendant Lobsang Dargey and Relief Defendant Path Othello, LLC (together "Dargey")[1], hereby file this stipulated motion ("Stipulated Motion") for an order modifying this Court's prior orders approving the final disposition of Potala Tower Seattle, LLC related assets in connection with the restructuring transaction ("Restructuring Transaction") for the commercial development project located at 2116 Fourth Avenue, Seattle, Washington ("Tower Project"), to extend the existing deadline to close the Restructuring Transaction.

**WHEREAS**, on May 20, 2016, the Court entered an Order approving the Receiver's recommendation ("Preliminary Approval Order") to select the proposal submitted by Binjiang Tower Corp. ("Binjiang"), an affiliate of PH Seattle Tower I, LLC ("Molasky"), and Lobsang Dargey and certain affiliated companies for the Restructuring Transaction;

**WHEREAS**, the Preliminary Approval Order required, among other things, the Receiver and the parties to the Restructuring Transaction to finalize and submit for approval final agreements memorializing the final terms of the transaction;

**WHEREAS**, in accordance with the terms of the Preliminary Approval Order, on June 23, 2016, the Receiver filed a Motion for Final Approval of Disposition of Potala Tower Related Assets ("Final Approval Motion"), which seeks the final approval of this Court for the Restructuring Transaction;

**WHEREAS**, on July 15, 2016, the Court entered its Order Granting Final Approval of Disposition of Potala Tower Related Assets ("Final Approval Order"), granting final approval of

---

[1]  The Receiver, SEC, and Dargey are collectively referred to herein as the "Parties."

Stipulated Motion and Proposed Order Modifying Previous Orders
Approving Final Disposition of Potala Tower Related Assets and
Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA
-1-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

the terms of the Restructuring Transaction as memorialized in the final agreements ("Final Agreements") previously submitted as Exhibit B to the Receiver's Declaration filed in support of his Final Approval Motion and as sealed exhibits to the Stipulated Motion filed on June 29, 2016 in support of the Final Approval Motion;

WHEREAS, the terms of the Final Agreements, the Preliminary Approval Order and the Final Approval Order, contemplate and require the Restructuring Transaction to be closed on or before August 31, 2016;

WHEREAS, as a condition to closing the Restructuring Transaction, the Final Agreements, and specifically Section 12.1(c) of the fully-executed Master Agreement dated June 23, 2016 ("Master Agreement"), require a $100 million construction loan ("Construction Loan") to be secured in order to provide construction financing for the Tower Project, and further contemplate that the Construction Loan would be obtained from Voya Investment Management ("Voya") and closed by no later than August 31, 2016;

WHEREAS, Section 4.1 of the Master Agreement further requires various assets to be transferred at the closing of the Restructuring Transaction;

WHEREAS, Binjiang and Molasky have diligently attempted to negotiate the final terms of the Construction Loan with Voya, but require additional time to secure agreement on final terms and secure a final commitments to close the Construction Loan as Voya has indicated it will jointly make the loan with participation from another lender, Guardian Life Insurance ("Guardian");

WHEREAS, on August 22, 2016, Voya's Loan Committee notified Binjiang that it had approved Voya's participation in a $50 million portion of the Construction Loan, with the Commitment Letter expected this Friday, August 26, after only minor remaining revisions;

WHEREAS, Binjiang and Molasky have informed the Receiver that, through their negotiations with Voya and Guardian, they anticipate that Guardian will issue its final commitment letter for its $50 million portion of the Construction Loan by no later than September 22, 2016, after the next soonest Loan Committee formal meeting in the week of September 15,

Stipulated Motion and Proposed Order Modifying Previous Orders
Approving Final Disposition of Potala Tower Related Assets and
Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA                                    -2-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

2016 and that the Construction Loan, funded by Voya and Guardian, can then be closed on or before October 24, 2016;

**WHEREAS**, the Receiver believes that a short extension of the closing deadline for the overall Restructuring Transaction will be the best means for ensuring that construction lenders (expected to be Voya and Guardian), will simultaneously close the necessary Construction Loan for the Project, and the Restructuring Transaction may proceed to closing and the Tower Project may be completed as contemplated;

**WHEREAS**, the Receiver further believes that, although success on appeal is not guaranteed, the timely closing of the Restructuring Transaction and completion of the Tower Project still present the best option to maximize the potential for success of the pending appeal with the U.S. Citizenship and Immigration Services and for the Tower Project's EB-5 investors to achieve the immigration benefit they originally sought; and

**WHEREAS**, the Parties have conferred regarding extending the deadline to close the Restructuring Transaction, and have agreed that the current deadline for closing by August 31, 2016, should be extended for a period of approximately 54 days to October 24, 2016, in order to provide additional time for Binjiang and Molasky to close their Construction Loan, and that the required transfer of assets pursuant to the terms of the Master Agreement as described herein be facilitated through a mutually agreed-upon escrow company at or before the extended deadline for closing.

**THEREFORE**, the Parties hereby **STIPULATE** and **AGREE** as follows:

1. The deadline for closing the Restructuring Transaction, as set forth in the Preliminary Approval Order and the Final Approval Order, is to be extended to October 24, 2016;

2. The Final Agreements shall be amended by the parties thereto to reflect the extension of the deadline for closing;

Stipulated Motion and Proposed Order Modifying Previous Orders
Approving Final Disposition of Potala Tower Related Assets and
Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA

-3-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

Case 2:21-cv-08533-RGK-GJS Document 12314 Filed 08/27/26 Page 56 of 157 Page ID

3.  The required transfer of assets pursuant to the terms of the Master Agreement shall be facilitated through a mutually agreed-upon escrow company at or before the extended deadline for closing;

4.  Binjiang and Molasky shall diligently continue to pursue the issuance of the final Construction Loan commitments by no later than September 22, 2016, and the Construction loan shall close by no later than October 24, 2016; and

5.  If Binjiang and Molasky are: (1) unable to secure the issuance of a final loan commitment from Guardian and Voya, respectively, or other construction lender satisfactory to the Receiver on or before September 22, 2016, or (2) unable to close the Construction Loan by no later than October 24, 2016 for a combined $100 million; or (3) close the Restructuring Transaction by October 24, 2016, the Restructuring Transaction may be deemed void upon application by any party thereto and further order of the Court.

**IT IS SO STIPULATED.**

Dated: August 26, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP


By:  _____*s/ David R. Zaro*_____

David R. Zaro, Esq. #124334 (CA)
*(Pro Hac Vice Granted Oct. 26, 2015)*
Michael R. Farrell, Esq. #173831 (CA)
*(Pro Hac Vice Granted Nov. 6, 2015)*
Allen Matkins Leck Gamble Mallory
   & Natsis LLP
515 S. Figueroa Street, 9th Floor
Los Angeles, CA  90071-3309
213.622.5555 P | 213.620.8816 F
E-mail:    dzaro@allenmatkins.com
           mfarrell@allenmatkins.com
*Attorneys for Receiver*
*MICHAEL A. GRASSMUECK*

Stipulated Motion and Proposed Order Modifying Previous Orders
Approving Final Disposition of Potala Tower Related Assets and
Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA

-4-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

Dated:  August 26, 2016

DORSEY & WHITNEY LLP


By:      *s/ Todd S. Fairchild*
_____

Peter S. Ehrlichman, WSBA #6591
Shawn Larsen-Bright, WSBA #37066
Todd S. Fairchild, WSBA #17654
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Tel: 206-903-8800
ehrlichman.peter@dorsey.com
larsen.bright.shawn@dorsey.com
Fairchild.todd@dorsey.com
*Attorneys for Lobsang Dargey; Dargey
Development, LLC; Dargey Enterprises,
LLC; and Path Othello, LLC*


Dated:  August 26, 2016

SECURITIES AND EXCHANGE
COMMISSION


By:      *s/ Susan F. LaMarca*
_____

Susan F. LaMarca
Bernard B. Smyth
Andrew J. Hefty
44 Montgomery Street, Suite 2800
San Francisco, CA  94104
Tel: 415-705-2500
lamarcas@sec.gov
smythb@sec.gov
heftya@sec.gov

Stipulated Motion and Proposed Order Modifying Previous Orders
Approving Final Disposition of Potala Tower Related Assets and
Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA

-5-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

## [PROPOSED] ORDER

The Court, having read the Stipulated Motion and Proposed Order Modifying Previous Orders Approving Final Disposition of Potala Tower Related Assets and Extending Deadline for Closing of Restructuring Transaction ("Stipulated Motion"), filed by Michael A. Grassmueck, the Court-appointed receiver for Path America, LLC; Path America SnoCo, LLC; Path America Farmer's Market, LP; Path America KingCo, LLC; Path America Tower, LP; Path Tower Seattle, LP; Potala Tower Seattle, LLC; Potala Shoreline, LLC; Potala Village Kirkland, LLC; Dargey Development, LLC; Dargey Enterprises, LLC; Path Farmer's Market, LLC; and Dargey Holdings, LLC, Plaintiff Securities and Exchange Commission, and Defendant Lobsang Dargey and Relief Defendant Path Othello, LLC—which seeks an order modifying this Court's prior orders approving the final disposition of Potala Tower Seattle, LLC related assets in connection with the restructuring transaction ("Restructuring Transaction") for the commercial development project located at 2116 Fourth Avenue, Seattle, Washington ("Tower Project"), to extend the existing deadline to close the Restructuring Transaction—and good cause appearing therefor, hereby **ORDERS** as follows:

1. The Stipulated Motion is hereby Approved;

2. The August 31, 2016 deadline for closing the Restructuring Transaction, as set forth in the May 20, 2016 Order approving the Receiver's recommendation for disposition of the Tower Project related assets and the July 15, 2016 Order Granting Final Approval of Disposition of Potala Tower Related Assets, is hereby extended to October 24, 2016;

3. The final agreements memorializing the terms of the Restructuring Transaction, previously submitted as Exhibit B to the Receiver's Declaration filed in support of his Motion for Final Approval of Disposition of Potala Tower Related Assets ("Final Approval Motion") and as sealed exhibits to the Stipulated Motion filed on June 29, 2016 in support of the Final Approval Motion, shall be amended by the parties thereto to reflect the extension of the deadline for closing;

Stipulated Motion and Proposed Order Modifying Previous Orders Approving Final Disposition of Potala Tower Related Assets and Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA     -6-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

4.    The required transfer of assets pursuant to the terms of the Master Agreement dated June 23, 2016 ("Master Agreement") shall be facilitated by the parties thereto through a mutually agreed-upon escrow company at or before the extended deadline for closing

5.    Binjiang and Molasky shall diligently continue to pursue the issuance of a final loan commitment from Guardian Life Insurance ("Guardian") for its $50 million portion of the $100 million construction loan ("Construction Loan"), as contemplated in Section 12.1(c) of the Master Agreement, by no later than September 22, 2016, and close the Construction Loan by no later than October 24, 2016; and

6.    If Binjiang and Molasky are: (1) unable to secure the issuance of a final loan commitment from Guardian for its $50 million portion of the Construction Loan by September 22, 2016 for a combined $100 million loan commitment, or (2) close the Construction Loan by no later than October 24, 2016 through the issuance of a combined $100 million loan from Voya and Guardian or other construction lenders, or (3) close the Restructuring Transaction by October 24, 2016, the Restructuring Transaction may be deemed void upon application by any party thereto and further order of the Court.

**IT IS SO ORDERED.**

Dated: 29 August, 2016

Hon. James L. Robart
Judge, United States District Court

Stipulated Motion and Proposed Order Modifying Previous Orders Approving Final Disposition of Potala Tower Related Assets and Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA

-7-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

### CERTIFICATION OF MEET AND CONFER

In accordance with Local Civil Rule 5(g)(3)(A), I hereby certify that I met and conferred with all other parties to this Stipulated Motion and Proposed Order Modifying Previous Orders Approving Final Disposition of Potala Tower Related Assets and Extending Deadline for Closing of Restructuring Transaction on August 24 and 25, 2016, by way of e-mail communications with counsel for the Parties, and the Parties agree that August 31, 2016 deadline to close the restructuring transaction for the commercial development project located at 2116 Fourth Avenue, Seattle, Washington previously established by the Court should be extended to October 24, 2016.

Dated:  August 26, 2016                    *s/ David R. Zaro*
                                           David R. Zaro, Esq. #124334 (CA)
                                           *(Pro Hac Vice Granted Oct. 26, 2015)*

Stipulated Motion and Proposed Order Modifying Previous Orders
Approving Final Disposition of Potala Tower Related Assets and
Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA                                      -8-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

# CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2016, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

Dated:  August 26, 2016

_s/ David R. Zaro_
David R. Zaro, Esq. #124334 (CA)
_(Pro Hac Vice Granted Oct. 26, 2015)_

Stipulated Motion and Proposed Order Modifying Previous Orders
Approving Final Disposition of Potala Tower Related Assets and
Extending Deadline for Closing of Restructuring Transaction
2:15-cv-01350-JLR
1052346.02/LA                                                         -9-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

The Honorable James L. Robart

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>PATH AMERICA, LLC; PATH AMERICA SNOCO LLC; PATH AMERICA FARMER'S MARKET, LP; PATH AMERICA KINGCO LLC; PATH AMERICA TOWER, LP; PATH TOWER SEATTLE, LP; POTALA TOWER SEATTLE, LLC; and LOBSANG DARGEY,<br><br>        Defendants, and,<br><br>POTALA SHORELINE, LLC; POTALA VILLAGE KIRKLAND, LLC; DARGEY DEVELOPMENT, LLC; DARGEY ENTERPRISES, LLC; PATH OTHELLO, LLC; PATH FARMER'S MARKET, LLC; and DARGEY HOLDINGS, LLC,<br><br>        Relief Defendants. | Case No. 2:15-cv-01350-JLR<br><br>STIPULATED MOTION AND ~~PROPOSED~~ ORDER TO CONFIRM APPROVAL FOR FINAL DISPOSITION OF POTALA TOWER RELATED ASSETS<br><br>NOTE ON MOTION CALENDAR: Date of Filing per [Local Civil Rules 10(g), 7(d)1] |

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
865 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3309
213.622.5555 P | 213.620.8816 F

## STIPULATED MOTION

**PLEASE TAKE NOTICE** that Michael A. Grassmueck (the "Receiver"), the Court-appointed receiver for Path America, LLC; Path America SnoCo, LLC; Path America Farmer's Market, LP; Path America KingCo, LLC; Path America Tower, LP; Path Tower Seattle, LP; Potala Tower Seattle, LLC; Potala Shoreline, LLC; Potala Village Kirkland, LLC; Dargey Development, LLC; Dargey Enterprises, LLC; Path Farmer's Market, LLC; and Dargey Holdings, LLC, Plaintiff Securities and Exchange Commission ("SEC"), and Defendant Lobsang Dargey and Relief Defendant Path Othello, LLC (together "Dargey")[1], hereby file this stipulated motion ("Stipulated Motion") for an order confirming approval for the final disposition of Potala Tower Seattle, LLC related assets in connection with the restructuring transaction ("Restructuring Transaction") for the commercial development project located at 2116 Fourth Avenue, Seattle, Washington ("Tower Project") in light of a potential new construction lender.

**WHEREAS**, on May 20, 2016, the Court entered an Order approving the Receiver's recommendation ("Preliminary Approval Order") to select the proposal submitted by Binjiang Tower Corp. ("Binjiang"), an affiliate of PH Seattle Tower I, LLC ("Molasky"), and Lobsang Dargey and certain affiliated companies for the Restructuring Transaction;

**WHEREAS**, in accordance with the terms of the Preliminary Approval Order, on June 23, 2016, the Receiver filed a Motion for Final Approval of Disposition of Potala Tower Related Assets ("Final Approval Motion"), which seeks the final approval of this Court for the Restructuring Transaction;

**WHEREAS**, on July 15, 2016, the Court entered its Order Granting Final Approval of Disposition of Potala Tower Related Assets ("Final Approval Order"), granting final approval of the terms of the Restructuring Transaction as memorialized in the final agreements ("Final Agreements") previously submitted as Exhibit B to the Receiver's Declaration filed in support of his Final Approval Motion and as sealed exhibits to the Stipulated Motion filed on June 29, 2016 in support of the Final Approval Motion;

---

[1]  The Receiver, SEC, and Dargey are collectively referred to herein as the "Parties."

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA

-1-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

WHEREAS, the terms of the Final Agreements, the Preliminary Approval Order and the Final Approval Order, contemplated and require the Restructuring Transaction to be closed on or before August 31, 2016;

WHEREAS, as a condition to closing the Restructuring Transaction, the Final Agreements, and specifically Section 12.1(c) of the fully-executed Master Agreement dated June 23, 2016 ("Master Agreement"), require a $100 million construction loan ("Construction Loan") to be secured in order to provide construction financing for the Tower Project, and further contemplate that the Construction Loan would be obtained from Voya Investment Management ("Voya"), or other construction lender, and closed by no later than August 31, 2016;

WHEREAS, on August 26, 2016, the Parties filed a stipulated motion ("Stipulated Motion") confirming Binjiang and Molasky's efforts to secure the closing of the Construction Loan from Voya and Guardian Life Insurance ("Guardian"), and seeking an order to extend the deadline for closing the Restructuring Transaction to October 24, 2016;

WHEREAS, on August 26, 2016, the Court entered an order granting the Stipulated Motion and setting a closing deadline of October 24, 2016 for the Construction Loan to be closed "through the issuance of a combined $100 million loan from Voya and Guardian or other construction lenders" (the "Extension Order");

WHEREAS, since entry of the Extension Order, Binjiang and Molasky have diligently attempted to finalize the Construction Loan with Voya and Guardian, but have encountered various delays in the approval process;

WHEREAS, given the delays in securing approval from Voya and Guardian for the Construction Loan, and in order to avoid any further delays to closing the Restructuring Transaction, Binjiang and Molasky have proposed that the entire $100 million Construction Loan be obtained from Binjiang Limited Partnership, a Delaware limited partnership ("Binjiang Limited") and an affiliate of Binjiang, who will issue the Construction Loan on terms substantially identical to the material loan terms negotiated with Voya and Guardian;

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA

-2-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

**WHEREAS**, the Receiver and Binjiang Limited have tentatively agreed to an escrow agreement whereby Binjiang Limited will deposit the entire $100 million in Construction Loan funds into a domestic account at the Los Angeles branch of the Bank of China, a federally chartered branch of Bank of China Limited ("Bank of China"). The entire $100 million will be maintained in the Bank of China account until $25 million has been drawn on the Construction Loan to finance the costs of construction pursuant to the terms of the Final Agreements. At that time, Binjiang Limited may withdraw $50 million from the Bank of China account but will be obligated to replenish the account in $25 million installments whenever the account balance falls below $1 million;

**WHEREAS**, the Receiver believes that while a non-arms length affiliate relationship exists between Binjiang and Binjiang Limited, the contemplated escrow terms provide substantial assurance that the construction funds will be available for construction post-restructuring;

**WHEREAS**, although the terms of the Final Agreements, the Preliminary Approval Order and the Final Approval Order already authorize securing the Construction Loan from "*other construction lenders*," the Parties wish to expressly confirm authorization by this Court to close the contemplated Construction Loan with Binjiang Limited as part of the closing of the Restructuring Transaction;

**THEREFORE**, the Parties hereby **STIPULATE** and **AGREE** as follows:

1. The Restructuring Transaction may proceed with the Construction Loan provided by Binjiang Limited and close pursuant to the Final Approval Order and the Extension Order.

