UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
SECURITIES AND EXCHANGE
COMMISSION,

                Plaintiff,

       - against -

RICHARD XIA, a/k/a YI XIA; *et al.*,

                Defendants,

       - and -

JULIA YUE, a/k/a JIQING YUE; *et al.*,

              Relief Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
21-CV-5350 (PKC) (CHK)

PAMELA K. CHEN, United States District Judge:

Plaintiff Securities and Exchange Commission (the "SEC") commenced this action on September 27, 2021 against Defendants Richard Xia and Fleet New York Metropolitan Regional Center, LLC for violations of various federal securities laws, and against Relief Defendants Julia Yue, Xi Verfenstein, and Xinming Yu for unjust enrichment as a result of Defendants' alleged violations of securities laws.[1]  Before the Court is the motion of non-party Rubenstein Public Relations, Inc. ("RPR") to intervene in this action in order to enforce a state court judgment against Fleet Financial Group ("FFG"), one of the entities associated with Defendants.  (Mot. to Intervene & for Release of Funds ("Mot. to Intervene"), Dkt. 580.)  For the reasons stated below, RPR's motion is denied in full.

---

[1] Relief Defendants Verfenstein, and Yu were added in the SEC's Amended Complaint, filed on April 6, 2022.  (*See* Am. Compl., Dkt. 98.)

**BACKGROUND**

**I.      The Instant Case**

The Court assumes the parties' familiarity with the extensive factual and procedural history of this case,[2] and therefore only sets forth those facts relevant to this Memorandum and Order.  On September 27, 2021, the SEC commenced this enforcement action, alleging violations of federal securities law by Defendants.  (*See generally* Compl., Dkt. 1.)  Also on September 27, 2021, the Court granted an emergency temporary restraining order which, *inter alia*, froze Defendants' assets throughout the pendency of this action in order to preserve the status quo and ensure that sufficient assets remain available to compensate the defrauded investors.  *See Xia*, 2024 WL 964676, at *2; (Dkt. 11).  That asset freeze included assets held by FFG, (*see* Dkt. 11, at ECF[3] 11–12), and it has been extended throughout this case, (*see* Dkt. 217; Dkt. 416).

On July 5, 2024, Defendants and Relief Defendant Yue entered their consent to the entry of a proposed Final Judgment, which would impose a series of restraints and obligations on them. (*See* Proposed Consent of Defs. and Relief Def., Dkt. 450-2; Proposed Final J., Dkt. 450-3.)  On July 26, 2024, the Court approved the Proposed Consent, (Consent of Defs. and Relief Def. ("Consent"), Dkt. 459), and entered the Final Judgment also as proposed by the parties, (Final J., Dkt. 460).[4]  Among other things, the Final Judgment provides that the freeze of Defendants' assets

---

[2] *See, e.g.*, *SEC v. Xia*, No. 21-CV-5350 (PKC) (RER), 2022 WL 17539124, at *1–10 (E.D.N.Y. Dec. 8, 2022); *SEC v. Xia*, No. 21-CV-5350 (PKC) (JAM), 2024 WL 964676, at *1–5 (E.D.N.Y. Mar. 4, 2024); *SEC v. Xia*, No. 21-CV-5350 (PKC) (JAM), 2024 WL 3447849, at *2 (E.D.N.Y. July 9, 2024).

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] The Final Judgment explicitly incorporates the Consent "with the same force and effect as if fully set forth [t]herein" and provides that "Defendant Xia shall comply with all of the undertakings and agreements set forth therein."  (Final J., Dkt. 460, at 10.)

will remain in force and effect until Defendants' monetary obligations under the Final Judgment are met.  (*See* Final J., Dkt. 460 at 8.)  To date, Defendants have not met those obligations.

