UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————————x

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff,

v. **Case No. 1:21-cv-05350 (PKC) (CHK)**

RICHARD XIA, a/k/a YI XIA, et al.,
Defendants.

———————————————————————————x

**DEFENDANT RICHARD XIA'S SUPPLEMENTAL STATEMENT FOLLOWING APRIL 20, 2026 STATUS CONFERENCE**

Defendant Richard Xia respectfully submits this supplemental statement following the April 20, 2026 status conference. The Court permitted defendant to file a statement within fourteen days, limited to ten pages, to address concerns regarding the EB-5 immigration process and the potential consequences for EB-5 investors. Apr. 20, 2026 Tr. at 55:9–14, 56:1–4. Defendant respectfully submits this statement *pro se* and in his individual capacity. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993).

This statement is not submitted to reargue the Final Judgment, the receivership, or matters already before the Court and the Second Circuit. It is submitted for the limited purpose of providing supplemental information on the practical EB-5 immigration, documentation, and investor-notice issues discussed at the April 20 conference, so that any notice to investors and any further Court-supervised process do not unintentionally prejudice the EB-5 investors that the process is intended to protect.

## I. The Hearing Confirmed That Many EB-5 Investors Still Have Active I-829 and Documentation Needs.

Global Law Group ("Global Law") confirmed that EB-5 investors still require I-829 and related documentation support and that the work depends on job-creation documentation, construction-expenditure evidence, investor sequencing, K-1s, tax returns, and investor-specific information. Ms. Lau and Ms. Wong stated that Global Law had helped Fleet prepare approximately 75 packages for the first EEGH project and approximately 14 for the second EEGH project, with 26 recently funded packages included in those numbers. Apr. 20, 2026 Tr. at 7:6–25, 8:5–25, 9:1–4.

Defendant stated at the conference that there are roughly 374 investors in EEGH and EEGH II, many of whom have lived in the United States for many years and are seeking to complete the I-829 process. Tr. at 10:7–8. Global Law also explained that it is not in direct contact with all investors and does not always know each investor's precise deadline or intentions. Tr. at 7:14–19, 14:1–10, 31:12–25.

This record confirms that the investor population is real and active. The projects continue to have live EB-5 immigration consequences. Any notice to investors should be carefully drafted so that it does not cause panic, premature withdrawal, or forfeiture of immigration rights before USCIS, investor counsel, the SEC, and the Distribution Administrator clarify the available options.

### II. The Record Identifies Construction-Expenditure and Job-Creation Evidence as a Practical Bottleneck.

Global Law's testimony identified a practical evidentiary bottleneck. Ms. Wong explained that the available materials are growing "less and less because there's no construction activities," and Ms. Lau explained that without additional construction expenditures to analyze, it is difficult to prepare additional qualifying packages, even if Global Law is paid. Tr. at 19:11–21, 20:8–16. Ms. Lau further explained that approximately 260 jobs across the two partnerships have been included in the latest updated packages prepared. Tr. at 20:8-16.

Defendant respectfully submits that this confirms a practical concern: investor capital must be demonstrably traceable to construction activity and job creation in order to support I-829 adjudication. As defendant noted at the conference, approximately $70 million has been disbursed to court or third-party accounts, raising tracing questions for investors who must show that capital remained at risk and was used for qualifying job creation. Tr. at 20:17–22. Whatever the broader legal posture, the practical record before the Court is that available construction-expenditure evidence is finite and shrinking, and that further depletion of project records would compound the evidentiary shortage.

### III. Investor Migration and Withdrawal Each Carry Distinct Immigration Consequences.

The April 20 record confirmed that investor migration to a new project is not a simple, automatic remedy. The SEC explained that investors may file claims with the Distribution Administrator indicating either that they wish to receive their investment back or, if eligible, to use Section M rights to move to a new project, but that the condition precedent to the Section M right — Fleet being terminated from USCIS and the EB-5 program — has not yet occurred. Tr. at 37:3–16.

The SEC further acknowledged that an investor who chooses to receive money back is effectively withdrawing from the EB-5 program. Tr. at 37:24–25, 38:1–14. Ms. Wong then identified the related concern that even with a transfer or withdrawal, immigration consequences may not be simple, and that families could face removal issues unless USCIS allows pending I-829 petitions to remain pending or in abeyance while the process is sorted out. Tr. at 43:5–23, 49:14–25.

For these reasons, any investor notice should not state or imply that withdrawal or migration is risk-free or that there is "no point" in remaining with the project until each investor's particular posture has been individually evaluated. The notice should instead direct each investor to consult independent immigration counsel; explain that the Court is gathering further information from the Distribution Administrator, the SEC, and Global Law; note that USCIS treatment of I-829 filings, abeyance, redeployment, and withdrawal each may require individualized analysis; and confirm that no investor should make an irrevocable election based only on a general communication.

