Hon. Pamela K. Chen
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:**    SEC v. Xia, No. 1:21-cv-05350 (PKC) (CHK)

*Defendant Xia's Response to the Court's May 4, 2026*

*Scheduling Order Concerning Receiver / Liquidation-Agent Candidates*

Dear Judge Chen:

Defendant Richard Xia respectfully submits this response to the Court's Scheduling Order of May 4, 2026, which directs the parties to propose individuals or entities to be appointed as the liquidation agent by May 18, 2026, and which identifies a candidate the Court is itself considering. Defendant submits this letter in his individual capacity, *pro se*, and does not purport to appear for or represent any corporate entity. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993).

This response addresses four matters: (1) preservation of defendant's pending appellate objections; (2) defendant's position regarding candidates, including a pending judgment-creditor intervention motion; (3) why the selected receiver's skill set matters for the specific posture of these Projects; and (4) procedural safeguards defendant respectfully requests in the order appointing any receiver or liquidation agent.

## I.    Preservation of Pending Appellate Objections

On March 11, 2026, defendant filed an Emergency Motion for Administrative Stay and Stay Pending Appeal in the United States Court of Appeals for the Second Circuit, *SEC v. Xia*, No. 26-549(Con) (consolidated with Nos. 25-1683(L), 25-2039(Con), 26-1010(Con), and 26-1050(Con)) (DktEntry: 14.3). That motion seeks a stay pending appeal of the March 6, 2026 Memorandum & Order (Dkt. 740) insofar as it authorizes appointment of a receiver to liquidate the Eastern Mirage and Eastern Emerald Projects. The motion remains pending before the motions panel.

On May 4, 2026, defendant filed a Notice of Intervening Development in the Second Circuit (DktEntry: 64.1) apprising the panel of this Court's Scheduling Order and requesting either resolution of the pending stay motion or a short preservation order maintaining the status quo.

Defendant respectfully submits this response without waiving, and expressly preserving, all objections, arguments, and rights set forth in the pending Second Circuit stay motion and supporting papers, including but not limited to objections to the appointment of any receiver or liquidation agent pending the Second Circuit's resolution of those proceedings. Defendant submits this response pursuant to the Court's May 4, 2026 directive and not as a concession that liquidation-receiver appointment is appropriate at this time. Defendant respectfully requests that the Court defer entry of any order appointing a receiver or liquidation agent until the Second Circuit has had an opportunity to rule on the pending stay motion.

1

Defendant further notes that, by letter filed on May 18, 2026 (Dkt. 776), counsel for a group of EB-5 investors has requested a brief extension of the candidate-comment deadline and has indicated that substantive proposals may follow, including discussions concerning regional center and related arrangements. Defendant takes no position on that extension request or on any substantive proposal that may be developed in connection with it. Defendant respectfully reserves all positions concerning any such proposal that may emerge, including any proposal that would substitute alternative regional center or project arrangements for the existing EB-5 program structure these Projects were designed to support, and respectfully submits this response in compliance with the Court's May 4, 2026 directive without prejudice to defendant's positions on any such proposal.

Defendant has also reviewed the letter filed by Plaintiff on May 18, 2026 (Dkt. 777), which requests a one-week extension to May 25, 2026 to permit the Securities and Exchange Commission to speak with a third candidate proposed by certain investors and to supplement its position. Defendant takes no position on that extension request and reserves all positions concerning the Commission's substantive positions, and the fee characterizations and proposed-order request contained in that letter. For the avoidance of doubt and as set forth in Section II.B below, defendant respectfully proposes a single candidate, Daniel A. Lowenthal, Esq. of Patterson Belknap Webb & Tyler LLP, with institutional support from the firm's real-estate practice as described herein.

## II.   Defendant's Position Regarding Candidates

### A.   As to David A. Castleman

Defendant does not make any personal objection to Mr. Castleman and acknowledges the Court's identification of him as a candidate. Defendant's concern is not personal qualification but fit between the contemplated mandate and the actual needs of the Projects. A conventional liquidation-agent mandate may be insufficient for assets involving EB-5 investor documentation, USCIS/I-829 consequences, title and lien disputes, tax obligations, construction history, financing alternatives, and potential value-preservation options. For that reason, defendant respectfully submits that any candidate, whether Mr. Castleman, Mr. Lowenthal, or another person, should be evaluated not only for asset-sale experience but also for restructuring, distressed-real-estate, creditor-rights, financing, project-preservation, and Court-supervised reporting experience. Defendant respectfully requests that, if Mr. Castleman is appointed, the appointment order reflect the procedural safeguards described in Section IV below.

