*** Filed ***
09:43 PM, 21 May, 2026
U.S.D.C., Eastern District of New York

The Honorable Pamela K. Chen

United States District Judge

United States District Court

Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York 11201

**Re:** *Securities and Exchange Commission v. Xia, et al.*, **No. 21-cv-05350 (PKC)(JAM) — Response of Pro Se Defendant Richard Xia to the Court's May 14, 2026 Scheduling Order Concerning the Monitor's Letter at ECF No. 771**

Dear Judge Chen:

Pro se Defendant Richard Xia ("Defendant Xia" or "Xia") respectfully submits this letter response to the Court's Scheduling Order dated May 14, 2026, which directs Xia to (i) describe what steps, if any, Xia has taken to ensure continued insurance coverage for the Eastern Emerald and Eastern Mirage Projects (collectively, the "Projects"), and (ii) explain why Xia has not responded to the outreach asserted in the Monitor's letter at ECF No. 771.

Xia answers both questions directly in this letter. Xia affirms support for continued insurance coverage at the Projects to protect the EB-5 investors for whose benefit this monitorship was established, *see* ECF No. 11, preamble (appointing M. Scott Peeler as Monitor "for the protection of investors"), including, as Defendants have explained on the record since 2022, coverage that is in fact *adequate* to insure active construction projects of this magnitude. The steps Xia is permitted to take to secure renewal are fixed by the Asset Freeze Order and the Monitor Order. They do not include, and have never included, unilaterally procuring or paying for insurance. They consist of consenting to, or objecting to, a renewal package the Monitor places before the Court, which is a package the Monitor has filed in each of the four prior cycles (2022, 2023, 2024, 2025) but has not filed for 2026.

The procedural posture at the heart of the Monitor's May 14, 2026 letter is therefore one created by the Monitor's own departure from the practice every prior cycle has followed. ECF No. 771 is not a Motion for Release of Funds; it is a two-page letter that contains no quotes, no declaration,

no recommended carrier, no premium, no proposed order, and no exhibits, including no exhibit substantiating the bare assertion that Xia has been non-responsive to outreach. Xia has not received from the Monitor or the Monitor's firm any concrete renewal proposal in this cycle. The appropriate disposition of ECF No. 771 is for the Court to direct the Monitor to file the customary Motion for Release of Funds for Insurance Coverage on a schedule that permits renewal in advance of the June 13, 2026 expiration, with a meaningful opportunity for Xia, the Plaintiff Securities and Exchange Commission, and other interested parties to be heard.

Xia is a pro se litigant whose papers must be construed liberally and to raise the strongest arguments they suggest. *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). Xia respectfully asks the Court to read the procedural history below with that standard in mind and, additionally, to require evidentiary support for the principal factual assertion the Monitor has placed before the Court at ECF No. 771.

## I. The Monitor Order Vests Review of the Projects' Insurance, and the Duty To Procure Adequate Coverage, In the Monitor.

The Order Appointing Monitor expressly authorizes and empowers the Monitor to "[r]eview insurance policies covering Fleet and the Xia Entities, as well as affiliates, officers, and directors of such entities." ECF No. 11 ¶ 11(k). The Monitor's appointment was further premised on the Court's finding that monitorship was "necessary and appropriate for the protection of investors," *id.* (preamble): the equitable purpose for which federal courts routinely vest broad authority in court-appointed officers in SEC enforcement actions. *See, e.g., SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972); *SEC v. Am. Bd. of Trade, Inc.*, 830 F.2d 431, 436-37 (2d Cir. 1987).

The Monitor has from the outset of this matter understood that the duty under ¶11(k) extends not merely to "review" of existing policies but to the active procurement of adequate coverage for the Projects. In the Monitor's very first insurance-funding motion in May 2022, the Monitor represented to the Court that "the Monitor's team began working to obtain proper CGL *and Builder's Risk insurance coverage* from independent, third-party insurance providers that sufficiently addresses the current needs of the Projects." ECF No. 139-1 ¶7 (emphasis added).

