**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**

Plaintiff,

- against -

**RICHARD XIA and FLEET NEW YORK METROPOLITAN REGIONAL CENTER LLC,**

Defendants, and

**JULIA YUE, XI VERFENSTEIN, and XINMING YU,**

Relief Defendants.

------------------------------------------------------------X

**No. 21-CV-5350 (PKC)(CHK)**

**RECEIVER MICHAEL I. GOLDBERG'S MOTION FOR ORDER AUTHORIZING RETENTION OF MICHAEL T. CARR, ESQ. AND AKERMAN LLP AS COUNSEL TO THE LIQUIDATION RECEIVER**

## RECEIVER MICHAEL I. GOLDBERG'S MOTION FOR ORDER AUTHORIZING RETENTION OF MICHAEL T. CARR, ESQ. AND AKERMAN LLP AS COUNSEL TO THE LIQUIDATION RECEIVER

## INTRODUCTION

1. Michael I. Goldberg, Esq., a partner in the Bankruptcy and Reorganization Practice Group at Akerman LLP, solely in his capacity as the Court-appointed Liquidation Receiver (the "**Receiver**"), respectfully moves for entry of an order authorizing him to retain Michael T. Carr, Esq., a partner in Akerman's Litigation and Real Estate Practice Groups ("**Attorney Carr**"), and Akerman LLP ("**Akerman**") as counsel to the Receiver (Goldberg Decl. ¶¶ 1–3.) The Court appointed the Receiver by its Order Appointing Liquidation Receiver entered July 17, 2026 (Dkt. 812, the "**Appointment Order**").

2. The requested retention is expressly contemplated by paragraphs 4(b), 9(b), and 26 of the Appointment Order. Attorney Carr and Akerman will advise on title and other real-property issues;



88629773;3

negotiate and document purchase agreements; manage closings of title; assist in evaluating and resolving liens, encumbrances, and competing claims; and address legal issues arising from the marketing and sale of the Subject Properties, as defined below (Goldberg Decl. ¶ 3.)

3. The Receiver requests authorization to employ Attorney Carr and Akerman *nunc pro tunc* to August 31, 2026, the date Attorney Carr first began advising the Receiver on this action (Goldberg Decl. ¶¶ 7–8.) Attorney Carr's current hourly rate is $1,095, subject to adjustment on November 1, 2026, and subject in all respects to the Court's prior approval of compensation, the Appointment Order, and the Securities and Exchange Commission's 'Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission' (the "**Billing Instructions**"). A proposed order is attached as Exhibit A.

## BACKGROUND

4. On July 24, 2024, the Court entered Final Judgment against Defendants Richard Xia and Fleet New York Metropolitan Regional Center LLC, imposing monetary obligations. (Dkt. 460.) The March 28, 2025 deadline to satisfy those obligations passed without satisfaction. (Dkt. 812 at 1.)

5. The Court previously entered an asset-freeze order (Dkt. 11), an order appointing a Monitor to oversee and preserve the relevant real property (Dkt. 11-1), and an order appointing a Distribution Administrator to administer distributions to investors (Dkt. 461). The Court later determined that liquidation of certain real properties was necessary and appropriate. (Dkt. 740; May 4, 2026 Docket Order.) After reviewing the Receiver's credentials and finding him qualified (June 5, 2026 Docket Order), the Court appointed him as Receiver on July 17, 2026. (Dkt. 812.)

6. The Appointment Order gives the Receiver specific, limited authority to market and sell two groups of Queens County properties (collectively, the "**Subject Properties**"): (a) "**Eastern Mirage**", located at 42-31 Union Street, Block 5181, Lots 11, 14, and 15; and (b) "**Eastern Emerald**", located at 112-21 Northern Boulevard, Block 1707, Lots 1, 3, 6, 7, 8, 13, 15, 17, 19, 33, 34, 35, 36, 43, and 46. (Dkt. 812 ¶ 2.)

7. Among other duties, the Receiver must maximize the sale value of the Subject Properties, preserve their value pending sale, identify and evaluate claims to sale proceeds, establish and maintain a proceeds account, maintain complete transaction records, and file status reports and fee applications. (Id. ¶¶ 4, 9–18, 22–29.) His Initial Status Report and Liquidation Plan are due within ninety days after entry of the Appointment Order—October 15, 2026—and must identify legal counsel retained or proposed to be retained, report on title review, and identify known liens, encumbrances, and proceeds claims. (Id. ¶ 23.)