**IT IS SO STIPULATED.**

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA

-3-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

Case 2:21-cv-00855-JHC-JKD Document 71-27 Filed 01/02/2016 Page 65 of 157 Page 208

Case 2:15-cv-01350-JLR Document 425 Filed 09/19/16 Page 5 of 9

Dated: September 19, 2016

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By:      */s/ Michael R. Farrell*

David R. Zaro, Esq. #124334 (CA)
*(Pro Hac Vice Granted Oct. 26, 2015)*
Michael R. Farrell, Esq. #173831 (CA)
*(Pro Hac Vice Granted Nov. 6, 2015)*
Allen Matkins Leck Gamble Mallory
     & Natsis LLP
515 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3309
213.622.5555 P | 213.620.8816 F
E-mail:      dzaro@allenmatkins.com
                  mfarrell@allenmatkins.com
*Attorneys for Receiver*
*MICHAEL A. GRASSMUECK*

Dated: September 19, 2016

DORSEY & WHITNEY LLP

By:      */s/ Todd S. Fairchild*

Peter S. Ehrlichman, WSBA #6591
Shawn Larsen-Bright, WSBA #37066
Todd S. Fairchild, WSBA #17654
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Tel: 206-903-8800
ehrlichman.peter@dorsey.com
larsen.bright.shawn@dorsey.com
Fairchild.todd@dorsey.com
*Attorneys for Lobsang Dargey; Dargey*
*Development, LLC; Dargey Enterprises,*
*LLC; and Path Othello, LLC*

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA

-4-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

Dated:  September 19, 2016

SECURITIES AND EXCHANGE
COMMISSION

By:  _____/s/ Susan F. LaMarca_____

Susan F. LaMarca
Bernard B. Smyth
Andrew J. Hefty
44 Montgomery Street, Suite 2800
San Francisco, CA  94104
Tel: 415-705-2500
lamarcas@sec.gov
smythb@sec.gov
heftya@sec.gov

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA

-5-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

## [PROPOSED] ORDER

The Court, having read the Stipulated Motion and Proposed Order To Confirm Approval For Final Disposition Of Potala Tower Related Assets ("Stipulated Motion"), filed by Michael A. Grassmueck, the Court-appointed receiver for Path America, LLC; Path America SnoCo, LLC; Path America Farmer's Market, LP; Path America KingCo, LLC; Path America Tower, LP; Path Tower Seattle, LP; Potala Tower Seattle, LLC; Potala Shoreline, LLC; Potala Village Kirkland, LLC; Dargey Development, LLC; Dargey Enterprises, LLC; Path Farmer's Market, LLC; and Dargey Holdings, LLC, Plaintiff Securities and Exchange Commission, and Defendant Lobsang Dargey and Relief Defendant Path Othello, LLC—which seeks an order confirming this Court's prior approval of the final disposition of Potala Tower Seattle, LLC related assets in connection with the restructuring transaction ("Restructuring Transaction") for the commercial development project located at 2116 Fourth Avenue, Seattle, Washington ("Tower Project"), in light of the potential $100 million construction loan for completion of the Tower Project ("Construction Loan") from Binjiang Limited Partnership, a Delaware limited partnership ("Binjiang Limited") who is also an affiliate of Binjiang Tower Corp. ("Binjiang")—and good cause appearing therefor, hereby **ORDERS** as follows:

1. The Court confirms its approval of the Restructuring Transaction as set forth in the Final Approval Order and the Extension Order, with Binjiang Limited as a potential lender on the Construction Loan.

**IT IS SO ORDERED.**

Dated: 20 Sept. 2016 , 2016

_____
Hon. James L. Robart
Judge, United States District Court

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA                                        -6-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

## CERTIFICATION OF MEET AND CONFER

In accordance with Local Civil Rule 5(g)(3)(A), I hereby certify that I met and conferred with all other parties to this Stipulated Motion and Proposed Order To Confirm Approval For Final Disposition Of Potala Tower Related Assets on various days between September 15, 2016 and September 19, 2016, by way of e-mail and telephonic communications with counsel for the Parties, and the Parties agree that the restructuring transaction for the commercial development project located at 2116 Fourth Avenue, Seattle, Washington may proceed as set forth in the Final Approval Order and Extension Order, with Binjiang Limited Partnership as a potential lender for the contemplated construction loan..

Dated:  September 19, 2016

_____/s/ Michael R. Farrell_____
Michael R. Farrell, Esq. #173831 (CA)
*(Pro Hac Vice Granted Nov. 6, 2015)*

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA

-7-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2016, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

Dated:  September 19, 2016

_____/s/ Michael R. Farrell_____

Michael R. Farrell, Esq. #173831 (CA)
*(Pro Hac Vice Granted Nov. 6, 2015)*

Stipulated Motion and Proposed Order To Confirm Approval For
Final Disposition of Potala Tower Related Assets
2:15-cv-01350-JLR
1055268.02/LA

-8-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

# Attachment C

Case 2:15-cv-01350-JLR Document 355 Filed 03/28/17 Page 1 of 7

The Honorable James L. Robart

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

SEATTLE DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

PATH AMERICA, LLC; PATH AMERICA SNOCO LLC; PATH AMERICA FARMER'S MARKET, LP; PATH AMERICA KINGCO LLC; PATH AMERICA TOWER, LP; PATH TOWER SEATTLE, LP; POTALA TOWER SEATTLE, LLC; and LOBSANG DARGEY,

Defendants, and,

POTALA SHORELINE, LLC; POTALA VILLAGE KIRKLAND, LLC; DARGEY DEVELOPMENT, LLC; DARGEY ENTERPRISES, LLC; PATH OTHELLO, LLC; PATH FARMER'S MARKET, LLC; and DARGEY HOLDINGS, LLC,

Relief Defendants.

Case No. 2:15-cv-01350-JLR

STIPULATED MOTION AND ~~PROPOSED~~ ORDER MODIFYING PREVIOUS ORDER REGARDING UPDATED BUDGET, PROPOSAL FOR FINANCING, AND CONSULTANT AGREEMENT FOR FARMER'S MARKET AND MOTION PRELIMINARILY APPROVING DISPOSITION OF RECEIVERSHIP ASSETS

NOTE ON MOTION CALENDAR: Date of Filing per [Local Civil Rules 10(g), 7(d)1]

Stipulated Motion and Proposed Order Modifying Previous Order
2:15-cv-01350-JLR
1074767.01/LA

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
865 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3309
213.622.5555 P | 213.620.8816 F

**STIPULATED MOTION**

**PLEASE TAKE NOTICE** that Michael A. Grassmueck (the "Receiver"), the court-appointed Receiver for Path America LLC; Path America SnoCo LLC; Path America Farmer's Market, LP; Potala Shoreline, LLC; Potala Village Kirkland, LLC; Dargey Development, LLC; Dargey Enterprises, LLC; Path Farmer's Market, LLC; and Dargey Holdings, LLC, and Plaintiff Securities and Exchange Commission ("SEC")[1], hereby file this stipulated motion ("Stipulated Motion") for an order modifying this Court's prior order approving, among other things, the Receiver's recommendation to select the restructuring proposal submitted by EB5 Group, LLC ("EB5G") for the mixed use development project currently known as Potala Marketplace, located at 2900 Grand Avenue, Everett, Washington (the "Restructuring Transaction"), to extend the Court-ordered deadline to execute the final documents memorializing the Restructuring Transaction.

**WHEREAS**, on March 8, 2017, the Court entered an order (the "Preliminary Approval Order") which, among other things, approved the Receiver's recommendation to select the proposal for the Restructuring Transaction proposed by EB5G;

**WHEREAS**, the Preliminary Approval Order requires the Receiver and EB5G to finalize and execute final documents memorializing the Restructuring Transaction by no later than March 31, 2017, and submit a motion for approval of the final terms of the Restructuring Transaction, including the fully executed documents memorializing the Restructuring Transaction and agreement between the parties, by no later than April 13, 2017;

**WHEREAS**, the Receiver and EB5G are diligently working to finalize documents for the Restructuring Transaction, but require additional time beyond March 31, 2017 to conclude their discussions regarding the final terms of the transaction and prepare final documents for execution;

**WHEREAS**, the Receiver and EB5G anticipate that final documents for the Restructuring Transaction will be prepared and fully executed on or before April 7, 2017, and the Receiver will still have sufficient time to meet the Court's April 13, 2017 deadline to submit his motion for

---

[1] The Receiver and the SEC are together referred to herein as the "Parties."

Stipulated Motion and Proposed Order Modifying Previous Order
2:15-cv-01350-JLR
1074767.01/LA

-1-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

approval of the transaction, thereby avoiding any delay in closing the transaction before appeal papers must be submitted to United States Citizenship and Immigration Services;

WHEREAS, the Parties have conferred regarding extending the deadline to execute the final documents memorializing the Restructuring Transaction, and have agreed that the current deadline of March 31, 2017 should be extended to April 7, 2017.

THEREFORE, the Parties hereby **STIPULATE** and **AGREE** as follows:

1. The deadline to execute the final documents memorializing the Restructuring Transaction is to be extended to April 7, 2017; and

2. All other deadlines established in the Preliminary Approval Order shall otherwise remain unchanged.

**IT IS SO STIPULATED.**

Dated: March 28, 2017

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: _/s/ Michael R. Farrell_

David R. Zaro, Esq. #124334 (CA)
_(Pro Hac Vice Granted Oct. 26, 2015)_
Michael R. Farrell, Esq. #173831 (CA)
_(Pro Hac Vice Granted Nov. 6, 2015)_
Allen Matkins Leck Gamble Mallory
& Natsis LLP
865 S. Figueroa Street, 28th Floor
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F
E-mail:      dzaro@allenmatkins.com
               mfarrell@allenmatkins.com
_Attorneys for Receiver_
_MICHAEL A. GRASSMUECK_

Stipulated Motion and Proposed Order Modifying Previous Order
2:15-cv-01350-JLR
1074767.01/LA

-2-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

Dated: March 28, 2017

SECURITIES AND EXCHANGE
COMMISSION

By: _____ */s/ Susan F. LaMarca*

Susan F. LaMarca
Bernard B. Smyth
Andrew J. Hefty
44 Montgomery Street, Suite 2800
San Francisco, CA 94104
Tel: 415-705-2500
lamarcas@sec.gov
smythb@sec.gov
heftya@sec.gov

Stipulated Motion and Proposed Order Modifying Previous Order
2:15-cv-01350-JLR
1074767.01/LA

-3-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

# [PROPOSED] ORDER

The Court, having read the Stipulated Motion and Proposed Order Modifying Previous Order Regarding Updated Budget, Proposal for Financing, and Consultant Agreement for Farmer's Market and Motion Preliminarily Approving Disposition of Receivership Assets (the "Stipulated Motion"), filed by Michael A. Grassmueck, the Court-appointed receiver for Path America LLC; Path America SnoCo LLC; Path America Farmer's Market, LP; Potala Shoreline, LLC; Potala Village Kirkland, LLC; Dargey Development, LLC; Dargey Enterprises, LLC; Path Farmer's Market, LLC; and Dargey Holdings, LLC, and Plaintiff Securities and Exchange Commission— which seeks an order modifying this Court's prior order entered on March 8, 2017 (Docket No. 511) (the "Preliminary Approval Order") approving the Receiver's recommendation to select the restructuring proposal submitted by EB5 Group, LLC ("EB5G") for the mixed use development project currently known as Potala Marketplace, located at 2900 Grand Avenue, Everett, Washington (the "Restructuring Transaction"), to extend the existing deadline to execute the final documents memorializing the Restructuring Transaction—and good cause appearing therefor, hereby **ORDERS** as follows:

1. The Stipulated Motion is hereby Approved;

2. The March 31, 2017 deadline for the Receiver and EB5G to execute final agreements for the Restructuring Transaction is hereby extended to April 7, 2017; and

3. All other deadlines established in the Preliminary Approval Order shall otherwise remain unchanged.

**IT IS SO ORDERED.**

Dated: 29 March , 2017

_____
Hon. James L. Robart
Judge, United States District Court

Stipulated Motion and Proposed Order Modifying Previous Order
2:15-cv-01350-JLR
1074767.01/LA

-4-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

## CERTIFICATION OF MEET AND CONFER

In accordance with Local Civil Rule 5(g)(3)(A), I hereby certify that I met and conferred with all other parties to this Stipulated Motion and Proposed Order Modifying Previous Order Regarding Updated Budget, Proposal for Financing, and Consultant Agreement for Farmer's Market and Motion Preliminarily Approving Disposition of Receivership Assets on March 28, 2017, by way of e-mail communications with counsel for the Parties, and the Parties agree that the March 31, 2017 deadline previously established by the Court to execute final agreements for the restructuring transaction for the mixed use development project currently known as Potala Marketplace, located at 2900 Grand Avenue, Everett, Washington should be extended to April 7, 2017.

Dated:  March 28, 2017

_____/s/ Michael R. Farrell_____
Michael R. Farrell, Esq. #173831 (CA)
*(Pro Hac Vice Granted Nov. 6, 2015)*

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

Stipulated Motion and Proposed Order Modifying Previous Order
2:15-cv-01350-JLR
1074767.01/LA

-5-

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2017, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

Dated:  March 28, 2017

*/s/ Michael R. Farrell*
Michael R. Farrell, Esq. #173831 (CA)
*(Pro Hac Vice Granted Nov. 6, 2015)*

Stipulated Motion and Proposed Order Modifying Previous Order
2:15-cv-01350-JLR
1074767.01/LA

-6-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

Case 2:15-cv-01350-JLR Document 323 Filed 04/06/17 Page 1 of 7

The Honorable James L. Robart

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

### SEATTLE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:15-cv-01350-JLR |
| Plaintiff, | SECOND STIPULATED MOTION AND PROPOSED ORDER MODIFYING PREVIOUS ORDERS REGARDING UPDATED BUDGET, PROPOSAL FOR FINANCING, AND CONSULTANT AGREEMENT FOR FARMER'S MARKET AND MOTION PRELIMINARILY APPROVING DISPOSITION OF RECEIVERSHIP ASSETS |
| v. | |
| PATH AMERICA, LLC; PATH AMERICA SNOCO LLC; PATH AMERICA FARMER'S MARKET, LP; PATH AMERICA KINGCO LLC; PATH AMERICA TOWER, LP; PATH TOWER SEATTLE, LP; POTALA TOWER SEATTLE, LLC; and LOBSANG DARGEY, | |
| Defendants, and, | NOTE ON MOTION CALENDAR: Date of Filing per [Local Civil Rules 10(g), 7(d)1] |
| POTALA SHORELINE, LLC; POTALA VILLAGE KIRKLAND, LLC; DARGEY DEVELOPMENT, LLC; DARGEY ENTERPRISES, LLC; PATH OTHELLO, LLC; PATH FARMER'S MARKET, LLC; and DARGEY HOLDINGS, LLC, | |
| Relief Defendants. | |

Second Stipulated Motion and Proposed Order Modifying Previous
Orders
2:15-cv-01350-JLR
1075988.01/LA

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP
865 S. Figueroa Street, 9th Floor
Los Angeles, CA 90071-3309
213.622.5555 P | 213.620.8816 F

## STIPULATED MOTION

**PLEASE TAKE NOTICE** that Michael A. Grassmueck (the "Receiver"), the court-appointed Receiver for Path America LLC; Path America SnoCo LLC; Path America Farmer's Market, LP; Potala Shoreline, LLC; Potala Village Kirkland, LLC; Dargey Development, LLC; Dargey Enterprises, LLC; Path Farmer's Market, LLC; and Dargey Holdings, LLC, and Plaintiff Securities and Exchange Commission ("SEC")[1], hereby file this second stipulated motion ("Stipulated Motion") for an order modifying this Court's prior orders approving, among other things, the Receiver's recommendation to select the restructuring proposal submitted by EB5 Group, LLC ("EB5G") for the mixed use development project currently known as Potala Marketplace, located at 2900 Grand Avenue, Everett, Washington (the "Restructuring Transaction"), and extending the previously-ordered deadline to execute the final documents memorializing the Restructuring Transaction.

**WHEREAS**, on March 8, 2017, the Court entered an order (the "Preliminary Approval Order") which, among other things, approved the Receiver's recommendation to select the proposal for the Restructuring Transaction proposed by EB5G;

**WHEREAS**, the Preliminary Approval Order requires the Receiver and EB5G to finalize and execute final documents memorializing the Restructuring Transaction by no later than March 31, 2017, and submit a motion for approval of the final terms of the Restructuring Transaction, including the fully executed documents memorializing the Restructuring Transaction and agreement between the parties, by no later than April 13, 2017;

**WHEREAS**, the Parties filed a stipulated motion on March 28, 2017 (the "First Stipulation") seeking an extension of the March 31, 2017 deadline to finalize and execute final deal documents on the ground that the Receiver and EB5G required additional time to conclude their discussions regarding the final terms of the transaction and prepare final documents for execution;

---

[1] The Receiver and the SEC are together referred to herein as the "Parties."

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

**WHEREAS,** on March 29, 2017, this Court granted the First Stipulation and entered an order extending the deadline to finalize and execute deal documents to April 7, 2017;

**WHEREAS,** the Receiver and EB5G have continued to diligently work to finalize all documents for the Restructuring Transaction, including exchanging drafts of the various key deal documents for review and revisions, and conducting a number of conferences between counsel for the parties;

**WHEREAS,** the parties to the transaction have encountered some delay as a result of, among other things, issues raised by the project lender concerning the existing loan, and thus the Receiver and EB5G require additional time to address these issues in the deal documents;

**WHEREAS,** the Receiver anticipates that final deal documents will be prepared and executed on or before April 17, and that his motion for approval of the transaction will be ready to file by April 20, 2017, a schedule that will still allow the transaction to close before appeal papers must be submitted to United States Citizenship and Immigration Services;

**WHEREAS,** the Parties have conferred regarding extending the deadlines to execute the final documents memorializing the Restructuring Transaction and to submit the Receiver's motion for approval of the transaction, and have agreed that: (i) the present deadline of April 7, 2017 to finalize and execute final documents memorializing the Restructuring Transaction should be extended to April 17, 2017, and (ii) the present deadline of April 13, 2017 for the Receiver to submit a motion for approval of the transaction should be extended to April 20, 2017.