## II.    RPR's Relationship to the Parties[5]

RPR provided professional public relations services for FFG from January 8, 2021 until December 1, 2021.  (RPR Mem., Dkt. 580-1, at 2.)  The agreement between RPR and FFG provided that FFG would pay, *inter alia*, a fee of $15,000 a month for RPR's services.  (*See* Ltr. of Agreement, Dkt. 580-3, at 5.)  At the end of their agreement, FFG still owed RPR an unpaid balance of $90,000, plus interest and attorneys' fees.  (RPR Mem., Dkt. 580-1, at 2; Dkt. 580-4.)

On October 20, 2022, RPR initiated litigation in the Supreme Court, New York County. (*See* RPR Mem., Dkt. 580-1, at 2; Verified Compl., Dkt. 580-5.)  FFG ultimately defaulted in that action, and on October 30, 2023, the state court entered judgment in the amount of $135,954.73 for RPR.[6]  (RPR Mem., Dkt. 580-1, at 3; St. Ct. J., Dkt. 580-7.)  RPR claims that it thereafter learned of the instant action and its restraint on FFG's assets.  (*See* RPR Mem., Dkt. 580-1, at 3.) RPR and the SEC then exchanged information subpoenas in November and December of 2023, (*see* Schwartz Decl., Dkt. 604-1, ¶¶ 4–6, 8; RPR Restraining Not., Dkt. 601-2; SEC Subpoena, Dkt. 601-3), and in the fall of 2024, FFG twice sought to vacate the default judgment entered against it in state court, (*see* Schwartz Decl., Dkt. 604-1, ¶ 8).

---

[5] As it must, the Court has "accept[ed] as true [the] non-conclusory allegations of [RPR's] motion." *SEC v. Callahan*, 2 F.Supp.3d 427, 436 (E.D.N.Y. 2014) (first citing *Oneida Indian Nation of Wisc. v. New York*, 732 F.2d 261, 265 (2d Cir. 1984); and then citing *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996)).  Furthermore, no party has disputed these allegations.

[6] According to RPR, as of filing of this motion, FFG's outstanding balance had grown to $154,124.24.  (RPR Mem. in Supp. Mot. to Intervene ("RPR Mem."), Dkt. 580-1, at 3.)

### III.    Relevant Procedural History

On April 16, 2025, RPR filed a motion in this action to enforce its judgment against FFG. (Mot. to Enforce J., Dkt. 577.)  On April 18, 2025, the Court denied that motion, noting that RPR had not yet moved to intervene in this case.  (04/18/2025 Dkt. Order.)  On April 25, 2025, RPR filed the motion to intervene presently before the Court.  (Mot. to Intervene, Dkt. 580.)  On May 29, 2025, the SEC filed a brief in opposition to RPR's motion.  (Pl.'s Mem. in Opp'n ("Pl.'s Opp'n"), Dkt. 601.)  On June 12, 2025, RPR filed a reply to the SEC's opposition.  (Reply, Dkt. 604.)  To date, the Court has not received any filings concerning this motion by Defendants.[7]

### LEGAL STANDARD

RPR seeks intervention both as of right and permissively under Federal Rule of Civil Procedure ("Rule") 24(a)(2) and 24(b)(1)(B), respectively.  (*See* RPR Mem., Dkt. 580-1, at 3–4.) "As a general matter, courts are reluctant to grant intervention in SEC enforcement actions." *SEC v. GPB Cap. Holdings, LLC*, No. 21-CV-0583 (MKB), 2025 WL 1043654, at *9 (E.D.N.Y. Apr. 8, 2025) (compiling cases).

Rule 24(a)(2) provides a four-part test for intervention as of right: the Court must permit anyone to intervene who (1) files a timely motion, (2) claims "an interest relating to the property or transaction that is the subject of the action," and (3) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," (4) "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).  All four parts of the test must be met. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 169, 175 (S.D.N.Y. 2016) (quoting *United States v. Pitney Bowes*, Inc., 25 F.3d 66, 70 (2d Cir. 1994)).

---

[7] The Court set a briefing schedule providing that Defendants could, but were not required to, file a response by May 29, 2025.  (04/30/2025 Dkt. Order.)