### IV. Defendant Does Not Object to Direct Payment of Global Law and Necessary Professionals.

The Court directed that any future Global Law fees should be requested directly from the Court and paid directly to Global Law, not through defendant. Tr. at 50:14–21, 51:4–6, 52:18–22. The Court also stated that if accountants need to be paid for K-1s and tax returns, those fees may be included through Global Law or submitted directly. Tr. at 50:22–25, 51:1–6, 53:5–17.

Defendant does not object to direct payment to Global Law, the project accountants, or other necessary professionals. As defendant stated on the record, “That’s a perfect solution. Thank you, your Honor.” Tr. at 54:2–3.

Defendant respectfully suggests, however, that direct professional payment alone does not eliminate the related need for orderly investor sequencing. Global Law explained that package distribution requires order-of-filing and deadline sequencing, because if documents are issued out of order, limited job-creation evidence may be consumed unfairly. Tr. at 6:13–25, 14:1–23, 31:12–25. Defendant respectfully requests that any process established by the Court include a transparent sequencing protocol, an investor-status list, a deadline list, and preservation of all NCE/JCE records, K-1s, tax returns, construction-expenditure records, bank records, payroll records, vendor records, and USCIS correspondence.

## V. Defendant Respectfully Requests an Opportunity to Comment on Any Investor Notice Before Dissemination.

The Court indicated that Mr. Seiden, in coordination with the SEC and Global Law, would propose language to advise investors who have not yet filed I-829 petitions of the situation and the options available to them. Tr. at 35:17–36:25, 44:14–45:14, 49:1–10, 54:4–13. Defendant respectfully submits that the proposed notice is consequential and should be neutral, legally careful, and reviewed by qualified immigration professionals before being sent.

Specifically, the notice should explain that: (1) limited job-creation evidence may remain available; (2) additional facts are being gathered from the Distribution Administrator; (3) investors may have different deadlines and immigration postures; (4) withdrawal, redeployment, transfer, abeyance, and remaining in the project each may carry different immigration consequences; and (5) each investor should consult independent immigration counsel before making any election. The notice should not state or imply that investors must leave the program, must withdraw, must accept liquidation, or that any particular outcome is preferred.

Defendant respectfully requests an opportunity to review and comment on any proposed notice before it is sent. This request is not intended to control the notice; it is intended to ensure that the notice does not omit project-status, funding, K-1, tax-return, construction-expenditure, or USCIS considerations that the regional center side and project records may help to clarify.

## VI. EB-5 Records and Documentation Should Be Preserved Throughout Any Further Process.

The April 20 record confirms that the EB-5 documentation infrastructure includes not only physical property but also: project records; construction-expenditure evidence; job-creation calculations; investor sequencing data; K-1s; tax returns; bank, vendor, and payroll records; USCIS correspondence; NCE and JCE records; and communications with investor counsel. The integrity of these records is essential to investor I-829 adjudications regardless of the broader procedural posture.

Defendant respectfully requests that any further Court-supervised process — whether by the Distribution Administrator, the existing Monitor, any newly appointed receiver, or otherwise — be subject to clear records-preservation requirements. Specifically: no destruction, transfer, or rendering inaccessible of EB-5 investor records; preservation of all tax, K-1, accounting, construction-expenditure, bank, payroll, vendor, and USCIS

records; cooperation with pending I-829 petitioners and counsel in providing project documentation; and reasonable consultation with qualified regional center counsel before any step that could materially affect investor immigration positions. These safeguards do not impair the Court's supervisory authority and are calibrated solely to protect the EB-5 investors the Court has identified as the focus of this process.

## VII. Requested Relief.

For the foregoing reasons, defendant respectfully requests that the Court: (1) accept this supplemental statement as the statement permitted at the April 20 conference; (2) require that any investor notice be neutral, reviewed by qualified immigration professionals, and submitted to the parties for comment before dissemination; (3) direct the Distribution Administrator, the SEC, and Global Law to identify, to the extent available, investor categories, remaining I-829 deadlines, claimed withdrawals, claimed Section M elections, and remaining job-creation evidence; (4) authorize direct payment to Global Law, project accountants, and other necessary professionals for investor-protection work, consistent with the Court's direction at the April 20 conference; and (5) require that all EB-5, K-1, tax, construction-expenditure, bank, payroll, vendor, and USCIS records be preserved throughout any further process.

Defendant submits this statement respectfully and solely to assist the Court in preserving EB-5 investor interests and the related documentary record.

Respectfully submitted,

/s/ Richard Xia
**Richard Xia, a/k/a Yi Xia**
Defendant, pro se
42-55 Saull Street
Flushing, New York 11355
richard.xia@fleetfinancialgroup.com
(718) 288-5797
Dated: May 7, 2026