### B.   Defendant's Proposed Candidate: Daniel A. Lowenthal

Defendant respectfully proposes the following individual for the Court's consideration as receiver or liquidation agent, should the Court proceed despite defendant's pending appellate objections: **Daniel A. Lowenthal, Esq.**, partner and Chair of the Business Reorganization and Creditors' Rights Practice, Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York, New York 10036.

Mr. Lowenthal is not proposed as an advocate for defendant, but as a neutral professional whose background is well matched to the actual needs of this matter: preservation of value, restructuring analysis, lien and creditor coordination, distressed real-estate oversight, and careful Court-supervised reporting before any irreversible sale step is taken.

Mr. Lowenthal's qualifications are directly relevant to the Eastern Mirage and Eastern Emerald Projects. He has practiced in New York City for 38 years and has "vast experience representing clients in distressed real estate matters involving receiverships and chapter 7 and 11 cases," and represents bankruptcy trustees, examiners, creditors' committees, trade creditors, and indenture trustees in domestic and international matters. He currently represents a major tenant of a commercial development recently placed into receivership in New York State Supreme Court in Queens following defaults on more than $300 million in loans. He has also represented joint-venture owners of a facility placed into receivership and later Chapter 11, as well as interests in residential real-estate project bankruptcies and post-Chapter 11 property liquidation matters.

His experience also includes unusually significant court-appointed-investigation work. Mr. Lowenthal is the only attorney to have served as counsel to court-appointed Examiners in both the FTX Trading Ltd. and Enron Corporation bankruptcy cases, two of the nation's most prominent failed-enterprise proceedings involving complex allegations of corporate malfeasance. That experience is relevant here because the receiver or liquidation agent will need to evaluate disputed creditor, lien, title, project, investor, tax, and record-preservation issues with independence and credibility. Mr. Lowenthal has been recognized in the Lawdragon 500 Leading U.S. Bankruptcy & Restructuring Lawyers guide (2022–2026) and holds Martindale-Hubbell's highest "AV Preeminent" rating.

That independence-oriented experience is particularly important here because the receiver may need to evaluate issues involving prior court-supervised administration, overlapping creditor claims, asserted liens, title restrictions, investor-election rights, and EB-5 documentation preservation. A receiver whose experience is limited to asset liquidation may not be equally suited to conduct that broader review before irreversible sale activity begins.

In addition to Mr. Lowenthal's own restructuring and receivership background, he has indicated that he would be supported by Patterson Belknap's real-estate practice team. That team's experience includes commercial leasing of office, retail, industrial, and warehouse space (including transactions exceeding one million square feet in scope); acquisition, disposition, and development of property; joint-venture structuring; design and construction contracts, including LEED-certified projects; representation of borrowers and financial institutions on more than $1 billion in construction, permanent, mezzanine, and preferred-equity financings (including tax-advantaged bond financing and public-private joint ventures); property-management and vendor contracts; environmental and land-development matters; and major domestic and international real-estate portfolios. This broader institutional support is important because the Projects require more than ordinary asset-sale administration. A summary of Mr. Lowenthal's biographical credentials is attached as Exhibit A.

Defendant has confirmed Mr. Lowenthal's willingness to be considered, subject to the Court's standard disclosure, conflict-check, appointment-order, and compensation procedures. Defendant respectfully submits that Mr. Lowenthal's combination of receivership, restructuring, distressed real estate, court-appointed examiner, creditor-rights, litigation, and institutional real-estate support makes him a particularly appropriate candidate if the Court proceeds with appointment despite the pending Second Circuit stay motion.

Defendant is aware that, as reflected in the Commission's May 18, 2026 letter (Dkt. 777), a third candidate, Mr. Michael I. Goldberg, has been proposed by certain investors. Defendant takes no position on Mr. Goldberg at this time, has had no contact with him, and respectfully reserves all positions concerning his proposed appointment pending further information through the Court's process. The procedural safeguards described in Section IV below are framed to apply to any candidate the Court may appoint, including Mr. Castleman, Mr. Lowenthal, Mr. Goldberg, or any other person.