The Monitor reported in the same submission that quotes for Builder's Risk on the Eastern Mirage Project had already been obtained as of April 21, 2022, *id.* ¶ 13, and that "[t]he Monitor and his team are in negotiations with that carrier now and will proceed with the filing of that motion the moment the necessary coverage is assured in writing." *Id.* ¶15.

The Monitor's own contemporaneous words frame this clearly: procurement of proper Commercial General Liability *and* Builder's Risk coverage was, in May 2022, a duty the Monitor had affirmatively undertaken on the Court's behalf and was actively pursuing.

## II.  The Asset Freeze Order Precludes Defendant Xia from Unilaterally Renewing the Policies.

The Court's Preliminary Injunction Freezing Assets, ECF No. 217, incorporated into the Final Judgment and continuing in full force, prevents Xia from paying an insurance premium from any frozen account except by order of this Court on motion of the Monitor. *See* ECF No. 460 (Final Judgment) (continuing the Monitor Order and Preliminary Injunction "in full force and effect"). The exclusive procedure the Court has ever sanctioned for funding the Projects' insurance has been a Monitor-filed Motion for Release of Funds, supported by a declaration and exhibits and culminating in a so-ordered Proposed Order. *See infra* §III and Table.

It follows that Xia cannot, consistent with the Court's Orders, "tak[e] the steps necessary to renew the insurance," ECF No. 771 at 2, as a unilateral matter. The only steps Xia is permitted to take in a renewal cycle are (a) to confer with the Monitor regarding a concrete proposal the Monitor has prepared, and (b) to consent to, or object to, that proposal once presented. Xia has consistently performed those steps when the Monitor has placed a proposal before the Court: Xia consented to the procurement of renewed CGL and Excess coverage in 2025 (ECF No. 602), without waiver of the scope-adequacy objection preserved in 2024 (ECF No. 442); and Xia raised that scope-adequacy objection on the record in 2024 with the support of an independent insurance professional (ECF No. 442-1, Declaration of Jason Cavallo). To the extent ECF No. 771 suggests that Xia has been uncooperative, the record reflects the opposite.

### III.  The Monitor Has Followed the Same Procedural Path in Every Prior Renewal Cycle, and Has Now Departed From It Without Explanation.

In every renewal cycle from 2022 through 2025, the Monitor, and not Defendant Xia or Fleet, has been the moving party on Project insurance. In each cycle the Monitor: (i) identified carriers; (ii) obtained quotes; (iii) selected coverage; (iv) prepared a Motion for Release of Funds with supporting declaration, exhibits, and proposed order; and (v) obtained the Court's authorization. The pattern is set out below.

| Cycle | Monitor's Filing | Court's Disposition |
|---|---|---|
| 2022 | ECF Nos. 132 (Peeler Decl.); 139 (Motion for Release of Funds for Insurance Coverage), with ECF No. 139-1 (Monitor's memorandum, expressly committing to procure builder's risk coverage) | Granted |
| 2023 | ECF No. 332 (Second Motion for Release of Funds for Insurance Coverage), with Peeler Declaration and Exhibits A–D; supplemented by ECF No. 333 (letter in response to the Court's inquiry on premium variances) | Granted, ECF No. 334 (July 31, 2023) |
| 2024 | ECF Nos. 436 (Motion); 437 (Peeler Decl. and Proposed Order); 438 (Peeler Decl. and Exhibits A–D) (CGL/Excess procured through Atlantic Coast Risk Services for the 2024-2025 policy period) | Granted, ECF No. 441 (June 16, 2024); Defendants' scope-adequacy objection (ECF No. 442) preserved on the record |
| 2025 | ECF No. 602 (Consent Motion for Release of Funds to Renew Insurance Policies), with Peeler Declaration, Hotaling invoice as Exhibit A, and Proposed Order | Granted same day, ECF No. 603 (June 6, 2025) |
| **2026** | **ECF No. 771: a two-page letter. No motion. No declaration. No quotes. No proposed order. No exhibits.** | — |

Each prior renewal motion was filed between mid-May and mid-July of the relevant year, providing several weeks of runway for Court consideration in advance of the June expiration. Coverage in the current cycle expires on June 13, 2026; ECF No. 771 was filed on May 14,