8. The contemplated sales present legal work requiring experienced New York real-estate counsel, including title diligence, analysis of liens and encumbrances, negotiation and drafting of purchase agreements, Court-approval procedures, conveyance of clear and marketable title, coordination with title companies and other professionals, closing management, and resolution of legal issues affecting sale proceeds. Prompt retention will permit that work to proceed in an orderly manner and will assist the Receiver in meeting the Court's reporting and liquidation directives (Goldberg Decl. ¶¶ 4–5.)

9. A preliminary title search on the Eastern Emerald property, conducted by Regal Title Agency on August 31, 2026, confirms the complexity of the title and encumbrance issues that counsel will need to address (Goldberg Decl. ¶ 6.) The report identifies, among other matters: a

mortgages; a lis pendens, multiple mechanic's liens filed by various contractors and suppliers; numerous Environmental Control Board liens; New York State tax warrant judgments; a sidewalk violation; outstanding building violations; open building permits; and no Certificate of Occupancy. These encumbrances will require significant legal analysis, negotiation, and resolution before the Subject Properties can be marketed and sold with clear and marketable title as contemplated by the Appointment Order.

10. The Appointment Order specifically authorizes the Receiver, with prior Court approval, to retain legal counsel "to advise on title issues, negotiate and document purchase agreements, manage the closing of title, and address any legal issues arising in connection with the sale of the Subject Properties." (Id. ¶ 9(b).) It also authorizes the Receiver to engage attorneys and other professionals to assist him (id. ¶ 4(b)), but requires an order authorizing any engagement of Retained Personnel (id. ¶ 26). This motion seeks that required approval.

**ARGUMENT**

**A. The Court Has Authority to Approve the Retention.**

11. Federal Rule of Civil Procedure 66 provides that administration of an estate by a federal receiver must accord with historical federal practice or an applicable local rule. Fed. R. Civ. P. 66. Federal courts administering SEC receiverships possess broad equitable authority to fashion appropriate relief to protect, preserve, and manage receivership assets. *SEC v. Byers*, 609 F.3d 87, 91–93 (2d Cir. 2010). The Court's prior decision in this action likewise reflects the Court's continuing equitable supervision over the frozen assets and related remedial proceedings. *SEC v. Xia*, No. 21-CV-5350, (E.D.N.Y. 2022).



88629773;3

12. The federal receivership statutes supply additional context for that authority. Section 754 vests a receiver appointed in a civil action involving property located in different districts with jurisdiction and control over such property, subject to the statute's filing requirements. 28 U.S.C. § 754. Section 959 addresses suits against receivers and requires receivers managing property to comply with applicable state law in the same manner as an owner or possessor, subject to the appointing court's equitable power. 28 U.S.C. § 959. Here, the Subject Properties are located in Queens County within this District, and the retention request rests principally on Rule 66, the Court's equitable authority, and the express terms of the Appointment Order.

13. Federal equity receiverships are governed by Rule 66 and general principles of equity, not state procedural law. *SEC v. American Bd.* of *Trade, Inc.*, No. 83 Civ. 6213 (SWK), 1988 U.S. Dist. LEXIS 1595, at *8–10 (S.D.N.Y. Mar. 2, 1988); see also *Phelan v. Middle States Oil Corp.*, 210 F.2d 360, 364 (2d Cir. 1954). A receiver's retention of counsel thus requires prior court authorization as a matter of historical federal equity practice. *Id*. The appointing court retains broad supervisory authority over the receiver's professional engagements, including authority to require full disclosure of all relevant connections so that the court can evaluate whether the proposed employment serves the estate's best interests. See *SEC v. Byers*, 609 F.3d at 91–93. Here, the Appointment Order itself imposes that requirement, providing that no Retained Personnel may be engaged without an authorizing order. (Dkt. 812 ¶ 26.)

14. Most importantly, the Appointment Order itself authorizes the Receiver to retain counsel with prior Court approval and directs that no Retained Personnel be engaged without an authorizing order. (Dkt. 812 ¶¶ 9(b), 26.) The relief requested therefore implements—not expands—the authority already granted by the Court.

**B. Nunc Pro Tunc Authorization to August 31, 2026 Is Appropriate.**

15. The Receiver requests that the retention be authorized nunc pro tunc to August 31, 2026. On that date, Attorney Carr, *inter alia*, ordered the preliminary title searches on both properties described above, which was the Receiver's first engagement of counsel's services on this matter. The Appointment Order was entered only six weeks earlier, on July 17, 2026, and the Receiver moved promptly to identify and engage experienced New York real-estate counsel. The brief interval between the commencement of services and the filing of this motion reflects the practical need to begin title diligence and property analysis promptly in order to meet the October 15, 2026 deadline for the Initial Status Report and Liquidation Plan.