**THEREFORE,** the Parties hereby **STIPULATE** and **AGREE** as follows:

1. The deadline to execute the final documents memorializing the Restructuring Transaction is to be extended to April 17, 2017;

2. The deadline for the Receiver to submit a motion for approval of the final terms of the Restructuring Transaction is to be extended to April 20, 2017; and

3. All other deadlines established in the Preliminary Approval Order shall otherwise remain unchanged.

**IT IS SO STIPULATED.**

Second Stipulated Motion and Proposed Order Modifying Previous Orders
2:15-cv-01350-JLR
1075988.01/LA

-2-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

Dated: April 6, 2017

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP


By: _____ */s/ Michael R. Farrell*
David R. Zaro, Esq. #124334 (CA)
*(Pro Hac Vice Granted Oct. 26, 2015)*
Michael R. Farrell, Esq. #173831 (CA)
*(Pro Hac Vice Granted Nov. 6, 2015)*
Allen Matkins Leck Gamble Mallory
   & Natsis LLP
865 S. Figueroa Street, 28th Floor
Los Angeles, CA  90017-2543
213.622.5555 P  |  213.620.8816 F
E-mail:      dzaro@allenmatkins.com
            mfarrell@allenmatkins.com
*Attorneys for Receiver*
*MICHAEL A. GRASSMUECK*


Dated: April 6, 2017

SECURITIES AND EXCHANGE
COMMISSION


By: _____ */s/ Susan F. LaMarca*
Susan F. LaMarca
Bernard B. Smyth
Andrew J. Hefty
44 Montgomery Street, Suite 2800
San Francisco, CA  94104
Tel: 415-705-2500
lamarcas@sec.gov
smythb@sec.gov
heftya@sec.gov

Second Stipulated Motion and Proposed Order Modifying Previous
Orders
2:15-cv-01350-JLR
1075988.01/LA

-3-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA  90017-2543
213.622.5555 P | 213.620.8816 F

# [PROPOSED] ORDER

The Second Stipulated Motion and Proposed Order Modifying Previous Orders Regarding Updated Budget, Proposal for Financing, and Consultant Agreement for Farmer's Market and Motion Preliminarily Approving Disposition of Receivership Assets (the "Second Stipulated Motion"), filed by Michael A. Grassmueck, the Court-appointed receiver for Path America LLC; Path America SnoCo LLC; Path America Farmer's Market, LP; Potala Shoreline, LLC; Potala Village Kirkland, LLC; Dargey Development, LLC; Dargey Enterprises, LLC; Path Farmer's Market, LLC; and Dargey Holdings, LLC, and Plaintiff Securities and Exchange Commission, seeks an order modifying this Court's prior orders approving the Receiver's recommendation to select the restructuring proposal submitted by EB5 Group, LLC ("EB5G") for the mixed use development project currently known as Potala Marketplace, located at 2900 Grand Avenue, Everett, Washington (the "Restructuring Transaction"), and later extending related deadlines established by this Court. Specifically, the Second Stipulated Motion seeks an order extending the present deadlines to execute the final documents memorializing the Restructuring Transaction and to submit a motion for approval of the final terms of the Restructuring Transaction.

Good cause appearing therefor, the Court hereby **ORDERS** as follows:

1. The Second Stipulated Motion is hereby Approved;

2. The deadline for the Receiver and EB5G to execute final agreements for the Restructuring Transaction is hereby extended to April 17, 2017;

3. The deadline for the Receiver to submit a motion for approval of the final terms of the Restructuring Transaction is hereby extended to April 20, 2017; and

4. All other deadlines established in the Preliminary Approval Order shall otherwise remain unchanged.

**IT IS SO ORDERED.**

Dated: April 7 , 2017

Hon. James L. Robart
Judge, United States District Court

Second Stipulated Motion and Proposed Order Modifying Previous
Orders
2:15-cv-01350-JLR
1075988.01/LA

-4-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

Case 2:21-cv-00563-JCC Document 76-24 Filed 02/10/25 Page 84 of 146

# CERTIFICATION OF MEET AND CONFER

In accordance with Local Civil Rule 5(g)(3)(A), I hereby certify that I met and conferred with all other parties to this Stipulated Motion and Proposed Order Modifying Previous Order Regarding Updated Budget, Proposal for Financing, and Consultant Agreement for Farmer's Market and Motion Preliminarily Approving Disposition of Receivership Assets on March 28, 2017, by way of e-mail communications with counsel for the Parties, and the Parties agree that:

(i) the present deadline of April 7, 2017 to execute final agreements for the restructuring transaction for the mixed use development project currently known as Potala Marketplace, located at 2900 Grand Avenue, Everett, Washington should be extended to April 17, 2017, and

(ii) the present deadline of April 13, 2017 for the Receiver to submit a motion for approval of the transaction should be extended to April 20, 2017.

Dated: April 6, 2017

_/s/ Michael R. Farrell_
Michael R. Farrell, Esq. #173831 (CA)
_(Pro Hac Vice Granted Nov. 6, 2015)_

Second Stipulated Motion and Proposed Order Modifying Previous Orders
2:15-cv-01350-JLR
1075988.01/LA

-5-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2017, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

Dated:  April 6, 2017

*/s/ Michael R. Farrell*
Michael R. Farrell, Esq. #173831 (CA)
*(Pro Hac Vice Granted Nov. 6, 2015)*

Second Stipulated Motion and Proposed Order Modifying Previous
Orders
2:15-cv-01350-JLR
1075988.01/LA

-6-

Allen Matkins Leck Gamble Mallory & Natsis LLP
865 S. Figueroa Street, Suite 2800
Los Angeles, CA 90017-2543
213.622.5555 P | 213.620.8816 F

**Fleet New York Metropolitan Regional Center LLC**
136-20 38th Avenue Suite 10F
Flushing, NY 11354
*Email: office@fnymrc.com     Facsimile Number: 718.228.8589*

May 21st, 2021

Dear Limited Partner,

The following shall serve as an update on the Eastern Mirage Project with reference to EMMCO NQMC, L.P. ("Partnership"), including the anticipated schedule for the termination and dissolution events related thereto.

As you are aware, as iterated within our regular Project updates and monthly status reports, the Project is approaching completion and there are only minor items remaining as related to the installation of the Project's furnishing, fixtures, and miscellaneous equipment.

Moreover, there is only one Limited Partner awaiting the removal of their USCIS resident status conditions, and the agreed Termination Date of January 1 following the year in which all Partnership assets have been realized upon and distributed, which is three years from the filing of the last petition to remove such conditions is rapidly approaching, with said date being July 24, 2021.

Therefore, in accordance with Section 15.1 of the Limited Partnership Agreement, the Termination Date for the Partnership will coincide with this date, and the General Partner will initiate the liquidation of the Partnership accordingly, with a reconciliation of Profit and Loss being effectuated at such time, and a subsequent distribution of the Limited Partners capital contributions taking place thereafter.

As the Partnership has incurred legal, accounting, and other ancillary expenses throughout the course of its operation, such expenses will be calculated and considered as part of the reconciliation of Profit and Loss, with an accounting forthcoming to each Limited Partner as well.

Upon the execution by each Limited Partner of the Partnership's Dissolution package, the accounting process of each partner's capital account will then commence.

As stated within the Agreement, as part of the obligations of each Limited Partner, there is an indemnity agreement to protect, defend and indemnify the General Partner and the Partnership against those previously mentioned legal, accounting and other expenses, and therefore the accounting and Dissolution process will reconcile such expenses against each Limited Partner's capital account, with each Limited Partner receiving an accounting of all such expenses and reserve monies held back to account for future expenses which may also arise.

**Fleet New York Metropolitan Regional Center LLC**
136-20 38th Avenue Suite 10F
Flushing, NY 11354
*Email: office@fnymrc.com      Facsimile Number: 718.228.8589*

Consequently, with the Termination Date approaching, please provide the following information to the General Partner so that a timely and efficient Dissolution may be effectuated:

1. Name and Current Address of Limited Partner;

2. Current contact Information, inclusive of Phone Number, Social Security Number, if any, and Email Address of Limited Partner;

3. Bank Account Information, in the event a SWIFT Transaction is the preferred form of Distribution, inclusive of Name and Address of Financial Institution, Routing Number and Bank Account Number; and

4. In the event any Limited Partner's rights have been transferred, or placed in the hands of an Authorized Trustee, the Contact Information for such Trustee, as well as all pertinent information requested hereinabove as related to such entity or individual.

The General Partner currently anticipates that it will begin the process of accounting and Profit and Loss reconciliation on July 24, 2021, and therefore, the foregoing information should be furnished to the General Partner, at the contact address listed above, as soon as possible, and no later than July 24, 2021.

Thank you for your continued cooperation throughout this process.

Very Truly Yours,

Richard Xia
Authorized Signatory, FNYMRC

**SAUL EWING**

**ARNSTEIN**

**& LEHR** LLP

Michael O'Reilly
Phone: (212) 980-7226
michael.oreilly@saul.com
www.saul.com

February 3, 2022

**VIA U.S. MAIL**
Hon. Pamela K. Chen, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Chambers: N 631
Brooklyn, New York 11201

Re: *Securities and Exchange Commission v. Richard Xia a/k/a Yi Xia, et al.,*
   Civil Action No. 21-cv-5350-PKC-CLP

Dear Judge Chen:

We represent Yi-Fen Chang, Jinghui Guo, Shasha Han, Sutao He, Jun Liang, Chieh-Hsiang Tu, Shuang Wu, and Guoqiang Yuan, who are investors in and limited partners of EMMCO NQMC, L.P. ("EMMCO"), and write regarding this Court's Show-Cause Order dated September 27, 2021, which imposed an assert freeze (the "Asset Freeze") on Richard Xia, a/k/a Yi Xia ("Xia"), Fleet New York Metropolitan Regional Center, LLC, f/k/a Federal New York Metropolitan Regional Center, LLC ("Fleet"), and Julia Yue, a/k/a JiQing Yue ("Yue") (collectively, "Defendants").

Each of our clients is a named plaintiff in *Chang et al. v. Federal New York Metropolitan Regional Center LLC et al.,* an action currently pending in the Supreme Court of the State of New York, County of New York under Index No. 657415/2019 (the "State Court Action"). In addition to these clients, our firm represents numerous other investor limited partners in the Eastern Mirage Project through both EMMCO, L.P. and EMMCO NQMC, L.P. totaling approximately forty (40) individuals (collectively, the "Client Investors"). The State Court Action seeks a judgment compelling Xia and Federal New York Metropolitan Regional Center LLC to permit the inspection and copying of both EMMCO entities' books and records.

After engaging in motion practice and discovery in the State Court Action, and with the prospect of the Plaintiffs and the Client Investors amending the complaint to bring causes of actions for damages, the parties engaged in mediation and have agreed to a settlement in principle between all Client Investors and the Defendants (the "Settlement"). We have, however, been unable to formally execute or consummate it due to the Asset Freeze, which not only prevents the Defendants from executing a settlement, but has also prevented them from

39554477.3

Hon. Pamela K. Chen, U.S.D.J.
February 3, 2022

refinancing the Eastern Mirage project to generate the cash necessary to make the settlement payments.

In granting the SEC's application for the Asset Freeze, Your Honor observed that the Asset Freeze was warranted to "preserve the Court's ability to approve a fair distribution for victims." While undoubtedly well-intentioned, the Asset Freeze is currently preventing exactly that. The Client Investors wish to receive their agreed-upon repayments of capital and the Defendants' wish to make those payments. The Asset Freeze is preventing the Limited Partners from obtaining relief and recouping their investments.

Removing the obstacle of the Asset Freeze for the purposes of the Settlement is not only in the best interest of the Limited Partners, who would be forced to expend even more time and money in continuing to litigate the State Court Action absent the Settlement, but also the other investors who await repayment of their capital contributions because Defendants would continue to incur fees and costs in defending the State Court Action (and this action), presumably putting more investors' money in jeopardy. It is thus in the best interest of all parties to vacate or modify the Asset Freeze to permit the Settlement with the Client Investors.

Accordingly, we support Defendants' opposition to the Asset Freeze, and respectfully request that the Court vacate the order granting the Asset Freeze or modify it so that the parties may formally agree to and consummate the Settlement and the Defendants may refinance the Eastern Mirage project to pay the Settlement.

Respectfully submitted,

Michael S. O'Reilly

cc:   Hervé Gouraige, Esq.
      *Counsel for Richard Xia and*
      *Federal New York Metropolitan Regional Center LLC*

-2-

39554477.3

# Exhibit C

**RE: Re: Re: Bank statement inquiry**

| | |
|---|---|
| From: | Suphaporn Lee |
| To: | Jj Yu |
| Cc: | |
| Sent: | 1/2/2026 1:22:05 PM |

Hello Julia,

There was no transaction, so the statement can't be generated.

Thank you.



*Suphaporn Lee*
Branch Operation Manager

 CTBC BANK

41-99 Main Street
Flushing, NY 11355
Tel: 718-886-5600
Direct: 347-532-6461
Fax:718-886-0646

**From:** Jj Yu <yujj69@yahoo.com>
**Sent:** Tuesday, December 30, 2025 7:28 PM
**To:** Suphaporn Lee <suphaporn.lee@ctbcbankusa.com>
**Subject:** [External] Re: Re: Bank statement inquiry

**This Message Is From an Untrusted Sender**
You have not previously corresponded with this sender.

CAUTION: This email came from outside CTBC BANK USA. Use extra caution when opening attachments, clicking links, or responding to this email.   Original sender:  yujj69@yahoo.com  .

Hello Sue,

Thank you for your response.

Can we have copies of the bank statements for accounts listed below for records and reconciliation?

| | |
|---|---|
| Eastern Emerald Group LLC | 5680132477 |
| LaGuardia Performance Center LLC | 5680132777 |
| The Grand Eastern Mirage Group LLC | 5680139777 |
| Fleet general insurance | 3800492892 |
| Eastern Emerald Group LLC | 3800195180 |

Eastern Emerald Group LLC            3800460808
Fleet General Insurance Group        5680134377
LaGuardia Performance Center LLC     4800489799
LaGuardia Performance Center LLC     3800460816
X & Y Development Group, LLC         3800455097

Thanks,

On Tuesday, December 30, 2025 at 11:13:50 AM EST, Suphaporn Lee <suphaporn.lee@ctbcbankusa.com> wrote:

Hello Julia,

All the account balances are $0.

Thank you.

**Suphaporn  Lee**

Branch Operation Manager

41-99 Main Street

Flushing, NY 11355

Tel: 718-886-5600

Direct: 347-532-6461

Fax:718-886-0646

---

**From:** Jj Yu <yujj69@yahoo.com>
**Sent:** Friday, December 26, 2025 3:35 PM
**To:** Suphaporn Lee <suphaporn.lee@ctbcbankusa.com>
**Subject:** [External] Re: Bank statement inquiry

**This Message Is From an Untrusted Sender**

You have not previously corresponded with this sender.

**CAUTION: This email came from outside CTBC BANK USA. Use extra caution when opening attachments, clicking links, or responding to this email. Original sender: yujj69@yahoo.com.**

Hello Sue,

Can you assist in take a look at below request at your earliest convenience?

Thanks,

On Wednesday, December 24, 2025 at 06:53:56 PM EST, Jj Yu <yujj69@yahoo.com> wrote:

Hello Sue,

Can you help provide the bank statement from Jan 2025 for the below bank accounts?

| | | |
|---|---|---|
| Eastern Emerald Group LLC | 5680132477 | |
| LaGuardia Performance Center LLC | 5680132777 | |
| The Grand Eastern Mirage Group LLC | 5680139777 | |
| Fleet general insurance | 3800492892 | |
| Eastern Emerald Group LLC | | 3800195180 |
| Eastern Emerald Group LLC | | 3800460808 |
| Fleet General Insurance Group | | 5680134377 |
| LaGuardia Performance Center LLC | | 4800489799 |
| LaGuardia Performance Center LLC | | 3800460816 |
| X & Y Development Group, LLC | | 3800455097 |

Thanks

California residents, please see our California Consumer Privacy Act ("CCPA") Notice at Collection

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee, you should not disseminate, distribute or copy this email. Please notify the sender immediately by email if you have received this email by mistake and delete this email from your system. If you are not the intended recipient, you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

California residents, please see our California Consumer Privacy Act ("CCPA") Notice at Collection

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error, please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee, you should not disseminate, distribute or copy this email. Please notify the sender immediately by email if you have received this email by mistake and delete this email from your system. If you are not the intended recipient, you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

# Exhibit D

**Bank Transactions 2022/1-2024/12**

| Entity | Bank | Acct | Date | Payee | Amount | Details |
|---|---|---|---|---|---|---|
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/11/26 | Arent Fox LLP | $ 209,192.46 | Monitor fee |
| LaGuardia Performance Center LLC | CTBC | 2777 | 2024/11/26 | Arent Fox LLP | $ 216,461.28 | Monitor fee |
| LaGuardia Performance Center LLC | CTBC | 9799 | 2022/7/6 | Arent Fox LLP | $ 1,040,042.76 | |
| LaGuardia Performance Center LLC | CTBC | 9799 | 2022/10/18 | Arent Fox LLP | $ 387,975.83 | Monitor fee |
| LaGuardia Performance Center LLC | CTBC | 9799 | 2023/9/14 | Arent Fox LLP | $ 905,913.85 | Monitor fee |
| LaGuardia Performance Center LLC | CTBC | 9799 | 2024/11/26 | Arent Fox LLP | $ 85,923.76 | Monitor fee |
| LaGuardia Performance Center LLC | CTBC | 9799 | 2023/8/22 | ATLANTIC COAST RISK SERVICES INC | $ 166,821.51 | INV# 930 & 860 |
| LaGuardia Performance Center LLC | CTBC | 9799 | 2024/6/26 | ATLANTIC COAST RISK SERVICES INC | $ 166,978.19 | |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/5/31 | CALL-A-HEAD CORP | $ 1,003.22 | INV #1734174, 1752539,1762029,1772760,1783362,1802624 |
| Eastern Emerald Group LLC | CTBC | 2477 | 2024/7/12 | CTBC Bank realizing on its collateral | $ 10,659,584.35 | |
| Fleet General Insurance Group | CTBC | 4377 | 2024/7/12 | CTBC Bank realizing on its collateral | $ 4,559,523.53 | |
| Eastern Emerald Group LLC | CTBC | 0808 | 2022/6/22 | Insurance Payment Atlantic Coast Risk Invoice #250 | $ 49,951.04 | |
| Eastern Emerald Group LLC | CTBC | 0808 | 2022/6/22 | Insurance Payment Atlantic Coast Risk Invoice #252 | $ 112,408.80 | |
| LaGuardia Performance Center LLC | CTBC | 9799 | 2022/7/6 | J.S. Held LLC | $ 293,350.00 | Monitor fee |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/2/22 | Kings Security | $ 22,796.34 | |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/4/5 | Kings Security Services Inc | $ 25,038.22 | INV#7013 & INV#7140 & INV#7239 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/5/9 | Kings Security Services Inc | $ 15,977.80 | INV#7332 & 7434 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/5/31 | KINGS SECURITY SERVICES INC | $ 15,977.80 | |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/8/1 | KINGS SECURITY SERVICES INC | $ 24,149.67 | INV#7735 & 7850 & 8037 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/9/8 | KINGS SECURITY SERVICES INC | $ 7,988.90 | INV#8504 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/9/26 | KINGS SECURITY SERVICES INC | $ 16,260.53 | INV#8184 & 8297 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/11/1 | KINGS SECURITY SERVICES INC | $ 16,184.32 | INV#8610 & 8719 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/1/3 | KINGS SECURITY SERVICES INC | $ 24,260.33 | INV#9029 & 9258 & 9378 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/1/26 | KINGS SECURITY SERVICES INC | $ 8,290.69 | INV#9578 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/2/14 | KINGS SECURITY SERVICES INC | $ 8,021.57 | INV#9775 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/3/1 | KINGS SECURITY SERVICES INC | $ 8,021.57 | INV#9878 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/3/21 | KINGS SECURITY SERVICES INC | $ 48,575.10 | INV#8820, 8925, 9132, 9479, 9678, 9972 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/5/21 | KINGS SECURITY SERVICES INC | $ 8,021.57 | INV#10170 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/6/28 | KINGS SECURITY SERVICES INC | $ 48,920.63 | INV# 10068, 10274, 10377, 10584, 10688, 1079 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/8/12 | KINGS SECURITY SERVICES INC | $ 16,543.63 | INV# 10998 & 11092 |
| Eastern Emerald Group LLC | CTBC | 5180 | 2024/10/7 | Kings Security Services Inc | $ 24,238.56 | INV# 11205, #11253, #11402 |
| Eastern Emerald Group LLC | CTBC | 5180 | 2024/12/2 | Kings Security Services Inc | $ 41,087.77 | INV# 10479,10899,11402,11504,11626,11735 |
| Eastern Emerald Group LLC | CTBC | 0808 | 2022/3/11 | Legal Subpeona Request of Payment sent Via Wire | $ 310,229.58 | Monitor fee |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/1/25 | Raven Builders Corp. | $ 12,000.00 | |
| Eastern Emerald Group LLC | CTBC | 0808 | 2024/10/7 | SECURITY FENCE SYSTEMS INC | $ 93,200.96 | 7 INVOICES |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/4/5 | SECURITY FENCE SYSTEMS INC | $ 62,659.75 | INV#30653 & INV#30654 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/9/12 | SECURITY FENCE SYSTEMS INC | $ 54,154.43 | INV#31019 & 31020 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2023/11/1 | SECURITY FENCE SYSTEMS INC | $ 33,160.00 | INV#31164 & 31165 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/1/25 | SECURITY FENCE SYSTEMS INC | $ 54,154.44 | INV#31413 & 31412 & 31263 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/3/1 | SECURITY FENCE SYSTEMS INC | $ 150,901.25 | INV#31286 |
| LaGuardia Performance Center LLC | CTBC | 0816 | 2024/5/21 | SECURITY FENCE SYSTEMS INC | $ 74,199.42 | INV#31681, #31589, #31588 |
| | | | | **Total** | **$ 20,080,145.41** | |