Separately, Rule 24(b)(1)(B) provides that, upon a timely motion, the Court "*may* permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B) (emphasis added). "A motion for permissive intervention, like one for intervention of right, must be timely." *SEC v. Euro Sec. Fund*, No. 98-CV-7347 (DLC), 2006 WL 1461776, at *4 (S.D.N.Y. May 30, 2006) (quoting *Catanzano By Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996)).

## DISCUSSION

### I.    Section 21(g) of the Securities Exchange Act

The Court initially notes, but declines to resolve, the SEC's argument that Section 21(g) of the Securities Exchange Act of 1934 ("Section 21(g)") "prevents private parties from pursuing claims in SEC enforcement actions without the SEC's consent." (Pl.'s Opp'n, Dkt. 601, at 3–4.) Section 21(g) provides that generally, "no action for equitable relief instituted by the [SEC] pursuant to the securities laws shall be consolidated or coordinated with other actions not brought by the [SEC], even though such other actions may involve common questions of fact, unless such consolidation is consented to by the [SEC]." 15 U.S.C. § 78u(g). Because the SEC has not consented to RPR's intervention, the SEC argues, the motion must be denied pursuant to Section 21(g). (*See* Pl.'s Opp'n, Dkt. 601, at 3–5.)

However, courts have questioned the SEC's position, noting both that "the specific language of Section 21(g) [does] not apply, on its face, to intervention," and that "the vast majority of cases addressing intervention in the context of SEC enforcement" address motions under the Rule 24 standards, making no mention of Section 21(g). *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 466 (S.D.N.Y. 2000); *see Callahan*, 2 F.Supp.3d at 437; *SEC v. Caledonian Bank Ltd.*, 317 F.R.D. 358, 368 (S.D.N.Y. 2016).

5

Because the Court denies the instant motion under Rule 24's standards, it declines to rule on the SEC's argument here.

## II.    Intervention Timeliness

"The issue of timeliness is evaluated according to the same criteria whether intervention is sought as of right or permissively." *John Wiley & Sons, Inc.*, 315 F.R.D. at 175 (first citing *NAACP v. New York*, 413 U.S. 345, 365 (1973); then citing *Pitney Bowes*, 25 F.3d at 70; and then citing *In re Initial Pub. Offering Sec. Litig.*, 499 F.Supp.2d 415, 418 (S.D.N.Y. 2007)).  "Timeliness defies precise definition," *Pitney Bowes*, 25 F.3d at 70, and is left to "the broad discretion" of the district court to determine, *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005).  "[T]he circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *TGP Commc'ns, LLC v. Doe*, No. 22-1836, 2023 WL 4230020, at *1 (2d Cir. June 28, 2023) (summary order) (quoting *Pitney Bowes*, 25 F.3d at 70).  "Generally, the Second Circuit disfavors intervention after liability has been adjudged [in the case in which intervention is sought] because 'it fosters delay and prejudice to existing parties.'" *Floyd v. City of New York*, 302 F.R.D. 69, 84 (S.D.N.Y. 2014) (quoting *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir. 1988), *aff'd in part, appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014)).  Specifically, "[c]oncerns about undue delay and complication resulting from permissive intervention are acute where the Government, and particularly the SEC, is a party to the underlying action." *Callahan*, 2 F.Supp.3d at 439 (quoting *SEC v. Bear, Stearns & Co. Inc.*, 03-CV-2937 (WHP), 2003 WL 22000340, at *3 (S.D.N.Y. Aug. 25, 2003)).  Here, these factors favor finding the motion untimely.

### A.    Length of Time

"Among the most important factors in a timeliness decision is 'the length of time the applicant knew or should have known of his interest before making the motion.'" *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067 (JFK), 2018 WL 840081, at *3 (S.D.N.Y. Feb. 12, 2018) (quoting *Catanzano*, 103 F.3d at 232).