### C.    Pending Intervention Motion by Judgment Creditor

On May 6, 2026, judgment creditor Koba Mushkudiani filed a Motion to Intervene (Dkt. 765) asserting a $36,295,055 judgment lien on Eastern Mirage, a September 6, 2022 state-court restraining order barring transfer or encumbrance of Eastern Mirage, and a pending related action (No. 25-cv-05474) seeking overlapping relief. Defendant takes no position in this submission on the substantive merits of Mr. Mushkudiani's claims or his requested remedies, and does not minimize the seriousness of his alleged injuries.

Defendant respectfully notes the following procedural posture for the Court's awareness in evaluating the receivership scope. The Mushkudiani judgment was entered against X&Y Development Group, LLC, the fee simple owner of Eastern Mirage and a non-party to the present action, at a stage of the state-court litigation when X&Y was effectively unrepresented after counsel appeared for a portion of trial but did not appear on subsequent trial days. Those procedural circumstances may be relevant to any receiver's title, lien-priority, and sale-feasibility analysis, without requiring this Court to decide those issues in this submission.

The pending intervention motion confirms that Eastern Mirage cannot be treated as a clean asset ready for immediate marketing or sale. The asserted lien-priority dispute, the state-court restraining order, and the pending related action must be addressed before any sale process can lawfully proceed. Defendant respectfully submits that the safeguards described in Section IV below, including a comprehensive title-and-lien report and a pre-sale Court-approval requirement, address these concerns without prejudging the merits of any party's position.

### III.    Why the Receiver's Skill Set Matters

The appointment decision is not merely administrative. The person selected may determine whether the Projects are preserved, restructured, refinanced, or sold under distressed conditions before appellate review is complete.

The Eastern Mirage and Eastern Emerald Projects are not simple assets ready for ordinary liquidation. The record reflects overlapping EB-5 investor issues, I-829 documentation needs, title and lien questions, creditor claims, tax and common-charge obligations, existing receivership issues, and pending appellate proceedings. A receiver with a narrow sale mandate may unintentionally accelerate harm before these issues are evaluated.

The need for independence is heightened by the case's existing structure. The Projects have already been subject to multiple layers of court-supervised administration, including the existing Monitor, the Distribution Administrator, and the separate CTBC Receiver established by Dkt. 454. Those roles may intersect with any future sale process, lien-priority analysis, investor documentation, distribution mechanics, title review, operating-expense decisions, and preservation of EB-5 records. For that reason, the selected receiver or liquidation agent should be demonstrably independent from all prior case actors and capable of evaluating prior

4

receivership, monitoring, creditor, and distribution issues without institutional alignment or appearance of divided loyalty.

For these reasons, defendant respectfully submits that the Court should select a candidate whose background includes restructuring and distressed real estate, not merely liquidation. The selected professional should be capable of preserving the Projects, evaluating liens and creditor rights, maintaining records, coordinating with immigration counsel, assessing refinancing or recapitalization alternatives, and reporting to the Court before any irreversible sale process begins.

### IV.    Procedural Safeguards Defendant Respectfully Requests

If, notwithstanding the pending Second Circuit proceedings, the Court proceeds to appoint a receiver or liquidation agent before the Second Circuit rules on the pending stay motion, defendant respectfully requests that the appointment order include the following procedural safeguards. These safeguards do not impair the Court's equitable supervisory authority and are calibrated to preserve project, investor, and appellate interests pending Second Circuit review. Defendant does not seek to obstruct ordinary preservation, maintenance, insurance, security, tax compliance, rent collection, or recordkeeping. The requested safeguards are directed only to preventing irreversible sale-related or EB-5-documentation harm before appellate review.

**(1) Preservation of Project Records and EB-5 Documentation.** The receiver shall preserve and maintain, and shall not destroy, transfer, alter, or render inaccessible: (a) all EB-5 investor records, including K-1s, capital contribution records, partnership-interest records, and limited partnership agreements; (b) all USCIS and I-829 supporting documentation, including job-creation evidence, regional center compliance records, and project expenditure records; (c) all project tax records; (d) all corporate, accounting, and financial records of the project entities; and (e) all communications related to the foregoing.