2026, leaving thirty days. By the Monitor's own description in the letter, however, the procurement work has not been done: the Monitor describes recent communications with Xia not as transmissions of a concrete renewal proposal but as inquiries about whether Xia would "undertake renewal himself" or "like our assistance" in doing so. ECF No. 771 at 2. The Monitor represents only that the Monitor's team "remain[s] willing and prepared to assist Mr. Xia in procuring renewed insurance coverage for the Projects, as we have done for several years." *Id.* There is no representation that the Monitor has in fact solicited quotes for the 2026-2027 policy period from current and/or alternative carriers, or prepared a renewal motion for the Court's consideration.

The Monitor Order, ECF No. 11 ¶ 11(k), does not contemplate inverting the parties' roles when the Monitor has not yet performed the procurement work. Paragraph 11(k) places the duty of review on the Monitor. Paragraph 5 gives Fleet and the Xia Entities the right to disagree with the Monitor's *recommendation* on enumerated grounds, but it presupposes that a recommendation has first been made. A Defendant cannot meaningfully "disagree" with a recommendation that has not been formulated. That is the procedural posture ECF No. 771 attempts to extract from the Court today, and Defendant Xia respectfully submits that the Court should decline the invitation.

## IV.  The Builder's Risk Coverage the Monitor Committed To Procure in May 2022 Has, Four Years Later, Still Not Been Procured, and the Investors Whose Funds the Monitor Was Appointed To Protect Are Now Bearing the Cost of That Inaction.

Although Xia does not ask the Court to adjudicate coverage-scope adequacy on the limited record before it today, Xia respectfully preserves the scope-adequacy position articulated on the record at ECF No. 442 (June 20, 2024) and ECF No. 442-1 (Declaration of Jason Cavallo). Defendant Xia respectfully directs the Court's attention to the following record sequence concerning that issue, which bears directly on the Court's evaluation of the Monitor's current posture:

First, in the May 25, 2022 insurance-funding motion, the Monitor expressly represented to the Court that the Monitor's team "began working to obtain proper CGL and Builder's Risk insurance coverage from independent, third-party insurance providers." ECF No. 139-1 ¶7. The Monitor reported that quotes for Builder's Risk on Eastern Mirage had been obtained by April

21, 2022, and that the Monitor was in active negotiations with a carrier, committing to file a separate motion "the moment the necessary coverage is assured in writing." *Id.* ¶¶13, 15.

Second, in the four years since that representation, no Builder's Risk coverage has been procured by the Monitor for either Project. The Monitor's 2023 renewal motion (ECF No. 332) covered only CGL and Excess; the 2024 renewal motion (ECF Nos. 436, 437, 438) covered only CGL and Excess through monitor affiliated Atlantic Coast Risk Services; the 2025 renewal motion (ECF No. 602) covered only CGL and Excess through Hotaling Property & Casualty LLC. None of those motions included Builder's Risk coverage, and none reported on the 2022-vintage Builder's Risk negotiations the Monitor had described as imminent.

Third, independent industry analysis on the record confirms that the Monitor's procurement results have, throughout, been below the coverage scope the Projects require. The Declaration of Jason Cavallo, a 20-year insurance professiona, concluded that proper property insurance "should have been executed at the beginning of the monitorship," that the Monitor's procured policy was "deemed inadequate," and that the cumulative deterioration of the Projects without proper coverage and winterization has rendered renewal "nearly impossible or prohibitively expensive." ECF No. 442-1 ¶¶ 5, 10, 11. Mr. Cavallo warned, in particular, that "[o]nce a project stops and if there is no maintenance (such as winterization, etc.) for three years, it becomes nearly impossible or prohibitively expensive to obtain another property insurance policy due to the lack of maintenance and winterization protection," and that "[t]his has severely impacted the projects in question." *Id.* ¶11.

Fourth, and structurally telling: the Monitor has had, for nearly four years, the institutional resources, the unrestricted authority under the Monitor Order, and access to frozen funds (subject only to Court approval on the Monitor's own motion) to procure Builder's Risk coverage. The Monitor represented in May 2022 that the work was nearly complete. The Court, the Defendants, and the EB-5 investors are still waiting to see the result. ECF No. 771, a letter that does not address Builder's Risk procurement, does not report on the 2022 negotiations, and does not even include a quote package, is the latest manifestation of that pattern, not a departure from it.