16. Federal courts possess equitable authority to approve professional retention nunc pro tunc. The power to grant nunc pro tunc approval arises from the bankruptcy court's equitable powers, and courts have recognized that ''[w]here equitable concerns weigh in favor of granting retroactive approval to enable deserving professionals to recover compensation for work actually done, . . . nothing in the statute . . . denies the . . . court the power to grant such retroactive approval.'' *In re Motors Liquidation Co.*, 438 B.R. 365, 379 (Bankr. S.D.N.Y. 2010) (quoting *In re Arkansas Co.*, 798 F.2d 645, 649–50 (3d Cir. 1986)). While nunc pro tunc applications are subject to heightened scrutiny, courts have permitted them when the professional's services provided value to the estate. *In re Hasset, Ltd*., 283 B.R. 376, 378 (Bankr. E.D.N.Y. 2002). More recently, courts in this District have held that a professional who has been retained under the applicable statute may be compensated for pre-approval services rendered to the estate. *In re Benitez,* No. 8-19-70230, 2020 Bankr. LEXIS 661, at *16–19 (Bankr. E.D.N.Y. Mar. 13, 2020).

17. The circumstances here support nunc pro tunc authorization. The Receiver was appointed on July 17, 2026, and Attorney Carr commenced services on August 31, 2026—a delay of only six weeks attributable to the practical need to identify qualified counsel and commence title diligence before the Court's reporting deadline. The title search ordered on August 31, 2026, directly served the Receivership Estate by revealing the substantial encumbrances described above, which in turn informed the Receiver's assessment of the Subject Properties' condition, marketability, and estimated value as required by the Appointment Order. (Dkt. 812 ¶ 23.) (Goldberg Decl. ¶¶ 6–7.) The services were necessary and beneficial, the Receiver acted diligently, and nunc pro tunc authorization is therefore appropriate.

**C. Retaining Experienced New York Real-Estate Counsel Is Necessary and in the Receivership Estate's Best Interests.**

18. The proposed engagement is necessary to carry out the Receiver's limited mandate efficiently and to maximize the value available from the Subject Properties. As the preliminary title search on the Eastern Emerald property demonstrates, the sales involve substantial title encumbrances—including a $272,140,380.00 SEC mortgage, eleven mechanic's liens, Environmental Control Board liens, tax warrant judgments, and the absence of a Certificate of Occupancy—requiring New York-specific title, transactional, litigation, and property-operations advice (Goldberg Decl. ¶¶ 5–6.) Counsel will enable the Receiver to assess title and occupancy issues, negotiate market terms, document transactions, manage closings, address disputes and competing claims, and present proposed sales for Court approval.

19. The engagement also provides accountability. Attorney Carr and Akerman will maintain contemporaneous time records, comply with the Billing Instructions, and seek compensation only through the quarterly application process established by paragraphs 27 through 29 of the

Appointment Order. The Court will retain authority to determine whether services and expenses were reasonable, necessary, and beneficial. Courts in the Second Circuit carefully and independently review attorney time and expense reports to ensure they are reasonable and commensurate with the tasks undertaken. *In re Hoti Enters.*, 605 F. App'x 67, 68 (2d Cir. 2015). Reasonableness is assessed by reference to prevailing market rates for attorneys with comparable skill and standing in the pertinent legal community. *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 190 (2d Cir. 2000); see also *Gasser v. Infanti Int'l, Inc.*, No. 03-CV-6413 (ILG), 2011 U.S. Dist. LEXIS 60526, at *24 (E.D.N.Y. June 2, 2011) (applying lodestar analysis and evaluating reasonableness of receiver's fees).

20. Courts have approved Akerman's retention to represent the Receiver in another SEC receivership. In *SEC v. BK Coin Management, LLC*, No. 23-20719-Civ-Scola, 2023 WL 9228329 (S.D. Fla. Nov. 22, 2023), the court found that Akerman's employment was "necessary and would be in the best interests of the receivership estate" and authorized hourly employment as general counsel. (Dkt. 61[1], Apr. 19, 2023 (Dkt. 61 granting Dkt. 56.) Although that order is not controlling here, it supports the practical suitability of the proposed engagement and reflects Akerman's familiarity with SEC receivership requirements.

**D. Michael T. Carr, Esq. and Akerman LLP Are Well Qualified.**

21. Attorney Carr is a partner in Akerman's New York office at 1251 Avenue of the Americas, 37th Floor, New York, New York 10020. He earned his J.D. from Brooklyn Law School in 2010 and his B.A. from Binghamton University in 2006. He is admitted in New York and New Jersey and to the United States District Courts for the Eastern and Southern Districts of New York and

[1] Dkt. 61 is filed under seal.

the District of New Jersey (Goldberg Decl. ¶ 7.) Attorney Carr has also passed the July 2026 Florida Bar examination and his application for admission to the bar thereof is currently pending, subject to, *inter alia*, passing the March 2026 MPRE (Goldberg Decl. ¶ 8.)