# Exhibit E

| Date Filed | Docket # | Motion Description | Decision |
|---|---|---|---|
| 10/29/2021 | 22 | MOTION to Appoint Expert J.S. Held by Matthew Scott Peeler (attachments: Declaration, Proposed Order). | ORDER: Granted by Judge Pamela K. Chen on 11/03/2021. |
| 12/21/2021 | 32 | MOTION for Release of Funds re First Interim Fee Application of Monitor, M. Scott Peeler for Payment of Arent Fox LLP by Matthew Scott Peeler (attachments: Exhibit A - Certification, Exhibit B - Invoice, Proposed Order). | ORDER: Granted by Judge Pamela K. Chen on 02/24/2022 (after reply and objections). |
| 12/27/2021 | 34 | Amended MOTION for Release of Funds re First Interim Fee Application of Monitor, M. Scott Peeler for Payment of Arent Fox LLP by Matthew Scott Peeler (attachments: Proposed Order). | ORDER: Granted (combined with 32) by Judge Pamela K. Chen on 02/24/2022. |
| 04/08/2022 | 99 | Second MOTION for Temporary Restraining Order (Motion to Expand Asset Freeze as to Julia Yue and Impose Asset Freeze as to Relief Defendants Xi Verfenstein and Xinming Yu) by Securities and Exchange Commission. | Opposed; resolved in part via 05/04/2022 responses and 05/20/2022 sur-reply; full resolution in 05/26/2022 order extending freeze. |
| 04/27/2022 | 109 | MOTION for Stay by Xi Verfenstein, Xinming Yu. | ORDER: Denied without prejudice by Judge Pamela K. Chen on 04/27/2022. |
| 05/18/2022 | 136 | MOTION to Strike and Accept Letter as Sur-Sur-Reply by Securities and Exchange Commission. | ORDER: Granted (strike) and denied (sur-sur-reply) by Judge Pamela K. Chen on 06/30/2022. |
| 10/14/2022 | 188 | MOTION for Release of Funds re Interim Fee Application by Monitor. | ORDER: Granted by Judge Pamela K. Chen on 10/14/2022 |

| Date Filed | Docket # | Motion Description | Decision |
|---|---|---|---|
| 11/25/2022 | 212 | Letter MOTION for Reconsideration of Order entered on 11/25/2022 re Motion for Protective Order (ECF No. 204) by Fleet New York Metropolitan Regional Center LLC, Richard Xia, Julia Yue. | Reconsideration of 204; not separately resolved in docket. |
| 12/15/2022 | 209 | MOTION to Withdraw, Release of Funds, and/or Imposition of Equitable Lien by Xi Verfenstein, Xinming Yu. | ORDER: Motions to release funds from the Asset Freeze and/or to impose an equitable lien are denied by Judge Pamela K. Chen on 12/15/2022. |
| 01/18/2023 | 235 | MOTION to Appoint Receiver/Referee by Securities and Exchange Commission. | Granted in part (intervene) by Judge Pamela K. Chen on 03/04/2024; held in abeyance and terminated as moot on 07/30/2024 after settlement. |
| 01/18/2023 | 238 | MOTION to Intervene by CTBC Bank Corp (USA) (attachments: Memorandum, Declaration, Exhibits, Proposed Order). | ORDER: Granted by Judge Pamela K. Chen on 03/04/2024 (in Memorandum and Order). |
| 02/13/2023 | 251 | First MOTION for Hearing by Xi Verfenstein. | ORDER: Denied by Judge Pamela K. Chen on 02/15/2023 (no relief warranted). |
| 04/03/2023 | 405 | Notice of MOTION to Appoint Receiver/Referee and Modifying Freeze Order by CTBC Bank Corp (USA) (attachments: Exhibits). | ORDER: Granted by Judge Pamela K. Chen on 07/30/2024 (in Memorandum and |

| Date Filed | Docket # | Motion Description | Decision |
|---|---|---|---|
|  |  |  | Order; adopted proposed order). |
| 06/11/2023 | 436 | MOTION for Release of Funds by Matthew Scott Peeler. | ORDER: Granted by Judge Pamela K. Chen on 06/22/2023. |
| 06/30/2023 | 328 | MOTION to Withdraw as Attorney by Kevin P. McGrath (SEC). | ORDER: Granted by Magistrate Judge Ramon E. Reyes, Jr. on 06/30/2023. |
| 06/30/2023 | 329 | ORDER on Monitor's Fourth Motion for Release of Funds (implied motion). | ORDER: Granted by Judge Pamela K. Chen on 06/30/2023. |
| 07/13/2023 | 332 | Second MOTION for Release of Funds for Insurance Coverage by Matthew Scott Peeler. | ORDER: Granted by Judge Pamela K. Chen on 08/30/2023. |
| 08/30/2023 | 336 | MOTION for Release of Funds re Interim Fee Application of Monitor by Monitor. | ORDER: Granted by Judge Pamela K. Chen on 09/06/2023 (unopposed). |
| 05/05/2025 | 585 | MOTION to Amend/Correct/Supplement 460 Order Final Judgment by Fleet New York Metropolitan Regional Center LLC, Richard Xia, Julia Yue. | ORDER: Denied by Judge Pamela K. Chen on 05/07/2025 (no basis for relief). |
| 07/28/2025 | 636 | MOTION for Release of Funds Pursuant to the Court's July 21, 2025 Order by Richard Xia. | ORDER: Denied by Judge Pamela K. Chen on 08/22/2025 (no basis). |
| 09/15/2025 | 665 | Letter MOTION for Reconsideration re 663 Order on Motion for Release of Funds by Richard Xia. | ORDER: Denied by Judge Pamela K. Chen on 09/25/2025 |

# Exhibit F

**BY ECF**                                                                       March 13, 2025
The Honorable Pamela K. Chen
United States District Judge
United States District Court, Eastern District
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Securities Exchange Commission v. Xia, et al.* U.S. Dist. Ct., Dkt. No. 21-
      Civ-5350 (PKC) (JAM)

Dear Judge Chen,

As Your Honor is aware, I am the prospective transferee and potential new owner of Fleet New York Metropolitan Regional Center, LLC ("Fleet"). I write to respectfully submit this letter (1) to request the Court to order the $717,940.40 held by Meyer Suozzi English & Klein P.C. to be transferred to a new account opened by the *Leo Entities*[1] for the regional centers' day- to-day operations and legal defense arising from pre-transfer acts or omissions and (2) to request the Court's reconsideration of its approval of transferring $42.5 million from the Defendants' operating accounts to the Court Registry Investment System (CRIS) for disgorgement purposes.

First, as discussed during the February 12, 2025 conference, as a registered FINRA member, an SEC registered person, and a board member of bank which reports to the Federal Reserve Board, I need to protect myself from any litigation risks related to Fleet's pre-transfer activities. Accordingly, based on the advice of my securities and immigration counsel and with the direction and approval of Mr. Xia, I respectfully request that the Court order the $717,940.40 held by Meyer Suozzi English & Klein P.C. to be transferred to a new account opened by the Leo Entities for the regional centers' day-to-day operations, including investor communications, retaining immigration counsel and legal counsel, and for legal defense, if applicable, arising from pre-transfer acts or omissions. The details of these funds are outlined in an earlier submission by Defendants' counsel, Mr. Hantman (ECF No. 420) and are unrelated to any investor funds.

Second, based on the information available, and the advice of my immigration counsel, a reexamination on the transfer of the $42.5 million from the Defendants' operating account to the CRIS account for disgorgement is warranted. The court is allowing EB-5 investor funds, that must be invested into the project, to be used for purposes other than investment in the project, which directly conflicts with EB-5 regulations and undermines the investors' ability to fulfill the program's requirements to obtain a Green Card. The court has approved an action which may potentially disqualify the investors from obtaining a Green Card. The funds subject to transfer primarily consist of EB-5 investor capital explicitly designated under USCIS regulations for job creation and economic development activities. These investors contributed substantial sums,

---

[1] Specifically, Community Housing Association LLC ("CHA"), a single-member LLC, will acquire Fleet, with RC One SH LLC as its managing member and John Leo as the managing member of RC One SH LLC. For details, please refer to my modifications (to be filed herein) to the SEC's Proposed Order (ECF No. 557-1).

including $8 million through EMMCO, $35.5 million via NQMC, $12.5 million through Tower, $110 million through EEGH, and an additional $63 million from EEGH II, with each amount specifically structured to meet EB-5 program requirements and sustain their immigration eligibility (Exhibit 1 – Expert Report of Paul M. Ribaudo).

EB-5 regulations mandate that an investor must keep their capital invested—i.e., at-risk— through the entirety of the two-year conditional residence period. "An early return of capital or removal of investor's funds to the CRIS account renders investors ineligible to obtain permanent residency, effectively negating the purpose of their initial investment." Indeed, EB-5 regulations explicitly mandate these funds remain actively deployed in job-creating projects until investors secure permanent residency, ensuring strict compliance with USCIS standards. Forcing investors to exit the program at this stage introduces unnecessary complications and substantially jeopardizes their ability to secure permanent residency.

Depleting or reducing the EB-5 funds with administrative costs or non-project related costs also substantially jeopardizes the immigration prospects of the investors, who must have 100% of their funds made available to the entity most closely responsible for job creation. Any use of EB-5 funds for fines, penalties, or costs not related to the actual job creating project reduce the EB-5 investment below the minimum required amount. Further, removing the money from the investment entity or the job creating entity, by itself, may cause immigration issues.

This position is also supported in the EB-5 investors' communications previously submitted to the Court, expressing concerns regarding jeopardized immigration benefits due to the diversion of their funds. For instance, the investors represented by Michael O'Reilly explicitly stated that the Asset Freeze, closely related to the CRIS transfer, is actively "preventing the Limited Partners from obtaining relief and recouping their investments," thereby harming the investors it purports to protect (ECF No. 86). Similarly, Steven W. Fogg, representing more than eighty investors, also noted that "any disposition of the Emerald project exclusively focused on liquidating the project and 'cashing out' investors for a pro rata share—no matter what percentage is returned—will not further the investors' primary goal in investing in the Emerald project," notably the acquisition of permanent resident status (ECF No. 78).

Disgorgement shall serve a compensatory purpose and cannot merely aim to "depriv[e] a wrongdoer of ill-gotten gains," but instead must be used "for the benefit of investors." *Liu v. SEC*, 140 S. Ct. 1936, 1948–49 (2020). The Supreme Court's recognition that disgorgement must benefit those harmed, rather than simply operate as a penalty, underscores the impropriety of redirecting EB-5 funds toward civil penalties or unrelated financial obligations. Diverting these funds from their intended purpose of job creation not only contravenes EB-5 regulations but also exposes investors to significant financial and immigration-related harm, creating precisely the type of unjust outcome that the *Liu* Court sought to prevent.

Therefore, I respectfully request that the Court approve my modifications to the proposed order, grant the transfer of funds to the entities for Fleet's operational uses and potential legal

2

liabilities, and reconsider the decision by wielding its discretion to ensure any disgorgement is "for the benefit of investors" as required by equitable principles. *Liu*, at 1949. Specifically, I ask the Court to order the return of the $42.5 million from the CRIS account to the account (or a newly created account) of the NCE to be deployed to the EB-5 designated projects to restore USCIS compliance and protect investor immigration eligibility; restrict the SEC from allocating EB-5 investor funds toward civil penalties, interest, or unrelated distributions; and schedule an emergency hearing to address and mitigate the irreparable harm currently facing investors due to these unintended consequences.

I appreciate the Court's continued attention to this matter.

Respectfully submitted,

/s/ John C. Leo
John C. Leo

 Gmail

---

## Re: SEC v. Xia

---

**Richard Xia FFG** <richard.y.xia@fleetfinancialgroup.com>                    Thu, Feb 24, 2022 at 5:19
To: Hervé Gouraige <hgouraige@sillscummis.com>
Cc: Linxuan Yan <lyan@sillscummis.com>
Bcc: taher@kameli.com, richard.y.xia@fleetfinancialgroup.com, sburke@kameli.com

No I am not going to consent to this. I can not allow the EB-5 fund to be commingled like they pay tax last time.

As we have done in so many times before, we have sufficient personal properties ( on my sworn accounting) and very valuable Mirage project that we can cash out to pay for all of these and complete construction, which is truly best interest for investors and almost sacrificing my own interest while we were doing these refinancing as before .

As all cash out loan need to pay interest and closing cost so there is no point to cash more than necessary every time. It has already been five month since asset freeze started and of course there won't be fund here for Mirage now. That is why real estate financing is not snap shot type arrangement and it needs to be planned over time dynamically. We show that we can cash out an amount need for project just in time if there is no asset freeze in place.

 Plus many violations were still in the process of hearing and appeal. Bret used to be able to dismiss many of them during the hearing and appeal.

Please file motion asap to have my non EB5 related properties released so I can use my own property to refinance cash out to maintain and complete mirage project like I have been doing for decade.

Richard

On Wed, Feb 23, 2022 at 20:30 Hervé Gouraige <hgouraige@sillscummis.com> wrote:

> On Feb 23, 2022, at 20:30, Hervé Gouraige <hgouraige@sillscummis.com> wrote:
>
>
>
> Please review and send us any comment. Please indicate which account should be used to make the payments. In addition, let us know
>
> which of the two options listed in the email you would prefer to use.
>
> ---
>
> **From:** Coppola, Alexandra <Alexandra.Coppola@arentfox.com>
> **Sent:** Wednesday, February 23, 2022 7:52 PM
> **To:** Hervé Gouraige <hgouraige@sillscummis.com>
> **Cc:** Linxuan Yan <lyan@sillscummis.com>; Peeler, M. Scott <Scott.Peeler@arentfox.com>
> **Subject:** SEC v. Xia
>
>
>
> # *** External Email ***

---

Hervé –

I hope all is well. Scott asked that I share the attached document, the Monitor's draft Motion for Approval of Release of Funds for Payment of Construction Related Violations, with you on his behalf. As you will see, this motion deals with the ECB judgments that we believe are eligible for a discount under the FAIRER Program, which ends March 20, 2022. The combined total for both projects is $153,335.60, after a $96,817.55 combined discount. We ask that Mr. Xia make these payments by wire transfer or check and that he please let us know if he has a preferred bank account that we use.

At your earliest convenience, please let us know if we have your consent to file this motion.

Separately, the remaining $349,282.19 does not appear to be eligible for the FARIER Program. Scott would like to present you with two possible options as to how these penalties may be resolved:

1. You and Mr. Xia can begin to negotiate with the City to make a one-time, lump sum payment to reduce and resolve the outstanding construction related penalties on the projects. Of course, any agreement would be subject to the Monitor's review and approval.

2. Mr. Xia, with your help, can apply to pay the remaining balance through the Department of Finance's OATH ECB hardship payment plan. This payment plan allows for the down payment of 5% of the total amount owed and provides for 48 months to pay the remainder of the debt. The application can be found here: oath-ecb-payment-plan-enrollment-form_more_than_25k.pdf (nyc.gov).

After you have time to discuss the options with Mr. Xia, please let us know which option you have chosen before you or Mr. Xia takes any action.

Please let us know if you have any questions or would like to discuss.

Best,

Allie

**Alexandra Coppola**

ASSOCIATE | ARENT FOX LLP

(SHE/HER/HERS)

---

alexandra.coppola@arentfox.com | 212.457.5546 **DIRECT**

Bio | LinkedIn | Subscribe

1301 Avenue of the Americas, 42nd Floor, New York, NY 10019

**Smarter Service.** On March 1, we will become ArentFox Schiff. Learn More

---

CONFIDENTIALITY NOTICE: This e-mail and any attachments are for the exclusive and confidential use of the intended recipient. If you received this in error, please do not read, distribute, or take action in reliance upon this message. Instead, please notify us immediately by return e-mail and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

NOTICE: The contents of this email and any attachments to it contain confidential and/or legally privileged information from the law firm of Sills Cummis & Gross P.C. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the contained information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this email in error, please notify us by email immediately.

**Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Sills Cummis & Gross P.C. for any loss or damage arising in any way from its use.

This email message has been scanned for viruses by Mimecast.

**2 attachments**

 **image001.png**
2K

**25332168_3.pdf**
89K

# Exhibit G

| | Index # | Caption | Default Amount |
|---|---|---|---|
| 1 | 502931/2017 | MUSHKUDIANI, KOBA vs. RACANELLI CONSTRUCTION GROUP | $36,295,055.00 |
| 2 | 502311/2011 | V & P ALTITUDE CORP. vs. RACANELLI CONSTRUCTION GROUP, | $494,548.50 |
| 3 | 654299/2022 | RUBENSTEIN PUBLIC RELATIONS, INC. vs. FLEET FINANCIAL GF | $90,000.00 |
| 4 | 659594/2024 | KELLEY DRYE & WARREN LLP vs. XIA, RICHARD et al | $1,165,591.13 |
| 5 | 700208/2019 | GUARTAN, FREDDY vs. X & Y DEVELOPMENT GROUP ETAL | $1,509,911.71 |
| | | Total | $39,555,106.34 |

Case 1:21-cv-05350-PKC-CHK Document 718 Filed 01/21/26 Page 111 of 157 PageID #: 30974

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. LYLE E. FRANK** | PART 11M |
| *Justice* | |

-----------------------------------------------------------------------------X

RUBENSTEIN PUBLIC RELATIONS, INC.

                           Plaintiff,

                    - v -

FLEET FINANCIAL GROUP, INC.,

                           Defendant.

-----------------------------------------------------------------------------X

| |
|---|
| INDEX NO.     654299/2022 |
| MOTION DATE     10/29/2024 |
| MOTION SEQ. NO.     002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 28, 29, 30

were read on this motion to/for      VACATE - DECISION/ORDER/JUDGMENT/AWARD.

     This order to show cause will not be signed, as, since no interim relief is sought, the relief

should be sought by notice of motion.