The SEC initiated this action on September 27, 2021, (*see* Compl., Dkt. 1), and the substance of the allegations against Defendants have not changed since.  Defendants' assets were first frozen the same day, and the Court entered the Final Judgment against Defendants on July 26, 2024, (Final J., Dkt. 460).  Meanwhile, FFG stopped paying RPR's fee in July of 2021, (*see* RPR Invoices, Dkt. 580-4), RPR initiated the state court action against FFG on October 20, 2022, and RPR obtained a state court judgment on October 30, 2023, (*see* RPR Mem., Dkt. 580-1, at 3).  Yet, RPR did not file anything in this case until April 16, 2025, (*see* Mot. to Enforce J., Dkt. 577), with the instant motion being filed on April 25, 2025, (*see* Mot. to Intervene, Dkt. 580).

With respect to the length-of-time factor, RPR asks the Court to consider that it was "never given notice of the SEC enforcement action and only discovered it through its own due diligence while attempting to enforce [its] state court judgment." (*See* RPR Mem., Dkt. 580-1, at 4.)  This fact, however, is largely irrelevant, because the timeliness of a non-party's intervention is measured "from the moment . . . the applicant had actual *or constructive notice* of its unrepresented interest," *Extenet Sys., LLC v. Vill. of Kings Point*, No. 21-CV-5772 (KAM) (ST), 2022 WL 1749200, at *8 (E.D.N.Y. May 31, 2022) (citing *Floyd*, 302 F.R.D. at 86) (emphasis added), and here, RPR had, at a minimum, constructive notice of its potential interest in this case

"the moment" the default judgment was issued in the state court case on October 30, 2023.[8]  At that time, this case had been pending—and FFG's assets had been frozen—for two years, which, given the public nature of this matter[9]—triggered constructive notice as to RPR.  *See First Mercury Ins. Co. v. L. Off. of Kenneth B. Schwartz*, No. 17-CV-1763 (SJF) (AKT), 2019 WL 8356254, at *10 (E.D.N.Y. Sep. 4, 2019); *Floyd*, 302 F.R.D. at 89 ("Numerous courts have found that . . . the initiation of a lawsuit where the complaint addresses the would-be intervenors' interests may trigger constructive notice.").

RPR's delay in taking any action thereafter is significant and its justifications are insufficient.  RPR's motion provides no reason why it could not, or should not, have become aware of this action and filed its motion once it initiated the state court action against FFG in October of 2022, once it obtained its state court judgment in October of 2023, or once the Court entered the Final Judgment in this case in July 2024—over 29, 17, and 8 months before RPR's first filing in this case, respectively.  Whichever measure the Court uses, RPR's delay and period of inaction is significant and weighs heavily in favor of finding RPR's motion untimely.  *See Pitney Bowes*, 25 F.3d at 71 (affirming denial of intervention in part because prospective intervenor had "constructive knowledge of its interest in the underlying action for at least 15 months, and actual knowledge for eight months[,] before filing its motion to intervene"); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198 (2d Cir. 2000) (finding delay of eight months excessive); *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 382, 390 (2d Cir. 2006) (affirming denial of motion to intervene made five months after start of litigation where parties' involvement and

---

[8] Indeed, as discussed *infra* n. 10, RPR acknowledges as much.  (*See* RPR Reply, Dkt. 604, at 7.)

[9] The vast majority of the relevant filings in this case are not under seal.

positions deemed sufficient notice to prospective intervenors); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–96 (2d Cir. 1986) (affirming denial of motion to intervene as untimely, where prospective intervenors were on notice three months prior to filing their motion); *Callahan*, 2 F.Supp.3d at 438 (holding a motion to intervene to be untimely in part because the proposed intervenor waited 17 months to seek to intervene since notice of interest).