**(2) Preservation Pending Second Circuit Resolution.** Pending the Second Circuit's resolution of the Emergency Motion for Stay Pending Appeal (DktEntry: 14.3) in *SEC v. Xia*, Nos. 25-1683(L), 26-549(Con), 25-2039(Con), 26-1010(Con), and 26-1050(Con), the receiver shall not: (a) market the Eastern Mirage or Eastern Emerald Projects or any portion thereof for sale; (b) list the Projects or any portion thereof for sale; (c) engage brokers or marketing professionals to market the Projects; (d) form or populate a data room for purposes of marketing the Projects; (e) solicit bids from potential purchasers; (f) negotiate sale, transfer, or disposition of any ownership interest in the Projects; or (g) take any other implementation step that would, if completed, render the pending stay motion practically moot under *Sriram v. Preferred Income Fund III Ltd. P'ship*, 22 F.3d 498, 501 (2d Cir. 1994). For the avoidance of doubt, this safeguard does not restrict ordinary preservation, maintenance, repair, insurance, security, tax-payment, leasing, rent-collection, or record-keeping activities.

**(3) Conflict and Independence Disclosures.** At minimum, any proposed receiver should provide disclosures comparable to those required of a court-appointed neutral, including: (a) any prior or current relationship of the receiver, the receiver's firm, or the receiver's counsel with the SEC, CTBC Bank Corp. (USA), the existing CTBC Receiver Trigild IVL or its principal Ian V. Lagowitz, the Distribution Administrator, the existing Monitor, the Mortgage Borrowers, the Business Loan Borrowers, the project entities, defendant Xia, prior or potential bidders, lenders, brokers, investors' counsel, or any party or non-party with an interest in the Projects;

(b) any economic, professional, or fiduciary relationship that could reasonably be perceived as creating a conflict in connection with the receivership; and (c) the receiver's proposed scope of authority, fee structure, and operational mandate. Such disclosures should be filed within fourteen (14) days of appointment.

**(4) EB-5/I-829 Compliance Undertaking.** The receiver shall undertake to: (a) cooperate with pending I-829 petitioners and counsel in providing project documentation reasonably necessary to support pending and imminent USCIS adjudications; (b) absent further Court order after notice to all parties, take no action that would materially impair the EB-5 "at-risk" structure or the availability of documentation needed for pending I-829 petitions; and (c) consult with USCIS-recognized regional center counsel before taking any step that could materially affect investor immigration positions.

**(5) Tax and Common-Charge Reporting.** The receiver shall file monthly status reports on the docket reflecting: (a) the status of all real and personal property tax obligations of the project entities; (b) the status of all condominium common-charge obligations; (c) the status of all utility, insurance, and other ordinary operating expenses; (d) all receipts and disbursements of the receivership; and (e) any material developments. The first such report shall be filed on or before the twenty-fifth (25th) day of the month following appointment.

**(6) Evaluation of Non-Liquidation Alternatives.** Before initiating any sale process, the receiver should be required to evaluate and report on non-liquidation alternatives, including refinancing, recapitalization, completion financing, leasing, tax and common-charge cure plans, and any bona fide third-party proposal that would preserve project value and EB-5 documentation integrity. The receiver shall report the receiver's evaluation to the Court before implementing any sale process.

**(7) Coordination with Existing Receivership and Distribution Plan.** The receiver shall coordinate with: (a) the existing CTBC Receiver established by Dkt. 454 (Trigild IVL / Ian V. Lagowitz) regarding any matters affecting the eleven Beech Avenue Secured Units or related collateral; (b) the Distribution Administrator regarding the court-approved Distribution Plan (Dkt. 500-3) and the EB-5 investor election mechanism contemplated thereby (Dkt. 461 ¶8); and (c) such other court-supervised parties as the Court may direct. Such coordination should not be understood as deference. The receiver should independently assess any issue affecting project value, investor documentation, lien priority, title, or distribution consequences before recommending any sale-related step.

**(8) Return to the Court for Sale Authorization.** The receiver shall not consummate any sale, transfer, or other disposition of any ownership interest in the Projects without prior approval of this Court on notice to all parties, including defendant.

**(9) Title-and-Lien Report Before Any Sale Process.** Before any receiver is authorized to market, list, or otherwise initiate a sale process for Eastern Mirage or Eastern Emerald, the receiver should be required to file a comprehensive title-and-lien report on the docket identifying all recorded liens, judgments, default judgments, mortgages, lis pendens, tax liens, common-charge arrears, mechanics' liens, restraining orders, and pending claims affecting title to the Projects; the asserted priority of each such claim; and any pending litigation, intervention motions, or related proceedings that may affect title or distribution. The report should be served on all parties, on Mr. Mushkudiani, and on any other interested lienholders, with an opportunity to respond before

6

any sale process begins. The report should additionally identify whether each asserted lien arose before or after the December 8, 2022 Preliminary Injunction Asset Freeze Order (Dkt. 217).