Fifth, and most concretely: the consequences of the four-year coverage gap are no longer hypothetical, and the investors the Monitor was appointed to protect are already absorbing the loss. On April 29, 2025, the New York City Department of Buildings issued NYC DOB

Summons No. 39146424Z, citing violation of NYC Administrative Code §28-301.1 at the Eastern Mirage Project, 42-31 Union Street, Queens, New York (Class 1; standard penalty $2,500; maximum penalty $12,500). The summons charges, in relevant part, "Failure to maintain the facade of the building," noting that "[a]t time of inspection, it was observed that there are several curtain wall panels that are cracked at exposure 1 and 4 of the facade."

The April 29, 2025 inspection occurred squarely within the policy period of the Commercial General Liability and Excess Liability coverage the Monitor procured for the 2024-2025 cycle through Monitor affiliated Atlantic Coast Risk Services (ECF Nos. 436, 437, 438; granted at ECF No. 441 on June 16, 2024). The category of physical damage observed, including cracked curtain wall panels on an active 18-story construction site, is precisely the category of construction-period exposure that an adequate coverage package, including the Builder's Risk coverage the Monitor expressly committed to procure in May 2022, exists to insure against. Mr. Cavallo's 2024 declaration foreshadowed exactly this consequence: where construction stops and maintenance fails for an extended period, physical deterioration follows and the cost of remediation falls on the project. ECF No. 442-1 ¶11. The April 29, 2025 summons is the documented manifestation of the risk Mr. Cavallo identified.

The financial consequence falls on the very class of persons the monitorship was established to protect. Any civil penalties assessed by NYC DOB under §28-301.1, and any remedial costs to repair or replace the affected curtain wall panels, will be paid from the frozen funds the Monitor was appointed to administer for the benefit of EB-5 investors. *See* ECF No. 11, preamble. Those are the losses an adequate construction-period coverage program, including the Builder's Risk component undertaken at ECF No. 139-1 ¶¶7, 13, 15 (May 2022), would have been designed, at minimum, to offset. Against that record, ECF No. 771's attempt to attribute the 2026 procurement delay to Defendant Xia's purported non-response, without any supporting exhibit, while remaining silent both on the four-year-stale Builder's Risk procurement and on the consequences that inaction has already produced, respectfully presents a record that the Court should not be asked to credit on bare assertion alone.

Defendant Xia respectfully submits that the Court can address the immediate need for continued CGL and Excess coverage in time for the June 13, 2026 expiration without resolving the scope-adequacy question on this letter. Both, however, are directly answerable on the same procedural

fix: directing the Monitor to file a motion that, in addition to identifying the proposed carrier(s) and premium(s) for the 2026-2027 cycle, reports, at last, on the status of the Builder's Risk procurement effort the Monitor undertook in 2022, and on the Monitor's plan (if any) to remediate the damages now accumulating against the frozen funds.

## V. The Monitor's Recent Representations Concerning Third-Party Communications at the Projects Warrant Evidentiary Support for the "No Response" Claim in ECF No. 771.

The operative premise of ECF No. 771,  and the principal factual assertion on which the Court is asked to rely, is the Monitor's unsupported statement that "[d]espite our repeated outreach, we have not received a response from Mr. Xia." ECF No. 771 at 2. That statement is accompanied by no dates, no channels, no sender or recipient addresses, no exhibits, and no certification of any kind. It stands in marked contrast to the careful evidentiary support, including declarations, invoices, applications, that the Monitor has supplied in every prior renewal cycle. *See supra* §III and Table.