22. Attorney Carr focuses on real-estate litigation, real-estate operations, and landlord-tenant lease litigation and regularly advises major New York City landlords, developers, and managers. He has successfully tried jury and non-jury cases in federal and New York state courts and has represented clients before New York City administrative agencies, including the Office of Administrative Trials and Hearings and the Environmental Control Board (Goldberg Decl. ¶ 7.)

23. His practice also includes commercial leasing and transactions, partnership and corporate disputes, condominium-sponsor matters, and asset operations. His representative transactional work includes the sale of 310–312 East 35th Street in New York, sales of 528 and 543 Bergen Street in Brooklyn, and the sale of property in Odessa, Texas. During the COVID-19 pandemic, he represented a major New York City developer and owner in multiple lease disputes, obtained summary judgment against a restaurant tenant for breach of lease, and renegotiated numerous distressed leases.

24. Attorney Carr has also represented multiple owners in connection with distressed real estate assets located throughout the continental United States. These include but are not limited to, a national sports and fitness franchise, a national lease wholesaler, and a large time share community.

25. Akerman is a national law firm with lawyers experienced in real-estate transactions, litigation, insolvency, and federal receiverships. Attorney Carr may draw on other Akerman professionals when reasonably necessary, with work allocated to appropriate personnel to promote

efficient administration. No professional's compensation will be allowed except upon application and Court approval.[2]

**E. Proposed Terms, Disclosures, and Fee Review Are Reasonable.**

26. The Receiver proposes that Attorney Carr bill at his current hourly rate of $1,095. That rate is subject to adjustment on November 1, 2026, at Akerman's fiscal year-end. Any adjusted rate and all compensation and expense reimbursement will remain subject to the Billing Instructions, the Appointment Order, and the Court's reasonableness review and prior approval. Authorization of the engagement will not constitute an allowance of any fee or expense.

27. At least thirty days before filing each quarterly fee application, the Receiver and Retained Personnel will serve the proposed application, exhibits, and billing information on SEC counsel; each application will be filed within forty-five days after the end of the calendar quarter, as required by paragraph 28 of the Appointment Order. The applicable retention order will accompany fee applications to the extent required or useful to the Court's review.

28. The Receiver is himself a partner at Akerman, and the proposed counsel, Attorney Carr, is also an Akerman partner. The Receiver makes that relationship explicit so the Court and parties can evaluate the proposed retention on a fully informed basis (Goldberg Decl. ¶ 9.) The Receiver selected Attorney Carr because his New York real-estate experience is directly suited to the assignment and because use of lawyers within the Receiver's firm is expected to permit efficient coordination.

---

[2] A true copy of Attorney Carr's professional biography as published on Akerman's website is annexed hereto as Exhibit B.

29. After reasonable inquiry, and to the best of the Receiver's knowledge, neither Attorney Carr nor Akerman holds or represents an interest adverse to the Receiver or the Receivership Estate concerning the matters for which retention is sought. Attorney Carr and Akerman will disclose promptly any connection or circumstance that may bear on their retention and will not undertake work adverse to the Receivership Estate (Goldberg Decl. ¶ 9.)

30. The proposed engagement is therefore necessary, appropriately tailored to the Receiver's Court-defined duties, and in the best interests of the Receivership Estate.

## CONCLUSION

31. For the foregoing reasons, the Receiver respectfully requests that the Court enter the proposed order attached as Exhibit A, authorizing retention of Michael T. Carr, Esq. and Akerman LLP as counsel to the Receiver nunc pro tunc to August 31, 2026, and granting such other and further relief as the Court deems just and proper.

Dated: September 25, 2026
New York, New York

*Respectfully submitted,*

**AKERMAN LLP**

Michael T. Carr, Esq.

**Michael T. Carr, Esq.**
*Attorney for Liquidation Receiver,*
*Michael I. Goldberg, Esq.*
Akerman LLP
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Telephone: (212) 259-8748
Email: michael.carr@akerman.com

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, I caused the foregoing motion and Exhibit A to be filed through the Court's CM/ECF system, which will transmit notice of electronic filing to all counsel of record registered to receive such notice. I further certify that any party entitled to service who is not a registered CM/ECF participant will be served by first-class U.S. mail or other Court-approved means at the address appearing on the docket.

Michael T. Carr, Esq.

Michael T. Carr, Esq.