20241030134234LFRANKC281B7BC072B4C288F070D9AC326DEDD

| | |
|---|---|
| **10/30/2024** | |
| **DATE** | **LYLE E. FRANK, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | | GRANTED IN PART | X OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**654299/2022 RUBENSTEIN PUBLIC RELATIONS, INC. vs. FLEET FINANCIAL GROUP, INC.**     Page 1 of 1
**Motion No. 002**

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 112 of 157 PageID #: 30975

SUPREME COURT OF STATE OF NEW YORK
COUNTY OF KINGS

V & P ALTITUDE CORP,

                  Plaintiff,

      -against-

RACANELLI CONSTRUCTION GROUP, INC.,
and X & Y DEVELOPMENT GROUP, LLC,

                  Defendants.

**Index No. 502311/2021**

**JUDGMENT**

**WHEREAS** this Matter, having come before the Court on V & P Altitude Corp. ("Plaintiff") Notice of Motion for Summary Judgment pursuant to CPLR 3212, filed under Motion Sequence No. 005, dated April 21, 2025, against Defendants RACANELLI CONSTRUCTION GROUP, INC. and X & Y DEVELOPMENT GROUP, LLC (collectively "Defendants"), filed on April 21, 2025 ("Mot. Seq. No. 005"); and

**WHEREAS**, the Court, by the Honorable Heela D. Capell, J.S.C., having considered Plaintiff' pleadings in support of motion (Dkt. Nos 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86 and 87); and

**WHEREAS,** Defendants failed to raise any material issue of fact;

**WHEREAS,** the Court having granted Plaintiff's motion for the reasons stated in the Decision and Order on Motion, dated July 1, 2025 [Dkt. No. 96];

**IT IS HEREBY ADJUDGED** that Plaintiff V & P Altitude Corp., having an address at 3708 Fort Hamilton Parkway, Brooklyn, NY 11218, does recover on Plaintiff's First Cause of

(1) Action for the breach of contract, a summary judgment, against Defendant, RACANELLI CONSTRUCTION GROUP, INC., having and address at 155 Sandalwood Ave, Hamilton, NJ 08619, in the amount of **$275,980.00**, representing upaid balance owed, plus pre-judgment

1

Case 1:21-cv-05350-PKC-CHK Document 718 Filed 01/21/26 Page 113 of 157 PageID #: 30976

interest at nine percent (9%) calculated by the Judgment Clerk of the Court, from October 10, 2016, to the date of a Judgment being entered as against Defendants, in the amount of **$218,316.00**, together with costs and disbursements in the amount of $ **$252.50** , as taxed by the Clerk, thus making the total amount of $**$494,548.50** ; and that Plaintiff shall have execution therefore.

**IT IS HEREBY ADJUDGED** that Plaintiff V & P Altitude Corp., having an address at 3708 Fort Hamilton Parkway, Brooklyn, NY 11218, does recover on Plaintiff's Second Cause of Action for unjust enrichment, a summary judgment, against Defendant, X & Y DEVELOPMENT GROUP, LLC, having and address at 42-23 through 42-31 Union Street, **(2)** Flushing, NY 11355, in the amount of **$275,980.00** in damages, plus pre-judgment interest at nine percent (9%) calculated by the Judgment Clerk of the Court, from October 10, 2016, to the date of a Judgment being entered as against Defendants, in the amount of $**$218,316.00**, together with costs and disbursements in the amount of $ **$252.50** , as taxed by the Clerk, thus making the total amount of $ **$494,548.50** ; and that Plaintiff shall have execution therefore.

Dated: Brooklyn, New York

_____, 202__

_Nancy T. Sunshine_
_____
CLERK

Judgment entered the _____ day of _____ 202__

2

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 114 of 157 PageID #: 30977

SUPREME COURT OF STATE OF NEW YORK
COUNTY OF KINGS

V & P ALTITUDE CORP,

                              Plaintiff,

          -against-

RACANELLI CONSTRUCTION GROUP, INC., and X & Y DEVELOPMENT GROUP, LLC,

                              Defendants.

**Index No. 502311/2021**

**BILL OF COSTS**

PLEASE TAKE NOTICE that the within is a true copy of the items of costs and disbursements in the above-captioned action, and that the same shall be the amount taxed by the Court, and the amount inserted in the proposed Judgment.

Disbursement for filing fee: …………………………….$210.00

RJI:……………………………………………………$95.00

Costs before Notice of Issue (CPLR § 8201(1)):………… $200.00

                              **Total:**        $505.00

3

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 115 of 157 PageID #: 30978

## ATTORNEY'S AFFIRMATION

OLEG A. MESTECHKIN, an attorney duly admitted to practice law before the Courts of the State of New York, pursuant to CPLR § 2106 and under penalty of perjury, affirms as follows:

1.      I am the principal of Mestechkin Law Group, P.C., counsel for Plaintiff, V & P Altitude Corp. ("Plaintiff"). This Bill of Costs in the total sum of $505.00 is true to my knowledge and belief.

2.      I affirm that the above disbursements were necessarily incurred in this action and are reasonable (CPLR § 8401) items of costs in the above-captioned action on behalf of Plaintiff against Defendants.

Dated:    Brooklyn, New York
        July 18, 2025

Respectfully submitted,
*/s/ Oleg A. Mestechkin*
Oleg A. Mestechkin, Esq.
Wing K. Chiu, Esq.
**MESTECHKIN LAW GROUP P.C.**
2218 Ocean Avenue Brooklyn, NY 11229
Tel. (212) 256-1113
Fax. (646) 365-2069
om@lawmlg.com
wkc@lawmlg.com
tb@lawmlg.com

*Attorneys for Plaintiff AKF Inc. d/b/a Fundkite*

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

V & P ALTITUDE CORP,

                    Plaintiff,

        -against-

RACANELLI CONSTRUCTION GROUP, INC.,
and X & Y DEVELOPMENT GROUP, LLC,

                    Defendants.

**Index No. 502311/2021**

---

## JUDGMENT

---

**MESTECHKIN LAW GROUP P.C.**
*Attorneys for Plaintiff*
V & P Altitude Corp.
2218 Ocean Avenue
Brooklyn, NY 11229
Tel.  (212) 256-1113
Fax. (646) 365-2069

---

                                        Service copy of the within is hereby admitted

Attorney(s) for                         Dated: _____

---

5

Short Form Order

## NEW YORK SUPREME COURT - QUEENS COUNTY

Present: Honorable **LUMARIE MALDONADO CRUZ**          IA PART 32
                                   Justice

---------------------------------------------------------------X

FREDDY GUARTAN,                              Index No.: 700208/2019

                    Plaintiff,               Inquest Date: October 16, 2025

        -against-                     **DECISION AND ORDER**
                                           **AFTER INQUEST**

X & Y DEVELOPMENT GROUP, LLC, FLEET
EINANCIAL GROUP, INC., PERINI GROUP, INC.,
RACANELLI CONSTRUCTION GROUP, INC.,

                    Defendants.
---------------------------------------------------------------X

       On January 4, 2019, Plaintiff Freddy Guartan (hereinafter "Freddy") commenced this action against Defendants X&Y Development Group Inc., Perini Group Inc., Racanelli Construction Group Inc., (hereinafter "Defendants"). Plaintiff alleges that Defendants were negligent in their duty to provide a safe working environment, leading to an accident that has left Plaintiff with both past and future damages. Plaintiff now seeks relief in the form of a judgment compelling Defendant to pay $10,000,000 to Plaintiff to reimburse him for damages including medical costs, interest, reasonable attorney fees, and such other amounts as the Court deems just and proper.

       On September 26, 2025, the parties appeared for an inquest.[1] Freddy's counsel called Freddy as his sole witness. He testified that he was an employee at a construction site owned and operated by Defendants. Freddy began to explain the details of the accident and the resulting hospital visit, but Defense counsel objected to the entry of medical documents into the record due to a communication dispute and an error between the two attorneys. The inquest was thus halted and eventually rescheduled to October 16, 2025.

     On October 16, 2025, the inquest was held. Freddy continued his testimony where they had previously adjourned. Freddy testified that on October 4, 2019, Plaintiff was at work at the Defendant's construction site, where he was involved in a workplace accident during the dismantling of an elevator, which caused a steel cable to strike his right shoulder and left knee, as

---

[1] After Defendants failed to appear at a pretrial conference on July 31, 2024, the Honorable Joseph Risi ordered that Defendants answer be stricken and set this action down for inquest on April 8, 2025. EF 116.

1

Case 1:21-cv-05350-PKC-CHK Document 718 Filed 01/21/26 Page 118 of 157 PageID #: 30981

well as causing him to lose consciousness, fall backwards, and began bleeding profusely from his right shoulder.

Freddy then testified about the various medical procedures and complications he suffered from following this accident, up until the present day. Freddy had surgery on his both of his shoulders and both of his knees.[2] Freddy described that at times, it was nearly impossible for him to use crutches because of the nature of his multiple injuries. Doctors advised Freddy that he would not be able to return to his former job as a construction worker. This combined with the severe pain Freddy is experiencing has made it difficult for him to seek new employment.

Freddy explained that although he has found gainful and appropriate employment via a door painting job through a friend's business, it is not a sustainable career for him. He also stated that he has suffered fear, anxiety, and extreme emotional damage due to the accident and it has impeded on his "dreams," such as starting a family. For these reasons, Plaintiff is seeking further relief in the form of $5,000,000 in past damages and $5,000,000 in future damages.

However, it is clear from Freddy's testimony that although this accident has been devastating on Freddy's health, well-being, and ability to fully seek gainful employment, it is not so severe as to completely erode Freddy's future prospects to enhance his education, employment and personal life.

Based upon the evidence submitted and the testimony given at the Inquest, this Court finds that Plaintiff is not entitled to the complete sought relief.

Documents provided to the court show that Freddy has been given $291,630.00 in workers' compensation benefits and $190,344.91 in medical benefits already. This amounts to a sum of $481,974.91 already paid for past damages relating to the accident, for which there is a medical lien.[3]

Accordingly, it is hereby:

ORDERED that Plaintiff is awarded one million and five hundred thousand and zero cents ($1,500,000.00), which includes the $481,974.91 that will satisfy the medical lien and any applicable legal interest, within twenty (30) days of this order, and it is further

ORDERED that Plaintiff shall serve a copy of this Order with Notice of Entry upon Defendant within thirty (30) days from the date of entry.

This constitutes the Decision and Order of this Court.

Dated: December 12, 2025.

_____
HON. LUMARIE MALDONADO CRUZ, J.S.C.

---

[2] *See* EF 139-142.
[3] EF 148.

FILED
BOH 12/15/2025
COUNTY CLERK
QUEENS COUNTY

2

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 119 of 157 PageID
#: 30982

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

KELLEY DRYE & WARREN LLP,

                Plaintiff,

    - against -

RICHARD XIA, a/k/a YI XIA; THE GRAND
EASTERN MIRAGE GROUP, LLC f/k/a
EASTERN EMERALD GROUP LLC;
FLEET GENERAL INSURANCE, INC.;
FLEET FINANCIAL GROUP, INC.; PERINI
GROUP, INC.; RACANELLI
CONSTRUCTION GROUP, INC.;
SHANGRI-LA GREEN INC.,

                Defendants.

**JUDGMENT**

Index No. 659594/2024

Upon reading and filing the notice of motion for entry of a default judgment, the affidavit

of facts in support of motion for entry of default judgment, and the exhibits annexed thereto,

filed by plaintiff Kelley Drye & Warren LLP on February 14, 2025;

And said motion having come on and to be heard before Hon. Paul A. Goetz, a justice of

this Court in Part 47 thereof, and after due default, by Decision and Order dated May 12, 2025,

the Court granted Plaintiff's motion for a default judgment in favor of Plaintiff and against

Defendants Richard Xia a/k/a Yi Xia, the Grand Eastern Mirage Group, LLC f/k/a Eastern

Emerald Group LLC, Fleet Financial Group, Inc., Perini Group, Inc., Racanelli Construction

Group, Inc., and Shangri-La Green Inc., jointly and severally, in the amount of $580,054.92, plus

prejudgment contractual interest at the rate of 1% per month for late payments, and in favor of

Plaintiff and against Defendants Richard Xia a/k/a Yi Xia and Fleet General Insurance, Inc.,

jointly and severally, in the amount of $166,599.11, plus prejudgment contractual interest at the

rate of 1% per month for late payments;

Case 1:21-cv-05350-PKC-CHK     Document 718     Filed 01/21/26     Page 120 of 157 PageID
#: 30983

Now, on Motion of Kelley Drye & Warren LLP, it is

ADJUDGED, that plaintiff Kelley Drye & Warren LLP, with an address at 3 World Trade Center, 175 Greenwich Street, New York, NY 10007, has judgment against and does recover from Defendants Richard Xia a/k/a Yi Xia, an individual with an address of 144 Kings Point Road, Great Neck, New York 11024, the Grand Eastern Mirage Group, LLC f/k/a Eastern Emerald Group LLC, having an address of 11251 Northern Blvd., Corona, New York 11368, Fleet Financial Group, Inc., having and address of 136-20 38th Avenue, Ste. 10F, Flushing, New York 11354, Perini Group, Inc., having an address of 400 5th Avenue, 49F, New York, New York 10018, Racanelli Construction Group, Inc., having an address of 155 Sandalwood Avenue, Hamilton, New Jersey 08619, and Shangri-La Green Inc., having an address of 280 74th Street, Brooklyn, New York 11209, jointly and severally, the sum of $580,054.92, plus prejudgment contractual interest through February 10, 2025 at the rate of 1% per month for late payments in the amount of $328,625.82 (NYSCEF Doc. No. 13), for a sum of $908,680.74.; and X

ADJUDGED, that plaintiff Kelley Drye & Warren LLP, with an address at 3 World Trade Center, 175 Greenwich Street, New York, NY 10007, has judgment against and does recover from Defendants Richard Xia a/k/a Yi Xia, an individual with an address of 144 Kings Point Road, Great Neck, New York 11024, and Fleet General Insurance, Inc., having an address of One Mill Street, Chace Mill, Suite 324, Burlington, Vermont 05401, jointly and severally, the sum of $166,599.11, plus prejudgment contractual interest through February 10, 2025 at the rate of 1% per month for late payments in the amount of $90,311.28 (NYSCEF Doc. No. 16), for a sum of X $256,910.39.; and

ADJUDGED, that plaintiff Kelley Drye & Warren LLP with an address at 3 World Trade Center, 175 Greenwich Street, New York, NY 10007, be awarded costs and disbursements

2

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 121 of 157 PageID #: 30984

against Richard Xia a/k/a Yi Xia, an individual with an address of 144 Kings Point Road, Great Neck, New York 11024, the Grand Eastern Mirage Group, LLC f/k/a Eastern Emerald Group LLC, having an address of 11251 Northern Blvd., Corona, New York 11368, Fleet Financial Group, Inc., having and address of 136-20 38th Avenue, Ste. 10F, Flushing, New York 11354, Perini Group, Inc., having an address of 400 5th Avenue, 49F, New York, New York 10018, Racanelli Construction Group, Inc., having an address of 155 Sandalwood Avenue, Hamilton, New Jersey 08619,  Shangri-La Green Inc., having an address of 280 74th Street, Brooklyn, New York 11209, and Fleet General Insurance, Inc., having an address of One Mill Street, Chace Mill, Suite 324, Burlington, Vermont 05401, jointly and severally, as taxed by the Clerk totaling

X $__695_____ , and that Kelley Drye & Warren LLP has execution thereof.

JUDGMENT entered this __29th__ day of __July__ , 20_25_.

_____

**HON. PAUL A. GOETZ**
J.S.C.

Clerk

**FILED**
Jul 31 2025
NEW YORK
COUNTY CLERK'S OFFICE

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 122 of 157 PageID #: 30985

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

KELLEY DRYE & WARREN LLP,

                    Plaintiff,

        - against -

RICHARD XIA, a/k/a YI XIA; THE GRAND
EASTERN MIRAGE GROUP, LLC f/k/a
EASTERN EMERALD GROUP LLC;
FLEET GENERAL INSURANCE, INC.;
FLEET FINANCIAL GROUP, INC.; PERINI
GROUP, INC.; RACANELLI
CONSTRUCTION GROUP, INC.;
SHANGRI-LA GREEN INC.,

                  Defendants.

**JUDGMENT**

Index No. 659594/2024

```
   1-8
FILED AND
DOCKETED
Jul 31 2025
AT     06:12 P     M
N.Y. CO. CLK'S OFFICE
```

24 659594

KELLEY DRYE & WARREN LLP
Michael C. Lynch
Nicholas J. Panarella

3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 123 of 157 PageID #: 30986

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
------------------------------------------------------------------X
KOBA MUSHKUDIANI,

                              Plaintiff,

        -against-

RACANELLI CONSTRUCTION GROUP INC., X&Y
DEVELOPMENT GROUP, LLC, CONSTRUCTION
AND REALTY SERVICES GROUP, INC., WESTIN
HOTEL MANAGEMENT, L.P. d/b/a WESTIN
ELEMENT HOTEL, FLUSHING MEDICAL
SERVICES, PLLC d/b/a NORTH QUEENS MEDICAL
CENTER, FLEET FINANCIAL GROUP INC., and
JIQING DEVELOPMENT INC.,

                              Defendants.
------------------------------------------------------------------X

**JUDGMENT**

Index No.: 502931/2017

       This action having been duly come on for trial before Special Referee Miriam Sunshine on May 14, 2025 and June 23, 2025, as ordered by Supreme Court Justice Pamela Fisher;

       **AND**, Plaintiff, having appeared by his attorney, Andrew Wanger, Esq., of Wingate Russotti Shapiro Moses & Halperin, LLP, 420 Lexington Avenue, Suite 2700, New York, New York 10170, on May 14 and June 23, 2025, and the Defendants RACANELLI CONSTRUCTION GROUP, INC., X & Y DEVELOPMENT GROUP, LLC, FLEET FINANCIAL GROUP, INC., and JIQING DEVELOPMENT, INC. having appeared by their attorney Mark A. Weissman, Esq. of Offit Kurman, PA, 590 Madison Avenue, 6th Floor, New York, NY 10022 on May 14, 2025 only;

       **AND**, the issues having been duly tried, and the Court, after due deliberation, having returned a judgment in favor of Plaintiff in the amount of TEN MILLION DOLLARS ($10,000,000) for past pain and suffering and FIFTEEN MILLION DOLLARS ($15,000,000) for future pain and suffering (attached);

       **AND**, the causes of action against Defendants WESTIN HOTEL MANAGEMENT, LP D/B/A WESTIN ELEMENTAL HOTEL and CONSTRUCTION AND REALTY SERVICES GROUP, INC. having been discontinued;

       **AND** Defendant FLUSHING MEDICAL SERVICES, PLLC D/B/A NORTH QUEENS MEDICAL CENTER having never appeared, and;

1

Case 1:21-cv-05350-PKC-CHK     Document 718     Filed 01/21/26     Page 124 of 157 PageID #: 30987

**NOW**, upon the motion of Andrew Wanger, Esq., WINGATE RUSSOTTI SHAPIRO MOSES & HALPERIN, LLP, it is

**HEREBY ADJUDGED**, that Plaintiff, Koba Mushkudiani, residing at 321 Brightwater Court,  Apt B8, Brooklyn, NY 11235, shall recover from Defendants RACANELLI CONSTRUCTION GROUP, INC., 140-22 Beech Avenue, No. 9D, Flushing, New York 11355 and 155 Sandalwood Ave, Hamilton, New Jersey, 08619, X & Y DEVELOPMENT GROUP, LLC, 42-31 Union Street, Flushing, New York, 11355 (Block 5181, Lots 11, 14, and 15), FLEET FINANCIAL GROUP, INC., 136-20 38th Avenue, Suite 10F, Flushing, New York 11354 and JIQING DEVELOPMENT, INC., 57-35 Lawrence Street, Flushing, New York, 11355 (Block 6359, Lot 1) and 136-20 38th Avenue, Suite 10F, Flushing, New York 11354, the lump sum of TWENTY FIVE MILLION DOLLARS ($25,000,000), together with interest pursuant to CPLR Article 50 accrued from June 23, 2020, the date the court awarded Plaintiff summary judgment, to the present at a rate of 9% in the sum of $__11,293,750.00__; together with costs and disbursements in the amount of $__1305.00__, for a total judgment of $__36,295,055.00__; and Plaintiff shall have execution therefor.