In a declaration attached to RPR's reply, its attorney, Eric P. Schutzer, represents that RPR communicated with the parties in this case during the months following the state court judgment, but that it did not seek to intervene because of exchanged subpoenas and post-judgment litigation in state court. (*See* Schutzer Decl., Dkt. 604-1, ¶¶ 3–17.)  Schutzer claims that RPR waited to take any action in this case until after FFG "unequivocally confirmed [on January 22, 2025] . . . that the only assets available to satisfy the judgment were those currently restrained in this federal enforcement action under SEC control." (*See id.* ¶¶ 11–12.)[10]  Even after that, however, RPR did not file its motion for nearly three months due to Court "holidays" and its counsel's personal issues. (*See id.* ¶ 14.)  As noted, the Court considers timing between the notice of litigation and RPR's filing of its first motion to intervene in this case.  None of the events reported by Schutzer's

---

[10] The Court rejects RPR's suggestion that it did not have constructive notice of its interest in this case until January 2025, when FFG allegedly confirmed that the only funds available to satisfy RPR's state court judgment had been frozen in this case. (*See* Schutzer Decl., Dkt. 604-1, ¶¶ 11–12.)  Indeed, RPR acknowledges that it was aware of its interest in this litigation as soon as the state court judgment was issued. (*See* RPR Reply, Dkt. 604, at 7 (contending that, because RPR holds a "final, non-appealable judgment against FFG," RPR has "a perfected and legally enforceable interest in assets held by third parties on FFG's behalf").)  RPR also concedes that the SEC and FFG were "adversarial" to RPR after the state court judgment. (*Id.* at 6; *see* Schutzer Decl., Dkt. 604-1, ¶¶ 11–12 (describing the subpoenas with the SEC and post-judgment state court litigation with FFG that followed).)  Although RPR might not have been certain of the scope of its interest, it cannot plausibly claim that it was unaware of it, or unaware that it was unrepresented in this case, such that it was reasonable for RPR not to take any action to protect that interest before January 2025.  In any event, even assuming that RPR was not fully on notice of its interest in this case until January 2025, as discussed above, the Court still finds RPR's motion to intervene untimely.

declaration sufficiently explains why RPR did not seek to take any action in this matter at the same time it was actively engaging with the parties.[11]  Indeed, Schutzer's statement that within a month of obtaining the state court default judgment in October 2023, RPR subpoenaed the SEC to determine which FFG assets were frozen, actually *confirms* that RPR was aware of its potential interest in this case the moment RPR obtained the state court judgment, and yet chose to wait roughly 18 months—presumably knowing that the Final Judgment was entered in this case during that time—before seeking to protect that interest by intervening in this matter.

Thus, this factor strongly favors a finding of untimeliness.

### B.    Prejudice to Existing Parties

"The second and most important consideration in determining whether a motion to intervene is timely is whether there is any prejudice to the existing parties resulting from the delay."  *Xia*, 2024 WL 964676, at *8 (quoting *Long Island Trucking, Inc. v. Brooks Pharmacy*, 219 F.R.D. 53, 55 (E.D.N.Y. 2003)).  "[T]his factor encompasses the basic fairness notion that intervention should not work a last[-]minute disruption of painstaking work by the parties and the court."  *Id.* (quoting *Application of Akron Beacon J.*, No. 94-CV-1402 (CSH), 1995 WL 234710, at *7 (S.D.N.Y. Apr. 20, 1995)).  But if intervention relates only to ancillary issues and does not disrupt the resolution of the underlying case, "untimely intervention is much less likely to prejudice the parties."  *Id.* (quoting *Akron Beacon J.*, 1995 WL 234710 at *7).