## V.    Conclusion

For the foregoing reasons, defendant respectfully requests that the Court (i) defer entry of any order appointing a receiver or liquidation agent pending the Second Circuit's resolution of the pending Emergency Motion for Stay Pending Appeal; (ii) consider defendant's position regarding candidates as set forth in Section II above; and (iii) include the procedural safeguards described in Section IV in any appointment order. Defendant reserves all appellate rights and respectfully preserves all objections set forth in the pending Second Circuit submissions.

Thank you for the Court's consideration.

Respectfully submitted,
Richard Xia, pro se
42-55 Saull Street
Flushing, New York 11355
richard.xia@fleetfinancialgroup.com
(718) 288-5797
May 18, 2026

Enclosure:   Exhibit A – Biography of Daniel A. Lowenthal, Esq. (Patterson Belknap Webb & Tyler LLP)
cc:   All counsel of record (via ECF)

# Exhibit A





# Daniel A. Lowenthal

Partner

dalowenthal@pbwt.com
212.336.2720

Mr. Lowenthal, Chair of the firm's Business Reorganization and Creditors' Rights Practice, has earned recognition as a skilled advocate in corporate restructurings and bankruptcies.  He has vast experience representing clients in distressed real estate matters involving receiverships and chapter 7 and 11 cases.  Mr. Lowenthal also represents bankruptcy trustees and examiners, creditors' committees, trade creditors, and indenture trustees, in both domestic and international cases.

He currently represents a major tenant of a commercial development that was recently placed into receivership in New York State Supreme Court in Queens, a case that was filed following the mortgagors' default on more than $300 million in loans.  He has represented joint venture owners of a recycling facility that was placed into receivership and then chapter 11.  He has also represented the interests of unsecured creditors in the bankruptcy of residential real estate projects located in multiple states as well as the post-chapter 11 trustee concerning the liquidation of certain properties.  In addition, Mr. Lowenthal represented the anchor tenant in a building in Brooklyn that filed chapter 11.  He also represents landlords and purchasers of distressed real estate in some of the largest retail bankruptcies.

In his 38 years as a practicing lawyer in New York City, Mr. Lowenthal  has earned recognition as an advocate for clients in an array of corporate restructurings, many of which stemmed from significant fraudulent enterprises and Ponzi schemes.  He is the only attorney to have served as counsel to the court-appointed Examiners in both the FTX Trading Ltd. and Enron Corporation bankruptcy cases, two of the nation's most high-profile failed enterprises due to corporate malfeasance.

Mr. Lowenthal represents U.S. and non-U.S. business entities in a wide range of complex litigation, including creditors' rights disputes, purchases of intellectual property assets, distressed debt acquisitions and restructurings, and multiple real estate transactions.

He is a regular speaker and writer on distressed debt topics.  He has lectured in many countries throughout four continents, and his articles have been distributed to readers in almost 100 countries.  Mr. Lowenthal has presented for the Practicing Law Institute, INSOL International, INSOL Europe, the Association of Corporate Counsel, and the American Bankruptcy Institute.  He has been recognized by *JD Supra*'s Readers' Choice Awards as one of the top ten authors in the bankruptcy category from 2023-2026.  Mr. Lowenthal has received Martindale-Hubbell's highest rating of "AV Preeminent" based on both peer and client reviews.  He has also been recognized in the *2022-2026* editions of the *Lawdragon 500 Leading U.S. Bankruptcy & Restructuring Lawyers* guide.

**Representative Matters**

- Representing a global nonprofit organization related to a receivership proceeding against the landlord of a major production studio.

- Lead counsel to the Official Committee of Unsecured Creditors of a multi-state real estate developer with liabilities in excess of $1 billion. The bankruptcy court praised the "remarkable results" achieved through the "extraordinary efforts" of Patterson Belknap attorneys in this case.

- Represented the owners of a pulp recycling facility that, after being placed into receivership, filed chapter 11.

- Won a crucial decision of first impression for financial institutions whose security interests were challenged by the bankruptcy trustee in The Bennett Funding Group, Inc., cases that stemmed from an alleged $1 billion Ponzi scheme.

- Represented court-appointed Examiner in the chapter 11 cases of FTX Trading Ltd., including assisting him with investigations summarized in two publicly filed reports.