With appropriate respect for the gravity of an evidentiary argument concerning a court-appointed officer, Defendant Xia respectfully brings to the Court's attention the following recent, documented sequence concerning the Monitor's reporting of communications with third-party contractors at the Eastern Emerald Project:

a. On April 29, 2026, at approximately 14:23, the field supervisor of Security Fence Systems, Inc. ("SFS"), one of the two vendors engaged in the recurring berm-maintenance arrangement memorialized in the Berm Maintenance Payment Schedule at ECF No. 267-7, sent the text messages reproduced in the first part of Exhibit B. In those messages, the SFS field supervisor stated that the supervisor had "Just spoke to the attorney as well and they confirmed to please do Berm maintenance tomorrow and Friday and that *MRCE will be there to do the report*" (emphasis added). When asked which attorney was the source of that instruction, the SFS field supervisor identified the source as "Arentfox," adding: "They are the attorneys who pay us.".

b. On May 15, 2026, at approximately 15:01, the Mueser Rutledge Consulting Engineers ("MRCE"), the engineering firm engaged for the recurring berm inspection function

memorialized in the same payment schedule at ECF No. 267-7, sent the text message stating: "I confirmed we were not there May 1st.".

    c.   Taken together, the communications reproduced in Exhibit B reflect a direct factual conflict between (i) the representation that the Monitor's firm conveyed to SFS on April 29, 2026 (that MRCE had been scheduled to perform a May 1, 2026 inspection at the Eastern Emerald Project) and (ii) MRCE's own contemporaneous confirmation that MRCE had not in fact been so scheduled and did not appear. The plain implication of the documents is that SFS was directed by the Monitor's firm to proceed with berm-maintenance work in reliance on a scheduled MRCE inspection that was never arranged.

Defendant Xia emphasizes that Xia does **not** ask the Court, in this response, to adjudicate the broader questions that Exhibit B may raise concerning the Monitor's third-party reporting practices, nor to revisit the Court's prior orders regarding Monitor removal. *Cf.* 6/25/2024 Scheduling Order; 9/4/2024 Docket Order. Xia raises this sequence for the limited evidentiary purpose of informing the Court's evaluation of the unsupported "no response" representation in ECF No. 771. Where the Monitor's recent documented representation concerning a contractor communication has been contradicted by the contractor's own contemporaneous statement, the Monitor's substantially identical unsupported representation concerning communications with a pro se Defendant warrants similar evidentiary support before being credited, particularly where, as in ECF No. 771, the proposed consequence is to shift to the pro se Defendant a duty that ECF No. 11 ¶11(k) assigns to the Monitor.

## VI.  Defendant Xia's Direct Response to the Court's Questions.

Subject to the foregoing , Defendant Xia respectfully responds to each of the Court's questions as follows:

**What steps Defendant Xia has taken to ensure continued coverage.** Within the scope permitted by the Asset Freeze Order, Xia has at all times stood ready to consent, comment, or object to a properly noticed Monitor renewal motion presenting an adequate coverage package. Xia cannot, under the Court's Orders, procure or pay for insurance on Xia's own initiative. Consistent with that role, Xia consented to the 2025 renewal cycle when the Monitor presented a concrete proposal at ECF No. 602, and Xia preserved the scope-adequacy objection in 2024

when no adequate alternative could be presented within the timing window that the Monitor's fast-track motion allowed (*see infra* § VII).

**Whether Defendant Xia is non-responsive to Monitor outreach.** Xia is not. Xia has been proceeding pro se since the Court's Docket Order dated July 23, 2025, which terminated Mr. Robert J. Hantman's representation of Xia personally. *See* 7/23/2025 Docket Order; *see also* 4/21/2026 Docket Order. Any outreach directed to former counsel, to Mr. Hantman, or to addresses other than the foregoing would not have reached Xia.

Since June 6, 2025, which was the date on which the Court approved the current Projects insurance coverage at ECF No. 603, Xia has not received from the Monitor or from Arent Fox Schiff LLP, at any of the proper contact channels, any communication containing (i) a renewal proposal for the 2026-2027 policy period, (ii) a recommended carrier, (iii) a quoted premium, (iv) any information addressing the scope-adequacy concerns previously raised by Defendants at ECF No. 442 (including the absence of builder's risk liability coverage), or (v) a request that Xia consent to any specific renewal structure. Xia has therefore had no concrete proposal to which to respond.