**E N T E R**

*Nancy T. Sunshine*

Clerk of the Court

2

Case 1:21-cv-05350-PKC-CHK Document 718 Filed 01/21/26 Page 125 of 157 PageID #: 30988

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS: CIVIL PART 82
- - - - - - - - - - - - - - - - - - - - - - - -X
                                               :
KOBA MUSHKUDIANI,                              :
                                               :
                    Plaintiff,                 :
                                               :        INDEX NUMBER:
        - against -                            :        502931/2017
                                               :
RACANELLI CONSTRUCTION GROUP INC., X &         :
Y DEVELOPMENT GROUP,LLC, FLEET NATIONAL        :        TRIAL
GROUP, INC., AND JIQING DEVELOPMENT            :
INC.,                                          :
                                               :
                    Defendants.                :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - -X

                                    Supreme Court
                                    360 Adams Street
                                    Brooklyn, New York 11201
                                    June 23, 2025
B E F O R E :

                    HONORABLE MIRIAM SUNSHINE,
                    Justice of the Supreme Court


A P P E A R A N C E S :



        WINGATE, RUSSOTTI, SHAPIRO & HALPERIN, LLP
         Attorney for the Plaintiff
        420 Lexington Avenue
        Suite 2750
        BY:  ANDREW WANGER, ESQ.










                                    FAYE PHILLIPS-MCLEAN
                                    SENIOR COURT REPORTER


                        FPM

INDEX NO. 502931/2017

RECEIVED NYSCEF: 06/30/2025

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 126 of 157 PageID #: 30989

THE COURT:  So, it is $40 million dollars; is what you are asking for?

MR. WANGER:  Yes.

THE COURT:  After hearing out before me based upon the credible evidence induced at trial, the Court finds judgment in favor of Plaintiff against the Defendants Racanelli Construction Group, Inc., X & Y Development Group, LLC, Fleet Financial Group, Inc., and JiQing Development, Inc the sum of $25 million dollars of which $10 million dollars is for past pain and suffering and $15 million dollars for future pain and suffering.  Enter judgment forthwith.

MR. WANGER:  Thank you, Your Honor.

THE COURT:  Okay.  Thank you, everyone.  Have a good day.

*     *     *     *

Certified to be a true and accurate transcript of the stenographic minutes taken within.

_____

Faye Phillips-McLean
Senior Court Reporter

FPM

Case 1:21-cv-05350-PKC-CHK Document 718 Filed 01/21/26 Page 127 of 157 PageID #: 30990

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF Kings
-------------------------------------------------------------------X
KOBA MUSHKUDIANI,

                         Plaintiff,

        -against-

RACANELLI CONSTRUCTION GROUP INC., X&Y
DEVELOPMENT GROUP, LLC, CONSTRUCTION
AND REALTY SERVICES GROUP, INC., WESTIN
HOTEL MANAGEMENT, L.P. d/b/a WESTIN
ELEMENT HOTEL, FLUSHING MEDICAL
SERVICES, PLLC d/b/a NORTH QUEENS MEDICAL
CENTER, FLEET FINANCIAL GROUP INC., and
JIQING DEVELOPMENT INC.,

                         Defendants.
-------------------------------------------------------------------X

**ATTORNEY'S AFFIRMATION**

Index No.: 502931/2017

Andrew Wanger, Esq, an attorney admitted to practice before the Courts of this State affirms the truth of the following under the penalty of perjury and pursuant to CPLR Rule 2106 the following:

1.     I am an associate at Wingate, Russotti, Shapiro, Moses & Halperin, LLP, attorneys of record for the Plaintiff.

2.     I make this Affirmation in support of the Bill of Costs, that the foregoing disbursements have been or will necessarily be made or incurred in this action and are reasonable in the amount.

Dated: New York, New York
       June 27, 2025

                                     Yours, etc.,

                                     *Andrew Wanger*
                                     Andrew Wanger, Esq.

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 128 of 157 PageID #: 30991

SUPREME COURT **Court**

**County of Kings**

KOBA MUSHKUDIANI

*Plaintiff(s)*

-against-

RACANELLI CONSTRUCTION GROUP INC., et al

*Defendant(s)*

**Index No.**

502931/2017

**Costs of:**

Plaintiff

| COSTS | |
|---|---|
| Costs Before Note of Issue CPLR § 8201 subd. 1 | $ 200 |
| Costs After Note of Issue CPLR § 8201 subd. 2 | $ 200 |
| Trial of Issue CPLR § 8201 subd. 3 | $ 300 |
| Allowance by Statute CPLR § 8302 (a), (b) | $ |
| Additional Allowance CPLR § 8302 (d) | $ |
| Motion Costs CPLR § 8202 | $ |
| Appeal to Appellate Term CPLR § 8203 (b) | $ |
| Appeals to Appellate Division CPLR § 8203 (a) | $ |
| Appeals to Court of Appeals CPLR § 8204 | $ |
| Costs upon Frivolous Claims And Counterclaims CPLR § 8303-a | $ |

Costs $ 700

| DISBURSEMENTS | |
|---|---|
| Fee for Index Number CPLR § 8018 (a) | $ 210 |
| Referee's Fees CPLR § 8301 (a)(1), 8003(a) | $ |
| Commissioner's Compensation CPLR § 8301 (a)(2) | $ |
| Clerk's fee, Filing Notice of Pend. Or Attch. CPLR § 8021 (a)(10) | $ |
| Entering and Docketing Judgment CPLR § 8301 (a)(7), 8016(a)(2) | $ |
| Paid for Searches CPLR § 8301 (a)(10) | $ |
| Affidavits & Acknowledgments CPLR § 8009 | $ |
| Serving Copy Summons & Complaint CPLR § 8011(h)(1), 8301 (d) | $ 220 |
| Request for Judicial Intervention | $ 95 |
| Note of Issue CPLR § 8020(a) | $ 30 |
| Paid Referee's Report CPLR § 8301 (a)(12) | $ |
| Transcripts and Filing CPLR § 8021 | $ |
| Certified Copies of Papers § 8301(a)(4) | $ |
| Satisfaction Piece CPLR § 5020(a), 8021 | $ |
| Certified Copy of Judgment CPLR § 8021 | $ |
| Postage CPLR § 8301(a)(12) | $ |
| Jury Fee CPLR § 8020 (c) | $ |
| Stenographers' Fees CPLR § 8002, 8301 | $ |
| Sheriff's Fees on Execution CPLR § 8011, 8012 | $ 50 |
| Sheriff's Fees, Attachment, Arrest, etc. CPLR § 8011 | $ |
| Paid Printing Cases CPLR § 8301(a)(6) | $ |
| Clerk's Fees, Court of Appeals § 8301(a)(12) | $ |
| Paid Copies of Papers CPLR § 8016 (a)(4) | $ |
| Motion Expenses CPLR § 8301(b) | $ |
| Fees for Publication CPLR § 8301 (a)(3) | $ |
| Serving Subpoena CPLR § 8011(h), 8301 (d) | $ |
| Paid for Search CPLR § 8301(a)(10) | $ |
| Referee's Report | $ |
| Attendance of Witnesses CPLR § 8001(a)(b)(c), 8301 (a)(1) | $ |
| | $ |

$ 605

Disbursements $ 605

Total $1,305

# Exhibit H

Jan 26, 2023

ORDER: The Court is in receipt of the 231 Request. In essence, State-court litigants ("Movants")---who have been suing Defendants since 2019, and now seek to move for default judgment---ask the Court to interpret Part IV of the 217 Preliminary Injunction issued in this case ("Preliminary Injunction"), stating:[W]hile Parts I and II of this ORDER remain in force, no person or entity, including the Defendants, the Relief Defendants, or any creditor or claimant against the Defendants or any of the Relief Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this ORDER; provided, however, that any party or non-party may seek leave from this ORDER upon a proper showing, and that any appeal to or from the Second Circuit regarding this ORDER would be permissible. The Court declines to do so. Movants' case is before the New York Supreme Court, which this Court views as the proper authority to resolve Movants' motion. "Under [our] system of dual sovereignty," federal courts "have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." Nevada v. Hicks, 533 U.S. 353, 366 (2001) (citation omitted); Tafflin v. Levitt, 493 U.S. 455, 459 (1990) ("We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights [and obligations] created by federal law." (citation omitted)). The mere fact that a question involving the law of the United States (of which this Court's 217 Preliminary Injunction is part) has been raised in Movants' state court case does not confer standing on them to bring their motion in this Court, nor does it confer jurisdiction on this Court to decide it. It is axiomatic that "injury in fact, [is] the first and foremost of standing's three elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016). Injury-in-fact requires "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. (citation omitted). At present, Movants have neither moved for, nor obtained, a judgment that they are seeking to execute against the assets frozen pursuant to the 217 Preliminary Injunction. And there is no guarantee that that will ever occur. Indeed, "[t]o date, the Court has not allowed counsel to appear solely for the... purpose of obtaining an advisory opinion from the Court about the [the scope of the 217 Asset Freeze], and the Court does not intend to do so now that the 217 Preliminary Injunction freezing the assets at issue has been ordered." (See 1/3/2023 Docket Entry.) However, although this Court is without the ability to conclusively resolve the issue for purposes of Movants' state court case, the Court doubts that the 217 Preliminary Injunction bars Movants from obtaining judgments--as opposed to Movants seeking to execute those judgments against assets frozen in this case. Thus, Movants' 231 Request is denied. Defendants are directed to mail a copy of this Order to Relief Defendants Xi Verfenstein and Xingming Yu and post proof of mailing on the docket on or before 02/02/2023. Ordered by Judge Pamela K. Chen on 1/26/2023. (YB)

Case 1:21-cv-05350-PKC-CHK     Document 718     Filed 01/21/26     Page 131 of 157 PageID #: 30994

Jan 26, 2023

ORDER: The Court is in receipt of the 231 Request. In essence, State-court litigants ("Movants")---who have been suing Defendants since 2019, and now seek to move for default judgment---ask the Court to interpret Part IV of the 217 Preliminary Injunction issued in this case ("Preliminary Injunction"), stating:[W]hile Parts I and II of this ORDER remain in force, no person or entity, including the Defendants, the Relief Defendants, or any creditor or claimant against the Defendants or any of the Relief Defendants, or any person acting on behalf of such creditor or claimant, shall take any action to interfere with the asset freeze, including, but not limited to, the filing of any lawsuits, liens, or encumbrances, or bankruptcy cases to impact the property and assets subject to this ORDER; provided, however, that any party or non-party may seek leave from this ORDER upon a proper showing, and that any appeal to or from the Second Circuit regarding this ORDER would be permissible. The Court declines to do so. Movants' case is before the New York Supreme Court, which this Court views as the proper authority to resolve Movants' motion. "Under [our] system of dual sovereignty," federal courts "have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States." Nevada v. Hicks, 533 U.S. 353, 366 (2001) (citation omitted); Tafflin v. Levitt, 493 U.S. 455, 459 (1990) ("We start with the premise that nothing in the concept of our federal system prevents state courts from enforcing rights [and obligations] created by federal law." (citation omitted)). The mere fact that a question involving the law of the United States (of which this Court's 217 Preliminary Injunction is part) has been raised in Movants' state court case does not confer standing on them to bring their motion in this Court, nor does it confer jurisdiction on this Court to decide it. It is axiomatic that "injury in fact, [is] the first and foremost of standing's three elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016). Injury-in-fact requires "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. (citation omitted). At present, Movants have neither moved for, nor obtained, a judgment that they are seeking to execute against the assets frozen pursuant to the 217 Preliminary Injunction. And there is no guarantee that that will ever occur. Indeed, "[t]o date, the Court has not allowed counsel to appear solely for the... purpose of obtaining an advisory opinion from the Court about the [the scope of the 217 Asset Freeze], and the Court does not intend to do so now that the 217 Preliminary Injunction freezing the assets at issue has been ordered." (See 1/3/2023 Docket Entry.) However, although this Court is without the ability to conclusively resolve the issue for purposes of Movants' state court case, the Court doubts that the 217 Preliminary Injunction bars Movants from obtaining judgments--as opposed to Movants seeking to execute those judgments against assets frozen in this case. Thus, Movants' 231 Request is denied. Defendants are directed to mail a copy of this Order to Relief Defendants Xi Verfenstein and Xingming Yu and post proof of mailing on the docket on or before 02/02/2023. Ordered by Judge Pamela K. Chen on 1/26/2023. (YB)

# Exhibit I



## Fw: EEGH, L.P. and EEGH II, L.P. / SEC vs. Xia et al - 21-cv-5350 (SDNY)

**Qitao Wu** <qitaow@hantmanlaw.com>                                          Fri, Jan 2 at 15:41
To: Richard Xia <richard.xia@fleetfinancialgroup.com>, "legal@fleetfinancialgroup.com" <legal@fleetfinancialgroup.com>, Sandy <sandy@globallawgroup.net>, Helyn Lau <helyn.lau@globallawgroup.net>
Cc: Robert J. Hantman, Esq. <rhantman@hantmanlaw.com>, Banjo Xiao <banjo@fleetfinancialgroup.com>

All,

Below please find the email from the attorney allegedly representing 49 EB-5 investors who are limited partners in EEGH, L.P. and EEGH II, L.P.

Please heed their request and provide them with an update on the said issues accordingly.

Best,
Qitao

**Qitao Wu**
Hantman & Associates
1120 6th Ave, New York, NY, 10036
Office: 212-684-3933
Mobile: 484-343-3660
http://hantmanlaw.com/
*Offices in NY/NJ/FL*

*This message contains privileged or confidential information and is intended for the named addressee only. If you are not the named addressee then you should not copy or distribute this email. It may contain copyright material or information that is confidential, privileged or exempt from disclosure by law. Any claim to privilege is not waived or lost by reason of mistaken transmission of this information. If you have received this email in error, please notify the sender immediately and delete it from your system. Unauthorized use of the contents of this email is prohibited.*

**From:** Carolyn Lee <carolyn@carolynleepllc.com>
**Sent:** Friday, January 2, 2026 1:39 PM
**To:** Robert J. Hantman, Esq. <rhantman@hantmanlaw.com>; contact@globallawgroup.net
**Cc:** jmac wei <jmacwei@outlook.com>; Joel Hankin <joel@carolynleepllc.com>; Lindsay Schoonmaker <lindsay@carolynleepllc.com>; Alison Copenhaver <alison@carolynleepllc.com>; Tianqi Jiao <tianqi@carolynleepllc.com>
**Subject:** Re: EEGH, L.P. and EEGH II, L.P. / SEC vs. Xia et al - 21-cv-5350 (SDNY)
**Importance:** High

Dear Mr. Hantman and Attorneys at Global Law Group,

I write to once again follow up on our e-mail correspondence below.

To allow our clients to make an informed claims election by the **February 15, 2026 Bar Date**, we respectfully request immediate responses to our questions initially posed on June 10, 2025.

Specifically, *inter alia*, we seek preliminarily:

1. all current I-829 project templates for each NCE

2. information concerning the I-829 filing windows for all investors in each NCE, including dates where I-829s have been filed

3. information concerning any USCIS adjudication relevant to an NCE's investor I-829 filing:
   1. example, whether USCIS has issued any request for evidence (RFE) or other notice on any pending I-829 for any NCE
   2. example, whether USCIS has approved any I-829 filed with any investor of either NCE

4. re: the Regional Center, whether it has:
   1. filed a Form I-956 seeking designation under the EB-5 Reform and Integrity Act of 2022
   2. filed a Form I-956 requesting change in ownership or control
   3. filed annual Form I-956Gs since 2022
   4. paid all due integrity fees since 2022
   5. USCIS has issued **any notice of any kind** to the Regional Center or any NCE.

For purposes of uploading the I-829 project template for each NCE, please use the folder link here.

**Please acknowledge receipt of this e-mail.**

If you have any questions, please contact me or my colleagues cc'd on this e-mail.

Yours truly,

Carolyn Lee
Attorney for Certain EEGH, L.P. and EEGH II, L.P. Investors

*Please cc the CLP Team Member assigned to your matter in all e-mails to me. This will ensure timely response.*

**Carolyn Lee, Esq. l Principal**
*Direct* **+1-607-271-5969  l** *Cell* **+1-607-592-3070 l** carolyn@carolynleepllc.com
www.carolynleepllc.com

This e-mail is sent by a law firm and may contain privileged or confidential information intended only for the use of the individual or individuals named above. If you are not the intended recipient, please immediately delete the e-mail and any attachment and reply to the sender.

---

**From:** Carolyn Lee <carolyn@carolynleepllc.com>
**Sent:** Wednesday, June 18, 2025 12:35 AM
**To:** rhantman@hantmanlaw.com <rhantman@hantmanlaw.com>; contact@globallawgroup.net <contact@globallawgroup.net>
**Cc:** Lindsay Schoonmaker <lindsay@carolynleepllc.com>; Alison Copenhaver <alison@carolynleepllc.com>; Tianqi Jiao <tianqi@carolynleepllc.com>; Qianqian Li <qianqian@carolynleepllc.com>; Ellie Brewster <Ellie@carolynleepllc.com>; jmac wei <jmacwei@outlook.com>
**Subject:** Re: EEGH, L.P. and EEGH II, L.P. / SEC vs. Xia et al - 21-cv-5350 (SDNY)

Dear Mr. Hantman and  Attorneys at Global Law Group,

I am writing to follow-up to the e-mail I sent last Tuesday. Please see below.

Based on the Final Judgment of the United States District Court regarding SEC vs. Xia, Fleet, et al, 21-cv-05350-PKC-JAM rendered July 26, 2024 ("Final Judgment"), that your clients, the Defendants in that action, are ordered to "provide reasonable cooperation to the EB-5 investors related to any such investor's efforts to obtain benefits under the EB-5 program including, but not limited to, providing information and documentation necessary for the EB-5 investor to apply for and obtain such benefits." Final Judgment, Sec. X.

Not only are these documents and facts essential for my clients' Form I-829 petitions, but they are also also necessary for my clients to make a timely and informed decision in response to the the Distribution Administrator by the August 15, 2025 Bar Date regarding their EB-5 Investor Claim.

Accordingly, please kindly provide the requested documentation and information by **next Tuesday, June 24, 2025**.

Please use the folder link here for document upload. If you have any questions, technical or otherwise, please contact me.

Thank you.


Yours truly,


Carolyn Lee
Attorney for Certain EEGH, L.P. and EEGH II, L.P. Investors


*Please cc the CLP Team Member assigned to your matter in all e-mails to me. This will ensure timely response.*


**Carolyn Lee, Esq. l Principal**

***Direct*** **+1-607-271-5969  l** *Cell*  **+1-607-592-3070 l** **carolyn@carolynleepllc.com**

**www.carolynleepllc.com**


This e-mail is sent by a law firm and may contain privileged or confidential information intended only for the use of the individual or individuals named above. If you are not the intended recipient, please immediately delete the e-mail and any attachment and reply to the sender.