The SEC alleges that RPR's intervention would prejudice the existing parties because it would "contradict the parties' intent with respect to settlement and would unnecessarily delay and

---

[11] Regarding counsel's claim about delay due to court "holidays," the Court notes that it was closed for only one day due to a federal holiday between January 22, 2025 and April 16, 2025. *See Court Hours and Holidays*, U.S. District Ct., Eastern District of N.Y., https://www.nyed.uscourts.gov/court-hours-and-holidays (last accessed Mar. 12, 2026).

complicate these proceedings, introducing new, contested issues." (Pl.'s Opp'n, Dkt. 601, at 7.) The SEC also argues that allowing RPR to intervene "would only invite Defendants' myriad other creditors . . . to seek to intervene and claim part of the frozen assets." (*Id.*) RPR argues that there is no risk of prejudice to the existing parties, as its motion is "limited in scope and will not delay or complicate the underlying SEC case." (RPR Mem., Dkt. 580-1, at 4–5; *see also* RPR Reply, Dkt. 604 at 11 (arguing that the amount RPR seeks is *de minimis*).)

The Court finds that the SEC has the better argument here. As the SEC notes, FFG's funds have been frozen as part of the settlement between the parties in this case, and the SEC, via the proposed Final Judgment that the Court adopted, seeks to maximize the distribution to those who invested in Defendants' entities, including FFG. This litigation has also brought to light that Defendants have substantial debts outside of their debts to its investors, including to the multitude of attorneys that have represented them in this case, some of whom are also creditors seeking recovery vis-à-vis FFG specifically. (*See, e.g.*, Dkt. 465 (August 2024 letter from FFG's former attorney reporting the need to withdraw as counsel due to nonpayment since February 2022).) Adjudicating and defining exactly how to deal with each of Defendants' debts and creditors as exceptions to the asset freeze, while maintaining the material aspects and validity of the parties' agreement that led to the Final Judgment in this protracted litigation, is likely to yield substantial additional litigation that is prejudicial to the existing parties and intended beneficiaries of the settlement in a case where final judgment has already been entered.

Although the Court did grant non-party CTBC Bank USA's ("CTBC") request to intervene in March 2024, there are material differences between that motion and RPR's.[12] *See Xia*, 2024

---

[12] RPR also seeks to compare its recovery to the funds the Court has approved for distribution to third parties, including the Distribution Administrator. (RPR Reply, Dkt. 604, at 11–12.) The comparison is wholly inapt: the Distribution Administrator is not a party to the case

11

WL 964676, at *1 (granting motion to intervene by CTBC). As a starting point, CTBC had been involved in the litigation since the commencement of the case and its intervention was unopposed, belying any prejudice to the parties. *Id.* at *8–9. Additionally, although the parties had come to an agreement, they had not formalized that agreement into a settlement, and the Court had not yet entered a judgment in this case. *See id.* at *8 & n.22 (noting CTBC's first motion to intervene was made well in advance of the parties' settlement-in-principle). Finally, and perhaps most importantly, CTBC sought relief that, if necessary, could be harmonized with the relief that the SEC sought in this case. *See id.* at *9. Unlike CTBC, RPR made no filings in this case until a few days before this motion, sought intervention only after—indeed, many months after—final judgment was entered pursuant to the parties' agreement, and proposes relief—the distribution of Defendants' funds—that directly conflicts with the SEC's goals in the settlement to maximize recovery for investors in Defendants' businesses, leading to the SEC's opposition to this motion.[13]

Accordingly, because intervention would "work a 'last[-]minute disruption of painstaking work by the parties and the court,'" *see Akron Beacon J.*, 1995 WL 234710 at *7 (quoting *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 786 (1st Cir. 1988)), this factor also favors a finding of untimeliness.

---

nor a creditor of any party, but rather is an individual whose appointment is specifically provided for in the Consent signed by the parties and whose duty it is to effectuate the relief the parties agreed to in the Final Judgment. (*See* Dkt. 461.)

[13] Material distinctions also apply to the motions granted by courts in the cases in this circuit cited by RPR. In *Credit Bancorp, Ltd.*, unlike here, the SEC had not yet "obtain[ed] a resolution of its claims against the named defendants." *See* 194 F.R.D. at 468. In *Holborn Oil Trading Ltd. v. Interpetrol Berm. Ltd.*, the court did not address prejudice as part of a timeliness analysis in granting the intervenor's Rule 24(b) motion. 658 F. Supp. 1205, 1210 (S.D.N.Y. 1987).