- Represented foreign administrators of a global alternative energy company in its chapter 15 cross-border case, successfully petitioning the court for the return of over $28 million held in a U.S. bank account.

- Represented a major real estate development company in acquisitions of retail locations in chapter 11 section 363 sales.

- Represented noteholders of a Brazilian company in a lawsuit in New York State Supreme Court arising from a default of hundreds of millions of dollars of debt.

- Represented the Indenture Trustee for a series of unsecured notes in connection with an Italian insolvency proceeding.

- Representing landlords in the bankruptcy cases of WeWork Inc. and Express, Inc.

- Representing an international financial institution in cross-border insolvency cases pending in Grand Cayman and Hong Kong resulting from a fraudulent enterprise located in China.

- Represented the Co-Chair of the Official Committee of Unsecured Creditors on over $5 billion of unsecured debt in one of the largest, most complex cases filed in Delaware, the Energy Future Holdings Corp. cases.

- Represented an international law firm in a proceeding before the U.S. Bankruptcy Court in the Southern District of New York relating to alleged conflicts of interest.

- Represented the winning bidder in an auction to acquire the assets and intellectual property from a chapter 7 debtor over the objection and competing bid of the debtor's secured lender.

- Represented Harrison J. Goldin, an Examiner in the Enron Corp. case, in an investigation of many of Enron's special-purpose-entity transactions.

- Represented international creditors, including entities in the U.K., the Netherlands, and Germany, in the Lehman Brothers Holdings Inc. bankruptcy cases.

## Admissions

- U.S. Courts of Appeals, Second Circuit; Third Circuit

- U.S. District Court, Southern, Eastern, and Northern Districts of New York

- New York

## Professional Activities

MEMBERSHIPS: American Bar Association; Bankruptcy and Corporate Reorganization Committee of the New York City Bar Association; American Bankruptcy Institute; Board of Editors, *The Bankruptcy Strategist;* INSOL International; INSOL Europe; Turnaround Management Association, and the New York Institute of Credit.

**Education**

- The George Washington University Law School (J.D., *with honors*, 1987)

- Duke University (A.B., *magna cum laude*, 1982)


**Recent Publications**

- "The Barton Doctrine: Suit Against Receiver Did Not Require Court Permission," *The Bankruptcy Strategist* (March 31, 2025)

- "Arbitration and Bankruptcy: Can a Debtor that is Party to an Arbitration Agreement Lack Authority to Arbitrate Core Bankruptcy Claims?," *The Bankruptcy Strategist* (April 30, 2026)

- "Bankruptcy Court Denies Motions to Convert Case and to Appoint an Examiner," *Patterson Belknap Bankruptcy Update* (April 28, 2026)

- "Bankruptcy Avoidance Law: Court Allows Bankruptcy Trustee to Sue a Subsequent Transferee Even When the Initial Transferee Isn't a Defendant," *Patterson Belknap Bankruptcy Update* (February 9, 2026)

- "Federal District Court Ruling Upholds Uptier Transactions," *INSOL International* (February 18, 2026)

- "Bankruptcy Avoidance Law: Court Allows Bankruptcy Trustee to Sue a Subsequent Transferee Even When the Initial Transferee Is Not a Defendant," *Patterson Belknap Bankruptcy Update* (February 9, 2026)

- "Judge Blasts Defendant for Ignoring Discovery Obligations and More," *Law.com* (January 27, 2026)

- "Debts Related to Ponzi Scheme Deemed Non-Dischargeable," *Patterson Belknap Bankruptcy Update* (December 29, 2025)

- "Bankruptcy Court Clarifies Scope of Trustee's Due Diligence Prior to Filing Preference Action," *Patterson Belknap Bankruptcy Update* (October 31, 2025)

- "Ninth Circuit Rules that Decision Reimposing the Automatic Stay is Immediately Appealable," *The Bankruptcy Strategist* (October 1, 2025)

- "The Divestiture Rule Explained: A Judge-Made Doctrine Doesn't Necessarily Deprive a Lower Court of Ongoing Subject Matter Jurisdiction," *The Bankruptcy Strategist* (June 30, 2025)

- "Non-Creditor Was Entitled to Actual Notice of A Chapter 11 Plan's Injunction Barring Suits Against Insurance Carriers," *The Bankruptcy Strategist* (May 14, 2025)

- "Formal & Informal Negotiation ASAP!" *Eurofenix, the Journal of INSOL Europe* (Spring 2025)