**Posture going forward.** Xia affirms support for the renewal of *adequate* insurance coverage at the Projects and does not seek to delay the procurement of any properly noticed policy. Xia expressly preserves the scope-adequacy objection set forth in Defendants' ECF No. 442, that the Monitor's renewal packages have to date omitted Builder's Risk liability necessary to insure active construction projects of this magnitude, and Xia does not, by this response, waive that objection or pre-consent to any coverage scope that does not address it. Subject to that preserved scope-adequacy objection, Xia stands ready to engage constructively with any properly noticed Monitor renewal motion.

## VII.  A Brief Word on the 2024 Cycle, and Why It Confirms Rather Than Undercuts the Procedural Path Defendant Xia Asks the Court To Direct Today.

In ruling on Defendants' June 20, 2024 letter at ECF No. 442, the Court observed in its Scheduling Order dated June 25, 2024 that Defendants had not, at that time, "proffer[ed] any alternative insurance policy that the Monitor could assess in a timely fashion." (6/25/2024 Scheduling Order.) Defendant Xia respectfully submits, without any disrespect to the Court's

ruling, that the architectural lesson of that 2024 sequence supports, rather than undermines, the relief Xia requests today.

The 2024 timing was extraordinarily compressed. The Monitor filed the initial insurance motion on June 11, 2024 (ECF No. 436). The Court granted that motion on June 16, 2024 (ECF No. 441), within five days. Defendants engaged an independent insurance professional, Jason Cavallo of Hotaling Insurance Company, on June 10, 2024, the day before the Monitor filed. *See* ECF No. 444 at 4 (Monitor's reply declaration so acknowledging). Defendants thereafter filed the formal opposition and scope-adequacy submission on June 20, 2024 (ECF Nos. 442, 442-1), four days after the Court had already granted the Monitor's underlying motion. Mr. Cavallo's declaration confirms the practical reality Defendants faced in that window: the construction-insurance market for stalled, asset-frozen projects with active DOB violations is narrow, time-sensitive, and ill-suited to parallel solicitation on a 24-hour fuse. *See* ECF No. 442-1 ¶¶10-11.

Xia and prior counsel respected the Monitor's ongoing role under ¶ 11(k) and did not run a parallel procurement effort while the Monitor was working with willing carriers. That was a procedurally appropriate posture: ¶5 of the Monitor Order contemplates that Defendants will respond to, not duplicate, the Monitor's procurement work. The lesson of 2024 is not that Xia should have proceeded with independent procurement; it is that any future cycle requires the Monitor to file the renewal motion *early enough* for the statutory and procedural response window to function. The Court's 6/25/2024 Scheduling Order reflected that architectural assumption: the Monitor procures and assesses; the Defendants may proffer alternatives within a reasonable window; and the Court resolves any disagreement on the merits. The 2026 cycle has departed from that architecture because the Monitor has not yet filed a motion. The relief Defendant Xia requests below is designed precisely to restore the architecture the Court contemplated in 2024.

## VIII.  Requested Relief.

For the foregoing reasons, Defendant Xia respectfully requests that the Court enter an Order:

a.   Directing the Monitor, within 10 days  of the Court's Order on this response, to file the customary Motion for Release of Funds for Insurance Coverage to renew the Projects' Commercial General Liability and Excess Liability coverage for the 2026-2027 policy

period, supported by quotes from current and/or any alternative carrier consulted, a declaration of the Monitor, and a proposed order;

b.  Directing the Monitor's forthcoming motion to additionally report on the status of the Builder's Risk insurance procurement effort the Monitor expressly undertook since the filing of ECF No. 139, including a statement of why Builder's Risk coverage has not been procured for either Project in the four years since that representation and what coverage options exist for the 2026-2027 cycle;

c.  Setting a response window of no fewer than 10 business days following the Monitor's motion in which Defendant Xia (and the Plaintiff Securities and Exchange Commission) may state any objection, including any scope-adequacy objection preserved from ECF No. 442, before the Court rules on the proposed coverage;

d.  Preserving Defendant Xia's right to apply, in connection with any future Monitor fee application, for an appropriate adjustment to the Monitor's compensation to reflect any procurement work that should have been performed but was not (including the Builder's Risk procurement undertaken in 2022 but not completed) and to apply for an appropriate reduction or surcharge against the Monitor's compensation in the amount of any civil penalties, repair costs, or other losses charged against the frozen funds as a consequence of the Monitor's failure to procure adequate construction-period coverage

e.  Granting such further and additional relief as the Court deems just and proper.