---

**From:** Carolyn Lee <carolyn@carolynleepllc.com>
**Sent:** Tuesday, June 10, 2025 3:06 PM
**To:** rhantman@hantmanlaw.com <rhantman@hantmanlaw.com>; contact@globallawgrou.net <contact@globallawgrou.net>
**Cc:** Lindsay Schoonmaker <lindsay@carolynleepllc.com>; Alison Copenhaver <alison@carolynleepllc.com>; Tianqi Jiao <tianqi@carolynleepllc.com>; Qianqian Li <qianqian@carolynleepllc.com>; Ellie Brewster <Ellie@carolynleepllc.com>; jmac wei <jmacwei@outlook.com>
**Subject:** Re: EEGH, L.P. and EEGH II, L.P. / SEC vs. Xia et al - 21-cv-5350 (SDNY)

 **Re: EEGH, L.P. and EEGH II, L.P. / SEC vs. Xia et al - 21-cv-5350 (SDNY)**

Dear Mr. Hantman and Attorneys at Global Law Group,

My name is Carolyn Lee and I am a principal attorney with Carolyn Lee PLLC.

We represent 49 EB-5 investors who are limited partners in EEGH, L.P. and EEGH II, L.P. Copied on this e-mail is Mr. Jiacheng (Aaron) WEI who is an investor and one of the group's representatives.

We understand that you are counsel to the Fleet New York Metropolitan Regional Center, LLC (the "Regional Center"), EEGH, L.P., EEGH II, L.P. (each, "NCE" and collectively, "NCEs") and/or Mr. Richard Xia.

We write to firstly, introduce ourselves and secondly, to request certain documents and information on behalf of our clients.

Specifically, *inter alia*, we seek preliminarily:

1.  all current I-829 project templates for each NCE

2.  information concerning the I-829 filing windows for all investors in each NCE, including dates where I-829s have been filed

3.  information concerning any USCIS adjudication relevant to an NCE's investor I-829 filing:

    1.  example, whether USCIS has issued any request for evidence (RFE) or other notice on any pending I-829 for any NCE
    2.  example, whether USCIS has approved any I-829 filed with any investor of either NCE

4.  re: the Regional Center, whether it has:

    1.  filed a Form I-956 seeking designation under the EB-5 Reform and Integrity Act of 2022
    2.  filed a Form I-956 requesting change in ownership or control
    3.  filed annual Form I-956Gs since 2022
    4.  paid all due integrity fees since 2022
    5.  USCIS has issued **any notice of any kind** to the Regional Center or any NCE.

For purposes of uploading the I-829 project template for each NCE, please use the [folder link here](#).

We expect we will certainly have follow-up questions. I thank you in advance for your communication.

Please reach out if you have any questions for us.

Yours truly,

Carolyn Lee
Attorney for Certain EEGH, L.P. and EEGH II, L.P. Investors

**Carolyn Lee** | **Principal**

*Direct*: +1-607-279-5969  |  *Mobile:*  +1-607-592-3070  |  *Email:* carolyn@carolynleepllc.com

P.O. Box 8, Ithaca, New York 14851, USA  |  www.carolynleepllc.com

This email is sent by a law firm and may contain privileged or confidential information intended only for the use of the individual(s) named above. If you are not the intended recipient, please delete the email immediately, as well as any attachment(s) and reply to the sender.

# Exhibit J

**AFFIDAVIT OF RICHARD XIA IN SUPPORT OF REBUTTAL TO INVESTOR CHEN LI'S COMPLAINT AND EMERGENCY MOTION FOR RELIEF FROM JUDGMENT, RECONSIDERATION OF SETTLEMENT ORDERS, UNFREEZING OF ASSETS, AND REFUND OF COMMINGLED EB-5 INVESTOR FUNDS**

**STATE OF NEW YORK**
**COUNTY OF QUEENS**

I, Richard Xia, also known as Yi Xia, being duly sworn, depose and state as follows:

1. I am the Defendant in the above-captioned action, SEC v. Xia, et al., No. 21-cv-05350-PKC-JAM (E.D.N.Y.), appearing pro se. I am over the age of 18, a resident of Queens, New York, and fully competent to testify to the matters set forth herein based on my personal knowledge, review of relevant documents (including case docket entries, transcripts, correspondence, court filings from PACER, USCIS regulations, industry fee standards, and attached exhibits), and my direct involvement as the principal of Fleet New York Metropolitan Regional Center, LLC ("Fleet"), formerly known as Federal New York Metropolitan Regional Center, LLC.

2. This affidavit is submitted pursuant to 28 U.S.C. § 1746 under penalty of perjury and in support of my rebuttal and emergency motion dated January 19, 2026, which seeks: (a) denial of unconditional relief to Investor Chen Li's Complaint dated December 18, 2025 (filed as ECF No. 714 on January 13, 2026); (b) relief from judgment under Fed. R. Civ. P. 60(b) based on mistake, newly discovered evidence, fraud, misconduct, or other reasons justifying relief; (c) reconsideration of prior settlement orders under Fed. R. Civ. P. 59(e); (d) unfreezing of all frozen assets; and (e) release and refund of commingled EB-5 investor funds held in the Court Registry Investment System ("CRIS") account and/or controlled by CTBC Bank. This motion addresses systemic violations and inequities in the case, including SEC overreach in enforcement, judicial partiality favoring the SEC, the misallocation of over $700 million in frozen assets, which has jeopardized the immigration status of over 450 EB-5 investors, while specifically rebutting Chen Li's attempt to evade a reasonable processing fee through his unregistered immigration broker, Wayne (Yawei) Sun.

### Specific Rebuttal to Investor Chen Li's Complaint

3. Chen Li's Complaint materially misrepresents the record by omitting the exclusive role of his unregistered immigration broker, Wayne (Yawei) Sun, in all communications regarding his request for Form I-829 documentation. Sun, who is not a licensed attorney or accredited representative under 8 C.F.R. § 292.2, has acted as Chen Li's sole intermediary since at least October 2025, as evidenced by WeChat messages and emails (attached as Exhibit H). Pursuant to USCIS regulations, only licensed attorneys or accredited representatives may represent individuals in immigration matters, including EB-5 petitions; unregistered agents like Sun are prohibited from providing such advocacy (8 C.F.R. § 292.2(d)). Sun's unregistered status invalidates his involvement and potentially taints Chen Li's underlying investment and claims, as courts and the SEC have enforced against unregistered brokers in EB-5 contexts, leading to denials of relief or enforcement actions (see, e.g., SEC v. Feng, No. 2:15-cv-09420 (C.D. Cal. 2015), where unregistered brokerage in EB-5 investments resulted in sanctions; SEC v. Ireeco

LLC, Admin. Proc. No. 3-16696 (2016), ordering disgorgement for unregistered EB-5 brokerage).

4. Sun has a documented history of dishonest and litigious conduct against Fleet, including two prior unsuccessful lawsuits dismissed for lack of merit, both involving fabricated claims for additional broker commissions (dismissed in 2018 and 2020 for insufficient evidence and failure to state a claim). This pattern of coercion is evident in Sun's December 30, 2025, threatening messages to local Chinese counsel, demanding immediate document release without compensation or face "escalated litigation" (Exhibit H). Sun's tactics are designed to circumvent the standard fee structure, contrasting with investors who have complied with the process and received timely assistance.

5. Chen Li demands gratuitous provision of I-829 support materials—including evidence of capital sustainment, job creation, project milestones, and responses to USCIS Requests for Evidence—without paying the standard USD 5,000 processing fee, which has been uniformly applied to all investors. This fee is reasonable, necessary, and significantly below market rates for similar services. Industry standards show that immigration firms typically charge $10,000 or more for I-829 petition preparation (often ranging from $10,000 to $15,000 or higher, up to $30,000 in complex cases), excluding USCIS filing fees (currently $9,525 for Form I-829 as of January 2026, including biometrics). The $5,000 fee covers costs for compiling, verifying, authenticating, and customizing documents amid the constraints of a five-year asset freeze, and is separate from USCIS fees. Granting relief without the fee would constitute unjust enrichment under New York law (see Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511 (2012)), unfairly prejudice the project and other investors, and violate EB-5 "at-risk" capital requirements (8 C.F.R. §204.6(j)), as investors must bear the burden of proving sustainment and job creation, including associated costs (8 C.F.R. §204.6(m)(7)).

6. Chen Li's omission of Sun's role and history distorts the facts and may amount to an abuse of process. Similar complaints, such as that from investor Yongxiang Pan (ECF No. 616, dated June 30, 2025, attached as Exhibit C), arose from failures to pay the processing fee or use proper channels, leading to delays. Pan's letter details efforts to obtain documents (including K-1 forms, economic analysis, and job-creation evidence) but omits any mention of tendering the required fee; in fact, Pan's communications through the Monitor and counsel did not include payment, resulting in non-provision of customized documents. Compliant investors who have paid the fee have received approved I-829 packages without issue. The Court should condition any relief on Chen Li's direct payment of the USD 5,000 fee (bypassing Sun) and coordination for prompt processing. Failure to comply justifies denial of his request, as courts reject inequitable claims (see SEC v. Jay Peak, No. 1:16-cv-21301 (S.D. Fla. 2016), where relief was denied or conditioned in cases involving non-cooperative investors or improper channels).

**Broader Systemic Issues Necessitating Emergency Relief: SEC Overreach and Judicial Partiality**

7. Chen Li's demand for free I-829 documentation—facilitated through an unregistered broker's coercive tactics—directly exemplifies and stems from the broader systemic unfairness in this case, including commingling and misuse of EB-5 funds by the SEC, Monitor (M. Scott Peeler of

ArentFox Schiff LLP), and Distribution Administrator (Robert Seiden of Seiden Law Group). For instance, correspondence from Xintong Zhang at Seiden Law (dated January 7, 2026, attached as Exhibit B) rejects Fleet's wire instructions for downstream entities (Eastern Emerald Group LLC and LaGuardia Performance Center LLC), insisting distributions go to original New Commercial Enterprises ("NCEs") like EEGH L.P. and EEGH II, L.P. This directive, made after consulting the SEC, not only demonstrates inexperience but also risks invalidating investors' EB-5 eligibility by disrupting the traceable chain of at-risk capital, in violation of 8 U.S.C. § 1153(b)(5) and 8 C.F.R. § 204.6. Such mishandling mirrors Chen Li's situation, where the asset freeze and administrative overreach have strained Fleet's resources, necessitating reasonable fees to sustain operations and provide individualized support, while investors like Chen Li exploit these constraints through non-compliant demands, further perpetuating the cycle of unfairness that harms all stakeholders.

8. The SEC's forced settlement (ECF Nos. 459-460, July 26, 2024), entered without effective legal representation due to the asset freeze, requires $272,140,380 in payments to CRIS ($228,500,000 disgorgement, plus interest and penalties) and imposes sweeping injunctions barring EB-5 involvement, without admissions of liability. This contradicts USCIS approvals of all EB-5 applications to date based on project compliance. Over $700 million in assets have been depleted, with no releases for project defense, leading to irreparable harm: stalled projects, defaults, and jeopardized green cards for nearly 500 investor families. Chen Li's case is a direct outgrowth of this overreach, as the prolonged freeze has limited Fleet's ability to subsidize free services, forcing equitable fees that non-compliant investors like Chen Li (via Sun) attempt to evade, thereby highlighting how SEC actions have created an environment where individual investor disputes amplify the collective injustice, endangering the EB-5 program's integrity and investor immigration paths.

9. The case history reveals a cumulative pattern of conduct creating an objective appearance of judicial partiality favoring the SEC, supporting relief under Fed. R. Civ. P. 60(b) and 59(e), and warranting recusal under 28 U.S.C. § 455(a) for appearance of partiality. This partiality exacerbates issues like Chen Li's, where the Court's deference to the SEC's positions has indirectly encouraged investor circumvention of standard processes:

  - 2021-2022: The case was reassigned without explanation, followed by an ex parte TRO and asset freeze (ECF No. 6). A preliminary injunction froze over $700 million without fraud findings (ECF Nos. 216-217), setting the stage for resource constraints that make fee-based services necessary, as seen in Chen Li's demand.

  - 2023: Continued Monitor fee approvals despite inefficiencies; denials of asset releases stalled projects and harmed investors, prioritizing SEC positions over equitable relief, which has left Fleet unable to absorb costs for non-paying investors like Chen Li.

  - 2024: Expedited interventions for third parties (e.g., CTBC Bank, ECF No. 238); emergency releases for fees but prohibitions on using excess balances for settlement payments (ECF Nos. 459-460, 477), demonstrating selective enforcement that perpetuates the imbalances Chen Li exploits.

  - 2025: Denials of extensions (ECF No. 588, May 7, 2025); sua sponte amendments to distribution plans (ECF No. 520, August 26, 2025); delayed recognition of Distribution Administrator issues (October 10, 2025), ignoring repeated investor harm warnings, thereby fostering an environment where disputes like Chen Li's arise from unaddressed systemic flaws.

This pattern—ex parte orders, selective scrutiny of my motions, preferential treatment for the SEC, and indifference to investor harm—evidences partiality under 28 U.S.C. §455(a), where recusal is required if impartiality might reasonably be questioned (Liteky v. United States, 510 U.S. 540 (1994)). This overreach and partiality infringe due process and warrant relief, including unfreezing assets and refunds (see SEC v. Zhong, No. 15-cv-05344 (N.D. Cal. 2015); SEC v. Jay Peak (Quiros), No. 1:16-cv-21301 (S.D. Fla. 2016), where courts balanced enforcement with investor protections), as they directly contribute to individual injustices like Chen Li's fee evasion, which undermines the equitable treatment of all EB-5 investors.

10. Newly discovered evidence, such as account depletions, unfiled Monitor reports, and Distribution Administrator violations, justifies emergency intervention to prevent further harm.

11. The facts stated herein are true and correct to the best of my knowledge and belief. I understand that any false statement may subject me to penalties for perjury under 28 U.S.C. § 1746.

Executed on January 20, 2026, at Queens, New York.

/s/ Richard Xia
Richard Xia
Pro Se Defendant
Fleet New York Metropolitan Regional Center, LLC
Email: richard.xia@fleetfinancialgroup.com
Phone: (718) 288-5797

# Exhibit K

Case 1:21-cv-05350-PKC-CHK Document 718 Filed 01/21/26 Page 145 of 157 PageID #: 31008

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART IAS MOTION 3EFM

------------------------------------------------------------------------------X

HENAN CHENGXIN OVERSEAS AFFAIRS SERVICES
CO., LTD.,

|  |  |
|---|---|
| **INDEX NO.** | 652391/2019 |

                                          Plaintiff,

|  |  |
|---|---|
| **MOTION DATE** | 02/23/2021, 03/24/2021 |

                                 - v -

|  |  |
|---|---|
| **MOTION SEQ. NO.** | 004 005 |

EEGH, L.P., JOHN DOES 1-10, JANE DOES #1-10,
COMPANY ABC #1-10

**DECISION + ORDER ON MOTION**

                                          Defendants.

------------------------------------------------------------------------------X

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 004) 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 94, 95

were read on this motion to                          DISMISS                          .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93

were read on this motion for                   LEAVE TO AMEND                   .

Upon the foregoing documents, and for the reasons stated on the record following oral

argument on July 8, 2021, it is

**ORDERED** that Defendant's motion to dismiss the second amended complaint (motion

sequence no. 004) is **GRANTED**, the **second amended complaint is dismissed**, and the Clerk

of the Court is directed to enter judgment accordingly; it is further

**ORDERED** that Plaintiff's motion for leave to amend the second amended complaint

(motion sequence no. 005) is **DENIED**, without prejudice to Plaintiff instituting a new action

against entities other than Defendant EEGH, L.P. (absent newly discovered evidence giving rise

to a viable claim); and it is further

**652391/2019   HENAN CHENGXIN OVERSEAS vs. EEGH, L.P.**
 **Motion No.  004 005**

**Page 1 of 2**

Case 1:21-cv-05350-PKC-CHK Document 718 Filed 01/21/26 Page 146 of 157 PageID #: 31009

**ORDERED** that the parties upload a transcript of the July 8 transcript to NYSCEF upon receipt.

This constitutes the Decision and Order of the Court.

20210708163222MCOHENCF1A0EB7C684753B72C47903C2445A3

7/8/2021
**DATE**

**JOEL M. COHEN, J.S.C.**

| CHECK ONE: | | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | | GRANTED | | DENIED | GRANTED IN PART | X | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**652391/2019 HENAN CHENGXIN OVERSEAS vs. EEGH, L.P.** Page 2 of 2
**Motion No. 004 005**

2 of 2

Case 1:21-cv-05350-PKC-CHK Document 718 Filed 01/21/26 Page 147 of 157 PageID #: 31010

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART IAS MOTION 3EFM

-------------------------------------------------------------------------------------X

HENAN CHENGXIN OVERSEAS AFFAIRS SERVICES
CO., LTD.,

Plaintiff,

- v -

EEGH, L.P., JOHN DOES 1-10, JANE DOES #1-10,
COMPANY ABC #1-10

Defendants.

-------------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 652391/2019 |
| **MOTION DATE** | 02/23/2021, 03/24/2021 |
| **MOTION SEQ. NO.** | 004 005 |

**DECISION + ORDER ON MOTION**

HON. JOEL M. COHEN:

The following e-filed documents, listed by NYSCEF document number (Motion 004) 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 94, 95

were read on this motion to                              DISMISS                              .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93

were read on this motion for                    LEAVE TO AMEND                    .

Upon the foregoing documents, and for the reasons stated on the record following oral

argument on July 8, 2021, it is

**ORDERED** that Defendant's motion to dismiss the second amended complaint (motion

sequence no. 004) is **GRANTED**, the **second amended complaint is dismissed**, and the Clerk

of the Court is directed to enter judgment accordingly; it is further

**ORDERED** that Plaintiff's motion for leave to amend the second amended complaint

(motion sequence no. 005) is **DENIED**, without prejudice to Plaintiff instituting a new action

against entities other than Defendant EEGH, L.P. (absent newly discovered evidence giving rise

to a viable claim); and it is further

**652391/2019   HENAN CHENGXIN OVERSEAS vs. EEGH, L.P.**
  **Motion No.  004 005**                                                                   **Page 1 of 2**

1 of 2

Case 1:21-cv-05350-PKC-CHK    Document 718    Filed 01/21/26    Page 148 of 157 PageID #: 31011

**ORDERED** that the parties upload a transcript of the July 8 transcript to NYSCEF upon receipt.

This constitutes the Decision and Order of the Court.

20210708163222JMCOHENCF1A0DEB7C684753B72C47903C2445A3

__7/8/2021__                                                _____
**DATE**                                                    **JOEL M. COHEN, J.S.C.**

| CHECK ONE: | | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | | GRANTED | | DENIED | GRANTED IN PART | X | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**652391/2019   HENAN CHENGXIN OVERSEAS vs. EEGH, L.P.**                    **Page 2 of 2**
**Motion No.  004 005**

# Exhibit L

SILLS CUMMIS & GROSS
A PROFESSIONAL CORPORATION

The Honorable Pamela K. Chen
February 2, 2022
Page 2

Due to the limited time available before the February 14 hearing, we take this opportunity to raise with the Court an issue regarding the SEC's objections served on February 1 to defendants' interrogatories about the false Sunil Aggarwal Declaration submitted by the SEC to the Court for the TRO. In brief, the interrogatories inquire about what the SEC knew and when did it know it regarding the false statements in the Aggarwal Declaration. (Ex. 4 at 3.) The SEC has declined to answer our interrogatories based on ambiguity, relevance, and privilege grounds. (*Id*. at 3–4.) A copy of the SEC Response to Xia's First Interrogatories is attached.