## C. Prejudice to RPR

RPR claims it will be prejudiced if its motion is not granted because it "faces the very real possibility that the only available assets to satisfy its judgment may be distributed without its participation." (RPR Mem., Dkt. 580-1, at 4.) The SEC counters that denial of the motion would not prejudice RPR, as it would still be able to "pursue its judgment against FFG in a separate action or forum." (Pl.'s Opp'n, Dkt. 601, at 7.)

The Court disagrees with the SEC, as it is unclear whether and how the SEC will be able to recover sufficient funds from Defendants to satisfy the amounts owed under the Final Judgment. In other words, RPR is facing a risk that this action will deplete FFG's assets and, as such, it puts at risk the entirety of RPR's asserted interest in effectuating the state court judgment. *See Credit Bancorp*, 194 F.R.D. at 467 ("The movants are certainly correct in observing that their interests are at stake in the instant action . . . [where] there may be nothing left at the end of the day to satisfy a judgment.").

For the same reason, however, the Court is also unable to find that RPR is certain to be unable to collect on its judgments. It may be the case that FFG's assets will not be necessary to satisfy Defendants' obligations under the Final Judgment. As the SEC notes, the asset freeze and receivership seek in part to minimize the deterioration of Defendants' assets, thus maximizing both the investors' recovery and RPR's potential for recovery. *See Xia*, 2024 WL 964676, at *2; *SEC v. Xia*, No. 21-CV-5350 (PKC) (CHK), 2026 WL 636671, at *5 (E.D.N.Y. Mar. 6, 2026) (granting appointment of a receiver in part to curb the deterioration of Defendants' assets); (Pl.'s Opp'n, Dkt. 601, at 9–10); *see also Callahan*, 2 F.Supp.3d at 438 (finding "minimal prejudice" to would-be intervenor where an asset freeze had been imposed to protect creditor's collateral).

Because RPR has made a showing of potential prejudice—even if qualified—should its motion be denied, this factor counsels in favor of granting RPR's motion to intervene.

13

**D.     Unusual Circumstances**

RPR claims that there are "unusual circumstances" in this case because it is "an independent third-party creditor with a final, enforceable judgment." (RPR's Mem., Dkt. 580-1, at 5.)  The Court disagrees.  RPR's status as an independent third-party creditor is a typical and common setting for a motion to intervene.  The fact that the debt has been formalized in a state court judgment does not change the Court's conclusion as to the question of timeliness, as the Court's discussion *supra* accounts for the time RPR spent pursuing a judgment against FFG in state court.  If anything, the judgment is probative of the fact that RPR had the ability, sophistication, and resources to litigate FFG's debt in the courts, making RPR's delay all the more unjustified.

*       *       *

Having taken the totality of the circumstances into consideration, the Court finds RPR's motion untimely under both Rule 24(a)(2) and Rule 24(b)(1)(B).  Although the Court recognizes the potential prejudice to RPR, as the Second Circuit has noted, it is not "unjust that intervention on the part of the late-arrivers must yield under all the circumstances," "especially in the context of post-judgment intervention."  *See Farmland Dairies*, 847 F.2d at 1044–45 (citation omitted); *see also In re Holocaust Victim Assets Litigation*, 225 F.3d at 198–99 (affirming untimeliness finding where prospective intervenors filed motion eight months after parties' settlement).  Accordingly, and because timeliness is required under Rule 24(a)(2) and Rule 24(b)(1)(B), RPR's motion to intervene is denied in full.

14

**CONCLUSION**

For the reasons stated above, Rubenstein Public Relations, Inc's Motion to Intervene and

for Release of Funds is untimely and, thus, denied in full.

SO ORDERED.

_/s/ Pamela K. Chen_
Pamela K. Chen
United States District Judge

Dated:  March 30, 2026
        Brooklyn, New York

15