- "A Primer on Chapter 11 Trustees & Examiners," *New York Law Journal* (April 9, 2025)

- "Court Rules Mere Conduit Defense Not Suitable for a Motion to Dismiss," *The Bankruptcy Strategist* (November 14, 2024)

- "Ch. 11 Ruling Shows Early Attempt To Tackle Purdue Fallout," *Law360* (September 5, 2024)

- "Individuals Charged with Bankruptcy Crimes Are Connected to Controversial Mayor of Dolton, Illinois," *Patterson Belknap Bankruptcy Update* (August 26, 2024)

- "Prosecutors May Use Evidence Obtained from Trustee Without Warrant," *Patterson Belknap Bankruptcy Update* (July 31, 2024)

- "Courts Split Over Requirement for Chapter 15 Jurisdiction In the U.S.," *The Bankruptcy Strategist* (June 13, 2024)

- "Bankruptcy Courts Have Contempt Power, Del. Case Reminds," *Law360* (May 14, 2024)

- "Seventh Circuit Addresses Scope of Section 546(e)," *Patterson Belknap Bankruptcy Update* (March 29, 2024)

- "Bankruptcy Ruling Stresses Value of Client Communication," *Law360* (March 25, 2024)

- "Navigating Asset Tracing Challenges in Bankruptcy," *Law360* (December 11, 2023)

- "Section 363 Ruling Lines Up With Avoidance Action Precedent," *Law360,* (September 26, 2023)

- "Post-Siegel Trustee Fee Rulings Further Debtor-Friendly Trend," *Law360*, (June 9, 2023)

- "A Curious Bankruptcy Case Where Bad Behavior's Overlooked," *Law360*, (April 14, 2023)

- "Substantial Contribution: a New Decision from the 3rd Circuit," *Westlaw Today,* (January 11, 2023)

- "U.S. Bankruptcy Court Denies Chapter 15 Recognition to a Case on the Isle of Man," *The Bankruptcy Strategist,* (January 1, 2023)

- "FTX Bankruptcy Provides A Road Map For Crypto Regulation" *Law360,* (December 1, 2022)

- "What to Do If Your Tenant Is Bankrupt" *American Bar Association,* (November 29, 2022)

- "Bankruptcy Ruling Provides Clarity On Administrative Priority" *Law360*, (October 28, 2022)

- "Golf Project Ch. 11 Ruling Is A Deal Term Negotiation Lesson" *Law360*, (August 29, 2022)

- "Examining Equitable Mootness After High Court Ch. 11 Denial" *Law360,* (July 26, 2022)

- "Recent Decision on Derivative Standing by a Creditors' Committee to Challenge a Lender's Liens" *INSOL International News Update,* (October 28, 2021)

- "The Impact of the CARES Act on US Consumers, Small Businesses, Bankruptcy and Insolvency Laws and Procedures" *International Corporate Rescue*, (May 18, 2020)

- "Bankruptcy Sales Under Section 363: The Business Judgment Test That Judges Often Cite Isn't Always the One They Use" *Norton Journal of Bankruptcy Law and Practice*, (February 2020)

- "Bankruptcy Courts Don't Need to Hold an Evidentiary Hearing in Order to Appoint a Chapter 11 Trustee" *National Association of Credit Management, eNews,* (January 2, 2020)

## Recent Speaking Engagements

- "Dissecting the Role of Chapter 11 Examiners and Trustees," Celesq Webinar (April 17, 2025)

- "Formal and Informal Negotiation ASAP!" INSOL Europe's 2024 Congress in Sorrento, Italy (October 4, 2024)

- "Tracing and recovery of debtor's assets by insolvency practitioners," INSOL Europe Annual Congress in Amsterdam (October 13, 2023)

- "Are Bankruptcies/Insolvencies/Restructurings Returning?," SCG Legal's Midyear Meeting in Berlin, Germany - Panel Moderator (May 12, 2023)

- "An Overview of Chapter 11," Conseil National des Administrateurs Judiciaires et des Mandataires Judiciaires in La-Colle-sur-Loup, France (June 10, 2022)

- "Equitable Mootness: What Should the Law Be?" American Bankruptcy Institute's Annual Spring Meeting in Washington, D.C. (April 29, 2022)

- "Chapter 15 at 15," New York City Bar Committee on Bankruptcy and Corporate Reorganization — Event Co-Chair (May 12, 2021)