Defendant Xia thanks the Court for its attention to this matter. Xia stands ready to engage constructively, on the terms outlined above, in the timely renewal of insurance coverage at the Projects in advance of the June 13, 2026 expiration, without waiver of the scope-adequacy objection preserved from ECF No. 442.

Respectfully submitted,
Richard Xia, pro se
42-55 Saull Street
Flushing, New York 11355
richard.xia@fleetfinancialgroup.com
(718) 288-5797
May 21, 2026

cc:  All counsel of record (by ECF)

**Enclosures:**

- Exhibit A — NYC Department of Buildings Summons No. 39146424Z, dated April 29, 2025 (Eastern Mirage Project, 42-31 Union Street, Queens, New York)
- Exhibit B — Text Message Communications Between Eastern Emerald Project Vendors

# Exhibit A

# NYCServ Violation Copy
### Internet



39146424Z

---

**NYC Buildings**

SUMMONS NUMBER:     039146424Z

**SUMMONS AND COMMISSIONER'S ORDER•CIVIL PENALTIES APPLY**
**ENFORCEMENT AGENCY: NYC DEPT OF BUILDINGS**
**AGENCY ADDRESS AND WEBSITE:** 280 Broadway, New York, NY 10007   **www.nyc.gov/buildings**

| | |
|---|---|
| **RESPONDENT:** SUPERB CONSTRUCTION MGT | **(FIRST NAME/ENTITY, LAST)**   General Contractor |
| **MAILING ADDRESS:** 58 BROWER AVENUE WOODMERE, NY 11598 | **DOB LICENSE/REGISTRATION#:** 620355 |
| | **CELL PHONE:**   N/A |

**DATE OF OCCURRENCE:** 04/29/2025     **TIME OBSERVED:** 12:50 PM     **BOROUGH:** Queens

**PLACE OF OCCURRENCE:** 42-31 UNION STREET     **BLOCK:** 05181    **LOT:** 00015   **BIN:** 4610564

You must appear or respond to the details of violation(s) below. For HOW TO RESPOND, see next page.

**HEARING DATE:** 07/08/2025     **AT:** 09:30 AM

**OFFICE OF ADMINISTRATIVE TRIALS AND HEARINGS:** <u>Queens</u> (See locations on next page)
**REFER TO THE SUMMONS NUMBER ABOVE ON ALL CORRESPONDENCE.**

**WARNING:** If you do not appear or respond to this Summons, the City will decide the Summons against you and impose penalties. Failure to pay a civil penalty could lead to the denial of an application for, or the suspension, termination or revocation of a City license, permit or registration. In addition, the City may enter a judgment against you in court.

**COMMISSIONER'S ORDER TO CORRECT VIOLATING CONDITION(S) AND CERTIFY CORRECTION**

**CURE DATE (Zero Penalty Option, if available):** Not Applicable     **Must Appear:** ☑ **(If disputing the charge)**

**Type of Construction:** NFP     **No. of Stories:** 18     **Related Job#:** N/A

**Occupancy at Time of Inspection:** New Building     **Basis of Violation:** 4994587

Based on an inspection of the premises or the records of the Department, the undersigned has determined that you are in violation of the section of law cited below of the NYC Administrative Code, the NYC Zoning Resolution and/or Titles 1 or 2 of the Rules of the City of New York.