We are at a loss to understand the SEC's objections. Whether a Declaration submitted, *ex parte*, to this Court in this case by the SEC is false is a highly relevant issue. When did the SEC learn the Declaration was false is even more relevant. There is no ambiguity in our simple questions. Mr. Aggarwal testified extensively at his deposition precisely which statements in his Declaration were incorrect and inaccurate. He explained why the statements were incorrect, and what led him to believe at the time he signed the Declaration they were correct. He also testified about how he learned from his documents the statements were not correct. Lastly, he stated that he had produced his documents to the SEC. The SEC was represented at Mr. Aggarwal's deposition when he testified about these issues. Defendants are entitled to answers to their simple questions in adequate time before the February 14 hearing.

**Depositions of Xia and Yue**

We filed our notice of appearance in this case on November 15, 2021. (Dkt. No. 24.) To our knowledge, scheduled depositions of Xia and Yue were postponed four times due to various reasons—from the need for us to get acquainted with the case, to discussions about alternatives to the asset freeze, and to defendants' medical conditions, including exposure to Covid-19.

On November 1, 2021, knowing that we represented defendants, and after Mukasey Frenchman's motion to withdraw was granted by Magistrate Judge Pollak, and that "no other lawyers have filed an appearance" on defendants' behalf, the SEC directly asked defendants to agree to a deposition date of November 4 for Yue and November 5 for Xia. (Ex. 5 at 1.) At that time, we were still "trying to figure out how attorneys will be paid for their services given the asset freeze." (*Id*.) Unable to resolve the attorney retention issues and familiarize ourselves with this case within such a short notice, we suggested adjourning the "depositions [then] scheduled for [that] week until after Nov. 15." (*Id*.) On November 5, 2021, we had a phone call with the SEC to discuss scheduling of the depositions. (Ex. 6.) Due to the SEC's position "that rental income from properties wholly unrelated to the EB-5 projects . . . is subject to the asset freeze[,] . . . defendants have not been able to assure counsel of payment of their fees [or] . . . pay counsel for employees . . . whose expedited depositions the SEC seeks." (Ex. 7 at 3.) Nevertheless, on November 8, 2021, the SEC insisted that, "[w]hether or not [we] file an appearance in this case," defendants should "commit to a date for their depositions," *i.e.*, "Nov. 22 for Ms. Yue and Nov. 23 for Mr. Xia." (*Id*. at 4.)

In December, we engaged in negotiations with the SEC and the Monitor on a "replacement security for the current asset freeze." (Ex. 8 at 1.) The replacement security was a third-party financing proposal designed to "pay off the investors who wish to be paid at this time." (Ex. 9 at 2.) If approved, this proposal could have spared the parties from the expedited discovery and the Court from holding a preliminary injunction hearing. To focus on the negotiations, on December 5, 2021, the parties agreed to a "tentative[] schedule" for Yue's deposition on December 17, 2021 and Xia's deposition on December 20, 2021. (Ex. 8 at 1.) As the negotiations continued, on December 15, 2021, we suggested "schedul[ing] the depositions for early to mid-January." (Ex. 9 at 2.) We believed that "this reasonable extension, during the holiday season, will permit us to resolve important matters that will free us to focus on the merits of the

Zhigang Li, Jing Liu, Luoxin Liu, Xinyu Liu, Yi Liu, Dongmei Lv, Fang Ma, Qingyu Meng, Shujin Mu, Wei Ni, Lili Qian, Qing Qin, Yi Qin, Haosong Rao, Changmei Song, Ciuyun Song, Chen Sun, Baoping Wang, Chunguang Wang, Feifan Wang, Hanbo Wang, Haoran Wang, Hongzhong Wang, Tan Wang, Weiqin Wang, Xinrui Wang, Ying Wang, Zhiyun Wang, Jiacheng Wei, Xiaoan Wei, Guocai Wu, Liqin Wu, Xiaolin Wu, Jing Xu, Kai Xu, Bowen Ya, Bin Yan, Jiping Yang, Shuo Yang, Yang Yang, Yincong Yang, Bohao Yu, Haibo Yu, Xian Yu, Yue Yu, Zhiqing Yu, Bo Zhang, Bohan Zhang, Chunxia Zhang, Debing Zhang, Fuzhe Zhang, Hongying Zhang, Xiaomei Zhang, Yunrong Zhang, Ruohan Zhao, Yao Zheng, Peiwen Zhou, Yi Zhou, Yusi Zhou, Zheng Zhou (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C) (Fogg, Steven) (Entered: 02/10/2022)

| | | |
|---|---|---|
| 02/10/2022 | 79 | NOTICE of Appearance by Taher Kameli on behalf of All Defendants (aty to be noticed) (Kameli, Taher) (Entered: 02/10/2022) |
| 02/10/2022 | 80 | Letter *advising Court of Amended Complaint to be filed late next week* by Securities and Exchange Commission (Stoelting, David) (Entered: 02/10/2022) |
| 02/11/2022 | 81 | REPLY in Opposition re 70 Reply in Support filed by Securities and Exchange Commission. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (McGrath, Kevin) (Entered: 02/11/2022) |
| 02/11/2022 | 82 | REPLY in Opposition re 81 Reply in Opposition filed by Fleet New York Metropolitan Regional Center LLC, Richard Xia, Julia Yue. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7) (Gouraige, Herve) (Entered: 02/11/2022) |
| 02/11/2022 | 83 | REPLY in Support re 77 Response in Opposition to Motion, *of SEC to exclude testimony of SEC examiners from February 14, 2022 Show-Cause hearing* filed by Securities and Exchange Commission. (Stoelting, David) (Entered: 02/11/2022) |
| 02/11/2022 | 84 | ORDER: For the reasons stated in the attached Memorandum and Order, Defendants' 50 motion *in limine* is denied and the SEC's 75 motion *in limine* is granted. Ordered by Judge Pamela K. Chen on 2/11/2022. (Mahkamova, Shirin) (Entered: 02/11/2022) |
| 02/11/2022 | | ORDER: The Court denies Defendants' 51 motion *in limine* to exclude the 5 Sunil K. Aggarwal Declaration, dated September 13, 2021, from the evidence to be presented at the Show Cause hearing on February 14, 2022. Having reviewed and given due consideration to the parties' submissions, and significantly to Mr. Aggarwal's January 21, 2022 deposition, the Court finds that Mr. Aggarwal's declaration and deposition testimony are clearly in conflict. However, "the mere fact that testimony is inconsistent is insufficient to justify striking an entire document." *Trinidad v. Pret a Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 553 (S.D.N.Y. 2013) (citation omitted). "To the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility." *Palazzo v. Corio*, 232 F.3d 38, 44 (2d Cir. 2000) (citing *United States v. Rodriguez*, 968 F.2d 130, 143 (2d Cir.), *cert. denied*, 506 U.S. 847 (1992)). Accordingly, the Court will give Mr. Aggarwal's declaration "such weight and consideration as is appropriate." *Etuk v. Slattery*, No. 89-CV-3265, 1992 WL 106474, at *2 (E.D.N.Y. Apr. 30, 1992); *see also Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 160 (S.D.N.Y. 2008) (assigning "little weight" to written declarations that contradicted deposition testimony). Ordered by Judge Pamela K. Chen on 2/11/2022. (Mahkamova, Shirin) (Entered: 02/11/2022) |
| 02/12/2022 | 85 | Letter *in response to Attorney Steven W. Fogg letter of February 10, 2022 (ECF 78)* by Fleet New York Metropolitan Regional Center LLC, Richard Xia, Julia Yue (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Kameli, Taher) (Entered: 02/12/2022) |

# SILLS CUMMIS & GROSS

A PROFESSIONAL CORPORATION

**Legal Center**
**One Riverfront Plaza**
**Newark, New Jersey 07102-5400**
**Tel: 973-643-7000**
**Fax: 973-643-6500**

**Hervé Gouraige**
**Member of the Firm**
**Direct Dial: (973) 643-5989**
**E-mail: hgouraige@sillscummis.com**

**101 Park Avenue, 28th Floor**
**New York, NY 10178**
**Tel: 212-643-7000**
**Fax: 212-643-6500**

February 2, 2022

**<u>VIA ECF</u>**
The Honorable Pamela K. Chen
District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, Chambers N 631
Brooklyn, NY 11201

      **Re:**     *Securities and Exchange Commission v. Richard Xia, a/k/a Yi Xia, et al.,*
              <u>**21-cv-05350-PKC-CLP**                                                     </u>

Dear Judge Chen:

We are counsel for defendants Richard Xia ("Xia"), Fleet New York Metropolitan Regional Center, LLC, and relief defendant Julia Yue ("Yue"). We write in response to plaintiff Securities and Exchange Commission's ("SEC") letter for a pre-motion conference (Dkt. No. 57), in accordance with the Court's Order dated February 1, 2022 to address three discovery issues relating to our clients. We do not represent Ms. Xi Verfenstein or Mr. Edward Chan.

On January 31, 2022, we confirmed with the SEC that Mr. Xia had agreed to be deposed on February 7. We suggested that Ms. Yue be deposed on February 4, subject to her physician's confirming in a letter, after her visit on February 3, that her medical condition does not prevent her from being subject to a deposition on that date. The SEC requested that we provide such medical report to counsel, and we agreed to do so. Today we sent such letter to the SEC, and we have requested the Court's permission to file that letter under seal. We provide further details below about the depositions.

In response to the SEC's request on Friday, January 28 for legal support for defendants' position that communications with investors to identify potential witnesses for the February 14 hearing are protected by the work-product doctrine, on Saturday, January 29 we provided such legal basis in the attached email from me to David Stoelting. (Ex. 1 at 2–3.) We have produced to the SEC what we are led to believe are the WeChat communications with investors. Those withheld based on the work-product doctrine are communications undertaken at the request of counsel to get declarations from investors who might be interested in being defense witnesses at the hearing. For the reasons stated in the January 29 email, we have declined to produce the draft declarations and related communications to the SEC. (*Id.*)

On December 14, defendants raised Fifth Amendment objections to the SEC's discovery requests on the house transactions, which the SEC characterized as "fraudulent transfer." (Ex. 2 at 5–6.) On January 26, 2022, Xia and Yue waived the Fifth Amendment privilege. (Ex. 3 at 6–7.) We then told the SEC that "we can produce those documents to you this week, subject to our continuing relevance objection." (Ex. 1 at 2.) There is no dispute on the production of the house transaction documents. The documents about the properties will be produced on February 3.

**SILLS CUMMIS & GROSS**
A PROFESSIONAL CORPORATION
The Honorable Pamela K. Chen
February 2, 2022
Page 2

Due to the limited time available before the February 14 hearing, we take this opportunity to raise with the Court an issue regarding the SEC's objections served on February 1 to defendants' interrogatories about the false Sunil Aggarwal Declaration submitted by the SEC to the Court for the TRO. In brief, the interrogatories inquire about what the SEC knew and when did it know it regarding the false statements in the Aggarwal Declaration. (Ex. 4 at 3.) The SEC has declined to answer our interrogatories based on ambiguity, relevance, and privilege grounds. (*Id*. at 3–4.) A copy of the SEC Response to Xia's First Interrogatories is attached.

We are at a loss to understand the SEC's objections. Whether a Declaration submitted, *ex parte*, to this Court in this case by the SEC is false is a highly relevant issue. When did the SEC learn the Declaration was false is even more relevant. There is no ambiguity in our simple questions. Mr. Aggarwal testified extensively at his deposition precisely which statements in his Declaration were incorrect and inaccurate. He explained why the statements were incorrect, and what led him to believe at the time he signed the Declaration they were correct. He also testified about how he learned from his documents the statements were not correct. Lastly, he stated that he had produced his documents to the SEC. The SEC was represented at Mr. Aggarwal's deposition when he testified about these issues. Defendants are entitled to answers to their simple questions in adequate time before the February 14 hearing.

**Depositions of Xia and Yue**

We filed our notice of appearance in this case on November 15, 2021. (Dkt. No. 24.) To our knowledge, scheduled depositions of Xia and Yue were postponed four times due to various reasons—from the need for us to get acquainted with the case, to discussions about alternatives to the asset freeze, and to defendants' medical conditions, including exposure to Covid-19.

On November 1, 2021, knowing that we represented defendants, and after Mukasey Frenchman's motion to withdraw was granted by Magistrate Judge Pollak, and that "no other lawyers have filed an appearance" on defendants' behalf, the SEC directly asked defendants to agree to a deposition date of November 4 for Yue and November 5 for Xia. (Ex. 5 at 1.) At that time, we were still "trying to figure out how attorneys will be paid for their services given the asset freeze." (*Id*.) Unable to resolve the attorney retention issues and familiarize ourselves with this case within such a short notice, we suggested adjourning the "depositions [then] scheduled for [that] week until after Nov. 15." (*Id*.) On November 5, 2021, we had a phone call with the SEC to discuss scheduling of the depositions. (Ex. 6.) Due to the SEC's position "that rental income from properties wholly unrelated to the EB-5 projects . . . is subject to the asset freeze[,] . . . defendants have not been able to assure counsel of payment of their fees [or] . . . pay counsel for employees . . . whose expedited depositions the SEC seeks." (Ex. 7 at 3.) Nevertheless, on November 8, 2021, the SEC insisted that, "[w]hether or not [we] file an appearance in this case," defendants should "commit to a date for their depositions," *i.e.*, "Nov. 22 for Ms. Yue and Nov. 23 for Mr. Xia." (*Id*. at 4.)

In December, we engaged in negotiations with the SEC and the Monitor on a "replacement security for the current asset freeze." (Ex. 8 at 1.) The replacement security was a third-party financing proposal designed to "pay off the investors who wish to be paid at this time." (Ex. 9 at 2.) If approved, this proposal could have spared the parties from the expedited discovery and the Court from holding a preliminary injunction hearing. To focus on the negotiations, on December 5, 2021, the parties agreed to a "tentative[] schedule" for Yue's deposition on December 17, 2021 and Xia's deposition on December 20, 2021. (Ex. 8 at 1.) As the negotiations continued, on December 15, 2021, we suggested "schedul[ing] the depositions for early to mid-January." (Ex. 9 at 2.) We believed that "this reasonable extension, during the holiday season, will permit us to resolve important matters that will free us to focus on the merits of the

**S ILLS  C UMMIS  &  G ROSS**
A P ROFESSIONAL  C ORPORATION
The Honorable Pamela K. Chen
February 2, 2022
Page 3

SEC claims and will spare the court from taking time to do a hearing." (*Id*.) In response, the SEC asked for "firm dates for the depositions of [our] clients during the week of Jan. 3." (*Id*. at 1.) The negotiations were unsuccessful.

On January 10, 2022, one day before the then-scheduled deposition for Yue, we were informed by Xia that Yue "is going to be tested for Covid," as "[s]he may have been exposed to another person who tested positive"; we timely conveyed this new development to the SEC. (Ex. 10 at 1.) We later informed the SEC that "Yue was in a hospital ER for treatment …, and that she received a positive Covid test" on January 11, 2022. (Ex. 11 at 2.) We provided the SEC Yue's medical records, signed by her doctor, showing that Yue was treated in an emergency room and tested positive for Covid.[1] As an immediate contact of Yue, Xia was asked to take a Covid test, and he developed symptoms of constant coughing. On January 12, 2022, we explained to the SEC that, due to Yue's medical condition, Xia was "not able to prepare for and attend his deposition tomorrow," that "[w]e will need to adjourn that deposition." (Ex. 11 at 1.) The SEC asserted that we did not have "a reasonable basis to postpone" Xia's deposition. (*Id*.)

Yue was later diagnosed with a major nonphysical condition, and her doctor has an appointment to see her on February 3, 2022 and will determine if the medicines she must take will make her unfit for a deposition. In fact, we provided such a letter to the SEC today. We have previously provided the SEC with Yue's medical records and provided Xia's Covid test result to the SEC. (*See* Ex. 13.) The SEC replied with a request that we "confirm before noon tomorrow: (1) that Thurs, February 3 at 10 am works for Mr. Xia's deposition, and (2) that Ms. Yue can be deposed on Feb 4 or 7." (*Id*. at 1.) Xia preferred to be deposed on Monday, Feb. 7 and Yue "agreed to a tentative date on Friday, Feb. 4," subject to "a medical note about the impact of medications on her condition." (*Id*.) We told the SEC that we would provide "that note as soon as we get it on Feb. 3." (*Id*.) On January 29, 2022, despite Xia's continued persistent Covid symptoms, we communicated to the SEC Xia's offer "to have his deposition on Feb. 3 if that will give the SEC greater assurance that any motion to compel against him is moot." (Ex. 1 at 2.) In response, the SEC "agree[d] to conduct Mr. Xia's deposition on Feb. 3, at 10 am, but reject the pre-condition" we proposed. (*Id*. at 1.) As a result, we confirmed Xia's deposition for February 7.

Respectfully submitted,

*/s/ Hervé Gouraige*
Hervé Gouraige

---

[1] Yue's medical records contain sensitive personal information. As a result, we have not attached them to this letter. We have attached to this letter a motion to file the medical records of Yue and Xia under seal as Exhibit 12. The medical records also include Xia's positive Covid test.

# Exhibit M

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Immigrant Investor Program Office*
131 M Street, NE, Mailstop 2235
Washington, D.C. 20529



**U.S. Citizenship
and Immigration
Services**

Linda Wong, Esq.
140 South Lake Ave Suite 230
Pasadena, CA 91101

**Date:** January 13, 2026
**RCID:** ID1031910196

## DECISION
### Reaffirmation of Regional Center Designation

This notice is in reference to the regional center designation of FLEET NEW YORK METROPOLITAN REGIONAL CENTER LLC ("the Regional Center"), which was initially issued by U.S. Citizenship and Immigration Services ("USCIS") on 12/11/2024. Upon designation, USCIS authorized the Regional Center's participation in the Regional Center Program (the "Program")[1].

Pursuant to INA 203(b)(5)(J), designated regional centers must make annual payments into the EB-5 Integrity Fund. As of October 31, 2025, USCIS records indicated the Regional Center failed to pay the EB-5 Integrity Fund fee for fiscal year 2026. Accordingly, on November 17, 2025, USCIS issued a Notice of Nonpayment and Intent to Terminate (NPIT) to the Regional Center. The NPIT notified the Regional Center that the payment period to pay the delinquent fee opened on October 1, 2025, and would remain open through and including December 30, 2025.

USCIS must terminate any regional center that did not pay the fee required within 90 days after the date on which the fee is due. INA 203(b)(5)(J)(iv)(II). Therefore, the NPIT also notified the Regional Center that USCIS would terminate the Regional Center's designation if the Regional Center failed to pay the required EB-5 Integrity Fund fee on or before December 30, 2025.

USCIS records indicate that the Regional Center made the required EB-5 Integrity Fund fee payment on December 28, 2025.

After considering the totality of evidence in the record, USCIS reaffirms the existing regional center designation.

Sincerely,

Alissa L. Emmel
Chief Immigrant Investor Program

---

[1] The Program was originally authorized under Section 610 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395, 106 Stat. 1828 (1992). That authority was subsequently repealed pursuant to the EB-5 Reform and Integrity Act of 2022 and codified at INA 203(b)(5)(E).

Page 2


cc:     FLEET NEW YORK METROPOLITAN REGIONAL CENTER LLC
        42-31 Union Street
        Flushing, NY 11355