| Violating Conditions Observed | | | | |
|---|---|---|---|---|
| **Infraction Code** | **Class** | **Provision of Law** | **Standard Penalty** | **Maximum Penalty** |
| B102 | Class 1 | 28-301.1 | $2,500 | $12,500 |
| ☐ **Recurring Condition Aggravated I per 1RCNY 102-01(f)** | ☐ **Aggravated II Condition per 1 RCNY 102-01(f)** | ☐ **ILLEGAL CONVERSION— CLASS 1** Per 28-202.1 & 1 RCNY 102-01 additional daily penalties for continued violation of Article 210 of Title 28 also applicable | ☐ Per 28-202.1 & 1 RCNY 102-01, additional Class 1 daily or Class 2 monthly penalty may apply. | ☐ **Stop Work Order Issued:** _____ <br> ☐ **Vacate Order Issued:** _____ <br> **Vacate#:** _____ |

**Violation Detail(s):** Failure to maintain the façade of the building. At time of inspection, it was observed that there are several curtain wall panels that are cracked at exposure 1 and 4 of the façade.
**Remedy:** Repair and/replace;

THE COMMISSIONER ORDERS THAT YOU <u>TIMELY CORRECT THESE CONDITIONS AND FILE A CERTIFICATE OF SUCH CORRECTION</u>. See 1RCNY 102-01 and the instructions on certifying correction. Uncorrected violations are subject to additional violations and penalties. For certain charges, additional DOB civil penalties may apply pursuant to sections 28-213.1, 28-219.1 and 28-207.2.6 of the Administrative Code. A property owner may be liable for payment of these additional civil penalties even if not cited as respondent on this summons.

NYC Charter Sections 1048 and 1049-a and the Rules of the City of New York authorize the NYC Office of Administrative Trials and Hearings (OATH) to hold hearings. **For hearing options, see other side of this notice.**

I, an employee of the Department of Buildings, affirm under penalty of perjury that I personally observed the commission of the violation(s) charged above and/or verified their existence through a review of departmental records. False statements made herein are punishable as a Class A Misdemeanor pursuant to section 210.45 of the Penal Law.

**Issuing Officer:** A Sparacino   **Signature:** Electronically Signed by A Sparacino 04/29/2025 12:59 PM     **Badge#:** 3651     **Unit Code:** ER

**Page 1 of 2**

# Exhibit B

# EXHIBIT B

**Description.** This Exhibit consists of two screenshots of text-message communications. Part 1 reproduces text messages received on April 29, 2026 from the field supervisor of Security Fence Systems, Inc. (SFS). Part 2 reproduces a text message received on May 15, 2026 from a contact at Mueser Rutledge Consulting Engineers (MRCE). The two communications, read together, reflect a direct factual conflict between (i) the representation conveyed by the Monitor's firm to SFS on April 29, 2026 that MRCE had been scheduled to perform a May 1, 2026 inspection at the Eastern Emerald Project, and (ii) MRCE's own contemporaneous confirmation, two weeks later, that MRCE was not in fact at the Eastern Emerald Project on May 1, 2026.

## Part 1.  April 29, 2026 — Security Fence Systems, Inc. (SFS)

**Source:** Mobile telephone number (914) 906-1544, known as the contact number for the SFS field supervisor responsible for berm-maintenance work at the Eastern Emerald Project.

**Annotation.** The SFS field supervisor's identification of "Arentfox" as the source of the April 29, 2026 instruction refers to Arent Fox Schiff LLP, which the Monitor has, at all relevant times, communicated with contractors at the Projects. The reference to "the attorneys who pay us" is consistent with the fee-release procedure under the Monitor Order and Monitor's motions.



*Figure B-1: SFS field supervisor text messages received April 29, 2026.*

**Part 2.  May 15, 2026 — Mueser Rutledge Consulting Engineers (MRCE)**

**Source:** Mobile telephone number (929) 618-5450, known as the contact number for an MRCE personnel responsible for the recurring berm-inspection function at the Eastern Emerald Project.

**Annotation.** The MRCE contact's May 15, 2026 message confirms that MRCE personnel were not present at the Eastern Emerald Project on May 1, 2026 — the date on which the Monitor's firm had, sixteen days earlier (see Part 1, *supra*), represented to SFS that MRCE would be present to perform a scheduled inspection.

The two communications, read in sequence, reflect a direct factual conflict between (i) the Monitor's firm's representation to SFS, and (ii) MRCE's own contemporaneous statement.



*Figure B-2: MRCE contact text message received May 15, 2026.*